**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DOROTHY FORTH, TROY TERMINE, CYNTHIA RUSSO, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, LISA BULLARD, AND RICARDO GONZALES, on behalf of themselves and all others similarly situated, | Civil No.: 1:17-cv-02246 |
| Plaintiffs, | PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT |
| v. | |
| WALGREEN CO., | Judge John Z. Lee |
| Defendant. | Magistrate Judge Sheila Finnegan |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

LEGAL STANDARDS ............................................................................................ 5

ARGUMENT ............................................................................................................ 5

I.     PLAINTIFFS ADEQUATELY STATE COMMON LAW CLAIMS OF FRAUD AND NEGLIGENT MISREPRESENTATION ............................................. 5

     A.     Walgreens Misrepresents the U&C Price When It Adjudicates Plaintiffs' Claims for PSC Generics (Claims 1-28) .............................................. 6

     B.     Plaintiffs Were Justified in Relying on the U&C Price Reported to Third-Party Payors and the Cost-Sharing Amount Communicated to Consumers to Be Accurate (Claims 1-2) .............................................. 10

     C.     Plaintiffs Sufficiently Allege Walgreens Had a Duty to Disclose Accurate Prescription Drug Prices. ........................................................ 13

II.     PLAINTIFFS ADEQUATELY PLEAD STATE STATUTORY CLAIMS ................... 14

     A.     Plaintiffs Adequately State Claims under the Pleaded Consumer Protection Statutes (Claims 3-8, 10-13, 15-28) .......................................... 14

     B.     Plaintiff IBEW 38 Has Standing to Sue under the (a) Illinois Consumer Fraud Act, (b) Georgia Fair Business Practices Act, and (c) Missouri Merchandising Practice Act (Claims 4, 13, and 20) ............................... 15

     C.     *Shady Grove* Preempts the Purely Procedural Provisions Addressing Class Actions in the (a) GFBPA, (b) Louisiana Unfair Trade Practices Act, and (c) South Carolina Unfair Trade Practices Act (Claims 13, 15, and 26) .................... 20

     D.     Plaintiff IBEW 38 States a Claim under the Minnesota Unlawful Trade Practices Act (Claim 18) ................................................................ 22

     E.     Plaintiff IBEW 38 States Claims under the Minnesota Uniform Deceptive Trade Practices Act and the Georgia Uniform Deceptive Trade Practices Act (Claims 12 and 19) ................................................. 22

     F.     Plaintiff Bullard States a Claim under New York General Business Law §349 (Claim 23) .................................................................... 24

     G.     Plaintiff IBEW 38 States a Claim Under the Ohio Deceptive Trade Practices Act (Claim 25) ................................................................ 25

     H.     Plaintiff Forth States a Claim under the Texas Deceptive Trade Practices Act (Claim 27) ................................................................ 26

I.      Plaintiffs State a Claim under the Declaratory Judgment Act (Claim 29)............ 27

III.    The Statute of Limitations is Tolled for Plaintiffs' Claims. ............................................ 29

IV.    DISMISSAL (IF ANY) SHOULD BE GRANTED *WITHOUT* PREJUDICE ................ 30

CONCLUSION......................................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbasi v. Bhalodwala*,
 149 F. Supp. 3d 1372 (M.D. Ga. 2015) .................................................................18

*Abbott v. Lockheed Martin Corp.*,
 725 F.3d 803 (7th Cir. 2013) .................................................................................10

*AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*,
 896 F.2d 1035 (7th Cir. 1990) ...............................................................................11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).............................................................................................3, 5

*Baugh v. Cuprum S.A. De C.V.*,
 No. 08 C 4204, 2015 WL 9304338 (N.D. Ill. Dec. 22, 2015) (Lee, J.), *aff'd*,
 845 F.3d 838 (7th Cir. 2017) ...................................................................................5

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
 761 F.3d 732 (7th Cir. 2014) .................................................................................24

*Chicago Park Dist. v. Kenroy, Inc.*,
 78 Ill. 2d 555, 402 N.E.2d 181 (1980) ..................................................................29

*City of L.A. v. Lyons*,
 461 U.S. 95 (1983)..................................................................................................23

*Corcoran v. CVS Health Corp.*,
 169 F. Supp. 3d 970 (N.D. Cal. 2016) .................................................................2, 6

*Corcoran v. CVS Health Corp., Inc.*,
 No. 15-CV-3504 YGR, 2016 WL 4080124 (N.D. Cal. July 29, 2016) ..................27

*Cty. of Cook v. HSBC N. Am. Holdings Inc.*,
 136 F. Supp. 3d 952, 965–66 (N.D. Ill. 2015) (Lee, J.).........................................29

*CustomGuide v. CareerBuilder, LLC*,
 813 F. Supp. 2d 990 (N.D. Ill. 2011) ....................................................................17

*Dawson v. Blockbuster, Inc.*,
 No. 86451, 2006 WL 1061769 (Ohio Ct. App. Mar. 16, 2006) .............................26

*Deveraux v. City of Chicago*,
 14 F.3d 328 (7th Cir. 1994) ...................................................................................28

*Doe v. Houchens Indus., Inc.*,
  No. 1:13-CV-00196-RLY, 2015 WL 133706 (S.D. Ind. Jan. 9, 2015) ...............................2, 8

*Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*,
  190 Ill. App. 3d 524, 546 N.E.2d 33 (1989) ...............................................................17

*Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*,
  800 F.3d 853 (7th Cir. 2015) .....................................................................................3

*Elward v. Electrolux Home Prod., Inc.*,
  214 F. Supp. 3d 701, 704 (N.D. Ill. 2016) (Lee, J.) ....................................................5

*Fox Assocs., Inc. v. Robert Half Int'l, Inc.*,
  334 Ill. App. 3d 90, 777 N.E.2d 603 (2002) ..............................................................14

*Friedlander v. PDK Labs, Inc.*,
  266 Ga. 180, 465 S.E.2d 670 (1996)..........................................................................18

*Gandhi v. Sitara Capital Mgmt., LLC*,
  721 F.3d 865 (7th Cir. 2013) .....................................................................................30

*United States ex rel. Garbe v. Kmart Corp.*,
  824 F.3d 632 (7th Cir. 2016), *cert. denied sub nom. Kmart Corp. v. U.S. ex
  rel. Garbe*, 137 S. Ct. 627, 196 L. Ed. 2d 517 (2017) ..................................2, 6, 8, 25

*Gibbons v. J. Nuckolls, Inc.*,
  216 S.W.3d 667 (Mo. 2007) ......................................................................................19

*Glazewski v. Coronet Ins. Co.*,
  108 Ill.2d 243, 483 N.E.2d 1263 (1985) .....................................................................7

*Hahn v. Walsh*,
  762 F.3d 617 (7th Cir. 2014) .....................................................................................21

*Happel v. Wal-Mart Stores, Inc.*,
  316 Ill. App. 3d 621, 737 N.E.2d 650 (2000), *aff'd*, 199 Ill. 2d 179, 766
  N.E.2d 1118 (2002)...................................................................................................14

*Heider v. Leewards Creative Crafts, Inc.*,
  245 Ill. App. 3d 258, 613 N.E.2d 805 (1993) ............................................................13

*Helpling v. Rheem Mfg. Co.*,
  No. 1:15-CV-2247-WSD, 2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ..........................25

*Household Commercial Fin. Servs., Inc. v. Schottenstein*,
  No. 90 C 720, 1991 WL 111206 (N.D. Ill. June 6, 1991) ...........................................10

iv

*In re Abbott Depakote S'holder Derivative Litig.,*
 909 F. Supp. 2d 984 (N.D. Ill. 2012) ...................................................................30

*In re Actiq Sales & Mktg. Practices Litig.,*
 790 F. Supp. 2d 313 (E.D. Pa. 2011) ..................................................................20

*In re Bextra/Celebrex Mktg. Sales Practices & Prod. Liab. Litig.,*
 495 F. Supp. 2d 1027 (N.D. Cal. 2007) .........................................................19, 20

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.,*
 No. 1:14-MD-2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015)....................21

*In re Flonase Antitrust Litig.,*
 692 F. Supp. 2d 524 (E.D. Pa. 2010) ..................................................................10

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
 299 F.R.D. 648 (S.D. Cal. 2014) ..........................................................................21

*In re Lupron Mktg. & Sales Practices Litig.,*
 295 F. Supp. 2d 148 (D. Mass. 2003) .................................................................13

*In re Opana Er Antritrust Litig.,*
 No. 14 C 10150, 2016 WL 4245516 (N.D. Ill. Aug. 11, 2016)............................20

*In re Optical Disk Drive Antitrust Litig.,*
 No. 3:10-MD-2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) .................21

*In re Packaged Seafood Prod. Antitrust Litig.,*
 No. 15-MD-2670 JLS (MDD), 2017 WL 1010329 (S.D. Cal. Mar. 14, 2017) ......21

*In re Pharm. Indus. Average Wholesale Price Litig.,*
 252 F.R.D. 83 (D. Mass. 2008).......................................................................10, 15

*In re Wellbutrin XL Antitrust Litig.,*
 260 F.R.D. 143 (E.D. Pa. 2009)............................................................................10

*Inkaholiks Luxury Tattoos Georgia, LLC v. Parton,*
 324 Ga. App. 769, 751 S.E.2d 561 (2013)...........................................................18

*Jovic v. L-3 Servs., Inc.,*
 69 F. Supp. 3d 750, 765 (N.D. Ill. 2014) (Lee, J.)................................................29

*Khan v. BDO Seidman, LLP,*
 408 Ill. App. 3d 564, 948 N.E.2d 132 (2011), *aff'd sub nom. Khan v. Deutsche*
 *Bank AG,* 2012 IL 112219, 978 N.E.2d 1020 (2012) ..........................................14

*Koch v. Acker, Merrall & Condit Co.,*
 967 N.E.2d 675 (N.Y. 2012).................................................................................25

*Kramer v. Am. Bank & Tr. Co., N.A.*,
No. 11-CV-8758, 2017 WL 1196965 (N.D. Ill. Mar. 31, 2017) (Lee, J.) ..............................20

*LaBella Winnetka, Inc. v. Gen. Cas. Ins. Co.*,
259 F.R.D. 143 (N.D. Ill. 2009) ...............................................................................................16

*Langford v. Rite Aid of Ala., Inc.*,
231 F.3d 1308 (11th Cir. 2000). (Br. ) ....................................................................................13

*Le v. Kohls Dep't Stores, Inc.*,
160 F. Supp. 3d 1096, 1109-11 (E.D. Wis. 2016) ...........................................................23, 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014) .............................................................................................................26

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
No. 13-CV-01180-BLF, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ................................21

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................................................................................23

*Markarian v. Garoogian*,
767 F. Supp. 173 (N.D. Ill. 1991) ...........................................................................................10

*Marrale v. Gwinnett Place Ford*,
271 Ga. App. 303, 609 S.E.2d 659 (2005) ..............................................................................19

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .................................................................................................................28

*Muehlbauer v. Gen. Motors Corp.*,
431 F. Supp. 2d 847 (N.D. Ill. 2006) ......................................................................................15

*Mulch Mfg., Inc. v. Advanced Polymer Sols., LLC*,
947 F. Supp. 2d 841 (S.D. Ohio 2013) ...................................................................................25

*Murillo v. Kohl's Corp.*,
197 F. Supp. 3d 1119, 1136 (E.D. Wis. 2016).........................................................................29

*Naperville Smart Meter Awareness v. City of Naperville*,
114 F. Supp. 3d 606, 610 (N.D. Ill. 2015) (Lee, J.)................................................................30

*Northfield Ins. Co. v. City of Waukegan*,
701 F.3d 1124 (7th Cir. 2012) .................................................................................................28

*Nunez v. Best Buy Co.*,
315 F.R.D. 245 (D. Minn. 2016)..............................................................................................22

*O'Shea v. Littleton*,
414 U.S. 488 (1974).................................................................................23

*Padilla v. Perez*,
No. 15 C 5862, 2017 WL 345553 (N.D. Ill. Jan. 24, 2017) (Lee, J.) ......................................29

*Ports Petroleum Co., Inc. of Ohio v. Nixon*,
37 S.W.3d 237 (Mo. 2001) .......................................................................19

*Powell v. City of Berwyn*,
68 F. Supp. 3d 929, 950 ......................................................................6, 26

*Powell v. McCormack*,
395 U.S. 486 (1969).................................................................................28

*Racine Fuel Co. v. Rawlins*,
377 Ill. 375, 36 N.E.2d 710 (1941) ............................................................7

*Reed v. Dynamic Pet Prod.*,
No. 15CV0987-WQH-DHB, 2016 WL 3996715 (S.D. Cal. July 21, 2016) ........................21

*Reger Dev., LLC v. Nat'l City Bank*,
592 F.3d 759 (7th Cir. 2010) ...................................................................30

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ..................................................................10

*Santangelo v. Comcast Corp.*,
No. 15-CV-0293, 2015 WL 3421156 (N.D. Ill. May 28, 2015) (Lee, J.)............................5, 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)............................................................................20, 21

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
737 F. Supp. 2d 380 (E.D. Pa. 2010) .......................................................20

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*,
221 F. Supp. 3d 227 (D.R.I. 2016).........................................................2, 6

*Simic v. City of Chicago*,
851 F.3d 734 (7th Cir. 2017) ...................................................................23

*Skyline Int'l Dev. v. Citibank, F.S.B.*,
302 Ill. App. 3d 79, 706 N.E.2d 942 (1998) ............................................16

*Soules v. Gen. Motors Corp.*,
79 Ill. 2d 282, 402 N.E.2d 599 (1980) .......................................................5

*StunFence, Inc. v. Gallagher Sec. (USA), Inc.*,
  No. 01 C 9627, 2002 WL 1838128 (N.D. Ill. Aug. 12, 2002) ................................................ 17

*Suchanek v. Sturm Foods, Inc.*,
  311 F.R.D. 239 (S.D. Ill. 2015) ................................................................................................ 21

*Taylor v. Feinberg*,
  No. 08-CV-5588, 2009 WL 3156747 (N.D. Ill. Sept. 28, 2009) ............................................ 5

*Teamsters Local 282 Pension Trust Fund v. Angelos*,
  839 F.2d 366 (7th Cir. 1988) .................................................................................................... 11

*Vulcan Golf, LLC v. Google Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ......................................................................... 15, 16, 17

*Warner v. Lucas*,
  185 Ill. App. 3d 351, 541 N.E.2d 705 (1989) ........................................................................ 8

*We Deliver Am., Inc. v. Gen. Growth Properties, Inc.*,
  No. 03 C 2107, 2003 WL 22836449 (N.D. Ill. Nov. 21, 2003) .............................................. 16

## STATUTES, RULES & REGULATIONS

United States Code
  28 U.S.C. §2201 ......................................................................................................................... 27
  28 U.S.C. §2201(a) ..................................................................................................................... 28
  28 U.S.C. §2202 ......................................................................................................................... 28

Illinois State Code
  Ill. Comp. Stat. 505/10a ............................................................................................................ 15
  Ill. Comp. Stat. Ann. 505/1(b) .................................................................................................. 16
  Ill. Comp. Stat. Ann. 505/1(c) .................................................................................................. 15
  Ill. Comp. Stat. Ann. 505/1(e) .................................................................................................. 16

Georgia State Code
  Ga. Code Ann. § 10-1-391(a) ................................................................................................... 18
  Ga. Code Ann. §10-1-392(a)(6) ............................................................................................... 17
  Ga. Code Ann. §10-1-392(a)(7) .......................................................................................... 17, 18
  Ga. Code Ann. §10-1-392(a) (10) ............................................................................................ 17
  Ga. Code Ann. §10-1-392(a)(24) ............................................................................................. 18
  Ga. Code Ann. §10-1-393(a) ..................................................................................................... 17
  Ga. Code Ann. §10-1-393(b)(11) ............................................................................................. 18
  Ga. Code Ann. §10-1-399(a) ............................................................................................... 18, 21

Louisianna State Code
  La. Rev. Stat. §51:1409(A) ....................................................................................................... 21

Minnisota State Code
  Minn. Stat. §325D.12(3) ................................................................22

Missouri State Code
  Mo. Ann. Stat. §407.010(5) ...........................................................19
  Mo. Ann. Stat. §407.025.1 .............................................................19

New York State Code
  N.Y. C.P.L.R. 901(b) .....................................................................21
  New York General Business Law §349 .....................................24, 25

Ohio State Code
  Ohio Rev. Code §4165.02(B) .........................................................25
  Ohio Rev. Code §4165.01(D) .........................................................26
  Ohio Rev. Code §4165.03(A)(1)-(2) ..............................................26

South Carolina State Code
  S.C. Code §39-5-140(a) ..................................................................21

Texas State Code
  Tex. Bus. & Com. Code §17.46(b)(24) ..........................................27
  Tex. Bus. & Com. Code §17.50(a)(3) .............................................27

Federal Rules of Civil Procedure
  Fed. R. Civ. P. 8 ...............................................................................2
  Fed. R. Civ. P. 9(b) ...............................................................2, 5, 9
  Fed. R. Civ. P. 15 ...........................................................................30
  Fed. R. Civ. P. 23 ...........................................................................20

## Other Authorities

Restatement (Second) of Torts §540 (1977) ........................................11, 14

Walgreens Factsheet - Community Pharmacy, http://news.walgreens.com/fact-
  sheets/community-pharmacy/ (last visited Aug. 17, 2017) ...................30

Plaintiffs Dorothy Forth, Troy Termine, Cynthia Russo, Lisa Bullard, and Ricardo Gonzales ("Consumer Plaintiffs") and Plaintiff International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund ("Plaintiff IBEW 38") (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Walgreen Co.'s ("Walgreens") Motion to Dismiss ("Motion") (ECF No. 53) Plaintiffs' First Amended Class Action Complaint ("Complaint") (ECF No. 46). For the reasons discussed, the Court should deny the Motion.

## INTRODUCTION

Walgreens implemented a scheme to defraud consumers and third-party payors by fraudulently inflating the "usual and customary" ("U&C") prices it reported to and used to charge Plaintiffs and the Class for purchases of certain generic prescription drugs. Pharmacies cannot charge consumers or report to third-party payors a price higher than the pharmacy's U&C price, which Walgreens, other pharmacies, and the government uniformly agree is the price the pharmacy charges cash-paying customers to receive a prescription drug. Instead of complying with this universal definition, Walgreens maintains an undisclosed, dual-pricing scheme through the use of its "Prescription Savings Club" ("PSC"), which Walgreens characterizes as a "discount" generic drug program. According to Walgreens, the PSC allows cash-paying customers to purchase more than 500 widely prescribed generic drugs at significantly lower prices than Plaintiffs and the Class – who use insurance – pay. Because the PSC price was, and still is, the price Walgreens charges customers paying cash without insurance, and because most cash-paying customers pay the PSC price, Walgreens should have used the PSC price as the U&C price it reported to and used to charge Plaintiffs and the Class.

The Seventh Circuit has held that when pharmacies offer generics through a discount program open to the general public, like through the PSC, the discount price must be considered

in determining the pharmacy's U&C price. *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 645 (7th Cir. 2016), *cert. denied sub nom. Kmart Corp. v. U.S. ex rel. Garbe*, 137 S. Ct. 627, 196 L. Ed. 2d 517 (2017); *see also Doe v. Houchens Indus., Inc.*, No. 1:13-CV-00196-RLY, 2015 WL 133706, at *3 (S.D. Ind. Jan. 9, 2015) (same). These courts sustained claims under the False Claims Act ("FCA") against two pharmacies, Kmart and Houchens, that engaged in conduct similar to Walgreens': fraudulently reporting inflated U&C prices instead of the pharmacies' most commonly charged cash prices through the ruse of a discount membership program. Though *Garbe* controls in this case, Walgreens fails to cite it.

This action is also similar to two other actions (one by consumers, one by a third-party payor) challenging CVS Health Corporation's ("CVS") fraudulent pricing of hundreds of generic drugs in a similar manner. *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*, No. 1:16-cv-00046-S (D.R.I.). The courts overseeing both actions recently denied CVS's motions to dismiss, finding that the consumers and third-party payor stated claims that satisfy Rules 8 and 9(b) for common law fraud, consumer fraud, negligent misrepresentation, and unjust enrichment. *See generally Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*, 221 F. Supp. 3d 227 (D.R.I. 2016). The result should be the same here.

Plaintiffs state well-pleaded claims on behalf of nationwide and/or statewide classes of consumers and third-party payors seeking damages, restitution, and injunctive relief for fraud, negligent misrepresentation, unjust enrichment, and violation of state consumer protection statutes. Plaintiffs also state a claim for declaratory and equitable relief. Similar to the failed arguments in *Corcoran* and *Sheet Metal*, Walgreens argues that because information regarding

the PSC was publicly available, Plaintiffs failed to allege any misrepresentations on which they could have justifiably relied, and thus asks that twenty-eight of the twenty-nine claims be dismissed.  Walgreens, however, disregards and mischaracterizes the Complaint's allegations, and many of its arguments are raised in one or two sentences without citation to any case law.[1] (Br. at 15, 17, 19).[2]  As set forth below, Walgreens made affirmative misrepresentations regarding its prescription drug prices for PSC generics (on which Plaintiffs were justified in relying to be accurate) during the adjudication process when it fraudulently inflated the U&C prices it reported to and used to charge Plaintiffs.  *See infra*, Section I.  Walgreens' state-statute-specific arguments also lack merit because each Plaintiff has standing to pursue its claims and requested relief and has satisfied each statutory element Walgreens challenges.  *See infra*, Section II.  Finally, Walgreens' premature effort to litigate its statute of limitations affirmative defense must be rejected.  *See infra*, Section III.  Since the Complaint "contain[s] sufficient factual matter," this Court should assume its factual veracity and conclude that those facts plausibly give rise to an entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the Court should deny Walgreens' Motion.

## FACTUAL BACKGROUND

The parties agree:  the core factual premise of Plaintiffs' claims is simple.  Plaintiffs are consumers and a third-party payor who overpaid for prescription drugs purchased at Walgreens. (¶¶14, 17, 20, 23, 26, 31).[3]  Plaintiffs each believed that they would pay, at most, Walgreens'

---

[1]      Should Walgreens on reply develop its unsupported arguments with citation to authority, Plaintiffs may seek leave to file a sur-reply to protect Plaintiffs' due process rights and to provide the Court with argument properly tested through the adversarial process.  *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015).

[2]      "Br." refers to Defendant's Memorandum of Law in Support of Motion to Dismiss First Amended Complaint (ECF No. 54).

[3]      All "¶_" and "¶¶_" citations are to the Complaint.

U&C price for purchases of PSC generics. (¶¶15, 18, 21, 24, 27, 30, 45-46). The U&C price is not, as Walgreens suggests, an amorphous concept whose bounds are negotiated on a party-by-party basis. Government and industry are united in their understanding that the U&C price is the amount a pharmacy charges a cash-paying customer to purchase prescription drugs. (¶¶52-56). Walgreens' internal definition is no different. (¶¶54-59). The amount Walgreens charges cash-paying customers to purchase prescription drugs is the price offered through Walgreens' PSC. Because the "majority of Walgreens' cash-paying customers pay no more than the PSC Prices," (¶11), the PSC prices are Walgreens' true U&C prices. (¶¶5, 12, 71, 73, 82-85).

Walgreens misrepresented its U&C price during the adjudication process when it fraudulently inflated the U&C prices it reported to and used to charge Plaintiffs for PSC generics. (¶¶73-79). Walgreens failed to disclose to Plaintiffs that its PSC prices were its true U&C prices, omitting that the PSC prices were lower than the U&C prices reported to and used to charge Plaintiffs. (¶¶73-85). This false U&C price was communicated to Plaintiffs when it was utilized to calculate the inflated cost-sharing amount (*i.e.*, copayment, coinsurance, or deductible amount) and reimbursement amount Plaintiffs paid. (¶¶12, 49-51, 76). The cost of a prescription drug is a material fact on which Plaintiffs are justified in relying to be accurate. (¶¶97, 111, 114-15, 125, 128-29). Walgreens effectively kept two sets of books to perpetuate its fraudulent pricing scheme. (¶74).

Walgreens' fraudulent pricing scheme unquestionably damaged Plaintiffs. Each Plaintiff alleged the particulars of their claim, pleading the dates they purchased PSC generics, the amount they actually paid, and the amount they should have paid. (¶¶14, 17, 20, 23, 26, 31). Plaintiffs pray for damages, restitution, and injunctive relief as well as declaratory and equitable relief. Because Plaintiffs' claims are well-pleaded, the Court should deny Walgreens' Motion.

## LEGAL STANDARDS

Litigants may not take a "kitchen sink" approach to motion practice. *Baugh v. Cuprum S.A. De C.V.*, No. 08 C 4204, 2015 WL 9304338, at *4 (N.D. Ill. Dec. 22, 2015) (Lee, J.), *aff'd*, 845 F.3d 838 (7th Cir. 2017). It is "plainly insufficient" for a party to do "little more than provide a sentence or two raising [an] issue . . . and offer little to no legal support." *Id.*[4] A failure to develop arguments is "fatal" to and forfeits a party's entitlement to the relief requested. *Taylor v. Feinberg*, No. 08-CV-5588, 2009 WL 3156747, at *2 n.4 (N.D. Ill. Sept. 28, 2009).

When weighing the legal sufficiency of Plaintiffs' allegations, the Court "must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor." *Santangelo v. Comcast Corp.*, No. 15-CV-0293, 2015 WL 3421156, at *2 (N.D. Ill. May 28, 2015) (Lee, J.). Plaintiffs' allegations are plausible if the Court can reasonably infer that Walgreens is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678. Rule 9(b) applies to each of Plaintiffs' claims except for negligent misrepresentation and under the Declaratory Judgment Act. Plaintiffs' fraud allegations amply satisfy the "who, what, when, where and how" such that Walgreens has fair notice of the facts supporting Plaintiffs' claims and the opportunity to frame its response. *Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 704 (N.D. Ill. 2016) (Lee, J.).

## ARGUMENT

## I. PLAINTIFFS ADEQUATELY STATE COMMON LAW CLAIMS OF FRAUD AND NEGLIGENT MISREPRESENTATION

To state a claim for fraud or negligent misrepresentation, Plaintiffs must allege, *inter alia*, that Walgreens made a fraudulent statement on which Plaintiffs justifiably relied. *Soules v. Gen. Motors Corp.*, 79 Ill. 2d 282, 285, 402 N.E.2d 599, 601 (1980). Walgreens disputes that

---

[4] Unless otherwise indicated, citations are omitted and emphasis is added.

Plaintiffs have adequately alleged these elements or that it had a duty to disclose accurate prescription drug prices.[5]  Walgreens' arguments fail because instead of addressing the facts as pleaded, it impermissibly recasts the Complaint to its own liking.  Moreover, courts repeatedly have rejected the arguments Walgreens raises.  *See generally Corcoran*, 169 F. Supp. 3d 970; *Sheet Metal*, 221 F. Supp. 3d 227.  In particular, in *Garbe*, the Seventh Circuit found that the misconduct Plaintiffs complain of here constituted a violation of the FCA.  *Garbe*, 824 F.3d at 645.  The Court should follow these binding and persuasive precedents.

### A. Walgreens Misrepresents the U&C Price When It Adjudicates Plaintiffs' Claims for PSC Generics (Claims 1-28)

Walgreens seeks dismissal of 28 of Plaintiffs' claims by arguing Plaintiffs have not alleged "that Walgreens made any factual misstatements."  (Br. at 7).  Walgreens' claim cannot be squared with the Complaint's allegations.  Plaintiffs pleaded that Walgreens "misrepresents the amount of its U&C price" when it adjudicates a claim for drugs covered by the PSC.  (¶76).  Plaintiffs' claim is simple:  "In the field requiring Walgreens to report its U&C price, Walgreens does not report its PSC price, which is its true U&C price, but instead reports a much higher price."  (*Id.*).  Each time Walgreens adjudicated a claim for a PSC generic based on a false U&C price, it made an affirmative misrepresentation regarding its U&C price, omitting that the PSC price was the true U&C price and that the PSC prices were lower than the U&C prices reported to and used to charge Plaintiffs.

Walgreens communicated this misrepresentation to Plaintiff IBEW 38 each time it submitted a claim for reimbursement at prices that Walgreens represented to be its U&C price

---

[5]     Walgreens sweepingly claims that Plaintiffs have failed to plead "the other essential elements of a fraud-based cause of action," (Br. at 5), but fails to raise any argument except as to whether Walgreens made fraudulent representations and whether Plaintiffs' reliance on Walgreens' fraudulent representations was justified.  Because Walgreens raises no argument addressing the other elements of a fraud or negligent misrepresentation claim, all such arguments are waived.  *Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 950 n.10 (N.D. Ill. 2014) (Lee, J.).

when, in fact, Walgreens charged a different and substantially lower price to cash-paying PSC members for the very same drugs. (¶¶31, 72-85). Despite Walgreens' statement that the Complaint contains "no details regarding any specific representation to any specific third-party payor about any specific prescription claim," (Br. at 8 n.6), Plaintiff IBEW 38 identifies the U&C price Walgreens fraudulently reported, the PSC price Walgreens should have reported as the U&C price, and the date on which Walgreens made its fraudulent representation. (¶31). Similarly, Walgreens communicated this misrepresentation to the Consumer Plaintiffs each time it charged them cost-sharing amounts that purportedly were accurate, but in reality, were inflated because they exceeded the PSC price (which is Walgreens' true U&C price). (¶¶14, 17, 20, 23, 26; *see also* ¶¶12, 49-51, 76). Each Consumer Plaintiff identifies the U&C price Walgreens fraudulently reported, the PSC price Walgreens should have reported as the U&C price, and the date on which Walgreens made its misrepresentation. (¶¶14, 17, 20, 23, 26).

Plaintiffs also plead ample facts demonstrating that Walgreens' PSC price is its true U&C price. Walgreens' PSC prices are the prices offered to cash-paying customers. (¶¶10-12, 66-67, 70). While Walgreens' PSC prices accord with the U&C prices charged by Walgreens' competitors, Walgreens reports and charges U&C prices that are "up to 11 times the U&C prices reported by some of its most significant competitors." (¶82). Plaintiffs bolster this well-pleaded allegation by comparing the U&C prices Walgreens and its competitors submitted to the Medicaid programs in New York (¶83), Florida (¶84), and Pennsylvania (¶85), which show that Walgreens' U&C prices are inflated when compared with its competitors and its PSC prices.

Under Illinois law, "[a]ny conduct capable of being turned into a statement of fact is a representation." *Racine Fuel Co. v. Rawlins*, 377 Ill. 375, 380, 36 N.E.2d 710, 712-13 (1941); *Glazewski v. Coronet Ins. Co.*, 108 Ill.2d 243, 250, 483 N.E.2d 1263, 1266 (1985) ("A

representation may be made by words, or by actions or other conduct amounting to a statement of fact."). Fraud "also may consist of the intentional omission or concealment of a material fact under circumstances creating an opportunity and duty to speak." *Warner v. Lucas*, 185 Ill. App. 3d 351, 354, 541 N.E.2d 705, 706 (1989) (collecting cases). Thus, reporting a false U&C price to Plaintiffs is an actionable misrepresentation and Walgreens' failure to disclose that its PSC prices are its true U&C prices constitutes an omission of a material fact.

Yet, Walgreens claims that Plaintiffs' well-pleaded allegations are "demonstrably untrue" because Walgreens' website advertises the PSC as a "discount program" offering prices that are not typical. (Br. at 6). Walgreens, therefore, contends it is not plausible that it made any statements that could be construed to be false. (*Id*.). This Court must reject this argument for two reasons. ***First***, Walgreens raises a disputed issue of fact that is inappropriate for resolution in the face of Plaintiffs' plausible allegations that Walgreens either failed to tell them about the PSC program's availability or misrepresented that the PSC program could not apply to their prescription purchases. (¶81). ***Second***, several federal courts have held that the same practice engaged in by other pharmacies is fraudulent and deceptive.

Specifically, in *Garbe*, the Seventh Circuit found that if a pharmacy's "[U&C] prices are the prices it charges through several generic-drug discount programs," then the pharmacy "misrepresented its [U&C] prices by charging . . . far in excess of those prices." 824 F.3d at 643; *see also Houchens*, 2015 WL 133706, at *3. Moreover, *Corcoran* rejected the same argument Walgreens now raises because it ignored the plaintiffs' theory of the case. As in *Corcoran*:

> The gravamen of the [Complaint] is not that [Walgreens] concealed the existence of the of the [PSC] program. Rather, it is that [Walgreens] deceived Plaintiffs by reporting U & C prices significantly above the prices available to members of the [PSC] program, and then charged Plaintiffs inflated copays of a result of their deceitful practice.

*Corcoran*, 169 F. Supp. 3d at 987. Such allegations state actionable misrepresentations and

8

omissions. *Id.*; *see also Sheet Metal*, 221 F. Supp. 3d at 238. Tellingly, Walgreens does not cite any of these relevant cases. In light of *Garbe*, *Houchens*, *Corcoran*, and *Sheet Metal*, Plaintiffs' allegations that Walgreens engaged in fraud and deceptive conduct by not reporting its PSC prices as its U&C prices are entirely plausible.[6]

Walgreens next asserts, without evidence, that Plaintiffs' claims are dependent on the definition of U&C in third-party payor contracts. (Br. at 8-9 & n.6). Plaintiffs, however, alleged that "[t]he term 'usual and customary' is not ambiguous," (¶53), and that Walgreens, other pharmacies, and the government uniformly agree that the U&C is the price the pharmacy charges cash-paying customers to receive a prescription drug. (¶¶5, 12, 52-63, 70-73, 104, 123). Plaintiffs specifically alleged that Walgreens uniformly uses the same inflated U&C prices for PSC generics. (¶51). Thus, the terms of any contract would not change the way Walgreens determined its U&C. Taking Plaintiffs' allegations as true and viewing them in the light most favorable to Plaintiffs, Plaintiffs plausibly plead Walgreens' conduct in deliberately falsifying its reported U&C prices to third-party payors is actionable regardless of any contract between the parties, as it is independently at odds with the uniform understanding of how a pharmacy truthfully should report its U&C prices. (¶¶52-63, 70-73). *Cf. Corcoran*, 169 F. Supp. 3d at 987-88 (finding economic loss rule inapplicable in light of allegations that CVS orchestrated a fraudulent scheme that violated industry standards); *Sheet Metal*, 221 F. Supp. 3d at 238 (same). Thus, the Court also must reject this mischaracterization.

Walgreens also questions whether Plaintiff IBEW 38 can "represent all similarly situated third-party payors" and contends that Plaintiff IBEW 38, as a matter of law, cannot seek to recover damages on behalf of its beneficiaries "because an organization that has not received any

---

[6]     These same courts held that allegations similar to those levied here were sufficient to satisfy Rule 9(b). *Corcoran*, 169 F. Supp. 3d at 986; *Sheet Metal*, 221 F. Supp. 3d at 230-31.

assignment of the damages claims of its members does not have standing to recover damages on behalf of the individual members." (Br. at 8 & n.7). Walgreens' arguments regarding the scope of the class Plaintiff IBEW 38 can represent miss the mark. As a threshold matter, courts commonly hold that third party payors, like Plaintiff IBEW 38, have standing to assert claims based on prescription drug purchases in states where their beneficiaries reside. *See*, *e.g.*, *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 533 (E.D. Pa. 2010); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 156-57 (E.D. Pa. 2009). The typicality of IBEW 38's claims and its adequacy as a class representative are questions regarding the propriety of class certification that cannot be resolved in the context of a motion to dismiss. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813–14 (7th Cir. 2013); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *cf. In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 106 (D. Mass. 2008) (finding third-party payor adequate to represent class of consumers and third-party payors).

**B.    Plaintiffs Were Justified in Relying on the U&C Price Reported to Third-Party Payors and the Cost-Sharing Amount Communicated to Consumers to Be Accurate (Claims 1-2)**

Walgreens claims Plaintiffs' reliance on any Walgreens misrepresentation could not have been justified because "pertinent information regarding PSC prices was and remains publicly available." (Br. at 9-10). This argument is nothing more than a rehash of Walgreens' argument that its statements are not false, and fails for the reasons discussed above. Furthermore, whether Plaintiffs justifiably relied on Walgreens' fraudulent representations is a question of fact, not law, and cannot serve as a basis for dismissal. *Markarian v. Garoogian*, 767 F. Supp. 173, 180 (N.D. Ill. 1991); *Household Commercial Fin. Servs., Inc. v. Schottenstein*, No. 90 C 720, 1991 WL 111206, at *1 (N.D. Ill. June 6, 1991); *Sheet Metal*, 221 F. Supp. 3d at 239. Nevertheless, Plaintiffs plausibly plead they justifiably relied on the accuracy of Walgreens' reported U&C prices (and reimbursement amounts) and cost-sharing amounts.

To determine whether Plaintiffs' reliance was justified, the "crucial question" is whether Plaintiffs' conduct was "so unreasonable under the circumstances and 'in light of the information open to him, that the law may properly say that this loss is his own responsibility.'" *Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366, 371 (7th Cir. 1988). Plaintiffs' reliance on the accuracy of the U&C prices and cost-sharing amounts was justified for two reasons. **First**, Plaintiffs "reasonably believed" that because they paid premiums for health insurance with prescription benefits that they would pay "at least the same as and not more than a cash-paying customer" for prescriptions filled at Walgreens. (¶¶15, 18, 21, 24, 27). **Second**, even if the Court could credit Walgreens' assertion that it provided "complete transparency" about its PSC pricing, (Br. at 7), Plaintiffs had no reason to believe that the PSC prices were not equal to Walgreens' U&C prices. Plaintiffs had "no way of determining on their own whether the price Walgreens submit[ted] as its U&C price [was], in fact, the most common price offered to cash-paying members of the general public." (¶80). It is hornbook law that "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." Restatement (Second) of Torts §540 (1977). "It is not ordinary prudence to assume that your seller is a liar." *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1042-43 (7th Cir. 1990). The risk that Walgreens was fraudulently reporting its U&C prices was neither "known" nor "obvious" to Plaintiffs.[7] *Id.* Plaintiffs' reliance thus was justifiable because they presumed (as

---

[7] Walgreens claims that "every time" Plaintiffs filled a prescription, they should have purchased the drug using their insurance, allowed the claim to be adjudicated, and then compared the price of the fully adjudicated claim to the cost of paying the PSC enrollment fee and the PSC price for the applicable generic. (Br. at 7). A victim of fraud, however, is "not required to expend a substantial effort to protect himself." *AMPAT*, 896 F.2d at 1042. Walgreens also fails to mention that Plaintiffs Bullard, Forth, and Russo, as insureds under Medicare Part D, and Plaintiff IBEW 38 were ***ineligible*** to join the PSC. (¶¶10 14, 20, 23 & 66 (PSC is limited to "individuals" or a "family" and Medicare recipients are ineligible to join). Walgreens also appears to erroneously assume that the damages individual Plaintiffs sustained by

they were entitled to do) that Walgreens was accurately representing its prescription drug prices.

Publication of the PSC's prices alone was insufficient to put Plaintiffs on notice that the PSC prices represented Walgreens' true U&C prices. (¶¶81, 95-100, 105-07). The linchpin of Walgreens' argument is that since the PSC price was well publicized, Plaintiffs could simply compare the reported price with the PSC price to determine the prices were different. The *Corcoran* and *Sheet Metal* courts explicitly rejected this argument. *Corcoran*, 169 F. Supp. 3d at 987; *Sheet Metal*, 221 F. Supp. 3d at 239. Walgreens offers nothing to suggest that Plaintiffs were aware of critical missing pieces of the puzzle: the number of Walgreens customers who received PSC generics at the PSC prices and the U&C prices that Walgreens submitted to third parties for Consumer Plaintiffs' purchases.[8] The Court must view the allegations in the light most favorable to Plaintiffs, and the allegations supporting Plaintiffs' claims are plentiful. *See Santangelo*, 2015 WL 3421156, at *2. Consequently, no matter how well Walgreens advertised or promoted its PSC program, Plaintiffs would not have known whether the prices Walgreens received for drugs covered by that program were the more common prices, and therefore the true U&C prices, received by Walgreens for all sales of those drugs.

Nor does it follow, as Walgreens claims (Br. at 9-10), that Plaintiffs' reliance was not reasonable because Plaintiffs believe that they will need to visit "the largest retail pharmacy in the United States" (¶7) to fill prescriptions in the future. (¶¶16, 19, 22, 25, 28). Plaintiffs need not sacrifice their right to seek damages and injunctive relief at the cost of maintaining continuity of care and access to medically necessary prescription drugs. (¶33). *Corcoran*, 169 F. Supp. 3d

---

using their insurance ***always*** exceeded the $20 or $35 cost of enrolling in the PSC to purchase PSC generics. (*See, e.g.*, ¶17).

[8] Walgreens' claim that Plaintiffs had such information rings hollow when Walgreens chides Plaintiffs for pleading on information and belief that the prices charged to PSC members are the same as the prices charged to cash customers who are not PSC members. (Br. at 6; ¶11).

at 987. Accordingly, Plaintiffs have plausibly pled justifiable reliance.

**C.    Plaintiffs Sufficiently Allege Walgreens Had a Duty to Disclose Accurate Prescription Drug Prices.**

Walgreens argues Plaintiffs failed to allege that it had a duty to disclose accurate prescription drug pricing information, citing *Langford v. Rite Aid of Ala., Inc*., 231 F.3d 1308, 1314 (11th Cir. 2000). (Br. at 10-11). How *Langsford* aids Walgreens' argument is unclear. In *Langsford,* the Eleventh Circuit held that "it would be an error to find that a duty to disclose information . . . can only be found where a statute, regulation, or formalized legal relationship between the parties expressly delineates such a duty," and then commented that the court could "*envision many situations in which a failure to disclose information could constitute fraud* pursuant to [the mail and wire fraud statutes], *even when no duty to disclose exists independently*." *Langford*, 231 F.3d at 1312-13. Walgreens fails to acknowledge that a duty to disclose may arise under Illinois law if the defendant makes an affirmative statement that it presents as the whole truth while omitting material facts that render the statement a misleading "half-truth." *Heider v. Leewards Creative Crafts, Inc*., 245 Ill. App. 3d 258, 265-66, 613 N.E.2d 805, 811 (1993). That is just the case here. Unlike in *Langford*, this is not a pure omissions case. Rather, this is a case of *affirmative misrepresentation*. And because the alleged misrepresentations were knowing, deliberate, and made in furtherance of a scheme to defraud, they are sufficient to support claims of fraud and negligent misrepresentation. *In re Lupron Mktg. & Sales Practices Litig*., 295 F. Supp. 2d 148, 167–68 (D. Mass. 2003) (distinguishing *Langford* as a nondisclosure case and stating "defendants trumpeted a lie by publishing the inflated AWPs, knowing (and intending) them to be used as instruments of fraud. Whether one views the defendants' actions as involving the dissemination of information that was wholly false, or false because of an incomplete depiction of the truth, they are actionable[.]").

13

A duty also can arise based on: (1) the foreseeability that the defendant's conduct may injure another; (2) the likelihood of an injury occurring; (3) the burden placed on the defendant by imposing a duty; and (4) the consequences of imposing this burden on the defendant. The test focuses on the relationship of the parties and not the nature of the injury. *Happel v. Wal-Mart Stores, Inc.*, 316 Ill. App. 3d 621, 628, 737 N.E.2d 650, 656 (2000), *aff'd*, 199 Ill. 2d 179, 766 N.E.2d 1118 (2002) (Pharmacy owed duty to disclose either to customer or to her physician that prescribed drug was contraindicated, where pharmacy knew of customer's allergies, knew that the drug was contraindicated for a person with customer's allergies, and knew that injury or death was substantially certain to result). Plaintiffs allege it was entirely likely and foreseeable that Plaintiffs would be injured when they overpaid for PSC generics. (¶¶104, 123). Imposing a duty to provide accurate price information places no burden on Walgreens because Walgreens already is required to accurately report its U&C price to programs like Medicare and Medicaid. (*Id.*).[9] Thus, Plaintiffs have plausibly pleaded that Walgreens had a duty to disclose accurate prices.

## II.     PLAINTIFFS ADEQUATELY PLEAD STATE STATUTORY CLAIMS

### A.     Plaintiffs Adequately State Claims under the Pleaded Consumer Protection Statutes (Claims 3-8, 10-13, 15-28)

As set forth above, Walgreens misrepresented that its true U&C price was its PSC Price, instead reporting fraudulently inflated U&C prices and reimbursement amounts to Plaintiff IBEW 38 and collecting fraudulently inflated cost-sharing amounts from Consumer Plaintiffs. Such conduct was likely to and did deceive Plaintiffs, and thus, is plainly actionable under the

---

[9]     Moreover, courts have recognized a claim for negligent misrepresentation where it satisfies the Restatement (Second) of Torts §552. Liability is imposed under §552 where the "defendant is in the business of supplying information for the guidance of others in their business dealings[.]" *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App. 3d 90, 95, 777 N.E.2d 603, 608 (2002). Plaintiffs allege that, as a national pharmacy chain charging and reporting drug prices to consumers and third-party payors, Walgreens is in the business of supplying information for the guidance of others in their business dealings with Walgreens. (¶¶103, 122). These facts are more than sufficient to satisfy the requirements of the Restatement. *See Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 594-95, 948 N.E.2d 132, 158-59 (2011), *aff'd sub nom. Khan v. Deutsche Bank AG*, 2012 IL 112219, 978 N.E.2d 1020 (2012).

alleged consumer protection laws. *Corcoran*, 169 F. Supp. 3d at 987.[10] Walgreens' arguments aimed at specific elements of the pleaded consumer protection claims are meritless.

**B. Plaintiff IBEW 38 Has Standing to Sue under the (a) Illinois Consumer Fraud Act, (b) Georgia Fair Business Practices Act, and (c) Missouri Merchandising Practice Act (Claims 4, 13, and 20)[11]**

Plaintiff IBEW 38 asserts claims on behalf of any class member who overpaid Walgreens for a PSC generic under the consumer protection statutes of the states where its beneficiaries purchased PSC generics.[12] (¶¶30, 86). Walgreens' challenges to Plaintiff IBEW 38's capacity to recover under the laws of Illinois, Georgia, and Missouri, (Br. at 14-15), fail under the applicable statutory provisions.

**1. Illinois Consumer Fraud Act**

The Illinois Consumer Fraud Act ("ICFA") confers standing to sue on "[a]ny person," including a "trust" like Plaintiff IBEW 38. (¶30); 815 Ill. Comp. Stat. Ann. 505/1(c) (defining "person"); 815 Ill. Comp. Stat. 505/10a (defining who may bring an action). Contrary to Walgreens' contention that only "individual consumers" can sue under the ICFA, (Br. at 15), a plaintiff must *either*: (1) be a "consumer," *or*, (2) satisfy the "consumer nexus" test. *Vulcan*

---

[10] Walgreens wrongly claims that "under each and every [pleaded consumer protection statute], a violation requires the defendant to have engaged in some form of deceit, fraud, or misrepresentation." (Br. at 13). Walgreens fails to recognize that consumer protection statutes offer far broader protection to consumers than common law fraud claims do, and therefore, often are less onerous to plead (since pleading reliance, intent to deceive, and/or actual deception frequently is not required). *See, e.g.*, *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 867 (N.D. Ill. 2006); *Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. at 94-101 (discussing nuances in consumer protection statutes). Walgreens' grossly overgeneralized argument thus is insufficient to warrant dismissal of Plaintiffs' claims alleging unlawful, unfair, and/or unconscionable conduct under the consumer protection statutes of California, Florida, Illinois, Massachusetts, Missouri, New Mexico, North Carolina, and Texas.

[11] Plaintiff IBEW Local 38 withdraws its claims under the California Legal Remedies Act (Count 9) and Kansas Consumer Fraud Act (Count 14) without prejudice to reasserting either claim should an individual consumer with statutory standing seek to bring the claim.

[12] These states include Arizona, California, Colorado, Florida, Georgia, Illinois (which also is where Walgreens is headquartered), Louisiana, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, North Carolina, Ohio (which also is where Plaintiff IBEW 38 is headquartered), South Carolina, Texas, and Wisconsin. (¶¶30, 86).

*Golf, LLC v. Google Inc*., 552 F. Supp. 2d 752, 777 (N.D. Ill. 2008). Plaintiff IBEW 38 satisfies both standards.

Under the ICFA, an entity can be a "consumer" where the entity purchases services for its own use.[13] *See Skyline Int'l Dev. v. Citibank, F.S.B.*, 302 Ill. App. 3d 79, 85, 706 N.E.2d 942, 946 (1998) ("Plaintiff, though a corporation, was a consumer of defendant's banking services when it requested the wire transfer."); *LaBella Winnetka, Inc. v. Gen. Cas. Ins. Co*., 259 F.R.D. 143, 150 (N.D. Ill. 2009) (plaintiff business that purchased insurance from defendant qualifies as "consumer" under ICFA); *We Deliver Am., Inc. v. Gen. Growth Properties, Inc*., No. 03 C 2107, 2003 WL 22836449, at *2 (N.D. Ill. Nov. 21, 2003) ("Because plaintiff, a business, contracted for defendant's services for use in its business but not to incorporate into a product resold by plaintiff, plaintiff is a consumer of defendant's product and need not meet the consumer nexus test."). Plaintiff IBEW 38 is a consumer of Walgreens' pharmacy services because it pays Walgreens to dispense prescriptions for drugs, including PSC generics, that Plaintiff IBEW 38 has approved for inclusion on its prescription drug formulary for distribution to its beneficiaries. Plaintiff IBEW 38 does not buy generic prescriptions for resale or other business purposes. Therefore, Plaintiff IBEW 38 qualifies as a consumer of Walgreens' pharmacy services.

In the alternative, Plaintiff IBEW 38 satisfies the consumer nexus test, which requires a plaintiff to plead that the defendant's conduct is ***either*** "directed to the market generally ***or*** otherwise implicates consumer protection concerns." *Vulcan Golf, LLC v. Google Inc*., 552 F. Supp. 2d 752, 777 (N.D. Ill. 2008). Plaintiffs allege Walgreens' conduct was directed toward the market in that its misrepresentations were communicated directly to consumers (including those

---

[13]     "Consumer" is defined as "any person who purchases ... merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. Ann. 505/1(e). The term "merchandise" includes "services." 815 Ill. Comp. Stat. Ann. 505/1(b).

in Illinois) who purchased PSC generics for personal use, (¶¶30, 32, 143, 147), and implicated consumer protection concerns by deceptively overcharging customers whose medical conditions require them to purchase PSC generics. (¶¶147, 152-53). *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534, 546 N.E.2d 33, 41 (1989) (consumer nexus test met "where plaintiff has alleged defendant published false information about [plaintiff's] prices for services"); *StunFence, Inc. v. Gallagher Sec. (USA), Inc.*, No. 01 C 9627, 2002 WL 1838128, at *6 (N.D. Ill. Aug. 12, 2002) (conduct that "will confuse and deceive the ultimate consumer" implicates consumer protection concerns); *Vulcan Golf*, 552 F. Supp. 2d at 777 (consumer nexus test satisfied by alleging "the defendants have engaged in a scheme that is at least in part intended to deceive internet users"); *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (consumer nexus test satisfied by alleging "CareerBuilder 'intended that general consumers and the general public rely on its unfair, unlawful and deceptive business practices'"). Thus, Plaintiff IBEW 38 has standing to sue under the ICFA.

### 2. Georgia Fair Business Practices Act

Walgreens wrongly claims that the Georgia Fair Business Practices Act ("GFBPA") applies only to consumers that are "natural persons." (Br. at 15). The GFBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." Ga. Code Ann. §10-1-393(a). [14] While "consumer" is defined as "a natural person," Ga. Code Ann. §10-1-392(a)(6), the term "consumer" modifies the type of transactions and practices that are actionable, not the type of plaintiff that has standing. Instead, the GFBPA provides that "[a]ny ***person*** who suffers injury or

---

[14] The GFBPA defines "consumer acts or practices" as "acts or practices intended to encourage consumer transactions," which are "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." Ga. Code Ann. §10-1-392(a)(7), (10).

damages . . . as a result of consumer acts or practices in violation of this part, . . . or whose business or property has been injured or damaged as a result of such violations may bring an action[.]" Ga. Code Ann. §10-1-399(a). "Person" is defined to include a "trust," like Plaintiff IBEW 38. Ga. Code Ann. §10-1-392(a)(24).

The GFBPA is expressly intended "to protect consumers **and legitimate business enterprises** from unfair or deceptive practices in the conduct of any trade or commerce[.]" Ga. Code Ann. § 10-1-391(a). *Cf. Inkaholiks Luxury Tattoos Georgia, LLC v. Parton*, 324 Ga. App. 769, 770, 751 S.E.2d 561, 563-64 (2013) (finding that the GFBPA "protects businesses from unfair or deceptive practices in the conduct of trade or commerce," where actual consumer confusion existed); *Abbasi v. Bhalodwala*, 149 F. Supp. 3d 1372, 1379-80 (M.D. Ga. 2015) (same). While the GFBPA does not provide business entities with a cause of action for a **competitor's** misrepresentations to the general consuming public, in so limiting the GFBPA, the Georgia Supreme Court specifically stated, "if a business, **as a consumer**, sustains damage, it may bring suit under OCGA §10-1-399(a)." *Friedlander v. PDK Labs, Inc.*, 266 Ga. 180, 180, 465 S.E.2d 670, 671 (1996) (citing Ga. Code Ann. §§10-1-391(a), 10-1-392(a)(7)). Plaintiff IBEW 38 certainly does not claim to be Walgreens' competitor, as Walgreens acknowledges. (Br. at 18). Rather, Plaintiff IBEW 38 alleges that Walgreens engaged in "deceptive . . . consumer acts or practices in trade or commerce" by misrepresenting that its true U&C prices were its PSC prices, and that Plaintiffs' "business or property has been injured" in that Walgreens reported to third-party payors fraudulently inflated prices and collected fraudulently inflated cost-sharing amounts from consumers, thereby omitting the "existence of . . . price reductions" in the sale of PSC generics in violation of Ga. Code Ann. §10-1-393(b)(11). "[T]o come within the [G]FBPA the deceptive activity must take place in the context of the consumer

18

marketplace." *Marrale v. Gwinnett Place Ford*, 271 Ga. App. 303, 307, 609 S.E.2d 659, 664 (2005). It is beyond dispute that Walgreens' misrepresentations to third-party payors and consumers regarding U&C prices and reimbursement and cost-sharing amounts occurred "in the context of the consumer marketplace." Thus, Plaintiff IBEW 38 can sue under the GFBPA.

### 3.     Missouri Merchandising Practices Act

According to the Missouri Supreme Court, "the literal words [of the Missouri Merchandising Practices Act ("MMPA")] cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001). The MMPA provides standing to "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes[.]" Mo. Ann. Stat. §407.025.1. "Person" is defined to include a "trust," like Plaintiff IBEW 38. Mo. Ann. Stat. §407.010(5). Citing no cases, Walgreens claims, however, that Plaintiff IBEW 38 does not have standing to sue under the MMPA because it did not purchase PSC generics for its own "personal, family or household purposes." (Br. at 15).

The Court should reject such a narrow interpretation of the MMPA because Plaintiff IBEW 38 paid for purchases of PSC generics for its beneficiaries' personal use. The fact that the Missouri Supreme Court does not require a direct transaction between the plaintiff and the defendant involving the sale of goods primarily for personal, family, or household purposes supports a broad interpretation. *See Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007) (the statute "contemplates that other parties, besides the direct purchaser or contracting party, who suffer damages resulting from the violator's prohibited conduct under the Act are included"). Furthermore, other courts that have interpreted similar statutory language have done so broadly, allowing legal entities to assert claims on behalf of personal users. *In re Bextra/Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 495 F. Supp. 2d 1027 (N.D. Cal.

2007) addressed an analogous situation, where plaintiffs, Indiana third-party payors, brought suit against pharmaceutical companies under the Indiana Deceptive Consumer Sales Act ("IDCSA") for plaintiffs' reimbursement of prescriptions of Celebrex and Bextra.  The *Bextra* court found that under the IDCSA, "a sale to a corporation 'for purposes that are primarily personal' qualifies as a consumer transaction within the meaning of the statute." *Id*. at 1037.  *See also In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 326 (E.D. Pa. 2011) (same, construing Pennsylvania's Unfair Trade Practices and Consumer Protection Law); *Sheet Metal*, 221 F. Supp. 3d at 231-33 (construing IDCSA).   Like in *Sheet Metal*, "[Walgreens] made misrepresentations about the [U&C] prices to TPPs directly to cause the TPPs to overpay." *Id*. Plaintiff IBEW 38's payments arose from sales of PSC generics to its beneficiaries to treat medical conditions, which qualifies as a purchase for personal purposes.  *Cf. In re Opana Er Antritrust Litig.*, No. 14 C 10150, 2016 WL 4245516, at *4 (N.D. Ill. Aug. 11, 2016) (denying motion to dismiss third-party payor's MMPA claim); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 416-17 (E.D. Pa. 2010) (same).

### C.      *Shady Grove* **Preempts the Purely Procedural Provisions Addressing Class Actions in the (a) GFBPA, (b) Louisiana Unfair Trade Practices Act, and (c) South Carolina Unfair Trade Practices Act (Claims 13, 15, and 26)**

As this Court recently and unambiguously held, the "ability to bring a class action is a procedural, not a substantive, right."  *Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11-CV-8758, 2017 WL 1196965, at *5 (N.D. Ill. Mar. 31, 2017) (Lee, J.).  Yet, without so much as citing, let alone discussing, the Supreme Court's binding decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), Walgreens wrongly claims that federal courts cannot allow a class to assert consumer protection claims arising under Georgia, Louisiana, or South Carolina law.  (Br. at 15-16).

In *Shady Grove*, five justices agreed that Rule 23 controls whether a class action could

proceed in federal court.  559 U.S. 393; *Hahn v. Walsh*, 762 F.3d 617, 631 n.30 (7th Cir. 2014). Accordingly, federal courts have not hesitated to sustain class claims brought under Georgia, Louisiana, and South Carolina law.  *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015) (denying motion to dismiss class claims under South Carolina Unfair Trade Practices Act ("SCUTPA")); *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017 WL 1010329, at *27-28 (S.D. Cal. Mar. 14, 2017) (same); *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 WL 5166014, at *32 (E.D. Tenn. June 24, 2015) (same); *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2015 WL 4755335, at *21 (N.D. Cal. Aug. 11, 2015) (same); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2012 WL 1366718, at *8 (N.D. Cal. Apr. 19, 2012) (same); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 652–54 (S.D. Cal. 2014) (denying motion to dismiss class claims under SCUTPA, GFBPA, and Louisiana Unfair Trade Practices Act ("LUTPA")); *Reed v. Dynamic Pet Prod.*, No. 15CV0987-WQH-DHB, 2016 WL 3996715, at *6 (S.D. Cal. July 21, 2016) ("[T]he class action ban in the LUTPA is procedural, not substantive[.]").

Walgreens advances no argument distinguishing the provision of the New York statute displaced in *Shady Grove* from the applicable Georgia, Louisiana, or South Carolina statutes. Indeed, no substantive differences exist.  *Compare* N.Y. C.P.L.R. 901(b) ("[A]n action to recover a penalty . . . may not be maintained as a class action.") *with* La. Rev. Stat. §51:1409(A) (persons suffering ascertainable loss "may bring an action individually but not in a representative capacity to recover actual damages") *and* S.C. Code §39-5-140(a) (persons suffering ascertainable loss "may bring an action individually, but not in a representative capacity, to recover actual damages") *and* G.A. CODE §10-1-399(a) (injured persons "may bring an action individually, but

not in a representative capacity, against the person or persons engaged in such violations"). Accordingly, the Court should deny Walgreens' motion to dismiss Plaintiffs' class claims brought under Georgia, Louisiana, and South Carolina law.

**D.    Plaintiff IBEW 38 States a Claim under the Minnesota Unlawful Trade Practices Act (Claim 18)**

Walgreens argues that Plaintiff IBEW 38 failed to allege that Walgreens "display[ed]" price quotations in violation of the Minnesota Unlawful Trade Practices Act ("MUTPA"). MUTPA provides that "[n]o person shall . . . display price tags or quotations in any form showing prices which are fictitiously in excess of the actual prices[.]" Minn. Stat. §325D.12(3). Courts have broadly interpreted "display" to encompass prices quoted electronically in emails or listed on websites. *See*, *e.g.*, *Nunez v. Best Buy Co.*, 315 F.R.D. 245, 249 (D. Minn. 2016).

Plaintiffs alleged that the fictitious cost-sharing and U&C amounts Walgreens electronically displayed and reported as part of its claims adjudication process constituted "price quotations" within the meaning of MUTPA. (¶¶49, 51-52, 57-58, 308). As part of that process, Walgreens electronically transmitted via interstate wire the cost-sharing amounts the pharmacy was required to collect from consumers as cost-sharing amounts. (¶49). These cost-sharing amounts were fictitious because they were calculated based off the fraudulently inflated U&C prices Walgreens reported. (¶51). Walgreens reported this fraudulently inflated U&C price as part of each prescription transaction and reported it on a Universal Claim Form. (¶¶52, 57-58). Walgreens' reporting of fraudulently inflated U&C prices on claim forms and in wire transmissions used in the claims adjudication process constituted price "quotations" under MUTPA. Thus, Walgreen's motion to dismiss the MUTPA claim must be denied.

**E.    Plaintiff IBEW 38 States Claims under the Minnesota Uniform Deceptive Trade Practices Act and the Georgia Uniform Deceptive Trade Practices Act (Claims 12 and 19)**

Plaintiffs have standing to bring claims for injunctive relief, including under Minnesota's Uniform Deceptive Trade Practices Act ("MUDTPA") and Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA").[15] To establish standing to pursue injunctive relief, Plaintiffs must demonstrate they are threatened with an injury that is "concrete and particularized" and "'actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983); *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Past harm, coupled with "continuing, present[,] adverse effects," can confer standing. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *see also Simic*, 851 F.3d at 738; *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1109-11 (E.D. Wis. 2016).

In arguing that Plaintiffs lack standing to pursue injunctive relief, Walgreens misrepresents Plaintiffs' allegations. (Br. at 19-20). Plaintiffs did not allege "they would not engage in the underlying transactions knowing 'what they know now.'" (*Id*. at 20).[16] In fact, the Consumer Plaintiffs alleged the opposite: because PSC generics are medically necessary, non-discretionary purchases, in order to "maintain continuity of [] medical care," Plaintiffs must continue to purchase PSC generics from Walgreens, "their established pharmacy with which they have a standing relationship and prescription history." (¶¶16, 19, 22, 25, 28, 33). Thus, Plaintiffs face "the prospect of paying additional inflated amounts in the future if Walgreens continues its wrongful conduct." (¶¶16, 19, 22, 25, 28). Moreover, Plaintiff IBEW 38 must continue to pay for beneficiaries' purchases regardless of the fact that it is aware of Walgreens'

---

[15]    Although only Plaintiff IBEW 38 brings the MDTPA and GDTPA claims for injunctive relief, Walgreens also challenges all Plaintiffs' standing to pursue injunctive relief as it pertains to their Declaratory Judgment Act claim. (Br. at 19-21). Although assessing whether a plaintiff has standing to pursue injunctive relief is not the correct legal standard for determining the sufficiency of a claim under the Declaratory Judgment Act (*see infra*, Section II.I), in an abundance of caution, Plaintiffs argue that the standing requirements are satisfied on behalf of all Plaintiffs, not just Plaintiff IBEW 38.

[16]    Unlike in Walgreens' cited cases, (Br. at 20), Plaintiffs could not have avoided purchasing PSC generics because the drugs were medically necessary.

conduct because there is no reason to believe that its beneficiaries are aware Walgreens is charging fraudulently inflated prices for PSC generics. (¶34). Thus, Plaintiffs clearly have alleged a "real and immediate" threat of future harm because they will continue to suffer the adverse effects of Walgreens' fraudulent pricing scheme. *See Le*, 160 F. Supp. 3d at 1109-11.

Walgreens cites *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014), to support its argument that once a plaintiff is aware of deceptive advertising, he or she can no longer can be deceived in the future. *Camasta*, however, is inapposite. *Camasta* unremarkably held a plaintiff lacked standing to pursue injunctive relief "based solely on the conjecture that because [defendant] harmed him in the past, they are likely to harm him in the future." *Id.* Walgreens simply overreads *Camasta*. *See Le*, 160 F. Supp. 3d at 1110-11. *Le* rejected the same argument that Walgreens now raises – that "awareness" of a deceptive pricing scheme automatically strips a plaintiff of Article III standing. *Id.* at 1109. Instead, *Le* held that the argument did not apply where, as here, "the complaint is aimed at a 'company-wide, pervasive, and continuous.'" *Id.* at 1110. Plaintiffs allege that Walgreens' deceptive, inflated U&C pricing scheme has been uniformly implemented as part of a concerted, years-long, pervasive campaign to mislead consumers and third-party payors that is ongoing and continues to this day. (¶¶8, 13, 16, 19, 22, 25, 28, 34, 66, 75, 77, 78, 81, 434). Thus, Plaintiffs face the real and immediate threat of overpaying to receive medically necessary prescription drugs absent equitable relief to enjoin Walgreens' fraudulent conduct.[17]

### F.     Plaintiff Bullard States a Claim under New York General Business Law §349 (Claim 23)

Walgreens argues that Plaintiff Bullard cannot satisfy the causation element of her claim

---

[17]     Walgreens contends Plaintiffs' willingness to return removes any likelihood that the alleged misrepresentations were material to their earlier purchases. (Br. at 20 n.12). The *Corcoran* court rejected this same argument where the plaintiffs alleged, as Plaintiffs here do, that access and continuity of care explain consumers continued patronage of the pharmacy. *Corcoran*, 169 F. Supp. 3d at 987.

under New York General Business Law ("GBL") §349, claiming that since Plaintiff Bullard participated in a Medicare Part D prescription drug insurance plan, she was not eligible for the PSC, and therefore could not have been injured. (Br. at 17).[18] This argument misstates Plaintiffs' claims. Plaintiffs do not claim injury as a result of having joined, or not joined, the PSC. Rather, Plaintiffs claim injury based on Walgreens' deceptive practice of billing Plaintiffs and their insurance providers based on an inflated U&C price, when the correct price was the lower cash price paid by the public – Walgreens' true U&C price. (¶¶5, 12, 23, 81-83). As the Seventh Circuit recently held in an analogous circumstance, that obligation is clearly present for consumers who have Medicare Part D prescription drug plans, like Plaintiff Bullard. *See Garbe*, 824 F.3d at 635, 643, 644. Plaintiff Bullard specially pleads that her injuries were "a direct and proximate result" of Walgreens' deceptive conduct that violated New York GBL §349. (¶376). Walgreens' causation argument therefore fails.

### G. Plaintiff IBEW 38 States a Claim Under the Ohio Deceptive Trade Practices Act (Claim 25)

Walgreens is wrong that Plaintiff IBEW 38 must be "in competition with Walgreens" to sustain its claim under the Ohio Deceptive Trade Practices Act ("ODTPA"). (Br. at 18). The ODTPA explicitly disclaims any such requirement. Ohio Rev. Code §4165.02(B) ("In order to prevail [on an ODTPA claim], a complainant need not prove competition between the parties to the civil action."). *See, e.g.*, *Helpling v. Rheem Mfg. Co.*, No. 1:15-CV-2247-WSD, 2016 WL 1222264, at *10-11 (N.D. Ga. Mar. 23, 2016) (rejecting argument that contractor needed to be in competition with defendant to bring an ODTPA claim); *Mulch Mfg., Inc. v. Advanced Polymer Sols., LLC*, 947 F. Supp. 2d 841, 864 n.23 (S.D. Ohio 2013) (same). Rather, the ODTPA confers standing on a "person who is likely to be damaged [or a] person who is injured by a person who

---

[18]     Walgreens recasts its reliance arguments made elsewhere as "causation" because reliance is not an element under GBL §349. *Koch v. Acker, Merrall & Condit Co*., 967 N.E.2d 675, 676 (N.Y. 2012).

commits a deceptive trade practice."  Ohio Rev. Code §4165.03(A)(1)-(2).  A "person" includes a "trust," like Plaintiff IBEW 38.  Ohio Rev. Code §4165.01(D).

Ohio courts look to the Lanham Act in interpreting the ODTPA.  *See*, *e.g.*, *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, at *4 (Ohio Ct. App. Mar. 16, 2006). Walgreens' cited cases, (Br. at 18), are inapposite in that each pre-dates or fails to consider the two-pronged test the Supreme Court adopted in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) for assessing whether Congress authorized suit under the Lanham Act.[19]  Under the first "zone-of-interests" inquiry, a plaintiff "must allege an injury to a commercial interest in reputation or sales."  *Id.* at 1389-90.  The second proximate-cause standard asks whether the alleged harm has "a sufficiently close connection to the conduct the statute prohibits."  *Id.* at 1390-91.  In employing this methodology, *Lexmark* eschewed any bright-line or categorical approach, indicating that a rule prohibiting suits by non-competitors would "read too much" into the term "unfair competition."  *Id.* at 1392; *see also id.* at 1394. Walgreens failed to argue, and thus has waived, that Plaintiff IBEW 38 does not meet these standards.  *Powell*, 68 F. Supp. 3d at 950 n.10.  And, in any event, Plaintiff IBEW 38, as a third-party payor, has over-reimbursed Walgreens for PSC generics and would not have done so but for Walgreens' alleged misrepresentations.  Thus, Plaintiff IBEW 38 has commercial interests that were directly injured by Walgreens, satisfying *Lexmark*'s standards.

### H.    Plaintiff Forth States a Claim under the Texas Deceptive Trade Practices Act (Claim 27)

Walgreens' attack against Plaintiff Forth's claim under the Texas Deceptive Trade Practices Act ("DTPA") repeats its mischaracterization of Plaintiffs' allegations and fails for that reason alone.  Plaintiff Forth pleads two violations of the Texas DPTA.  ***First***, she pleads that

---

[19]    Defendants' cited cases also are factually distinguishable where the plaintiffs in those cases were individual consumers, and not business entities like Plaintiff IBEW 38.

Walgreens violated a specifically enumerated prohibition by "failing to disclose . . . information [that] was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." Tex. Bus. & Com. Code §17.46(b)(24); *see* (¶417) (citing Section 17.46(b)(24)). Plaintiff Forth also pleads that she "would not have paid the inflated prices absent Walgreens' deception." (¶15). She has thus stated her claim for violations of Section 17.46(b)(24). *Corcoran v. CVS Health Corp., Inc*., No. 15-CV-3504 YGR, 2016 WL 4080124, at *4 (N.D. Cal. July 29, 2016) (denying motion to dismiss Section 17.46(b)(24) violations based on the same actions by CVS as Forth alleges against Walgreens). Contrary to Walgreens' contention (Br. at 19 n.11), as discussed in Section I.A, *supra*, Plaintiffs adequately plead a misrepresentation. (¶¶76, 111-12, 124-27).

*Second*, Plaintiff Forth also pleads that Walgreens violated the Texas DPTA by engaging in unconscionable practices. (¶¶415, 419) (citing Tex. Bus. & Com. Code §17.50(a)(3)). Walgreens' only argument in response relies on its mistaken contention that Plaintiffs' claims depend on whether "they chose[] to join the PSC program." (Br. at 19). Because that argument misstates the Complaint, Walgreens' argument must fail. It also fails because overcharging for prescription drugs is an unconscionable practice under the Texas DPTA where there is a knowledge "disparity among the parties" that renders the pharmacy's conduct "grossly unfair." *Corcoran*, 2016 WL 4080124, at *4 (denying motion to dismiss Texas DPTA claim for unconscionable practices). Plaintiff Forth likewise pleads a disparity of knowledge between Walgreens and herself that resulted in Walgreens taking advantage of her and Texas Class members in a grossly unfair manner. (¶¶417-19).

## I. Plaintiffs State a Claim under the Declaratory Judgment Act (Claim 29)

Walgreens misperceives the nature of Plaintiffs' claim for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*., which provides that "[i]n a case of

27

actual controversy" this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief based upon such a judgment. *See Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) (citing 28 U.S.C. §2201(a)); *see also* 28 U.S.C. §2202 (allowing "[f]urther necessary or proper relief based on a declaratory judgment"); *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can . . . be used as a predicate to further relief, including an injunction."). To fall within the ambit of a "case of actual controversy," the central question is whether "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1134 (7th Cir. 2012) ("As long as a live controversy exists between the parties, the district court has discretion to declare the rights of the parties."). Plaintiffs allege there is a continuing controversy relating to Walgreens' deceptive pricing scheme and that there is a real, immediate, and substantial risk of future harm because Walgreens' deceptive inflated U&C pricing scheme has been uniformly implemented as part of a concerted, years-long, pervasive campaign to mislead consumers and third-party payors that is ongoing and continues to this day. (¶¶8, 13, 16, 19, 22, 25, 28, 34, 66, 75, 77, 78, 81, 434). Plaintiffs further allege consumers' and third-party payors' beneficiaries' purchases of PSC generics are medically necessary, and thus, are non-discretionary purchases; as such, consumers and third-party payors' beneficiaries cannot, and are not required to, avoid future purchases of medically-necessary PSC generics from Walgreens, their established pharmacy with which they have a standing relationship and prescription history. (¶¶33-34). Therefore, Plaintiffs seek a declaration that Walgreens' conduct continues to violate the common law and consumer protection statutes and that, to comply with its legal obligations, Walgreens

28

must be required to cease its current deceptive and unfair U&C pricing practices.  (¶¶435-36).  In addressing the standard for standing to assert injunctive relief instead of the requirements to adequately state a claim under the Declaratory Judgment Act, (Br. at 19-21), Walgreens concedes that Plaintiffs' allegations are sufficient at the pleading stage.  *See Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1136 (E.D. Wis. 2016) (denying motion to dismiss Declaratory Judgment Act claim in light of allegations regarding the defendant's "longstanding, continuous, and pervasive price comparison strategies").

### III.    The Statute of Limitations is Tolled for Plaintiffs' Claims.

Walgreens prematurely seeks to dismiss Plaintiffs' common law claims prior to March 2012 and statutory claims prior to 2014, arguing that the statutes of limitations should not be tolled because Walgreens did not fraudulently conceal its fraudulent price scheme.  As this Court repeatedly has recognized, "the statute of limitations is an affirmative defense that is typically unsuitable for consideration at the motion to dismiss stage."  *Padilla v. Perez*, No. 15 C 5862, 2017 WL 345553, at *3 (N.D. Ill. Jan. 24, 2017) (Lee, J.); *Jovic v. L-3 Servs., Inc.*, 69 F. Supp. 3d 750, 765 (N.D. Ill. 2014) (Lee, J.)  (same).  At the pleading stage, the Court cannot resolve the factual questions enmeshed in the fraudulent concealment analysis, including how, where, and when Walgreens published the PSC prices, what Plaintiffs could or should have done to discover the PSC pricing scheme, or whether Plaintiffs could have determined how the PSC and U&C prices interacted.  Because the Complaint does not "plainly reveal[]" that Plaintiffs' action is untimely, the Court cannot grant Walgreens' motion to dismiss on the basis of tolling. *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 965–66 (N.D. Ill. 2015) (Lee, J.).

Plaintiffs also alleged Walgreens owed them a special duty to disclose its fraudulent pricing scheme and its failure to do so constitutes fraudulent concealment.  (¶¶95-107); *Chicago Park Dist. v. Kenroy, Inc.*, 78 Ill. 2d 555, 561-62, 402 N.E.2d 181, 184-85 (1980).  Walgreens

has acknowledged this special relationship.[20] Construing the allegations in the light most favorable to Plaintiffs, Plaintiffs properly alleged fraudulent concealment so as to toll the statute of limitations. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

## IV. DISMISSAL (IF ANY) SHOULD BE GRANTED *WITHOUT* PREJUDICE

Walgreens asks the Court to dismiss Plaintiffs' Complaint with prejudice and deny Plaintiffs leave to amend. Courts, however, should "freely give leave" to a party to amend its pleading "when justice so requires," Fed. R. Civ. P. 15, unless the moving party "repeatedly failed to cure deficiencies, or if the amendment would be futile." *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868-69 (7th Cir. 2013). That some Plaintiffs amended their complaint as permitted by the Rules (while others asserted their claims for the first time) does not, as Walgreens contends, justify dismissal with prejudice. *See In re Abbott Depakote S'holder Derivative Litig.*, 909 F. Supp. 2d 984, 1000 (N.D. Ill. 2012). Because there is no basis to conclude amendment would be futile, to the extent the Court is inclined to grant any part of Walgreens' Motion, any resulting dismissal should be without prejudice. *Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606, 610 (N.D. Ill. 2015) (Lee, J.).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion.

Dated: August 17, 2017

Respectfully submitted,

/s Erin Green Comite
Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 S. Main Street
P.O. Box 192

---

[20] *See, e.g.*, Walgreens Factsheet - Community Pharmacy, http://news.walgreens.com/fact-sheets/community-pharmacy/ (last visited Aug. 17, 2017) ("An increasing number of our pharmacies offer a private consultation room for pharmacists to answer patient questions and provide immunizations, *one of many ways we are providing personalized care and developing strong patient-pharmacist relationships*[.]").

Colchester, CT 06415
Telephone: 860.531.2632
*ecomite@scott-scott.com*

Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212.223.4478
*jguglielmo@scott-scott.com*

Melissa S. Weiner (*pro hac vice*)
Amy E. Boyle
Susan M. Coler
**HALUNEN LAW**
1650 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099
*weiner@halunenlaw.com*
*boyle@halunenlaw.com*

Andrew A. Lemmon
**LEMMON LAW FIRM LLC**
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone:  985.783.6789
Facsimile:   985.783.1333
*andrew@lemmonlawfirm.com*

Daniel K. Bryson (*pro hac vice*)
Jeremy R. Williams (*pro hac vice*)
**WHITFIELD, BRYSON & MASON, LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919.600.5000
Facsimile:  919.600.5035
*Dan@wbmllp.com*
*Jeremy@wbmllp.com*

Michael S. Brandner, Jr.
**BRANDNER LAW FIRM, LLC**
1100 Poydras St., Suite 1502

New Orleans, LA 70163
Telehone:  504.552.5000
Facsimile:  504.521.7550
*Michael@BrandnerLawFirm.com*

Joseph S. Tusa, Esq. (*pro hac vice*)
**TUSA P.C.**
P.O. Box 566
Southold, NY 11971
Telephone:  631.407.5100
Facsimile:  516.706.1373
*joseph.tusapc@gmail.com*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Erin Green Comite, an attorney, hereby certify that the foregoing **PLAINTIFFS'
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** was
electronically filed on August 17, 2017 and will be served electronically via the Court's ECF
Notice system upon the registered parties of record.


/s Erin Green Comite
Erin Green Comite