# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DOROTHY FORTH, TROY TERMINE, CYNTHIA RUSSO, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, LISA BULLARD, AND RICARDO GONZALES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | 17-cv-2246 |
| Plaintiffs, | ) ) | Judge John Z. Lee |
| v. | ) ) | |
| WALGREEN CO., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Dorothy Forth, Troy Termine, Cynthia Russo, Lisa Bullard, and Ricardo Gonzales ("Consumer Plaintiffs"), and Plaintiff International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund ("IBEW") (collectively, "Plaintiffs"), filed this putative class action against Defendant Walgreen Co. ("Walgreens"). Plaintiffs claim that Walgreens, the largest retail pharmacy in the United States, engaged in fraudulent pricing practices through its Prescription Savings Club, a discount generic drug program offered to customers paying without insurance. According to Plaintiffs, these fraudulent pricing practices sought to artificially inflate the "usual and customary prices" reported to health-insurance companies and related third-party payors and resulted in Plaintiffs overpaying for

generic drugs. Plaintiffs plead claims of fraud, negligent misrepresentation, and unjust enrichment, as well as violations of state consumer-protection statutes in nineteen states.[1] They also seek declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

Walgreens moves to dismiss all but one claim[2] in the First Amended Complaint for failure to state a claim, failure to plead the fraud claims with particularity, and lack of standing to pursue injunctive relief. For the reasons provided below, the Court grants in part and denies in part the motion to dismiss.

## Factual Background[3]

Walgreens is the largest retail pharmacy in the United States, with over 8,000 retail pharmacies in all fifty states. Am. Compl. ¶ 7, ECF No. 46. Its retail pharmacy operations are directed from its Deerfield, Illinois, headquarters, where its key executives are located. *Id.* ¶¶ 36, 39, 41.

Consumer Plaintiffs are individuals, who purchased generic versions of prescription medications at Walgreens either through private health insurance plans

---

[1]    Plaintiffs plead violations of state consumer protection statutes in the following states: Arizona, California, Colorado, Florida, Georgia, Illinois, Louisiana, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, North Carolina, Ohio, South Carolina, Texas, and Wisconsin. *See* Am. Compl. Counts IV–XXVIII. The Amended Complaint also includes a claim for violation of the Kansas Consumer Protection Act (Count XIV), but Plaintiffs have since withdrawn this claim. *See* Pls.' Resp. Mot. Dismiss at 15 n.11, ECF No. 62.

[2]    While Walgreens purports to move to dismiss the entire complaint, *see* Def.'s Mem. Supp. Mot. Dismiss at 2, it does not move to dismiss the unjust enrichment claim (Count III).

[3]    The following facts are taken from Plaintiffs' Amended Complaint and are accepted as true on review of the motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

or through federal health insurance such as Medicare, in the states of Texas, Louisiana, Florida, Massachusetts, New Mexico, Wisconsin, and South Carolina. *Id.* ¶¶ 14, 17, 20, 23, 26.

IBEW is an employee-benefit plan and a non-profit trust, administered by a board of trustees and established through collective bargaining by employers and labor unions. *Id.* ¶¶ 29, 30. It provides healthcare benefits to participants employed under various collective-bargaining agreements and their dependents. *Id.* ¶ 30. While IBEW is based in Ohio, its beneficiaries are located in Arizona, California, Colorado, Florida, Georgia, Iowa, Illinois, Kansas, Louisiana, Minnesota, Missouri, Nevada, North Carolina, Ohio, South Carolina, Texas, and Wisconsin. *Id.*

Since 2007, Walgreens has operated a discount generic-drug program called the "Prescription Savings Club" ("PSC"). *Id.* ¶¶ 4, 8. The PSC allows customers that pay directly for prescriptions, whether by cash, check, or credit, to purchase more than 500 widely prescribed generic drugs for $5, $10, and $15 for 30-day prescriptions, and $10, $20, and $30 for 90-day prescriptions, depending on the drug's tier classification. *Id.* ¶ 8. To take advantage of the PSC's prices, customers must pay a yearly membership fee of $20 per individual or $30 per family. Am. Compl. Ex. A, Value-Priced Medication List, ECF No. 46-1. All pharmacy patrons other than Medicare and Medicaid beneficiaries are eligible to participate in the PSC,

and a majority of Walgreens' direct-pay[4] customers pay the PSC prices. Am. Compl. ¶¶ 10, 11.

The complaint alleges that, at the same time it offered low prices through the PSC to direct-pay customers, Walgreens charged higher prices to customers purchasing those same drugs through private insurance or through Medicare or Medicaid. *Id.* ¶ 12. According to Plaintiffs, pharmacies cannot charge such consumers—or report to insurance companies or other third-party providers (such as Medicare and Medicaid)—a higher price for prescription drugs than what is known as the "usual and customary" ("U&C") price. *Id.* ¶ 5. Plaintiffs allege that the U&C price is known, throughout the pharmaceutical industry, as the price that the pharmacy charges the direct-pay public. *Id.*; *see also id.* ¶ 53 (providing examples of industry sources defining the U&C price). Plaintiffs contend that Walgreens' PSC prices qualified as the pharmacy's U&C prices, and that by reporting higher-than-PSC prices as its U&C prices on claims for reimbursement submitted to insurance companies and other third-party providers, Walgreens operated an undisclosed, dual-pricing scheme for generic PSC-listed drugs. *Id.* ¶ 12.

Plaintiffs allege significant damages due to Walgreens' dual-pricing scheme. *Id.* ¶ 13. Because the reported U&C price is used to calculate the amount of copayments, coinsurance or deductible amounts, Plaintiffs claim that Walgreens overcharged Plaintiffs and other consumers when it collected from them inflated

_____

[4] The Court uses "direct-pay" to indicate those customers, who pay for prescriptions without using health insurance, Medicare, or Medicaid.

copayments, coinsurance and deductibles. *Id.* ¶ 12. For example, Plaintiff Forth alleges that Walgreens overcharged her by $285 for fifteen prescription purchases of PSC-listed generic drugs. *Id.* ¶ 14. These purchases included six prescriptions for which she was charged more than $40, but for which the PSC-listed price was $15. *Id.* Plaintiff Forth and the other Consumer Plaintiffs claim that they were under the impression that, because they had health insurance with prescription benefits coverage, they would not be paying more than direct-pay customers for their prescriptions. *Id.* ¶¶ 15, 18, 21, 24, 27. All Consumer Plaintiffs anticipate filling future prescriptions for PSC-covered drugs at a Walgreens pharmacy to maintain continuity of medical care. *Id.* ¶¶ 16. 19, 22, 25, 28. Finally, IBEW asserts that because it reimburses or pays for its beneficiaries' purchases of prescription drugs, it was harmed by paying more for PSC-listed generic drugs than it would have if Walgreens had accurately reported its U&C prices. *Id.* ¶ 30.

## <u>Legal Standards</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013), At the same

time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, allegations of fraud must be pleaded in conformance with federal pleading standards specified in Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* The "circumstances constituting fraud" include the identity of the person who committed the fraud, the time, place, and content of the fraud, and the method by which the fraud was communicated to the plaintiff. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This is also known as the "who, what, when, where and how" standard. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). This requirement ensures that defendants have fair notice of plaintiffs' claims and grounds, providing defendants an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990).

A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable

inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)). "[I]f the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *Id*.

## Analysis

In the Amended Complaint, Plaintiffs assert claims of fraud (Count I), negligent misrepresentation (Count II), unjust enrichment (Count III), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV), and request injunctive and declaratory relief (Count XXIX). Plaintiffs Gonzales, Bullard, and Forth, each assert claims for, respectively, violations of the New Mexico Unfair Practices Act (Count XXII), the New York GBL § 349 (Count XXIII), and the Texas Deceptive Trade Practices Act (Count XXVII).

IBEW asserts claims for violations of the following state statutes:[5] the Arizona Consumer Fraud Act (Count V); the California Unfair Competition Law (Counts VI–VIII); the Colorado Consumer Protection Act (Count X); the Florida Deceptive Trade Practices Act (Count XI); the Georgia Uniform Deceptive Trade Practices Act and the Georgia Fair Business Practices Act (Counts XII–XVIII); the Louisiana Unfair Trade Practices and Protection Law (Count XV); the Massachusetts Consumer Protection Act (Count XVI); the Minnesota Prevention of Consumer Fraud Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota Deceptive Trade Practices Act (Counts XVII–XIX); the Missouri Merchandising Practices Act (Count XX); the Nevada Deceptive Trade Practices Act (Count XXI); the North Carolina Unfair and Deceptive Trade Practices Act (Count XXIV); the Ohio Deceptive Trade Practices Act (Count XXV); the South Carolina Unfair Trade Practices Act (Count XXVI); the Texas Deceptive Trade Practices Act (Count XXVII); and the Wisconsin Deceptive Trade Practices Act (Count XXVIII).[6]

Walgreens moves to dismiss all claims but the unjust enrichment claim. For the following reasons, the Court grants Defendants' motions to dismiss the claims for negligent misrepresentation (Count II) and violation of the Missouri Merchandising

---

[5] These plaintiffs also join IBEW on the following counts: Russo (Count XI); Termine (Count XV); Bullard (Count XVI); and Gonzales (Count XXVI and XXVIII).

[6] IBEW also asserts claims in the Amended Complaint for violations under the California Legal Remedies Act (Count IX) and the Kansas Consumer Fraud Act (Count XIV), but it has since withdrawn those claims. Pl.'s Resp. Mot. Dismiss at 15 n.11.

Practices Act (Count XX).  The Court denies Walgreens' motion to dismiss in all other respects.

## I.     Illinois Fraud and Negligent Misrepresentation Claims

To state a claim for fraud in Illinois, a plaintiff must plead: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996).  The elements of negligent misrepresentation in Illinois are similar: "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by defendant, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such reliance, and (6) a duty owed by defendant to plaintiff to communicate accurate information." *Rosenstein v. Standard & Poor's Corp.*, 636 N.E.2d 665, 667 (Ill. 1993).  The two causes of action differ in two ways: first, fraud requires a defendant's knowledge that the statement was false, whereas negligent misrepresentation requires only the defendant's carelessness or negligence as to the truth of the statement; and second, negligent misrepresentation requires a duty on the part of the defendant to communicate accurate information to the plaintiff.

Walgreens asserts that the fraud and negligent misrepresentation claims in the Amended Complaint should be dismissed because Plaintiffs do not plausibly

allege (1) any false statements of fact; (2) Plaintiffs' reasonable reliance on any such statements; or (3) any legal duty Walgreens had to Plaintiffs, as required for a claim of negligent misrepresentation. Walgreens also contends that Plaintiffs failed to plead the fraud claim with the particularity required under Rule 9(b).

For the following reasons, the Court denies Walgreens' motion to dismiss the fraud claim and grants the motion to dismiss the negligent representation claim.

## A. False Statement of Material Fact

According to Plaintiffs, Walgreens made false statements every time it reported the higher-than-PSC prices to insurers as U&C prices, instead of accurately reporting its PSC prices as U&C prices. Am. Compl. ¶¶ 75, 76. Walgreens moves for dismissal of the fraud and negligent misrepresentation claims for failure to state a claim on the basis that Plaintiffs have not plausibly alleged that reporting higher-than-PSC prices to insurers constituted a false statement. Walgreens makes four arguments for why such an allegation is implausible: (1) that the definition of U&C is "often" defined by contracts between insurance providers and Walgreens, and that without mentioning such contracts, Plaintiffs have failed to allege that Walgreens was required to report PSC prices as its U&C prices, Def.'s Mem. Supp. Mot. Dismiss at 8, ECF No. 54; (2) that PSC prices could not plausibly be alleged to be U&C prices because direct-pay customers need to opt-in to the PSC and pay a yearly membership fee to access those prices, *id.* at 6; (3) that information about the PSC was widely available, *id.* at 6, 7, 9; and (4) that Plaintiffs have not pleaded that the false

statements were made to them directly, *id.* at 9. None of these theories support dismissal of the fraud claim at this stage.

First, Walgreens contends that Plaintiffs fail to plead any "factual allegations to support [their] bald legal conclusion that the definitions of the term 'U&C pricing' set out in those contracts required Walgreens to report the prices offered to PSC members as its U&C prices." *Id.* at 8. But this is not the basis of Plaintiffs' claim. Rather, Plaintiffs' allegations (which must be taken as true for the purposes of this motion) claim that U&C prices are known throughout the pharmaceutical industry as "the price the pharmacy charges the direct-pay public," Am. Compl. ¶ 5, and they provide examples of industry sources defining U&C prices as such, *id.* ¶ 53.[7]

Walgreens' next argument is that, because cash-paying customers need to opt in to the PSC and pay a yearly membership fee to access PSC prices, such prices cannot qualify as U&C prices. Def.'s Mem. Supp. Mot. Dismiss at 6. Although Walgreens does not develop this argument further, Walgreens appears to imply that prices that can only be accessed with an annual membership fee cannot qualify as prices "charged to the cash-paying public." But the Seventh Circuit recently rejected a substantially similar argument, where a large retailer argued that pharmacy prices offered through a membership program with an annual fee of $10 did not qualify as "usual and customary" prices for the purposes of reporting prices to Medicare.

---

[7] Of course, to the extent that a particular third-party payor's agreement with Walgreens defined U&C prices in a particularized way and Walgreens' prices for that particular payer were consistent with that definition, this would undercut Plaintiffs' claim. But such factual issues cannot be resolved without further discovery.

*United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 643–44 (7th Cir. 2016).  The

Seventh Circuit explained that because "Kmart offered the terms of its 'discount

programs' to the general public and made them the lowest prices for which its drugs

were widely and consistently available, the Kmart 'discount' prices at issue

represented the 'usual and customary' charges for the drugs."  *Id.* at 645.

Here, Plaintiffs have plausibly alleged that the PSC prices qualified as U&C

prices and that Walgreens made false statements of fact every time it reported

higher-than-PSC prices as U&C prices to insurance providers.  PSC membership was

offered to the general public at a nominal fee of $20 per year.[8]  *See* Value-Priced

Medication List at 5.  Plaintiffs have also pleaded that the majority of Walgreens'

cash-paying customers pay no more than the PSC prices, Am. Compl. ¶ 11, that

Walgreens' reported U&C prices are "up to 5 times its own PSC prices," *id.* ¶ 82, and

that while Walgreens' PSC prices accord with the U&C prices charged by

competitors, Walgreens' reported U&C prices are "up to 11 times the U&C prices

reported by some of its most significant competitors," *id.*  Other than attempting to

distinguish *Garbe* as occurring in the Medicaid regulatory context,[9]  *see* Def.'s Rep.

---

[8]     The price for PCS membership was frequently less than the price difference between
PSC prices and the prices charged to the Consumer Plaintiffs.  For example, on 1/31/13 and
2/23/13, Plaintiff Forth paid $40 for a $15 PSC drug; on 7/22/14 and 9/2/14, she paid $59.89
for a $15 PSC drug; on 4/7/15, she paid $45.08 for a $15 PSC drug; on 6/6/15, she paid $40.38
for a $5 PSC drug; and on 7/10/15, she paid $45.77 for a $5 PSC drug.  Am. Compl. ¶ 14.

[9]     Although plaintiffs in *Garbe* relied upon the definition of "usual and customary" found
in Medicare regulations, *see* 42 C.F.R. §  423.100, Plaintiffs here rely upon the industry
definition of what constitutes "usual and customary" prices.  *See* Am. Compl. ¶ 5.  Whether
such a standard exists (and what it is) is something that Plaintiffs must prove at trial, but
for the purpose of assessing the viability of Plaintiffs' fraud claim, the Court must assume
that such a standard exists as Plaintiffs have alleged.

Mot. Dismiss at 2, ECF No. 66, Walgreens does not respond to Plaintiffs' line of argument.

Walgreens' final two arguments are similarly unconvincing. Walgreens argues, in passing and without any legal support, that Plaintiffs cannot plausibly plead a misstatement occurred because they do not allege the statement was made to them directly. Def.'s Mem. Supp. Mot. Dismiss at 9. But Plaintiffs assert that Walgreens communicated misstatements to the Consumer Plaintiffs each time it charged them cost-sharing amounts based on higher-than-PSC prices. Pls.' Resp. Mot. Dismiss at 7, ECF No. 62. And Walgreens does not provide any basis for its argument that the public availability of information about the PSC program somehow demonstrates that Plaintiffs cannot plead a plausible misrepresentation of fact. *See* Def.'s Rep. Supp. Mot. Dismiss at 2–3. In any event, Plaintiffs have not alleged that Walgreens concealed its PSC program. Instead, Plaintiffs contend that Walgreens "deceived Plaintiffs by reporting U&C prices significantly above the prices available to members of the [PSC] program, and then charged Plaintiffs inflated copays as a result of their deceitful practice." Pls.' Resp. Mot. Dismiss at 8 (citing *Corcoran v. CVS Health Corp*, 169 F. Supp. 3d 970, 987 (N.D. Cal. 2016)).

For the above reasons, Walgreens' motion to dismiss the fraud and negligent misrepresentation claims on the basis of failure to plead a misstatement of fact is denied.

## B.     Reasonable Reliance

Walgreens also seeks to dismiss Plaintiffs' fraud and negligent misrepresentation claims for failure to state a claim, on the grounds that Plaintiffs fail to plead reasonable reliance.

According to Walgreens, reliance on any misrepresentations would have been unreasonable, because information about the prices was publicly available. Walgreens appears to imply that, because the Consumer Plaintiffs[10] could have researched the PSC and compared prices, it was unreasonable for them to purchase their drugs through insurance and hence rely on Walgreens' misreporting of U&C prices.   Def.'s Mem. Supp. Mot. Dismiss at 9–10.   But resolution of such a fact-intensive inquiry is not appropriate at the motion-to-dismiss stage.   *See Glazer v. Abercrombie & Kent, Inc.,* No. 07C2284, 2007 WL 3120055, at *2 (N.D. Ill. Oct. 23, 2007) ("Based on the specific facts of this case, the issue of whether plaintiffs' reliance on certain documents and statements was reasonable is not appropriate for resolution at the Rule 12(b)(6) motion to dismiss stage of the proceedings." (citing *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 370 (7th Cir. 1997))); *Mfrs. Life Ins. Co. v. 1 Animation Network, Inc.*, No. 04 C 8105, 2005 WL 1950666, at *2 (N.D. Ill. Aug. 10, 2005) ("The court cannot determine at the pleadings stage whether there

---

[10]      Walgreens never explicitly states that they are focused on the Consumer Plaintiffs, but none of their arguments account for its interactions with IBEW, a third-party payor.  As such, they have waived any argument that IBEW failed to state a claim due to lack of reliance for the purpose of this motion.  *See Godbole v. Ries,* 2017 WL 219506, at *2 (N.D. Ill. Jan. 19, 2017) ("The Court is not required to construct arguments for [parties]." (citing *Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado,* 771 F.3d 980, 987 (7th Cir. 2014))).

was reasonable reliance in the absence of any evidence."). In any event, Plaintiffs have plausibly pleaded that because they paid premiums for health insurance with prescription benefits coverage, they believed that they would pay "at least the same as and not more than a direct-pay customer" for prescriptions filled at Walgreens.[11] Am. Compl. ¶¶ 15, 18, 21, 24, 27. Walgreens' motion to dismiss the fraud and negligent misrepresentation claims on the basis of failure to plead reasonable reliance is therefore denied.

## C.    Duty

To state a claim for negligent misrepresentation, as distinct from fraud, "plaintiff's complaint must first allege facts establishing a duty owed by the defendant to communicate accurate information." *Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998). Walgreens argues that Plaintiffs have not sufficiently pleaded that Walgreens owes Plaintiffs a duty to communicate accurate information. Def.'s Mem. Supp. Mot. Dismiss at 11. The Court agrees.

For their part, Plaintiffs contend that Walgreens "owes a duty to provide accurate information regarding the prices of generic prescription drugs" due to its role "[a]s a pharmacy providing prescription medication to consumers." Am. Compl. ¶ 102. Plaintiffs further identify a duty in the "Code of Ethics for Pharmacists,"

---

[11]    Walgreens further argues that Plaintiffs' statements that they plan on filling future prescriptions for PSC Generics at a Walgreens pharmacy to maintain continuity of medical care "exclude[ ] any notion that the Plaintiffs could have reasonably relied on any alleged misrepresentation in the first place." Def.'s Mem. Supp. Mot. Dismiss at 9–10 (citing Am. Compl. ¶¶ 16, 19, 22, 25, 28). But Walgreens provides no explanation of why Plaintiffs' plans for their future medical care are relevant to the reasonableness of their reliance on Walgreens' past misstatements.

which Plaintiff claims "mandates Walgreens' pharmacies and the pharmacists within the pharmacies to tell the truth and to assist individuals in making the best use of medications." *Id*. But in the context of a negligent misrepresentation claim, the Illinois Supreme Court only recognizes a duty to communicate accurate information where necessary "to avoid negligently conveying false information that results in physical injury to a person or harm to property," or "to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions." *Brogan*, 692 N.E.2d at 278 (internal citation omitted). The former does not apply, and Plaintiffs do not plausibly allege that Walgreens is in the business of supplying information for the guidance of others in their business transactions. *See Fireman's Fund Insur. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (Ill. 1997) *(*holding that one is not in the business of supplying information for the guidance of others in their business transactions if "the information that is supplied is merely ancillary to the sale or in connection with the sale of merchandise or other matter"). Accordingly, Walgreen's motion to dismiss the negligent representation claim on this basis is granted.

### D. Rule 9(b) Heightened Pleading Standard

According to Walgreens, the fraud and negligent misrepresentation claims must also be dismissed under Rule 9(b) for failing to sufficiently address the "who, what, when, where and how" standard. Def.'s Mem. Supp. Mot. Dismiss at 4–5 (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)).

Walgreens argues that Plaintiffs have impermissibly relied on "information and belief" as the basis for their factual allegations.[12] Def.'s Mem. Supp. Mot. Dismiss at 5. But Plaintiffs sufficiently allege the "who": Walgreens. *Id.* ¶¶ 7, 8, 12, 13. They also provide details of the "what" and "how" of the fraud: they allege that Walgreens was aware of the requirement that it report the price charged to the direct-pay public as the U&C price when adjudicating claims, *id.* ¶¶ 54–59, but that Walgreens reported higher non-PSC prices as U&C prices when adjudicating claims, with the goal of charging insured customers artificially inflated prices, *id.* ¶¶ 64–66, 111–113. Plaintiffs also allege that the PSC was formed in 2007 and that Walgreens has been fraudulently reporting higher non-PSC prices as U&C prices to insurers since then. *Id.* ¶¶ 8, 12, 13. Plaintiffs also identify the states where each plaintiff is domiciled and allegedly made purchases of PSC-listed generics. *See, e.g., id.* ¶¶ 14, 23. Because the well-pleaded complaint describes the "who, what, when, where and how" of the alleged fraud in detail, the Court denies the motion to dismiss the claims pursuant to Rule 9(b).

---

[12]   Walgreens is correct that Plaintiffs assert "information and belief" as the basis for some of their allegations. *See, e.g.,* Am. Compl. ¶ 11 ("Upon information and belief, the majority of Walgreens' direct-pay customers pay no more than the PSC Prices."). However, the majority of the factual allegations that are asserted "upon information and belief" are assertions about the scale and the purpose of the alleged fraud, not about the basic "who, what, when, where and how." *See, e.g., id.* ¶ 51 ("Upon information and belief, Walgreens uniformly administers its fraudulent U&C pricing scheme such that it uses the same inflated U&C price for a particular PSC Generic that it reports and charges to Plaintiffs and the Class."); *id.* ¶ 65 ("Upon information and belief, Walgreens implemented the PSC program as a scheme to maximize reimbursements from third-party payors and payments from consumers through fraudulently inflated U&C prices, while still remaining competitive for direct-pay prescription drug customers.").

In summary, the Court denies the motion to dismiss the fraud claim, finding that Plaintiffs met the Rule 9(b) pleading standard, as well as plausibly alleged that Walgreens made false statements of fact and that Plaintiffs reasonably relied on those misstatements. The Court grants Walgreens' motion to dismiss the negligent representation claim on the basis that Plaintiffs cannot plead that Walgreens had a legal duty of the type necessary to sustain a negligent misrepresentation claim.

## II.     State Consumer Law Claims

Walgreens argues that Plaintiffs' claims for violations of state consumer laws (Counts IV–XXVIII) should be dismissed because Plaintiffs do not plausibly allege deceit, fraud, or misrepresentation, which Walgreens asserts is an element of all the state consumer law claims alleged by Plaintiffs. Def.'s Mem. Supp. Mot. Dismiss at 13. It next contends that the state consumer-protection-law claims that are brought solely by IBEW (Counts V–X, XII–XIV, XVII–XXI, XXIV, XXV), as well as Count IV (brought by all Plaintiffs, including IBEW) should be dismissed because IBEW cannot sue on behalf of its beneficiaries. *Id.* at 8 n.7. Walgreens further argues that IBEW lacks a right of action under some of the statutes because IBEW does not qualify as a "consumer" under those statutes' definitions (Counts IV, XIII, and XX), *id.* at 14, because IBEW cannot plead that Walgreens "displayed" its prices (Count XVIII), *id.* at 16–17, and because IBEW cannot plead that it was in competition with Walgreens (Count XXV), *id.* at 18.

Walgreens also moves to dismiss claims under three other statutes (Counts XIII, XV, and XXVI) because those statutes prohibit class actions. *Id.* at 15–16. It

further seeks to dismiss a claim by Plaintiff Bullard for violation of New York's General Business Law § 349 (Count XXIII), *id.* at 17–18, arguing that she cannot plausibly plead causation, and a claim by Plaintiff Forth for violation of the Texas Deceptive Trade Practices Act (Count XXVIII), contending that Plaintiff Forth has not plausibly alleged an unconscionable action, *id.* at 18–19.

For the following reasons, the Court grants Walgreens' motions to dismiss the claims for violation of the Missouri Merchandising Practices Act (Count XX) and denies Walgreens' motions to dismiss all other claims for violations of state consumer laws.

### A.     Failure to Allege Deceit, Fraud, or Misrepresentation

Walgreens seeks to dismiss all of Plaintiffs' claims for violations of state consumer-protection laws for failure state a claim under Rule 12(b)(6).  *Id.* at 13. Walgreens argues, without any supporting citations, that each of the state consumer protection laws of which Plaintiffs allege violations "require[ ] the defendant to have engaged in some form of deceit, fraud, or misrepresentation," and because Plaintiffs have not so alleged, those claims must be dismissed.  *Id.*  Even if Walgreens had not waived this argument by failing to provide any supporting reasoning or authority, *see M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman–Spencer Agency, Inc.,* 845 F.3d 313, 321 (7th Cir. 2017), the Court has already denied Walgreens' motions to dismiss Plaintiffs' fraud claim on this basis.

## B.     IBEW's Ability to Assert Claims of Beneficiaries

Walgreens also moves to dismiss the state consumer protection statute claims that are brought by IBEW in one fell swoop, arguing that "it is nonsensical to believe that IBEW can represent 'all TPPs [third-party payors] nationwide.'"  Def.'s Mem. Supp. Mot. Dismiss at 8.   But the ability of IBEW to adequately represent the interests of various putative class members is an inquiry better left to the class certification stage, rather than the pleading stage.  *See* Fed. R. Civ. P. 23(a); *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 599–600 (whether an association is an adequate class representative under Rule 23 is distinct from the question of standing).[13]  This is also true with respect to Walgreens' cursory argument that IBEW cannot represent similarly situated third-party payors.  *See* Def.'s Mem. Supp. Mot. Dismiss at 8–9.

## C.     IBEW as a "Consumer"

Walgreens moves to dismiss claims brought by IBEW for violations of three[14] state consumer protection statutes: the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV), the Georgia Fair Business Practices Act (Count XIII), and the Missouri Merchandising Practices Act (Count XX).  Walgreens argues

---

[13]     In a footnote, Walgreens appears to challenge IBEW's standing to pursue the state consumer protection statutory claims on behalf of its members.  Def.'s Mem. Supp. Mot. Dismiss at 8 n.7.  But this argument is half-baked.  And, as we shall see, the answer to this question depends on whether IBEW falls within the language of the particular statute at issue.

[14]     Walgreens also moves to dismiss Plaintiffs' claims for violations of the California Consumer Legal Remedies Act (Count IV) and the Kansas Consumer Fraud Act (Count XXIV) on this basis, but Plaintiffs have since withdrawn these claims.  Pl.'s Resp. Mot. Dismiss at 15 n.11.

that, because IBEW is not a "consumer" under those statutes, it lacks a private right of action to sue. Def.'s Mem. Supp. Mot. Dismiss at 14. Walgreens is correct as to the Missouri Merchandising Practices Act, but incorrect as to the Illinois Consumer Fraud and Deceptive Business Practices Act and the Georgia Fair Business Practices Act.

### 1. Illinois Consumer Fraud and Deceptive Business Practices Act

Walgreens contends that the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) limits private consumer-fraud claims to individual "consumers," defined by statute as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." Def.'s Mem. Supp. Mot. Dismiss at 15 (citing 815 Ill. Comp. Stat. Ann. 505/1(e)). According to Walgreens, IBEW does not qualify as a "consumer" and, therefore, cannot sue under the ICFA.[15] *Id.*

But Walgreens ignores the fact that "person" is defined to include business entities, associations, and trusts. 815 Ill. Comp. Stat. Ann. 505/1. And, under Illinois law, a business entity can sue for violations under the act if it can show "a personal injury caused by the allegedly fraudulent or deceptive acts," *Skyline Int'l Dev. v. Citibank, F.S.B.*, 706 N.E.2d 942, 946 (Ill. App. Ct. 1998), or if it is "able to allege that the challenged conduct 'involves trade practices addressed to the market

---

[15] The Consumer Plaintiffs join IBEW in alleging a violation of the ICFA, but Walgreens has moves to dismiss only the claim as asserted by IBEW. *See* Def.'s Mem. Supp. Mot. Dismiss at 14–15.

generally or otherwise implicates consumer protection concerns.'" *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 955 (N.D. Ill. 2016) (citing *Indus. Specialty Chem., Inc. v. Cummins Engine Co., Inc.,* 902 F. Supp. 805, 811 (N.D. Ill. 1995)). Here, the complaint adequately alleges that IBEW suffered injury as a result of the purported practices. Furthermore, the allegations, if true, sufficiently implicate consumer protection concerns as to allow IBEW to sue under the statute. Accordingly, Walgreens' motion to dismiss the ICFA claim asserted by IBEW (Count IV) is denied.

### 2.    Georgia Fair Business Practices Act

Walgreens also moves to dismiss IBEW's claims under the Georgia Fair Business Practices Act (GFBPA) (Count XIII), asserting that it applies only to "natural persons." Def.'s Mem. Supp. Mot. Dismiss at 15 (citing Ga. Code. Ann. § 10-1-392(a)(6)). In support, Walgreens relies on *Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.,* 95 F. Supp. 3d 886, 908 (D. Md. 2015).

In turn, Plaintiffs argue that the term "consumer" is only intended to modify the type of transactions and practices that are actionable, not the type of plaintiff that can sue. *See* Ga. Code Ann. §10-1-393(a) (prohibiting "[u]nfair or deceptive acts or practices in the conduct of *consumer* transactions and *consumer* acts or practices in trade or commerce") (emphasis added); §10-1-399(a), §10-1-392(a)(24) (allowing an action to be brought by "[a]ny person who suffers injury or damages . . . as a result of *consumer* acts or practices in violation of this part, . . . or whose business or property has been injured or damaged as a result of such violations," with "person" defined to

include business entities and trusts) (emphasis added). Along these lines, Plaintiffs point out that §10-1-399 authorizes "[a]ny person who suffers injury or damages . . . as a result of consumer acts or practices in violation of [the statute]" to file suit and that "person" is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity. Ga. Code. Ann. § 10-1-392(a)(24).

The Court is persuaded that Plaintiffs have the better argument. Although the *Pasternak* court was right that the definition of "consumer" was amended in 1996 to apply only to "natural persons," the statute by its plain language allows "persons," including trusts and incorporated and unincorporated associations, to file private causes of action. Thus, business entities have the capacity to sue under the act, but the allegedly deceptive actions and practices that are the subject of the suit must be those directed at natural persons. This is consistent with the Georgia appellate court's holding in *Inkaholiks Luxury Tattoos Georgia, LLC. v. Parton*, 751 S.E.2d 561, 563–64 (Ga. App. Ct. 2013), which recognized that businesses can sue for trademark infringement under the GFBPA, because such actions are intended to confuse consumers. *Accord Abbasi v. Bhalodwala*, 149 F. Supp. 3d 1372, 1279–80 (M.D. Ga. 2015).[16] Accordingly, Walgreens' motion to dismiss Count XIII as to IBEW is denied.

---

[16] That said, IBEW may only sue to remedy its own individual damages. It may not sue in a representative capacity on behalf of its members. *See Friedlander v. PDK Labs, Inc.,* 465 S.E.2d 670, 671 (Ga. 1996).

### 3.    Missouri Merchandising Practices Act

Finally, Walgreens moves to dismiss IBEW's claims under the Missouri Merchandising Practices Act (MMPA) (Count XX), as the MMPA permits suit only for a "person who purchases or leases merchandise primarily for personal, family or household purposes," and IBEW does not allege that it purchased prescriptions for its own personal, family or household purposes.  Def.'s Mem. Supp. Mot. Dismiss at 15 (citing Mo. Ann. Stat. § 407.025(1)).  Here, too, Plaintiffs point out that "person" is defined to include a "trust," like IBEW.  Pls.' Resp. Mot. Dismiss at 19 (citing Mo. Ann. Stat. § 407.010(5)).  Plaintiffs argue that IBEW can bring suit under the statute because IBEW paid for prescriptions for the personal use of its beneficiaries.  *Id.*

Several courts have held that health plans or other third-party payors do not have a private right of action under the MMPA for purchases the entity made for beneficiaries.  *See In re Express Scripts*, *Pharmacy Benefits Mgmt. Litig.,* No. MDL No. 1672, 2006 WL 2632328, at *10 (E.D. Mo. Sept. 13, 2006) (finding that a health-benefit plan's purchase of pharmacy benefit management services were for a business purpose—to serve the plan's clients—rather than for the plan's personal, family, or household purposes); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *12 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ("Although the term 'person' explicitly includes corporations like GEHA, the [MMPA] has been interpreted as requiring that a person purchase the property for his, her or its own 'personal, family or household purposes.'"); *United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku*

*Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1082–83 (N.D. Cal. 2014) (dismissing a health care plan's claims under the MMPA on the basis that the relevant purchases were not made for the plan's own personal, family or household purposes). The Court finds the reasoning in these cases persuasive.[17] Because IBEW did not purchase prescription drugs for its own use, the Court grants Walgreens' motion to dismiss the MMPA claim on that basis.

In sum, the Court denies Walgreens' motion to dismiss IBEW's claims under the ICFA (Count IV) and the GFBPA (Count XIII), but grants its motion to dismiss IBEW's claims under the MMPA (Count XX).

### D. Statutes Prohibiting Class Actions

Walgreens contends that Plaintiffs' claims under the GFPBA (Count XIII), the Louisiana Unfair Trade Practices and Consumer Protection Act (Count XV), and the South Carolina Unfair Trade Practices Act (Count XXVI) must be dismissed for failure to state a claim, as those statutes prohibit class actions. Def.'s Mem. Supp. Mot. Dismiss at 15. But Plaintiffs have not yet even moved for class certification. Whether Plaintiff Termine, for example, can bring an individual claim under the Louisiana Unfair Trade Practices and Consumer Protection Act is unaffected by

---

[17] The difference between the MMPA and the GFBPA is that the latter allows any "person who suffers injury or damage" as a result of the alleged violations to file a private cause of action (so long as the challenged actions were directed at natural persons). Ga. Code Ann. §10-1-392(a)(24). By contrast, MMPA expressly limits private causes of action to any "person who purchases or leases merchandise primarily for personal, family or household purposes." Mo. Ann. Stat. § 407.025(1).

whether the statute prohibits class actions. The Court therefore denies the motion to dismiss on this basis as being premature.

### E.     Minnesota Unlawful Trade Practices Act

IBEW asserts a claim (Count XVIII) for violation of the Minnesota Unlawful Trade Practices Act (MUTPA), alleging that Walgreens violated Minn. Stat. Ann. § 325D.12(3) (West 2017), which provides that "[n]o person shall, in connection with the sale of merchandise at retail, . . . display price tags or price quotations in any form showing prices which are fictitiously in excess of the actual prices at which such merchandise is regularly and customarily sold at retail . . . ." Arguing solely that IBEW fails to plead that Walgreens "display[ed]" the relevant prices, Walgreens moves to dismiss Count XVIII for failure to state a claim. Def.'s Mem. Supp. Mot. Dismiss at 18.

For its part, IBEW contends that the inflated prices reported and charged to IBEW "constitute 'price quotations'" within the meaning of the act, Am. Compl. ¶ 308, and that, by electronically reporting inflated U&C amounts during the claims adjudication process, Walgreens "displayed" those price quotations within the meaning of MUTPA. Pls.' Resp. Mot. Dismiss at 22. Walgreens contends that such a communication of prices does not qualify, as a matter of law, as a "display." Def.'s Mem. Supp. Mot. Dismiss at 18.

MUTPA does not define "display," and there is effectively no case law on § 325D.12(3).[18] Minnesota law dictates that, "[w]hen construing the language of a statute, [courts] must give words and phrases their plain and ordinary meaning." *Johnson v. Cook Cty.*, 786 N.W.2d 291, 293 (Minn. 2010) (citing Minn. Stat. Ann. § 645.08 (2008)). "When there is no applicable statutory definition, [courts] often consult dictionary definitions to discern a word's plain meaning." *Wayzata Nissan, LLC v. Nissan N. Am., Inc.*, 875 N.W.2d 279, 286 (Minn. 2016). A typical dictionary definition defines "display" to have several meanings, including "to present to view," "to exhibit ostentatiously," "to show (images or information) on a screen," and "to manifest or reveal." *Display*, The American Heritage Dictionary of the English Language (5th ed. 2018). *See also Wayzata Nissan*, 875 N.W. 2d at 286 (consulting the American Heritage Dictionary for the definition of "dealership").

Given the word's context in the provision, the Court interprets "display" in § 325D.12(3) to mean "to present for viewing." This construction is consistent with the context in which the term appears—"[n]o person shall . . . display price tags or price quotations in any form showing prices which are fictitious." *Id.* Such a

---

[18] Both parties rely on *Nunez v. Best Buy Co., Inc.,* which appears to be the only case citing this provision of MUTPA. *See* Pls.' Resp. Mot. Dismiss at 22; Def.'s Mem. Supp. Mot. Dismiss at 18 (both citing *Nunez,* 315 F.R.D. 245, 249 (D. Minn. 2016)). Walgreens contends that the MUTPA claim in *Nunez* was dismissed because the plaintiff did not specify the price display he relied upon, Def.'s Mem. Supp. Mot. Dismiss at 18; Plaintiffs assert that *Nunez* is an example of "[c]ourts . . . broadly interpret[ing] 'display' to encompass prices quoted electronically in emails or listed on websites," Pls.' Resp. Mot. Dismiss at 22. Both arguments mischaracterize *Nunez*, which dismissed *en masse* ten fraud-related claims, including a claim under MUTPA, for failure to plead with particularity under Fed. R. Civ. Proc. 9(b). *Nunez,* 315 F.R.D. at 249.

construction would plausibly encompass a pharmacist displaying an artificially inflated price to Consumer Plaintiffs on a register, before the transaction is finalized, or the transmission of an artificially inflated price to an insurer or third-party payor for their approval and payment. Accordingly, Walgreens' motion to dismiss Count XVIII for failure to state a claim is denied.

### F. New York General Business Law § 349

Plaintiff Bullard asserts a claim (Count XXIII) against Walgreens for a violation of New York's General Business Law § 349. Walgreens moves to dismiss the claim on the basis that Plaintiff Bullard has not plausibly pleaded the causation element of her claim. According to Walgreens, as a participant in a Medicare Part D prescription drug insurance plan, Plaintiff Bullard was not eligible for the PSC, *see* Am. Compl. ¶¶ 10, 23, and therefore Walgreens' purported misrepresentations could not have injured her. Def.'s Mem. Supp. Mot. Dismiss at 17–18.

But whether Plaintiff Bullard was eligible for the PSC is not relevant to her claim under GBL § 349. Plaintiff Bullard alleged that Walgreens harmed her by reporting fraudulently inflated prices to her insurance provider, resulting in inflated copayment, coinsurance and deductible amounts for which Plaintiff Bullard was responsible. Am. Compl. ¶ 370. Such an allegation is sufficient to satisfy the causation requirement of § 349. *See* N.Y. General Business Law § 349(h) (McKinney 2014) (granting "any person who has been injured by reason of any violation of this section" the right to "bring an action in his own name"). The Court therefore denies Walgreens' motion to dismiss Count XXIII.

### G.    Ohio Deceptive Trade Practices Act

IBEW alleges that Walgreens violated the Ohio Deceptive Trade Practices Act (ODTPA) (Count XXV).  Walgreens moves to dismiss the claim for failure to state a claim, contending that the ODTPA, Ohio Rev. Code § 4165.01 *et seq,* requires Plaintiffs to be in competition with Walgreens.  Def.'s Mem. Supp. Mot. Dismiss at 18.

The Court cannot find any support for Walgreens' argument that prospective plaintiffs must be in competition with the defendant to assert a claim under the ODTPA.   Rather, as Plaintiffs point out, the ODTPA renounces any such requirement.  *See* Ohio Rev. Code §4165.02(B) ("In order to prevail [on an ODTPA claim], a complainant need not prove competition between the parties to the civil action.").

Walgreens also argues in its reply brief that IBEW's claim under the ODTPA must be dismissed because IBEW has failed to demonstrate that it satisfies the zone-of-interest and proximate-cause pleading requirements under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*  Def.'s Rep. Mot. Dismiss at 11 (citing 134 S. Ct. 1377, 1382 (2014)).  But Walgreens has waived this argument by addressing it for the first time on reply, *see Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012), and in any event, the argument is not developed.  *See M.G. Skinner,* 845 F.3d at 321.

Accordingly, Walgreens' motion to dismiss IBEW's ODTPA claim on the basis that it has not alleged competition with Walgreens is denied.

### H.    Texas Deceptive Trade Practices Act

Plaintiff Forth asserts a claim for two violations of the Texas Deceptive Trade Practices Act (TDTPA) (Count XXVIII). Tex. Bus. & Com. Code Ann. § 17.01 *et seq* (West 2017). Plaintiff Forth alleges that Walgreens "fail[ed] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," in violation of § 17.46(b)(24); and engaged in "unconscionable actions or courses of action" against her, in violation of § 17.50(a)(3). Am. Compl. ¶¶ 417, 419. Walgreens moves to dismiss only the claim based on an "unconscionable action or course of action," contending that Plaintiff Forth has not plausibly alleged an unconscionable action. Def.'s Mem. Supp. Mot. Dismiss at 18–19.

The TDTPA defines an "unconscionable action or course of action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." § 17.45(5). "Unconscionability under the DTPA is an objective standard for which scienter is irrelevant." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998) (citing *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985)). "To prove an unconscionable action or course of action, a plaintiff must show that the defendant's acts took advantage of her lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Id.* (citation and internal quotation marks omitted).

According to Walgreens, because pricing information on the PSC was publicly available, Plaintiff Forth "cannot plausibly allege that [she] lacked the knowledge, ability, experience, or capacity to determine whether [her] copayments, coinsurance, or deductible amounts exceeded the PSC price [she] would have paid for certain prescription drugs had [she] chosen to join the PSC program." Def.'s Mem. Supp. Mot. Dismiss at 19. But Walgreens misstates Plaintiffs' theory of the case. Plaintiffs do not allege that they were unaware of the existence of the PSC. Rather, they allege that Walgreens implemented a fraudulent dual-pricing scheme that took advantage of Plaintiffs' reasonable assumption that, because they had health insurance, they would not be paying more than direct-pay customers for their prescriptions. *See* Am. Compl. ¶¶ 15, 18, 21, 24, 27.

According to Plaintiffs, Walgreens' dual pricing scheme overcharged Plaintiff Forth by $255 for fifteen prescription purchases of PSC generic drugs. *Id.* ¶ 14. That, combined with Plaintiff Forth's plausibly alleged ignorance of Walgreens' internal pricing determinations, *id.* ¶ 418, suffices to plead that Walgreens "took advantage of her lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *See Morris*, 981 S.W.2d at 677. Accordingly, the Court denies Walgreens' motion to dismiss Plaintiff's TDTPA claim.

## III. Claims for Declaratory and Injunctive Relief

Plaintiffs seek declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* contending that they face a substantial and imminent risk of future harm (Count XXIX). Am. Compl. ¶¶ 433, 434. IBEW also alleges violations of the Minnesota Uniform Deceptive Trade Practices Act

(MUDTPA) (Count XII) and the Georgia Uniform Deceptive Trade Practices Act (GUDTPA) (Count XIX), both of which provide only for injunctive relief.  *See* Minn. Stat. Ann. § 325D.45 (West 2017); Ga. Code. Ann. § 10-1-373 (2017).

Walgreens moves to dismiss the claims under the Declaratory Judgment Act, MUDTPA, and GUDTPA for lack of standing, asserting that Plaintiffs cannot plausibly plead any real or immediate threat of future harm.  Def.'s Mem. Supp. Mot. Dismiss at 17, 19.  Specifically, because Plaintiffs are now aware that Walgreens' reported U&C pricing is higher than PSC pricing, Walgreens contends that those Plaintiffs cannot be misled by the current pricing structure in the future.  *Id.*

To establish standing to seek injunctive relief, Plaintiffs must plead a "'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'"  *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, (1983).  "Past exposure to illegal conduct" that is "unaccompanied by continuing, present adverse effects" does not establish a present case or controversy.  *Id.* (citing *Lyons*, 461 U.S. at 95–96).

Walgreens contends that Plaintiffs' allegations demonstrate that any possibility of future harm is "conjectural and remote."  Def.'s Mem. Supp. Mot. Dismiss at 20.  Indeed, any threat of harm to the Consumer Plaintiffs is contingent upon them returning to Walgreens and purchasing PSC-listed prescriptions using insurance, a prospect which would seem unlikely, as they claim that they would not have filled their prescriptions at Walgreens if they had known about the dual pricing

structure. *See* Am. Compl. ¶ 111 ("Had they known Walgreens was reporting to and charging them inflated and false amounts, they would not have proceeded with the transaction.").

Despite their new knowledge, the Consumer Plaintiffs plead that they in fact plan to return to Walgreens. *See, e.g.,* Am. Compl. ¶ 25 ("To maintain continuity of her medical care, Ms. Bullard anticipates filling future prescriptions for PSC Generics, and thus faces the prospect of paying additional inflated amounts in the future if Walgreens continues its wrongful conduct."). But now that the Consumer Plaintiffs are aware of Walgreens' pricing practices, those that are eligible for participation in the PSC program[19] can enroll and pay directly, rather than using insurance, thus accessing lower prices. Paying directly will not affect the Consumer Plaintiffs' continuity of medical care. But the situation differs for Plaintiffs Forth, Russo, and Bullard, who are ineligible for the PSC program due to their Medicare coverage. *See* Am. Compl. ¶¶ 14, 20, 23. It is plausible that, to maintain continuity of their medical care, they must continue filling their prescriptions at Walgreens.

The general rule is that consumer plaintiffs cannot seek injunctive relief once they are aware of a deceptive practice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014) (finding that a pleading of deceptive sales practice, without more, does not entitle a consumer plaintiff to injunctive relief);

---

[19]    The Consumer Plaintiffs who are on Medicare are not eligible for participation in the PSC. *See* Am. Compl. ¶ 66. Plaintiffs Forth, Russo, and Bullard carry insurance through Medicare. *Id.* ¶¶ 14, 20, 23. Plaintiffs Gonzales and Termine carry private insurance. *Id.* ¶¶ 17, 26.

*Mednick v. Precor, Inc.*, No. 14 C 3624, 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016) (collecting cases where courts ruled that plaintiffs deceived by false advertising did not have standing for prospective injunctive relief); *c.f. Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1110 (E.D. Wis. 2016). But the cases barring deceived plaintiffs from seeking injunctive relief emphasize that the plaintiff at question "made no allegation of risk of future harm." *Mednick,* 2016 WL 5390955, at *8; *see Camasta*, 761 F.3d at 740 ("Camasta's claim is based solely on the conjecture that because [the defendants] harmed him in the past, they are likely to harm him in the future."). Such cases differ from the instant case, where some of the Consumer Plaintiffs plausibly allege that they will have no choice but to be injured in the future. The Court thus finds that the Medicare-insured Consumer Plaintiffs—Plaintiffs Forth, Russo, and Bullard—have standing to pursue injunctive relief.

Walgreens also argues that PSC-listed generics are readily available from multiple pharmacy providers. But Plaintiffs allege that they are unable to avoid future purchases of medically-necessary PSC Generics in order to maintain continuity of care. Am. Compl. ¶¶ 33–34. Assuming this to be true, it is certainly plausible that Walgreens may be the only reasonably convenient pharmacy provider to the non-PSC-eligible Consumer Plaintiffs, and that those Plaintiffs must return to Walgreens and purchase prescriptions for allegedly inflated amounts despite their knowledge of the store's pricing practices.

The Court similarly concludes that IBEW has standing to pursue injunctive relief. Plaintiffs assert that third-party payors such as IBEW must continue to pay

for beneficiaries' purchases of PSC-listed generics, as those drugs are medically necessary. Am. Compl. ¶ 34. This appears to be a "real and immediate" risk of injury to IBEW, and Defendants make no argument to the contrary.

In sum, the Court finds that Plaintiffs Forth, Bullard, Russo, and IBEW have standing to pursue injunctive relief under the Declaratory Judgment Act (Count XXIX), while Plaintiffs Termine and Gonzales do not. IBEW similarly has standing to pursue injunctive relief under GUDTPA (Count XII) and MUDTPA (Count XIX). The Court thus denies Walgreens' motion to dismiss Counts XII, XIX and XXIX on this basis.

## IV. Tolling the Statute of Limitations

Plaintiffs assert in the Amended Complaint that the running of any statute of limitations should be tolled because Walgreens fraudulently concealed its pricing scheme. Am. Compl. ¶¶ 105–107. Walgreens seeks to dismiss Plaintiffs' common-law claims prior to March 2012 and consumer fraud claims prior to March 2014 as time-barred, contending that Plaintiffs cannot toll the statute of limitations because the Amended Complaint "does not allege that Walgreens committed any affirmative acts to conceal the PSC pricing system." Def.'s Mem. Supp. Mot. Dismiss at 13.

Illinois law imposes a five-year statute of limitations for tort actions.[20] 735 Ill. Comp. Stat. Ann. 5/13-205 (West 2018); *F.D.I.C. v. Wabick*, 335 F.3d 620 (7th Cir.

---

[20] Walgreens does not reference the specific statutes of limitations for the claims for violations of the various consumer protection statutes in its motion to dismiss the claims prior to March 2014. They have therefore waived the argument, but in any case, it is immaterial to the Court's analysis.

2003). But under the doctrine of fraudulent concealment, the statute of limitations is tolled if fraud prevented discovery of the cause of action. *Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 46 N.E.3d 706, 716 (Ill. 2015), *opinion modified on denial of reh'g* (Jan. 28, 2016) (citing 735 Ill. Comp. Stat. Ann. 5/13–215).

Because the statute of limitations is an affirmative defense, courts generally do not dismiss claims under Rule 12(b)(6) for failure to be brought within the statute of limitations. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (citing *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)). For dismissal to be granted at the motion-to-dismiss stage, "the allegations of the complaint itself [must] set forth everything necessary to satisfy the affirmative defense." *Id.* at 613–14 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). If there is "*any* set of facts that if proven would establish a defense to the statute of limitations," then a motion to dismiss should be denied. *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003) (emphasis in original).

Here, Plaintiffs have pleaded a set of facts that may establish the tolling of the statute of limitations through the doctrine of fraudulent concealment, allowing the claims to survive even if more than five years have passed since they accrued. Plaintiffs allege that Walgreens knowingly made false representations "each time it reported and charged artificially inflated prices for PSC generics," Am. Compl. ¶¶ 112, 113, and further, that "Walgreens knew that Plaintiffs . . . would rely on the accuracy of the price Walgreens reported to and charged them," *id.* ¶ 114. These allegations provide Plaintiffs a set of facts sufficient to overcome a statute of

limitations defense at the pleading stage.  *See Clark*, 318 F.3d at 768 (reversing dismissal because complaint provided for the "possibility" that the statute of limitations defense could be defeated).  Walgreens' motion to dismiss Plaintiffs' common-law claims prior to March 2012 and consumer fraud claims prior to March 2014 as time-barred is therefore denied.

<u>**Conclusion**</u>

For the reasons stated herein, Walgreens' motion to dismiss [53] is granted in part and denied in part.  The Court grants Walgreens' motions to dismiss Plaintiffs' claims for negligent misrepresentation (Count II) and violation of the Missouri Merchandising Practices Act (Count XX).  The Court also finds that Plaintiffs Termine and Gonzales lack standing to pursue injunctive relief under the Declaratory Judgment Act (Count XXIX).  In all other respects, Walgreens' motion to dismiss is denied.

**IT IS SO ORDERED.**          **ENTERED**   3/9/18

_____
**John Z. Lee**
**United States District Judge**