**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DOROTHY FORTH, DONNA BAILEY, LISA BULLARD, RICARDO GONZALES, CYNTHIA RUSSO, TROY TERMINE, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, and STEAMFITTERS FUND LOCAL 439, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) Case No. 17-cv-2246 ) ) ) ) Judge John Z. Lee |
| Plaintiffs, | ) ) Magistrate Judge Sheila Finnegan |
| v. | ) ) ) |
| WALGREEN CO., | ) ) ) |
| Walgreens. | ) |

**WALGREEN CO.'S ANSWER AND AFFIRMATIVE DEFENSES**
**TO SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Walgreen Co. ("Walgreens"), by its undersigned counsel, answers Plaintiffs' Second

Amended Consolidated Class Action Complaint[1] ("Complaint") as follows:

**INTRODUCTION[2]**

1.     Plaintiffs Dorothy Forth, Donna Bailey, Lisa Bullard, Ricardo Gonzales, Cynthia Russo, and Troy Termine ("Consumer Plaintiffs") are consumers and Plaintiffs International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund ("Plaintiff IBEW Local 38"), International Union of Operating Engineers Local 295-295c Welfare Fund ("Plaintiff IUOE Local 295"), and Steamfitters Fund Local 439 ("Plaintiff Steamfitters Local 439") are third-party payors (collectively, "Plaintiffs") that bring this action on behalf of themselves and all others similarly situated (the "Class") against Defendant Walgreen Co. ("Walgreens" or "Walgreens") to recover for the harm caused by Walgreens' fraudulent and deceptive price scheme to artificially inflate the "usual and customary" prices reported and used to charge Plaintiffs and

---

[1]     To the extent that certain paragraphs of Plaintiffs' Complaint includes footnotes, Walgreens' Answer to each numbered paragraph should be viewed as including its response to the individual footnotes in Plaintiffs' Complaint.

[2]     Walgreens has included the headings from Plaintiffs' Complaint in this Answer for the Court's reference.  Walgreens has not provided a response to these headings.

members of the Class for purchases of certain generic prescription drugs at Walgreens pharmacies.

**ANSWER:**   Walgreens lacks sufficient information to admit or deny that Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, and Plaintiff Steamfitters Local 439 are third-party payors.   Walgreens lacks sufficient information to admit or deny that the Plaintiffs Forth, Termine, Bailey, Bullard, Russo, and Gonzalez are "consumers," as defined by Plaintiffs. Walgreens admits that Plaintiffs purport to bring claims individually and on behalf of a putative class against Walgreens.  Walgreens denies all remaining allegations in Paragraph 1.

2.    About 90% of all United States citizens are now enrolled in private or public health insurance plans that cover at least a portion of the costs of medical and prescription drug benefits. A feature of most of these health insurance plans is the shared cost of prescription drugs. Typically, when a consumer fills a prescription for a medically-necessary prescription drug under his or her health insurance plan, the third-party payor pays a portion of the cost and the consumer pays the remaining portion of the cost directly to the pharmacy in the form of a copayment or coinsurance or deductible payment.

**ANSWER:**   Walgreens lacks sufficient information to form a belief as to the truth of the statement that "[a]bout 90% of all United States citizens are now enrolled in private or public health insurance plans that cover at least a portion of the costs of medical and prescription drug benefits."  Walgreens admits that a feature of most health insurance plans is the shared cost of prescription drugs.  Walgreens admits that, often, when a consumer fills a prescription for a medically-necessary prescription drug that is covered under his or her health insurance plan, the third-party payor pays a portion of the cost and the consumer pays the remaining portion of the cost directly to the pharmacy in the form of a copayment or coinsurance or deductible payment. Walgreens denies all remaining allegations in Paragraph 2.

3.    In an effort to control their prescription drug costs, many third-party payors require consumers to purchase generic prescription drugs when available because generic drugs often cost less than the brand-name version. According to a report by the Generic Pharmaceutical Association, 89% of all prescriptions dispensed in the United States now are generic drugs Consumers also save money when they purchase generic prescription drugs over more-expensive

brand-name versions because they pay lower copayment, coinsurance, or deductible amounts for these generics.

**ANSWER:**    Walgreens lacks sufficient information to admit or deny whether third-party payors try to control their prescription drug costs or require consumers to purchase generic prescription drugs when available.  Walgreens admits that generic drugs often cost less than the brand-name version. Walgreens admits that, according to the 2016 Generic Drug Savings & Access in the United States Report published by the Generic Pharmaceutical Association cited by Plaintiffs in Paragraph 3, 89% of all prescriptions dispensed in the United States now are generic drugs.  Walgreens lacks sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 3.

4.      Instead of reaping the benefit of these intended savings, however, Plaintiffs and members of the Class are paying much more for certain generics than Walgreens' cash-paying customers who fill their generic prescriptions through Walgreens' discount generic drug program, called the "Prescription Savings Club" ("PSC"), without using health insurance.

**ANSWER:**    Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 4.

5.      A pharmacy cannot charge to a consumer or report to a third-party payor a higher price for prescription drugs than the pharmacy's "usual and customary" ("U&C") price. The U&C price is referred to by Walgreens and known throughout the pharmacy industry as the price that the pharmacy charges the cash-paying public. Indeed, Walgreens' practices violate federal and state regulations, including the Medicare Prescription Drug Benefit Manual, which defines the "usual and customary price" as "[t]he price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug." 42 C.F.R. §423.100.

**ANSWER:**    Walgreens admits only that 42 C.F.R. § 423.100 defines the "usual and customary price" as "[t]he price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug."  Walgreens lacks sufficient information to admit or deny how the Medicare Prescription Drug Benefit Manual defines "usual and customary price," as Plaintiffs have not defined a

3

specific time period or provision of the manual to which they cite. Walgreens denies the remaining allegations in Paragraph 5.

6. As alleged below, Walgreens, instead of complying with this requirement, maintains an undisclosed, dual pricing scheme for the generic prescription drugs available through the PSC. Indeed, Walgreens has used its PSC as a mechanism to knowingly and intentionally overcharge consumers and third-party payors, like Plaintiffs and the Class, in excess of Walgreens' actual U&C prices for these generics.

**ANSWER:** Walgreens denies the allegations in Paragraph 6.

7. Walgreens is the largest retail pharmacy in the United States with 8,175 retail pharmacies in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands. In fiscal year 2016, Walgreens filled 928.5 million prescriptions (adjusted to 30-day equivalents) and earned approximately $56.1 billion in pharmacy sales in the United States.

**ANSWER:** Walgreens admits that it is the largest retail pharmacy in the United States. Walgreens admits that its 2016 Annual Report stated that, as of August 31, 2016, Walgreens operated 8,175 retail stores across the 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands. Walgreens also admits that in fiscal year 2016, it filled 928.5 million prescriptions (adjusted to 30-day equivalents). Walgreens denies the remaining allegations in Paragraph 7.

8. Since 2007, Walgreens, through its PSC, has allowed cash-paying customers to purchase more than 500 widely prescribed generic drugs for $5, $10, and $15 for 30-day prescriptions and $10, $20, and $30 for 90-day prescriptions (the "PSC Prices"), depending on the drug's tier classification.

**ANSWER:** Walgreens admits that, since 2007, cash-paying customers have been able to purchase certain prescribed generic drugs through the PSC program, upon paying a membership fee and enrolling in the PSC program. Walgreens admits that many of these drugs have been sold for $5, $10, and $15 for 30-day prescriptions and $10, $20, and $30 for 90-day prescriptions depending on the drug's tier classification.

9. Walgreens' PSC formulary (the "PSC Value Priced Medication List" attached as Exhibit A) includes some of the most commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments (the "PSC

4

Generics"). PSC prices apply only to prescription generics that Walgreens includes in the formulary.

**ANSWER:**    Walgreens admits that its PSC formulary includes commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments. Walgreens admits that the PSC prices only apply to PSC generics included in the PSC formulary.   Walgreens admits that Exhibit A includes one version of Walgreens' PSC formulary, but that the list in Exhibit A is not all-inclusive. Walgreens denies any remaining allegations in Paragraph 9.

10.    Walgreens' PSC program is not a special, limited, or a one-time offer. Any pharmacy patron, except a Medicare or Medicaid beneficiary, is eligible to participate in the program. Walgreens does not limit the eligibility for, or duration of the availability of, PSC Prices other than to require cash payment.

**ANSWER:**    Because Plaintiffs have failed to define "special, limited, or one-time offer," Walgreens lacks sufficient information to form a belief as to the truth of the first sentence. Walgreens admits that persons receiving benefits from Medicare or Medicaid are ineligible to join the PSC. Walgreens denies that it does not limit eligibility for PSC Prices because Walgreens requires that PSC members pay a yearly membership fee in order to join the program, that they not be Medicare or Medicaid beneficiaries, that they purchase their prescriptions with cash, and that any other Terms and Conditions of the program be met.

11.    Upon information and belief, the majority of Walgreens' cash-paying customers pay no more than the PSC Prices.

**ANSWER:**    Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 11.

12.    Thus, Walgreens' PSC Prices represent Walgreens' actual U&C prices for the PSC Generics. For the PSC Generics, Walgreens should have reported and charged to Plaintiffs and the Class the PSC Prices as Walgreens' U&C price, because the PSC Price was, and still is, the price Walgreens charges customers paying cash without insurance. But for years, Walgreens has knowingly and intentionally reported artificially inflated U&C prices for PSC Generics on claims for reimbursement submitted to third-party payors. Because the reported U&C price is

used to calculate the amount a consumer must pay, Walgreens also overcharged consumers and beneficiaries of third-party payors for PSC Generics by improperly collecting inflated copayments, coinsurance, or deductible amounts.

> **ANSWER:**    Walgreens denies the allegations in Paragraph 12.

13.    Walgreens' misconduct has caused Plaintiffs and the other members of the Class to suffer significant damages from 2007 to the present. This action is brought as a class action on behalf of all consumers and TPPs nationwide, or in the alternative, in the states of Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Iowa, Illinois, Louisiana, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, and Wisconsin, who purchased or paid for PSC Generics, other than for resale (see Class definitions below). Accordingly, Plaintiffs seek to recover monetary damages, injunctive relief, and equitable or other remedies for fraud, unjust enrichment, and violation of state consumer protection statutes enumerated below, and for declaratory and injunctive relief under the Declaratory Judgment Act.

> **ANSWER:**    Walgreens admits that Plaintiffs purport to bring this action on behalf of a putative nationwide class or, alternatively, in the states of Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Iowa, Illinois, Louisiana, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, and Wisconsin. Walgreens admits that Plaintiffs seek to recover monetary damages, injunctive relief, and equitable or other remedies for fraud, unjust enrichment, and violation of state consumer protection statutes enumerated below, and for declaratory and injunctive relief under the Declaratory Judgment Act.  However, Walgreens denies that Plaintiffs have any valid claims against it or that Plaintiffs are entitled to the requested relief.  Walgreens denies the remaining allegations in Paragraph 13.

## PARTIES

**A.    Plaintiffs**

14.    Plaintiff Dorothy Forth ("Plaintiff Forth" or "Ms. Forth") is, and at all times relevant was, domiciled in the State of Texas. Ms. Forth has purchased generic versions of more than twenty medications for personal use from Walgreens in Texas between January 1, 2012 and the present. Ms. Forth carries federal health insurance through Medicare and carried Medicare Part D coverage during the time she purchased prescription generic drugs from Walgreens. Medications prescribed to Ms. Forth appear on the list of PSC Generics attached as Exhibit A.

Walgreens overcharged Ms. Forth on her purchases of PSC Generics. Walgreens is required to charge Ms. Forth an amount that does not exceed the U&C price Walgreens charges its cash-paying customers for these generic prescription drugs. For these sales, Walgreens knowingly based Ms. Forth's payment on a purported U&C price that was fraudulently inflated above **Walgreens' true U&C price – that is, the price Walgreens offers under its PSC program. Through** its fraudulent pricing scheme, Walgreens has overcharged Ms. Forth, and as a result, Ms. Forth has overpaid for her PSC Generics by at least $285.22, as indicated in the chart.

| Prescription | Date Purchased | Days' Supply | PSC Tier | Client Paid | PSC (U&C) Price |
|---|---|---|---|---|---|
| **Rx 1** | 1/31/13 | 30 | 3 | $40.00 | $15.00 |
| **Rx 2** | 2/23/13 | 30 | 3 | $40.00 | $15.00 |
| **Rx 3** | 7/8/14 | 30 | 3 | $30.30 | $15.00 |
| **Rx 4** | 7/22/14 | 30 | 3 | $59.89 | $15.00 |
| **Rx 5** | 9/2/14 | 30 | 3 | $59.89 | $15.00 |
| **Rx 6** | 4/17/15 | 30 | 3 | $45.08 | $15.00 |
| **Rx 7** | 7/2/14 | 90 | 3 | $30.25 | $30.00 |
| **Rx 8** | 2/11/14 | 90 | 2 | $21.00 | $20.00 |
| **Rx 9** | 8/14/14 | 30 | 2 | $11.99 | $10.00 |
| **Rx 10** | 6/6/15 | 30 | 1 | $8.40 | $5.00 |
| **Rx 11** | 6/6/15 | 30 | 1 | $40.38 | $5.00 |
| **Rx 12** | 7/10/15 | 30 | 1 | $45.77 | $5.00 |
| **Rx 13** | 7/28/15 | 90 | 3 | $33.21 | $30.00 |
| **Rx 14** | 5/26/13 | 90 | 2 | $29.06 | $20.00 |
| **Rx 15** | 1/22/13 | 90 | 1 | $15.00 | $10.00 |
| | | | | **Total Paid** | **Total PSC Price** |
| | | | | **$510.22** | **$225.00** |
| **OVERPAYMENT: $285.22** | | | | | |

   **ANSWER:**    Walgreens lacks sufficient knowledge to admit or deny the allegations in the first and second sentences of Paragraph 14. Regarding the third sentence, Walgreens admits that Ms. Forth's prescription records show third-party payors involved with at least some prescriptions filled at Walgreens but lacks sufficient knowledge to admit or deny the remaining allegations in the third sentence. Walgreens lacks sufficient knowledge to admit or deny the allegations in the fourth sentence, as Paragraph 14 does not specify the "more than twenty

medications for personal use" to which it refers. Walgreens denies the remaining allegations in

of Paragraph 14.

15.    Ms. Forth reasonably believed that because she pays premiums for health insurance with prescription benefits coverage that she would pay at least the same as and not more than a cash-paying customer for her prescriptions filled at Walgreens. Ms. Forth would not have paid the inflated prices absent Walgreens' deception.

**ANSWER:**    Walgreens lacks sufficient knowledge to admit or deny the allegations in

Paragraph 15.

16.    To maintain continuity of her medical care, Ms. Forth anticipates filling future prescriptions for PSC Generics at a Walgreens pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Walgreens continues its wrongful conduct.

**ANSWER:**    Walgreens lacks sufficient knowledge to admit or deny the allegation

concerning Ms. Forth's future intentions.    Walgreens denies all remaining allegations in

Paragraph 16.

17.    Plaintiff Donna Bailey ("Plaintiff Bailey" or "Ms. Bailey") is, and at all relevant times was, domiciled in the State of Missouri. Ms. Bailey has purchased generic versions of more than five medications for personal use from Walgreens in Missouri between 2014 and the present. Ms. Bailey carried insurance coverage during the time she purchased prescription generic drugs from Walgreens. Medications prescribed to Ms. Bailey appear on the list of PSC Generics attached as Exhibit A. Walgreens overcharged Ms. Bailey for several PSC Generics. Walgreens is required to charge Ms. Bailey an amount that does not exceed the U&C price Walgreens charges its cash-paying customers for these generic prescription drugs. For these sales, Walgreens knowingly based Ms. Bailey's payment on a purported U&C price that was fraudulently inflated above Walgreens' true U&C price – that is, the price Walgreens offers under its PSC program. Through its fraudulent pricing scheme, Walgreens has overcharged Ms. Bailey, and as a result, Ms. Bailey has overpaid for her PSC Generics by at least $9.12, as indicated in the chart.

| Prescription | Date Purchased | Days' Supply | PSC Tier | Client Paid | PSC (U&C) Price |
|---|---|---|---|---|---|
| **Rx 1** | 10/28/14 | 30 | 1 | $6.14 | $5.00 |
| **Rx 2** | 11/28/14 | 30 | 1 | $6.14 | $5.00 |
| **Rx 3** | 12/31/14 | 30 | 1 | $6.14 | $5.00 |
| **Rx 4** | 2/5/15 | 30 | 1 | $6.14 | $5.00 |
| **Rx 5** | 3/9/15 | 30 | 1 | $6.14 | $5.00 |
| **Rx 6** | 4/7/15 | 30 | 1 | $6.14 | $5.00 |

| Rx 7 | 5/21/15 | 30 | 1 | $6.14 | $5.00 |
|---|---|---|---|---|---|
| Rx 8 | 6/17/15 | 30 | 1 | $6.14 | $5.00 |
| | | | | **Total Paid** | **Total PSC Price** |
| | | | | **$49.12** | **$40.00** |
| **OVERPAYMENT: $9.12** | | | | | |

    **ANSWER:**   Walgreens lacks sufficient knowledge to admit or deny the allegations in the first, second, third, and fourth sentences of Paragraph 17. Walgreens denies the remaining allegations in Paragraph 17.

    18.    Ms. Bailey reasonably believed that because she pays premiums for health insurance with prescription benefits coverage that she would pay at least the same as and not more than a cash-paying customer for his prescriptions filled at Walgreens. Ms. Bailey would not have paid the inflated prices absent Walgreens' deception.

    **ANSWER:**   Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 18.

    19.    To maintain continuity of her medical care, Ms. Bailey anticipates filling future prescriptions for PSC Generics at a Walgreens pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Walgreens continues its wrongful conduct.

    **ANSWER:**   Walgreens lacks sufficient knowledge to admit or deny the allegation concerning Ms. Bailey's future intentions.  Walgreens denies all remaining allegations in Paragraph 19.

    20.    Plaintiff Lisa Bullard ("Plaintiff Bullard" or "Ms. Bullard") is, and at all relevant times was, domiciled in the State of Massachusetts. Ms. Bullard has purchased generic versions of more than twenty medications for personal use from Walgreens in New York and Massachusetts between January 1, 2011 and the present. Ms. Bullard carries federal health insurance through Medicare and carried Medicare Part D coverage during the time she purchased prescription generic drugs from Walgreens. Medications prescribed to Ms. Bullard appear on the list of PSC Generics attached as Exhibit A. Walgreens overcharged Ms. Bullard for several PSC Generics. Walgreens is required to charge Ms. Bullard an amount that does not exceed the U&C price Walgreens charges its cash-paying customers for these generic prescription drugs. For these sales, Walgreens knowingly based Ms. Bullard's payment on a purported U&C price that was fraudulently inflated above Walgreens' true U&C price – that is, the price Walgreens offers under its PSC program. Through its fraudulent pricing scheme, Walgreens has overcharged Ms. Bullard, and as a result, Ms. Bullard has overpaid for her PSC Generics purchased from New York and Massachusetts Walgreens pharmacies by at least $55.89, as indicated in the chart.

| Prescription | Date Purchased | Days' Supply | PSC Tier | Client Paid | PSC (U&C) Price |
|---|---|---|---|---|---|
| **Rx 1** | 6/25/15 | 10 | 1 | $9.00 | $5.00 |
| **Rx 2** | 8/18/14 | 30 | 1 | $5.94 | $5.00 |
| **Rx 3** | 6/12/15 | 90 | 2 | $26.89 | $20.00 |
| **Rx 4** | 9/18/15 | 90 | 2 | $26.89 | $20.00 |
| **Rx 5** | 12/17/15 | 90 | 2 | $27.00 | $20.00 |
| **Rx 6** | 5/10/16 | 90 | 2 | $27.00 | $20.00 |
| **Rx 7** | 2/23/14 | 15 | 2 | $11.99 | $10.00 |
| **Rx 8** | 3/13/15 | 10 | 1 | $16.36 | $5.00 |
| **Rx 9** | 10/16/15 | 72 | 1 | $12.82 | $10.00 |
| **Rx 10** | 5/10/16 | 90 | 2 | $27.00 | $20.00 |
| | | | | **Total Paid** | **Total PSC Price** |
| | | | | **$190.89** | **$135.00** |
| **OVERPAYMENT: $55.89** | | | | | |

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in the first and second sentences of Paragraph 20. Regarding the third sentence, Walgreens admits that Ms. Bullard's prescription records show third-party payors involved with at least some prescriptions filled at Walgreens but lacks sufficient knowledge to admit or deny the remaining allegations in the third sentence. Walgreens lacks sufficient knowledge to admit or deny the allegations in the fourth sentence, as Paragraph 20 does not specify the "more than twenty medications for personal use" to which it refers. Walgreens denies remaining allegations in the Paragraph 20.

21.     Ms. Bullard reasonably believed that because she pays premiums for health insurance with prescription benefits coverage that she would pay at least the same as and not more than a cash-paying customer for her prescriptions filled at Walgreens. Ms. Bullard would not have paid the inflated prices absent Walgreens' deception.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 21.

22.     To maintain continuity of her medical care, Ms. Bullard anticipates filling future prescriptions for PSC Generics at a Walgreens pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Walgreens continues its wrongful conduct.

**ANSWER:**   Walgreens lacks sufficient knowledge to admit or deny the allegation concerning Ms. Bullard's future intentions.   Walgreens denies all remaining allegations in Paragraph 22.

23.     Plaintiff Ricardo Gonzales ("Plaintiff Gonzales" or "Mr. Gonzales") since 2015, has been domiciled in the State of New Mexico, from 2008 through 2015, was domiciled in the State of Wisconsin, and from 2007-2008, was domiciled in the State of South Carolina. Mr. Gonzales has purchased generic versions of more than ten medications for personal use from Walgreens in New Mexico, South Carolina, and Wisconsin between 2007 and the present. Mr. Gonzales carried commercial insurance coverage during the time he purchased prescription generic drugs from Walgreens. Medications prescribed to Mr. Gonzales appear on the list of PSC Generics attached as Exhibit A. Walgreens overcharged Mr. Gonzales for several PSC Generics. Walgreens is required to charge Mr. Gonzales an amount that does not exceed the U&C price Walgreens charges its cash-paying customers for these generic prescription drugs. For these sales, Walgreens knowingly based Mr. Gonzales's payment on a purported U&C price that was fraudulently inflated above Walgreens' true U&C price – that is, the price Walgreens offers under its PSC program. Through its fraudulent pricing scheme, Walgreens has overcharged Mr. Gonzales, and as a result, Mr. Gonzales has overpaid for his PSC Generics by at least $245.05, as indicated in the chart.

| Prescription | Date Purchased | Days' Supply | PSC Tier | Client Paid | PSC (U&C) Price |
|---|---|---|---|---|---|
| **Rx 1** | 2/7/16 | 60 | 3 | $187.99 | $30.00 |
| **Rx 2** | 4/16/17 | 30 | 2 | $81.99 | $10.00 |
| **Rx 3** | 3/24/17 | 30 | 2 | $12.89 | $10.00 |
| **Rx 4** | 10/13/16 | 30 | 1 | $7.18 | $5.00 |
| **Rx 5** | 9/3/16 | 30 | 1 | $15.00 | $10.00 |
| **Rx 6** | 8/8/16 | 30 | 1 | $15.00 | $10.00 |
|  |  |  |  | **Total Paid** | **Total PSC Price** |
|  |  |  |  | **$320.05** | **$75.00** |
| **OVERPAYMENT:  $245.05** |  |  |  |  |  |

**ANSWER:**   Walgreens lacks sufficient knowledge to admit or deny the allegations in the first, second, third, and fourth sentences of Paragraph 23. Walgreens denies the remaining allegations in Paragraph 23.

24.     Mr. Gonzales reasonably believed that because he pays premiums for health insurance with prescription benefits coverage that he would pay at least the same as and not more than a cash-paying customer for his prescriptions filled at Walgreens. Mr. Gonzales would not have paid the inflated prices absent Walgreens' deception.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 24.

25.     To maintain continuity of his medical care, Mr. Gonzales anticipates filling future prescriptions for PSC Generics at a Walgreens pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Walgreens continues its wrongful conduct.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegation concerning Mr. Gonzales's future intentions.   Walgreens denies all remaining allegations in Paragraph 25.

26.     Plaintiff Cynthia Russo ("Plaintiff Russo" or "Ms. Russo") is, and at all times relevant was, domiciled in the State of Florida. Ms. Russo has purchased generic versions of more than ten medications for personal use from Walgreens in Florida between January 1, 2012 and the present. Ms. Russo carries federal health insurance through Medicare and carried Medicare Part D coverage during the time she purchased prescription generic drugs from Walgreens. Medications prescribed to Ms. Russo appear on the list of PSC Generics attached as Exhibit A. Walgreens overcharged Ms. Russo for several PSC Generics. Walgreens is required to charge Ms. Russo an amount that does not exceed the U&C price Walgreens charges its cash-paying customers for these generic prescription drugs. For these sales, Walgreens knowingly based Ms. Russo's payment on a purported U&C price that was fraudulently inflated above Walgreens' true U&C price – that is, the price Walgreens offers under its PSC program. Through its fraudulent pricing scheme, Walgreens has overcharged Ms. Russo, and as a result, Ms. Russo has overpaid for her PSC Generics by at least $130.88, as indicated in the chart.

| Prescription | Date Purchased | Days' Supply | PSC Tier | Client Paid | PSC (U&C) Price |
|---|---|---|---|---|---|
| **Rx 1** | 10/9/14 | 90 | 3 | $92.96 | $30.00 |
| **Rx 2** | 6/1/14 | 30 | 3 | $31.98 | $15.00 |
| **Rx 3** | 8/9/14 | 30 | 3 | $31.98 | $15.00 |
| **Rx 4** | 9/15/14 | 30 | 3 | $31.98 | $15.00 |
| **Rx 5** | 10/24/14 | 30 | 3 | $31.98 | $15.00 |
| | | | | **Total Paid** | **Total PSC Price** |
| | | | | **$220.88** | **$90.00** |
| **OVERPAYMENT:  $130.88** | | | | | |

**ANSWER:** Walgreens lacks sufficient knowledge to admit or deny the allegations in the first and second sentences of Paragraph 26. Regarding the third sentence, Walgreens admits that Ms. Russo's prescription records show third-party payors involved with at least some prescriptions filled at Walgreens but lacks sufficient knowledge to admit or deny the remaining allegations in the third sentence. Walgreens lacks sufficient knowledge to admit or deny the allegations in the fourth sentence, as Paragraph 26 does not specify the "more than ten medications for personal use" to which it refers. Walgreens denies the remaining allegations in Paragraph 26.

27. Ms. Russo reasonably believed that because she pays premiums for health insurance with prescription benefits coverage that she would pay at least the same as and not more than a cash-paying customer for her prescriptions filled at Walgreens. Ms. Russo would not have paid the inflated prices absent Walgreens' deception.

**ANSWER:** Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 27.

28. To maintain continuity of her medical care, Ms. Russo anticipates filling future prescriptions for PSC Generics at a Walgreens pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Walgreens continues its wrongful conduct.

**ANSWER:** Walgreens lacks sufficient knowledge to admit or deny the allegation concerning Ms. Russo's future intentions. Walgreens denies all remaining allegations in Paragraph 28.

29. Plaintiff Troy Termine ("Plaintiff Termine" or "Mr. Termine") is, and at all times relevant was, domiciled in the State of Louisiana. Mr. Termine has purchased generic versions of numerous medications for personal use from Walgreens in Louisiana between January 1, 2015 and the present. Mr. Termine carried health insurance through Humana during the time he purchased prescription generic drugs from Walgreens. Medications prescribed to Mr. Termine appear on the list of PSC Generics attached as Exhibit A. Walgreens overcharged Mr. Termine for several PSC Generics. Walgreens is required to charge Mr. Termine an amount that does not exceed the U&C price Walgreens charges its cash-paying customers for these generic prescription drugs. For these sales, Walgreens knowingly based Mr. Termine's payment on a purported U&C price that was fraudulently inflated above Walgreens' true U&C price – that is, the price Walgreens offers under its PSC program. Through its fraudulent pricing scheme,

13

Walgreens has overcharged Mr. Termine, and as a result, Mr. Termine has overpaid for his PSC Generics by at least $8.04, as indicated in the chart.

| Prescription | Date Purchased | Days' Supply | PSC Tier | Client Paid | PSC (U&C) Price |
|---|---|---|---|---|---|
| **Rx 1** | 11/5/15 | 30 | 1 | $7.15 | $5.00 |
| **Rx 2** | 5/17/16 | 30 | 1 | $10.89 | $5.00 |
| | | | | **Total Paid** | **Total PSC Price** |
| | | | | **$18.04** | **$10.00** |
| **OVERPAYMENT:  $8.04** | | | | | |

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in the first and second sentences of Paragraph 29. Regarding the third sentence, Walgreens admits that Mr. Termine's prescription records show third-party payors involved with at least some prescriptions filled at Walgreens but lacks sufficient knowledge to admit or deny the remaining allegations in the third sentence. Walgreens lacks sufficient knowledge to admit or deny the allegations in the fourth sentence, as Paragraph 29 does not specify the "numerous medications for personal use" to which it refers. Walgreens denies the remaining allegations in Paragraph 29.

30.     Mr. Termine reasonably believed that because he pays premiums for health insurance with prescription benefits coverage that he would pay at least the same as and not more than a cash-paying customer for his prescriptions filled at Walgreens. Mr. Termine would not have paid the inflated prices absent Walgreens' deception.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 30.

31.     To maintain continuity of his medical care, Mr. Termine anticipates filling future prescriptions for PSC Generics at a Walgreens pharmacy, and thus faces the prospect of paying additional inflated amounts in the future if Walgreens continues its wrongful conduct.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegation concerning Mr. Termine's future intentions.  Walgreens denies all remaining allegations in Paragraph 31.

32.     Plaintiff IBEW Local 38 is located in Cleveland, Ohio. Plaintiff IBEW Local 38 is an "employee welfare benefit plan" and "employee benefit plan" maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §186(c)(5), and as defined by §§1002(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, et seq. As such, Plaintiff IBEW Local 38 is an entity entitled to bring suit in its own name pursuant to 29 U.S.C. §1132(d).

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 32.

33.     Plaintiff IBEW Local 38 is a non-profit trust, sponsored and administered by a Board of Trustees, established through collective bargaining by labor unions and employers. Pursuant to the trust agreement under which it was created, it provides comprehensive healthcare benefits to participants who are employed under various collective bargaining agreements, along with their dependents and retirees (collectively, "beneficiaries"). Plaintiff IBEW Local 38 administers the health and welfare fund in Ohio and its beneficiaries who purchased PSC Generics are located in Arizona, California, Colorado, Florida, Georgia, Iowa, Illinois, Louisiana, Minnesota, Missouri, Nevada, North Carolina, Ohio, South Carolina, Texas, and Wisconsin. Beneficiaries of Plaintiff IBEW Local 38 purchased tens of thousands medically-necessary PSC Generics during the Class Period for personal use. Plaintiff IBEW Local 38 is ultimately at risk and responsible for reimbursing or paying for beneficiaries' purchases of prescription drugs. Plaintiff IBEW Local 38 paid more for PSC Generics than it would have absent Walgreens' misconduct.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 33. Walgreens denies the allegation in the last sentence in Paragraph 33 regarding any alleged misconduct.

34.     Through its fraudulent pricing scheme, Walgreens has overcharged Plaintiff IBEW Local 38, and as a result, Plaintiff IBEW Local 38 has overpaid for PSC Generics. Examples of such overpayments by Plaintiff IBEW Local 38 are indicated in the chart.

| Prescription | Date Purchased | Days' Supply | PSC Tier | TPP Paid | PSC (U&C) Price |
|---|---|---|---|---|---|
| **Rx 1** | 12/4/08 | 30 | 2 | $36.92 | $10.00 |
| **Rx 2** | 1/22/09 | 30 | 2 | $33.96 | $10.00 |
| **Rx 3** | 1/26/09 | 30 | 2 | $33.96 | $15.00 |
| **Rx 4** | 9/1/10 | 30 | 3 | $29.37 | $15.00 |
| **Rx 5** | 9/17/12 | 30 | 1 | $29.41 | $5.00 |
| **Rx 6** | 1/09/13 | 30 | 1 | $24.28 | $5.00 |
| **Rx 7** | 1/30/14 | 30 | 1 | $14.28 | $5.00 |
| **Rx 8** | 5/3/14 | 30 | 1 | $11.76 | $5.00 |

| Rx 9 | 11/4/09 | 30 | 2 | $26.12 | $10.00 |
| Rx 10 | 6/26/10 | 30 | 1 | $13.47 | $5.00 |

**ANSWER:**   Walgreens lacks sufficient information to admit or deny the specific prescription sales included in the chart in Paragraph 34.  Walgreens denies the first sentence in Paragraph 34.

35.    Plaintiff IBEW Local 38 and similarly situated Class members paid for prescriptions of their beneficiaries. These payments arose from Walgreens' sales of PSC Generics to beneficiaries for the medically-necessary treatment of illnesses, which qualify as transactions that resulted in the sale of goods to consumers for personal use.

**ANSWER:**   Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 35.

36.    Plaintiff IUOE Local 295 is located in Maspeth, New York. Plaintiff IUOE Local 295 is an "employee welfare benefit plan" and "employee benefit plan" maintained pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5), and as defined by §§1002(1) and (3) of the ERISA, 29 U.S.C. §1001, et seq. As such, Plaintiff IUOE Local 295 is an entity entitled to bring suit in its own name pursuant to 29 U.S.C. §1132(d).

**ANSWER:**   Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 36.

37.    Plaintiff IUOE Local 295 is a non-profit trust, sponsored and administered by a Board of Trustees and established through collective bargaining by labor unions and employers. Pursuant to the trust agreement under which it was created, it provides comprehensive healthcare benefits to participants who are employed under various collective bargaining agreements, along with their dependents and retirees (herein defined, "beneficiaries"). Plaintiff IUOE Local 295 administers the health and welfare fund in Maspeth, New York, and its beneficiaries who purchased generic prescription drugs are located in Connecticut, Delaware, Florida, New Jersey, New York, Pennsylvania, Rhode Island, Puerto Rico, and Texas. Plaintiff IUOE Local 295's beneficiaries purchased thousands of medically-necessary PSC Generics during the Class Period for personal use. Plaintiff IUOE Local 295 is ultimately at risk and responsible for reimbursing or paying for beneficiaries' purchases of prescription drugs. Plaintiff IUOE Local 295 paid more for PSC Generics than it would have absent Walgreens' misconduct.

**ANSWER:**   Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 37. Walgreens denies the allegation in the last sentence in Paragraph 37 regarding any alleged misconduct.

38.     Through its fraudulent pricing scheme, Walgreens has overcharged Plaintiff IUOE Local 295, and as a result, Plaintiff IUOE Local 295 has overpaid for PSC Generics. Examples of such overpayments by Plaintiff IUOE Local 295 are indicated in the chart.

| Prescription | Purchase Date | Days' Supply | PSC Tier | Plan Paid | PSC Price |
|---|---|---|---|---|---|
| **Rx 1** | 10/28/09 | 30 | 2 | $38.96 | $10 |
| **Rx 2** | 05/20/10 | 30 | 2 | $28.08 | $10 |
| **Rx 3** | 05/26/10 | 30 | 1 | $22.84 | $5 |
| **Rx 4** | 03/20/12 | 30 | 2 | $13.48 | $10 |
| **Rx 5** | 04/04/14 | 30 | 2 | $13.48 | $10 |

**ANSWER:**     Walgreens lacks sufficient information to admit or deny the specific prescription sales included in the chart in Paragraph 38.  Walgreens denies the first sentence in Paragraph 38.

39.     Plaintiff IUOE Local 295 and similarly situated Class members paid for prescriptions of their beneficiaries. These payments arose from Walgreens' sales of PSC Generics to beneficiaries for the medically-necessary treatment of illnesses, which qualify as transactions that resulted in the sale of goods to consumers for personal use.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 39.

40.     Plaintiff Steamfitters Local 439 is located in Caseyville, Illinois. Plaintiff Steamfitters Local 439 is an "employee welfare benefit plan" and "employee benefit plan" maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §186(c)(5), and as defined by §§1002(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, et seq. As such, Plaintiff Steamfitters Local 439 is an entity entitled to bring suit in its own name pursuant to 29 U.S.C. §1132(d).

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 40.

41.     Plaintiff Steamfitters Local 439 is a non-profit trust, sponsored and administered by a Board of Trustees, established through collective bargaining by labor unions and employers. Pursuant to the trust agreement under which it was created, it provides comprehensive healthcare benefits to participants who are employed under various collective bargaining agreements, along with their dependents and retirees (collectively, "beneficiaries"). Plaintiff Steamfitters Local 439 administers the health and welfare fund in Illinois and its beneficiaries who purchased PSC Generics are located in Arizona, Illinois, New York, and Florida. Beneficiaries of Plaintiff

Steamfitters Local 439 purchased thousands of medically-necessary PSC Generics during the Class Period for personal use. Plaintiff Steamfitters Local 439 is ultimately at risk and responsible for reimbursing or paying for beneficiaries' purchases of prescription drugs. Plaintiff Steamfitters Local 439 paid more for PSC Generics than it would have absent Walgreens' misconduct.

**ANSWER:** Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 41. Walgreens denies the allegation in the last sentence of Paragraph 41 regarding any alleged misconduct.

42. Through its fraudulent pricing scheme, Walgreens has overcharged Plaintiff Steamfitters Local 439, and as a result, Plaintiff Steamfitters Local 439 has overpaid for PSC Generics. Examples of such overpayments by Plaintiff Steamfitters Local 439 are indicated in the chart.

| Prescription | Date Purchased | Days' Supply | PSC Tier | TPP Paid | PSC (U&C) Price |
|---|---|---|---|---|---|
| **Rx 1** | 4/14/14 | 30 | 2 | $18.43 | $10.00 |
| **Rx 2** | 6/29/14 | 90 | 2 | $53.09 | $20.00 |
| **Rx 3** | 9/22/14 | 90 | 2 | $53.09 | $20.00 |
| **Rx 4** | 3/22/15 | 90 | 2 | $53.09 | $20.00 |
| **Rx 5** | 6/19/15 | 90 | 2 | $53.09 | $20.00 |
| **Rx 6** | 9/17/15 | 90 | 2 | $80.68 | $20.00 |
| **Rx 7** | 3/21/16 | 90 | 2 | $73.18 | $20.00 |
| **Rx 8** | 5/31/16 | 90 | 2 | $70.18 | $20.00 |
| **Rx 9** | 8/26/16 | 90 | 2 | $70.18 | $20.00 |
| **Rx 10** | 10/6/16 | 30 | 2 | $12.37 | $10.00 |

**ANSWER:** Walgreens lacks sufficient information to admit or deny the specific prescription sales included in the chart in Paragraph 42. Walgreens denies the first sentence in Paragraph 42.

43. Plaintiff Steamfitters Local 439 and similarly situated Class members paid for prescriptions of their beneficiaries. These payments arose from Walgreens' sales of PSC Generics to beneficiaries for the medically-necessary treatment of illnesses, which qualify as transactions that resulted in the sale of goods to consumers for personal use.

**ANSWER:** Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 43.

18

44.     Consumers' purchases of PSC Generics, including those of Consumer Plaintiffs, are medically necessary, and thus, are non-discretionary purchases. As such, the Consumer Plaintiffs cannot, and are not required to, avoid future purchases of medically-necessary PSC Generics from Walgreens – their established pharmacy with which they have a standing relationship and prescription history.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in the first sentence of Paragraph 44.  Walgreens denies the remaining allegations in Paragraph 44.

45.     Third-party payors, including Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, and Plaintiff Steamfitters Local 439, will continue to pay for beneficiaries' purchases of PSC Generics because those drugs are medically necessary, and thus, are non-discretionary purchases. As such, beneficiaries cannot, and are not required to, avoid future purchases of medically-necessary PSC Generics from Walgreens – their established pharmacy with which they have a standing relationship and prescription history.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in the first sentence of Paragraph 45.  Walgreens denies the remaining allegations in Paragraph 45.

46.     Plaintiffs have been injured in their business or property by having paid or reimbursed more for PSC Generics than they would have absent Walgreens' misconduct alleged herein. Each Plaintiff was injured by the illegal, unjust, and deceptive conduct described herein, both individually and in a manner that was common and typical of Class members.

**ANSWER:**     Walgreens denies the allegations in Paragraph 46.

**B.     Walgreens**

47.     Defendant Walgreen Co. ("Walgreen Co.") is an Illinois corporation with its headquarters at 200 Wilmot Road, Deerfield, Illinois. Until December 31, 2014, Walgreen Co. had no corporate parent. On December 31, 2014, Walgreen Co. became a wholly-owned subsidiary of Walgreens Boots Alliance, Inc. pursuant to a merger to effect a reorganization of Walgreen Co. into a holding company structure ("Reorganization").

**ANSWER:**     Walgreens admits the allegations in Paragraph 47.

48.     Walgreens refers to itself as "the first global pharmacy-led, health and wellbeing enterprise" with a purpose of "help[ing] people across the world lead healthier and happier lives." Walgreens operates over 8,175 retail pharmacies in all 50 states, the District of Columbia, Puerto Rico and the U.S. Virgin Islands. There are 598 Walgreens retail pharmacies in the State of Illinois alone. As of August 2016, approximately 76% of the United States population lives within five miles of a Walgreens retail pharmacy.

**ANSWER:**     Walgreens admits the Walgreens Boots Alliance (WBA) website refers to WBA as "the first global pharmacy-led, health and wellbeing enterprise."  Walgreens denies that WBA's website states exactly that it has a purpose of "help[ing] people across the world lead healthier and happier lives."  Walgreens admits that its 2016 Annual Report stated that, as of August 31, 2016, Walgreens operated 8,175 retail stores across the 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.  Walgreens denies that there are 598 Walgreens retail pharmacies in the State of Illinois alone but admits that through August 31, 2017, there were 592 stores in Illinois.  *See* Walgreens Store Count by State, https://news.walgreens.com/fact-sheets/store-count-by-state.htm (last visited June 11, 2018). Walgreens denies that, as of August 2016, approximately 76% of the United States population lives within five miles of a Walgreens retail pharmacy but admits that, "[a]s of August 2017, approximately 76% of the population of the USA lives within five miles of a Walgreens or Duane Reade store."

49.     Walgreens relies heavily on its U.S. pharmacy division. In Walgreens' 2016 fiscal year, the U.S. pharmacy division made up 67% of Walgreens' total sales, up from 64% in fiscal year 2014. Walgreens filled 928.5 million prescriptions (adjusted to 30-day equivalents) in fiscal year 2016. Walgreens' latest annual report filed with the Securities Exchange Commission on October 20, 2016 lists Walgreens' total sales for fiscal year 2016 for its Retail Pharmacy USA division at over $83 billion.

**ANSWER:**     Walgreens admits that its 2016 Annual Report states that for fiscal year 2016, the company's pharmacy division made up 67% of total sales, up from 64% in fiscal year 2014.  Walgreens admits that its 2016 Annual Report also states that Walgreens filled 928.5 million prescriptions (adjusted to 30-day equivalents) in fiscal year 2016.  Walgreens also admits that it filed its 2016 Annual Report with the Securities Exchange Commission on October 20, 2016, which listed Walgreens' total sales for fiscal year 2016 for its Retail Pharmacy USA division at over $83 billion. Walgreens denies the remaining allegations in Paragraph 49.

50.     Walgreens directs its retail pharmacy operations from its Illinois headquarters where all its key executives are located. Thus, the deceptive and fraudulent price scheme to overcharge Plaintiffs and members of the Class was developed in and directed from Illinois.

**ANSWER:**     Walgreens admits that its headquarters is located in Illinois. Walgreens

denies the remaining allegations in Paragraph 50.

## JURISDICTION AND VENUE

51.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) because this is a class action, including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; there are hundreds of thousands, and likely millions, of proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000.00; and Walgreens is a citizen of a state different from that of Plaintiffs and members of the Class. Moreover, Walgreens' wrongful conduct, as described herein, foreseeably affects consumers in Illinois and nationwide. This Court also has subject matter jurisdiction over Plaintiffs and the proposed Class' claims pursuant to 28 U.S.C. §1367(a).

**ANSWER:**     Walgreens admits that 28 U.S.C. § 1332(d)(2) is the basis alleged for

subject matter jurisdiction in this suit and that the Complaint also cites 28 U.S.C. § 1367(a).

Walgreens admits that it is incorporated under the laws of the State of Illinois, is headquartered

in Deerfield, Illinois, and that no Plaintiff alleges to be a citizen of Illinois. Walgreens denies all

remaining allegations in Paragraph 51.

52.     Venue is proper in the United States District Court for the Northern District of Illinois (Eastern Division) pursuant to 28 U.S.C. §§1391(b)-(d) and 1441(a), because, inter alia, each Walgreens is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Walgreens' contacts within this District are significant and sufficient to subject it to personal jurisdiction. Furthermore, Walgreens' scheme to implement the PSC and fraudulently inflate U&C pricing information was directed from Walgreens' Deerfield, Illinois headquarters.

**ANSWER:**     Walgreens admits that venue is proper in the United States District Court

for the Northern District of Illinois (Eastern Division) and that it is not contesting personal

jurisdiction over Walgreens for the purpose of this case only. Walgreens denies all remaining

allegations in Paragraph 52.

## FACTUAL BACKGROUND

**A.    Health Insurance and Prescription Drug Benefits in the United States**

53.    The vast majority of Americans have a health insurance plan (either private or public) that covers at least a portion of their medical and prescription drug expenses.

**ANSWER:**    Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 53.

54.    Health insurance is paid for by a premium that covers medical and prescription drug benefits for a defined period. Health insurance can be purchased directly by an individual or obtained through employer plans that either provide benefits by purchasing group insurance policies or are self-funded but administered by health insurance companies and their affiliates. Consumers pay premiums to receive their health insurance benefits.

**ANSWER:**    Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 54.

55.    If a health insurance plan covers outpatient prescription drugs, the cost for prescription drugs is often shared between the consumer and the third-party payor. Such cost sharing can take the form of deductible payments, coinsurance payments, or copayments. In general, deductibles are the dollar amounts the consumer pays during the benefit period (usually a year) before the health insurance plan starts to make payments for drug costs. Coinsurance generally requires a consumer to pay a stated percentage of drug costs. Copayments are generally fixed dollar payments made by a consumer toward drug costs.

**ANSWER:**    Walgreens admits that cost-sharing between an insured, the insured's payor, and/or the payor's PBM is a feature of many prescription drug insurance plans, and payment from an insured may take the form of a copayment or coinsurance. Walgreens denies all remaining allegations in Paragraph 55.

56.    Consumers purchase health insurance and enroll in employer-sponsored health insurance plans to protect them from unexpected high medical costs, including prescription drug costs. Given the premiums paid in exchange for health insurance benefits (including prescription drug benefits), consumers expect to pay the same price as or less than the price paid by uninsured or cash-paying individuals for a prescription. Otherwise, consumers not only would receive no benefit from their prescription drug benefits, but, in fact, would be punished for having health insurance. Therefore, Plaintiffs and members of the Class reasonably expect to pay the same or less for PSC Generics than cash-paying Walgreens customers enrolled in the PSC program.

**ANSWER:**    Walgreens denies the allegations in Paragraph 56.

57. Generic versions of brand name drugs typically are priced significantly below the brand name versions. Thus, as part of the cost-sharing structure relating to prescription drug benefits, third-party payors frequently encourage or require plan participants to have their prescriptions filled with generics in an effort to save on skyrocketing prescription drug costs. Generics typically provide consumers with a lower-cost alternative to brand name pharmaceuticals while providing the same treatment. Here, Plaintiffs and the members of the Class expected to save money and pay less than cash-paying customers by purchasing PSC Generics, not to have Walgreens overcharge them for these drugs.

**ANSWER:** Walgreens admits that generic versions of brand name drugs often have lower retail prices than brand name versions. Walgreens denies the last sentence of Paragraph 57. Walgreens lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 57.

**B. Standardized Prescription Claims Adjudication Process**

58. The prescription claims adjudication process, which is the process of accepting or denying prescription claims submitted to a third-party payor, is a systematic, standardized electronic process used throughout the pharmaceutical industry.

**ANSWER:** Walgreens denies the allegations in Paragraph 58.

59. This uniform process is derived from National Council for Prescription Drug Programs ("NCPDP") industry standards for the electronic transmission and adjudication of pharmacy claims. NCPDP is a non-profit organization that develops industry standards for electronic healthcare transactions used in prescribing, dispensing, monitoring, managing, and paying for medications and pharmacy services. The NCPDP standards have been adopted in federal legislation, including Health Insurance Portability and Accountability Act ("HIPAA"), Medicare Modernization Act ("MMA"), Health Information Technology for Economic and Clinical Health ("HITECH"), and Meaningful Use ("MU"). For example, HIPAA requires uniform methods and codes for exchanging electronic information with health insurance plans. These standards are referred to as the NCPDP Telecommunications Standard. HIPAA also requires prescribers follow the NCPDP SCRIPT Standards when prescribing drugs under Medicare Part D. 42 C.F.R. 423.160.

**ANSWER:** Walgreens admits that NCPDP is a non-profit, standards-setting organization whose standards are utilized by, *inter alia*, the pharmacy and claims-processing industries. Walgreens admits that the NCPDP website states that its standards are named in federal legislation, including the Health Insurance Portability and Accountability Act ("HIPAA"), Medicare Modernization Act ("MMA"), Health Information Technology for

23

Economic and Clinical Health ("HITECH"), and Meaningful Use ("MU"). Walgreens admits that 42 C.F.R. § 423.160 contains standards for the electronic processing of prescription claims. Walgreens lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 59.

60.     When a consumer presents a prescription claim at a pharmacy, key information such as the consumer's name, drug dispensed, and quantity dispensed is transmitted via interstate wire from the pharmacy to the correct third-party payor (or its agent) to process and adjudicate the claim. The third-party payor instantaneously processes the prescription claim according to the benefits plan assigned to the consumer. The third-party payor electronically transmits via interstate wire a message back to the pharmacy indicating whether the drug and consumer are covered and, if so, the amount the pharmacy must collect from the consumer as a copayment, coinsurance, or deductible amount. Any portion of the drug price not paid by the consumer is borne by the third-party payor. The whole adjudication process occurs in a matter of seconds.

**ANSWER:**     Walgreens does not know how other pharmacies' prescription claim adjudication process works and therefore lacks sufficient knowledge to admit or deny any allegations in Paragraph 60 that are not specific to Walgreens. With respect to Walgreens specifically, Walgreens admits that the first three sentences describing the adjudication process described in Paragraph 60 is generally true for electronic claims submissions, but denies the allegation with respect to manually submitted claims. Walgreens denies the allegations in the fourth sentence of Paragraph 60.

61.     Walgreens, Plaintiffs, and members of the Class all participate in this automated and systematic claims adjudication process when PSC Generics are filled.

**ANSWER:**     Walgreens admits that it generally participates in this automated and systematic claims adjudication process, although certain claims may need to be manually – rather than electronically – submitted to payors.  Walgreens denies that individual customers, including the individually-named Plaintiffs and the class they seek to represent, participate in this process. Walgreens lacks sufficient knowledge to admit or deny whether or how IBEW Local 38, Plaintiff

IUOE Local 295, Plaintiff Steamfitters Local 439, of members of the purported class they represent participate in this automated and systematic claims adjudication process.

62.     The out-of-pocket amount that consumers are required to pay (whether in the form of a copayment, coinsurance, or deductible amount) in order to receive the prescription is calculated based on the U&C price reported by Walgreens. The out-of-pocket amount a consumer pays cannot exceed the U&C price. The drug reimbursement amount reported to third-party payors also cannot exceed the U&C price. Thus, the price reported and charged to Plaintiffs and the Class cannot exceed the U&C price. Upon information and belief, Walgreens uniformly administers its fraudulent U&C pricing scheme such that it uses the same inflated U&C price for a particular PSC Generic that it reports and charges to Plaintiffs and the Class.

**ANSWER:**     Walgreens denies the allegations in Paragraph 62.

## C.     Pharmacies Are Required to Report the Cash Price for the Drug Being Dispensed as Their U&C Price

63.     As part of the adjudication process, the pharmacy must report the pharmacy's U&C price for the drug being dispensed. Pharmacies are required to report their U&C prices for each prescription transaction using NCPDP's mandatory pricing segment code 426-DQ.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in the first sentence of Paragraph 63 insofar as it purports to identify the U&C price as a mandatory data field on a pharmacy's NCPDP request file; Paragraph 63 is not specific to any PBM's or payor's supposed "require[ments]." Regarding the allegations in the second sentence, Walgreens admits that NCPDP's Telecommunication Standard includes Field 426-DQ, "Usual and Customary Charge." Walgreens denies the second sentence's assertion that there is a "mandatory [NCPDP] pricing segment code 426-DQ," as well as all other allegations in Paragraph 63.

64.     The term "usual and customary" is not ambiguous. The U&C price submitted in the adjudication process is generally defined as the cash price to the general public, exclusive of sales tax or other amounts claimed. The following sources, among others, reflect the commonly accepted industry meaning of the term "usual and customary" price:

(a)     The NCPDP, which created standard billing forms used for drug claims, is a standard-setting organization that represents virtually every sector of the pharmacy services industry. NCPDP authored explanatory materials for its billing forms that state that the "usual and customary" charge field on the billing form (field 426-DQ) means "amount charged cash customers for the prescription." Congress authorized the Secretary of HHS to "adopt" standard billing forms (42 U.S.C. §1320d-1(a)), and, under that

authority, the Secretary "adopted" the current NCPDP electronic form as the standard electronic health care claim form. 45 C.F.R. §162.1102 (a). See also 42 C.F.R. §423.160 (incorporating NCPDP standards into the Medicare Part D program).

(b)     The Academy of Managed Care Pharmacy ("AMCP") is a professional association that includes health systems and PBMs. An AMCP Guide to Pharmaceutical Payment Methods (October 2007) defines "usual and customary" price as "[t]he price for a given drug or service that a pharmacy would charge a cash-paying customer without the benefit of insurance provided through a payer or intermediary with a contract with the pharmacy." The Pharmaceutical Care Management Association, a national association dedicated to representing pharmacy benefit managers, utilizes a similar definition.

(c)     Several reports by the Government Accountability Office on "usual and customary" price trends in drug pricing, issued from August 2005 through February 2011, define the "usual and customary price" as "the price an individual without prescription drug coverage would pay at a retail pharmacy." See, e.g., GAO Report, "Prescription Drugs: Trends in Usual and Customary Prices for Commonly Used Drugs," February 10, 2011.

(d)     The Code of Federal Regulations and the Medicare Prescription Drug Benefit Manual (Chapter 5, §10.2, Benefits and Beneficiary Protections, Rev. 9/30/11) define usual and customary price as "[t]he price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug." 42 C.F.R. §423.100.

(e)     The same Manual (Chapter 14, §50.4.2, n.1) states that the discounted prices that Wal-Mart charged to its customers "is considered Wal-Mart's 'usual and customary' price."

**ANSWER:**     Walgreens admits that the Illinois Department of Healthcare and Family Services Handbook for Providers of Pharmacy Services defines "usual and customary" as the cash price to the general public, exclusive of sales tax or other amounts claimed.  Walgreens admits that the NCPDP defines the term "Usual and Customary Charge" contained in field 426-DQ as the "[a]mount charged cash customers for the prescription exclusive of sales tax or other amounts claimed."  Walgreens admits that Congress authorized the Secretary of HHS to "adopt" standard billing forms (42 U.S.C. § 1320d-1(a)), and, under that authority, the Secretary "adopted" the current NCPDP electronic form as the standard electronic health care claim form. 45 C.F.R. §162.1102 (a); 42 C.F.R. §423.160.  Walgreens admits that the Academy of Managed

Care Pharmacy ("AMCP") is a professional association that includes health systems and PBMs. Walgreens further admits that an AMCP Guide to Pharmaceutical Payment Methods (October 2007) defines "usual and customary" price as "[t]he price for a given drug or service that a pharmacy would charge a cash-paying customer without the benefit of insurance provided through a payer or intermediary with a contract with the pharmacy." Walgreens denies that the Pharmaceutical Care Management Association, a national association dedicated to representing pharmacy benefit managers, utilizes a similar definition. Walgreens admits the allegations in subpart (c), (d), and (e) of Paragraph 64. Walgreens denies any remaining allegations in Paragraph 64.

65. Walgreens knows exactly what is required and involved in reporting U&C prices. Walgreens formerly operated Walgreens Health Initiatives, Inc. ("WHI"), then a wholly-owned subsidiary of Walgreen Co., as the PBM arm of the company until 2011, when it was acquired by Catalyst Health Solutions, Inc. Walgreens established WHI in 1991 to administer pharmacy benefit programs and offer pharmacy benefit management services, including, among other things, claims processing. As a PBM, WHI maintained a network of participating pharmacies, which of course included Walgreens retail pharmacies, among others.

**ANSWER:** Walgreens admits that WHI was a wholly owned subsidiary of Walgreen Co. until 2011, that WHI was acquired by Catalyst Health Solutions Inc. in 2011, and that WHI was a PBM. Walgreens further admits that, as a PBM, WHI maintained a network of participating pharmacies, including Walgreens retail pharmacies, among others. Walgreens denies all other allegations in Paragraph 65.

66. A WHI January 2011 "Pharmacy Manual" was available to WHI's network of participating pharmacies and was "intended as a guide for your pharmacy staff in claims processing, and [to] provide[] general terms, conditions, procedures, and policies of Walgreens Health Initiatives."

**ANSWER:** Walgreens admits that a WHI 2008 "Pharmacy Manual" was available to participating pharmacies and was "intended to serve as a guide to assist your pharmacy staff in claims processing and provide general terms and conditions and procedures and policies of

27

WHI." Walgreens denies the remaining allegations in Paragraph 66, including the availability of a 2011 WHI Pharmacy Manual.

67.     The Pharmacy Manual states that the participating pharmacies were to use the NCPDP Standard Universal Claim Form – whether handwritten or computer generated.

**ANSWER:**     Walgreens admits that a WHI 2008 "Pharmacy Manual" included a section regarding the use of the NCPDP Standard Universal Claim Form. Walgreens denies the remaining allegations in Paragraph 67, including the availability of a 2011 WHI Pharmacy Manual.

68.     The Pharmacy Manual provides an image of a sample Universal Claim form.

## Sample of Universal Claim Form Below

### _Image contained on p. 26 of Second Amended Consolidated Class Action Complaint_

Note: Upon release, new versions of the UCF will be accepted. The following information applies to the UCF.

**ANSWER:**     Walgreens admits that a WHI 2008 "Pharmacy Manual" included an image of a sample Universal Claim form. Walgreens denies the remaining allegations in Paragraph 68, including the availability of a 2011 WHI Pharmacy Manual.

69.     In explaining the definitions of the fields required in the Universal Claim Form, the Pharmacy Manual contains the following definition: "**Total price (required) –** total of the ingredient cost, dispensing fee, and tax (\$\$\$.¢¢), or the usual and customary retail, _**whichever is less**_." [First emphasis in original, second emphasis added.]

**ANSWER:**     Walgreens admits that a WHI 2008 "Pharmacy Manual" included the definition of "Total price," as stated in Paragraph 69. Walgreens denies the remaining allegations in Paragraph 69, including the availability of a 2011 WHI Pharmacy Manual.

70.     This Walgreens Pharmacy Manual also defines "U&C – Usual and Customary" as follows: "The usual and customary price refers to the _**cash price including all applicable customer discounts, coupons or sale price which a cash-paying customer would pay at the pharmacy.**_" [Emphasis added.].

**ANSWER:** Walgreens admits that a WHI 2008 "Pharmacy Manual" included the definition of "Usual and Customary price," as stated in Paragraph 70. Walgreens denies the remaining allegations in Paragraph 70, including the availability of a 2011 WHI Pharmacy Manual.

### D.    Other Pharmacies Report Their Generic Prescription Drug Discount Program Prices as Their U&C Prices

71.    Because of the price differentials, generic versions of prescription drugs are liberally and substantially substituted for their brand name counterpart. In every state, pharmacists are permitted (and, in some states, required) to substitute a generic product for a brand name product unless the doctor has indicated that the prescription for the brand name product must be dispensed as written. Today, nearly 89% of all prescriptions are filled with generic drugs.

**ANSWER:** Walgreens admits that, according to the 2016 Generic Drug Savings & Access in the United States Report published by the Generic Pharmaceutical Association cited by Plaintiffs in Paragraph 3, 89% of all prescriptions dispensed in the United States now are generic drugs. Walgreens lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 71.

72.    In 2006, the major retailers with pharmacy departments began offering hundreds of generic prescription drugs at reduced prices. These retailers were likely able to absorb lower margins on generic drug sales because pharmacy sales represented a low percentage of their total sales.

**ANSWER:** Walgreens admits that, in 2006, some major retailers with pharmacy departments began offering hundreds of generic prescription drugs at reduced prices. Walgreens lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 72.

73.    For example, in September 2006, Wal-Mart began charging $4 for a 30-day supply of the most commonly prescribed generic drugs and $10 for a 90-day supply. In November of that same year, Target began charging $4 for a 30-day supply of the most commonly prescribed generic drugs and $10 for a 90-day supply. Upon information and belief, Wal-Mart and Target report to health insurance plans their $4 per 30-day supply for generic prescription drugs as their U&C prices.

**ANSWER:** Walgreens admits that in September 2006, Wal-Mart announced a program to charge $4 for a 30-day supply and $10 for a 90-day supply of certain specified generic drugs. Walgreens lacks sufficient knowledge to admit or deny whether the drugs in Wal-Mart's program were "the most commonly prescribed generic drugs." Walgreens admits that Target began charging $4 for a 30-day supply and $10 for a 90-day supply of certain specified generic drugs. Walgreens lacks sufficient knowledge to admit or deny whether the drugs in Target's program were "the most commonly prescribed generic drugs." Walgreens lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 73.

74.     Shortly after the implementation of these programs, the Centers for Medicare & Medicaid Services ("CMS") offered guidance on the lower cash prices pharmacies were offering on generic prescriptions. In the October 11, 2006 guidance, CMS was careful to note the following:

> Wal-Mart recently introduced a program offering a reduced price for certain generics to its customers. The low Wal-Mart price on these specific generic drugs is considered Wal-Mart's "usual and customary" price, and is not considered a one-time "lower cash" price. Part D sponsors consider this lower amount to be "usual and customary" and will reimburse Wal-Mart on the basis of this price. To illustrate, suppose a Plan's usual negotiated price for a specific drug is $10 with a beneficiary copay of 25% for a generic drug. Suppose Wal-Mart offers the same generic drug throughout the benefit for $4. The Plan considers the $4 to take place of the $10 negotiated price. The $4 is not considered a lower cash price, because it is not a one-time special price. The Plan will adjudicate Wal-Mart's claim for $4 and the beneficiary will pay only a $1 copay, rather than a $2.50 copay. This means that both the Plan and the beneficiary are benefiting from the Wal-Mart "usual and customary" price.

**ANSWER:** Walgreens admits that CMS issued guidance to Part D Plan Sponsors on October 11, 2006 regarding the lower cash prices some pharmacies were offering on generic prescriptions. Walgreens admits that the guidance contains the quoted material in Paragraph 74. Walgreens denies that this guidance would have applied to any particular program implemented by Walgreens. Walgreens denies any remaining allegations in Paragraph 74.

**E.      Walgreens' PSC Prices Are Its True U&C Prices for PSC Generics**

75.      In 2007, Walgreens created the PSC – a loyalty program targeted to cash customers – to compete with the major retailers' prices for generic drugs.

**ANSWER:**      Walgreens admits that in 2007, Walgreens launched the PSC program, which included a formulary that allowed PSC members to obtain certain generic prescription medicines at discounted prices. Walgreens denies all other allegations in Paragraph 75.

76.      Upon information and belief, Walgreens implemented the PSC program as a scheme to maximize reimbursements from third-party payors and payments from consumers through fraudulently inflated U&C prices, while still remaining competitive for cash-paying prescription drug customers.

**ANSWER:**      Walgreens denies the allegations in Paragraph 76.

77.      The PSC program is a discount prescription drug program that offers savings on hundreds of generic prescription drugs. The PSC program is not a third-party health insurance plan; it is not insurance or a substitute for insurance. Enrollment in the PSC program was and continues to be open to cash-paying customers, but persons on Medicare or Medicaid are ineligible to participate in the program. Walgreens charges $20 for individuals, or $35 for a family, to join the PSC.

**ANSWER:**      Walgreens admits the allegations in Paragraph 77 with respect to the current version of the PSC program. Walgreens lacks specific information to admit or deny any remaining allegations in Paragraph 77, particularly with respect to the Terms and Conditions about the PSC program in prior years, because Plaintiffs have not defined the time period during which the allegation in Paragraph 77 applies.

78.      Walgreens, through its PSC, allows cash-paying customers to purchase more than 500 widely prescribed generic drugs for $5, $10, and $15 for 30-day prescriptions and $10, $20, and $30 for 90-day prescriptions, depending on the drug's tier classification.

**ANSWER:**      Walgreens admits the allegations in Paragraph 78 with respect to the current version of the PSC program.  Walgreens lacks specific information to admit or deny any remaining allegations in Paragraph 78, particularly with respect to the number of generic drugs

included on the PSC program's formulary in prior years, because Plaintiffs have not defined the time period during which the allegation in Paragraph 78 applies.

79.     Walgreens' PSC formulary includes some of the most commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments. PSC Prices apply only to prescription generics listed on the formulary.

**ANSWER:**     Walgreens admits the allegations in Paragraph 79 with respect to the current version of the PSC program.  Walgreens lacks specific information to admit or deny any remaining allegations in Paragraph 79, particularly with respect to which generic drugs were included on the PSC program's formulary in prior years, because Plaintiffs have not defined the time period during which the allegation in Paragraph 79 applies.

80.     Walgreens designed the PSC program to appeal to price sensitive customers, who, for the most part, take long-term maintenance medications. Customers who take maintenance medications, many of whom are elderly or disabled, are the most valuable to Walgreens.

**ANSWER:**     Walgreens admits that it designed the PSC program to appeal to many types of customers, including price-sensitive customers.  Walgreens lacks sufficient knowledge to admit or deny the remaining allegations in the first sentence of Paragraph 80 concerning whether price-sensitive customers typically take long-term maintenance medications. Walgreens denies all other allegations in Paragraph 80.

81.     Walgreens' PSC program is not a special, limited, or a one-time offer. Any pharmacy patron, except a Medicare or Medicaid beneficiary, is eligible to participate in the program. Otherwise Walgreens does not limit the eligibility for, or duration of the availability of, PSC prices other than to require cash payment.

**ANSWER:**     Because Plaintiffs have failed to define "special, limited, or one-time offer," Walgreens lacks sufficient information to form a belief as to the truth of the first sentence. Walgreens admits that persons receiving benefits from Medicare or Medicaid are ineligible to join the PSC. Walgreens denies that it does not limit eligibility for PSC Prices, because it requires that PSC members pay a yearly membership fee in order to join the program, that they

not be Medicare or Medicaid beneficiaries, that they purchase their prescriptions with cash, and

that they meet all other applicable Terms and Conditions of the program.

82.     Thus, Walgreens PSC Prices clearly fit within the accepted industry meaning and Walgreens' own understanding of "usual and customary" prices, and thus, represent Walgreens' true U&C prices for the PSC Generics.

**ANSWER:**     Walgreens denies the allegations in Paragraph 82.

### F.     Walgreens Improperly Overcharges Plaintiffs and the Class for PSC Generics

83.     As part of the standardized prescription claims adjudication process, Walgreens is required to accurately state its U&C price for the prescription being dispensed, in accordance with the NCPDP requirements.

**ANSWER:**     Regarding the first sentence of Paragraph 70, Walgreens admits that the

NCPDP's Telecommunication Standard includes Field 426-DQ, "Usual and Customary Charge"

as a required claims submission field.  Walgreens denies all other allegations in Paragraph 83.

84.     The industry standards that Walgreens follows provide that the U&C price is the cash price offered to the general public for specific drugs. Walgreens offers the PSC Price as the cash price to the general public and the PSC Price is, in fact, the most common price paid by Walgreens' cash-paying customers. Thus, under industry standards and Walgreens' own definition, the PSC Price is Walgreens' U&C price for the PSC Generics. Walgreens also knows that it is industry standard that the drug reimbursement price and the amount collected from the consumer cannot exceed the U&C price.

**ANSWER:**     Walgreens denies the allegations in Paragraph 84.

85.     Yet, Walgreens charges vastly different prices for PSC Generics depending on whether the payer is an insurer or a cash-paying PSC customer. While PSC customers pay $5, $10, and $15 for 30-day prescriptions and $10, $20, and $30 for 90-day prescriptions of PSC Generics, Plaintiffs and members of the Class pay much higher prices. Walgreens effectively maintains an improper dual U&C pricing structure for PSC Generics.

**ANSWER:**     Walgreens denies the allegations in Paragraph 85.

86.     Walgreens knowingly fails to report, and continues to fail to report, the PSC Price – its true "usual and customary" price – on claims for reimbursement for PSC Generics submitted to third-party payors and charges made to consumers, like Plaintiffs and the Class.

**ANSWER:**     Walgreens denies the allegations in Paragraph 86.

87. When Walgreens adjudicates prescription claims for PSC Generics, it misrepresents the amount of its U&C price on the reimbursement claims forms that Walgreens submits to third-party payors. In the field requiring Walgreens to report its U&C price, Walgreens does not report its PSC price, which is its true U&C price, but instead reports a much higher price. Walgreens thus ignores the true U&C prices, and instead knowingly and improperly charges vastly inflated prices to third-party payors. As a result, because the amount a consumer must pay is dictated by the inflated U&C price communicated to the third-party payor, the amount that Walgreens charges consumers is also artificially inflated.

**ANSWER:** Walgreens admits that, "In the field requiring Walgreens to report its U&C price, Walgreens does not report its PSC price[.]" Walgreens denies the remaining allegations in Paragraph 87.

88. Thus, Walgreens' failure to maintain and report accurate U&C prices for PSC Generics in the company's pharmacy computer system, thus, systematically has injured and will continue to injure Plaintiffs and the Class.

**ANSWER:** Walgreens denies the allegations in Paragraph 88.

89. In short, the PSC program allows Walgreens to compete with its competitors' discounted prices for its cash-paying customers while still receiving higher payments from its customers who carry insurance. Walgreens uses the PSC program to hide its true U&C prices from consumers and third-party payors, which allows Walgreens to continue charging consumers and third-party payors a higher rate for PSC Generics than cash-paying customers through the PSC program. The PSC program enables Walgreens to unlawfully report artificially inflated U&C prices to third-party payors and to collect from consumers artificially inflated copays.

**ANSWER:** Walgreens denies the allegations in Paragraph 89.

90. Upon information and belief, Walgreens uses the same inflated U&C price for any given PSC Generic (of the same strength and dosage) that it reports and charges to Plaintiffs and the Class. Thus, the manner in which Walgreens fails to report and incorporate the PSC Prices into its U&C prices for the PSC Generics is uniform and systematically applied through Walgreens electronic prescription claims adjudication process.

**ANSWER:** Walgreens denies the allegations in Paragraph 90.

91. Plaintiffs and members of the Class have no way of determining on their own whether the price Walgreens submits as its U&C price is, in fact, the most common price offered to cash-paying members of the general public. Moreover, Plaintiffs and members of the Class were unaware that Walgreens' representation at the point of purchase for the PSC Generics that the copayment demanded and charged was not accurate.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in the first sentence of Paragraph 91.  Walgreens denies the allegations in the second sentence of Paragraph 91.

92.     Walgreens also did not and does not inform Plaintiffs and members of the Class, that PSC Prices for PSC Generics are lower than the amount Walgreens was charging them. Walgreens either wrongfully conceals or omits such information by failing to tell consumers and third-party payors about the PSC program, or by misrepresenting to consumers and third-party payors that the PSC program would not apply to their purchases.

**ANSWER:**     Walgreens denies the allegations in Paragraph 92.

93.     As part of its fraudulent price scheme, Walgreens has reported and charged U&C prices for PSC Generics that, as demonstrated by the charts below, are up to 11 times the U&C prices reported by some of its most significant competitors and up to 5 times its own PSC Prices.

**ANSWER:**     Walgreens denies the allegations in Paragraph 93.

94.     The chart below shows U&C prices submitted to New York's Medicaid program for the purposes of claims adjudication. The U&C prices submitted by Walgreens unequivocally are inflated as compared with its competitors and its own PSC prices.

| DRUG | SUFFOLK COUNTY, NY | | | | |
|------|---------|--------|----------|-----------|------------------------|
| | **WalMart** | **Target** | **Shoprite** | **Walgreens** | **Walgreens (PSC Price)** |
| Carvedilol, 6.25 mg TAB, quantity 60 | $4.00 | $4.00 | $9.99 | $43.98 | $10.00 |
| Lisinopril, 20 mg TAB, quantity 30 | $4.00 | $4.00 | $3.99 | $17.33 | $5.00 |
| Lisinopril/HCTZ 20, 12.5 mg TAB, quantity 30 | $4.00 | $4.00 | $9.99 | $29.99 | $10.00 |
| Metformin HCL, 1,000 mg TAB, quantity 60 | $4.00 | $4.00 | $9.99 | $37.99 | $5.00 (90 pills) |
| Metoprolol, 50 mg TAB, quantity 60 | $4.00 | $4.00 | $3.99 | $19.66 | $10.00 |
| Warfarin, 5 mg TAB, quantity 30 | $4.00 | $4.00 | $3.99 | $18.76 | $10.00 |
| Fluoxetine, 20 mg, quantity 30 | $4.00 | $4.00 | $9.99 | $28.39 | $50.. |

**ANSWER:**     Walgreens denies the allegations in the second sentence of Paragraph 94. Walgreens lacks sufficient knowledge to admit or deny the allegations in the first sentence and

the table, including whether Paragraph 94 accurately reflects U&C prices supposedly reported to New York Medicaid by ShopRite, Wal-Mart, and Target, for the identified drugs, at the identified quantities, and on a date not specified in Paragraph 94. Walgreens denies any remaining allegations in Paragraph 94.

95.     The chart below shows the U&C prices submitted to Florida's Medicaid program for purposes of claims adjudication. The U&C prices submitted by Walgreens unequivocally are inflated as compared with its competitors and its own PSC prices.

| DRUG | ORLANDO, FL | | | |
| | WalMart | Winn-Dixie | Walgreens | Walgreens (PSC Price) |
| --- | --- | --- | --- | --- |
| Carvedilol, 12.5 mg TAB, quantity 60 | $4.00 | $41.99 | $47.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $29.73 | N/A | $37.99 | $10.00 |
| Warfarin, 5 mg TAB, quantity 60 | $4.00 | $21.99 | $95.99 | $10.00 |

**ANSWER:**     Walgreens denies the allegations in the second sentence of Paragraph 95. Walgreens lacks sufficient knowledge to admit or deny the allegations in the first sentence and the table, including whether Paragraph 95 accurately reflects U&C prices supposedly reported to Florida Medicaid by Wal-Mart and Winn-Dixie for the identified drugs, at the identified quantities, and on a date not specified in Paragraph 95. Walgreens denies any remaining allegations in Paragraph 95.

96.     The chart below shows U&C prices submitted to Pennsylvania's Medicaid program for the purposes of claims adjudication. The U&C prices submitted by Walgreens unequivocally are inflated as compared with its competitors and its own PSC prices.

| DRUG | PHILADEPHIA, PA | | | |
| | WalMart | Shoprite | Walgreens | Walgreens (PSC Price) |
| --- | --- | --- | --- | --- |
| Carvedilol, 12.5 mg TAB, | $4.00 | $7.49 | $47.99 | $10.00 |

| | | | |
|---|---|---|---|
| quantity 60 | | | |
| Lisinopril, 20 mg TAB, quantity 30 | $4.00 | $2.99 | $18.99 | $5.00 |
| Lisinopril/HCTZ 20, 12.5 mg TAB, quantity 30 | $9.00 | $3.00 | $23.99 | $10.00 |
| Metformin HCL, 1000 mg TAB, quantity 60 | $9.00 | $4.00 | $31.99 | $5.00 (90 pills) |
| Metoprolol, 50 mg TAB, quantity 60 | $4.00 | $5.99 | $21.69 | $10.00 |
| Warfarin, 1 mg TAB, quantity 30 | $4.00 | $4.00 | $20.69 | $5.00 |

**ANSWER:** Walgreens denies the allegations in the second sentence of Paragraph 96. Walgreens lacks sufficient knowledge to admit or deny the allegations in the first sentence and the table, including whether Paragraph 96 accurately reflects U&C prices supposedly reported to Pennsylvania Medicaid by Wal-Mart and ShopRite for the identified drugs, at the identified quantities, and on a date not specified in Paragraph 96. Walgreens denies any remaining allegations in Paragraph 96.

### CLASS ACTION ALLEGATIONS

97. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and the following Class:

**Nationwide Class (First – Third and Twenty-Ninth Claims for Relief)**

All persons or entities in the United States and its territories who, during the applicable liability period (the "Class Period"), purchased and/or paid for some or all of the purchase price for generic prescription drugs that Walgreens included in its Prescription Savings Club ("PSC") formulary for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For purposes of the Class definition, persons or entities "purchased" generic prescription drugs that Walgreens included in its PSC formulary if they paid or reimbursed some or all of the purchase price.

**OR IN THE ALTERNATIVE**

**State Classes (First – Twenty-Ninth Claims for Relief)**

All persons or entities in Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Iowa, Illinois, Louisiana, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, North Carolina, Ohio, Pennsylvania South

Carolina, Texas, and Wisconsin who, during the applicable liability period (the "Class Period"), purchased and/or paid for some or all of the purchase price for generic prescription drugs that Walgreens included in its Prescription Savings Club ("PSC") formulary for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For purposes of the Class definition, persons or entities "purchased" generic prescription drugs that Walgreens included in its PSC formulary if they paid or reimbursed some or all of the purchase price.

**ANSWER:** Walgreens admits that Plaintiffs attempt to bring these claims on behalf of a nationwide class, or, in the alternative, state classes. Walgreens denies all other allegations in Paragraph 97.

98. Excluded from each Class are:

(a) The Walgreens' officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns;

(b) All governmental entities, except for governmental-funded employee benefit plans;

(c) All persons or entities who purchased PSC Generics for purposes of resale;

(d) Any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

**ANSWER:** Walgreens admits that Plaintiffs attempt to bring these claims on behalf of a nationwide class, or, in the alternative, state classes. Walgreens admits that Plaintiffs attempt to exclude certain persons or entities, as described in Paragraph 98, from their proposed classes. Walgreens denies all other allegations in Paragraph 98.

99. Numerosity: The proposed Class consists of at least hundreds of thousands, and likely millions, of individual Walgreens customers as well as numerous third-party payors, making joinder of all members impractical. The exact size of the Class and the identities of the individual members thereof are ascertainable through Walgreens' records, including, but not limited to, their billing and collection records.

**ANSWER:** Walgreens denies the allegations in Paragraph 99.

100. Superiority of Class Action: Plaintiffs and the Class suffered, and will continue to suffer, harm as a result of Walgreens' unlawful and wrongful conduct. A class action is superior

38

to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome for the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies caused by Walgreens' common course of conduct. The class action device allows a single court to provide the benefits of uniform adjudication, judicial economy, and the fair and equitable handling of all the Class members' claims in a single forum.

**ANSWER:**     Walgreens denies the allegations in Paragraph 100.

101.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class members because Plaintiffs and all of the Class members' claims originate from the same willful conduct, practice, and procedure on the part of Walgreens and Plaintiffs possesses the same interests and has suffered the same injuries as each Class member. Like all members of the proposed Class, Walgreens overcharged Plaintiffs for PSC Generics by reporting and charging them prices that Walgreens fraudulently inflated far above its U&C prices.

**ANSWER:**     Walgreens denies the allegations in Paragraph 101.

102.    <u>Common Questions of Law and Fact Predominate</u>: There are questions of law and fact common to Plaintiffs and the Class members, and those questions substantially predominate over any questions that may affect individual members of the Class within the meaning of Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of fact and law include:

(a)     Whether Walgreens artificially inflated the U&C prices it reported and charged for PSC Generics above the price that cash-paying Walgreens customers pay for the same prescriptions;

(b)     Whether Walgreens omitted and concealed material facts from its communications and disclosures regarding its pricing scheme;

(c)     Whether Walgreens has overcharged and continues to overcharge Plaintiffs and Class members who paid for PSC Generics;

(d)     Whether Walgreens engaged in fraud, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the pricing and sale of PSC Generics;

(e)     Whether, as a result of Walgreens' misconduct, Plaintiffs and Class members have suffered damages, and, if so, the appropriate measure of damages to which they are entitled;

(f)     Whether, as a result of Walgreens' misconduct, Plaintiffs and Class members are entitled to equitable or other relief, and, if so, the nature of such relief; and

(g)     Whether, as a result of Walgreens' misconduct, Walgreens should be enjoined from engaging in such conduct in the future.

**ANSWER:**     Walgreens denies the allegations in Paragraph 102.

103.    The Class has a well-defined community of interest. Walgreens has acted and failed to act on grounds generally applicable to Plaintiffs and the Class members, requiring the Court's imposition of uniform and final injunctive relief and corresponding declaratory relief to ensure compatible standards of conduct toward the Class.

**ANSWER:**     Walgreens denies the allegations in Paragraph 103.

104.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class members.

**ANSWER:**     Walgreens denies the allegations in Paragraph 104.

105.    Absent a class action, most of the Class members would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

**ANSWER:**     Walgreens lacks sufficient knowledge to admit or deny the allegations in

the first sentence of Paragraph 105 insofar as it discusses the costs of litigation.  Walgreens

denies the remaining allegations in Paragraph 105.

## TOLLING OF THE STATUTE OF LIMITATIONS

106.    Plaintiffs and the Class members had neither actual nor constructive knowledge of the facts constituting their claims for relief until recently.

**ANSWER:**     Walgreens denies the allegations in Paragraph 106.

107.    Plaintiffs and the Class members did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the unlawful conduct alleged herein until recently.

**ANSWER:**     Walgreens denies the allegations in Paragraph 107.

108.    Walgreens' pricing scheme did not reveal facts that would have put Plaintiffs or the Class members on notice that Walgreens was reporting and charging inflated prices for PSC

Generics. Walgreens misrepresented at the point of purchase that the copayment was accurate; and Walgreens omitted at the point of purchase that Plaintiffs were not receiving any benefit from their insurance.

**ANSWER:**    Walgreens denies the allegations in Paragraph 108.

109.    Because Walgreens did not disclose the pricing scheme, Plaintiffs and the Class members were unaware of Walgreens' unlawful conduct alleged herein and did not know that they were paying artificially inflated prices for PSC Generics.

**ANSWER:**    Walgreens lacks sufficient information as to the actual knowledge of the

Plaintiffs and/or their purported class.  Walgreens denies the remaining allegations in Paragraph

109.

110.    Not only did Walgreens fail to disclose material information, but it also actively misled consumers by inflating and misrepresenting U&C prices for PSC Generics to Plaintiffs that were far higher than the PSC Prices (the actual U&C prices). Walgreens also failed to post drug prices in a clear manner and in a way that would alert Plaintiffs and the Class members to the artificially inflated prices charged by Walgreens. By so doing, Walgreens misled Plaintiffs and the Class members into overpaying for PSC Generics.

**ANSWER:**    Walgreens denies the allegations in Paragraph 110.

111.    Walgreens' affirmative acts alleged herein, including acts in furtherance of its unlawful pricing scheme, were wrongfully concealed and carried out in manner that precluded detection.

**ANSWER:**    Walgreens denies the allegations in Paragraph 111.

112.    Under the circumstances alleged, Walgreens owed a duty to Plaintiffs and members of the Class to provide them with accurate information regarding the prices of their generic prescription drugs.

**ANSWER:**    Walgreens denies the allegations in Paragraph 112.

113.    The relationship between Walgreens and Plaintiffs and the Class is one in which Walgreens has an obligation of reasonable conduct for the benefit of the Plaintiffs and the Class. As a pharmacy providing prescription medication to consumers, Walgreens owes a duty to provide accurate information regarding the prices of generic prescription drugs, including PSC Generics. Furthermore, as a pharmacy, Walgreens is bound to the Code of Ethics for Pharmacists, which mandates Walgreens' pharmacies and the pharmacists within the pharmacies to tell the truth and to assist individuals in making the best use of medications. Plaintiffs and the Class reasonably expected Walgreens to "help achieve optimum benefit from their medications, to be committed to their welfare, and to maintain their trust."

**ANSWER:**     Walgreens denies the allegations in Paragraph 113.

114.     The relationship between Walgreens and Plaintiffs and the Class is one in which Walgreens has an obligation of reasonable conduct for the benefit of Plaintiffs and the Class. As an entity that is in the business of supplying information for the guidance of both third-party payors and consumers in their business transactions with Walgreens, Walgreens owes a duty to Plaintiffs and the Class to provide them with accurate information regarding the U&C price of generic prescription drugs, including PSC Generics.

**ANSWER:**     Walgreens denies the allegations in Paragraph 114.

115.     Walgreens also had a duty to Plaintiffs and members of the Class to provide them with accurate information regarding the prices of their generic prescription drugs because it was entirely likely and foreseeable that Plaintiffs and the Class would be injured when they paid for PSC Generics at amounts that were far higher than the prices they would have paid but for Walgreens' misconduct. Walgreens knows exactly what is required and involved in reporting U&C prices given that Walgreens' own Pharmacy Manual defines U&C and application of that definition would have required Walgreens to charge the lower PSC price to Plaintiffs and the Class. Imposing a duty to provide Plaintiffs and the Class with accurate price information places no burden on Walgreens because Walgreens already is required to accurately report to programs like Medicare and Medicaid its U&C price for prescriptions being dispensed and to not seek reimbursement for a prescription at a price that is inflated over the price it charges self-paying customers for the exact same drug (i.e., the U&C price). See, e.g., 31 U.S.C. §§3729, et seq.; 42 U.S.C. §1320c-5(a)(1); 42 U.S.C. §1320a-7(b)(6); 42 C.F.R. §§423.505(i)(4)(iv), (k)(3); 42 C.F.R. §447.512(b); Cal. Welf. & Inst. Code §14105.455; Ill. Admin. Code tit. 89, §§140.445, 140.447(b); 101 Mass. Code Regs. §331.04; N.M. Admin. Code 8.324.4.16.

**ANSWER:**     Walgreens denies the allegations in Paragraph 115.

116.     Plaintiffs and the Class members could not have discovered the alleged unlawful activities at an earlier date by exercise of reasonable diligence because Walgreens employed deceptive practices and techniques of secrecy to avoid detection of its activities. Walgreens fraudulently concealed its activities by various means and methods, including misrepresentations regarding the real U&C prices of the PSC Generics.

**ANSWER:**     Walgreens denies the allegations in Paragraph 116.

117.     Because Walgreens affirmatively concealed its pricing scheme, Plaintiffs and the Class had no knowledge until recently of the alleged fraudulent activities or information which would have caused a reasonably diligent person to investigate whether Walgreens committed the actionable activities detailed herein.

**ANSWER:**     Walgreens lacks sufficient information as to the actual knowledge of the

Plaintiffs and/or their purported class.  Walgreens denies the remaining allegations in Paragraph

117.

118.     As a result of Walgreens' fraudulent concealment, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the Class members have as a result of the unlawful conduct alleged in this Amended Complaint.

**ANSWER:**     Walgreens denies the allegations in Paragraph 118.

## FIRST CLAIM FOR RELIEF

### Fraud
### Asserted by Plaintiffs on Behalf of the Class

119.     Plaintiffs repeat each and every allegation contained in the Paragraphs above and incorporate such allegations by reference herein.

**ANSWER:**     Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

120.     Plaintiffs allege this claim on behalf of themselves and the Class, or, in the alternative, on behalf of each of the State Classes.

**ANSWER:**     Walgreens admits only that Plaintiffs purport to bring claims on behalf of themselves and a putative class and denies all other allegations in Paragraph 120. For the avoidance of doubt, Walgreens denies that Plaintiffs have a viable claim, are entitled to relief, and that the putative class they seek to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 120.

121.     Walgreens materially misrepresented and concealed the true U&C prices of PSC Generics.

**ANSWER:**     Walgreens denies the allegations in Paragraph 121.

122.     The true U&C price is material to Plaintiffs and the Class because the misrepresentation and concealment of the true U&C price of PSC Generics causes them to be unable to accurately evaluate the cost of the prescriptions being purchased and, in fact, causes them to overpay for those prescriptions. Had they known Walgreens was reporting to and charging them inflated and false amounts, they would not have proceeded with the transactions.

**ANSWER:**     To the extent that the second sentence requires Walgreens to know how the purported class members would have behaved, Walgreens lacks sufficient knowledge to admit or deny these allegations. Walgreens denies the remaining allegations in Paragraph 122.

123.     Walgreens made such misrepresentations and omissions to Plaintiffs and the Class each time Walgreens reported and charged artificially inflated prices for PSC Generics.

**ANSWER:**     Walgreens denies the allegations in Paragraph 123.

124.     Walgreens made these misrepresentations and omissions knowingly, or at least with reckless disregard of their falsity, given that Walgreens knew the prices it reported to third-party payors and charged to consumers were substantially (and unjustifiably) higher than the prices Walgreens charged under its PSC program to cash-paying customers.

**ANSWER:**     Walgreens denies the allegations in Paragraph 124.

125.     Walgreens intended to induce the Plaintiffs and the members of the Class to rely on its misrepresentations and omissions. Walgreens knew that Plaintiffs and the members of the Class would rely on the accuracy of the price Walgreens reported to and charged them, and that, as a result, Plaintiffs and the members of the Class would pay higher than the true U&C prices for PSC Generics.

**ANSWER:**     Walgreens denies the allegations in Paragraph 125.

126.     Plaintiffs and members of the Class justifiably relied on Walgreens' misrepresentations and omissions in that Plaintiffs and the Class would not have purchased or paid for PSC Generics from Walgreens at falsely inflated amounts but for Walgreens' misrepresentations and omissions. Plaintiffs and the Class' reliance on Walgreens' misrepresentations and omissions is, thus, to their detriment.

**ANSWER:**     Walgreens denies the allegations in Paragraph 126.

127.     As a proximate result of Walgreens' conduct, Plaintiffs and the members of the Class have been damaged because they paid for PSC Generics at amounts that were far higher than the prices they would have paid but for Walgreens' misconduct.

**ANSWER:**     Walgreens denies the allegations in Paragraph 127.

128.     Walgreens is therefore liable to Plaintiffs and the Class for the damages they sustained.

**ANSWER:**     Walgreens denies the allegations in Paragraph 128.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment
### Asserted by Plaintiffs on Behalf of the Class

129.     Plaintiffs repeat each and every allegation contained in Paragraphs above and incorporate such allegations by reference herein.

44

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

130. Plaintiffs allege this claim on behalf of themselves and the Class, or, in the alternative, on behalf of each of the State Classes.

**ANSWER:** Walgreens admits only that Plaintiffs purport to bring claims on behalf of themselves and a putative class and denies all other allegations in Paragraph 130. For the avoidance of doubt, Walgreens denies that Plaintiffs have a viable claim, are entitled to relief, and that the putative class they seek to represent is certifiable under governing law. Walgreens denies the remaining allegations in Paragraph 130.

131. By means of Walgreens' wrongful conduct alleged herein, Walgreens knowingly reported to and charged Plaintiffs and the Class inflated prices for PSC Generics in a manner that is unfair and unconscionable and violates the fundamental principles of justice, equity, and good conscience.

**ANSWER:** Walgreens denies the allegations in Paragraph 131.

132. Walgreens knowingly received, appreciated, and retained wrongful benefits and funds from Plaintiffs and the Class. In so doing, Walgreens acted with conscious disregard for the rights of Plaintiffs and the Class.

**ANSWER:** Walgreens denies the allegations in Paragraph 132.

133. As a result of Walgreens' wrongful conduct as alleged herein, Walgreens has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

**ANSWER:** Walgreens denies the allegations in Paragraph 133.

134. Walgreens' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

**ANSWER:** Walgreens denies the allegations in Paragraph 134.

135. Under the common law doctrine of unjust enrichment, it is inequitable for Walgreens to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of artificially inflated prices on Plaintiffs and the Class in an unfair and unconscionable manner. Walgreens' retention of such funds under the circumstances alleged herein violates the fundamental principles of justice, equity, and good conscience and therefore constitutes unjust enrichment.

**ANSWER:** Walgreens denies the allegations in Paragraph 135.

136. Plaintiffs and the Class did not confer these benefits officiously or gratuitously, and it would be inequitable and unjust for Walgreens to retain these wrongfully obtained proceeds.

**ANSWER:** Walgreens denies the allegations in Paragraph 136.

137. Walgreens is therefore liable to Plaintiffs and the Class for restitution in the amount of Walgreens' wrongfully obtained profits.

**ANSWER:** Walgreens denies the allegations in Paragraph 137.

## THIRD CLAIM FOR RELIEF

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")
### Asserted by Plaintiffs on Behalf of the Class

138. Plaintiffs repeat each and every allegation contained in Paragraphs above and incorporate such allegations by reference herein.

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

139. Plaintiffs bring this claim on behalf of themselves and all members of the Class, or, in the alternative, on behalf of Illinois-only members of the Class, against Walgreens.

**ANSWER:** Walgreens admits only that Plaintiffs purport to bring claims on behalf of themselves and a putative class and denies all other allegations in Paragraph 139. For the avoidance of doubt, Walgreens denies that Plaintiffs have a viable claim, are entitled to relief, and that the putative class they seek to represent is certifiable under governing law. Walgreens denies the remaining allegations in Paragraph 139.

140. At all relevant times, each Plaintiff and member of the Class is a "person" as defined in ICFA (815 Ill. Comp. Stat. Ann. 505/1(c)) and satisfies the consumer nexus test in that Walgreens' unfair and deceptive acts and practices regarding the true U&C price of PSC Generics were directed at and impacted the market generally and/or otherwise implicate consumer protection concerns where Walgreens' unfair and deceptive acts and practices have impacted at least thousands of consumers in Illinois and nationwide and remedying Walgreens' wrongdoing through the relief requested herein would serve the interests of consumers.

**ANSWER:** Walgreens admits that each individually-named Plaintiff is a "person" as defined in the ICFA. Walgreens denies the remaining allegations in Paragraph 140.

141. At all relevant and material times as described herein, Walgreens' wrongdoing alleged herein occurred in the conduct of "trade" and "commerce" as defined in ICFA where Walgreens' unfair and deceptive acts and practices regarding the true U&C price occurred during and related directly to the routine purchase and sale of PSC Generics at Walgreens pharmacies. 815 Ill. Comp. Stat. Ann. 505/1(f).

**ANSWER:** Walgreens admits that Walgreens business occurred in the conduct of "trade" and "commerce" as defined in the ICFA. Walgreens denies the remaining allegations in Paragraph 141.

142. Under ICFA the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UTPA"), 815 Ill. Comp. Stat. Ann. 510/2, in the conduct of any trade or commerce is unlawful whether any person has, in fact, been misled, deceived, or damaged thereby.

**ANSWER:** Walgreens admits that Plaintiffs have accurately summarized the ICFA.

143. Under Section 2 of the UTPA, 815 Ill. Comp. Stat. Ann. 510/2, a "person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person … (11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

**ANSWER:** Walgreens admits that Plaintiffs have accurately quoted portions of the UTPA.

144. Plaintiffs and the members of the Class have suffered losses because of Walgreens' employment of unfair or deceptive acts and practices, including (i) through deception, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of material fact; and/or (ii) in making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions, or engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding, in the conduct of trade or commerce by, among other things:

  (a) reporting to and charging Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Steamfitters Local 439, and the Class fraudulently inflated U&C prices for the PSC Generics;

  (b) communicating to and charging the beneficiaries of Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Steamfitters Local 439, Consumer Plaintiffs, and

the Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from Plaintiffs and the Class the true U&C prices of the PSC Generics, and the proper amounts Walgreens should have reported to and charged Plaintiffs and the Class; and

(d)    wrongfully obtaining monies from Plaintiffs and the Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 144.

145.    Walgreens willfully engaged in the unfair and deceptive acts and practices described above and knew or should have known that those acts and practices were unfair and deceptive and in violation of ICFA. 815 Ill. Comp. Stat. Ann. 505, *et seq*.

**ANSWER:**    Walgreens denies the allegations in Paragraph 145.

146.    The facts that Walgreens misrepresented and concealed were material to the decisions of the Plaintiffs and the members of the Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' unfair and deceptive acts and practices.

**ANSWER:**    To the extent Paragraph 146 relates to how members of the putative Illinois class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 146.

147.    This deception alleged herein occurred in connection with Walgreens' conduct of trade and commerce in Illinois.

**ANSWER:**    Walgreens denies the allegations in Paragraph 147.

148.    Walgreens intended for Plaintiffs and the members of the Class to purchase PSC Generics from Walgreens in reliance upon Walgreens' unfair and deceptive acts and practices.

**ANSWER:**    Walgreens denies the allegations in Paragraph 148.

149.    Walgreens' conduct offends public policy as set forth in 225 Ill. Comp. Stat. Ann. 85/1 & 41 and Ill. Admin. Code tit. 89, §§140.445, 140.447(b), and is immoral, unethical, oppressive, or unscrupulous as described herein and caused substantial injury to consumers, competitors, or other business. Walgreens' unjustified, inflated pricing of PSC Generics is oppressive because it overcharges consumers and third-party payors. The pricing of PSC Generics is unethical and unscrupulous because it is the result of Walgreens' desire to achieve

maximum financial gain for medically necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase PSC Generics.

**ANSWER:**    Walgreens denies the allegations in Paragraph 149.

150.    As a direct and proximate result of Walgreens' unfair and deceptive acts and practices, Plaintiffs and the members of the Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**    Walgreens denies the allegations in Paragraph 150.

151.    Walgreens is therefore liable to Plaintiffs and the members of the Class for the damages they sustained, plus statutory damages, penalties, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 151.

## FOURTH CLAIM FOR RELIEF

### Violation of the Arizona Consumer Fraud Act
**Asserted by Plaintiff IBEW Local 38 on Behalf of the Arizona Members of the Class ("Arizona Class")**

152.    Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

153.    Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Arizona Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff IBEW Local purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 153. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 153.

154.    At all relevant times, Plaintiff IBEW Local 38, the Arizona Class, and Walgreens were "persons" within the meaning of Ariz. Rev. Stat. §44-1521(6).

**ANSWER:**    Walgreens admits the allegations in Paragraph 154.

155. At all relevant and material times as described herein, Walgreens engaged in the sale of "merchandise" within the meaning of Ariz. Rev. Stat. §44-1521(5) when it sold PSC Generics to beneficiaries of Plaintiff IBEW Local 38 and the Arizona Class.

**ANSWER:** Walgreens admits that Walgreens engaged in the sale of "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5) by selling generic prescription drugs. Walgreens lacks sufficient information to admit or deny whether it sold generic prescription drugs to any individual member of the purported Class.

156. Plaintiff IBEW Local 38 and the Arizona Class have suffered losses because of Walgreens' employment of deception, deceptive, or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of material fact with intent that others rely on such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise by, among other things:

(a) reporting to and charging Plaintiff IBEW Local 38 and the Arizona Class fraudulently inflated U&C prices for the PSC Generics;

(b) communicating to and charging beneficiaries of Plaintiff IBEW Local 38 and the Arizona Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c) concealing from Plaintiff IBEW Local 38 and the Arizona Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Arizona Class should have paid; and

(d) wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Arizona Class as a result of its deception.

**ANSWER:** Walgreens denies the allegations in Paragraph 156.

157. Walgreens willfully and knowingly engaged in the deceptive, fraudulent, false, and unfair acts and practices described above and knew or should have known that those acts and practices were unconscionable, fraudulent, false and unfair, and thus in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. §§44-1521, *et seq*.

**ANSWER:** Walgreens denies the allegations in Paragraph 157.

158. The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Arizona Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** To the extent Paragraph 158 relates to how members of the putative Arizona class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations. Walgreens denies the remaining allegations in Paragraph 158.

159. Walgreens intended for Plaintiff IBEW Local 38 and the members of the Arizona Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** Walgreens denies the allegations in Paragraph 159.

160. As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Arizona Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:** Walgreens denies the allegations in Paragraph 160.

161. Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the Arizona Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:** Walgreens denies the allegations in Paragraph 161.

### FIFTH CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law
### (Based on Fraudulent Acts and Practices)
### Asserted by Plaintiff IBEW Local 38 on Behalf of the California Members of the Class
### ("California Class")

162. Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

163. Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the California Class against Walgreens.

**ANSWER:** Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in

Paragraph 163. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law.  Walgreens denies any remaining allegations in Paragraph 163.

164.    At all relevant times, Walgreens, Plaintiff IBEW Local 38, and the California Class were "persons" within the meaning of Cal. Bus. Prof. Code §17204.

**ANSWER:**    Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 164.

165.    Under Business and Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

**ANSWER:**    Walgreens denies the allegations in Paragraph 165.

166.    Plaintiff IBEW Local 38 and the California Class have suffered losses because of Walgreens' employment of fraudulent business acts or practices in connection with the sale of PSC Generics to Plaintiff IBEW Local 38 and the California Class, by, among other things:

(a)    reporting to and charging Plaintiff IBEW Local 38 and the California Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging the beneficiaries of Plaintiff IBEW Local 38 and the California Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from Plaintiff IBEW Local 38 and the California Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the California Class should have paid; and

(d)    wrongfully obtaining monies from Plaintiff IBEW Local 38 and the California Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 166.

167.    Walgreens willfully and knowingly engaged in the deceptive and unfair acts and practices described above and knew or should have known that those acts and practices were fraudulent and thus in violation of California's Unfair Competition Law, Cal. Bus. Prof. Code §17200, *et seq*.

**ANSWER:**    Walgreens denies the allegations in Paragraph 167.

168.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the California Class about whether to

pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**    To the extent Paragraph 168 relates to how members of the putative California class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.    Walgreens denies any remaining allegations in Paragraph 168.

169.    Walgreens intended for Plaintiff IBEW Local 38 and the members of the California Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**    Walgreens denies the allegations in Paragraph 169.

170.    As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the California Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**    Walgreens denies the allegations in Paragraph 170.

171.    Walgreens is therefore liable to Plaintiff IBEW Local 38 and the California Class for restitution, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 171.

### SIXTH CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law
### (Based on Unfair Acts and Practices)
### Asserted by Plaintiff IBEW Local 38 on Behalf of the California Class

172.    Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

173.    Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the California Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff IBEW Local purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph

173. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 173.

174. At all relevant times, Walgreens, Plaintiff IBEW Local 38, and the California Class were "persons" within the meaning of Cal. Bus. Prof. Code §17204.

**ANSWER:** Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 174.

175. Under Business and Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice. Walgreens' unjustified, inflated pricing of PSC Generics is oppressive because it overcharges consumers and third-party payors. The pricing of PSC Generics is unethical and unscrupulous because it is the result of Walgreens' desire to achieve maximum financial gain for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase PSC Generics.

**ANSWER:** Walgreens denies the allegations in Paragraph 175.

176. Plaintiff IBEW Local 38 and the California Class have suffered losses because of Walgreens' employment of unfair business acts or practices in connection with the sale of PSC Generics to Plaintiff IBEW Local 38 and the California Class, by, among other things:

     (a)    reporting to and charging Plaintiff IBEW Local 38 and the California Class fraudulently inflated U&C prices for the PSC Generics;

     (b)    communicating to and charging beneficiaries of Plaintiff IBEW Local 38 and the California Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

     (c)    concealing from Plaintiff IBEW Local 38 and the California Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the California Class should have paid; and

     (d)    wrongfully obtaining monies from Plaintiff IBEW Local 38 and the California Class as a result of its deception.

**ANSWER:** Walgreens denies the allegations in Paragraph 176.

177. Walgreens has engaged, and continues to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§1572, 1573, 1709, 1710, 1711 against committing fraud and deceit; (2) California Civil Code §1770 against committing acts

and practices intended to deceive consumers regarding the representation of goods in certain particulars; (3) the FTCA, 15 U.S.C. §45(a)(1), against unfair or deceptive practices; (4) Cal. Penal Code §550 against making false, misleading, or fraudulent claims related to health or other insurance benefits; (5) 42 C.F.R. §447.512(b), requiring pharmacies to not seek reimbursement from Medicare Part D that exceeds the providers' "usual and customary charges to the general public"; (6) Federal False Claims Act, 31 U.S.C. §§3729, *et seq.* and California False Claims Act, Cal. Gov't Code §§12650, *et seq.*, against submitting false or fraudulent claims for payment to governmental entities; and (7) Cal. Welf. & Inst. Code §14105.455, requiring pharmacy providers to submit their usual and customary charge when billing the Medi-Cal program for prescribed drugs. Walgreens gains an unfair advantage over their competitors, whose practices relating to other similar products must comply with these laws.

      **ANSWER:**    Walgreens denies the allegations in Paragraph 177.

     178.    Walgreens' conduct, including misrepresenting the U&C price of PSC Generics, is substantially injurious to consumers. Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices. Consumers have thus overpaid for PSC Generics. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Walgreens' conduct. Since consumers reasonably rely on Walgreens' representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

      **ANSWER:**    Walgreens denies the allegations in Paragraph 178.

     179.    Walgreens willfully and knowingly engaged in the deceptive and unfair acts and practices described above and knew or should have known that those acts and practices were unlawful and thus in violation of California's Unfair Competition Law, Cal. Bus. Prof. Code §17200, *et seq.*

      **ANSWER:**    Walgreens denies the allegations in Paragraph 179.

     180.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the California Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

      **ANSWER:**    To the extent Paragraph 180 relates to how members of the putative

California class would have behaved, Walgreens cannot know this and therefore it lacks

sufficient knowledge to admit or deny those allegations. Walgreens denies any remaining allegations in Paragraph 180.

181.    Walgreens intended for Plaintiff IBEW Local 38 and the members of the California Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**    Walgreens denies the allegations in Paragraph 181.

182.    As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the California Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**    Walgreens denies the allegations in Paragraph 182.

183.    Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the California Class for restitution, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 183.

### SEVENTH CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law
### (Based on Unlawful Acts and Practices)
### Asserted by Plaintiff IBEW Local 38 on Behalf of the California Class

184.    Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

185.    Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the California Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 185. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is

entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 185.

186. At all relevant times, Walgreens, Plaintiff IBEW Local 38, and the California Class were "persons" within the meaning of Cal. Bus. Prof. Code §17204.

**ANSWER:** Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 186.

187. The violation of any law constitutes an unlawful business practice under Business and Professions Code §17200.

**ANSWER:** Walgreens denies the allegations in Paragraph 187.

188. Walgreens violated §17200's prohibition against engaging in unlawful acts and practices by, inter alia, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200, *et seq.*, the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §45(a)(1), Cal. Penal Code §550, 42 C.F.R. §447.512(b)(2), Cal. Welf. & Inst. Code §14105.455, and by violating the common law. By violating these laws, Walgreens has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

**ANSWER:** Walgreens denies the allegations in Paragraph 188.

189. Walgreens willfully and knowingly engaged in the unlawful acts and practices alleged herein above and knew or should have known that those acts and practices were unlawful and thus in violation of California's Unfair Competition Law, Cal. Bus. Prof. Code §17200, *et seq.*

**ANSWER:** Walgreens denies the allegations in Paragraph 189.

190. The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the California Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transactions but for Walgreens' unlawful, deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** To the extent Paragraph 190 relates to how members of the putative California class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations. Walgreens denies any remaining allegations in Paragraph 190.

191.    Walgreens intended for Plaintiff IBEW Local 38 and the members of the California Class to pay for PSC Generics in reliance upon Walgreens' unlawful, deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**    Walgreens denies the allegations in Paragraph 191.

192.    As a direct and proximate result of Walgreens' unlawful, deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the California Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**    Walgreens denies the allegations in Paragraph 192.

193.    Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the California Class for restitution, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 193.

## EIGHTH CLAIM FOR RELIEF

### Violation of the Colorado Consumer Protection Act
**Asserted by Plaintiff IBEW Local 38 on Behalf of the Colorado Members of the Class ("Colorado Class")**

194.    Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

195.    Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Colorado Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 195. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law.  Walgreens denies any remaining allegations in Paragraph 195.

196.    At all relevant times, Walgreens, Plaintiff IBEW Local 38, and the Colorado Class were "persons" within the meaning of Colo. Rev. Stat. §§6-1-102(6).

**ANSWER:**     Walgreens admits the allegations in Paragraph 196.

197.     At all relevant and material times as described herein, Walgreens was engaged "in the course of [its] business" within the meaning of Colo. Rev. Stat. §6-1-105 when it sold PSC Generics to beneficiaries of Plaintiff IBEW Local 38 and the Colorado Class.

**ANSWER:**     Walgreens denies the allegations in Paragraph 197.

198.     Plaintiff IBEW Local 38 and the Colorado Class have suffered losses because of Walgreens' knowing and intentional use and employment of deceptive or unfair acts or practices in the course of its business, as defined in Colo. Rev. Stat. §6-1-105(l) in "[m]ak[ing] false or misleading statements of fact concerning the price of goods [or] services," and in Colo. Rev. Stat. §6-1-105(u) in "[f]ail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction," in connection with the sale of PSC Generics to Plaintiff IBEW Local 38 and the Colorado Class:

(a)     reporting to and charging Plaintiff IBEW Local 38 and the Class fraudulently inflated U&C prices for the PSC Generics;

(b)     communicating to and charging beneficiaries of Plaintiff IBEW Local 38 and the Colorado Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)     concealing from Plaintiff IBEW Local 38 and the Colorado Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Colorado Class should have paid; and

(d)     wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Colorado Class as a result of its deception.

**ANSWER:**     Walgreens denies the allegations in Paragraph 198.

199.     Walgreens willfully and knowingly engaged in the deceptive and unfair acts and practices described above and knew or should have known that those acts and practices were unfair and deceptive and thus in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§6-1-101, *et seq.*

**ANSWER:**     Walgreens denies the allegations in Paragraph 199.

200.     The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Colorado Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     To the extent Paragraph 200 relates to how members of the putative

Colorado class would have behaved, Walgreens cannot know this and therefore it lacks sufficient

knowledge to admit or deny those allegations. Walgreens denies any remaining allegations in

Paragraph 200.

201. Walgreens intended for Plaintiff IBEW Local 38 and the members of the Colorado Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** Walgreens denies the allegations in Paragraph 201.

202. Walgreens' unfair and deceptive trade practices significantly impact the public as actual or potential consumers of Walgreens' goods and services in that the actions and transactions alleged herein substantially affected the people of Colorado, with thousands of TPPs and consumers in Colorado paying substantially higher prices for PSC Generics at Colorado Walgreens pharmacies.

**ANSWER:** Walgreens denies the allegations in Paragraph 202.

203. As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Colorado Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:** Walgreens denies the allegations in Paragraph 203.

204. Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the Colorado Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:** Walgreens denies the allegations in Paragraph 204.

## NINTH CLAIM FOR RELIEF

### Violation of the Connecticut Unfair Trade Practices Act
**Asserted by Plaintiff IUOE Local 295 on Behalf of the Connecticut Members of the Class ("Connecticut Class")**

205. Plaintiff IUOE Local 295 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the

preceding Paragraphs as if fully set forth herein.

206. Plaintiff IUOE Local 295 brings this claim on behalf of itself and the members of the Connecticut Class against Walgreens.

**ANSWER:** Walgreens admits only that Plaintiff IUOE Local 295 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 206. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 206.

207. Walgreens, Plaintiff IUOE Local 295, and the Connecticut Class were "persons" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

**ANSWER:** Walgreens admits the allegations in Paragraph 207.

208. Walgreens' transactions with Plaintiff IUOE Local 295 and the Connecticut Class were "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

**ANSWER:** Walgreens admits that Walgreens' business of dispensing prescription drugs constitute "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4). Walgreens lacks sufficient information to admit or deny whether it engaged in transactions with any individual member of the purported Class.

209. Plaintiff IUOE Local 295 and the Connecticut Class have been damaged by Walgreens' unfair and/or deceptive practices in the conduct of trade or commerce, in violation of Conn. Gen. Stat. Ann. §42-110a, *et. seq.* in connection with the sale of PSC Generics to Plaintiff IUOE Local 295 and the Connecticut Class. These unfair and/or deceptive practices, included, among other things:

(a) reporting to and charging Plaintiff IUOE Local 295 and the Connecticut Class fraudulently inflated U&C prices for the PSC Generics;

(b) communicating to and charging the beneficiaries of Plaintiff IUOE Local 295 and the Connecticut Class (or its beneficiaries) fraudulently inflated copayments, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c) concealing from Plaintiff IUOE Local 295 and the Connecticut Class the true U&C prices of PSC Generics, and the proper reimbursement amount Plaintiff IUOE Local 295 and the Connecticut Class should have paid; and

(d) wrongfully obtaining monies from Plaintiff IUOE Local 295 and the Connecticut Class as a result of Walgreens' deception.

**ANSWER:** Walgreens denies the allegations in Paragraph 209.

210.    Walgreens willfully engaged in the unfair and/or deceptive practices described above and knew or should have known that those practices were unfair and/or deceptive.

**ANSWER:**    Walgreens denies the allegations in Paragraph 210.

211.    The facts which Walgreens misrepresented and/or concealed, as alleged in the preceding Paragraphs, were material to Plaintiff IUOE Local 295 and the Connecticut Class' decisions about whether to purchase or pay for Walgreens' PSC Generics, in that Plaintiff IUOE Local 295 and the Connecticut Class would not have purchased or paid for PSC Generics from Walgreens for more than the PSC Prices but for Walgreens' unfair and/or deceptive acts and/or practices.

**ANSWER:**    To the extent Paragraph 211 relates to how members of the putative Connecticut class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 211.

212.    As a direct and proximate result of Walgreens' unfair and deceptive acts and/or practices, Plaintiff IUOE Local 295 and the Connecticut Class were deceived into paying falsely inflated prices for PSC Generics and have been damaged thereby. Plaintiff IUOE Local 295 and the other members of the Connecticut Class therefore seek injunctive relief pursuant to Conn. Gen. Stat. Ann. §42-110g(d), to enjoin Walgreens' ongoing wrongful acts described herein.

**ANSWER:**    Walgreens denies the allegations in Paragraph 212.

213.    Walgreens is therefore liable to Plaintiff IUOE Local 295 and the Connecticut Class for the damages they sustained, plus statutory damages, penalties, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 213.

**TENTH CLAIM FOR RELIEF**

**Violation of the Delaware Consumer Fraud Act**
**Asserted by Plaintiff IUOE Local 295 on Behalf of the Delaware Members of the Class**
**("Delaware Class")**

214.    Plaintiff IUOE Local 295 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

215.    Plaintiff IUOE Local 295 brings this claim on behalf of itself and the members of the Delaware Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff IUOE Local 295 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 215. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law.  Walgreens denies any remaining allegations in Paragraph 215.

216.    Walgreens, Plaintiff IUOE Local 295, and other members of the Delaware Class are "persons" within the meaning of 6 Del. C. §2511(7).

**ANSWER:**    Walgreens admits the allegations in Paragraph 216.

217.    The PSC Generics that Plaintiff IUOE Local 295 and the Delaware Class purchased are "merchandise" within the meaning 6 Del. C. §2511(6).

**ANSWER:**    Walgreens admits that generic prescription drugs are "merchandise" within the meaning of 6 Del. C. § 2511(6).  Walgreens lacks sufficient information to admit or deny whether any individual member of the purported Class purchased generic prescription drugs from Walgreens.

218.    Walgreens' transactions with Plaintiff IUOE Local 295 and the Delaware Class were "sales" within the meaning of 6 Del. C. §2511(8).

**ANSWER:**    Walgreens admits that generic prescription drugs are "sales" within the meaning of 6 Del. C. § 2511(8).  Walgreens lacks sufficient information to admit or deny whether any individual member of the purported Class purchased generic prescription drugs from Walgreens.

219.    Plaintiff IUOE Local 295 and the Delaware Class have been damaged by Walgreens' act, use, and/or employment of deception, fraud, false pretense, false promise, misrepresentation, and/or the concealment, suppression, or omission of material facts, in violation of 6 Del. C. §2511, *et seq.*, in connection with the sale of PSC Generics to Plaintiff IUOE Local 295 and the Delaware Class, including, among other things:

(a)     reporting to and charging Plaintiff IUOE Local 295 and the Delaware Class fraudulently inflated U&C prices for PSC Generics;

(b)     communicating to and charging the beneficiaries of Plaintiff IUOE Local 295 and the Delaware Class (or its beneficiaries) fraudulently inflated copayments, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)     concealing from Plaintiff IUOE Local 295 and the Delaware Class the true U&C prices of PSC Generics, and the proper reimbursement amount Plaintiff IUOE Local 295 and the Delaware Class should have paid; and

(d)     wrongfully obtaining monies from Plaintiff IUOE Local 295 and the Delaware Class as a result of Walgreens' deception.

**ANSWER:**     Walgreens denies the allegations in Paragraph 219.

220.     Walgreens made these misrepresentations and omissions knowingly, given that Walgreens knew the prices it reported to third-party payors and charged to plan participants were substantially (and unjustifiably) higher than the prices Walgreens charged under its PSC program to the cash-paying public.

**ANSWER:**     Walgreens denies the allegations in Paragraph 220.

221.     The facts which Walgreens misrepresented and/or concealed, as alleged in the preceding Paragraphs, were material to Plaintiff IUOE Local 295 and the Delaware Class' decisions about whether to purchase or pay for PSC Generics, in that Plaintiff IUOE Local 295 and the Delaware Class would not have purchased or paid for PSC Generics from Walgreens for more than the PSC Prices but for Walgreens' improper practices.

**ANSWER:**     To the extent Paragraph 221 relates to how members of the putative Delaware class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 221.

222.     Further, Walgreens intended to induce Plaintiff IUOE Local 295 and the Delaware Class to rely on its misconduct. Walgreens knew that Plaintiff IUOE Local 295 and the Delaware Class would rely on the accuracy of the prices Walgreens reported to and charged them, and that, as a result, Plaintiff IUOE Local 295 and the Delaware Class would pay higher than the true U&C prices for its PSC Generics. Plaintiff IUOE Local 295 and the Delaware Class did in fact justifiably rely on Walgreens' misconduct in that Plaintiff and the Delaware Class would not have purchased or paid for PSC Generics from Walgreens at falsely inflated amounts but for Walgreens' misconduct. Thus, Plaintiff and the Delaware Class' reliance on Walgreens' misconduct was to their detriment. Therefore, Walgreens engaged in unlawful practices within the meaning of 6 Del. C. §2513(a).

**ANSWER:**     Walgreens denies the allegations in Paragraph 222.

223.     As a proximate result of Walgreens' conduct, Plaintiff IUOE Local 295 and the Delaware Class have been damaged because they paid for PSC Generics at amounts that were far higher than the prices they would have paid but for Walgreens' misconduct.

**ANSWER:**     Walgreens denies the allegations in Paragraph 223.

224.     Walgreens is therefore liable to Plaintiff IUOE Local 295 and the Delaware Class for the damages they sustained, plus statutory damages, penalties, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**     Walgreens denies the allegations in Paragraph 224.

<strong><u>ELEVENTH CLAIM FOR RELIEF</u></strong>

<strong><u>Violation of the Florida Deceptive and Unfair Trade Practices Act</u></strong><br><strong>Asserted by Plaintiff Russo, Plaintiff IUOE Local 295, and Plaintiff IBEW Local 38</strong><br><strong>on Behalf of Florida Members of the Class ("Florida Class")</strong>

225.     Plaintiff Russo, Plaintiff IUOE Local 295, and Plaintiff IBEW Local 38 repeat each and every allegation contained in Paragraphs above and incorporate such allegations by reference herein.

**ANSWER:**     Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

226.     Plaintiff Russo, Plaintiff IUOE Local 295, and Plaintiff IBEW Local 38 bring this claim individually and on behalf of the Florida Class members against Walgreens.

**ANSWER:**     Walgreens admits only that Plaintiffs Russo,  IUOE Local 295, and IBEW Local 38 purport to bring claims on behalf of themselves and a putative class and denies any and all remaining allegations in Paragraph 226. For the avoidance of doubt, Walgreens denies that Plaintiffs have a viable claim, are entitled to relief, and that the putative class they seek to represent is certifiable under governing law.  Walgreens denies any remaining allegations in Paragraph 226.

227.     Plaintiff Russo, Plaintiff IUOE Local 295, Plaintiff IBEW Local 38, and the Florida Class are "consumers" within the meaning of Fla. Stat. §501.203(7).

**ANSWER:**     Walgreens admits the allegations in Paragraph 227.

228.    Walgreens' transactions with Plaintiff Russo, Plaintiff IUOE Local 295, Plaintiff IBEW Local 38, and the Florida Class as described herein occurred "in the conduct of any trade or commerce" within the meaning of Fla. Stat. §§501.202 and 501.203(8).

**ANSWER:**    Walgreens admits that Walgreens was engaged "in the conduct of any trade or commerce" within the meaning of Fla. Stat. § 501.203(8).  Walgreens lacks sufficient information to admit or deny whether any individual member of the purported Class purchased generic prescription drugs from Walgreens.  Walgreens denies the remaining allegations in Paragraph 228.

229.    Plaintiff Russo, Plaintiff IUOE Local 295, Plaintiff IBEW Local 38, and the Florida Class suffered damages as a consequence of Walgreens' knowing and intentional use and employment of unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce in connection with the sale of PSC Generics to Plaintiff Russo, Plaintiff IUOE Local 295, Plaintiff IBEW Local 38, and the Florida Class, including, among other things:

(a)    reporting to and charging Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Russo, and the Florida Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging beneficiaries of Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Russo, and the Florida Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Russo, and the Florida Class the true U&C prices of the PSC Generics, and the proper copayment, coinsurance, or deductible amount Walgreens should have reported to and charged Plaintiffs and the Florida Class; and

(d)    wrongfully obtaining monies from Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Russo, and the Florida Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 229.

230.    Walgreens willfully engaged in the unfair and/or deceptive acts and/or practices described above and knew or should have known that those acts and/or practices were unconscionable, unfair and/or deceptive and in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*.

**ANSWER:**    Walgreens denies the allegations in Paragraph 230.

231.     As a direct and proximate result of Walgreens' unfair and deceptive acts and practices, Plaintiff Russo, Plaintiff IUOE Local 295, Plaintiff IBEW Local 38, and the Florida Class members have paid falsely inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 231.

232.     Walgreens therefore is liable to Plaintiff Russo, Plaintiff IUOE Local 295, Plaintiff IBEW Local 38, and the Florida Class for the damages they sustained, plus statutory damages (including treble damages), penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**     Walgreens denies the allegations in Paragraph 232.

### TWELFTH CLAIM FOR RELIEF

### Violation of the Georgia Uniform Deceptive Trade Practices Act
**Asserted by Plaintiff IBEW Local 38 on Behalf of Georgia Members of the Class ("Georgia Class")**

233.     Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**     Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

234.     Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Georgia Class against Walgreens.

**ANSWER:**     Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 234. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law.  Walgreens denies any remaining allegations in Paragraph 234.

235.     At all relevant times, Plaintiff IBEW Local 38 and the Georgia Class are "persons" within the meaning of Ga. Code Ann. §10-1-371(5).

**ANSWER:**     Walgreens admits the allegations in Paragraph 235.

236.    Walgreens' transactions with Plaintiff IBEW Local 38 and the Georgia Class as described herein occurred in the course of Walgreens' "business" within the meaning of Ga. Code Ann. §10-1-370, *et seq.*

**ANSWER:**    Walgreens denies the allegations in Paragraph 236.

237.    The Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §10-1-372, prohibits "deceptive trade practices," which include "(11) Mak[ing] false or misleading statements concerning the reasons for, existence of, or amounts of price reductions; or (12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

**ANSWER:**    Walgreens admits that Plaintiffs have accurately quoted portions of the

Georgia Uniform Deceptive Trade Practices Act.

238.    Plaintiff IBEW Local 38 and the Georgia Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices in the course of its business in omitting the existence of a price reduction in the sale of PSC Generics, by, among other things:

(a)    reporting to and charging Plaintiff IBEW Local 38 and the Georgia Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging beneficiaries of Plaintiff IBEW Local 38 and the Georgia Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from Plaintiff IBEW Local 38 and the Georgia Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Georgia Class should have paid; and

(d)    wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Georgia Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 238.

239.    Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of the Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §10-1-370, *et seq*.

**ANSWER:**    Walgreens denies the allegations in Paragraph 239.

240.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Georgia Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** To the extent Paragraph 240 relates to how members of the putative Georgia class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations. Walgreens denies the remaining allegations in Paragraph 240.

241. Walgreens intended for Plaintiff IBEW Local 38 and the members of the Georgia Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** Walgreens denies the allegations in Paragraph 241.

242. As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Georgia Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:** Walgreens denies the allegations in Paragraph 242.

243. Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the Georgia Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:** Walgreens denies the allegations in Paragraph 243.

### THIRTEENTH CLAIM FOR RELIEF

### Violation of the Georgia Fair Business Practices Act
### Asserted by Plaintiff IBEW Local 38 on Behalf of the Georgia Class

244. Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

245. Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Georgia Class against Walgreens.

**ANSWER:** Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 245. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is

entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 245.

246. At all relevant times, Plaintiff IBEW Local 38 and the Georgia Class are "persons" within the meaning of Ga. Code Ann. §10-1-392(24).

**ANSWER:** Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 246.

247. At all relevant and material times as described herein, Walgreens was engaged "in the conduct of consumer transactions and consumer acts or practices in trade or commerce" within the meaning of Ga. Code Ann. §10-1-393(a) with respect to the acts alleged herein.

**ANSWER:** Walgreens denies the allegations in Paragraph 247.

248. The Georgia Fair Business Practices Act declares "[u]fair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. §10-1-393(a), including but not limited to "(11) Making false or misleading statements concerning the reasons for, existence of, or amounts of price reductions[.]"

**ANSWER:** Walgreens admits that Plaintiffs have accurately quoted portions of the Georgia Fair Business Practices Act.

249. Plaintiff IBEW Local 38 and the Georgia Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices in the course of its business in omitting the existence of a price reduction in the sale of PSC Generics, by, among other things:

(a) reporting to and charging Plaintiff IBEW Local 38 and the Georgia Class fraudulently inflated U&C prices for the PSC Generics;

(b) communicating to and charging beneficiaries of Plaintiff IBEW Local 38 and the Georgia Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c) concealing from Plaintiff IBEW Local 38 and the Georgia Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Georgia Class members should have paid; and

(d) wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Georgia Class as a result of its deception.

**ANSWER:** Walgreens denies the allegations in Paragraph 249.

250.    Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of the Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390, *et seq.*

**ANSWER:**    Walgreens denies the allegations in Paragraph 250.

251.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Georgia Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transactions but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**    To the extent Paragraph 251 relates to how members of the putative Georgia class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 251.

252.    Walgreens intended for Plaintiff IBEW Local 38 and the members of the Georgia Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**    Walgreens denies the allegations in Paragraph 252.

253.    As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Georgia Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**    Walgreens denies the allegations in Paragraph 253.

254.    Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the Georgia Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 254.

## FOURTEENTH CLAIM FOR RELIEF

### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
**Asserted by Plaintiff Termine and Plaintiff IBEW Local 38 on Behalf of
Louisiana Members of the Class ("Louisiana Class")**

255.    Plaintiff Termine and Plaintiff IBEW Local 38 repeat each and every allegation contained in Paragraphs above and incorporate such allegations by reference herein.

71

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

256. Plaintiff Termine and Plaintiff IBEW Local 38 bring this claim individually and on behalf of the Louisiana Class members against Walgreens.

**ANSWER:** Walgreens admits only that Plaintiffs Termine and IBEW Local 38 purport to bring claims on behalf of themselves and a putative class and denies any and all remaining allegations in Paragraph 256. For the avoidance of doubt, Walgreens denies that Plaintiffs have a viable claim, are entitled to relief, and that the putative class they seek to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 256.

257. Plaintiff Termine, Plaintiff IBEW Local 38, and the Louisiana Class are "consumers" within the meaning of La. Rev. Stat. §51:1402(1).

**ANSWER:** Walgreens admits the allegations in Paragraph 257.

258. Walgreens' transactions with Plaintiff Termine, Plaintiff IBEW Local 38, and the Louisiana Class as described were done "in the conduct of any trade or commerce" within the meaning of La. Rev. Stat. §51:1405.

**ANSWER:** Walgreens denies the allegations in Paragraph 258.

259. Plaintiff Termine, Plaintiff IBEW Local 38, and the Louisiana Class suffered injury and ascertainable losses of money and property as a consequence of Walgreens' knowing and intentional use and employment of false, misleading, and deceptive acts or practices in connection with the sale of PSC Generics to Plaintiff Termine, Plaintiff IBEW Local 38, and the Louisiana Class, including, among other things:

      (a) reporting to and charging Plaintiff Termine, Plaintiff IBEW Local 38 and the Louisiana Class fraudulently inflated U&C prices for the PSC Generics;

      (b) communicating to and charging the beneficiaries of Plaintiff IBEW Local 38, Plaintiff Termine, and the members of the Louisiana Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

      (c) concealing from Plaintiff IBEW Local 38, Plaintiff Termine, and the Louisiana Class the true U&C prices of the PSC Generics, and the proper amounts

Walgreens should have reported to and charged Plaintiff IBEW Local 38, Plaintiff Termine, and the Louisiana Class; and

(d)     wrongfully obtaining monies from Plaintiff IBEW Local 38, Plaintiff Termine, and the Louisiana Class as a result of its deception.

**ANSWER:**     Walgreens denies the allegations in Paragraph 259.

260.     Walgreens willfully engaged in the unfair and/or deceptive acts and/or practices described above and knew or should have known that those acts and/or practices were unfair and/or deceptive and in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. §51:1401, *et seq*. Such conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. Walgreens' unjustified, inflated pricing of PSC Generics is oppressive because it overcharges consumers and third-party payors. The pricing of PSC Generics is unethical and unscrupulous because it is the result of Walgreens' desire to achieve maximum financial gain for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase PSC Generics.

**ANSWER:**     Walgreens denies the allegations in Paragraph 260.

261.     As a direct and proximate result of Walgreens' unfair and deceptive acts and practices, Plaintiff Termine, Plaintiff IBEW Local 38, and the Louisiana Class have paid falsely inflated prices for PSC Generics and have suffered injury and ascertainable losses of money and property thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 261.

262.     Walgreens therefore is liable to Plaintiff Termine, Plaintiff IBEW Local 38, and the Louisiana Class for the damages they sustained, plus statutory damages (including treble damages), penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**     Walgreens denies the allegations in Paragraph 262.

## FIFTEENTH CLAIM FOR RELIEF

### Violation of the Massachusetts Consumer Protection Law
### Asserted by Plaintiff Bullard on Behalf of Massachusetts Members
### of the Class ("Massachusetts Class")

263.     Plaintiff Bullard repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**     Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

73

264.    Plaintiff Bullard brings this claim on behalf of herself and the members of the Massachusetts Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff Bullard purports to bring claims on behalf of herself and a putative class and denies any and all remaining allegations in Paragraph 264. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class she seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 264.

265.    At all relevant times, Plaintiff Bullard and the Massachusetts Class are "persons" within the meaning of Mass. Gen. Laws. Ch. 93A, §§1, 9.

**ANSWER:**    Walgreens admits the allegations in Paragraph 265.

266.    At all relevant and material times as described herein, Walgreens was engaged in "the conduct of any trade or commerce" within the meaning of Mass. Gen. Laws. Ch. 93A, §§1, 2, 9 with respect to the acts alleged herein.

**ANSWER:**    Walgreens admits that Walgreens' business constituted "the conduct of any trade or commerce" within the meaning of Mass. Gen. Laws. Ch. 93A, § 1.  Walgreens denies the remaining allegations in Paragraph 266.

267.    The Massachusetts Consumer Protection Act, Mass. Gen. Laws. Ch. 93A, *et seq.*, makes it unlawful to engage in any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

**ANSWER:**    Walgreens admits that Plaintiffs have accurately quoted portions of the Massachusetts Consumer Protection Act.

268.    Plaintiff Bullard and the Massachusetts Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices in the course of its business, by, among other things:

        (a)    reporting to and charging third-party payors, Plaintiff Bullard, and the Massachusetts Class fraudulently inflated U&C prices for the PSC Generics;

        (b)    communicating to and charging third-party payor beneficiaries, Plaintiff Bullard, and the Massachusetts Class fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

      (c)      concealing from third-party payors, Plaintiff Bullard and the Massachusetts Class the true U&C prices of the PSC Generics, and the proper copayment, coinsurance, or deductible amount Walgreens should have charged Plaintiff Bullard and the Massachusetts Class; and

      (d)      wrongfully obtaining monies from Plaintiff Bullard and the Massachusetts Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 268.

269.    Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of the Mass. Gen. Laws. Ch. 93A, *et seq*.

**ANSWER:**    Walgreens denies the allegations in Paragraph 269.

270.    Walgreens' conduct constitutes an unfair practice in that Walgreens sells PSC Generics for a price that is unconscionable and unethical, oppressive, and unscrupulous. Walgreens' unjustified, inflated pricing of PSC Generics is oppressive because it overcharges consumers and third-party payors. The pricing of PSC Generics is unconscionable and unethical and unscrupulous because it is the result of Walgreens' desire to achieve maximum financial gain for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase PSC Generics.

**ANSWER:**    Walgreens denies the allegations in Paragraph 270.

271.    Walgreens' submission of inflated U&C prices also violates public policy, specifically 101 Mass. Code Regs. 331.04, which states that reimbursement for prescriptions shall not exceed the lesser of the pharmacy provider's usual and customary charge for that prescription or the state allowable for that prescription when billing the state's medical assistance program.

**ANSWER:**    Walgreens denies the allegations in Paragraph 271.

272.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff Bullard and the members of the Massachusetts Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**    To the extent Paragraph 272 relates to how members of the putative Massachusetts class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations. Walgreens denies the remaining allegations in Paragraph 272.

273.     Walgreens intended for Plaintiff Bullard and the members of the Massachusetts Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     Walgreens denies the allegations in Paragraph 273.

274.     As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff Bullard and the members of the Massachusetts Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 273.

275.     On June 19, 2017, Plaintiff Bullard sent Walgreens a pre-suit notice demand letter, pursuant to Mass. Gen. Laws Ch. 93A, §9.

**ANSWER:**     Walgreens admits the allegations in Paragraph 275.

276.     Walgreens is therefore liable to Plaintiff Bullard and the members of the Massachusetts Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**     Walgreens denies the allegations in Paragraph 276.

## SIXTEENTH CLAIM FOR RELIEF

### Violation of the Minnesota Prevention of Consumer Fraud Act
### Minn. Stat. §325F.68, et seq.
**Asserted by Plaintiff IBEW Local 38 on Behalf of Minnesota Members of the Class ("Minnesota Class")**

277.     Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**     Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

278.     Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Minnesota Class against Walgreens.

**ANSWER:**     Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 278. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is

entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 278.

279.    Plaintiff IBEW Local 38 paid for PSC Generics, which were purchased by their members for their own personal use.

**ANSWER:**    Walgreens does not know why Plaintiff IBEW Local 38's members purchased PSC Generics or whether Plaintiff IBEW Local 38 itself paid for PSC Generics, and therefore lacks sufficient knowledge to admit or deny the allegations in Paragraph 279.

280.    The Minnesota Prevention of Consumer Fraud Act ("MPCFA") makes illegal "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat. §325F.69.

**ANSWER:**    Walgreens admits that Plaintiffs have accurately quoted portions of the MPCFA.

281.    The MPCFA does not require a showing of damage, and provides for liability "whether or not any person has in fact been misled, deceived, or damaged." *Id*.

**ANSWER:**    Walgreens admits that Plaintiffs have accurately paraphrased and quoted portions of the MPCFA.

282.    Plaintiff IBEW Local 38 and the Minnesota Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices by, among other things:

(a)    reporting to and charging Plaintiff IBEW Local 38 and the Minnesota Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging beneficiaries of Plaintiff IBEW Local 38, consumers, and the Minnesota Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from Plaintiff IBEW Local 38 and the Minnesota Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Minnesota Class should have paid; and

(d)    wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Minnesota Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 282.

283.     Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of MPCFA, Minn. Stat. §325F.68, *et seq*.

**ANSWER:**     Walgreens denies the allegations in Paragraph 283.

284.     The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Minnesota Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     To the extent Paragraph 284 relates to how members of the putative Minnesota class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 284.

285.     Walgreens intended for Plaintiff IBEW Local 38 and the members of the Minnesota Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     Walgreens denies the allegations in Paragraph 285.

286.     As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Minnesota Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 286.

287.     Where, as here, Plaintiff IBEW Local 38's claims inure to the public benefit as a result of Walgreens' acts described herein to the public at large, Minnesota's private attorney general statute, Minn. Stat. §8.31, subd. 3a, allows parties injured through a violation of the consumer protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

**ANSWER:**     Walgreens denies the allegations in Paragraph 287.

288.     Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the Minnesota Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law, in accordance with Minn. Stat. §325F.70 and as authorized by Minn. Stat. §8.31, subd. 3a.

**ANSWER:**     Walgreens denies the allegations in Paragraph 288.

## SEVENTEENTH CLAIM FOR RELIEF

### Violation of the Minnesota Unlawful Trade Practices Act
### Minn. Stat. §325D.09, et seq.
**Asserted by Plaintiff IBEW Local 38 on Behalf of the Minnesota Class**

289.    Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

290.    Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Minnesota Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 290. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 290.

291.    Plaintiff IBEW Local 38 paid for PSC Generics, which were purchased by their members for their own personal use.

**ANSWER:**    Walgreens does not know why Plaintiff IBEW Local 38's members purchased PSC Generics or whether Plaintiff IBEW Local 38 paid for PSC Generics, and therefore lacks sufficient knowledge to admit or deny the allegations in Paragraph 291.

292.    The Minnesota Unlawful Trade Practices Act ("MUTPA") provides that "[n]o person shall, in connection with the sale of merchandise at retail, or in, or in connection with the use of, samples, catalogs, or other forms of advertising listing merchandise for sale at retail, display price tags or price quotations in any form showing prices which are fictitiously in excess of the actual prices at which such merchandise is regularly and customarily sold at retail by such person or by the person issuing such samples, catalogs, or other forms of advertising." Minn. Stat. §325D.12(3).

**ANSWER:**    Walgreens admits that Plaintiffs have accurately quoted portions of the MUTPA.

293.     The Minnesota legislature has found that such practices "mislead consumers into believing that they are buying merchandise at prices substantially below regular retail prices, when in fact they are not" and "that they constitute unfair and fraudulent competition and unsound and uneconomic methods of distribution." Minn. Stat. §325D.09.

**ANSWER:**     Walgreens admits that Plaintiffs have accurately quoted portions of Minn. Stat. §325D.09.

294.     Plaintiff IBEW Local 38 and the Minnesota Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices by, among other things:

(a)     reporting to and charging Plaintiff IBEW Local 38 and the Minnesota Class fraudulently inflated U&C prices for the PSC Generics;

(b)     communicating to and charging beneficiaries of Plaintiff IBEW Local 38, consumers, and the Minnesota Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)     concealing from Plaintiff IBEW Local 38 and the Minnesota Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Minnesota Class should have paid; and

(d)     wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Minnesota Class as a result of its deception.

**ANSWER:**     Walgreens denies the allegations in Paragraph 294.

295.     The fraudulently inflated U&C prices for the PSC Generics reported to and charged to Plaintiff IBEW Local 38 and the Minnesota Class and the fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C prices communicated to and charged to beneficiaries of Plaintiff IBEW Local 38, consumers, and the Minnesota Class (or its beneficiaries) constitute "price quotations" within the meaning of Minn. Stat. §325D.12.

**ANSWER:**     Walgreens denies the allegations in Paragraph 295.

296.     Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of MUTPA, Minn. Stat. §325D.09, *et seq.*

**ANSWER:**     Walgreens denies the allegations in Paragraph 296.

297.     The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Minnesota Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** To the extent Paragraph 297 relates to how members of the putative Minnesota class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations. Walgreens denies the remaining allegations in Paragraph 297.

298. Walgreens intended for Plaintiff IBEW Local 38 and the members of the Minnesota Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** Walgreens denies the allegations in Paragraph 298.

299. As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Minnesota Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:** Walgreens denies the allegations in Paragraph 299.

300. Where, as here, Plaintiff IBEW Local 38's claims inure to the public benefit as a result of Walgreens' acts described herein to the public at large, Minnesota's private attorney general statute, Minn. Stat. §8.31, subd. 3a, allows parties injured through a violation of the consumer protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

**ANSWER:** Walgreens denies the allegations in Paragraph 300.

301. Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the Minnesota Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law, in accordance with Minn. Stat. §325D.15 and as authorized by Minn. Stat. §8.31, subd. 3a.

**ANSWER:** Walgreens denies the allegations in Paragraph 301.

## EIGHTEENTH CLAIM FOR RELIEF

### Violation of the Minnesota Uniform Deceptive Trade Practices Act
### Minn. Stat. §325D.43, *et seq*.
### Asserted by Plaintiff IBEW Local 38 on Behalf of the Minnesota Class

302. Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

303. Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Minnesota Class against Walgreens.

**ANSWER:** Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 303. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 303.

304. Plaintiff IBEW Local 38 paid for PSC Generics, which were purchased by their members for their own personal use.

**ANSWER:** Walgreens does not know why Plaintiff IBEW Local 38's members purchased PSC Generics or whether Plaintiff IBEW Local 38 paid for PSC Generics, and therefore lacks sufficient knowledge to admit or deny the allegations in Paragraph 304.

305. The MUDTPA provides that "[a] person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: [. . .] makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Minn. Stat. §325D.44, subd.1(11).

**ANSWER:** Walgreens admits that Plaintiffs have accurately quoted portions of the MUDTPA.

306. Plaintiff IBEW Local 38 and the Minnesota Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices by, among other things:

    (a) reporting to and charging Plaintiff IBEW Local 38 and the Minnesota Class fraudulently inflated U&C prices for the PSC Generics;

    (b) communicating to and charging beneficiaries of Plaintiff IBEW Local 38, consumers, and the Minnesota Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)     concealing from Plaintiff IBEW Local 38 and the Minnesota Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Minnesota Class should have paid; and

(d)     wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Minnesota Class as a result of its deception.

**ANSWER:**     Walgreens denies the allegations in Paragraph 306.

307.    Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of the MUDTPA.

**ANSWER:**     Walgreens denies the allegations in Paragraph 307.

308.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Minnesota Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     To the extent Paragraph 308 relates to how members of the putative Minnesota class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.   Walgreens denies the remaining allegations in Paragraph 308.

309.    Walgreens intended for Plaintiff IBEW Local 38 and the members of the Minnesota Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     Walgreens denies the allegations in Paragraph 309.

310.    As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Minnesota Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 310.

311.    Where, as here, Plaintiff IBEW Local 38's claims inure to the public benefit as a result of Walgreens' acts described herein to the public at large, Minnesota's private attorney general statute, Minn. Stat. §8.31, subd. 3a, allows parties injured through a violation of the consumer protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

**ANSWER:**    Walgreens denies the allegations in Paragraph 311.

312.    Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the Minnesota Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law, in accordance with Minn. Stat. §325D.45 and as authorized by Minn. Stat. §8.31, subd. 3a.

**ANSWER:**    Walgreens denies the allegations in Paragraph 312.

## NINETEENTH CLAIM FOR RELIEF

### Violation of the Missouri Merchandising Practices Act
**Asserted by Plaintiff Bailey on Behalf of Missouri Members of the Class
("Missouri Class")**

313.    Plaintiff Bailey repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

314.    Plaintiff Bailey brings this claim on behalf of herself and the members of the Missouri Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff Bailey purports to bring claims on behalf of herself and a putative class and denies any and all remaining allegations in Paragraph 314. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class she seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 314.

315.    At all relevant times, Plaintiff Bailey, the Missouri Class, and Walgreens were "persons" within the meaning of Mo. Rev. Stat. §407.010(5) (West).

**ANSWER:**    Walgreens admits the allegations in Paragraph 315.

316.    At all relevant and material times as described herein, Walgreens engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. §407.010(7) (West).

**ANSWER:**    Walgreens admits that Walgreens' business constituted "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

317. An "unfair practice" under Missouri law includes several types. Walgreens has engaged in an "unfair practice" with the pricing of the PSC Generics for several independent reasons. First, according to Missouri law, an "(1) An unfair practice is any practice which—(A) Either— 1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or 2. Is unethical, oppressive or unscrupulous; and (B) Presents a risk of, or causes, substantial injury to consumers." Mo. Code Regs. Ann. tit. 15, §60-8.020 (2016). Second, according to Missouri law, it is an "unfair practice" to engage in any unconscionable act or practice. Mo. Code Regs. Ann. tit. 15, §60-8.080 (2016). Third, according to Missouri law, it is an "unfair practice" to engage in any practice that violates state or federal law intended to protect the public and presents a risk of, or causes substantial injury to consumers. Mo. Code Regs. Ann. tit. 15, §60-8.090 (2016).

**ANSWER:** Walgreens admits that Plaintiffs have accurately summarized the portions of Missouri law set forth in Paragraph 317. Walgreens denies the remaining allegations in Paragraph 317, including the allegation that Walgreens engaged in any "unfair practice."

318. Walgreens' unfair and deceptive acts and practices regarding the true U&C price of PSC Generics were directed at and impacted the market generally and/or otherwise implicate consumer protection concerns where Walgreens' unfair and deceptive acts and practices have impacted at least thousands of consumers in Missouri and remedying Walgreens' wrongdoing through the relief requested herein would serve the interests of consumers. Walgreens' unfair and deceptive trade practices significantly impact the public as actual or potential consumers of Walgreens' goods and services in that the actions and transactions alleged herein substantially affected the people of Missouri, with thousands of consumers in Missouri paying substantially higher price for PSC Generics at Missouri Walgreens pharmacies.

**ANSWER:** Walgreens denies the allegations in Paragraph 318.

319. Walgreens' conduct constitutes an unfair practice in that Walgreens sells PSC Generics for a price that is unconscionable and unethical, oppressive, and unscrupulous. Walgreens' unjustified, inflated pricing of PSC Generics is oppressive because it overcharges consumers. The pricing of PSC Generics is unconscionable and unethical and unscrupulous because it is the result of Walgreens' desire to achieve maximum financial gain for medically necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase PSC Generics.

**ANSWER:** Walgreens denies the allegations in Paragraph 319.

320. Walgreens' conduct further constitutes an unfair practice in that Walgreens has engaged, and continues to engage, in conduct that violates the legislatively declared public policies of: (1) Missouri Revised Statute §376.446, permitting individuals to learn the true amount of their cost-sharing contributions under their plans; (2) Mo. Code Regs. Ann. tit. 13, §70-20.070, which states that reimbursement for prescriptions shall not exceed the lesser of the pharmacy provider's usual and customary charge for that prescription or the state allowable for

that prescription when billing the state's medical assistance program; and (3) the FTCA, 15 U.S.C. §§45(a)(1), against unfair or deceptive practices.

**ANSWER:**     Walgreens denies the allegations in Paragraph 320.

321.    Plaintiff Bailey and the Missouri Class have suffered substantial injury because of Walgreens' employment of unfair and unconscionable acts or practices in connection with the sale of PSC Generics to Plaintiff Bailey and the Missouri Class.

**ANSWER:**     Walgreens denies the allegations in Paragraph 321.

322.    Plaintiff Bailey and the Missouri Class have suffered losses because of Walgreens' employment of deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of material fact with intent that others rely on such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise by, among other things:

(a)     reporting to and charging Plaintiff Bailey and the Missouri Class fraudulently inflated U&C prices for the PSC Generics;

(b)     communicating to and charging beneficiaries of Plaintiff Bailey, consumers, and the Missouri Class fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C prices;

(c)     concealing from Plaintiff Bailey and the Missouri Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff Bailey and the Missouri Class should have paid; and

(d)     wrongfully obtaining monies from Plaintiff Bailey and the Missouri Class as a result of its deception.

**ANSWER:**     Walgreens denies the allegations in Paragraph 322.

323.    Walgreens willfully and knowingly engaged in the deceptive, fraudulent, false, and unfair acts and practices described above and knew or should have known that those acts and practices were unconscionable, fraudulent, false and unfair, and thus in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. §407.010 (West), *et seq.*

**ANSWER:**     Walgreens denies the allegations in Paragraph 323.

324.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff Bailey and the members of the Missouri Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     To the extent Paragraph 324 relates to how members of the putative

Missouri class would have behaved, Walgreens cannot know this and therefore it lacks sufficient

knowledge to admit or deny those allegations. Walgreens denies the remaining allegations in

Paragraph 324.

325.     Walgreens intended for Plaintiff Bailey and the members of the Missouri Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     Walgreens denies the allegations in Paragraph 325.

326.     As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff Bailey and the members of the Missouri Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 326.

327.     Walgreens is therefore liable to Plaintiff Bailey and the members of the Missouri Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**     Walgreens denies the allegations in Paragraph 327.

### TWENTIETH CLAIM FOR RELIEF

### Violation of the Nevada Deceptive Trade Practices Act
**Asserted by Plaintiff IBEW Local 38 on Behalf of Nevada Members of the Class
("Nevada Class")**

328.     Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**     Walgreens repeats and realleges its answers to the allegations in the

preceding Paragraphs as if fully set forth herein.

329.     Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Nevada Class against Walgreens.

**ANSWER:**     Walgreens admits only that Plaintiff IBEW Local 38 purports to bring

claims on behalf of itself and a putative class and denies any and all remaining allegations in

Paragraph 329. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is

entitled to relief, and that the putative class it seeks to represent is certifiable under governing

law. Walgreens denies any remaining allegations in Paragraph 329.

330.    At all relevant times, Plaintiff IBEW Local 38 and Walgreens were persons within the meaning of Nev. Rev. Stat. §41.600.

**ANSWER:**    Walgreens lacks sufficient information to admit or deny the allegations in

Paragraph 330.

331.    At all relevant times, Plaintiff IBEW Local 38 and the Nevada Class were "victim[s] of consumer fraud" within the meaning of Nev. Rev. Stat. §41.600.

**ANSWER:**    Walgreens denies the allegations in Paragraph 331.

332.    Plaintiff IBEW Local 38 and the Nevada Class have suffered losses because of Walgreens' employment of deceptive trade practices in the course of its business or occupation, as defined in Nev. Rev. Stat. §598.0915(13), in "[m]ak[ing] false or misleading statements of fact concerning the price of goods or services for sale," and in Nev. Rev. Stat. §598.0915(15), in "[k]nowingly mak[ing] any other false representation in a transaction," in connection with the sale of PSC Generics to Plaintiff IBEW Local 38 and the Nevada Class by, among other things:

(a)    reporting to and charging Plaintiff IBEW Local 38 and the Nevada Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging beneficiaries of Plaintiff IBEW Local 38, consumers, and the Nevada Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C prices;

(c)    concealing from Plaintiff IBEW Local 38 and the Nevada Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Nevada Class should have paid; and

(d)    wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Nevada Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 332.

333.    Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. §§41.600, 598.0915.

**ANSWER:**    Walgreens denies the allegations in Paragraph 333.

334.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Nevada Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transactions but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**   To the extent Paragraph 334 relates to how members of the putative Nevada class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.   Walgreens denies the remaining allegations in Paragraph 334.

335.   Walgreens intended for Plaintiff IBEW Local 38 and the members of the Nevada Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**   Walgreens denies the allegations in Paragraph 335.

336.   As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Nevada Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**   Walgreens denies the allegations in Paragraph 336.

337.   As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Nevada Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**   Walgreens denies the allegations in Paragraph 337.

### TWENTY-FIRST CLAIM FOR RELIEF

### Violation of the New Mexico Unfair Practices Act
### Asserted by Plaintiff Gonzales on Behalf of New Mexico Members of the Class
### ("New Mexico Class")

338.   Plaintiff Gonzales repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**   Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

339.   Plaintiff Gonzales brings this claim on behalf of himself and the members of the New Mexico Class against Walgreens.

**ANSWER:**   Walgreens admits only that Plaintiff Gonzales purports to bring claims on behalf of himself and a putative class and denies any and all remaining allegations in Paragraph

339. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class he seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 339.

340.    At all relevant times, Plaintiff Gonzales and the New Mexico Class are "persons" within the meaning of N.M. Stat. Ann. §57-12-2.

**ANSWER:**    Walgreens admits the allegations in Paragraph 340.

341.    At all relevant and material times as described herein, Walgreens was engaged in "in the conduct of any trade or commerce" involving the sale of goods or services within the meaning of N.M. Stat. Ann. §57-12-2, -3 with respect to the acts alleged herein that directly affects the people of New Mexico.

**ANSWER:**    Walgreens admits that Walgreens was engaged in "in the conduct of any trade or commerce" involving the sale of goods or services within the meaning of N.M. Stat. Ann. §57-12-2, -3. Walgreens denies the remaining allegations in Paragraph 341.

342.    The New Mexico Unfair Practices Act, N.M. Stat. Ann. §57-12-2 defines a false or misleading oral or written statement to include: "(11) making false or misleading statements of fact concerning the price of goods or services . . . ."

**ANSWER:**    Walgreens admits that Plaintiffs have accurately quoted portions of the New Mexico Unfair Practices Act.

343.    Plaintiff Gonzales and the New Mexico Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices in the course of its business, by, among other things, knowingly:

(a)    reporting to and charging third-party payors, Plaintiff Gonzales, and the New Mexico Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging third-party payor beneficiaries, Plaintiff Gonzales, and the New Mexico Class fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from third-party payors, Plaintiff Gonzales, and the New Mexico Class the true U&C prices of the PSC Generics, and the proper copayment, coinsurance, or deductible amount Walgreens should have charged Plaintiff Gonzales and the New Mexico Class; and

(d)    wrongfully obtaining monies from Plaintiff Gonzales and the New Mexico Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 343.

344.    Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of the N.M. Stat. Ann. §57-12-1, *et seq.*

**ANSWER:**    Walgreens denies the allegations in Paragraph 344.

345.    Walgreens takes advantage of the lack of knowledge, ability, experience, and/or capacity of a person to a grossly unfair degree in that a consumer has no way of knowing Walgreens' true U&C prices for the PSC Generics. Walgreens' submission of inflated U&C prices also violates public policy, specifically N.M. Admin. Code 8.324.4.16(5), which states that the amount billed to the state's medical assistance program must be the providers' U&C charge. Thus, the acts alleged herein are grossly unreasonable and against public policy under the circumstances.

**ANSWER:**    Walgreens denies the allegations in Paragraph 345.

346.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff Gonzales and the members of the New Mexico Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, unconscionable, fraudulent, false, and unfair acts and practices.

**ANSWER:**    To the extent Paragraph 346 relates to how members of the putative New Mexico class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 346.

347.    Walgreens intended for Plaintiff Gonzales and the members of the New Mexico Class to pay for PSC Generics in reliance upon Walgreens' deceptive, unconscionable, fraudulent, false, and unfair acts and practices.

**ANSWER:**    Walgreens denies the allegations in Paragraph 347.

348.    As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff Gonzales and the members of the New Mexico Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**    Walgreens denies the allegations in Paragraph 348.

349.    Walgreens is therefore liable to Plaintiff Gonzales and the members of the New Mexico Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 349.

## TWENTY-SECOND CLAIM FOR RELIEF

### Violation of New York GBL §349
### Asserted by Plaintiff Bullard and Plaintiff IUOE Local 295 on Behalf of New York Members of the Class ("New York Class")

350.    Plaintiff Bullard and Plaintiff IUOE Local 295 repeat each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

351.    Plaintiff Bullard and Plaintiff IUOE Local 295 bring this claim on behalf of themselves and the members of the New York Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiffs Bullard and IUOE Local 295 purport to bring claims on behalf of themselves and a putative class and denies any and all remaining allegations in Paragraph 351.  For the avoidance of doubt, Walgreens denies that Plaintiffs have a viable claim, are entitled to relief, and that the putative class they seek to represent is certifiable under governing law.  Walgreens denies any remaining allegations in Paragraph 351.

352.    At all relevant times, Plaintiff Bullard, Plaintiff IUOE Local 295, and the New York Class are "persons" within the meaning of New York GBL §349(h).

**ANSWER:**    Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 352.

353.    At all relevant times, Plaintiff Bullard, Plaintiff IUOE Local 295, and the New York Class are members of the public, with respect to purchases of PSC Generics in New York by members of the New York Class, in that the actions and transactions alleged herein substantially affected the people of New York, with thousands of beneficiaries and consumers in New York paying substantially higher prices for PSC Generics at New York Walgreens pharmacies.

**ANSWER:**    Walgreens denies the allegations in Paragraph 353.

354.    Plaintiff Bullard, Plaintiff IUOE Local 295, and the New York Class paid for or purchased PSC Generics in New York and thus the deceptive transactions alleged herein occurred in New York.

**ANSWER:**    Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 354.

355.    At all relevant and material times as described herein, Walgreens was engaged in "the conduct of any business, trade or commerce" in New York within the meaning of New York GBL §349 with respect to the acts alleged herein.

**ANSWER:**    Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 355.

356.    GBL §349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

**ANSWER:**    Walgreens admits that Plaintiffs have accurately quoted portions of GBL §349.

357.    Plaintiff Bullard, Plaintiff IUOE Local 295, and the New York Class have suffered losses as a direct, foreseeable, and proximate result of Walgreens' employment of unfair or deceptive acts or practices in the course of its business, by, among other things:

(a)    reporting to and charging Plaintiff IUOE Local 295, Plaintiff Bullard, and the New York Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging Plaintiff IUOE Local 295's beneficiaries, Plaintiff Bullard, and the New York Class fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from Plaintiff IUOE Local 295, Plaintiff Bullard, and the New York Class the true U&C prices of the PSC Generics, and the proper copayment, coinsurance, or deductible amount Walgreens should have charged Plaintiff IUOE Local 295, Plaintiff Bullard, and the New York Class; and

(d)    wrongfully obtaining monies from Plaintiff IUOE Local 295, Plaintiff Bullard, and the New York Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 357.

358.    Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of New York GBL §349.

93

**ANSWER:**     Walgreens denies the allegations in Paragraph 358.

359.     The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff Bullard, Plaintiff IUOE Local 295, and the members of the New York Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' false, deceptive, and fraudulent acts and practices, misrepresentations, and material omissions.

**ANSWER:**     To the extent Paragraph 359 relates to how members of the putative New York class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 359.

360.     Walgreens intended for Plaintiff Bullard, Plaintiff IUOE Local 295, and the members of the New York Class to pay for PSC Generics in reliance upon Walgreens' false, deceptive, and fraudulent acts and practices, misrepresentations, and material omissions.

**ANSWER:**     Walgreens denies the allegations in Paragraph 360.

361.     Walgreens' misleading and deceptive acts and practices adversely impacted Plaintiff Bullard, Plaintiff IUOE Local 295, and the New York Class, who are consumers of prescription drugs purchased at Walgreens, and therefore constitute consumer-oriented conduct under GBL §349 that resulted in actual and direct harm to Plaintiff Bullard, Plaintiff IUOE Local 295, and the New York Class.

**ANSWER:**     Walgreens denies the allegations in Paragraph 361.

362.     As a direct and proximate result of Walgreens' false, deceptive, and fraudulent acts and practices, misrepresentations, and material omissions, Plaintiff Bullard, Plaintiff IUOE Local 295, and the members of the New York Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 362.

363.     Walgreens is additionally liable under New York GBL §349 for supplemental civil penalties as it has engaged in deceptive conduct against Plaintiff Bullard, Plaintiff IUOE Local 295, and other persons who are over 65 years of age. New York GBL §349-c provides that a person or entity who engages in any conduct prohibited by New York GBL §349, and whose conduct is perpetrated against one or more elderly persons, may be liable for an additional civil penalty not to exceed ten thousand dollars.

**ANSWER:** Walgreens admits only that Plaintiffs have accurately summarized portions of New York GBL §349 in the second sentence. Walgreens denies all other allegations in Paragraph 363.

364. Walgreens is therefore liable to Plaintiff Bullard, Plaintiff IUOE Local 295, and the members of the New York Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:** Walgreens denies all other allegations in Paragraph 364.

### TWENTY-THIRD CLAIM FOR RELIEF

**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**Asserted by Plaintiff IBEW Local 38 on Behalf of**
**North Carolina Members of the Class ("North Carolina Class")**

365. Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

366. Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the North Carolina Class against Walgreens.

**ANSWER:** Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 366. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 366.

367. At all relevant times, Plaintiff IBEW Local 38 and the North Carolina Class are businesses injured by reason of Walgreens' unfair and deceptive acts and practices within the meaning of N.C. Gen. Stat. §75-16.

**ANSWER:** Walgreens denies the allegations in Paragraph 367.

368. At all relevant and material times as described herein, Walgreens conducted commerce within the meaning of N.C. Gen. Stat. §75-1.1, and Walgreens' unfair or deceptive acts or practices occur in and affect commerce.

**ANSWER:**     Walgreens denies the allegations in Paragraph 368.

369.     Plaintiff IBEW Local 38 and the North Carolina Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices in or affecting commerce, by, among other things:

(a)     reporting to and charging Plaintiff IBEW Local 38 and the North Carolina Class fraudulently inflated U&C prices for the PSC Generics;

(b)     communicating to and charging beneficiaries of Plaintiff IBEW Local 38, consumers, and the North Carolina Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)     concealing from Plaintiff IBEW Local 38 and the North Carolina Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the North Carolina Class should have paid; and

(d)     wrongfully obtaining monies from Plaintiff IBEW Local 38 and the North Carolina Class as a result of its deception.

**ANSWER:**     Walgreens denies the allegations in Paragraph 369.

370.     Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1, *et seq.*

**ANSWER:**     Walgreens denies the allegations in Paragraph 370.

371.     The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the North Carolina Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     To the extent Paragraph 2371 relates to how members of the putative North Carolina class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 371.

372.     Walgreens intended for Plaintiff IBEW Local 38 and the members of the North Carolina Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:**     Walgreens denies the allegations in Paragraph 372.

373.     As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38 and the members of the North Carolina Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 373.

374.     Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the North Carolina Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**     Walgreens denies the allegations in Paragraph 374.

## TWENTY-FOURTH CLAIM FOR RELIEF

### Violation of the Ohio Deceptive Trade Practices Act
### Asserted by Plaintiff IBEW Local 38 on Behalf of the
### Ohio Members of the Class ("Ohio Class")

375.     Plaintiff IBEW Local 38 repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**     Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

376.     Plaintiff IBEW Local 38 brings this claim on behalf of itself and the members of the Ohio Class against Walgreens.

**ANSWER:**     Walgreens admits only that Plaintiff IBEW Local 38 purports to bring claims on behalf of itself and a putative class and denies any and all remaining allegations in Paragraph 376.  For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class it seeks to represent is certifiable under governing law.  Walgreens denies any remaining allegations in Paragraph 376.

377.     At all relevant times, Plaintiff IBEW Local 38 and the Ohio Class are "persons" within the meaning of Ohio Rev. Code Ann. §4165.01(D).

**ANSWER:**     Walgreens admits the allegations in Paragraph 377.

378.     At all relevant and material times as described herein, Walgreens was engaged in "the course of [its] business" within the meaning of Ohio Rev. Code Ann. §4165.02(A) with respect to the acts alleged herein.

**ANSWER:** Walgreens denies the allegations in Paragraph 378.

379.   Ohio Rev. Code Ann. §4165.02(A) provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following: . . . (12) Makes false statements of fact concerning the reasons for, existence of, or amounts of price reductions[.]"

**ANSWER:** Walgreens admits that Plaintiffs have accurately quoted portions of Ohio

Rev. Code Ann. §4165.02.

380.   Plaintiff IBEW Local 38 and the Ohio Class have suffered losses because of Walgreens' employment of unfair or deceptive acts or practices in the course of its business in omitting the existence of a price reduction in the sale of PSC Generics, by, among other things:

(a)   reporting to and charging Plaintiff IBEW Local 38 and the Ohio Class fraudulently inflated U&C prices for the PSC Generics;

(b)   communicating to and charging beneficiaries of Plaintiff IBEW Local 38, consumers, and the Ohio Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)   concealing from Plaintiff IBEW Local 38 and the Ohio Class the true U&C prices of the PSC Generics, and the proper reimbursement amount Plaintiff IBEW Local 38 and the Ohio Class should have paid; and

(d)   wrongfully obtaining monies from Plaintiff IBEW Local 38 and the Ohio Class as a result of its deception.

**ANSWER:** Walgreens denies the allegations in Paragraph 380.

381.   Walgreens willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that those practices were deceptive in violation of Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. §4165.02(A).

**ANSWER:** Walgreens denies the allegations in Paragraph 381.

382.   The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38 and the members of the Ohio Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' deceptive, fraudulent, false, and unfair acts and practices.

**ANSWER:** To the extent Paragraph 382 relates to how members of the putative Ohio

class would have behaved, Walgreens cannot know this and therefore it lacks sufficient

knowledge to admit or deny those allegations. Walgreens denies the remaining allegations in

Paragraph 382.

383.    Walgreens intended for Plaintiff IBEW Local 38 and the members of the Ohio
Class to pay for PSC Generics in reliance upon Walgreens' deceptive, fraudulent, false, and
unfair acts and practices.

**ANSWER:**    Walgreens denies the allegations in Paragraph 383.

384.    As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and
unfair acts and practices, Plaintiff IBEW Local 38 and the members of the Ohio Class were
deceived into paying artificially inflated prices for PSC Generics and have been damaged
thereby.

**ANSWER:**    Walgreens denies the allegations in Paragraph 384.

385.    Walgreens is therefore liable to Plaintiff IBEW Local 38 and the members of the
Ohio Class for the damages they sustained, plus statutory damages, penalties, injunctive relief,
costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 385.

### TWENTY-FIFTH CLAIM FOR RELIEF

### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
### Asserted by Plaintiff IUOE Local 295 on Behalf of the
### Pennsylvania Members of the Class ("Pennsylvania Class")

386.    Plaintiff IUOE Local 295 repeats each and every allegation contained in
Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the

preceding Paragraphs as if fully set forth herein.

387.    Plaintiff IUOE Local 295 brings this claim on behalf of itself and the members of
the Pennsylvania Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiff IUOE Local 295 purports to bring

claims on behalf of itself and a putative class and denies any and all remaining allegations in

Paragraph 387. For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is

entitled to relief, and that the putative class it seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 387.

388.    Walgreens, Plaintiff IUOE Local 295, and the Pennsylvania Class are "persons" within the meaning of 73 Pa. Stat. §201-2(2).

**ANSWER:**    Walgreens admits the allegations in Paragraph 388.

389.    Walgreens' transactions with Plaintiff IUOE Local 295 and other members of the Pennsylvania Class were "trade" or "commerce" within the meaning of 73 Pa. Stat. §201-2(2).

**ANSWER:**    Walgreens denies the allegations in Paragraph 389.

390.    Plaintiff IUOE Local 295 and the other members of the Pennsylvania Class have been damaged by Walgreens' "unfair or deceptive acts or practices" in violation of 73 Pa. Stat. §201-2, et seq. in connection with the sale of PSC Generics to Plaintiff IUOE Local 295 and the Pennsylvania Class. These "unfair or deceptive acts or practices" included, among other things:

(a)    reporting to and charging Plaintiff IUOE Local 295 and the Pennsylvania Class fraudulently inflated U&C prices for PSC Generics;

(b)    communicating to and charging the beneficiaries of Plaintiff IUOE Local 295 and the Pennsylvania Class fraudulently inflated copayments that exceeded Walgreens' true U&C price;

(c)    concealing from Plaintiff IUOE Local 295 and the Pennsylvania Class the true U&C prices of PSC Generics, and the proper reimbursement amount Plaintiff IUOE Local 295 and the Pennsylvania Class should have paid; and

(d)    wrongfully obtaining monies from Plaintiff IUOE Local 295 and the Pennsylvania Class as a result of Walgreens' deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 390.

391.    Walgreens willfully engaged in the unfair and/or deceptive acts and/or practices described above and knew or should have known that those acts and/or practices were unfair and/or deceptive.

**ANSWER:**    Walgreens denies the allegations in Paragraph 391.

392.    The facts which Walgreens misrepresented and/or concealed, as alleged in the preceding Paragraphs, were material to Plaintiff IUOE Local 295 and the Pennsylvania Class' decisions about whether to purchase or pay for PSC Generics, in that Plaintiff IUOE Local 295 and the Pennsylvania Class would not have purchased or paid for PSC Generics from Walgreens for more than the PSC Prices but for Walgreens' unfair and/or deceptive acts and/or practices.

**ANSWER:**    To the extent Paragraph 392 relates to how members of the putative Pennsylvania class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.    Walgreens denies the remaining allegations in Paragraph 392.

393.    As a direct and proximate result of Walgreens' unfair and deceptive acts and/or practices, Plaintiff IUOE Local 295 and the Pennsylvania Class were deceived into paying falsely inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**    Walgreens denies the allegations in Paragraph 393.

394.    As described above, Walgreens engaged in fraudulent and/or deceptive conduct that created a likelihood of confusion or of misunderstanding by consumers, such as Plaintiff IUOE Local 295 and the Pennsylvania Class, and it therefore engaged in unfair or deceptive acts or practices within the meaning of 73 Pa. Stat. §201-2(4)(xxi).

**ANSWER:**    Walgreens denies the allegations in Paragraph 394.

395.    Walgreens is therefore liable to Plaintiff IUOE Local 295 and the Pennsylvania Class for the damages they sustained, plus statutory damages, penalties, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**    Walgreens denies the allegations in Paragraph 395.

## TWENTY-SIXTH CLAIM FOR RELIEF

### Violation of the South Carolina Unfair Trade Practices Act ("SCUTPA")
### Asserted by Plaintiff Gonzales and Plaintiff IBEW Local 38 on Behalf of
### South Carolina Members of the Class ("South Carolina Class")

396.    Plaintiff Gonzales and Plaintiff IBEW Local 38 repeat each and every allegation contained in Paragraphs above and incorporate such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

397.    Plaintiff Gonzales and Plaintiff IBEW Local 38 bring this claim on behalf of themselves and the members of the South Carolina Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiffs Gonzales and IBEW Local 38 purport to bring claims on behalf of themselves and a putative class and denies any and all

remaining allegations in Paragraph 397. For the avoidance of doubt, Walgreens denies that Plaintiffs have a viable claim, are entitled to relief, and that the putative class they seek to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 397.

398.    Plaintiff Gonzales, Plaintiff IBEW Local 38, and the South Carolina Class are "persons" under the SCUTPA entitled to bring the action, which includes "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity." S.C. Code Ann. §39-5-10(a).

**ANSWER:**    Walgreens denies the allegations in Paragraph 398.

399.    At all relevant times, Plaintiff Gonzales, Plaintiff IBEW Local 38, and the South Carolina Class are members of the public, with respect to purchases of PSC Generics in South Carolina by members of the South Carolina Class, in that the actions and transactions alleged herein substantially affected the people of South Carolina, with thousands of beneficiaries and consumers in South Carolina paying substantially higher prices for PSC Generics at South Carolina Walgreens pharmacies.

**ANSWER:**    Walgreens denies the allegations in Paragraph 399.

400.    Walgreens' transactions with Plaintiff Gonzales, Plaintiff IBEW Local 38, and the South Carolina Class as described were done "in the conduct of any trade or commerce" within the meaning of S.C. Code Ann. §39-5-20(a).

**ANSWER:**    Walgreens admits that Walgreens' business constituted "trade and commerce" as defined in S.C. Code Ann. § 39-5-10(b). Walgreens denies the remaining allegations in Paragraph 400.

401.    S.C. Code Ann. §39-5-140(a) states: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 may bring an action . . . ."

**ANSWER:**    Walgreens admits that Plaintiffs have accurately quoted portions of the SCUTPA.

402.    S.C. Code Ann. §39-5-20 defines unfair or deceptive conduct to include:

    (a)    Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

**ANSWER:** Walgreens admits that Plaintiffs have accurately quoted portions of the SCUTPA.

403. Plaintiff IBEW Local 38 and South Carolina consumers paid for PSC Generics and suffered injury and ascertainable losses of money and property because of Walgreens' employment of unfair or deceptive acts or practices by, among other things:

(a) reporting to and charging Plaintiff IBEW Local 38 and the South Carolina Class fraudulently inflated U&C prices for the PSC Generics;

(b) communicating to and charging beneficiaries of Plaintiff IBEW Local 38, Plaintiff Gonzales, and the South Carolina Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c) concealing from Plaintiff IBEW Local 38, Plaintiff Gonzales, and the South Carolina Class the true U&C prices of the PSC Generics, and the proper amounts Walgreens should have reported to and charged Plaintiffs and the South Carolina Class; and

(d) wrongfully obtaining monies from Plaintiff IBEW Local 38, Plaintiff Gonzales, and the South Carolina Class as a result of its deception.

**ANSWER:** Walgreens denies the allegations in Paragraph 403.

404. Walgreens willfully and knowingly engaged in employment of the unfair or deceptive methods, acts or practices that were willful or knowing violations of S.C. Code Ann. §39-5-20.

**ANSWER:** Walgreens denies the allegations in Paragraph 404.

405. The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38, Plaintiff Gonzales, and the South Carolina Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' unfair and deceptive practices.

**ANSWER:** To the extent Paragraph 405 relates to how members of the putative South Carolina class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations. Walgreens denies the remaining allegations in Paragraph 405.

406. As a direct and proximate result of Walgreens' deceptive, fraudulent, false, and unfair acts and practices, Plaintiff IBEW Local 38, Plaintiff Gonzales, and the South Carolina

Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 406.

407.     Walgreens is therefore liable to Plaintiff IBEW Local 38, Plaintiff Gonzales, and the South Carolina Class for the damages they sustained, including treble damages and other relief as deemed necessary resulting from Walgreens' willful or knowing violations of S.C. Code Ann. §39-5-20. Walgreens is also liable for costs, and reasonable attorneys' fees to the extent provided by law, in accordance with S.C. Code Ann. §39-5-140.

**ANSWER:**     Walgreens denies the allegations in Paragraph 407.

**TWENTY-SEVENTH CLAIM FOR RELIEF**

**Violation of the Texas Deceptive Trade Practices Consumer Protection Act**
**Asserted by Plaintiff Forth on Behalf of**
**Texas Members of the Class ("Texas Class")**

408.     Plaintiff Forth repeats each and every allegation contained in Paragraphs above and incorporates such allegations by reference herein.

**ANSWER:**     Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

409.     Plaintiff Forth brings this claim individually and on behalf of the Texas Class members against Walgreens.

**ANSWER:**     Walgreens admits only that Plaintiff Forth purports to bring claims on behalf of herself and a putative class and denies any and all remaining allegations in Paragraph 409.  For the avoidance of doubt, Walgreens denies that Plaintiff has a viable claim, is entitled to relief, and that the putative class she seeks to represent is certifiable under governing law. Walgreens denies any remaining allegations in Paragraph 409.

410.     Plaintiff Forth and the Texas Class are "consumers" within the meaning of Texas Business and Commerce Code §§17.50(a), 17.45(4).

**ANSWER:**     Walgreens admits the allegations in Paragraph 410.

411.     Walgreens' transactions with Plaintiff Forth and the Texas Class as described herein occurred "in the conduct of any trade or commerce" within the meaning of Texas Business and Commerce Code §17.45(6).

104

**ANSWER:**    Walgreens admits the allegations in Paragraph 411.

412.    Plaintiff Forth and the Texas Class suffered economic and mental anguish damages as a consequence of Walgreens' knowing and intentional use and employment of false, misleading, and deceptive acts or practices, or unconscionable actions and courses of action in connection with the sale of PSC Generics to Plaintiff Forth and the Texas Class, including, among other things:

(a)    reporting to and charging third-party payors, Plaintiff Forth, and the Texas Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging third-party payor beneficiaries, Plaintiff Forth, and the Texas Class fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from third-party payors, Plaintiff Forth, and the Texas Class the true U&C price of PSC Generics, and the proper copayment, coinsurance, or deductible amount Walgreens should have charged Plaintiff Forth and the Texas Class; and

(d)    wrongfully obtaining monies from Plaintiff Forth and the Texas Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 412.

413.    Walgreens knowingly and intentionally engaged in the above-described acts and practices in connection with the sale of PSC Generics to Plaintiff Forth and the Texas Class, with the intent of inducing, and did induce, them to pay fraudulently inflated copayment, coinsurance, or deductible amounts for purchases of PSC Generics, which they would not have paid had Walgreens not engaged in its deceptive conduct. Plaintiff Forth and the Texas Class thus relied on Walgreens' deceptive conduct to their detriment.

**ANSWER:**    Walgreens denies the allegations in Paragraph 413.

414.    The foregoing conduct by Walgreens in connection with the sale of PSC Generics to Plaintiff Forth and the Texas Class constituted failures by Walgreens "to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," under Texas Business and Commerce Code §17.46(b)(24). Thus, Walgreens is liable to Plaintiff Forth and the Texas Consumer Class members under Texas Business and Commerce Code §17.50(a)(1) and (b).

**ANSWER:**    Walgreens denies the allegations in Paragraph 414.

415.    In addition, Plaintiff Forth and the Texas Class lacked knowledge, ability, experience, or capacity with respect to at least the following:

(a)     Walgreens' internal and nonpublic business practices of determining its U&C price, including that it purposefully excluded its PSC price from such determinations;

(b)     the fact that, as reflected in Walgreens' internal and nonpublic data, Walgreens' PSC price is the most common price Walgreens charges cash-paying customers and therefore is Walgreens' true U&C price;

(c)     the fact that Walgreens does not report, and has not reported, its PSC price as its U&C price in submitting claims for adjudication to third-party payors, including when it made such reports in connection with respect to Plaintiff Forth and the Texas Class members' claims; and

(d)     the fact that Walgreens was required to, but did not, charge Plaintiff Forth and the Texas Class an amount that did not exceed Walgreens' true U&C price.

**ANSWER:**     Walgreens denies the allegations in Paragraph 415.

416.     Walgreens took advantage of Plaintiff Forth and the Texas Class members' lack of knowledge, ability, experience, or capacity in connection with the sale of generic prescription drugs by reporting inflated U&C prices, instead of Walgreens' PSC price, and by communicating to and charging Plaintiff Forth and the Texas Class inflated copayment, coinsurance, or deductible amounts on their purchases of PSC Generics, within the meaning of Texas Business and Commerce Code §17.45(5). Walgreens' submission of inflated U&C prices also violates public policy, specifically 1 Tex. Admin. Code §355.8544(a), which states "(2) When a discount is given (including, but not limited to, cash rebate, monetary price discount, coupon of value) or advertised for any segment of the general public, the discount must be included in the usual and customary price determination for Medicaid prescriptions if the Medicaid recipient would otherwise have qualified as a member of that same segment of the general public." Walgreens therefore has engaged in unconscionable acts and practices against Plaintiff Forth and the Texas Class in violation of Texas Business and Commerce Code §17.50(a)(3).

**ANSWER:**     Walgreens denies the allegations in Paragraph 416.

417.     As a direct and proximate result of Walgreens' unfair, unconscionable, and deceptive acts and practices, Plaintiff Forth and the Texas Class have paid falsely inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:**     Walgreens denies the allegations in Paragraph 417.

418.     Walgreens therefore is liable to Plaintiff Forth and the Texas Class for the economic damages and mental anguish damages they sustained, plus statutory damages (including treble damages), penalties, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:**     Walgreens denies the allegations in Paragraph 418.

419.    Plaintiff Forth complied with Texas Business and Commerce Code §17.505 and, by letter dated March 24, 2017, gave Walgreens at least 60 days' notice before filing this suit.

**ANSWER:**    Walgreens denies that it received pre-suit notice from plaintiff Forth.

### TWENTY-EIGHTH CLAIM FOR RELIEF

**Violation of the Wisconsin Deceptive Trade Practices Act**
**Asserted by Plaintiff IBEW Local 38 and Plaintiff Gonzales on Behalf of**
**Wisconsin Members of the Class ("Wisconsin Class")**

420.    Plaintiff IBEW Local 38 and Plaintiff Gonzales repeat each and every allegation contained in Paragraphs above and incorporate such allegations by reference herein.

**ANSWER:**    Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

421.    Plaintiff IBEW Local 38 and Plaintiff Gonzales bring this claim on behalf of themselves and the members of the Wisconsin Class against Walgreens.

**ANSWER:**    Walgreens admits only that Plaintiffs Gonzales and IBEW Local 38 purport to bring claims on behalf of themselves and a putative class and denies any and all remaining allegations in Paragraph 421.  For the avoidance of doubt, Walgreens denies that Plaintiffs have a viable claim, are entitled to relief, and that the putative class they seek to represent is certifiable under governing law.  Walgreens denies any remaining allegations in Paragraph 421.

422.    At all relevant times, Plaintiff IBEW Local 38, Plaintiff Gonzales, and the Wisconsin Class are members of the public, with respect to purchases of PSC Generics in Wisconsin by members of the Class, in that the actions and transactions alleged herein substantially affected the people of Wisconsin, with thousands of TPPs and consumers in Wisconsin paying substantially higher price for PSC Generics at Wisconsin Walgreens pharmacies.

**ANSWER:**    Walgreens lacks sufficient information to admit or deny the allegations in Paragraph 422.

423.    Plaintiff IBEW Local 38, Plaintiff Gonzales, and the Wisconsin Class have suffered pecuniary losses because of Walgreens' employment of untrue, misleading, or deceptive

acts or practices with the intent to induce the public in making untrue, misleading, or deceptive statements or representations, by, among other things:

(a)    reporting to and charging Plaintiff IBEW Local 38, Plaintiff Gonzales, and the Wisconsin Class fraudulently inflated U&C prices for the PSC Generics;

(b)    communicating to and charging beneficiaries of Plaintiff IBEW Local 38, Plaintiff Gonzales, and the Wisconsin Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Walgreens' true U&C price;

(c)    concealing from Plaintiff IBEW Local 38, Plaintiff Gonzales, and the Wisconsin Class the true U&C prices of the PSC Generics, and the proper reimbursement amounts Walgreens should have reported to and charged Plaintiffs and the Wisconsin Class; and

(d)    wrongfully obtaining monies from Plaintiff IBEW Local 38, Plaintiff Gonzales, and the Wisconsin Class as a result of its deception.

**ANSWER:**    Walgreens denies the allegations in Paragraph 423.

424.    Walgreens willfully and knowingly engaged in the untrue, misleading, and deceptive trade practices described above and knew or should have known that those practices were untrue, misleading, and deceptive in violation of Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18(1).

**ANSWER:**    Walgreens denies the allegations in Paragraph 424.

425.    The facts that Walgreens misrepresented and concealed were material to the decisions of Plaintiff IBEW Local 38, Plaintiff Gonzales, and the members of the Wisconsin Class about whether to pay for Walgreens' PSC Generics, in that they would not have proceeded with the transaction but for Walgreens' untrue, misleading, and deceptive acts and practices.

**ANSWER:**    To the extent Paragraph 425 relates to how members of the putative Wisconsin class would have behaved, Walgreens cannot know this and therefore it lacks sufficient knowledge to admit or deny those allegations.  Walgreens denies the remaining allegations in Paragraph 425.

426.    Walgreens intended for Plaintiff IBEW Local 38, Plaintiff Gonzales, and the members of the Wisconsin Class to pay for PSC Generics in reliance upon Walgreens' untrue, misleading, deceptive acts and practices.

**ANSWER:**    Walgreens denies the allegations in Paragraph 426.

427. As a direct and proximate result of Walgreens' untrue, misleading, and deceptive acts and practices, Plaintiff IBEW Local 38, Plaintiff Gonzales, and the members of the Wisconsin Class were deceived into paying artificially inflated prices for PSC Generics and have been damaged thereby.

**ANSWER:** Walgreens denies the allegations in Paragraph 427.

428. Walgreens is therefore liable to Plaintiff IBEW Local 38, Plaintiff Gonzales, and the members of the Wisconsin Class for the damages they sustained, plus statutory damages, penalties, costs, and reasonable attorneys' fees to the extent provided by law.

**ANSWER:** Walgreens denies the allegations in Paragraph 428.

## TWENTY-NINTH CLAIM FOR RELIEF

### Declaratory and Injunctive Relief
**Asserted by Plaintiff IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Steamfitters Local 439, and Plaintiffs Forth, Russo, and Bullard on Behalf of the Classes**

429. Plaintiffs IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Steamfitters Local 439, and Plaintiffs Forth, Russo, and Bullard reallege each and every allegation contained above as if fully set forth herein.

**ANSWER:** Walgreens repeats and realleges its answers to the allegations in the preceding Paragraphs as if fully set forth herein.

430. Under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief based upon such a judgment. Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the state statutes described in this complaint.

**ANSWER:** Walgreens admits that the Declaratory Judgment Act, 28 U.S.C. §2201, et seq. grants authority to "any court of the United States" to "declare the rights and other legal relations of any interested party" who files an appropriate pleading. Walgreens admits that such a court may grant "[f]urther necessary or proper relief based on a declaratory judgment or decree" subject to reasonable notice and hearing to the adverse party. Walgreens denies the remaining allegations in Paragraph 430.

431. During the Class Period, Walgreens' deceptive inflated U&C pricing scheme has been uniformly implemented as part of a concerted, years-long, pervasive campaign to mislead

consumers and third-party payors that is ongoing and continues to this day. Therefore, Plaintiffs IBEW Local 38, Plaintiff IUOE Local 295, Plaintiff Steamfitters Local 439, and Plaintiffs Forth, Russo, and Bullard face a substantial and imminent risk of future harm and will be injured in the future.

**ANSWER:** Walgreens denies the allegations in Paragraph 431.

432. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Walgreens' conduct continues to violate the statutes and laws referenced herein.

**ANSWER:** Walgreens denies the allegations in Paragraph 432.

433. The Court also should issue corresponding injunctive relief enjoining Walgreens from conducting business through the unlawful, unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint; and requiring Walgreens to implement whatever measures are necessary to remedy the unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint.

**ANSWER:** Walgreens denies the allegations in Paragraph 433.

434. Legal remedies are inadequate to address the substantial likelihood of future harm Plaintiffs IBEW Local 38, Plaintiff IUOE Local 295, and Plaintiff Steamfitters Local 439, and Plaintiffs Forth, Russo, and Bullard will sustain in making purchases of PSC Generics. While monetary damages will compensate Plaintiffs IBEW Local 38, Plaintiff IUOE Local 295, and Plaintiff Steamfitters Local 439, and Plaintiffs Forth, Russo, and Bullard for Walgreens' past misconduct, monetary damages will not prevent future misconduct, which Plaintiffs IBEW Local 38, Plaintiff IUOE Local 295, and Plaintiff Steamfitters Local 439, and Plaintiffs Forth, Russo, and Bullard have alleged is likely to occur.

**ANSWER:** Walgreens denies the allegations in Paragraph 434.

435. The hardship to Plaintiffs IBEW Local 38, Plaintiff IUOE Local 295, and Plaintiff Steamfitters Local 439, and Plaintiffs Forth, Russo, and Bullard if an injunction is not issued exceeds the hardship to Walgreens if an injunction is issued. Plaintiffs IBEW Local 38, Plaintiff IUOE Local 295, and Plaintiff Steamfitters Local 439, and Plaintiffs Forth, Russo, and Bullard and members of the Class will likely incur damages. On the other hand, the cost to Walgreens of complying with an injunction is relatively minimal, especially given its pre-existing obligation to do so.

**ANSWER:** Walgreens denies the allegations in Paragraph 435.

436. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by controlling skyrocketing prescription drug costs for hundreds of thousands, if not millions, of consumers and the third-party payors that pay for prescription benefit coverage for those individuals.

**ANSWER:** Walgreens denies the allegations in Paragraph 436.

## NOTICE TO STATE ATTORNEYS GENERAL

437.    Pursuant to applicable statutory provisions, a copy of the complaint filed on March 23, 2017 was mailed to the Attorneys General of Illinois, Louisiana, and Missouri with the filing of the complaint. See 815 Ill. Comp. Stat. Ann. 505/10a(d); La. Rev. Stat. §51:1409(b); Mo. Rev. Stat. §407.025(7) (West).

**ANSWER:**    Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 437.

438.    A copy of the amended complaint filed on June 22, 2017 was mailed to the Texas Consumer Protection Division pursuant to Texas Business and Commerce Code §17.501 and to the Attorneys General of Georgia, Massachusetts, and South Carolina. See Ga. Code Ann. §10-1-399(g); Mass. Gen. Laws Ch. 93A, §10; S.C. Code Ann. §39-5-140(b).

**ANSWER:**    Walgreens lacks sufficient knowledge to admit or deny the allegations in Paragraph 438.

## AFFIRMATIVE DEFENSES

Walgreens sets forth the following affirmative defenses to the allegations contained in the Second Amended Consolidated Class Action Complaint.

## FIRST AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every alleged cause of action therein fail to state facts sufficient to constitute a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every alleged cause of action therein fail to plead fraud with particularity.

## THIRD AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every alleged cause of action therein are barred, in whole or in part, by the applicable statute of limitations.

## FOURTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every alleged cause of action therein are barred, in whole or in part, by the equitable doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every alleged cause of action therein are barred, in whole or in part, by the equitable doctrines of laches.

## SIXTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every alleged cause of action therein are barred, in whole or in part, by the equitable doctrine of unclean hands. and/or waiver.

## SEVENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every alleged cause of action therein are barred, in whole or in part, by the equitable doctrines of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every cause of action alleged therein are barred, in whole or in part, for Plaintiffs' failure to mitigate damages.

## NINTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every alleged cause of action therein are barred, in whole or in part, by the "voluntary payment" doctrine insofar as Plaintiffs continued purchasing prescriptions from CVS after they knew or reasonably should have known of the alleged basis for their claims.

## TENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and each and every cause of action therein are barred, in whole or in part, by the Economic Loss Doctrine.

## ELEVENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that Plaintiffs have failed to and cannot satisfy the requirements for maintenance of a class action, including without limitation numerosity, typicality, adequacy, predominance, superiority, and ascertainability, as well as because public policy does not favor certification.

## TWELFTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that certifying a class, under the facts and circumstances of this case, would deny Walgreens its procedural and substantive due process rights.

## THIRTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that Plaintiffs lack standing to bring their claims, in whole or in part, and cannot adequately represent the putative class members.

## FOURTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that to the extent Plaintiffs and/or putative class members seek civil or statutory penalties, such claims violate the Excessive Fines Clause recited in and/or incorporated into the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution or the analogous state constitutional provisions.

## FIFTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and every cause of action alleged are barred in whole or in part by Plaintiffs' contributory or comparative negligence.

## SIXTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and every cause of action alleged are barred in whole or in part because any alleged damages are too remote and/or speculative to allow recovery.

## SEVENTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Walgreens alleges that the Complaint and every cause of action alleged are barred in whole or in part insofar as they seek to impose retroactive liability on Walgreens for acts that were previously authorize, permitted, and/or required by law.

## ADDITIONAL DEFENSES

Walgreens does not presently know all facts regarding the allegations by, and conduct of, Plaintiffs and/or putative class members sufficient to state all affirmative defenses at this time. Accordingly, Walgreens reserves the right to amend this Answer or otherwise assert additional affirmative defenses should it later discover facts demonstrating the existence of additional

114

affirmative defenses and hereby gives notice that it intends to rely upon other defenses as may become available or appear during discovery proceedings in this case.

### <u>WALGREENS' PRAYER FOR RELIEF</u>

WHEREFORE, Defendant Walgreen Co. prays as follows:

1. That this action be dismissed with prejudice and that Plaintiffs take nothing by their Complaint;

2. That judgment be entered in favor of Walgreens and against Plaintiffs regarding all causes of action;

3. That the Court award Walgreens reasonable costs and expenses including, but not limited to, attorneys' fees and costs of suit; and

4. That the Court award such other relief as may be appropriate.

Dated: <u>June 13, 2018</u>

Respectfully submitted,

**WALGREEN CO.**

By:     <u>/s/  Frederick Robinson</u>
        Frederick Robinson

Frederick Robinson (admitted *pro hac vice*)
Selina P. Coleman (admitted *pro hac vice*)
Megan Fanale Engel (admitted *pro hac vice*)
REED SMITH LLP
1301 K Street, NW
Suite 1000 – East Tower
Washington, DC 20005
Tel.: (202) 414-9200
Fax: (202) 414-9299
frobinson@reedsmith.com
scoleman@reedsmith.com
mengel@reedsmith.com

*Counsel for Defendant Walgreen Co.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Frederick Robinson, certify that, on June 13, 2018, **WALGREEN CO.'S ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** was electronically filed on June 13, 2018 and will be served electronically via the Court's ECF Notice system upon the registered parties of record.


*/s/  Frederick Robinson*
Frederick Robinson