**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DOROTHY FORTH, DONNA BAILEY, LISA BULLARD, RICARDO GONZALES, CYNTHIA RUSSO, TROY TERMINE, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WALGREEN CO.,<br><br>    Defendant. | Civil No.: 1:17-cv-02246<br><br>**JOINT STATUS REPORT** |

The Parties, through their respective counsel, respectfully submit for the Court's consideration the following Joint Status Report for the status hearing continued to January 23, 2019, at 10:45 a.m. (ECF No. 123.)

**I.  Deposition Dates for Individual Plaintiffs**

The parties have scheduled all of the individual Plaintiffs' depositions for the following dates and locations.

- Lisa Bullard – February 7, 2019 (Chicago, IL)

- Ricardo Gonzalez – February 12, 2019 (Santa Fe, NM)

- Troy Termine – February 22, 2019 (New Orleans, LA)

- Cynthia Russo – February 26, 2019 (Tampa, FL)

- Dorothy Forth – March 11, 2019 (Kilgore, TX)

Although Walgreens had asked for these depositions to take place in Chicago, where Plaintiffs filed the lawsuit, Walgreens agreed to take all but one of the depositions where the Plaintiffs reside based on information Plaintiffs' counsel provided about Plaintiffs' health conditions and other hardships. Walgreens set these dates contingent on receiving the individual Plaintiffs' documents by January 23, 2019.

## II. Production and Review of Discovery Materials

### A. Plaintiffs' Statement

Plaintiffs' counsel have been in the process of confirming that each individual Plaintiff has produced all of his or her responsive documents. On January 11, 2019, certain individual Plaintiffs made a subsequent production of documents to Walgreens. Plaintiffs' counsel are anticipating that they will be able to complete any remaining productions by January 23, 2019. Contrary to Walgreens' statement, Walgreens requested that Plaintiffs confirm that Ms. Bullard's document production be complete by January 23, 2019, so that her deposition can be taken on February 7, 2019. On January 15, 2019, Plaintiffs confirmed that Ms. Bullard's production was complete. On January 17, 2019, Plaintiffs confirmed that Mr. Gonzales' document production was complete. Plaintiffs' counsel have collected and produced all hard copy documents from the Third Party Payor ("TPP") Plaintiffs that do not require consent. Plaintiffs' counsel is in the process of obtaining the requisite consents, as applicable. Plaintiffs' counsel have collected over 1 million electronic documents from the TPP Plaintiffs and are in the process of reviewing such documents. Plaintiffs' counsel intend to make rolling productions of the TPP Plaintiffs' responsive documents commencing the week of January 14, 2019, and will be able to complete such productions by the week of February 4, 2019. To date, Plaintiffs have produced 495 documents.

**B.     Defendant's Statement**

Walgreens has collected over 4.3 million documents to date, of which over 1.15 million documents were identified based on applying the agreed search terms. These numbers include documents from the additional custodians agreed to by the parties in November 2018. To date, Walgreens has reviewed over 486,000 documents. That includes an additional 59,000 documents since the December 20 status conference, many of which are lengthy Pharmacy Benefit Manager (PBM) contracts that require redactions to comply with third-party conditions for production and, therefore, take considerable time to review. To expedite Plaintiffs' review of documents that Plaintiffs have identified as potentially relevant to their deciding whether to seek to amend the pleadings, Walgreens has prioritized the review and production of these PBM contracts and communications. To date, Walgreens has made 12 productions of over 77,000 pages, and expects to make an additional production by January 22, 2019.

Based on the high volume of documents yielded by the original search terms, Walgreens has been working on additional ways to expedite the document review, including utilizing predictive-coding. Specifically, Walgreens is aiming to reach a cut-off point in review (described further below, and subject to potential objections by Plaintiffs), that allows it to substantially complete its production by April 30, 2019. This substantial completion date, which is based on the assumption that Walgreens will be using predictive coding, excludes documents that will require additional privilege review, some documents that may require confidentiality redactions, and any contract documents that are not subject to the Walgreens' proposal to limit these to be proportional to the needs of the case, as set forth in Section V.A.

### III. Use of Predictive Coding

#### A. Plaintiffs' Statement

Since the inception of this action, consistent with best practices and the Sedona Conference Principles, Plaintiffs have sought to engage Walgreens in an iterative process to discuss the use of predictive coding, technology assisted review ("TAR"), and the search terms that both sides will apply to identify documents responsive to their respective document requests. In August 2017, Walgreens agreed that it was "willing to engage in discussions about an iterative process to discuss the use of predictive coding, TAR, and the search terms that both sides will apply to identify documents responsive to their respective document requests."

In August 2018, Walgreens proposed to use 26 search terms to search for responsive documents. Of the 26 terms, 14 were variations of the Plaintiffs' names. Plaintiffs proposed that Walgreens add two additional terms related to capture documents related to PBMs, which Walgreens agreed to add. Though Walgreens now reports that Plaintiffs have "insisted" on the use of such terms, at no point since the parties agreed upon the terms has Walgreens sought to meet and confer to discuss modifying the terms, proposed modifications to any of the terms, or provided Plaintiffs with a hit report identifying how many documents are responsive to each term. Plaintiffs remain committed to an iterative process and are willing to meet and confer regarding the use of terms.

Plaintiffs are also willing to engage in an iterative, collaborative process as to the use of TAR, however, Walgreens has not provided Plaintiffs certain basic information to understand and determine whether Walgreens' proposed use of TAR will properly yield responsive documents. During meet and confers in August 2018, Walgreens informed Plaintiffs that it was using predictive coding for the limited purpose of prioritizing the documents it was reviewing. Plaintiffs requested, to the extent that Walgreens intended to use predictive coding to exclude documents

from review, that it identify the predictive coding used, the methodology employed, if seed, training, and validation sets are being used to train its predictive coding algorithm, and if the predictive coding is being used in any way to determine relevance or responsiveness of documents collected. In response, Walgreens confirmed that it was not using predictive coding to exclude documents, and stated that it would confer with Plaintiffs before so applying predictive coding.

On December 20, 2018, Walgreens informed Plaintiffs via email that it would apply TAR to documents hitting on search terms that Walgreens has yet to review, and to any additional documents that hit on the parties' agreed-upon search terms. Plaintiffs carefully analyzed the summary TAR proposal provided by Walgreens on that date, and on January 3, 2019, provided Walgreens in a responsive email with a detailed list of questions and requests for additional information needed by Plaintiffs in order to properly evaluate Walgreens' proposal. On January 8, 2019, Walgreens responded to Plaintiffs' correspondence with certain information, but refused to provide information as to many material aspects of its TAR proposal that Plaintiffs had requested Walgreens to provide. On January 14, 2019, the parties held a telephonic meet-and-confer to further discuss Walgreens' TAR proposal, where Plaintiffs expressed their concerns regarding the information that Walgreens refused to provide, a concern that is heightened by the fact that Walgreens has decided to employ TAR halfway into the discovery period, after rejecting Plaintiffs' request to employ that process at the outset when discovery first began. At the conclusion of the meet-and-confer, Walgreens advised Plaintiffs that it would provide additional information on its TAR proposal within the next two weeks and further consider Plaintiffs' outstanding requests for information.

Plaintiffs believe their requests are reasonable and that providing the information requested will facilitate the parties agreeing on reasonable parameters to serve the purpose of an efficient

review that identifies the relevant documents Plaintiffs seek in a timely and cost-effective manner. On January 17, 2019, Plaintiffs provided Walgreens with a proposed set of guidelines they developed for the TAR process for its review and comment. The guidelines address the various types of information that Plaintiffs would like Walgreens to provide in order to properly evaluate the TAR process and address the concerns Plaintiffs relayed to Walgreens on their telephonic meet-and-confer. Walgreens has not yet provided feedback on Plaintiffs' proposed TAR guidelines.

While Plaintiffs believe that Walgreens is working in good faith to reach an agreement on its TAR proposal, it has not yet provided the level of information that will ensure the level of transparency Walgreens promised to both Plaintiffs since the inception of the parties' discussions and the Court at the last status hearing.

### B. Defendant's Statement

Consistent with the Court's guidance at the last status conference, Walgreens has focused on how to best move forward with identifying the responsive documents among the over 1.15 million documents identified through the application of the agreed-upon search terms, many of which were added as a result of Plaintiffs requesting late last fall that additional custodians be added. Based on the review conducted to date, most of these documents have turned out to be nonresponsive.

Since the outset of this case, Walgreens has in good faith applied substantial resources to identify, review, and produce responsive documents yielded by very broad search terms that Plaintiffs have insisted be utilized despite Walgreens' requests to narrow some of the terms.

After having spent many months and substantial resources on human attorney review of more than 400,000 documents, having found a relatively low responsiveness rate and seeking to expedite the process impacted by the addition of new custodians, on November 30 – not December 20 – Walgreens advised Plaintiffs that it would like to discuss using predictive coding to further

accelerate the review process. Since that time, Walgreens has provided responses to each of Plaintiffs' written questions about the predictive-coding process, except where certain of Plaintiffs' questions or requests: (i) went beyond information to which Plaintiffs are entitled to (*i.e.*, questions regarding documents determined by human attorney review to be ***nonresponsive***), (ii) sought information Walgreens does not yet have (*i.e.*, a precise estimate of the percentage of responsive documents in the search-hit population), and (iii) were premature (*i.e.*, detailed information about a cut-off of human review in addition to the three validation techniques that Walgreens had described). Walgreens provided additional information on a January 14, 2019 call with Plaintiffs, which Walgreens viewed as a productive call that should support moving forward with this process. On that call, Walgreens (i) further responded to each of Plaintiffs' questions; (ii) agreed to explore further adjusting its review prioritization in response to Plaintiffs' requests; (iii) agreed to obtain and provide some additional information to Plaintiffs; and (iv) committed not to use predictive coding to exclude any documents from human review without first consulting with Plaintiffs and providing specific statistical and other information supporting that decision. On January 17, Plaintiffs sent an additional request for information, which Walgreens is in the process of evaluating.

Predictive coding technology has great potential to expedite the completion of discovery in this case, and Walgreens intends to leverage that technology. Although Walgreens will not abdicate to Plaintiffs its own responsibility for discovery, Walgreens will continue to be open and cooperative and, in particular, will further confer with Plaintiffs and take reasonable steps to satisfy any of Plaintiffs' legitimate concerns.

## IV.     Interim Discovery Deadlines

### A.     Plaintiffs' Statement

As noted in the Court's December 20, 2018, Minute Entry, "Plaintiffs likely will need to seek an extension of 2/28/2019 deadline for amending the pleadings and joining parties since written discovery is taking longer than anticipated."  ECF No. 123.  This expectation remains unchanged.  Since the last status hearing, Walgreens has made only *one* additional document production of 794 documents (from the 1.9 million documents that Walgreens represented it has collected).  As part of the cover letter associated with that lone production, Walgreens represented that it was "***still*** in the process of negotiating with PBMs with respect to producing their agreements with Walgreens that contain consent and notice requirements" (emphasis added).[1]  Such documents, beyond being responsive to Plaintiffs' document requests first served in August 2017, are likely to shed light on Walgreens' relationship with entities that may be joined as parties to this litigation.  Coupled with Walgreens' repeated representations that hundreds of thousands of documents await review, and that Walgreens cannot say when it will substantially complete document production for *any* of its custodians, including those identified in its Initial Disclosures, Plaintiffs will not be in a position to realistically evaluate the full scope of the case and whether additional parties may need to be joined before the February 28, 2019 deadline.  Plaintiffs accordingly intend to seek an extension that accounts for Walgreens' progress in reviewing and producing documents and fairly protects Plaintiffs' ability to prosecute their claims.

---

[1]     Walgreens also asked Plaintiffs to destroy five families of documents that were inadvertently produced with the incorrect confidentiality designations and without the necessary redactions.  Walgreens provided replacement files, and Plaintiffs have destroyed the original files as requested.

**B. Defendant's Statement**

While Walgreens does not agree that an extension of the date for amending the pleadings is warranted, Walgreens will agree to an extension to April 1, 2019.

**V. Other Issue**

The parties have several outstanding discovery issues that may ripen into disputes that the parties will ask the Court to resolve.

**A. Plaintiffs' Requests for Production of Documents**

1. <u>Plaintiffs' Position</u>

On August 24, 2017, Plaintiffs served their First Request for Production of Documents on Defendant. On September 25, 2017, Walgreens served its objections and responses. Per the Court's directive during the status hearing held on April 4, 2018 [ECF No. 94], on May 14, 2018, Plaintiffs' re-served their requests and re-styled them as First Amended Request for Production of Documents. On June 13, 2018, Walgreens served its objections and responses. Throughout July, August, and September, the parties exchanged correspondence regarding Walgreens' objections and responses, and engaged in several productive telephonic meet and confers, resolving disputes related to definitions and the scope of specific requests, the treatment of draft documents, and the collection from personal electronic devices. By early September, the parties had reached agreement on the search terms the parties would apply to their respective searches.

2. <u>Defendant's Position</u>

Walgreens agrees that the parties have been engaged in productive meet-and-confer discussions, and Walgreens has made a number of concessions in the spirit of cooperation, including the addition of custodians and search terms requested by Plaintiffs.

### B.     Structured Data

1.     <u>Plaintiffs' Position</u>

Since October 2017, Plaintiffs have been attempting to understand the structured data available in Walgreens' systems.  While staying discovery during the pendency of Walgreens' motion to dismiss, the Court permitted the parties to engage in meta discovery, "discovery into things like organizational structures during the relevant time period, the data systems, sources of information, potential custodians."  ECF No. 80 at 12.  The parties accordingly began meeting and conferring regarding such issues, including the data available in Walgreens' systems.  Walgreens stores data related to pricing and adjudication in three systems:  a system that the pharmacy uses at the counter (Intercom Plus), a system that houses accounts receivable and accounts payable data (PARS), and an Enterprise Data Warehouse (EDW).  Walgreens proposed to retrieve structured data only from the EDW as it was represented to be the central repository for the company that houses pharmacy transaction data.

In October 2017, Walgreens identified 14 "key fields" that it believed would be appropriate for a pull of structured data from the EDW.  After several additional meet and confers, in late November 2017 Walgreens produced two "data dictionaries," one from 2009 and one from 2017.  The 2009 data dictionary identifies 79 tables and 2316 target attributes, and the 2017 data dictionary identifies 217 tables and 3814 target attributes.  Neither dictionary was accompanied by mapping documents that identified how any of the tables or attributes related to industry standard codes promulgated by the National Council for Prescription Drug Programs ("NCPDP") relating to usual and customary pricing.  *See* Second Amended Consolidated Class Action Complaint [ECF No. 96] at ¶¶59, 63-64, 67-69.

After further meeting and conferring throughout 2018, the parties agreed that it would be beneficial to receive Rule 30(b)(6) deposition testimony to clarify the relationship between the

data dictionaries provided and the NCPDP's codes. Walgreens accordingly designated Christopher Dymon, Director of Third Party Operations at Walgreens, to testify regarding, among other things, "[t]he existence of Structured Data maintained by [Walgreens] relating to . . . the codes promulgated by the National Council for Prescription Drug Programs." During his October 5, 2018 deposition, however, Mr. Dymon testified that he had no personal knowledge of the EDW data dictionaries provided to Plaintiffs, nor had he reviewed them to prepare for the deposition. With limited exception, Mr. Dymon testified that he was not prepared to and could not testify regarding the existence of data in the EDW relating to the NCPDP codes.

After meeting and conferring regarding Mr. Dymon's testimony, to avoid the need to seek relief from the Court, Plaintiffs by letter dated October 12, 2018, asked Walgreens to create a document identifying how the NCPDP codes, which were stored in Intercom Plus, related to the tables and attributes appearing in Walgreens' EDW.[2] That crosswalk document was provided to Plaintiffs on December 21, 2018, following the last status hearing. Plaintiffs are continuing to review the document and will meet and confer further with Walgreens to identify the data fields that will be used for the parties' pull of structured data.

---

[2] Plaintiffs had, throughout 2018, met and conferred with Walgreens to understand the thousands of target attributes available in the EDW and had specifically sought production of mapping documents to explain how data associated with the NCPDP codes were stored in the EDW. Any such documents would have been responsive to Request No. 23, which requests "[f]or any Structured Data produced in response to any request herein, Documents sufficient to set forth: identification of the databases or sources of such information; all data dictionaries and mapping Documents necessary to correctly interpret all data produced, including the Prescription Drug Transactions data; all decoding Documents that facilitate the translation of values contained in the data; and mapping Documents or datasets connecting values in previous periods to their equivalent counterparts, to the extent that codes or values have changed over time, as the result of a database platform shift or redesign."

2.    Defendant's Position

In October 2017, Walgreens suggested that the Parties pull a sample of structured data with the same key fields that Walgreens itself uses to evaluate these matters.  Plaintiffs did not accept this offer and, instead, a year later, elected to depose a 30(b)(6) witness about various data fields. Although Walgreens had no obligation to create documents to respond to Plaintiffs' discovery requests about its data, Walgreens offered to create a mapping document - which did not previously exist- to explain how certain submitted fields are mapped onto fields retained by Walgreens as structured data. Plaintiffs then requested over 600 data points that took Walgreens' staff many weeks to prepare.

Walgreens maintains that the key fields it identified in October 2017 would enable the Plaintiffs to assess whether the Plaintiffs paid more for their drugs than the usual and customary prices, and whether it would have made a difference if Walgreens had submitted its PSC price as its U&C price for any particular claim.  Plaintiffs need nothing more.

C.    **Custodians**

1.    Plaintiffs' Position

The parties are also continuing to meet and confer regarding the identification and designation of document custodians.  To better understand which individuals might have relevant responsive documents, Walgreens agreed to provide Rule 30(b)(6) deposition testimony regarding its organizational structure and the role of various individuals.  During that deposition, Scott Schuler, Divisional Vice President of Contracting at Walgreens, testified that the individuals responsible for contractual relationships with TPPs were a "separate group all together" from the individuals with responsibility for the PSC.  (Schuler Dep. at 75:17-18 & 76:17-18.)  ("The negotiations with the PBMs is done in the pharmacy contracting group not in anything with the

PSC.")  Mr. Schuler further testified that specific individuals in the pharmacy contracting group were responsible for specific contractual relationships with specific TPPs.

Following the October 5, 2018 deposition, Plaintiffs accordingly requested that Walgreens identify the specific individuals who were responsible for the contractual relationships with Plaintiffs' health plans and PBMs.  On November 16, 2018, Walgreens stated that it would be "unable to determine" who served as the contract directors, managers, and analysts responsible for Plaintiffs' PBMs and health plans until Plaintiffs provided "a comprehensive list of all known PBM and health plan information (including the relevant BIN/PCN information to affiliate health plans with PBMs) for all Plaintiffs."  Following a December 14, 2018 meet and confer to clarify Walgreens' request, December 19, 2018, Plaintiffs provided a chart setting forth the BIN/PCN information for IBEW 38 and four of the five named individual Plaintiffs, along with their addresses, dates of birth, and plan beneficiaries.  On January 7, 2019, Plaintiffs supplemented their chart to provide such information for the remaining individual Plaintiffs and TPPs, as well as social security numbers for all individual Plaintiffs.  On January 14, 2019, Walgreens informed Plaintiffs that it was working to identify the individuals who would have had specific responsibility for Plaintiffs' PBMs and health plans.  Walgreens now states that it should no longer need to abide by that commitment.  Nothing in the December 20, 2018 conference should have altered the fact that Walgreens had previously committed to identifying these additional custodians based on providing Walgreens Plaintiffs' BIN and PCN information, thus, Walgreens' statement that Plaintiffs no longer sought such information is simply wrong.

Plaintiffs' requests were timely made following the October 5, 2018 Rule 30(b)(6) deposition and seek to confirm that Walgreens has identified the proper document custodians. Indeed, Walgreens has confirmed that it has no documents for two of the document custodians it

13

designated in the wake of Mr. Schuler's testimony, and it has yet to respond to Plaintiffs' request to provide information as to how many responsive documents exist in the files of the remaining custodians. By proceeding with the Rule 30(b)(6) deposition, the parties had fully contemplated further meeting and conferring regarding document custodians. Indeed, identifying document custodians was one of the primary rationales behind taking the Rule 30(b)(6) deposition in October 2018. Rather than to call an early end to those discussions, the parties should be allowed to continue meeting and conferring to ensure that the correct document custodians are identified and designated.

2.   <u>Defendant's Position</u>

Given the Parties' discussion before the Court at the December 20, 2018 conference, Walgreens is surprised that Plaintiffs, despite their representation to the Court, are still seeking that Walgreens search the data of additional custodians. At the December 20, 2018 status conference, the following exchange occurred:

THE COURT: I mean, you said you are just waiting on your information. So, we are not done with custodians yet.

MR. ALPERSTEIN: I think we have 23 right now. They said they have collected from 19.

THE COURT: Okay.

MR. GUGLIELMO: I think there might be some others, but we can go forward right now because we need to go ahead and just work with that on our discovery.

THE COURT: So, we can say we are done with custodians. You have 23. I mean, first, we are talking about custodians. You know, you want to move ahead. But we are –

MR. ALPERSTEIN: Your Honor, unless something comes up in discovery.

THE COURT: Right.

MR. ALPERSTEIN: That is the only reason why we would ever come back.

MR. GUGLIELMO: Right.

THE COURT: But if you -- if that comes up, then you can talk about it. It may be it may be something that is not necessary. It should have been done before, you know. There have got to be limits, too.

MR. ALPERSTEIN: Yes.

Nothing has "come up" in discovery since the last status conference that would warrant the addition of more custodians, something that would only delay Walgreens' substantial completion of document production. Plaintiffs knew on November 16 that Walgreens did not have the relevant information about the Plaintiffs' PBMs and TPPs to potentially identify certain custodians. Walgreens had been asking Plaintiffs for that information for more than a year, since the "meta-discovery" phase of this case, and Plaintiffs never provided it. At the time of the last status conference, Plaintiffs knew that Walgreens had requested and not received certain information, yet agreed that they were done with custodians. Thus, Walgreens considers the issue of custodians to have been resolved at the December 20, 2018 status conference and object to Plaintiffs' raising this issue again in this Joint Status Report.

### D. Plaintiffs' First Set of Interrogatories

#### 1. Plaintiffs' Position

On June 15, 2018, Plaintiffs served their First Set of Interrogatories, posing 13 interrogatories for Walgreens to answer. On July 16, 2018, Walgreens responded to Plaintiffs' Interrogatories. With limited exception, Walgreens invoked Rule 33(d), responding that documents that had yet to be produced or in many instances identified. Following an exchange of correspondence and several meet and confers that occurred throughout August, September, and October 2018, on October 29, 2018, Walgreens supplemented its responses to Plaintiffs' First Set of Interrogatories. On January 11, 2019, Plaintiffs posed several additional follow-up questions to Walgreens and continue to await responses.

2. Defendant's Position

Since Plaintiffs initiated meet-and-confer discussions relating to Walgreens' responses to Plaintiffs' First Set of Interrogatories, Walgreens has maintained that Plaintiffs' objections to Walgreens' responses are premature. Nevertheless, Walgreens agreed to supplement its responses on October 29, 2018, and did so. Two-and-a-half months later, Plaintiffs have now asked about two of these supplemental responses. Plaintiffs have requested a response by January 25, 2019. Walgreens will respond by that date.

**E. Plaintiffs' 30(b)(6) Deposition Notice**

1. Plaintiffs' Position

On June 25, 2018, Plaintiffs' served Walgreens with its Notice of Deposition Pursuant to Rule 30(b)(6). In their Notice, Plaintiffs identified 20 topics for examination. In August 2018, at Walgreens' request, Plaintiffs agreed to adjourn the deposition so that Walgreens could review and produce the documents represented to be necessary to prepare the appropriate witnesses. Plaintiffs also agreed to prioritize six topics for examination that focused on Walgreens' organization, the identity of key personnel responsible for the PSC and the setting of the usual and customary price, Walgreens' administration of the PSC, and the structured data available in Walgreens' systems. The parties agreed to proceed with the six topics identified based on the understanding that Walgreens would be able to identify and produce the documents associated with those topics. Walgreens represented that the identification of such documents would be necessary to prepare their witnesses. On October 5, 2018, Plaintiffs deposed two witnesses, Mr. Schuler, Divisional Vice President of Contracting at Walgreens, and Mr. Dymon, Director of Third Party Operations at Walgreens.

On January 15, 2019, Plaintiffs issued an amended 30(b)(6) notice re-noticing the remaining fifteen topics for examination. The parties never agreed that Walgreens would not be

subject to deposition discovery until its document production is complete and neither the Federal Rules of Civil Procedure nor any controlling case law require Plaintiffs' depositions and discovery to proceed prior to Defendant providing either Rule 30(b)(1) or Rule 30(b)(6) deposition testimony. Indeed, Walgreens' position is made further untenable by its claim that it also seeks to take Rule 30(b)(6) depositions of the TPP Plaintiffs despite the fact that it has yet to even issue a notice to identify the scope of testimony it seeks. Given Walgreens' acknowledgement that its ability to prepare witnesses is linked to its progress in identifying and producing documents, the current deficiencies in document production limit Plaintiffs' ability to receive testimony on the outstanding topics for examination. Plaintiffs will continue to work with Walgreens to identify topics where Walgreens can produce a prepared witness so that discovery is not further delayed. To the extent Walgreens refuses to produce any deposition witnesses, Plaintiffs intend to move the Court to compel Walgreens to provide witnesses to Plaintiffs' Rule 30(b)(6) deposition notice.

2. <u>Defendant's Position</u>

Walgreens objects to proceeding with this deposition as noticed.

When Plaintiffs served a 30(b)(6) notice not long after discovery launched, Walgreens objected to proceeding because neither Plaintiffs nor Walgreens would have the relevant documents to prepare for the deposition. Walgreens agreed only to proceed with six high-level topics that would require limited document production. This resulted in Plaintiffs taking a limited 30(b)(6) deposition on October 5, 2018.

Walgreens' objections to Plaintiffs proceeding with an additional 30(b)(6) deposition now has not changed. Although Plaintiffs seem to be willing again to proceed with limited topics, Walgreens will not agree to prepare corporate witnesses and have them testify at three, four, or

five separate 30(b)(6) depositions throughout the course of discovery rather than at one time on specific topics after the production of documents related to those topics is substantially complete.

Moreover, Walgreens is not willing to agree to proceed with this deposition until it completes taking Plaintiffs' depositions. Consistent with Walgreens' statements at the last status conference, the Plaintiffs' depositions should proceed first. They have fewer documents, and they brought the case.

Per the Court's order, all 30(b)(6) depositions for the Union Plaintiffs will be noticed by January 23, 2019. Given that the earliest that any of the Plaintiffs were available for deposition was in February, that the Individual Plaintiffs' depositions are scheduled through March, and that Plaintiffs have yet to substantially complete production of all documents from the Union Plaintiffs, Walgreens does not expect Plaintiffs' depositions to be complete until the end of April at the earliest. By that point, Walgreens expects to have substantially completed its document productions and the 30(b)(6) deposition may proceed.

### F.     30(b)(1) Depositions

#### 1.     Plaintiffs' Position

Plaintiffs have been unable to notice Rule 30(b)(1) depositions because, despite repeatedly requesting that Walgreens indicate when it expects to substantially complete its production of documents as to any of its custodians, it has yet to provide Plaintiffs with a response, stymying Plaintiffs' ability to adequately prepare to depose any individual fact witnesses.

#### 2.     Defendant's Position

Walgreens has the same position as above. No depositions of Walgreens employees or former employees should take place until after the completion of the Plaintiffs' depositions, which should be after the substantial completion of Walgreens' documents. As stated above, and with

the conditions described above, Walgreens expects substantial completion to occur by the end of April 2019.

### G. Third-Party Discovery

#### 1. Plaintiffs' Position

In September 2018, Plaintiffs served subpoenas for the production of documents and deposition testimony on nine non-parties. The non-parties fall into two categories: (1) three entities involved in the development or implementation of the PSC (Catalyst Health Solutions, Inc., Walgreens Health Initiatives, Inc., and WAGDCO, LLC); and (2) six entities serving as PBMs for the TPP Plaintiffs and other members of the putative Class. Although Plaintiffs have received limited productions from certain of the non-parties, they have all objected to the production of the majority of documents requested by Plaintiffs, primarily on the basis that Plaintiffs should be required to obtain those documents from Walgreens. The documents sought by Plaintiffs' subpoenas are also the subject of Plaintiffs' First Amended Request for Production of Documents to Walgreens. Plaintiffs are unable to take the depositions of the non-parties until those documents are produced, and have advised Walgreens of same. Accordingly, Plaintiffs have requested Walgreens to produce those documents as soon as possible so that Plaintiffs can proceed with scheduling the depositions of the non-parties. While Walgreens has produced some of those documents to Plaintiffs, there are still large gaps in Walgreens' production, and Walgreens has been unable to provide Plaintiffs with a date that its production pertaining to the non-parties will be substantially complete.

#### 2. Defendant's Position

As set forth above, Walgreens has prioritized these documents based on discussions with Plaintiffs, including through the application of predictive coding and through the time-intensive

review and redaction of the relevant contracts. Walgreens' proposal with respect to PBMs/TPPs would expedite this process.

### H. Defendant's Discovery Requests

#### 1. Defendant's Position

On August 28, 2018, Walgreens sent correspondence to Plaintiffs challenging their objections and responses to Defendant's First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admission. Walgreens raised a number of concerns that included the improper withholding of documents. The parties met and conferred on September 7, 2018, and Plaintiffs' counsel indicated he would investigate provide updates to allow Walgreens to understand whether documents were being withheld or whether certain documents did not exist. For the next several months, Walgreens' counsel requested the status of the information discussed in the September 2018 meet and confer. On December 13, 2018, Plaintiffs' counsel sent a response, but did not specifically address which documents were being withheld and which documents did not exist.

To date, Plaintiffs have not supplemented their responses to Walgreens' discovery requests nor resolved any of Walgreens' concerns identified by its August 2018 letter and discussed in the September 2018 meet and confer. Now that Plaintiffs have completed collections and expect to complete discovery within a matter of weeks, Plaintiffs should provide written confirmation that they have produced all of the documents that Walgreens requested and that Walgreens discussed in its August 2018 letter, and provide specific written confirmation of which documents were determined not to exist.

#### 2. Plaintiffs' Position

On December 19, 2018, at Walgreens' request, Plaintiffs produced to Walgreens a production chart identifying information pertaining to each Plaintiff, including name, address,

beneficiary information, PCN/BIN information, and any relevant PBM information for each of the Plaintiffs except for Plaintiff International Union of Operating Engineers Local 295-295c Welfare Fund. Thereafter, on January 7, 2019, Plaintiffs updated the production chart with BIN/PCN information for Local 295 and the social security information for the consumer Plaintiffs.

On January 3, 2019 Plaintiffs served Walgreens with their supplemental initial disclosures identifying numerous additional witnesses with knowledge of the claims and defenses.

The issues set forth in Defendant's August 2018 letter have, contrary to what Walgreens represents above, either been resolved or are the subject of continued meet and confers. Plaintiffs' December 2018 written response actually followed additional written and telephonic correspondence with Defendant in the intervening months. And, as promised, their additional collections and production of relevant, non-privileged documents described herein have responded to Defendant's requests. Plaintiffs have also provided updated Rule 26(a) disclosures to identify all relevant custodians for the TPP Plaintiffs, as stated in their December letter, and confirmed no Plaintiff was ever a member of any other pharmacy discount savings program. Plaintiffs' December 2018 correspondence further confirms they would respond to any premature requests by the Defendant for expert discovery in accordance with the Federal Rules of Civil Procedure, Court Order, or agreement of the parties. And Plaintiffs have continued to collect and produce relevant documents – including ESI searches by third party vendors, and confirm the completion of such by multiple Plaintiffs, during January 2019 as well. To the extent Walgreens believes that Plaintiffs have not fully responded to the questions it raised in its August 2018 letter and subsequent meet and confer, Plaintiffs remain available to continue their meet and confer discussions and determine if any actual disputes exist.

Plaintiffs have provided written confirmation that Plaintiffs Bullard and Gonzales have produced all their responsive documents. To the extent that Walgreens seeks that Plaintiffs identify those documents that are being withheld on the grounds of privilege, Plaintiffs will be doing so on a rolling basis and will provide a final privilege log once they complete their production of documents.

To the extent that Walgreens seeks Plaintiffs to identify request by request specific written confirmation for documents that do not exist, nothing in the Federal Rules of Civil Procedure requires such a statement. Indeed, Plaintiffs are only required to identify that they have produced documents in their possession, custody or control, thus a request that Plaintiffs confirm that documents do not exist would require Plaintiffs to inquire of third parties, such as other former insurers, whom Plaintiffs do not have control over, to confirm that they do not have responsive documents.

### I. Deadline for Motions to Compel

The Court asked the Parties to propose an approach for motions to compel in this matter. The parties agree that absent good cause shown, all motions to compel should be filed 60 days prior to the close of discovery.

### J. Defendant's Request to Limit the Number of Contracts

#### 1. Defendant's Position

Walgreens asked Plaintiffs to limit its request for the production of contracts between Walgreens and PBMs to those contracts with the PBMs that adjudicated the claims of the Union Plaintiffs and those upon which Plaintiffs served non-party subpoenas, which are: Caremark, LLC; Catalyst Health Solutions, Inc.; Express Scripts, Inc.; LDI; Medco Health Solutions, Inc.; MedImpact Healthcare; MedTrak Services, LLC; Optum, Inc.; SavRx; WAGDCO, LLC; and Walgreens Health Initiatives, Inc. To date, Plaintiffs have refused Walgreens' request.

Plaintiffs served discovery that broadly seeks all Walgreens' contracts with PBMs and TPPs that relate to prescription reimbursement. Walgreens has so far identified 111 PBMs/TPPs and over 18,000 contracts or related documents that are potentially responsive to Plaintiffs' requests. To review over 18,000 documents – which primarily relate to PBMs/TPPs that have nothing to do with this case – would be disproportional to the needs of this case. Further, 80% of the prescription drug claims in the United States are handled by five PBMs (Caremark, Express Scripts, Medco, MedImpact, and Optum) and one TPP (Aetna).[3] All five of these PBMs are covered by Walgreens' proposal. To review over a hundred additional PBM/TPP arrangements – each of which may implicate thousands of documents – would result in diminishing returns, in addition to the production of many thousands of documents that are wholly irrelevant to this lawsuit.

To date, Plaintiffs have only agreed to limit the production of contracts to those contracts pertaining to usual and customary pricing in the context of prescription medication. This proposal would likely still require a review of almost all of the 18,000 contracts and amendments, as "usual and customary" is a term that appears frequently in agreements. Moreover, to produce a base agreement that addresses "usual and customary" without the amendments that extend the agreements, often in place for decades, would be unhelpful to either party. And since virtually every agreement has a confidentiality clause, Walgreens would need to coordinate with over 100 PBMs/TPPs. As a condition for providing consent, most of the PBMs and TPPs require that Walgreens redact any financial terms from agreements that often span hundreds of pages.

---

[3]     Notice of Motion for Summary Judgment and Motion for Summary Judgment; Memorandum of Points and Authorities in Support Thereof at 12; *Corcoran, et al. v. CVS Pharmacy, Inc.*, No. 4:15-cv-03504 (N.D. Cal June 6, 2017), ECF No. 271.

Walgreens already has expended hundreds of hours, and expects to expend hundreds more, redacting documents related to the dozens of PBMs/TPPs that it has contacted to date.

Walgreens has presented a solution, proportional to the needs of this case, to produce only the contracts and related documents for the PBMs that adjudicated the claims of the Union Plaintiffs or have been served a subpoena by Plaintiffs. If Plaintiffs were truly interested in allowing Walgreens to substantially complete production by April 30, 2019, while producing all documents that Plaintiffs truly need, they would agree to the proposal. If the parties are unable to work out their differences, Walgreens will file a motion asking the Court to adopt Walgreens' proposal. Walgreens is also happy to discuss this issue during the January 23, 2019 status conference if the Court believes that might assist the parties in resolving the issue without the need for motion practice.

2.    Plaintiffs' Position

Plaintiffs have requested that Walgreens produce its contracts and communications with PBMs and TPPs relating to usual and customary pricing and prescription drug purchases, among other subject matters. This request was made as part of Plaintiffs' First Amended Request for Production for Documents, which was served on May 14, 2018, and responded to by Walgreens on June 13, 2018. At no point in time during any of the meet and confers that took place over the following months did Walgreens advise Plaintiffs that it would be limiting the production of the contracts or communications sought by Plaintiffs in any manner. In fact, during those meet and confers, Walgreens assured Plaintiffs that it would not withhold any contracts or communications based on the objections that it had asserted to Plaintiffs' discovery requests. Had Walgreens taken a contrary position, Plaintiffs would have moved to compel the production of the contracts and

communications sought at that time. Instead, the parties proceeded over the next few months with the understanding that *all* such contracts and communications would be produced by Walgreens.

As discovery proceeded, and Plaintiffs continued to raise issues with Walgreens' limited production of documents, as well as the impact it had on Plaintiffs' ability to prosecute their case, Walgreens advised Plaintiffs that it would prioritize the production of certain PBM/TPP contracts and communications pertaining to Plaintiffs plans and third-parties that Plaintiffs served with document subpoenas. Plaintiffs did not object to Walgreens' proposal. Then, on December 18, 2018, Walgreens requested that Plaintiffs agree that Walgreens need produce *only* contracts and communications pertaining to Plaintiffs' plans and third-parties that Plaintiffs served with document subpoenas. Notably, Walgreens did not claim that Plaintiffs were not entitled to the broader contracts and communications requested, rather, Walgreens stated that its proposed limitation would allow it to "expedite production of PBM contracts and communications."

However, the contracts and communications sought by Plaintiffs are not only relevant, but integral, to Plaintiffs' claims. Indeed, they pertain to the heart of Plaintiffs' case: the definition and understanding of usual and customary pricing in the context of prescription drugs and Walgreens' PSC. In fact, Walgreens repeatedly made reference to its contracts with TPPs in arguing for dismissal of Plaintiffs' claims. *See* Defendant Walgreen Co.'s Memorandum of Law in Support of Motion to Dismiss First Amended Complaint [ECF No. 54] at 7-8. Accordingly, it would be improper for Walgreens to limit its production, as proposed. Notwithstanding, as a compromise, Plaintiffs agreed to allow Walgreens to limit the production of contracts with PBMs/TPPs who Plaintiffs had not served with subpoenas to only those contracts pertaining to usual and customary pricing in the context of prescription medication. Any further limitation would prejudice Plaintiffs' ability to prosecute their case, and other than the slow pace of its

document production, Walgreens has not provided any legitimate basis for its proposed limitation

of relevant and responsive documents to Plaintiffs' document requests.

DATED: January 18, 2019

 s/ Frederick Robinson                          s/ Joseph P. Guglielmo
Frederick Robinson (*pro hac vice*)             Joseph P. Guglielmo (*pro hac vice*)
Selina Coleman (*pro hac vice*)                 Erin Green Comite (*pro hac vice*)
Michael Scott Leib                              Donald A. Broggi (*pro hac vice*)
Anthony Robert Todd                             Carey Alexander (*pro hac vice*)
**Reed Smith LLP**                              Julie A. Kearns (*pro hac vice*)
1301 K Street, N.W.                             **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Suite 1100 East Tower                           The Helmsley Building
Washington, DC 20005                            230 Park Avenue, 17th Floor
Telephone: 202-414-9200                         New York, NY 10169
*frobinson@reedsmith.com*                       Telephone: 212-223-4478
*scoleman@reedsmith.com*                        *jguglielmo@scott-scott.com*
*mleib@reedsmith.com*                           *ecomite@scott-scott.com*
*atodd@reedsmith.com*                           *calexander@scott-scott.com*
                                                *jkearns@scott-scott.com*
*Attorneys for Defendant Walgreen Co.*
                                                Jason H. Alperstein (IL Bar #0064205)
                                                Stuart A. Davidson (*pro hac vice*)
                                                Mark J. Dearman (*pro hac vice to be filed*)
                                                Eric Scott Dwoskin (*pro hac vice*)
                                                **ROBBINS GELLER RUDMAN**
                                                 **& DOWD LLP**
                                                120 East Palmetto Park Road, Suite 500
                                                Boca Raton, FL  33432
                                                Telephone: 561-750-3000
                                                *jalperstein@rgrdlaw.com*
                                                *sdavidson@rgrdlaw.com*
                                                *mdearman@rgrdlaw.com*
                                                *edwoskin@rgrdlaw.com*

                                                ***Plaintiffs' Interim Co-Lead Counsel***

James E. Barz (IL Bar #6255605)
Frank A. Richter (IL Bar #6310011)
**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone: 312-674-4674
*jbarz@rgrdlaw.com*
*frichter@rgrdlaw.com*

***Plaintiffs' Local Counsel***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 18th day of January, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
