1      <u>**TRANSCRIBED FROM DIGITAL RECORDING**</u>

2              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
3                       EASTERN DIVISION

4
       DOROTHY FORTH, et al.,              )  Docket No. 17 C 2246
5                                          )
                          Plaintiffs,      )
6                                          )
                  vs.                      )
7                                          )
       WALGREEN CO., et al.,               )  Chicago, Illinois
8                                          )  December 20, 2018
                          Defendants.      )  10:58 o'clock a.m.
9

10              TRANSCRIPT OF PROCEEDINGS - STATUS
          BEFORE THE HONORABLE SHEILA FINNEGAN, MAGISTRATE JUDGE

11

12     APPEARANCES:

13
       For the Plaintiffs:      ROBBINS GELLER RUDMAN & DOWD
14                              BY:  MR. JASON H. ALPERSTEIN
                                120 E. Palmetto Park Road, Suite 500
15                              Boca Raton, Florida 33432

16
                                SCOTT + SCOTT, ATTORNEYS AT LAW, LLC
17                              BY:  MR. JOSEPH P. GUGLIELMO
                                230 Park Avenue, 17th Floor
18                              New York, New York  10169

19
                    * * * * * * * * * * * * * * * * *
20
                        PROCEEDINGS RECORDED BY
21                         DIGITAL RECORDING
                    TRANSCRIPT PRODUCED BY COMPUTER
22
              **\*\*\* PLEASE NOTIFY OF CORRECT SPEAKER IDENTIFICATION \*\*\***
23     **NOTE:   FAILURE TO STAND NEAR THE MICROPHONE MAKES PORTIONS**
                     **UNINTELLIGIBLE AND INAUDIBLE**
24

25

```
 1   APPEARANCES   (Continued):

 2
     For the Defendants:       REED SMITH LLP
 3                             BY:  MR. MICHAEL S. LEIB
                               10 S. Wacker Drive, 40th Floor
 4                             Chicago, Illinois  60606

 5
                               REED SMITH LLP
 6                             BY:  MS. SELINA COLEMAN
                               1301 K Street, N.W.
 7                             Suite 1100, East Tower
                               Washington, DC  20005
 8
 9   Transcriber:              MS. JOENE HANHARDT
                               Official Court Reporter
10                             219 S. Dearborn Street, Suite 1744-A
                               Chicago, Illinois  60604
11                             (312) 435-6874

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE CLERK:  Case 17 CV 2246, Forth vs. Walgreen, et al

2  -- Walgreen Co, et al.  For status.

3          THE COURT:  Good morning.

4          MR. ALPERSTEIN:  Good morning, your Honor.

5          MR. GUGLIELMO:  Good morning, your Honor.

6          MR. ALPERSTEIN:  Jason Alperstein, from Robbins Geller

7  Rudman & Dowd, on behalf of the plaintiffs.

8          THE COURT:  Thank you.

9          MR. GUGLIELMO:  Good morning, your Honor, Joseph

10  Guglielmo with Scott + Scott, also on behalf of the plaintiffs.

11          THE COURT:  Thank you.

12          MS. COLEMAN:  Good morning, your Honor, Selina Coleman

13  with Reed Smith on behalf of Walgreen Co.

14          MR. LEIB:  And Michael Leib of Reed Smith on behalf of

15  Walgreen.

16          THE COURT:  All right.  Thank you.

17          I did have a chance to look at -- and I went through

18  the docket and I read in its entirety -- your April 2nd, 2018,

19  joint status report.

20          So, it is for -- that's what you called it, Joint

21  Proposed Discovery Schedule.

22          So, it looked like Judge Lee entered an overall fact

23  discovery deadline.  And you had some other dates that you were

24  proposing -- you know, for example, experts and other things.

25          Is that something you want?  I mean, it probably does

1  make sense to set the expert discovery schedule.  I mean, if

2  you are in agreement on it, right?

3          MR. ALPERSTEIN:  Yeah.

4          I think at this point only a few deadlines we had,

5  which was the fact discovery cutoff, class certification.

6          So, yeah, we don't have the rest of the schedule, but

7  that is one of the issues, I think, that has led us here

8  today.

9          Just because of some of the discovery issues, we were

10 uncertain whether we would be able to comply with certain

11 deadlines and whether we would need more time.

12         THE COURT:  Oh.

13         MR. ALPERSTEIN:  At the last status conference, Judge

14 Lee extended the deadline to the amendment of the pleadings.

15         THE COURT:  All right.

16         MR. ALPERSTEIN:  And, so, I think that is one overall

17 issue that we would like to discuss with your Honor, in light

18 of the discovery that has taken place today.

19         There are some issues that we identified for Judge Lee

20 in the last two status conferences.

21         THE COURT:  Okay.

22         Is there a -- I saw two transcripts.  I didn't have a

23 chance to read them.  Your case came in when it was, like, a

24 flood of cases.  And it has been crazy.

25         (Laughter.)

1          THE COURT:  So, I usually would have read those.

2          But, in any event, was the last hearing transcribed;

3     do you know?

4          MR. ALPERSTEIN:  I think it -- I think it -- was.

5          THE COURT:  Okay.

6          MR. ALPERSTEIN:  I don't know if anyone requested the

7     --

8          THE COURT:  All right.  Then that is fine.

9          Why don't you update me on what the issues are.

10          MR. ALPERSTEIN:  Sure.

11          So, I guess we can start two status conferences ago,

12     on August 28th.  That is when we advised Judge Lee that we had

13     a potential issue with the status of defendants' document

14     production.

15          We had been working together, meeting and conferring

16     on that; but, just given the pace of it, we were unsure of

17     whether we would be able to comply with certain deadlines.

18          The primary one that was coming up was the amendment

19     of the pleadings deadline.

20          And --

21          THE COURT:  But that was met, right, or no?

22          MR. ALPERSTEIN:  That was --

23          THE COURT:  Oh, you mean he gave you leave to amend?

24          MR. ALPERSTEIN:  Right.

25          Yes, so that one -- so, this was August.  The deadline

1   was in November.

2           THE COURT:  Okay.

3           MR. ALPERSTEIN:  So, we just kind of let the Court

4   know that the parties are continuing to, you know, meet and

5   confer; and, the document production is ongoing; but, that

6   might be something that would need to be revisited.

7           So, on November 6th was the next status conference and

8   we advised Judge Lee that since the prior status conference,

9   there really had been little progress in document production.

10          And since that time, only 9,000 additional documents

11  had been produced, and 12,000 in total; and, made an oral

12  (inaudible) motion for extension of the deadline to the

13  amendment of the pleadings.

14          The Judge recognized that discovery had not been

15  proceeding as quickly as he would have liked and extended the

16  deadline to February 28th.

17          During that status conference, I also asked that the

18  Court would monitor discovery a little bit more closely, to

19  ensure that we proceeded with discovery, as the Court had

20  envisioned, and we are able to meet the other deadlines that

21  had been pending.

22          And that is when the Court referred us to --

23          THE COURT:  Thank you.

24          (Laughter.)

25          MR. ALPERSTEIN:  -- to your Honor for today's status

1    conference.

2            THE COURT:  Okay.

3            MR. ALPERSTEIN:  And, I think, you know, there are a

4    lot of discovery issues that both sides have.

5            From the plaintiffs' perspective, there is one

6    dominating discovery issue; and, that is, that the discovery --

7    excuse me, the document production.  And --

8            THE COURT:  The timing of it as opposed to the receipt

9    of it?

10           MR. ALPERSTEIN:  Well, just the amount -- yeah, the

11   receipt of production.  And that has really impacted a lot of

12   other aspects of discovery at this point.

13           So, we have -- for example, we have -- noticed

14   30(b)(6) depositions.  We have only been able to take a limited

15   number of topics because of a lack of document production.

16           We have served subpoenas to third-parties.  And it has

17   hindered our ability to get documents from those third-parties.

18           They are, understandably, telling us to get them from

19   Walgreen's first before they go ahead and produce those.

20           And it has also precluded us from even really being

21   able to take or look at what 30(b)(1) depositions that

22   Walgreens, you know, would like to take.

23           And I have all of details of, you know, where

24   production has gone through for over the last, you know, few

25   months.  It has kind of been trickling.

1          But the real problem is that we are not sure where

2     they are with their document production.

3          THE COURT:  Yes.

4          MR. ALPERSTEIN:  We don't have a date for substantial

5     completion of document production.  That has been something

6     that we have been asking for.  And because we don't know where

7     they are in the production and when production will be

8     completed, we are really kind of in a bind as to, you know, how

9     we can take the next steps in discovery and whether we will

10    have sufficient time to complete discovery and be able to take

11    those depositions and get the documents that really need to

12    move this case forward.

13         THE COURT:  So, right now, it is not -- you don't have

14    a dispute about what should be produced, you would just -- you

15    would like it faster?

16         MR. ALPERSTEIN:  Yeah.

17         THE COURT:  And you would like to know, you know, when

18    are you going to think you are going to be done, based on the

19    progress to date.

20         MR. ALPERSTEIN:  Yes.

21         And, so, we certainly want a deadline date for the

22    substantial completion of discovery.  And we want to understand

23    where they are in the document production, so we can then

24    determine whether we can actually go forward with, you know,

25    more 30(b)(6) depositions or go ahead and notice some other

1   depositions.

2           We do want to take the depositions of these various

3   third-parties -- the Pharmacy Benefit Managers -- but we are

4   waiting for documents from Walgreens so we can go ahead and do

5   that.

6           So, we are just not sure whether what they have

7   produced is ten percent of what is out there; if it is more

8   than that; and, I think given the numbers that they have told

9   us of what is being collected and reviewed, it is -- we are

10  concerned because we have had a discovery period so far of

11  about six months.

12          THE COURT:  Right.

13          MR. ALPERSTEIN:  And it just seems on the pace that we

14  have had --

15          THE COURT:  That is what I was just going to ask, is

16  when the stay was lifted; and, then, actually discovery went

17  forward.

18          When was that, again?

19          MR. ALPERSTEIN:  That was in May.

20          MS. COLEMAN:  May 14th.

21          MR. ALPERSTEIN:  Yes.

22          And the first production was June 13th.

23          THE COURT:  Okay.  All right.

24          MR. LEIB:  Your Honor, this is Michael Leib.  I just

25  want to say one thing and, then, I will turn it over to

1   respond.

2           Counsel just represented that the Judge said on the

3   November 6th date that that discovery is not proceeding as fast

4   as he would like.  I don't recall that comment ever being said

5   by the Judge.

6           He did agree to extend the deadline for amending the

7   pleadings --

8           MR. ALPERSTEIN:  The date, right.

9           MR. LEIB:  -- but I don't ever recall him ever saying

10  that.  And I don't think he would have, because he referred it

11  to you.

12          There were discovery issues on both sides, that you

13  will hear.  And, so, I just wanted to clarify that issue for

14  the record.

15          THE COURT:  All right.

16          Go ahead.

17          MS. COLEMAN:  Yes, your Honor.  I would like to

18  provide a little context.

19          Discovery did launch in May, 2018, after the amendment

20  of the pleading -- after the last amended pleading.

21          Since that time, Walgreens had collected over 1.15

22  million documents.

23          There have -- initially, ninety percent of these are

24  agreed upon.  And about 500, or maybe even 2000, documents were

25  collected after the last status conference.

1          In November, the digital custodians were proposed and

2    some were agreed to with respect to -- you know, the current

3    number, we are now up to 23 custodians, that we have agreed to

4    provide documents for.

5          Currently, we do have 1.5 million documents.

6          As of the last status conference, over 300,000

7    documents have been reviewed.

8          At this point, over 400,000 documents have been

9    reviewed.  The responsiveness rate, because of the broad search

10   terms, is very low.  So, under five percent of documents have

11   been responsive.

12         And, so, we have produced over 16,000 documents to

13   date in eleven separate productions, including what we are

14   doing using predictive coding prioritized, so that all of the

15   documents that are most likely to be responsive, including the

16   documents that we have agreed would most likely facilitate

17   potential amended pleadings, are getting to them as quickly as

18   they are identified.

19         So, that has been our top priority, that the documents

20   we have discussed would most likely be relevant to the

21   plaintiffs to consider.  And, so, we are getting to those

22   first.

23         THE COURT:  Can you -- because I heard five percent

24   responsiveness and, then, I heard predictive coding.  And, so,

25   how are you using "predictive code," like that?

1          MS. COLEMAN:  Basically, it is for prioritization

2     purposes.

3          THE COURT:  Okay.

4          MS. COLEMAN:  We had discussed early on clearly to use

5     it, also, for culling purposes.  So, we have something that we

6     are going to be discussing further with opposing counsel.

7          So, just today, we were circulating some additional

8     information on that.

9          But, today, it is just the issue to try to get the

10    most responsive documents to them as fast as possible.

11         But only to provide, also, some context, as far as

12    what has been happening on the plaintiffs' side, they filed

13    this lawsuit in May, 2017.

14         There are currently -- it looks like there are going

15    to be five individual plaintiffs.

16         At this point, we have only received from them 169

17    documents.  We understand that there are four documents from

18    the searching of the five individuals.  There are no documents

19    for others.

20         And we understood that only recently were any

21    documents collected from the Funds' clients.  We are not aware

22    of any review that has been done.  We haven't received their

23    productions.  We don't have any sense of when the productions

24    will begin or when they will be complete.

25         We also have no assurances when the individual

1    documents will be complete.  We have asked for that before.

2              We would like to be done taking depositions that --

3    and we will talk about that further -- that we would like to

4    start those as soon as possible for the individuals.  They

5    shouldn't have that many documents.

6              We don't understand why, when this lawsuit was filed

7    in May 2017, we were having assurances that we have got a

8    wealth of documents for the five individuals that are

9    representatives in the class.

10             So, I think that there is an extreme imbalance here,

11   where we have already collected over 1.5 million documents.

12   There are 23 custodians right now.

13             Just yesterday -- or two days ago -- there was a

14   request to add additional custodians.  And, so, at this point,

15   that is a moving target.  They are still collecting.

16             We have been reviewing, since discovery on --

17             THE COURT:  How many additional were asked for?

18             MS. COLEMAN:  It would depend on the known.  And there

19   were certain individuals, who were working with the Funds'

20   clients.  But as far as the Pharmacy Benefits Managers and,

21   also, Ms. Ceric, is her name, at Walgreens, and anyone in her

22   position before or after, who really had been told, maybe a

23   month ago, that we did not believe would have potential

24   responsive information.

25             So, we are looking into that.  We will get back to

1   them.  But it shows that as of this week, there still is

2   discussion about the number of custodians in this case, that

3   would make it impossible at this point to say with certainly

4   that we'll complete production, until that is agreed upon.

5          THE COURT:  You mentioned the individual defendants.

6   What about the non-individual plaintiffs -- the entities that

7   they have produced or --

8          MS. COLEMAN:  They have not.

9          Mr. Alperstein and I talked about that in early

10  December, I believe, or maybe it was the last day of November.

11  He indicated that he had identified custodians.  We don't yet

12  know who they are.  They haven't yet been identified to us.

13         They were in the process of collecting documents.

14         I asked the volume.  He said they did not know yet

15  what the volume would be or when productions would begin.  It

16  was still in the early stages.

17         And this was late November, 2018, when we began our

18  collections in May of 2018, and began producing, as indicated,

19  in June of 2018, a month after discovery began.

20         That is the only document discovery.  We don't have --

21         THE COURT:  All right.

22         I will let opposing counsel refute your argument.

23         MR. GUGLIELMO:  Your Honor, this is Joseph Guglielmo.

24  I can address these issues.

25         With respect to the individual plaintiffs, we made

1   productions with all of the plaintiffs except for Mrs. Bailey.

2   And the reason --

3           THE COURT:  Are you done with the others, then?

4           MR. GUGLIELMO:  We are not entirely done, your Honor.

5   We are trying to confirm with the individual plaintiffs whether

6   they have any addition documents.

7           But the chase is not really that.

8           THE COURT:  All right.

9           I mean, I am guessing they don't have many.

10          What is your estimate when you are going to finish

11  with just the individual plaintiffs?

12          MR. GUGLIELMO:  The individual plaintiffs, your Honor,

13  it is a matter of confirming that we have looked in all of the

14  areas we need to look.

15          Most of these plaintiffs are elderly.  They don't have

16  e-mails.  So, we are just trying to get physical access to

17  certain documents that they may have in their possession, as

18  opposed to, like, searching for e-mails.

19          THE COURT:  You have done an estimate for how much

20  time you need?

21          MR. GUGLIELMO:  I would say probably in the next

22  thirty days we can let them know we will produce whatever is

23  left.  And it is really going to be an insignificant production

24  with respect to the individuals.

25          As to the one plaintiff, Ms. Bailey, her husband

1    passed away this summer.  And, so, we asked for, and Walgreens

2    provided us, an extension to respond to the discovery for her.

3           She has been, sort of, out of contact since her

4    husband's passing.  Obviously, for very good reasons.

5           At this point, we have been trying to discuss with

6    her, her dismissal from the case.  We haven't been able to

7    communicate with her.

8           So, at this point we think the best, sort of, step in

9    that process is to just voluntarily dismiss her without

10   prejudice.

11          If she ever comes back to us or she responds to us,

12   given the circumstances, obviously, we can, you know,

13   communicate or confer with Walgreens about having her brought

14   back in.  But we want to preserve her rights because we haven't

15   been able to communicate with her.  That has been the delay, at

16   least, as to Mrs. Bailey.

17          THE COURT:  Has someone actually gone to her house or

18   anything?

19          MR. GUGLIELMO:  We have been trying to communicate

20   with her, trying to call her.

21          We have had colleagues try to reach out to her at her

22   house.

23          THE COURT:  Okay.

24          MR. GUGLIELMO:  And --

25          THE COURT:  And maybe you should file the motion.

1   That will be up to Judge Lee.

2           So, it makes sense to me if you can't -- what is going

3   to happen is, if she is not complying with discovery, she is

4   going to be out.

5           MR. GUGLIELMO:  We circulated a proposed stipulation

6   of dismissal.  I believe Mr. Leib provided some comments while

7   we were on the way to the hearing.

8           We will take a look and call and speak with them and,

9   then, get something on file pretty quickly as to her.

10          That should address the individual plaintiffs.

11          As to the third-party payor clients, your Honor, you

12  know --

13          THE COURT:  Are those what we call the two categories?

14          We have got just individuals and, then --

15          MR. GUGLIELMO:  Yes, the two categories.

16          THE COURT:  Okay.

17          MR. GUGLIELMO:  So, we have three Fund clients,

18  third-party payor clients.  We have collected -- what we did is

19  we did a self-collection of certain types of low-hanging

20  documents, like contracts and things like that.  Those we have

21  -- those, essentially --

22          THE COURT:  How many are there?

23          MR. GUGLIELMO:  In terms of documents?

24          THE COURT:  No, third-parties.

25          MR. GUGLIELMO:  There are three Fund plaintiffs.

1            THE COURT:  Okay.

2            MR. GUGLIELMO:  So, we have done two forms of

3    collection.  One is, essentially, gathering up sort of our copy

4    of low-hanging-through documents.

5            Then we actually retained a vendor to collect

6    forensically from the three Funds.

7            And in response to Ms. Coleman's statement that we

8    have not identified who the custodians are, yes, we told them

9    that the individuals identified in the initial disclosures were

10   the initial custodians.

11           Since that time, after discussing the discovery

12   requests with the plaintiffs, we have now identified additional

13   custodians.  We can provide that information to them.

14           Of the custodians that we have now identified, in

15   addition to those identified in the initial disclosures, those

16   have been collected.

17           Between the Funds thus far, we have collected

18   approximately 1.2 million documents.  So, this is not an

19   insignificant thing.  And, essentially, what we have done is we

20   have collected their entire e-mail boxes.  We have collected

21   their -- essentially, their -- shared-driven documents.  And we

22   are running the search terms against that.

23           We had some technical issues which we ran into, your

24   Honor.  Essentially, some of the documents were encrypted

25   documents.

1          You know, e-mails and documents are encrypted because

2     they have a highly secured -- most of the Funds have highly

3     secured -- modes of communication.

4          THE COURT:  Okay.

5          MR. GUGLIELMO:  So, we had to deal with that issue.

6          The documents are now in our database; terms being run

7     against them; and, lawyers are going to now review for

8     relevance responsiveness, to make sure that we have those

9     documents.  You know, essentially, a queue-seeing process.

10         That probably will take about thirty days to do.

11         THE COURT:  Oh, that is pretty fast for a million-two

12    documents.

13         MR. GUGLIELMO:  Your Honor, the timing of the

14    production will depend on technical issues.

15         So, if we run into more technical issues, as we are

16    processing documents, obviously, we will reach out and let them

17    now.

18         But we have collected from these clients a significant

19    amount -- over-collected, I would say -- because we have

20    collected, for example, for IBW-38, Walter O'Malley, we have

21    collected his entire e-mails.  All right?

22         We have collected all of the documents in his

23    possession and --

24         THE COURT:  So, I mean, basically, you have done all

25    of the collection.  All you have to do is the reviewing.  And

1    you are predicting thirty days to finish that?

2              MR. GUGLIELMO:  Thirty days, I would say, your Honor,

3    roughly, given the holidays.

4              THE COURT:  Well, assuming longer if --

5              MR. GUGLIELMO:  Assuming longer, we are talking it may

6    be done by the beginning of February, I believe.

7              THE COURT:  Okay.

8              MR. GUGLIELMO:  But it is not some, you know,

9    insurmountable thing.

10             Again, if we run into technical issues or we identify

11   that, for some reason, we are not getting hits or we are

12   getting too many hits, we have already reached out and told

13   them that we will confer with them over, sort of, the results

14   in sets.

15             But that is really where we are with the Fund clients.

16   And we tried to do this in a way where, gathering up the

17   documents that are most readily available, we have those.

18             But the eDiscovery process took a few extra steps for

19   us because we just needed to work with the vendor.  We wanted

20   to make sure we did it forensically.

21             And, then, we also had to deal with issues like the

22   servers, because their e-mail servers, they don't just have

23   Outlook -- like, for example, I have Outlook.  And I can send

24   and receive.  They do everything through encrypted

25   communications.

1          So, we needed to deal with getting passwords and other

2     things, sort of technical hiccups that we had.

3          THE COURT:  Okay.

4          MR. GUGLIELMO:  But that is really where we are with

5     these plaintiffs.  And we are happy to provide what we have

6     just said to the Court in a correspondence or communication.

7          One other thing that, I think, Ms. Coleman asked us to

8     do was supplement our initial disclosures.  We are in the

9     process of doing that.

10         One of the technical, sort of, issues with that is as

11    we have gone back in time -- because the case goes back to

12    2007 -- we are trying to identify the correct individuals for

13    the initial disclosures.

14         So, our clients dealt with certain either PBMs or they

15    dealt with an intermediary that sort of dealt by the PBMs.

16         We are trying to be make sure we have those

17    individuals.  So, we will provide them the additional

18    information.

19         I would say we can provide it informally by the end of

20    this week; and, then, we can provide it formally within the

21    next week or so -- the initial disclosures and supplemental

22    disclosures.

23         THE COURT:  All right.

24         MR. LEIB:  Your Honor, first of all, on the documents

25    that they have already collected, last week in our meet and

1    confer they told us they would be producing all of the

2    plaintiffs' documents at one time.

3           I am not sure I understand that.  There should be

4    rolling productions.

5           THE COURT:  But if you are going to have them in sixty

6    days, does it matter that much?

7           MR. LEIB:  It does, your Honor.

8           THE COURT:  Okay.

9           MR. LEIB:  First of all -- let me take a step back

10   here.

11          I am a little mystified that they are first now

12   collecting the Fund documents.  We started collecting

13   immediately in May and producing within week or a month

14   thereafter -- a week or a month thereafter.

15          They are the plaintiffs.  They filed the lawsuit a

16   year-and-a-half ago.  And they have just collected 1.2 million

17   documents and haven't produced any of them.

18          THE COURT:  But why does it -- let's assume that you

19   are going to have their records in 60 days.  Why does it

20   matter?  I mean, you don't have --

21          MR. LEIB:  Well, first of all, I would be shocked if

22   they actually come back in 60 days.

23          THE COURT:  I probably would be, too, but we will see.

24   It sounded fast to me, but what do I know?

25          (Laughter.)

1           MR. LEIB:  And, so, I think there is going to end up

2    being delays.

3           We want to take the plaintiffs' depositions.  We want

4    to take plaintiffs' depositions first.

5           We gave them the right to take limited 30(b)(6) deps

6    early on certain topics, ahead of the plaintiffs' deps.  But,

7    now, before any other deps go forward, we want to take the

8    plaintiffs' deps.

9           We can't take the plaintiffs' deps --

10          MR. GUGLIELMO:  Your Honor, we have never agreed to

11   that.  There has never been an agreement that we would take

12   limited depositions, not just 30(b)(1)s.  That is just not

13   true.

14          THE COURT:  Well, let me stop.

15          So, some limited 30(b) -- did you say 30(b)(6)

16   depositions have been taken.

17          MS. COLEMAN:  Correct.

18          MR. LEIB:  Correct, your Honor.

19          THE COURT:  How many were done?

20          MS. COLEMAN:  Two individuals were designated on six

21   topics.

22          Of the original two, we focused on those that were

23   less document-intensive.

24          THE COURT:  Okay.

25          So, are those the only depositions that have been

1    taking place -- that have been done?

2           MR. LEIB:  Yes, your Honor.

3           Whether the plaintiffs have agreed to it or not, this

4    is what the defendants want.  And --

5           THE COURT:  So, now, you want to depose some

6    plaintiffs?

7           MR. LEIB:  Correct.

8           And we -- and it's pretty typical, your Honor.  As you

9    know, and as the defendants know, for the plaintiffs to go

10   first.

11          In a class action case, it is almost universal that

12   you get the plaintiffs' deps.  Then the named plaintiffs, they

13   should sit for their depositions.

14          We can't -- we initially wanted to do that in January.

15   They said they would be able to complete document production

16   in time for us to take them in mid-to-late February.

17          We said, "Okay."

18          But, now, from what it looks like, I don't know how

19   many of the 1.2 million we will get.

20          If -- let's take the individuals for a second.

21          Now, the individuals, they are saying it is going to

22   take them thirty days to confirm whether five individuals have

23   produced all of their documents.

24          That seems like a long time.  We would prefer it --

25   and have asked them to confirm -- at least substantial

1   completion by the middle of January, so that we can start

2   preparing to take those depositions in mid-February.

3           Then --

4           THE COURT:  Is there any objection?

5           I mean, why can't you schedule -- pick dates now for

6   the individual plaintiffs?  Because we know their production is

7   going to be done.

8           MR. ALPERSTEIN:  Your Honor, they only noticed -- they

9   only notified us on December 7th they want to start taking

10  these depositions.  It is not like they have been waiting

11  forever.

12          THE COURT:  But --

13          MR. ALPERSTEIN:  And in response to Mr. Leib's comment

14  that he is mystified, we proposed search terms.  It took a

15  while for us to negotiate the search terms that we were going

16  to run.  So, why would we run unilateral search terms against

17  production?  That didn't happen until September.

18          THE COURT:  I mean, I don't want to spend too much

19  time talking about the past and who did what.

20          MR. ALPERSTEIN:  Understood.

21          THE COURT:  You know?

22          So, here we are.

23          MR. ALPERSTEIN:  Yes.

24          THE COURT:  And it is fantastic that, at least for the

25  individual plaintiffs, you already got the material.  You are

1  going to confirm you have everything and it is going to be

2  done.

3          And, so, I hear what defendants say, they want to

4  depose plaintiffs.

5          MR. ALPERSTEIN:  We really want to depose their

6  witnesses, too.  And we have been waiting for a very long time

7  and --

8          THE COURT:  That is fine.

9          MR. ALPERSTEIN:  -- I don't understand what the

10 prioritization is.

11         THE COURT:  Hold on, counsel.

12         MR. ALPERSTEIN:  Sorry.  I apologize.

13         THE COURT:  We can't -- I get to interrupt you.  You

14 don't get to interrupt me.  You know how the rules work.

15         So, you know, if you are telling me that your position

16 is plaintiffs should not be deposed until your defense -- I

17 mean, you get to depose defendants' witnesses -- you know, you

18 can make that argument.

19         But if the defendants want to depose the individual

20 plaintiffs, they can do it.  They don't have many documents.

21 So, it may make sense for them to do that.

22         You certainly can't say, "You cannot -- " I don't

23 think -- "Judge, you should not allow any individual plaintiff

24 to be deposed until every defense document is produced and we

25 get to depose defendants."  All right?

```
 1              So, plaintiffs don't need the defense documents in
 2    order to answer questions, I wouldn't think -- your individual
 3    plaintiffs.
 4              MR. ALPERSTEIN:  No, your Honor.  And we are not
 5    saying that, either.
 6              THE COURT:  All right.
 7              MR. ALPERSTEIN:  I am not saying that.
 8              THE COURT:  So, are you objecting to them deposing --
 9    we are going to talk about the discovery you want and we are
10    going to get information and we are going to get a little bit
11    more.
12              But is there any reason we can't move ahead with the
13    individual plaintiffs' depositions, you know, soon, and get
14    those on the schedule?
15              MR. ALPERSTEIN:  We have been trying to --
16              THE COURT:  Is the answer "Yes" or "No"?
17              MR. ALPERSTEIN:  The answer is "Yes," we can --
18              THE COURT:  Okay.
19              MR. ALPERSTEIN:  -- get them scheduled --
20              THE COURT:  Okay.
21              MR. ALPERSTEIN:  -- based on the individuals' and
22    counsels' schedules.
23              THE COURT:  Okay.
24              So, you are going to talk about that.  I am going to
25    have one thing done.
```

1          And a joint status report is to block out dates, talk

2     with each other and talk with the individual plaintiffs, so

3     those can be scheduled.

4          So, again, I don't really want to talk about who is at

5     fault for the past.  I want to talk about next steps and what

6     is going to happen next.

7          So, in terms of the production from Walgreens, what

8     is -- I mean, I get you are getting more custodians and things

9     are evolving; but, based on the collection you have now -- if

10    that was all you had to produce -- and based on your progress,

11    do you have some idea of when you are going to be able to

12    produce?

13         MR. LEIB:  What we are starting to do, your Honor, now

14    is -- and we just sent them a predictive coding protocol -- it

15    depends on how many documents we end up needing to review.

16         What we have -- and we are continuing to do rolling

17    productions.

18         What we have told them is, "Let's get the plaintiffs'

19    deps set and let's confer, again, towards the end of January,

20    when we will have gone through the predictive coding, and gone

21    through and gotten a sense by that time, hopefully, how many

22    more documents we will need to review."

23         At that point, we will -- well, hopefully, we will

24    have finalized the custodians.

25         One of the issues on the custodians was --

```
 1              THE COURT:  Let me -- I mean, I just want to be, you
 2    know, concrete.
 3              So, you told me you have a collection so far of 1.15
 4    million and --
 5              MS. COLEMAN:  And, sorry, just to clarify, the 1.5
 6    million was hit -- that was on the search terms.  So, that is a
 7    broader number for that stuff --
 8              THE COURT:  All right.
 9              MS. COLEMAN:  -- for the collection review.
10              THE COURT:  So, when you are talking about now, of
11    trying to narrow that to what you are going to review --
12              MR. LEIB:  Correct.
13              THE COURT:  -- and are you -- and that process is
14    ongoing right now.
15              MR. LEIB:  Well, the predictive coding -- we are still
16    reviewing documents.  Every day we are reviewing documents.
17    But what we want now, is we want to put in place the predictive
18    coding --
19              THE COURT:  To try and narrow.
20              MR. LEIB:  -- to try and narrow.
21              So, I mean, the search terms were extremely broad.
22              THE COURT:  So, based on the reviews you have done
23    just using search terms, you have done a rolling production and
24    you are finding a five percent response rate.
25              MR. LEIB:  Right.
```

1          THE COURT:  And, based on how long it took you to

2    review 400,000 --

3          MR. LEIB:  And it will take many more months.  I mean,

4    we are just applying the predictive coding.

5          THE COURT:  Okay.

6          MR. LEIB:  So, if you want to apply the predictive

7    coding and try and -- you know, as we go through that, the

8    extensive -- you know, as we go through them, on the predictive

9    coding, it depends how less and less relevant the documents

10   start to become, you can start to get a sense of when you might

11   be able to complete the production.

12         Monday of this week -- or was it yesterday; I think it

13   was yesterday -- we got some information from them, that we

14   have been asking for, for a very long time, that will now allow

15   us to respond to them on whether there are additional

16   custodians.

17         We have been asking for this for months and we finally

18   got it yesterday.

19         So, we should be able to, based on the information

20   now -- hopefully, be able to -- finalize the number of the

21   documents.

22         The information that they provided to us was --

23         THE COURT:  When you say the finalize the number of

24   documents --

25         MR. LEIB:  I am sorry, the number of custodians.

1          THE COURT:  Oh.

2          MR. LEIB:  The information that they provided

3    yesterday wasn't fully complete.  They still have to complete

4    that information.

5          Hopefully, they can tell us today when they will be

6    able to give us the completion of the documents -- that

7    information -- but we need that information to finalize the

8    number of custodians.  We can't do that until we have that

9    information finalized.

10         So, it is a constantly moving target, unfortunately,

11   with the plaintiffs, who haven't done what they need to do, to

12   give us the information that would allow us to -- as an

13   example, on this one person.

14         THE COURT:  You know, let me stop.

15         So, let me hear from plaintiffs just on the -- are you

16   in agreement on the predictive coding?  It does seem to make

17   sense.

18         If they have a five percent response rate, after

19   reviewing 400,000 documents, I mean, something has to be

20   modified.

21         MR. ALPERSTEIN:  So, we were just told about the five

22   percent today.

23         We haven't had any substantive conversation about

24   predictive coding.  The ESI protocol requires them to work with

25   us in order to do that.

1          Certainly, by sending us an e-mail this morning of

2    what they plan to do -- I am not saying this is what we

3    proposed, this is what we are going to do -- it is certainly

4    not, you know, compliant with the ESI protocol.

5          But I just -- we just -- don't see a showing at this

6    point that predictive coding is necessary because it appears

7    that there has just been a delay in getting us the documents.

8          You know, obviously, predictive coding is used in many

9    cases.  I am not sure the amount of documents in this case

10   requires it.  But usually that happens on the front end of the

11   case.

12         Here, it seems that we have been trickling production

13   over the last six months.

14         Now, six months in, they decide, "Oh, we want to go

15   ahead and do predictive coding."

16         So, we, obviously --

17         THE COURT:  So, you --

18         MR. ALPERSTEIN:  -- have a concern about that.

19         THE COURT:  -- would be fine, if it takes longer, you

20   know, if you only get five percent responsive records, you are

21   fine with the manual process instead of trying to do predictive

22   coding --

23         MR. ALPERSTEIN:  Yes.

24         THE COURT:  -- which actually might make a lot of

25   sense.

1          But that is your position, to, "Let's just keep with
2     the manual process"?
3          MR. ALPERSTEIN:  Yes.
4          THE COURT:  No predictive coding.
5          And, you know, obviously, it takes longer and, you
6     know, we will deal with that.
7          MR. ALPERSTEIN:  So, typically, if I would -- when I
8     hear something, like, a five percent hit rate, that would then
9     force a meet and confer and we would further discuss search
10    terms and figure out maybe we have the wrong type of search
11    terms.
12         THE COURT:  It is a very long process.
13         MR. ALPERSTEIN:  Yes.
14         So, we just --
15         THE COURT:  There is the (inaudible) process.
16         MR. ALPERSTEIN:  Yes.
17         THE COURT:  And, then, we run samples.  And, then, we
18    try it, again.
19         MR. ALPERSTEIN:  Right.
20         THE COURT:  And, you know, let's just push this whole
21    deadline back a year at this point.
22         MR. ALPERSTEIN:  So --
23         THE COURT:  Really, it is going to be, you know --
24         MR. ALPERSTEIN:  Well, I just don't want to be in a
25    position, Judge, now --

1           THE COURT:  Do you do predictive coding, because --

2           MR. ALPERSTEIN:  Yeah, we have.  But I don't want to

3  be in a position that -- where you are using predictive coding

4  because they have not followed through with their obligation to

5  produce documents the way they have should have been doing from

6  the beginning of this case.

7           The real problem here is because we don't understand

8  and they can't tell us a timeline of when they will go ahead

9  and have documents completed, we are really unsure about

10  whether --

11           THE COURT:  Well, based on your current schedule.

12           MR. ALPERSTEIN:  Yes.

13           THE COURT:  Let's assume you are not going to do

14  predictive coding.

15           What is your estimate for when we will be done with

16  the review, based on the manual review of every single

17  document?  And just produce the five percent, or whatever it

18  is.

19           But we won't come back and do anything more.  I mean,

20  you get what you get.

21           MR. LEIB:  We can't possibly know, your Honor, because

22  we don't know the have (inaudible).

23           Right now --

24           THE COURT:  Well, you have the documents you have

25  collected.

1          MR. LEIB:  Oh, among the documents we have collected?

2          MS. COLEMAN:  It would be about 4,000 attorney days,

3    in other words, you know, to prepare a team to review their own

4    documents.

5          They have already invested over 10,000 hours in the

6    real documents.

7          It took over 10,000 hours to review the documents to

8    date.  And, so, that would be the anticipated timeline if we

9    did not do something.

10          And --

11          THE COURT:  I am not sure I get that.

12          So, 4,000 attorney --

13          MS. COLEMAN:  Days.

14          THE COURT:  Regular days?

15          MS. COLEMAN:  Yes, yes, exactly.  Exactly.

16          THE COURT:  All right.

17          Does that help you, counsel, to understand the

18    timetable?

19          MR. ALPERSTEIN:  Perhaps.  But I guess we are just not

20    in a position yet where we can really understand whether -- to

21    produce -- it would be necessary, or the circumstances under

22    which it is done.

23          It is a collaborative process.

24          THE COURT:  Right.

25          MR. ALPERSTEIN:  None of that has taken place yet.

1          THE COURT:  Right.

2          MR. ALPERSTEIN:  Certainly, it would be easy to --

3          THE COURT:  I mean, you could collaborate, but if your

4    position is, "We don't want even to talk about predictive

5    coding," then --

6          MR. ALPERSTEIN:  Yes.

7          THE COURT:  -- it's a (inaudible).

8          MR. ALPERSTEIN:  One of the reasons why we haven't,

9    from our perspective -- which we have not gotten any details

10   until this morning about it -- was because we wanted to

11   understand where they were in the document production.

12         We have asked this repeatedly and we have never gotten

13   a firm answer as to what percentage they have produced or

14   reviewed for production, and never got a sense of, you know,

15   the total number.

16         THE COURT:  Do you have it now?

17         MR. ALPERSTEIN:  Well, there is four -- well, there is

18   four -- custodians that they said they haven't yet collected

19   from in that 1.15 number.

20         THE COURT:  Are we done?  What is left to do with

21   custodians?

22         MR. LEIB:  Well, as far as identifying just --

23         THE COURT:  I mean, you said you are just waiting on

24   your information.  So, we are not done with custodians yet.

25         MR. ALPERSTEIN:  I think we have 23 right now.  They

1    said they have collected from 19.

2              THE COURT:  Okay.

3              MR. GUGLIELMO:  I think there might be some others,

4    but we can go forward right now because we need to go ahead and

5    just work with that on our discovery.

6              THE COURT:  So, we can say we are done with

7    custodians.  You have 23.

8              I mean, first, we are talking about custodians.  You

9    know, you want to move ahead.  But we are --

10             MR. ALPERSTEIN:  Your Honor, unless something comes up

11   in discovery.

12             THE COURT:  Right.

13             MR. ALPERSTEIN:  That is the only reason why we would

14   ever come back.

15             MR. GUGLIELMO:  Right.

16             THE COURT:  But if you -- if that comes up, then you

17   can talk about it.

18             It may be it may be something that is not necessary.

19   It should have been done before, you know.

20             There have got to be limits, too.

21             MR. ALPERSTEIN:  Yes.

22             And I --

23             THE COURT:  They don't have to chase every single

24   person.

25             MR. GUGLIELMO:  Right, your Honor.

1    MR. ALPERSTEIN:  So, it would be -- and I guess we,

2    obviously, would have to engage in this process, to figure out

3    exactly what we have in a predictive coding scenario; but, even

4    under that process, we are not sure what the timeline would be.

5         And just looking at the deadlines of what is coming

6    up, you know, if they are only able to, you know, finish their

7    production in a few months from now, well, we have a class cert

8    deadline of July.  We have a fact discovery deadline of August.

9         We noticed the 30(b)(6) --

10        THE COURT:  Well, the deadlines can be moved --

11        MR. ALPERSTEIN:  Yes.

12        THE COURT:  -- but my job is going to be to make sure

13   things get moving.  So, I am going to have regular updates,

14   whether by phone, joint status reports, or have you in.

15        Don't worry about that.

16        MR. ALPERSTEIN:  Okay.

17        THE COURT:  But I think at this juncture, for the next

18   steps, so we are -- you are done.  You don't need to talk more

19   about custodians.

20        MR. LEIB:  Great.

21        THE COURT:  Okay.

22        MR. LEIB:  That is very helpful, your Honor, and it

23   will allow us for sure to, you know, advance the date on which

24   we will be able to tell them when we will be able to be

25   substantially complete.

1          THE COURT:  Right.

2          MR. LEIB:  We can't say, but it will advance that date

3   by which we will be able to tell them.

4          THE COURT:  And I have got to have a date by which you

5   will tell them, but are you going to -- I would like you to

6   talk about predictive coding.  I mean --

7          MR. ALPERSTEIN:  Absolutely.

8          THE COURT:  -- you definitely don't want to do it, but

9   I think we should talk about it.

10         MR. ALPERSTEIN:  I don't have a, you know, a hundred

11   percent against it.

12         THE COURT:  Right.

13         MR. ALPERSTEIN:  We just need to understand more about

14   it.  The first information we got was this morning.

15         But we are happy, obviously, if that makes, you know,

16   sense here.

17         THE COURT:  Okay.

18         MR. ALPERSTEIN:  And I am pleased to hear that the

19   Court would consider potentially moving other deadlines

20   depending on, you know, the progress.

21         THE COURT:  I mean, I can't move Judge Lee's discovery

22   --

23         MR. ALPERSTEIN:  Right.

24         THE COURT:  -- deadlines; but, discovery deadlines, I

25   am sure, can be moved.

1          MR. ALPERSTEIN:  I think really what the -- you know,

2  what we both want is kind of just some clarity on timeline, on

3  both sides, so we can both, you know, finish up the discovery

4  that, you know, that we want to do.

5          For example --

6          THE COURT:  So, the timing of their production will

7  depend on the process.

8          MR. ALPERSTEIN:  Yes.

9          THE COURT:  If it turns out you can't agree on

10  predictive coding --

11          MR. ALPERSTEIN:  I understand that.

12          THE COURT:  -- you know, then I don't think I am going

13  to order it.

14          It may be that I am going to hear from you and you

15  might be saying, "Well, then, if we are getting a five percent

16  responsive rate, you know, it doesn't make sense to keep doing

17  something.  It should be tweaked."

18          But, obviously, you are going to confer with them --

19          MR. ALPERSTEIN:  Yes.

20          MS. COLEMAN:  Yes.

21          THE COURT:  -- first, instead of just going on and,

22  you know, investing all of this time for a five percent

23  responsive rate.

24          And I don't know, on the five percent response rate,

25  how important those documents are that you are getting.

1          If they are great and they are very important; if they

2     are responsive, but they are not, you know, all that fantastic

3     for the case, that makes a difference, too.

4          So, I don't know so far what you are getting, if it

5     is, you know, very helpful or not.

6          You might be -- I have heard parties come in here and

7     say, "They have given us a bunch of stuff.  It's useless."

8          MR. ALPERSTEIN:  Right.

9          THE COURT:  So, what is the point?

10         MR. ALPERSTEIN:  Some of them might be useless.  Some

11    stuff is good.

12         One of the issues is, like, for example, we have these

13    PBM subpoenas that we want -- I think we all want -- to go

14    ahead and schedule depositions.

15         We have certain documents from Walgreens'

16    communications and contracts with those PBMs.  But we are not

17    sure, you know, what percentage is complete as to that

18    production.

19         So, while there is some useful stuff, maybe only ten

20    percent of the useful stuff has been produced.  So, that is

21    something that, I guess, with this whole process, if we --

22    after we meet and confer, can speed that up.  Because we

23    certainly don't --

24         THE COURT:  And you can also tell them, as to the

25    extent it can be done, "We want you to prioritize -- "

1          MR. ALPERSTEIN:  And that is something --

2          THE COURT:  " -- this part of discovery."

3          MR. ALPERSTEIN:  That is something that I have been

4     doing.  It is just that we don't know whether they were at ten

5     percent, 20 percent, 80 percent.

6          THE COURT:  Right.

7          MR. ALPERSTEIN:  Certainly, we don't need every single

8     document.

9          But, I think, once we can work this production issue

10    out and get to a point where we can have a substantial date for

11    completion, then we can see when we can take, you know, the

12    rest of our 30(b)(6) depositions and schedule 30(b)(1)s and do

13    the third-parties ones.

14         And, then, we could -- the case can proceed.  We are

15    just at that point right now where we can't --

16         THE COURT:  So, I would like to set a date for a joint

17    status report, so you will have time to confer and, then, file

18    the joint status report.

19         What is your suggestion?  I know it's the holidays.

20         So, I will let you tell me.

21         If you need time for you to talk with each other and,

22    then, get me the joint status report.

23         I am fine with your agreements, disagreements.

24         MS. COLEMAN:  Early February maybe or maybe the end of

25    January?

1          MR. ALPERSTEIN:  The only problem that --

2          MR. GUGLIELMO:  Yes.

3          MR. ALPERSTEIN:  So, we have a deadline right now of

4    the 28th of February for -- to amend the pleadings.  I think

5    that would be something that we would raise with -- you know,

6    the Court may agree to extend that, given the parties'

7    continued meet and confers on this issue.

8          I guess an earlier January would be -- would be --

9    better.

10          MS. COLEMAN:  What about --

11          MR. LEIB:  Well, your Honor, why don't we suggest,

12    like, January 18th?

13          MS. COLEMAN:  18th.

14          MR. GUGLIELMO:  Two weeks from today.

15          THE COURT:  Okay.

16          So, January 18th, you file a joint status report.

17    So --

18          MR. ALPERSTEIN:  That makes sense.

19          MR. GUGLIELMO:  Yeah.

20          THE COURT:  All right.

21          And that will be, that you will have, hopefully,

22    confirmed dates for the individual plaintiffs.

23          You will let me know if you have got an agreement on a

24    protocol or, you know, ESI, or for predictive coding or some

25    other process or if you have disagreements about that.

1          MR. ALPERSTEIN:  Just one clarification, your Honor?

2          THE COURT:  Yes.

3          MR. ALPERSTEIN:  We discussed before the hearing --

4     and, obviously, we will discuss this after the hearing -- we

5     can get dates for the individual plaintiffs.

6          If they want dates for corporate designees of the

7     third-party payors, we need a 30(b)(6) notice.  And, then, we

8     can meet and confer on that.

9          We haven't received such notice.  So, we are willing

10    to work with them on that, as well, but we just need to know

11    the topics.  But we will --

12         THE COURT:  I think the sooner you get your 30(b)(6)s

13    noticed, the better.

14         MR. LEIB:  Yeah, we will get that out.

15         THE COURT:  Okay.

16         MR. LEIB:  But we will get the response.  We will get

17    it out now.  And if we need to amend it, we will amend it.

18         THE COURT:  Okay.

19         And in every status report, I think, we will have

20    updates on whatever discovery is going.

21         You might be modifying your process right now; but, I

22    think even while you are having these discussions, you are

23    going to keep reviewing documents, right?

24         MS. COLEMAN:  Yes.

25         MR. ALPERSTEIN:  Okay.

1              THE COURT:  So, you will provide an update on

2    progress?

3              MS. COLEMAN:  Absolutely.

4              And, your Honor, we have been prioritizing, so that

5    the documents that Mr. Alperstein mentioned are the ones that

6    we are getting out.  And we will continue to do so.

7              THE COURT:  Okay.

8              MS. COLEMAN:  Relating to the amendment to pleading,

9    that is correct.

10             MR. ALPERSTEIN:  And in the status report, the parties

11   could raise any other discovery issue --

12             THE COURT:  Yes.

13             MR. ALPERSTEIN:  -- that might be -- need to be

14   raised?

15             THE COURT:  Yes.

16             I mean, and I will set a hearing after that, because

17   there may be disputes and, then, you will be in.

18             I never want anybody to just come in and raise

19   something for the first time.

20             MR. ALPERSTEIN:  Yes.

21             THE COURT:  And, you know, not the day before, either.

22             So, by having a status report, you know, a couple of

23   days -- two, three days -- before the hearing, then everybody

24   will know what the issues are going to be.

25             So, if you file that on the 18th, then I will have you

 1    back -- unless you don't need it.  And you can tell me that in

 2    the joint status report.

 3              (Brief pause.)

 4              THE COURT:  So, Monday the court is closed -- Monday,

 5    the 21st, the court is closed.  It is Martin Luther King.

 6              You could come in on the 22nd or the 23rd.

 7              MR. LEIB:  Your Honor, I want to make sure.  Just a

 8    second.

 9              (Brief pause.)

10              MR. LEIB:  That is okay for me.

11              MR. GUGLIELMO:  Is the Court available on the 23rd, by

12    any chance?

13              MR. ALPERSTEIN:  I think we could make the 22nd

14    work --

15              THE COURT:  I don't know.

16              MR. ALPERSTEIN:  -- but the 23rd would be easier.

17              Would that work?

18              MR. GUGLIELMO:  Yes, that is fine.

19              THE COURT:  Yes, maybe I will move -- I have to be --

20    I have a hard stop at 11:45, but we can -- let's say 10:45.

21              MR. GUGLIELMO:  That is fine.

22              THE COURT:  Okay?

23              MR. ALPERSTEIN:  On the 23rd?

24              THE COURT:  On the 23rd, right.

25              MR. GUGLIELMO:  Perfect.

1          MR. ALPERSTEIN:  Thank you.

2          THE COURT:  All right.  What should I read, that will

3    be helpful?  I mean, I will read the Judge's -- Judge Lee's --

4    opinion.

5          I will look at some of the transcripts.

6          You have an ESI protocol.  I don't know if I need to

7    read that at this juncture or not.  It is agreed.  And I guess

8    that is going to be the protocol that discusses the search term

9    process and --

10          MR. ALPERSTEIN:  That will probably be whatever we do

11    end up agreeing with, which I guess would be a supplement to

12    their ESI protocol.

13          THE COURT:  All right.

14          If you end up having an agreement, you can, you know,

15    submit a proposed order --

16          MR. ALPERSTEIN:  Okay.

17          THE COURT:  -- whatever you want to call it.  And I

18    can just enter that even in advance of the status hearing.

19          MR. GUGLIELMO:  Otherwise, there has not really been

20    many transcripts yet.  Their motion to dismiss is pending, just

21    to give you the context of the case.

22          THE COURT:  Uh-huh.

23          MR. ALPERSTEIN:  Otherwise, there have been a couple

24    just brief, you know, status hearings that really, you know,

25    don't provide anything more than what you have just gotten from

1   us today.

2          THE COURT:  If there are any other interim orders,

3   even the expert discovery dates, if you want me to enter those,

4   why don't you just put those in the joint status report?

5          MR. ALPERSTEIN:  Okay.

6          THE COURT:  You know, those dates may change if the

7   discovery deadlines change; but, was the plan to do expert

8   disclosures before you file dispositive motions?

9          (No response.)

10         THE COURT:  I mean, you need experts for -- or nobody

11  has thought that far ahead maybe?

12         (No response.)

13         THE COURT:  All right.

14         If you don't want me to set those dates now, that is

15  fine.  We will do it later.

16         MS. COLEMAN:  We can do that later.

17         MR. ALPERSTEIN:  We can have -- yes, the way Judge Lee

18  just had a couple dates --

19         THE COURT:  All right.

20         MR. ALPERSTEIN:  -- but I think we initially proposed

21  a full schedule, so we can go ahead and do that.

22         THE COURT:  All right.

23         MR. ALPERSTEIN:  It makes sense.

24         THE COURT:  So, talk about it.  And if you want those,

25  put it in the joint status report and I can enter that.

1    I would like to have -- I mean, you have got a long

2 schedule here, but I don't want to get motions to compel late,

3 like, you know, thirty days before the close of discovery.

4    MR. ALPERSTEIN:  Right.

5    THE COURT:  So, ultimately, I am going to want a

6 deadline by which any motions to compel have been given to me.

7 And, so, you might want to talk about that.

8    You can even time it, you know, so many days before

9 the close of discovery, or whatever it is, so everybody knows

10 that there will not be any surprises right before the discovery

11 closes.

12    Is there anything else that anybody wants to raise?

13    (No response.)

14    THE COURT:  Okay.

15    So, I will see you on the 23rd.  Have a good holiday.

16    MR. ALPERSTEIN:  Thank you, your Honor.

17    MR. GUGLIELMO:  Thank you, your Honor.

18    MR. LEIB:  Have a good holiday yourself.

19    MS. COLEMAN:  Thank you, your Honor.

20                        *   *   *   *   *

21 I certify that the foregoing is a correct transcript from the
   digital recording of proceedings in the above-entitled matter,
22 to the best of my ability, given the limitations of using a
   digital-recording system.

23

24 /s/ Joene Hanhardt                   January 8, 2019
   Transcriber

25