IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOROTHY FORTH, DONNA BAILEY,* LISA BULLARD, RICARDO GONZALES, CYNTHIA RUSSO, TROY TERMINE,* INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>    v.<br><br>WALGREEN CO.,<br><br>      Defendants. | No. 17 C 2246<br><br>Judge John Z. Lee |

**MEMORANDUM OPINION AND ORDER**

In 2017, Plaintiffs Dorothy Forth, Lisa Bullard, Ricardo Gonzales, and Cynthia Russo ("Consumer Plaintiffs"), and Plaintiffs International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund, International Union of Operating Engineers Local 295-295C Welfare Fund, and Steamfitters Fund Local 439 ("the Fund Plaintiffs") (collectively, "Plaintiffs"), filed this putative class action against Defendant Walgreen Co. ("Walgreens").

---

\* Donna Bailey and Troy Termine are included in the caption of the Third Amended Complaint, but their claims were voluntarily dismissed prior to its filing. *See* Stip. Voluntary Dismissal Pl. Donna Bailey, ECF No. 124; Stip. Voluntary Dismissal Pl. Troy Termine, ECF No. 140.

Plaintiffs claim that Walgreens engaged in fraudulent pricing practices to artificially inflate the "usual and customary prices" reported to health insurance companies and related third-party payors, which caused Plaintiffs to overpay for generic drugs. Plaintiffs plead claims of fraud and unjust enrichment, as well as violations of state consumer-protection statutes in twenty states.[1] They also seek declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

Nearly three years after Plaintiffs filed their original complaint, they sought leave to file a third amended complaint asserting that Walgreens's scheme involved another category of generic drugs—called non-Value Priced Generics—in addition to the Value Priced Generics put at issue in the operative complaint. *See* Tr. Proceedings on 3/4/20, ECF No. 260. The Court permitted the amendment, and now Walgreens moves to dismiss the third amended complaint as it relates to the non-Value Priced Generics. For the reasons provided below, the Court grants the motion to dismiss.

---

[1] Plaintiffs allege violations of state consumer protection statutes in the following states: Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Louisiana, Massachusetts, Minnesota, Nevada, New Mexico, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, and Wisconsin. *See* Third Am. Consolidated Class Action and Jury Demand ("3d Am. Compl.") Counts III–XXVII, ECF No. 269.

2

I. **Background**

A. **Facts**[2]

The Court assumes familiarity with the facts of this case as set forth in detail in *Forth v. Walgreen Co.*, No. 17-CV-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018). Accordingly, the Court provides only those facts necessary to resolve Walgreens's motion to dismiss.

Walgreens is the largest retail pharmacy in the United States; in fiscal year 2016, it filled 928.5 million prescriptions[3] and earned approximately $56.1 billion in pharmacy sales in the United States. Pls.' Third Am. Consolidated Class Action Compl. and Jury Demand ("3d Am. Compl.") ¶ 7, ECF No. 269. In 2006, major retailers with pharmacy departments like Target and Walmart began offering hundreds of generic prescription drugs at reduced prices—for example, $4 for a 30-day supply and $10 for a 90-day supply—likely because pharmacy sales represented a low percentage of the retailers' total sales and they were able to absorb the lower margins. *Id.* ¶¶ 66–67.

In 2007, Walgreens created the "Prescription Savings Club" ("PSC"), which offers generic drug prices that are competitive with the prices offered by these major retailers. *Id.* ¶ 69. For a nominal annual enrollment fee ($20 for individuals and $35 for families), customers can access discounts on thousands of generic

---

[2] The Court "accept[s] as true all well-pleaded facts alleged" in reviewing a motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[3] That number is adjusted to 30-day equivalents. *See* 3d Am. Compl. ¶ 7.

prescription drugs. *Id.* ¶ 71. Any customers can enroll—even if they have insurance—unless they are on Medicare or Medicaid. *Id.* Walgreens does not limit the eligibility for or duration of PSC prices other than to require direct payment (in other words, customers must pay for the drugs themselves without using insurance).

A subset of approximately 500 PSC generics are on Walgreens's Value-Priced medication list. *See* Pl.'s Ex. A, Value-Priced Medication List, ECF No. 269-1. The parties refer to this subset as the "Value-Priced Generics" or "VPG drugs." A VPG drug is assigned a set price according to its "tier" and whether the customer is purchasing a 30- or 90-day supply. *Id.* A tier 1 drug costs $5 for a 30-day supply and $10 for a 90-day supply; a tier 2 drug costs $10 for a 30-day supply and $20 for a 90-day supply; and a tier 3 drug costs $15 for a 30-day supply and $30 for a 90-day supply. *Id.* But the PSC formulary includes thousands of generic medications—not just those on the Value-Priced medication list—that are offered at a discount to PSC members. 3d Am. Compl. ¶ 9. The prices of these "non-VPG drugs" vary, depending on the drug and the days' supply, among other things. *Id.* ¶ 8.

The complaint alleges that, at the same time it offered low prices through the PSC to direct-pay customers, Walgreens charged higher prices to customers purchasing those same drugs through private insurance or through Medicare or Medicaid. *Id.* ¶ 4. According to Plaintiffs, pharmacies cannot charge such consumers—or report to insurance companies or other third-party providers (such

4

as Medicare and Medicaid)—a higher price for prescription drugs than what is known as the "usual and customary" ("U&C") price. *Id.* ¶ 5. Plaintiffs allege that the U&C price is known, throughout the pharmaceutical industry, as the price that the pharmacy charges the direct-pay public. *Id.*; *see also id.* ¶ 58 (providing examples of industry sources defining the U&C price). Plaintiffs contend that Walgreens' PSC prices qualified as the pharmacy's U&C prices, and that by reporting higher-than-PSC prices as its U&C prices on claims for reimbursement submitted to insurance companies and other third-party providers, Walgreens operated an undisclosed, dual-pricing scheme for generic PSC-listed drugs. *Id.* ¶ 12.

Plaintiffs allege significant damages due to Walgreens' dual-pricing scheme. *Id.* ¶ 13. Because the reported U&C price is used to calculate the amount of copayments, coinsurance, or deductible amounts, Plaintiffs claim that Walgreens overcharged them and other consumers when it collected from them inflated copayments, coinsurance, and deductibles. *Id.* ¶ 12. The Consumer Plaintiffs claim that they were under the impression that, because they had health insurance with prescription benefits coverage, they would not be paying more than direct-pay customers for their prescriptions. *Id.* ¶¶ 15, 18, 21, 24. Additionally, the Fund Plaintiffs assert that because they reimburse or pay for their beneficiaries' purchases of prescription drugs, they were harmed by paying more for PSC-listed generic drugs than they would have if Walgreens had accurately reported its U&C prices. *Id.* ¶¶ 27, 31, 35, 40.

5

**B. Procedural History**

Plaintiffs' second amended complaint focused only on the VPG drugs when it laid out Walgreens's allegedly fraudulent scheme. *See, e.g.*, Def.'s Ex. 1, Redline Comparison of Pls.' Second Am. Compl. and Third Am. Complaint ("Redline Comparison") ¶ 8 (showing that the Second Amended Complaint alleged that Walgreens's PSC "has allowed cash-paying customers to purchase more than 500 widely prescribed generic drugs for $5, $10, and $15 for 30-day prescriptions and $10, $20, and $30 for 90-day prescriptions"), ECF No. 277-1; *id.* ¶ 9 (alleging that the PSC formulary *is* the "'PSC Value-Priced Medication List' attached as Exhibit A").

After a dispute regarding the scope of discovery, Walgreens filed a motion asking this Court to "declar[e] that only Value-Priced Generic prescription drugs that are part of Walgreens['s] Prescription Savings Club are at issue in this case." *See* Mot. Requesting Court Declare Only Value-Priced Generics Are at Issue at 1, 3, ECF No. 234. The Court ruled in favor of Walgreens, holding that the claims in the operative complaint were limited to the VPGs that appeared on the Value-Priced medication list. *See* 3/4/20 Minute Entry, ECF No. 258; Tr. Proceedings on 3/4/20 at 36:20–37:12, 39:7–12, ECF No. 260. Nonetheless, the Court permitted Plaintiffs to amend their complaint "to the extent they can, limited strictly to the [VPG] issue." Tr. Proceedings on 3/4/21 at 39:13–22.

Plaintiffs then filed their Third Amended Complaint, which changed the complaint's definition of "PSC Generics"—*i.e.*, the drugs at issue in the alleged

6

scheme. *See* Redline Comparison ¶ 9. In their prior complaint, Plaintiffs had defined "PSC Generics" as the "most commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments" identified on the Value-Priced medication list. *Id.* The Third Amended Complaint defines "PSC Generics" as the "thousands of generic mediations" on the "PSC formulary;" it no longer cites to the Value-Priced medication list. *Id.*

Walgreens has moved to dismiss the Third Amended Complaint "to the extent that it attempts to state claims as to non-VPG [g]enerics." Def. Walgreens's Mem. Supp. Partial Mot. Dismiss Pls.' Third Am. Compl. at 3, ECF No. 277. Specifically, Walgreens contends that the Third Amended Complaint fails to state a claim relating to the non-VPG drugs under Rule 12(b)(6) and Rule 9.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges whether a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When "reviewing the sufficiency of a complaint under the plausibility standard," courts "accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

7

In general, a complaint must simply "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also* Fed. R. Civ. P. 8(a)(2). But when a plaintiff brings a claim that "sounds in fraud"—"in other words, one that is premised upon a course of fraudulent conduct," *see Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (cleaned up)—then "a party must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta*, 761 F.3d at 737 (quoting *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 615 (7th Cir. 2011)).

### III. Analysis

Walgreens argues that Plaintiffs' Third Amended Complaint fails to adequately plead with particularity that the alleged fraudulent scheme involved non-VPG drugs. Plaintiffs' prior complaint identified examples—by date, tier, and price—of Plaintiffs' purchases of VPGs for which they claim Walgreens overcharged them. But, as Walgreens correctly points out, the Third Amended Complaint does not add any similar examples of non-VPG drugs Plaintiffs allegedly purchased.

Plaintiffs admit that, instead of specifically pleading that Plaintiffs purchased (and were overcharged for) non-VPG drugs, they simply "expand[ed] the definition of PSC Generics." Pls.' Resp. Opp'n Mot. Dismiss ("Pls.' Resp.") at

8

6, ECF No. 293. But, in Plaintiffs' view, that is enough, because "when pleading a fraudulent scheme involving a number of misrepresentations over a number of years, . . . representative examples will suffice under Rule 9(b)." *Petrizzo v. DeVry Educ. Grp. Inc.*, No. 16 CV 9754, 2018 WL 827995, at *3 (N.D. Ill. Feb. 12, 2018).

But Plaintiffs' stance ignores the procedural history of this case. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (noting that what constitutes "particularity" "necessarily differ[s]" from case to case (quoting *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993))). Here, the Court allowed Plaintiffs to file a Third Amended Complaint after the case had been pending for approximately three years with the understanding that Plaintiffs would "mirror [their] contentions with regard to [Value Priced Generics] to include [non-Value Priced Generics]." Tr. Proceedings on 3/4/20 at 39:13–22. And the Court took Plaintiffs' counsel "at his word—that [Plaintiffs] would have filed . . . a separate cause of action" had the Court not permitted Plaintiffs to amend. *Id.* at 44:8–14.

Clearly, a separate cause of action would have required Plaintiffs to allege "representative examples of the alleged fraud" involving non-VPG drugs just as they had with VPG drugs. *See U.S. ex rel. Schramm v. Fox Valley Physical Servs., S.C.*, No. 12 C 8262, 2015 WL 3862954, at *3 (N.D. Ill. June 22, 2015). And such examples must be "tied to the plaintiffs." *Petrizzo*, 2018 WL 827995, at *3. Plaintiffs' new complaint falls well short of the mark. To hold otherwise would allow Plaintiffs to substantially broaden the scope of this fraud action by making

9

their allegations less specific, rather than more. Such a result would be contrary to the purposes of Rule 9(b) and the intent of the Court when it granted Plaintiff leave to file the amended complaint.

Moreover, "[o]ne of the purposes of the particularity and specificity required under Rule 9(b) is 'to force the plaintiff to do more than the usual investigation before filing his complaint.'" *Camasta*, 761 F.3d at 737 (quoting *Ackerman v. Nw. Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999)). During its colloquy with counsel prior to granting Plaintiffs' motion to amend, the Court stated its expectation that in order to adequately plead a claim as to the non-VPG drugs, Plaintiffs would need to "find someone or try to make some allegations with regard to drugs that are not on [the Value-Priced medication list]." Tr. Proceedings on 3/4/20 at 32:9–15. Given that discovery had been underway in this case for over a year by the time Plaintiffs' Third Amended Complaint was filed, as well as Plaintiffs' assertion that there are thousands of non-VPG drugs on Walgreens's PSC formulary, *see* 3d Am. Compl. ¶ 8, Rule 9 required Plaintiffs to investigate and plead representative transactions involving non-VPG drugs.[4]

---

[4] Plaintiffs also claim that the Court cannot parse their claims as they relate to VPG and non-VPG drugs. *See* Pls.' Resp. at 8 ("[A] 'claim' is binary."). Plaintiffs are incorrect; courts frequently dismiss claims as to one theory or set of facts but not another. *See, e.g.*, *Petzel v. Kane County Dep't of Transp.*, 16 CV 5435, 2018 WL 3740629, at *3, 5 (N.D. Ill. Aug. 7, 2018) (dismissing portions of three counts that related to specific time-barred claims or claims that were insufficiently pled); *Reed v. Positive Connections, Inc.*, 16 C 3377, 2016 WL 4394166, at *3 n.2 (N.D. Ill. Aug. 16, 2016) (dismissing claims within a complaint to the extent they related to anything other than a specific type of compensation); *High 5 Games, LLC v. Int'l Game Tech.*, 185 F. Supp. 3d 1067, 1074 (N.D. Ill. 2015) (granting defendant's partial motion to dismiss relating to one of two sets of claims alleged under a specific count).

Because Plaintiffs merely changed the definition of "PSC Generics" to include non-VPG drugs and offered little else, Plaintiffs have failed to plead any "factual content" that goes beyond Plaintiffs' prior complaint and that would permit the Court to "draw the reasonable inference" Plaintiffs had plausibly been overcharged for non-VPGs. *See Iqbal*, 556 U.S. at 678. Therefore, Walgreens's motion to dismiss the Third Amended Complaint as to non-VPG drugs is granted.

## CONCLUSION

For the above-stated reasons, Walgreens's partial motion to dismiss is granted. The Third Amended Complaint is dismissed to the extent it asserts claims involving non-VPG drugs.

IT IS SO ORDERED.        ENTERED: 3/23/21

_____
**JOHN Z. LEE**
**United States District Judge**