**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>                   Plaintiffs,<br><br>    v.<br><br>WALGREEN CO.,<br><br>                   Defendant. | Civil No. 1:17-cv-02246<br><br>Judge Edmond E. Chang<br><br>Magistrate Judge Sheila Finnegan |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

*The Prescription Savings Club "*████████████████████████████
████████████████████████████████████████████*."*

                                    Jay Bernstein, Walgreens Product Manager for Product Development and Innovation

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     THE PROPOSED CLASS ............................................................................ 3

III.    STATEMENT OF COMMON, CLASSWIDE EVIDENCE .............................. 4

      A.     The U&C Price Exists to Ensure that Insured Customers and Third-Party Payers Do Not Pay More to Receive Prescription Drugs than Cash Customers .... 4

      B.     There Is a Common, Classwide Industry Understanding as to the Meaning of the U&C Price, and Walgreens Acted Uniformly in Setting U&C Prices ......... 5

      C.     Starting in 2006, Walgreens' Competitors' U&C Pricing Decisions Jeopardized Walgreens' ███████████ ................................................. 6

      D.     Through the PSC, Walgreens Tried to "███████████████████" by Inflating Its U&C Price to Overcharge Both Insured Customers and Third-Party Payers While Competing for Cash Customers .................................. 7

           1.    Walgreens Was Required to Report or Otherwise Include Its PSC Prices When Determining the U&C Price to Report for PSC Generics Because Walgreens Offered PSC Prices to Cash Customers ...................... 8

           2.    To "██████" ██████████, Walgreens Charged a Sham Enrollment Fee to Join the PSC ...................................................................... 10

      E.     ██████████████ Walgreens Report or Otherwise Include Its PSC Prices When Determining the U&C Price to Report for PSC Generics ......................... 12

IV.    LEGAL STANDARD .................................................................................. 14

V.     THE PROPOSED CLASS SATISFIES RULE 23(a)'s PREREQUISITES ................... 15

      A.     The Proposed Class Satisfies the Numerosity Requirement ................................. 15

      B.     Questions of Fact and Law Are Common to the Proposed Class ......................... 15

      C.     The Proposed Class Representatives' Claims Are Typical of the Proposed Class's Claims ...................................................................................... 17

      D.     The Proposed Class Representatives and Class Counsel Will Fairly and Adequately Represent Class Members ................................................................ 18

           1.    The Proposed Class Representatives Are Adequate ................................. 18

           2.    Plaintiffs' Counsel Are Adequate and Should Be Appointed as Class Counsel ......................................................................... 19

VI.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(2) ............................................................................................ 20

VII.   A MECHANISTIC METHODOLOGY THAT IS CONSISTENT WITH PLAINTIFFS' THEORY OF LIABILITY EXISTS TO CALCULATE CLASSWIDE DAMAGES AND RESTITUTION ............................................................................................... 22

VIII.   THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3) ............................................................................................ 23

      A.     Common Questions Predominate over the Class's Consumer Protection Claims ................................................................................................... 24

           1.    Common Evidence Will Be Used to Establish Deception ....................... 25

2.  Common Evidence Will Be Used to Establish Unfairness ...................... 27

3.  Common Evidence Will Be Used to Establish Reliance and
    Causation ................................................................................................ 28

B.  Common Questions Predominate over the Class's Unjust Enrichment
    Claims ............................................................................................................ 29

C.  A Class Action Is a Superior Method of Adjudicating This Dispute .................. 30

IX.  CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Haj v. Pfizer Inc.*,
  No. 17 C 6730, 2019 WL 3202807 (N.D. Ill. July 16, 2019) .................................................29

*Allegra v. Luxottica Retail N.A.*,
  __F.R.D. __, No. 17-CV-5216, 2022 WL 42867 (E.D.N.Y. Jan. 5, 2022) ............................23

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................................18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013).......................................................................................................15, 29

*Anderson v. Weinert Enters., Inc.*,
  986 F.3d 773 (7th Cir. 2021) ..............................................................................................15

*Barnes v. Air Line Pilots Ass'n, Int'l*,
  310 F.R.D. 551 (N.D. Ill. 2015)...........................................................................................29

*Bd. of Educ. of City of Chi. v. A, C & S, Inc.*,
  546 N.E.2d 580 (Ill. 1989)...................................................................................................29

*Beardsall v. CVS Pharmacy, Inc.*,
  953 F.3d 969 (7th Cir. 2020) ...............................................................................................25

*Beaton v. SpeedyPC Software*,
  907 F.3d 1018 (7th Cir. 2018) ......................................................................................17, 23

*Bell v. Publix Super Mkts., Inc.*,
  982 F.3d 468 (7th Cir. 2020) ...............................................................................................25

*Benson v. Newell Brands, Inc.*,
  No. 19 C 6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)..........................................28, 30

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ...........................................................................................22

*Buycks-Roberson v. Citibank Fed. Sav. Bank*,
  162 F.R.D. 322 (N.D. Ill. 1995).............................................................................................4

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ...............................................................................................30

*Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of City of Chi.*,
    797 F.3d 426 (7th Cir. 2015) ................................................................................20

*Com. Fin. Consulting, LLC v. Conquest Capital Partners, LLC*,
    145 N.E.3d 897 (Mass. App. Ct. 2020) ...............................................................29

*Corcoran v. CVS Health Corp.*,
    779 F. App'x 431 (9th Cir. 2019) ....................................................................2, 17

*Corcoran v. CVS Health Corp.*,
    No. 3:15-cv-03504 (N.D. Cal.) ...........................................................................30

*Elliott v. Chi. Hous. Auth.*,
    No. 98 C 6307, 2000 WL 263730 (N.D. Ill. Feb. 28, 2000)................................21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)............................................................................................24

*First Nationwide Sav. v. Perry*,
    15 Cal. Rptr. 2d 173 (Cal. Ct. App. 1992) .........................................................29

*FTC v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972)............................................................................................27

*Gammon v. GC Servs. Ltd. P'ship*,
    162 F.R.D. 313 (N.D. Ill. 1995).........................................................................21

*United States ex rel. Garbe v. Kmart Corp.*,
    73 F. Supp. 3d 1002 (S.D. Ill. 2014)....................................................................5

*Gomez v. St. Vincent Health, Inc.*,
    649 F.3d 583 (7th Cir. 2011) ..............................................................................18

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ............................................................................28

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
    757 F.3d 599 (7th Cir. 2014) ..............................................................................22

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
    314 F.R.D. 580 (N.D. Ill. 2016).........................................................................21

*Kaufman v. Am. Express Travel Related Servs. Co.*,
    264 F.R.D. 438 (N.D. Ill. 2009).........................................................................16

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ..............................................................................16

iv

*Kramer v. Am. Bank & Tr. Co., N.A.*,
  No. 11 C 8758, 2017 WL 1196965 (N.D. Ill. Mar. 31, 2017) ..........................................15, 17

*Lacy v. Dart*,
  No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015)....................................................18

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  756 F. Supp. 2d 928 (N.D. Ill. 2010) ......................................................................................22

*Marlin Broad., LLC v. Law Off. of Kent Avery, LLC*,
  922 A.2d 1131 (Conn. App. Ct. 2007)....................................................................................29

*McFadden ex rel. McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*,
  No. 05 C 0760, 2008 WL 4877150 (N.D. Ill. Aug. 8, 2008)....................................................20

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ...........................................................................................15, 24

*Mullins v. Direct Digit., LLC*,
  795 F.3d 654 (7th Cir. 2015) ..........................................................................3, 16, 22, 25

*Murray v. New Cingular Wireless Servs., Inc.*,
  232 F.R.D. 295 (N.D. Ill. 2005)........................................................................................18, 19

*Phillips v. Sheriff of Cook Cnty.*,
  828 F.3d 541 (7th Cir. 2016) ..................................................................................................16

*Reliable Money Ord., Inc. v. McKnight Sales Co., Inc.*,
  704 F.3d 489 (7th Cir. 2013) ..................................................................................................19

*Sharpe v. A&W Concentrate Co.*,
  No. 19-cv-768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021) ...................................23

*Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*,
  540 F. Supp. 3d 182 (D.R.I. 2021)................................................................................. *passim*

*Simpson v. Dart*,
  23 F.4th 706 (7th Cir. 2022) ............................................................................................14, 15

*State v. Barclays Bank of N.Y., N.A.*,
  563 N.E.2d 11 (N.Y. 1990)......................................................................................................29

*Suchanek v. Sturm Foods, Inc.*,
  311 F.R.D. 239 (S.D. Ill. 2015) ..............................................................................................25

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ........................................................................................ *passim*

*Suchanek v. Sturm Foods, Inc.*,
    No. 11-CV-565, 2017 WL 3704206 (S.D. Ill. Aug. 28, 2017) ...............................................27

*Suchanek v. Sturm Foods, Inc.*
    No. 11-CV-565, 2018 WL 6617106 (S.D. Ill. July 3, 2018) ...................................................28

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ...............................................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .........................................................................................................15, 20

## Statutes, Rules & Regulations

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................................1, 15
    Rule 23(a) ...............................................................................................................3, 14, 15, 22
    Rule 23(a)(1) ...........................................................................................................................15
    Rule 23(a)(2) .....................................................................................................................15, 16
    Rule 23(a)(3) ...........................................................................................................................17
    Rule 23(a)(4) .....................................................................................................................18, 19
    Rule 23(b) ................................................................................................................................14
    Rule 23(b)(2) .................................................................................................................3, 20, 21
    Rule 23(b)(3) .....................................................................................................3, 23, 24, 30
    Rule 23(g) .........................................................................................................................4, 19, 20
    Rule 23(g)(1) .....................................................................................................................19, 20

## Other Authorities

Restatement (First) of Restitution §1 cmt. A ...............................................................23, 29

Plaintiffs Cynthia Russo, Lisa Bullard, Ricardo Gonzales (the "Individual Plaintiffs"), International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund ("IBEW"), International Union of Operating Engineers Local 295-295 Welfare Fund ("IUOE"), and Steamfitters Fund Local 439 ("Steamfitters") (the "Fund Plaintiffs," and with the Individual Plaintiffs, "Plaintiffs"), having conferred with Defendant Walgreen Co. ("Walgreens"), which objects to the relief requested herein, respectfully submit this memorandum of law in support of their motion for class certification pursuant to Federal Rule of Civil Procedure 23.

## I. INTRODUCTION

A customer walking into a pharmacy to purchase a prescription drug is one of two things: an insured customer or a cash customer. Insured customers have insurance by which a third-party payer ("TPP") pays some or all of the cost to purchase a prescription drug. Customers who do not use insurance are cash customers.

It is a bedrock principle in the pharmaceutical industry that to purchase a given prescription drug, insured customers should pay no more than cash customers. If insured customers paid more than cash customers, they would receive no insurance "benefit" and would be penalized for using insurance. To abide by this principle, the pharmaceutical industry relies on two interrelated concepts – (1) the "usual and customary" ("U&C") price, and (2) "lower-of" pricing.

The U&C price is universally known as the lowest price a pharmacy offers to a cash customer to purchase a prescription drug. Every time a pharmacy sells a prescription drug to an insured customer, the pharmacy is required to report its U&C price for that drug as part of the standardized claims adjudication process. This reporting of U&C prices ensures that insured customers and TPPs pay the "lower of" the pharmacy's U&C price or the rate negotiated through insurance. The U&C price thus serves as a price ceiling and represents the highest amount an insured customer or TPP should pay for a prescription drug. Without lower-of pricing, insured

customers would effectively be punished for using insurance and TPPs would lose a critical tool for containing insurance costs.

Walgreens has engaged in over a decade-long scheme to inflate U&C prices for insured customers and TPPs (like the Individual Plaintiffs and Fund Plaintiffs, respectively). Because the U&C price is the most insured customers and TPPs should pay, Walgreens can manipulate its revenues by inflating U&C prices. And that's exactly what Walgreens did by creating the Prescription Savings Club ("PSC"). Through the PSC, Walgreens offered discount prices to cash customers. However, Walgreens uniformly failed to report or otherwise include its PSC prices when determining the U&C price to report in conjunction with insured transactions for generic prescription drugs offered through the PSC (the "PSC Generics") purchased by insured customers.

Plaintiffs' claims are ideally suited for class treatment because they can be established by reference to common, classwide evidence. The central question to be answered in this litigation is whether Walgreens was required to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. Walgreens admits that there is a common, classwide industry understanding as to the meaning of the U&C price. Walgreens also admits that it did not report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. Through common evidence, Plaintiffs will show that Walgreens' PSC prices fell within the long-recognized, industry-wide definition of the U&C price, and that Walgreens' unfair and deceptive practices damaged each Class member, causing them to overpay for PSC Generics and, thereby, unjustly enriching Walgreens.

Courts from coast-to-coast have held that similar claims brought by insured customers and TPPs challenging similar conduct were appropriate for class certification. *Corcoran v. CVS Health Corp.*, 779 F. App'x 431 (9th Cir. 2019); *Sheet Metal Workers Loc. No. 20 Welfare & Benefit*

*Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182 (D.R.I. 2021) (certifying claims brought by

TPPs). The same result should issue here. Accordingly, Plaintiffs respectfully request that the

Court grant Plaintiffs' motion for class certification.

## II.    THE PROPOSED CLASS

Plaintiffs seek certification of the following multi-state class (the "Class") pursuant to

Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3):

> All persons, or entities, for whom prescription drug insurance benefits were
> provided through the Relevant PBMs (a.k.a., A&A Services, LLC d/b/a SAV-RX
> Prescription Services; Caremark, LLC; Castia Rx (f/k/a Leehar Distributors
> Missouri, LLC); Express Scripts, Inc.; Medco Health Solutions, Inc.; MedImpact
> Healthcare Systems, Inc.; MedTrak Services, LLC; and/or OptumRx, Inc.), and
> who paid or reimbursed, in whole or in part, for generic prescription drugs from
> Walgreen Co. at any point in time from the period January 1, 2007 through the
> present, in Arizona, California, Connecticut, Delaware, Florida, Illinois,
> Massachusetts, New York, North Carolina, Ohio, Pennsylvania, and Wisconsin,
> where the usual and customary price was a basis for the amount paid or reimbursed
> in connection with the purchase of such drug, and the amount paid or reimbursed
> was inflated because the Prescription Savings Club price was not reported or
> otherwise included when determining the usual and customary price to report.[1]

Plaintiffs also seek certification of unfairness and unjust enrichment subclasses. In the alternative,

Plaintiffs seek certification of separate state law classes.[2] The proposed definition is clear and

based on objective criteria. *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

---

[1]    Excluded from the Class are: (1) Walgreen Co. and its management, employees,
subsidiaries, and affiliates; (2) the Court, members of their immediate families, and judicial staff;
(3) all government entities, including Medicare and Medicaid, and their beneficiaries, except for
Medicare Part D beneficiaries; (4) all government-funded entities, and their beneficiaries; (5) all
pharmacy benefit managers and entities that have or had a parent or subsidiary relationship with
any pharmacy benefit manager at any time since January 1, 2007; and (6) all individuals and
entities, except for the named Plaintiffs, that have sued or initiated formal dispute resolution
proceedings against Walgreen Co. relating to its determination of usual and customary prices in
connection with the Prescription Savings Club.

[2]    The Class Representatives for the statewide classes would be: Arizona (Plaintiffs Gonzales
and Steamfitters); California (Plaintiff IBEW); Connecticut (Plaintiff IUOE); Delaware (Plaintiff
IUOE); Florida (Plaintiffs Russo, IBEW, IUOE, and Steamfitters); Illinois (Plaintiff Steamfitters);

Plaintiffs ask that the Court also appoint Plaintiffs as Class representatives (the "Class Representatives") and Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel pursuant to Rule 23(g).

## III. STATEMENT OF COMMON, CLASSWIDE EVIDENCE

### A. The U&C Price Exists to Ensure that Insured Customers and Third-Party Payers Do Not Pay More to Receive Prescription Drugs than Cash Customers

This case involves Walgreens' manipulation of the U&C price and the interplay between insured and cash prescription drug transactions. As Plaintiffs' expert Dr. Kenneth W. Schafermeyer, a Professor Emeritus of Pharmacy Administration at the University of Health Sciences and Pharmacy in St. Louis, explains, the retail pharmaceutical industry has long acknowledged only two types of pharmaceutical transactions: (1) transactions involving insured customers and TPPs; and (2) transactions involving cash customers. *See* Ex.[3] 56 (Expert Report of Kenneth W. Schafermeyer, Ph.D.) ("Schafermeyer Rep."), ¶¶25, 50-101, 137, 141-147. Indeed, Walgreens' point of sale system is configured to recognize only "███████████████████ ████████." Ex. 3 at 23:18-24:3, 24:22-25:4.

About 90% of all United States citizens are enrolled in health insurance plans that cover at least a portion of the costs of prescription drugs, including PSC Generics. FAC, ¶2.[4] When insured customers purchase PSC Generics at Walgreens, Walgreens submits the claims for adjudication to

---

Massachusetts (Plaintiffs Bullard and IUOE); New York (Plaintiffs Bullard and IUOE); North Carolina (Plaintiff IBEW); Ohio (Plaintiff IBEW); Pennsylvania (Plaintiff IUOE); Wisconsin (Plaintiff Gonzales); *see also, e.g.*, *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 338 (N.D. Ill. 1995).

[3] All references to "Ex." are to exhibits attached to the Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification ("Decl."), submitted contemporaneously herewith.

[4] "FAC" refers to the Fourth Amended Consolidated Class Action Complaint and Jury Demand (ECF No. 477).

a pharmacy benefit manager ("PBM")[5] using the industry-wide common data standards promulgated by the National Council for Prescription Drug Programs ("NCPDP"). *E.g.*, Ex. 1 at 9:11-10:10. The NCPDP standards apply to "all claims submissions to all health plans." *United States ex rel. Garbe v. Kmart Corp.*, 73 F. Supp. 3d 1002, 1013-14 (S.D. Ill. 2014) (citing 45 C.F.R. §162.1102(a)(2)), *aff'd in part & rev'd in part*, 824 F.3d 632 (7th Cir. 2016); *accord* Ex. 1 at 9:11-10:10 ("[A]ll pharmacies," including Walgreens, use the NCPDP standard); Ex. 56 (Schafermeyer Rep.), ¶¶33-39, 54-55, 104, 107. To ensure that insured customers and TPPs do not pay more than cash customers, when submitting claims for adjudication to a Relevant PBM, Walgreens is required to report the U&C price for a drug using the NCPDP's mandatory code 426-DQ. *Id.*, ¶¶25-30, 36-39. Walgreens is well aware that insured customers and TPPs rely on pharmacies to report accurate U&C prices, Ex. 6 at 50:2-4, because the U&C price is used to ensure that insured customers and TPPs do not pay more than the price charged to cash-paying customers. Ex. 56 (Schafermeyer Rep.), ¶¶26-27, 40-101; Ex. 3 at 81:18-82:22.

> **B.    There Is a Common, Classwide Industry Understanding as to the Meaning of the U&C Price, and Walgreens Acted Uniformly in Setting U&C Prices**

Walgreens admits that there is a common industry understanding as to the meaning of the U&C price. Ex. 15 at 21-22 (Resp. to RFA No. 21). As set forth in Dr. Schafermeyer's expert report, decades of industry practice establish that the U&C price has consistently been understood in the industry to mean the lowest price that a pharmacy would offer to a cash customer (*i.e.*, a customer paying without using insurance), including any discounts offered by the pharmacy to the cash customer for a specific drug product on a particular day at a particular pharmacy. Ex. 56

---

[5]    The "Relevant PBMs" are: A&A Services, LLC d/b/a SAV-RX Prescription Services; Caremark, LLC ("Caremark"); Castia Rx (f/k/a Leehar Distributors Missouri, LLC); Express Scripts, Inc. ("ESI"); Medco Health Solutions, Inc.; MedImpact Healthcare Systems, Inc.; MedTrak Services, LLC; and OptumRx, Inc. ("Optum"); *see also* ECF No. 128.

(Schafermeyer Rep.), ¶28; *see also id.*, ¶¶50-101, 141-147.  Walgreens understood this fact as a pharmacy manual promulgated by its subsidiary, Walgreens Health Initiative, defined the U&C price as "'the cash price including all applicable customer discounts, coupons or sale price which a cash-paying customer would pay at the pharmacy.'"  Walgreen Co.'s Answer and Affirmative Defenses to Fourth Amended Class Action Complaint (ECF No. 485) ("Answer"), ¶64.  As Walgreens employees testified, there may be "different words utilized but the intent and definition has always been the same."  Ex. 6 at 128:16-18.

Walgreens concedes not only that there is a single, industry-wide understanding of the U&C price, but that in reporting its U&C prices, Walgreens acted uniformly towards the Class. Walgreens admits that "█████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████," Ex. 16 at 5-6 (Resp. to RFA No. 28), and that on a uniform, classwide basis, Walgreens reported only its "████" ██████████████████████████ ████████████████. Ex. 17 at 18-19 (Resp. to ROG No. 9).

**C.   Starting in 2006, Walgreens' Competitors' U&C Pricing Decisions Jeopardized Walgreens' █████████████████**

The U&C price is material not only to Plaintiffs and Class members, but also to Walgreens' bottom line because ██████████████████████████████████████████ ████████████████. Ex. 45 at Walg_Forth_00012876.  Because the U&C price is the ceiling that insured customers and TPPs pay, if Walgreens reports a U&C price that is below the rate negotiated for insured customers and TPPs, it effectively "████" ██████████. *E.g.*, Ex. 35 at Walg_Forth_00112433.  Accordingly, the "██████████████" ████████████████████ ██████████████" because lower-of logic would ensure that insured customers

and TPPs paid no more than the U&C price. Ex. 34; Ex. 3 at 115:16-116:2; Ex. 35 at Walg_Forth_00112439 (███████████ "███████████████████████").

In 2006, Walgreens' ████████████████ was threatened when Walmart, Inc. ("Walmart") began charging cash customers $4 for a 30-day supply of some of the most commonly prescribed generic prescription drugs and began reporting its $4 price as Walmart's U&C price for transactions involving insured customers. Ex. 54, ¶¶3-5. Other Walgreens competitors, like Target and Costco, quickly introduced similar programs to compete with Walmart's lower prices, and they too reported their lower prices as their U&C prices in transactions involving insured customers. Ex. 56 (Schafermeyer Rep.), ¶¶111-112.

Walgreens found itself in a bind. If it reduced cash prices to compete with Walmart, Target, and Costco, it risked losing revenue because more insured transactions would adjudicate as "U&C hits"; but if Walgreens failed to reduce its cash prices, it risked losing lucrative cash customers.

**D.      Through the PSC, Walgreens Tried to "████████████████████" by Inflating Its U&C Price to Overcharge Both Insured Customers and Third-Party Payers While Competing for Cash Customers**

Walgreens created the PSC to inflate U&C prices for insured customers and TPPs while competing for cash customers. Through the PSC, Walgreens offered discount prices to cash customers while failing to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. Jay Bernstein, the Walgreens product manager charged with creating the PSC, acknowledged that this scheme allowed Walgreens to "████████████████ ███████████████████████████████████████████████ ██████." Ex. 36 at Walg_Forth_00038060. A Senior Director involved in the PSC's creation agreed that ███████████████ ""████████████████████████ ███████████████████████." *Id.* at Walg_Forth_00038060-61; Ex. 7 at 149:3-23; 150:14-17; 63:15-17 (this was a "███████████" ████████████████).

7

      **1.**     **Walgreens Was Required to Report or Otherwise Include Its PSC Prices When Determining the U&C Price to Report for PSC Generics Because Walgreens Offered PSC Prices to Cash Customers**

Common, classwide evidence establishes that Walgreens should have reported or otherwise included its PSC prices when determining the U&C price to report for PSC Generics. Walgreens admits that the PSC is "not insurance." Ex. 16 at 29 (Resp. to RFA No. 67). Because the PSC is not insurance, PSC prices represent cash prices that Walgreens was required to report or otherwise include when determining the U&C price to report for PSC Generics. Ex. 56 (Schafermeyer Rep.), ¶¶31-32, 127-185.



From its inception, Walgreens made clear that the primary purpose of the PSC was to ████ ████████████████. Walgreens testified that the PSC was a "████████████████ ████████████████," Ex. 2 at 95:24-97:18, in order "to provide a different set of prices to the uninsured" than Walgreens reported for insured customers and TPPs. *Id.* at 72:18-23. Indeed, Walgreens internally ████████████ "████████████████ ████████████████████████." Ex. 27 at Walg_Forth_00123486; Ex. 29 at Walg_Forth_00058230 ("████████████ ████████.").

Walgreens admits that the PSC's advertising targeted "████████████████," Ex. 16 at 12 (Resp. to RFA No. 8). When asked who the "target audience or demographic" was for the PSC, Walgreens testified: "Everyone, frankly." Ex 2 at 116:9-12. Accordingly, an internal Walgreens document ████: "████████████████████ ████████." Ex. 28 at Walg_Forth_00003799; Ex. 37 at Walg_Forth_00059781 (same); Ex. 21 ("████████████████████████████ ████████!"); Ex. 38 at Walg_Forth_00037901 ("████████████████

█████████████████████████████████████████████████████████████

████████████████████████████ . . . .'").

Walgreens allowed anyone walking in off the street to receive PSC prices (other than, for a time, federal insurance beneficiaries). Ex. 26 at Walg_Forth_00122127. Walgreens testified that there were only three requirements to obtain the PSC prices Walgreens offered: (1) provide an email address, Ex. 2 at 91:18-22; (2) sign terms and conditions, *id.* at 92:11-16, which stated that the PSC is "for individuals who have no prescription drug coverage," *i.e.*, cash customers, and to acknowledge that the PSC "*is not insurance or an insurance benefit*," Ex. 31 at Walg_Forth_00295971 (emphasis in original); and (3) certify that the customer was not a Medicare or Medicaid beneficiary, Ex. 2 at 91:22-92:8, though Walgreens eventually began allowing even Medicare and Medicaid beneficiaries to join the PSC starting in January 2020. Ex. 16 at 32-33 (Resp. to RFA No. 71). Walgreens employees testified that they could not recall any instances where an otherwise eligible applicant was rejected for PSC "member[ship]." Ex. 6 at 302:17-23.

Walgreens knew that, because its PSC prices were offered to cash customers, it was required to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. An internal email candidly acknowledged that Walgreens should "████████



████████," noting that because Walgreens "████████████████████████████████ ██," it "████████████████████████████████████████." Ex. 30 at Walg_Forth_00199071. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. Ex. 4 at 154:14-155:16; Ex. 43 at

Walg_Forth_00296065. Indeed, one presentation referred to the possibility that Walgreens would comply with its obligations as " ████ [].ˮ Ex. 24 at Walg_Forth_00346797.



████████ damages could be estimated by reference to common evidence. ██ "████████ˮ ████████████████████ "████████████████████████████████████ ████████████ ████████.ˮ[6] Ex. 35 at Walg_Forth_00112434. ████████████ ████████████ "████████████████████████████████ [.]ˮ Ex. 39 at Walg_Forth_00110476. ████████████████████ "████████████████ ████████████████████████████████████████████████.

Ex. 23 at Walg_Forth_00035719.

        **2.**      **To "████████ˮ ████████████, Walgreens Charged a Sham Enrollment Fee to Join the PSC**

Walgreens' internal rationale as to why it was not required to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics was the fabricated notion that ████████████████████████████████████ ████████████████████████████████████. ████████ ████████████████████████ "████ˮ ████████████ ████████████. Walgreens' motive was clear: "████████████████ ████████████████████████████████████████████ ████████████████████████████████████████.ˮ Ex. 27 at Walg_Forth_00123500.

Common evidence shows that Walgreens never ████████████████████ ████████████████████████████████████████████████.

---

[6]    Emphasis is added and citations and footnotes are omitted unless otherwise noted.

Instead, at most, as Walgreens represented to the federal government, the fee was only "████████

████████████████████████████████" the PSC. Ex. 31 at Walg_Forth_00295968.

████████████████████████████████████████████

████████. *See* Ex. 35 at Walg_Forth_00297441 ("████████████████████████

████████"); Ex. 22 at Walg_Forth_00009161 (████████████████████████); *see*

*also* Ex. 7 at 70:7-72:18, 130:25-131:8. ████████████████████████

████████. Ex. 31 at Walg_Forth_00295978.

Further diminishing the impact of the fee, starting in 2012, Walgreens advertised "[g]uaranteed, risk-free savings" to those who joined the PSC. Ex. 32 at Walg_Forth_00004268; Ex. 33 at Walg_Forth_00004299. Walgreens claimed in advertising: "If you don't save at least the cost of your membership fee in one year, we'll give you the difference." Ex. 32 at Walg_Forth_00004268. This so-called savings guarantee was ████████ "████████

████████." Ex. 7 at 110:20-111:3; Ex. 25 at Walg_Forth_00045583. The purpose of the savings guarantee was to "████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████. Ex. 25 at Walg_Forth_00045568, 576, 580, 594. As James Devine, a former product manager for the PSC, testified, the savings guarantee meant that "there was no financial risk" to joining the PSC because a "guarantee is a guarantee." Ex. 7 at 125:8-19.

Finally, while Walgreens employees warned ████████████████ "████████████████

████████████████████████████████████," Ex. 20 at Walg_Forth_00190302, ████████████████████████

████████████████████. For instance, from approximately December 2011 to March 2012,

"Walgreens lowered the annual PSC membership fee to $5 for individuals." Ex. 18 at 5 (Resp. to ROG No. 17). Walgreens' fee was thus a sham designed to mask that Walgreens' PSC prices represented its cash prices and should have been reported or otherwise included when Walgreens determined the U&C price to report for PSC Generics.

**E.** ▮▮▮▮▮▮▮▮ **Walgreens Report or Otherwise Include Its PSC Prices When Determining the U&C Price to Report for PSC Generics**



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 44 at Walg_Forth_00023817 (For

"▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. 8 at 261:18-263:20.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮. Ex. 41 at Walg_Forth_00056518. In a declaratory ruling, Connecticut's Department of Social Services ("DSS") determined that "PSC membership. . . is *not* limited to a specific group or category of Walgreens' customers," and that PSC prices were "offered and available to *all* Walgreens' customers." Ex. 47 at DSS0031 (emphasis in original). In the settlement that followed, Walgreens agreed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮, Ex. 4 at 135:24-136:12, "▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 17 (Resp. to ROG No. 9) at 18-19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 16 at 32-33 (Resp. to RFA No. 71).

In 2019, Walgreens settled claims made by the United States and 39 states, which alleged that Walgreens violated the False Claims Act by submitting claims where the U&C prices reported for PSC Generics "were higher than the prices it charged for those drugs pursuant to the PSC program." Ex. 53 at 2. As part of that settlement, Walgreens "admit[ted], acknowledge[d], and accept[ed] responsibility" that "in submitting claims for reimbursement to the States, Walgreens did not identify its PSC program prices as its U&C prices for the drugs on the PSC program formulary," and that "[a]s a result, the States paid Walgreens more money in reimbursements than they would have paid if Walgreens had identified its PSC program prices as its U&C prices." *Id.*, ¶2 & (e) at 3-4.



." Ex. 46 at Walg_Forth_00140979.

." *Id.* at Walg_Forth_00140980.

." Ex. 2 at 235:1-19.

. *Id.* at 229:18-24, 238:16-239:14.



, *id.* at 224:25-226:14 (Caremark); *id.* at 250:2-251:7 (Optum),

. *See* Ex. 56 (Schafermeyer Rep.), ¶¶87-94, 98.

. Ex. 5 at 152:3-6, 156:3-4, 157:10-11, 159:18-160:11.

. Ex. 51 at NONPARTY_NACDS_013498 (Walgreens recommended "

"); *see also* Ex. 48 (attempting to

); Ex. 49 (same for ); Ex. 50 (same for ); Ex. 52 (same for

).

Despite these efforts, the longstanding industry understanding of the U&C price remains unchanged. Yet, to this day, Walgreens fails to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. Insured customers and TPPs continue to be damaged by paying more to receive PSC Generics than cash-paying members of the general public. Plaintiffs accordingly seek certification of their claims for damages, restitution, and other equitable relief.

## IV. LEGAL STANDARD

Where the proposed class satisfies Rule 23(a)'s requirements and one of the Rule 23(b) prongs, "the class ***must*** be certified." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022) (emphasis

in original). While the Court conducts a "'rigorous analysis,'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), Plaintiffs need only show that Rule 23's requirements are met "by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Merits questions may only be considered to the extent they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## V.     THE PROPOSED CLASS SATISFIES RULE 23(a)'s PREREQUISITES

"Rule 23(a) enumerates four – and only four – requirements for class certification: numerosity, commonality, typicality, and adequacy of representation." *Simpson*, 23 F.4th at 711. Plaintiffs satisfy each requirement.

### A.     The Proposed Class Satisfies the Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is typically satisfied where there are more than 40 class members. *Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11 C 8758, 2017 WL 1196965, at *4 (N.D. Ill. Mar. 31, 2017); *see also Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). Here, numerosity is satisfied because Plaintiffs' expert analysis of Walgreens' transactional claims data has identified overcharges affecting significantly more than forty Class members in each Class state. Ex. 55 (Expert Report of Lynette Hilton, Ph.D.) ("Hilton Rep."), ¶36. As the Court in *Sheet Metal* recognized, a class that includes "hundreds if not thousands of TPPs – is too numerous to render joinder practical." 540 F. Supp. 3d at 198. Accordingly, the numerosity requirement is satisfied.

### B.     Questions of Fact and Law Are Common to the Proposed Class

Rule 23(a)(2)'s commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions "need not address every

15

aspect of the plaintiffs' claims," but they "must 'drive the resolution of the litigation.'" *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 553 (7th Cir. 2016). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 442 (N.D. Ill. 2009) (characterizing Rule 23(a)(2)'s commonality requirement as a "'low . . . hurdle'").

The common question that will drive the resolution of this litigation is whether Walgreens should have reported or otherwise included its PSC prices when determining the U&C price to report for PSC Generics. FAC, ¶96 (identifying additional common questions). Walgreens admits that there is a common industry understanding as to the meaning of the U&C price. Ex. 15 at 21-22 (Resp. to RFA No. 21); Answer, ¶58 at 29-30. As set forth in Dr. Schafermeyer's expert report, and as demonstrated by the evidence, Walgreens' PSC prices fit within the accepted industry meaning and Walgreens' own understanding of U&C prices. Ex. 56 (Schafermeyer Rep.), ¶¶31-32, 127-179. Walgreens disagrees. Either Plaintiffs are right, or Walgreens is right.

As the Seventh Circuit has repeatedly recognized, the question of whether "statements [are] false or misleading" is a "'common contention'" that is "'capable of classwide resolution'" because the "'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Mullins*, 795 F.3d at 673; *Suchanek*, 764 F.3d at 756-57 (holding that question of whether defendant's misrepresentations were "likely to deceive a reasonable consumer is common" to the class). As explained above, Plaintiffs will prove their claims with common, classwide evidence. *See* §III, *supra*. Accordingly, the commonality requirement is satisfied. *Sheet Metal*, 540 F. Supp. 3d at 199 (certifying a TPP class and holding

16

that "a common question exists regarding whether Defendants engaged in a scheme to defraud TPPs by failing to report HSP prices as U&C prices").

**C.** **The Proposed Class Representatives' Claims Are Typical of the Proposed Class's Claims**

Rule 23(a)(3)'s typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality inquiry asks whether the proposed class representative's claims "arise from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). "It is enough that the class representatives' claims are based on the same legal theories as those of other class members." *Kramer*, 2017 WL 1196965, at *6; *Beaton*, 907 F.3d at 1026.

Walgreens admits that it "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." Ex. 16 at 59-60 (Resp. to RFA No. 95); *see also* Ex. 55 (Hilton Rep.), Ex. 3A. Further, Walgreens overcharged each of the Fund Plaintiffs for PSC Generics. Ex. 55 (Hilton Rep.), Ex. 3C. Thus, the proposed Class Representative's claims are typical of the claims of proposed Class members because the claims all arise from Walgreens' unitary course of conduct – Walgreens' failure to consider its PSC prices when determining the U&C price to report for PSC Generics. *See Corcoran*, 779 F. App'x at 434 (finding typicality satisfied because, like here, the defendant's "actual reporting to the PBMs underscores the fact that the class representatives' claims are 'reasonably coextensive,' if not 'substantially identical' to the claims of the absent class members"); *Sheet Metal*, 540 F. Supp. 3d at 199-202. The same is true here. Accordingly, the typicality requirement is satisfied.

**D.      The Proposed Class Representatives and Class Counsel Will Fairly and Adequately Represent Class Members**

Rule 23(a)(4)'s adequacy inquiry considers: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).   Both the proposed Class Representatives and Class Counsel are adequate.

**1.      The Proposed Class Representatives Are Adequate**

To assess the adequacy of proposed class representatives, Rule 23(a)(4) requires consideration of whether the plaintiff has interests antagonistic to those of the purported class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).  The burden of proving "the class representative's adequacy is not heavy." *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576, at \*5 (N.D. Ill. Apr. 30, 2015).  "'An understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet this standard.'" *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

Here, the proposed Class Representatives have demonstrated their adequacy.  Over several years, each has actively participated in this litigation by reviewing the pleadings filed in the action, participating in discovery by collecting documents, reviewing and verifying interrogatory responses, and preparing for and having their depositions taken.  Decl., ¶2; Exs. 9-14.  Each has testified that they understand their role as a Class Representative and has committed to prosecuting this action on behalf of the Class they seek to represent.  Exs. 9-14.  Further, because each proposed Class Representative asserts the same claims that would be asserted by Class members, there is no

risk of antagonistic or conflicting claims. *Murray*, 232 F.R.D. at 299. Thus, the proposed Class Representatives are adequate.

      **2.**      **Plaintiffs' Counsel Are Adequate and Should Be Appointed as Class Counsel**

Plaintiffs have selected qualified counsel, Scott+Scott and Robbins Geller, which have significant consumer class action litigation experience and have competently represented the Class. Exs. 59 & 60. In assessing counsel's adequacy, the Court considers "counsel's work on the case to date, counsel's class action experience, counsel's knowledge of the applicable law, and the resources counsel will commit to the case." *Reliable Money Ord., Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013) (citing Fed. R. Civ. P. 23(g)(1)(A)). Plaintiffs' counsel are adequate under Rule 23(g)(1)(A), and thus, the requirements of Rule 23(a)(4) are satisfied.

Plaintiffs also move the Court to appoint Scott+Scott and Robbins Geller as Class Counsel pursuant to Rule 23(g). "[A] court that certifies a class must appoint class counsel" and must consider the Rule 23(g)(1)(A) factors. Fed. R. Civ. P. 23(g)(1). The Court has already acknowledged that Class Counsel satisfy the requirements of Rule 23(g)(1)(A)(i-iv) by appointing them as Interim Class Counsel. ECF No. 95. In seeking appointment, Interim Class Counsel promised that their "commitment [to this action] will continue." ECF No. 86 at 9. Interim Class Counsel have kept their promise, zealously pursuing the claims of Plaintiffs and the Class as a review of the docket and the more than two dozen Joint Status Reports the parties have filed will confirm. Discovery in this case has been hard-fought. Walgreens produced, and Plaintiffs reviewed, more than 70,000 documents spanning more than 360,000 pages. Decl., ¶3. Plaintiffs deposed three of Walgreens' Rule 30(b)(6) designees, deposed ten current and/or former Walgreens employees, defended each of the named Plaintiffs' depositions, and subpoenaed the Relevant PBMs and deposed certain Relevant PBMs. *Id.*, ¶4. Plaintiffs responded to 90 of

Walgreens' RFAs and served 99 of their own. *Id.*, ¶5. Class Counsel further reaffirm that they are "committed to expending whatever resources are necessary to achieve a favorable result for the class." ECF No. 86 at 13. Thus, Rule 23(g)(1)(A)(i) and (iv) remain satisfied. Rules 23(g)(1)(A)(ii) & (iii) are similarly satisfied because Class Counsel remain highly qualified, having led many complex class actions involving the pharmaceutical industry and challenges to U&C pricing. Exs. 59 & 60. Accordingly, Class Counsel are adequate and also should be appointed under Rule 23(g).

## VI. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(2)

Certification under Rule (23)(b)(2) is appropriate when "'[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'" *McFadden ex rel. McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, No. 05 C 0760, 2008 WL 4877150, at *6 (N.D. Ill. Aug. 8, 2008). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360. Class challenge to "a company-wide practice is appropriate . . . at least where the class at issue is affected in a common manner, such as where there is a uniform policy or process applied to all." *Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 437 (7th Cir. 2015). "[T]he fact that the plaintiffs might require individualized relief does not preclude certification of a class" under Rule 23(b)(2) because "'it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful.'" *Id.* at 442.

Plaintiffs have met the requirements of Rule 23(b)(2). Plaintiffs challenge a pattern or practice that is generally applicable to all Class members. As described in detail above, Walgreens was required to report or otherwise include its PSC prices when determining the U&C price to

report for PSC Generics.  There is no dispute that Walgreens did not, and to this day, does not, report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics.  Based on that conduct, Plaintiffs seek both declaratory and injunctive relief.  FAC, ¶¶C, G, H.  Both forms of relief are appropriate here and are "indivisible" as to all Class members or none of them.  "In the instant case, a declaratory judgment would settle the issue of the legality of [Walgreens'] behavior with respect to the entire class," *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 320 (N.D. Ill. 1995), because a declaratory judgment would settle the issue of whether Walgreens must report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics.  Similarly, injunctive relief is appropriate because Walgreens continues to operate the PSC under the materially same terms that are challenged here and does not report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics.  Ex. 17 at 18-19 (Resp. to ROG No. 9); Ex. 19 at 27-28 (Resp. to ROG No. 24).

Because Walgreens' company-wide policies and failures were uniform and persistent through the entire relevant time period, and continue to harm all Class members, Rule 23(b)(2) certification is particularly apt.  *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig*., 314 F.R.D. 580, 599 (N.D. Ill. 2016) (approving settlement under Rule 23(b)(2), where "Plaintiffs seek injunctive relief requiring the NCAA to adopt corrective measures, including 'system-wide stepwise "return to play" guidelines'"); *Elliott v. Chi. Hous. Auth*., No. 98 C 6307, 2000 WL 263730, at *15 (N.D. Ill. Feb. 28, 2000) ("Here, Defendants, by allegedly refusing to comply with federal statutes and regulations regarding lead paint hazards, have acted on grounds generally applicable to the class.").

## VII. A MECHANISTIC METHODOLOGY THAT IS CONSISTENT WITH PLAINTIFFS' THEORY OF LIABILITY EXISTS TO CALCULATE CLASSWIDE DAMAGES AND RESTITUTION

Following the Rule 23(a) analysis, courts analyze "whether the plaintiffs' 'damages are susceptible of measurement across the entire class.'" *Suchanek*, 764 F.3d at 760 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)); *see also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 934 (N.D. Ill. 2010) (recognizing damages "need not be calculated with mathematical precision").[7]  To satisfy *Comcast*, Plaintiffs' damages model must be capable of "matching the theory of liability to the theory of damages."  *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014).

As fully set forth in her expert report, Plaintiffs' economics expert, Dr. Lynette Hilton, concludes that damages and restitution can be calculated on a classwide, formulaic basis that will not require individualized inquiries regarding members of the Class.

Plaintiffs' theory of liability for their consumer protection claims is that Plaintiffs and Class members were overcharged as a result of Walgreens' deceptive or unfair "price scheme to artificially inflate the 'usual and customary' prices reported and used to charge Plaintiffs and members of the Class for" PSC Generics.  FAC, ¶1.  Consistent with this theory of liability, Dr. Hilton has developed a model that is capable of identifying and calculating the Class's overcharges as the difference between the amount a Plaintiff or Class member paid to receive a PSC Generic and the PSC price for that same drug. Ex. 55 (Hilton Rep.), ¶¶22-26, 29-36 & Exs. 3A & 3C; *see also* Ex. 57.  As relevant to Plaintiffs' claims where statutory damages are available, Dr. Hilton's

---

[7]     While courts typically consider whether a damages model satisfies *Comcast* as part of the predominance analysis, a damages model is not a requirement for certification.  *See Mullins*, 795 F.3d at 671 ("the need for individual damages determinations at this later stage of the litigation does not itself justify the denial of certification"); *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (*Comcast* "did not hold . . . that a plaintiff seeking class certification must present an expert damages model").

proposed model is also able to identify and calculate statutory damages. Ex. 55 (Hilton Rep.), ¶¶27-28; *see Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (BMC), 2021 WL 3721392, at *4 (E.D.N.Y. July 23, 2021) ("[S]tatutory damages 'can be assessed on the basis of common proof.' It follows that individual damages questions, if any, will not predominate."); *Allegra v. Luxottica Retail N.A.*, __F.R.D. __, No. 17-CV-5216, 2022 WL 42867, at *8 (E.D.N.Y. Jan. 5, 2022) (same).

As to their unjust enrichment claims, Plaintiffs' theory of liability is that Walgreens has been unjustly enriched at the expense of Plaintiffs and the Class by receiving benefits from its failure to report or otherwise include PSC prices when determining the U&C price to report for PSC Generics. FAC, ¶¶123-131. To measure the amount of Walgreens' unjust enrichment, Dr. Hilton's methodology is capable of calculating the benefit that Walgreens unjustly received. Ex. 55 (Hilton Rep.), ¶¶37-38 & Exs. 3B & 3D; Restatement (First) of Restitution §1 cmt. A ("[T]he measure of restitution is the amount of enrichment received" by the defendant.).

Dr. Hilton's proposed methodologies are thus capable of generating classwide damages and restitution calculations that are consistent with Plaintiffs' legal theories by reference to common, classwide data that does not require individualized analysis. Plaintiffs have thus established both that *Comcast* is satisfied, and that damages and restitution are susceptible to measurement across the Class.

## VIII. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)

The predominance inquiry considers whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In assessing predominance, the "guiding principle" is "whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton*, 907 F.3d at 1029. The Court must consider the "relative importance" of the common questions identified, *id.*, as predominance is satisfied when common questions "'represent a significant aspect of [a] case and

. . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815 (alterations in original). A question is common where "'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original). To determine whether common evidence can supply classwide answers, the predominance inquiry "begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Common questions of law and fact predominate over Plaintiffs' and the Class's consumer protection and unjust enrichment claims. Each claim arises from the common, classwide contention that Walgreens should have reported or otherwise included its PSC prices when determining the U&C price to report for PSC Generics. As set forth below, Plaintiffs will marshal common, classwide evidence to satisfy the elements of their claims. Indeed, courts considering challenges to other pharmacies' U&C reporting practices readily determined that common questions predominated over individualized ones. *See*, *e.g.*, *Sheet Metal*, 540 F. Supp. 3d at 206 ("[T]he common issues to be tested by the proposed classes – namely, whether CVS fraudulently failed to include its HSP prices in its U&C pricing – will provide common answers.") (certifying claims under California, Connecticut, Illinois, New Mexico, New York, and Ohio, consumer protection statutes, among others). The same will be true here. Thus, Plaintiffs satisfy Rule 23(b)(3)'s predominance requirement.

### A. Common Questions Predominate over the Class's Consumer Protection Claims

Plaintiffs seek certification on behalf of the Class of their consumer protection claims arising under the laws of Arizona, California, Connecticut, Delaware, Florida, Illinois, Massachusetts, New York, North Carolina, Ohio, Pennsylvania, and Wisconsin (the "Consumer

Protection Claims"). The elements of the Consumer Protection Claims based on deceptive and/or unfair conduct are essentially uniform, Ex. 57, and are readily susceptible to certification because they raise objective questions common to the Class that can be readily answered by reference to common evidence.

### 1. Common Evidence Will Be Used to Establish Deception

Under each Consumer Protection Claim, whether a practice is "deceptive" is determined by reference to whether the practice is likely to deceive the reasonable consumer. *Id.*; *see also*, *e.g.*, *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972-73 (7th Cir. 2020) (deception in California, Connecticut, Florida, Illinois, and New York is determined by reference to whether the challenged conduct is "likely to deceive reasonable consumers"); *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 475 (7th Cir. 2020) ("The core prohibitions of these laws are interpreted for the most part interchangeably" to prohibit conduct "that is likely to deceive a substantial proportion of reasonable consumers."); *Suchanek*, 764 F.3d at 761-62 (same).

As courts within the Seventh Circuit have repeatedly held, whether a practice is likely to deceive a reasonable consumer is an objective inquiry answerable by common proof and thus represents a common question that satisfies the predominance requirement. *See*, *e.g.*, *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 259 (S.D. Ill. 2015) (question of deception under California, Illinois, New York, and North Carolina law, among others, "is identical across every class member because all of the applicable consumer protection statutes require proof that Defendants' statement was likely to mislead a reasonable consumer"); *Mullins*, 795 F.3d at 673 (claims under California, Florida, Illinois, Massachusetts, and New York law all "rise or fall on whether [defendant's] representations were deceptive").

Plaintiffs will marshal common evidence to establish that Walgreens' failure to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics was

likely to deceive because the reasonable insured customer and TPP would not expect to pay more for PSC Generics than cash customers. Walgreens admits that there is a single, common, classwide industry understanding as to the meaning of the U&C price that informs the reasonable consumer's expectations with regard to U&C reporting practices. Ex. 15 at 21-22 (Resp. to RFA No. 21). Plaintiffs will use common, classwide evidence to establish that the PSC price fits within the long-recognized, industry-wide definition of the U&C price. *See generally* Ex. 56 (Schafermeyer Rep.). In his expert report, Dr. Schafermeyer explains that the long-recognized, industry-wide definition of the U&C price is the lowest price that a pharmacy offers to a cash customer, including any discounts offered by the pharmacy to the cash customer for a specific drug product on a particular day at a particular pharmacy. *Id.* Dr. Schafermeyer explains how this industry understanding is demonstrated through several different sources, including the NCPDP standards, standards promulgated by federal and state governments, and the longstanding conduct of private payers such as TPPs and PBMs, and even Walgreens' own pharmacy manual. *Id.* Dr. Schafermeyer's expert opinion, that "Walgreens' PSC prices represented cash prices available to the general public that should have been reported or included when determining the U&C price to report," *id.*, ¶127, is common to the Class.

Common, classwide evidence will further establish that Walgreens' conduct towards the Class is uniform in that Walgreens never reported or otherwise included its PSC prices when determining the U&C price to report for PSC Generics, and that on a uniform, classwide basis, Walgreens reported only its "████" ████████████████████. Ex. 17 at 18-19 (Resp. to ROG No. 9). Walgreens further admits that its actions towards the Class were uniform as it concedes that, in determining the U&C price, Walgreens "████████████████████████████████████████

████████████████████████████████," Ex. 16 at 5-6 (Resp. to RFA No. 28), and that Walgreens determined ███████████████ "███████████████████." Ex. 40.

Common, classwide evidence in the form of transactional claims data from Walgreens and the Relevant PBMs will confirm that Walgreens failed to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics and will identify the prices that Walgreens deceptively reported as its U&C prices. *See generally* Ex. 55 (Hilton Rep.).

Thus, through common, classwide evidence, Plaintiffs will demonstrate that Walgreens made a deceptive statement every time it failed to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. Because establishing deception represents "the most significant element of each class member's claim" and "can be resolved with common proof," *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565, 2017 WL 3704206, at *14 (S.D. Ill. Aug. 28, 2017), whether Walgreens' reporting of U&C prices was deceptive is a common question that predominates as to the Class.

### 2. Common Evidence Will Be Used to Establish Unfairness

Plaintiffs' unfairness-based Consumer Protection Claims can be grouped into a subclass encompassing the eight states – Arizona, California, Connecticut, Delaware, Florida, Illinois, Massachusetts, and North Carolina – that follow the Cigarette Rule standards endorsed by *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 245 (1972), or provide an express statutory harmonization provision that instructs courts to use as a guide the Federal Trade Commission ("FTC") and federal court interpretations of the Federal Trade Commission Act ("FTC Act"). Ex. 57.

Plaintiffs will use common evidence to establish that Walgreens' failure to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics represented an unfair practice. As the Seventh Circuit recognized in *Garbe*, the "'usual and customary' price requirement should not be frustrated by so flimsy a device as [defendant's]

'discount programs.'" 824 F.3d at 645. Through common evidence that focuses exclusively on Walgreens' conduct, as opposed to the conduct of any individual Class member, Plaintiffs will establish that Walgreens unfairly developed the PSC as a scheme to inflate U&C prices for insured customers and TPPs while competing for cash customers for the purpose of securing its own profits. Thus, unfairness also represents a common question that predominates as to the Class.

### 3.    Common Evidence Will Be Used to Establish Reliance and Causation

The Consumer Protection Claims either do not require individualized reliance as an element or allow reliance to be established by reference to common evidence. Ex. 57. Indeed, the Seventh Circuit has reiterated that neither reliance nor causation is a bar to certification because "'[p]redominance is a test readily met in certain cases alleging consumer . . . fraud,' among others." *Suchanek*, 764 F.3d at 760 (alterations in original). The Seventh Circuit has further reiterated that to the extent the inquiry is necessary, it is "a straightforward matter for each purchaser to present her evidence on reliance and causation." *Id.*; *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, at *6 (N.D. Ill. Nov. 16, 2021).

As set forth in *Suchanek v. Sturm Foods, Inc.*, courts generally recognize classwide presumptions of reliance and causation where the defendant's unfair and deceptive conduct was uniform and material to the class. No. 11-CV-565, 2018 WL 6617106, at *9-*13 (S.D. Ill. July 3, 2018) (collecting cases). "[P]rice advertisements matter." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). They are at the core of materiality – and it is the price that Plaintiffs contend is false and deceptive here. As discussed above, Walgreens' conduct towards the Class was uniform in that Walgreens uniformly failed to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. The Supreme Court has recognized that when judged by the objective standards that apply to the laws of the Consumer Protection States, materiality is a common question because "a failure of proof on the issue of materiality would end

the case." *Amgen*, 568 U.S. at 460. Thus, individualized questions will not predominate as to either reliance or causation, and predominance is satisfied as to the Consumer Protection Claims.

## B. Common Questions Predominate over the Class's Unjust Enrichment Claims

Plaintiffs seek certification on behalf of the Class of their unjust enrichment claims arising under the laws of five states that follow the elements set forth in the Restatement – California, Connecticut, Illinois, Massachusetts, and New York. *See State v. Barclays Bank of N.Y., N.A.*, 563 N.E.2d 11, 15 (N.Y. 1990); *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 598 (Ill. 1989); *First Nationwide Sav. v. Perry*, 15 Cal. Rptr. 2d 173, 176 (Cal. Ct. App. 1992); *Com. Fin. Consulting, LLC v. Conquest Capital Partners, LLC*, 145 N.E.3d 897 (Mass. App. Ct. 2020); *Marlin Broad., LLC v. Law Off. of Kent Avery, LLC*, 922 A.2d 1131, 1140 (Conn. App. Ct. 2007). The Restatement provides that a "person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement (First) of Restitution §1 & cmt. a (AM. L. INST. 2022) ("A party is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be unjust.").

Plaintiffs will satisfy each element of their unjust enrichment claims by reference to common evidence. As set forth above, each Class member's claim results from a single decision at Walgreens not to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. Plaintiffs will use common evidence in the form of classwide transactional claims data to establish that Walgreens received a benefit at the expense of Plaintiffs and Class members. Common evidence will similarly focus on Walgreens' common and uniform actions to the Class to demonstrate that Walgreens' retention of these benefits would be unjust. Thus, common questions predominate as to Plaintiffs' unjust enrichment claims. *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 559 (N.D. Ill. 2015) (certifying unjust enrichment claim where "each putative class member's claim arises from a single decision"); *Al Haj v. Pfizer Inc.*,

No. 17 C 6730, 2019 WL 3202807, at *9 (N.D. Ill. July 16, 2019) (certifying unjust enrichment claim that "'rests on the same improper conduct [underlying] another claim'") (alteration in original).

### C. A Class Action Is a Superior Method of Adjudicating This Dispute

Rule 23(b)(3) requires Plaintiffs to demonstrate that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority is readily demonstrated here "because no rational individual plaintiff would be willing to bear the costs of this lawsuit." *Suchanek*, 764 F.3d at 760; *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Benson*, 2021 WL 5321510, at *7 (considering "the difficulty and complexity of the class-wide issues"). Further, in light of the successful class action trial of similar claims in *Corcoran v. CVS Health Corp.,* No. 3:15-cv-03504 (N.D. Cal.), and the certification of similar claims in *Sheet Metal*, 540 F. Supp. 3d at 198-99, the manageability of proceeding on a classwide basis has already been confirmed. *Carnegie*, 376 F.3d at 661 ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . .").

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and certify the Class, appoint Plaintiffs as Class Representatives, and appoint Scott+Scott and Robbins Geller as Class Counsel.

Dated: November 17, 2022    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (IL Bar #2759819)
Carey Alexander (IL Bar #5188461)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-4478
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

calexander@scott-scott.com

Erin Green Comite (IL Bar #420630)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 531-2632
Facsimile: (860) 537-4432
ecomite@scott-scott.com

David W. Mitchell (IL Bar #199706)
Brian O. O'Mara (IL Bar #229737)
Arthur L. Shingler III (IL Bar # 181719)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
davidm@rgrdlaw.com
bomara@rgrdlaw.com
ashingler@rgrdlaw.com

Mark J. Dearman (IL Bar #0982407)
Stuart A. Davidson (IL Bar #084824)
Eric Scott Dwoskin (IL Bar # 0112459)
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com
edwoskin@rgrdlaw.com

*Interim Co-Lead Counsel*

Katrina Carroll (IL Bar #6291405)
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
katrina@lcllp.com

*Local Counsel*

31

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically through the Court's Electronic Case Filing System, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo