# EXHIBIT 6

CONFIDENTIAL

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF ILLINOIS
 3                  EASTERN DIVISION
 4
 5   DOROTHY FORTH, TROY TERMINE,       )
     CYNTHIA RUSSO, INTERNATIONAL       ) No. 1:17-cv-02246
 6   BROTHERHOOD OF ELECTRICAL          )
     WORKERS LOCAL 38 HEALTH AND        )
 7   WELFARE FUND, LISA BULLARD and     )
     RICARDO GONZALES, On Behalf        )
 8   of Themselves and All Others       )
     Similarly Situated,                )
 9                                      )
                  Plaintiffs,           )
10                                      )
     vs.                                )
11                                      )
     WALGREEN CO.,                      )
12                                      )
                  Defendant.            )
13   _____)
14
15
16
17       CONFIDENTIAL VIDEOTAPED DEPOSITION OF
18                SUSAN CHRISTINE EWING
19                  Phoenix, Arizona
                   January 17, 2020
20                     9:29 a.m.
21
22
23
24   Prepared by:
     JARDENE L. PLATT, RPR
25   AZ Certificate No. 50937
```

1    claims adjudication other than the pharmacy and the
2    pharmacy benefit manager?
3         A.    Other parties.  What do you mean by that?
4         Q.    Are there any other entities involved in the
5    claims adjudication process?
6              MR. LEIB:  Objection.
7              THE WITNESS:  So I am not an expert on
8    claims adjudication.  There may be like a switch or
9    something, but I'm not sure exactly how the back-end
10   process works.
11   BY MR. ALEXANDER:
12        Q.    How does a pharmacy benefit manager, your
13   understanding, know how a claim is to be adjudicated?
14        A.    Based on information that the pharmacy sends
15   them, they will know what to send back.
16        Q.    Are there any other -- is there any other
17   information that the pharmacy benefit manager would
18   reference to determine how that claim is supposed to
19   be adjudicated?  Do they consider the contractual
20   relationships in place as well?
21             MR. LEIB:  Objection.
22             THE WITNESS:  I don't -- I'm not there so --
23   I don't know what they are actually using on that
24   particular claim.  It could be a ton of things they
25   use.  They could --

CONFIDENTIAL

Page 50

1  BY MR. ALEXANDER:
2     Q.   The PBM generally relies on the pharmacy to
3  submit accurate information?
4     A.   Yes.
5     Q.   Are all claims for prescription drugs
6  purchased by consumers using health insurance
7  adjudicated?
8         MR. LEIB:  Objection.
9         THE WITNESS:  Are they all adjudicated.  Do
10 you -- what do you mean by "adjudicated"?
11 BY MR. ALEXANDER:
12    Q.   The process we just discussed.
13    A.   No.  They are not.
14    Q.   Which claims wouldn't be adjudicated?
15    A.   If the member didn't have their card at the
16 point of sale at the time they were getting a
17 prescription, they might pay for it and submit it
18 later.  So paper -- it's called a paper claim.
19    Q.   Okay.  Generally, though, when a member
20 shows up at a pharmacy and they present their
21 insurance card and they use their health benefit, the
22 prescription drug claim is adjudicated by the
23 pharmacy benefit manager?
24        MR. LEIB:  Objection.
25        THE WITNESS:  Well, I'm not that individual

1    member so -- I think that generally when they bring
2    in their card and they tell the pharmacy "use my
3    insurance," then that tells the pharmacy or pharmacy
4    staff to try to adjudicate that claim.  The outcome
5    may well be -- can be different.  Depends on the
6    formulary and everything we talked about before.
7    BY MR. ALEXANDER:
8         Q.   Let me ask it as a slightly cleaner
9    question.  When Walgreens submits a claim for the
10   purchase of prescription drugs using a member's
11   insurance at the point of sale, is that claim then
12   adjudicated by a pharmacy benefit manager?
13             MR. LEIB:  Objection.
14             THE WITNESS:  If the -- let me repeat what I
15   heard.  If a member or patient comes to the counter
16   with a card, insurance card, health insurance card,
17   and you are asking -- they ask the pharmacy to fill a
18   prescription and submit a claim, that claim will be
19   adjudicated.  It depends on if the adjudication
20   system is up at the time.  If the pharmacy system is
21   working at the time.  There's just a lot of
22   variables.
23             So it's not, you know, a one -- every single
24   time it's going to be adjudicated.  It depends on
25   what's happening in that given day.  If the systems

Page 127

1  need to call me.  Any pharmacy.
2       Q.   Would you agree there's a need to define
3  usual and customary as a term in contracts?
4       A.   You know, I don't know if I'm an expert to
5  say it is a need but I have always seen it.  It's
6  always been there.  It's something everyone always
7  wanted to just be sure you understand, you know, how
8  it affects the GER, for example.  Right?  And if
9  it's -- you know, I've always been trained if it's
10 later in a contract and concept, you need to define
11 it as a term.  Even if it's something everybody knows
12 about, you better make sure it's a defined term in
13 the contract.  So that's why we end up defining
14 things like who is Walgreens?  You know, it's just
15 odd to me, but yes.  We have always defined it.
16      Q.   So you had mentioned the generic effective
17 rate in the context of something that a definition of
18 the usual and customary price could affect.  How --
19 how could it affect the generic effective rate if
20 there were a different definition of usual and
21 customary price?
22           MR. LEIB:  Objection.
23           THE WITNESS:  If there was a different
24 definition.  Well, I don't -- I don't believe it's a
25 different definition.  What I'm saying is, it has to

CONFIDENTIAL

Page 128

1  be defined so that when you go to do the calculation
2  of generic effective rate you can make sure you know
3  what claims to address.  Right?
4           So it's when you are looking at all the
5  claims for Caremark and you are doing reconciliation
6  and whether or not they are included or excluded, you
7  then have to go look and say okay, this one is
8  excluded.  Let's just make sure we agreed on what
9  those claims were.  And any time that usual and
10 customary claim is, it's excluded.  So you just use
11 it to be very clear as to what might be included or
12 excluded as a defined term.
13 BY MR. ALEXANDER:
14    Q.   Can there be different definitions for usual
15 and customary?
16    A.   There are going to be different words
17 utilized but the intent and definition has always
18 been the same.
19    Q.   So no matter what the particular words are
20 used to define usual and customary, it all matches
21 the industry understanding.  That's your
22 understanding?
23         MR. LEIB:  Objection.
24         THE WITNESS:  And it matches my
25 understanding.  I can't speak for the industry.  I

CONFIDENTIAL

Page 129

1  can speak for what I have seen that they -- it always
2  points back to the way I defined it, that it is the
3  usual and customary price and the member pays, the
4  patient pays.
5  BY MR. ALEXANDER:
6      Q.   What role does usual and customary price as
7  a concept play with regards to the adjudication of
8  prescription drug benefits?
9           MR. LEIB:  Objection.
10          THE WITNESS:  So usual and customary -- say
11 that again.  The role it plays --
12 BY MR. ALEXANDER:
13     Q.   Right.  Why is the concept of usual and
14 customary important in the prescription drug benefit
15 context?
16     A.   Okay.
17          MR. LEIB:  Objection.
18          THE WITNESS:  Payers do not want to pay more
19 than your usual and customary price.  So when you
20 adjudicate a claim, they want to know what the price
21 is so they don't pay more than that.
22 BY MR. ALEXANDER:
23     Q.   That generally reflects the concept that
24 payers who are providing an insurance benefit to
25 members don't want their members to pay more than

CONFIDENTIAL



CONFIDENTIAL

Page 302

1 ████████  ████████████  ████████
2 ██████████  ████████████████████
3 ██████████████████████████████████
4 ██████████████████████████████████
5 ████████████████████████  ██████████
6 ██████

7    Q.   Okay.  Okay.  We can set this exhibit aside.
8         Just asking about PSC in general, would you
9  agree the PSC membership was open to the general
10 public?
11        MR. LEIB:  Objection.
12        THE WITNESS:  The PSC card is open to the
13 general public, is that the question?
14 BY MR. ALEXANDER:
15    Q.   Yes.
16    A.   It is.
17    Q.   Okay.  Are you aware of any instance where
18 Walgreens rejected the application of a member who
19 otherwise met PSC's eligibility requirements?
20    A.   I am not aware.  I would not be aware.  I
21 didn't run eligibility.
22    Q.   Did you know of any instance?
23    A.   I can't recall of any.
24    Q.   Is it correct that Walgreens considered the
25 PSC to be a club?

CONFIDENTIAL

Page 303

1  A. It was a club, yes.
2  Q. To your knowledge, when was the last
3  gathering of PSC membership?
4  MR. LEIB: Objection.
5  BY MR. ALEXANDER:
6  Q. You can answer.
7  A. I don't know.
8  Q. Do you know if there was ever a gathering of
9  PSC membership?
10  A. I'm not sure.
11  Q. I'm sorry, is it -- I asked, do you know if
12  there was a gathering and you are saying --
13  A. I'm not sure. I don't know. There may have
14  been. I don't know.
15  Q. To your knowledge, do PSC members ever
16  gather to perform activities together?
17  A. I don't know.
18  MR. LEIB: Objection.
19  BY MR. ALEXANDER:
20  Q. When do PSC members vote to elect officers?
21  MR. LEIB: Objection.
22  THE WITNESS: I don't know if there's
23  officers to elect.
24  BY MR. ALEXANDER:
25  Q. Do you know if there are any elected

CONFIDENTIAL

Page 304

1 officials of the Prescription Savings Club?
2     A.   I don't think there are.
3     Q.   What common creed do Prescription Savings
4 Club members share?
5          MR. LEIB:  Objection.
6 BY MR. ALEXANDER:
7     Q.   You can answer.
8     A.   I don't know if there's a creed.  You know,
9 it's possible some of the members talk about the club
10 because they love it, so --
11    Q.   But no official creed of the PSC.
12    A.   No.  Not that I know.
13    Q.   Is there an official seal of the
14 Prescription Savings Club?
15    A.   It had a marketing brochure so there might
16 have been a picture of, you know, a brand on it or
17 something.
18    Q.   Nothing like a crest or anything like that.
19 Right?
20    A.   Not that I know of, no.
21         MR. ALEXANDER:  I have no further questions
22 at this time subject to redirect.  Thank you for
23 taking the time to spend as much time with us today
24 as you did.
25         THE WITNESS:  No problem.

CONFIDENTIAL

Page 305

1   MR. LEIB: Why don't we go off the record
2   for a second.
3   THE VIDEOGRAPHER: We are going off the
4   record. The time is now 5:54. This is the end of
5   media unit number 10.
6   (Discussion off the record.)
7   THE VIDEOGRAPHER: We are going back on the
8   record. This is the beginning of media unit number
9   11. The time is now 5:58.
10
11   EXAMINATION
12
13  BY MR. LEIB:
14   Q. Ms. Ewing, this is Michael Leib with
15  Walgreens. I just have a couple of questions for
16  you.
17   If you can look at Exhibit 236, and that is
18  the PCS Health Systems, Inc. provider agreement. I
19  believe we established earlier it was from 2001.
20  ████████████████████████████████████████
21  ████████████████████████
22  ██    ███
23  ██  ████████████████████████████████████████
24  █████████████████████████████████████
25  █████████████████████████

CONFIDENTIAL

Page 314

C O N F I D E N T I A L

1  STATE OF ARIZONA         )
                            ) SS
2  COUNTY OF MARICOPA       )

3

4          BE IT KNOWN that the foregoing deposition was
5  taken by me, Jardene L. Platt, Certificate No. 50937, a
6  certified reporter for the state of Arizona, that prior to
7  being examined, the witness named was duly sworn to
8  testify to the whole truth, that the questions propounded
9  and the answers of the witness thereto were taken down by
10 me and thereafter reduced to computerized transcription
11 under my direction and supervision; that the foregoing is
12 a true and correct transcript of all proceedings had upon
13 the taking of said deposition, all done to the best of my
14 skill and ability.  Read and sign was not requested by the
15 witness.
16         I further certify that I am in no way related to
17 any party to said action nor in any way interested in the
18 outcome thereof.
19         DATED at Phoenix, Arizona, this 31st day of
20 January, 2020.

21                    _____
22                    JARDENE L. PLATT, RPR
23                    Certificate No. 50937
24
25