# EXHIBIT 7

Page 1

1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF ILLINOIS

3   EASTERN DIVISION

4   --------------------------------x

5   DOROTHY FORTH, CYNTHIA RUSSO,

6   INTERNATIONAL BROTHERHOOD OF

7   ELECTRICAL WORKERS LOCAL 38

8   HEALTH AND WELFARE FUND, LISA

9   BULLARD, STEAMFITTERS FUND LOCAL

10  439, INTERNATIONAL UNION OF

11  OPERATING ENGINEERS LOCAL 295-

12  295C WELFARE FUND, and RICARDO

13  GONZALES, On Behalf of Themselves and

14  All Others Similarly Situated,

15          Plaintiffs,

16    vs.          Case No. 1:17-cv-02246

17  WALGREEN CO.,

18          Defendant.

19  --------------------------------x

20          VIDEOTAPE DEPOSITION OF

21             JAMES DEVINE

22        VIA ZOOM TELECONFERENCE

23        Tuesday, July 14, 2020

24              9:58 a.m.

25

Page 2

1

2    Reported by:

3    Maureen Ratto, RPR, CCR

4

5                        *  *  *

6

7         Deposition of JAMES DEVINE, held

8    via Zoom Teleconference, hosted by

9    ROBBINS, GELLER, RUDMAN & DOWD, LLP,

10   pursuant to notice, before Maureen

11   Ratto, Certified Court Reporter,

12   License No. XI01165, Registered

13   Professional Reporter, License No.

14   817125, and Notary Public.

15

16                       *  *  *

17

18

19

20

21

22

23

24

25

Page 3

1    A P P E A R A N C E S :

2

3    Counsel for the Plaintiffs:

4    ROBBINS, GELLER, RUDMAN & DOWD, LLP

5    120 East Palmetto Park Road

6    Boca Raton Florida 33432-4809

7    (561) 961-2217

8    BY: ERIC S. DWOSKIN, ESQ

9        edwoskin@rgrdlaw.com

10       JASON ALPERSTEIN, ESQ.

11       jalperstein@rgrdlaw.com

12

13   Counsel for the Defendants:

14   REED SMITH, LLP

15   1301 K Street, N.W., Suite 1000

16   Washington, D.C., 20005

17   (202) 414-9220

18   BY: SELINA P. COLEMAN, ESQ.

19       scoleman@reedsmith.com

20       KRISTIN B. PARKER, ESQ.

21       kparker@reedsmith.com

22

23   ALSO PRESENT:

24   RON MARRAZZO, Legal Video Specialist

25   PAUL BAKER, Technical Concierge



Page 62



Page 63



Page 69









Page 73

1   ████████

2   ██ ███ ███ ███ ███ ███ ████████

3   ████████ ███ ███████ ███████ ███ ███

4   ████████ ███ ███ ███████ ███ ████████

5   ██████████████ █ ███████ █ █ ███ ████

6   ███ ██████ ███████ ████ ███ █ ███

7   █████████ ███ ███████ █████ █ ███ ████

8   ██████

9   ██ ████ ████ ███████ ███████ ███ ██

10  ███ ████████ ████ ██ ████ ████ ██

11  ████████ █████████ ███ ██

12  ██ ████

13      Q.     Let me show you her e-mail

14  where she says this.

15           Mr. Devine, this is not one of

16  the exhibits that's tabbed, that says

17  tabbed on your paper folder. This is an

18  exhibit that's -- it just has the Bates

19  number on the front.

20      A.     Okay.

21      Q.     So when you take out your

22  stack they're in Bates number, they start

23  from lowest to highest and the Bates

24  number of the document I want you to

25  find, it ends in -35610.



Page 109

1   true. There was a lot of marketing around

2   the savings guarantee and we're going to

3   look at that. Let me move on.





Page 111



Page 124

1      A.      I have not.

2      Q.      But you accept that Walgreens

3  has admitted that they marketed and

4  advertised a PSC to potential PSC

5  customers as risk free, right --

6            MS. COLEMAN:   Objection to

7       form.

8      Q.      -- because of the savings

9  guarantee?

10     A.      Okay.

11     Q.      And you, yourself, used those

12  words at least once.

13            Would you agree that the

14  purpose of a savings guarantee is to give

15  the consumer confidence that they're

16  going to realize savings relative to cash

17  through the PSC?

18            MS. COLEMAN:   Objection, form.

19     A.      Yes.

20     Q.      And specifically, because the

21  savings guarantee relates to the

22  enrollment fee, that Walgreens wanted to

23  give the consumer confidence that they

24  would save at least the amount of the

25  enrollment fee by joining the PSC; is

Page 125

1   that correct?

2           MS. COLEMAN:  Objection to

3       form.

4       A.    Over the course of the year,

5   yes.

6       Q.    Over the course of the year,

7   okay.

8           So if over the course of the

9   year Walgreens was guaranteeing that the

10  consumer would save at least the amount

11  of the enrollment fee, would you agree

12  that Walgreens was trying to give the

13  consumer confidence that in practice

14  there was no financial risk for paying

15  the $20 enrollment fee?

16          MS. COLEMAN:  Objection to

17      form.

18      A.    Yes. I guess guarantee is a

19  guarantee.

20      Q.    Okay. Perfect. And we talked

21  about this before, reinforcing value.

22          When you guys were

23  conceptualizing PSC 2.0 was part of the

24  idea that the savings guarantee could be

25  used at the pharmacy counter to overcome

Page 126

1   potential objections by the consumer

2   about the $20 enrollment fee?

3          MS. COLEMAN:  Objection to

4      form.

5      A.    I guess it could be. It

6   depends on, you know, how the pharmacy

7   tech or the pharmacist addressed it with

8   the customer, but it could be.

9      Q.    Okay.

10     A.    You know, they would go

11  through all the benefits.

12         MR. DWOSKIN:  Okay. Cool. So I

13     think now would be a good time to

14     take a break. I'm kind of hungry

15     for lunch. Does that work for you

16     guys?

17         THE WITNESS: Yes.

18         MS. COLEMAN:  Sounds good.

19         MR. DWOSKIN:  Just remember to

20     mute your line. Selina, what would

21     be a good time to come back, 30

22     minutes?

23         MS. COLEMAN:  I don't know, a

24     little longer to be on the safe

25     side.  Let's say maybe for us 1:20



Page 129

1    ending Bates 363.

2         A.    Okay. I'm there.



9       Q.    Okay. So this PowerPoint is

10 from April 30th, 2015. You were still at

11 Walgreens at that time, right?

12       A.    I think I was but I was not

13 involved in PSC anymore.

14       Q.    You were not involved in PSC?

15       A.    No.

16       Q.    Do you know who would have

17 taken over for you at that time?

18       A.    Yeah. It would have been a guy

19 by the name of Dale, I think maybe, Drizd

20 or Drazd or something like that and

21 another name Irna Messick, those two

22 people.

23       Q.    Okay. Let's put that exhibit

24 away.

25             MR. DWOSKIN:  Paul, can you

Page 132

1        introduce tab 6?

2              MR. BAKER:   One moment. You

3        can refresh.

4              (Exhibit 288, e-mail re:

5        Background Information on PSC,

6        Bates Walgreens-Forth 00060136,

7        with attached presentation,, was

8        received and marked on this date

9        for identification.)

10       Q.    I'm going to ask the court

11  reporter to introduce as Exhibit 288 a

12  document Bates stamped Walgreens-Forth

13  00060136, which is an e-mail from Jim

14  Devine to Mike Suwalski titled Background

15  Information on PSC, dated June 6, 2013.

16  The e-mail attaches a PowerPoint

17  presentation Bates stamped

18  Walgreens-Forth 00060139 entitled

19  Prescription Savings Club White paper.

20             Mr. Devine, do you recognize

21  this document?

22       A.    Not particularly, but I could

23  have, yeah. Somewhat, I guess. I'm not

24  familiar with it totally, no.

25             MS. COLEMAN:   I'll note for

Page 148

18    A.    Yes.

19    Q.    Okay. So would you agree that

20  you and your team at Walgreens were

21  conscious of the fact that in order to

22  maintain and improve market share, we'll

23  say with respect to cash volume, that

24  that was one of the reasons why Walgreens

25  developed and maintained the PSC?

Page 149

1          MS. COLEMAN:   Objection to
2      form.
3          A.    I would -- I would say that
4   one of the real reasons we were losing
5   volume was impact of competitive pressure
6   that was put on our cash paying customers
7   by other discount programs or other
8   pharmacies offering, for example, a $4
9   generic or Walmart and those programs put
10  in place were causing our cash price to
11  erode and that was one of the reasons or
12  the reason why we put in PSC. It was the
13  fact that our cash volume was going down
14  and we needed to react to that and PSC
15  was the mechanism that we put in place.
16       Q.    Okay. So PSC was designed to
17  maintain market share for cash paying
18  customers because you had competitors who
19  were, let's say, undercutting Walgreens;
20  is that fair to say?
21          MS. COLEMAN:   Objection to
22      form.
23       A.    Yes.
24       Q.    Okay. And so you said that was
25  the reason why PSC was created?

Page 150

1      A.    PSC was created for that

2    reason and to help our uninsured

3    customers to be able to purchase their

4    medications at a competitive price.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 151

17      Q.    Just to button up that point,

18  we talked about the market of the savings

19  guarantee. Do you remember that?

20      A.    Yes.

21      Q.    And we discussed how the part

22  of the marketing was to give the consumer

23  -- part of the marketing of the savings

24  guarantee was to give the consumer

25  confidence that if they paid the $20

Page 271

1          C E R T I F I C A T E

2          I, MAUREEN M. RATTO, a

3    Registered Professional Reporter, do

4    hereby certify that prior to the

5    commencement of the examination, JAMES

6    DEVINE was sworn by me to testify the

7    truth, the whole truth and nothing but

8    the truth.

9          I DO FURTHER CERTIFY that the

10   foregoing is a true and accurate

11   transcript of the proceedings as taken

12   stenographically by and before me at

13   the time, place and on the date

14   hereinbefore set forth.

15         I DO FURTHER CERTIFY that I am

16   neither a relative nor employee nor

17   attorney nor counsel of any of the

18   parties to this action, and that I am

19   neither a relative nor employee of such

20   attorney or counsel, and that I am not

21   financially interested in this action.

22

23

24         MAUREEN M. RATTO, RPR

25         License No. 817125