# EXHIBIT 9

Page 1

1  IN THE UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF ILLINOIS
3  EASTERN DIVISION
4  DOROTHY FORTH, DONNA BAILEY,       )
5  LISA BULLARD, RICARDO              )
6  GONZALES, CYNTHIA RUSSO,           )
7  TROY TERMINE, INTERNATIONAL        )
8  BROTHERHOOD OF ELECTRICAL          )
9  WORKERS LOCAL 38 HEALTH AND        )
10 UNION OF OPERATING ENGINEERS       )
11 LOCAL 295-295C WELFARE FUND,       )
12 AND STEAMFITTERS FUND LOCAL        )
13 439, on Behalf of Themselves       )
14 and All Others Similarly           )
15 Situated,                          )
16            Plaintiffs,   ) Civil No.
17       vs.                ) 17-cv-02246
18 WALGREEN CO.,                      )
19            Defendant.    )
20       The videotaped deposition of LISA
21 BULLARD, called as a witness for examination,
22 taken pursuant to the Federal Rules of Civil
23 Procedure of the United States District Courts
24 pertaining to the taking of depositions, taken
25

Page 2

1  1  before ANDREA L. KIM, a Certified Shorthand
2  2  Reporter of said state, CSR No. 84-3722, at Suite
3  3  3000, 150 South Wacker Drive, Chicago, Illinois,
4  4  on the 7th day of February, A.D. 2019, at 9:30
5  5  a.m.
6  6
7  7  PRESENT:
8  8
9  9       TUSA P.C.,
10 10      (P.O. Box 566,
11 11      Southold, New York 11971
12 12      631-407-5100), by:
13 13      MR. JOSEPH S. TUSA,
14 14      joseph.tusapc@gmail.com,
15 15            -and-
16 16      SCOTT + SCOTT, ATTORNEYS AT LAW, LLP,
17 17      (230 Park Avenue, 17th Floor,
18 18      New York, New York 10169
19 19      212-223-6444), by:
20 20      MR. JOSEPH P. GUGLIELMO,
21 21      jguglielmo@scott-scott.com,
22 22           appeared on behalf of the Plaintiffs;
23 23
24 24
25

Page 11

1  Q. Do you have any physical or mental impairments that might affect your testimony?
3  A. No.
4  Q. Do you have any memory issues that might affect your ability to testify today?
6  A. No.
7  Q. Have you ever been involved in any lawsuits before?
9  A. No.
10  MR. TUSA: Objection to form. That's okay.
11  BY MR. LEIB:
12  Q. Have you ever been convicted of any crime?
14  A. No.
15  Q. How did you prepare for this deposition?
17  MR. TUSA: I counsel you in answering counsel's question just not to disclose the substance of content of your conversations with counsel, but otherwise you may answer.
21  BY THE WITNESS:
22  A. I spoke with my lawyers.
23  BY MR. LEIB:
24  Q. Did you meet in person with your

Page 12

```
 1     1    lawyers?
 2     2         A.    I did.
 3     3         Q.    How many times?
 4     4         A.    Oh, gosh, I just met Joe -- well, both
 5     5    of you I just met.  So once -- once that we
 6     6    physically -- excuse me -- once.
 7     7         Q.    Was that yesterday?
 8     8         A.    Oh, I see where you are going.  All
 9     9    right.  I am a little confused.
10    10               Once in New York, and then again in
11    11    Chicago.  So twice.
12    12         Q.    When did you meet in New York?
13    13         A.    On -- what is today's date?
14    14         MR. TUSA:  Today is Thursday the 7th.
15    15    BY THE WITNESS:
16    16         A.    So Tuesday.
17    17    BY MR. LEIB:
18    18         Q.    And when did you meet in Chicago?
19    19         A.    Wednesday.
20    20         MR. TUSA:  No.  I'm sorry.
21    21    BY THE WITNESS:
22    22         A.    I'm sorry.  I am a little confused and
23    23    nervous.
24    24
25
```

Page 13

```
 1    1   BY MR. LEIB:
 2    2         Q.   Just relax.
 3    3         A.   Just give me a moment.
 4    4         Q.   So let's --
 5    5         A.   I took the train down from Providence
 6    6   to New York Monday, and I am thinking I met with
 7    7   my attorneys Tuesday which would have been the
 8    8   5th in New York.
 9    9         Q.   Okay.
10   10         A.   And then again Wednesday which was
11   11   yesterday and then today.  So three times.
12   12         Q.   And where did you meet with them
13   13   yesterday?
14   14         A.   In -- in -- we flew in yesterday.  So
15   15   New York, Chicago, both places.
16   16         Q.   All right.  Let's start with Tuesday.
17   17              How long did you meet with counsel on
18   18   Tuesday?
19   19         A.   When I was in their office, I forgot
20   20   what time I got there.  I don't remember right
21   21   now.  I'm sorry.  I don't remember.
22   22         Q.   Would you say it was for more than one
23   23   hour?
24   24         A.   Yes.
25
```

Page 14

1  Q. Would you say it was more than three
hours?
3  A. It was about three to four hours.
4  Q. And on Wednesday when you flew to
Chicago together, did you meet prior to flying in
order to prepare for your deposition?
7  A. We met at the airport.
8  Q. And then when you arrived yesterday,
did you have any preparation sessions with your
lawyer?
11 A. Yes.
12 Q. And how long did that last?
13 A. I would say about an hour.
14 Q. In your session on Tuesday, was anyone
present other than your lawyers?
16 A. No.
17 Q. And were the two -- were the lawyers
you met with on Tuesday the two lawyers that are
here today?
20 A. Yes.
21 Q. And when you met with your lawyers on
Wednesday, yesterday, was there anyone present
who was not a lawyer?
24 A. No. Well, me, no.

Page 15

```
 1    1          Q.    Other than you.
 2    2                On Tuesday did you look at any
 3    3    documents with your lawyers?
 4    4          A.    Yes.
 5    5          Q.    Did those documents refresh your
 6    6    recollection?
 7    7          A.    It did.
 8    8          Q.    Do you remember what documents you
 9    9    looked at?
10   10          A.    It was the complaint against
11   11    Walgreens.
12   12          Q.    Any other documents?
13   13          A.    I don't recall.  I don't recall.
14   14          Q.    You may have.  You are just not sure?
15   15          A.    I'd like to say it was all -- only the
16   16    complaint because it was all inclusive, but I
17   17    would say the complaint only.
18   18          Q.    And yesterday did you review any
19   19    documents?
20   20          A.    The complaint.
21   21          Q.    Any other documents?
22   22          A.    Not that I can recall.
23   23          Q.    Did you talk on the phone with your
24   24    lawyers to prepare for the deposition?  And I
25
```

```
                                                      Page 16
 1    1   don't mean scheduling the deposition.  I mean
 2    2   preparing for it.
 3    3        A.    No, no.
 4    4        Q.    So the only two meetings that you had
 5    5   to prepare for your deposition were on Tuesday
 6    6   and Wednesday?
 7    7        A.    Correct.
 8    8        Q.    Did you speak with anybody about this
 9    9   deposition other than your two lawyers?
10   10        MR. TUSA:  I will let you answer yes or no.
11   11   BY THE WITNESS:
12   12        A.    Yes.
13   13   BY MR. LEIB:
14   14        Q.    And who was that?
15   15        A.    My husband only.
16   16        Q.    And what's your husband's name?
17   17        A.    Robert Giglio, G-I-G-L-I-O.
18   18        Q.    And other than logistics such as I am
19   19   going to a deposition and I am taking a flight at
20   20   this time, I am not asking about those sort of
21   21   conversations, but did you have any conversations
22   22   with your husband about the substance of the
23   23   allegations of the complaint?
24   24        MR. TUSA:  Again, I will let you answer yes
25
```

Page 61

```
 1   under advisement when we receive it.
 2   BY MR. LEIB:
 3       Q.   Do you understand that if this case
 4   goes to trial, that the trial will be here in
 5   Chicago?
 6       A.   Yes.
 7       Q.   Do you intend to attend the trial if
 8   your lawyers ask you to?
 9       A.   Yes.
10       Q.   Do you know why you filed this
11   lawsuit?
12       A.   I filed this lawsuit with my attorneys
13   because Walgreens seemed to be overcharging me
14   and others.
15       Q.   And how do you believe Walgreens is
16   overcharging you and others?
17       A.   Well, the charges I saw for me were
18   the same as for people -- no, excuse me, excuse
19   me.  The charges I saw for me were higher, higher
20   than others who did not have insurance.  I have
21   insurance.  I have Medicare insurance.  That's
22   it.
23       Q.   Do you understand that you are seeking
24   to bring this case as a class action?
25
```

Page 62

```
 1    A.    I do.
 2    Q.    Do you know what a class action is?
 3    A.    I do.
 4    Q.    What is a class action?
 5          MR. TUSA:  I am just going to counsel you
 6    here to not divulge the content of communications
 7    with your attorneys.  If you can otherwise
 8    answer, you may.
 9    BY THE WITNESS:
10    A.    A class action where several people
11    are -- I can't put it in any kind of legal or
12    lawyer terms, but there are -- a class action
13    means there are a bunch of people who have the
14    same problem or -- class action, I can't really
15    put it into words, Michael.
16          I just know it's people all that have
17    been harmed in some way or something has been
18    done to one, has been done to all, and they or
19    their attorneys or someone gets together to make
20    it right somehow through legal action.  That's my
21    version of it.
22    BY MR. LEIB:
23    Q.    Do you know what your role is in this
24    litigation?
25
```

```
 1   1         A.   I am one of many -- I am guessing I am
 2   2   one of many, and I will just speak the truth and
 3   3   just -- you know, as much as I can in my own
 4   4   words.  That's the only thing I can do, and
 5   5   others will follow if they -- others have
 6   6   probably already begun this process.  I am just
 7   7   one person, but there are many, many others that
 8   8   would have the same issue.  That's what a class
 9   9   action is.
10  10         Q.   I am now not asking you what a class
11  11   action is.
12  12         A.   I know.
13  13         Q.   I am asking specifically what your
14  14   role in this litigation is.
15  15              Do you know what your role in this
16  16   litigation is?
17  17         A.   Well, I am here again -- I am here to
18  18   bring Walgreens to task, if you will, and I
19  19   simply wonder why they are charging -- speaking
20  20   of myself as an individual, why they are charging
21  21   me more than they are charging others.  Other
22  22   people have no insurance.  I am paying more.  Why
23  23   is that, and why every single time?  I am
24  24   curious.
25
```

Page 64

```
 1    Q.    Do you know what the phrase class
 2    representative means?
 3    A.    Yes, it's not even a guess.  It sounds
 4    like I am one of many or represented one of many.
 5    Is that correct or no?
 6    Q.    Fortunately the way this works is I
 7    ask you questions.  You don't get to ask me
 8    questions.
 9    A.    Well, there you go.
10    Q.    Did anyone ever tell you what it means
11    to be a class representative?
12          MR. TUSA:  I will let you answer yes or no.
13    BY THE WITNESS:
14    A.    Yes, and you want me to remember what
15    was said?
16    BY MR. LEIB:
17    Q.    I want you to just tell me what you
18    understand your role as class representative is.
19    A.    I thought I had.  It may not sound as
20    good as it should, but I am one -- if I am
21    representing a class, it's like others standing
22    on my shoulders perhaps.  I don't know.  It's
23    part of that.  I am just not saying it correctly.
24    Q.    You understand that you are a class
25
```

Page 65

1  representative, correct?
2      A.   Yes.  Oh, sorry, that was a little --
3      Q.   Do you understand your obligations as
4  a class representative?
5      A.   I believe I do.
6      Q.   What do you understand your
7  obligations are as a class representative?
8      A.   To appear here, to appear if this goes
9  to trial, to talk with my attorneys.  I don't
10 know what else to say there, Michael.  I hope you
11 are turning the page.
12     Q.   Do you understand what your financial
13 obligations are as a class representative?
14          MR. TUSA:  Again, I will let you answer yes
15 or no.
16 BY THE WITNESS:
17     A.   No, no.
18          MR. TUSA:  I don't know that he is using
19 that anymore.
20 BY MR. LEIB:
21     Q.   We will probably be looking at that
22 later.  So keep it by your side.
23          Are you paying for your plane ticket
24 here?
25

Page 72

```
1    BY THE WITNESS:
2         A.    I don't recall.
3    BY MR. LEIB:
4         Q.    Do you recall approximately how long
5    ago it was?
6         A.    I don't.
7         Q.    How often do you speak with your
8    counsel?
9         A.    I don't -- I don't recall that.
10   Speaking, emailing, or one or the same?
11        Q.    Let's include email.  When was the
12   last time you had -- strike that.
13        A.    Okay.
14        Q.    Other than anything relating to this
15   deposition, scheduling the deposition, preparing
16   for the deposition, when was the last time you
17   communicated with your counsel in any way?
18        A.    I don't remember that, Michael.  That
19   would be in records in my email file, but I don't
20   remember.
21        Q.    How often do you communicate with your
22   counsel in any form?
23        A.    Well, this week every day and a lot,
24   but prior to this, again, I reiterate we have
25
```

Page 73

1  been in touch, but usually it's easier for
2  everyone by email, but I don't recall when the
3  last one was received or what it was even about.
4      Q.   Have you discussed strategy of the
5  case with your counsel?
6           And, again, I am not asking for the
7  substance of the communication, but have you
8  discussed strategy of the case with your counsel?
9      MR. TUSA: Objection to form, but you may
10 answer.
11 BY THE WITNESS:
12      A.   Yes.
13 BY MR. LEIB:
14      Q.   Have you discussed legal tactics?
15      A.   What does that mean legal tactics?
16      Q.   Things that the lawyers might do in
17 this lawsuit.
18      MR. TUSA: Objection to form. You may
19 answer.
20 BY THE WITNESS:
21      A.   I don't think of it as that, but we
22 have talked about the case, yes.
23 BY MR. LEIB:
24      Q.   I am separating out things like
25

Page 74

```
 1   talking about collecting documents or scheduling
 2   a deposition.  Other than talking about
 3   collecting documents and scheduling a deposition
 4   and preparing for the deposition, between the
 5   time that this first complaint was filed, have
 6   you had communications with your client -- with
 7   your counsel?
 8        A.   From this point?
 9        Q.   From the time that the complaint was
10   filed until today.
11        MR. TUSA:  You mean the first amended?
12        MR. LEIB:  Uh-huh.
13        MR. TUSA:  Okay.
14   BY THE WITNESS:
15        A.   I don't recall.  Why are these the
16   same dates?
17   BY MR. LEIB:
18        Q.   Do you recall -- you can put those
19   documents aside for now.
20        A.   Oh, never mind, okay, yes.
21        Q.   Do you recall when you first met
22   counsel?
23        MR. TUSA:  Objection to form.
24
25
```

Page 218

1               CERTIFICATE
2                   OF
3        CERTIFIED SHORTHAND REPORTER
4
5            I, ANDREA L. KIM, a State of Illinois
6   Licensed Certified Shorthand Reporter, License
7   number 84-3722, do hereby certify:
8            That previous to the commencement of
9   the examination of the aforesaid witness, the
10  witness was duly sworn or affirmed to testify the
11  whole truth concerning the matters herein;
12           That the foregoing deposition
13  transcript was reported stenographically by me,
14  was thereafter reduced to typewriting under my
15  personal direction and constitutes a true and
16  accurate record of the testimony given and the
17  proceedings had at the aforesaid deposition;
18           That the said deposition was taken
19  before me at the time and place specified;
20           That I am not a relative or employee
21  or attorney or counsel for any of the parties
22  herein, nor a relative or employee of such
23  attorney or counsel for any of the parties
24
25

1  hereto, nor am I interested directly or
2  indirectly in the outcome of this action.
3
4           IN WITNESS WHEREOF, I do hereunto set
5  my hand and affix my seal of office at Chicago,
6  Illinois, this 15th day of February, 2019.
7
8
9
10
11                    *Andrea L. Kim* (signature)
12                    ANDREA L. KIM, CSR
13                    License No. 84-3722.
14
15
16
17
18
19
20
21
22
23
24
25