# EXHIBIT 11

```
                                                          Page 1

 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION
 3   _____
     DOROTHY FORTH, DONNA BAILEY,           |
 4   LISA BULLARD, RICARDO GONZALEZ,        |
     CYNTHIA RUSSO, TROY TERMINE,           |  Civil No.
 5   INTERNATIONAL BROTHERHOOD OF           |  17-cv-02246
     ELECTRICAL WORKERS LOCAL 38            |
 6   HEALTH AND WELFARE FUND,               |
     INTERNATIONAL UNION OF OPERATING       |
 7   ENGINEERS LOCAL 295-295C               |
     WELFARE FUND, AND                      |
 8   STEAMFITTERS FUND LOCAL 439, on        |
     Behalf of Themselves and All           |
 9   Others Similarly Situated,             |
                                            |
10       Plaintiffs,                        |
                                            |
11   vs.                                    |
                                            |
12   WALGREEN CO.,                          |
                                            |
13       Defendant.                         |
     _____|
14
15            V I D E O   D E P O S I T I O N
16                         o f
17                   CYNTHIA RUSSO
18            taken on behalf of Defendant
19
         DATE:            February 26, 2019
20
         TIME:            9:34 a.m. to 2:56 p.m.
21
         PLACE:           Brinks Gilson & Lione
22                        401 East Jackson Street, Suite 3500
                          Tampa, Florida  33602
23
         BEFORE:          Dawn A. Hillier, RMR, CRR, CLR
24                        Notary Public - State of
                          Florida, at Large
25
         JOB NO:          3195895
```

Page 10

```
 1      Q    Do you have any memory issues that may affect
 2   your ability to testify today?
 3      A    No.
 4      Q    How did you sleep last night?
 5      A    Actually pretty good for...
 6           Pretty good.
 7      Q    Have you been involved in any other lawsuits
 8   other than the one against Astoria Federal?
 9      A    No.
10      Q    Have you ever been convicted of a crime?
11      A    No.
12      Q    How did you prepare for this deposition?
13      A    I collected the documents and I reviewed the
14   case with my attorney.
15      Q    Did you meet in person or on phone -- or did
16   you have a conference on the phone with your attorneys
17   to prepare for this case -- this deposition?
18      A    We met in person.
19      Q    How many times?
20      A    Twice.
21      Q    When was that?
22      A    Yesterday and approximately two weeks ago.
23      Q    When you met two weeks ago, where did you
24   meet?
25      A    Babylon, New York.
```

                                                    Page 11

1      Q     Where is Babylon, New York?
2      A     Long Island, Suffolk County, South Shore.
3      Q     And who did you meet with?
4      A     Mr. Tusa.
5      Q     And about how long did you meet with him for?
6      A     Hour and a half, two hours.
7      Q     Did you review any documents with him at that
8    time?
9      A     Yes.  Yes.
10     Q     Did any of those documents refresh your
11   recollection as to events in this case?
12     A     Yes.
13     Q     Which documents refreshed your recollection?
14     A     The insurance cards and we looked at -- I
15   looked at some of the medications I was on.
16     Q     When you say you looked at some of the
17   medications you're on, was that a document?
18     A     Yeah.  There was a document.  There was I
19   think a printout from Walgreens.
20     Q     We'll mark a document as Exhibit 26,
21   defendant's deposition Exhibit 26.
22           (Exhibit 26 was marked.)
23           MR. TUSA:  The court reporter's going to mark
24      one and give it to you.
25   BY MR. LEIB:

Page 20

1  A  It was obviously before that date, so it would
2  have been a couple of years ago.
3  Q  Did you have -- strike that.
4     How did you obtain this document from
5  Walgreens?  Did you write to them or did you obtain it
6  online?
7  A  I wrote to them.
8  Q  And was it you who wrote to them?
9  A  Yes.
10 Q  We may come back to that document later, but
11 we can put it aside for now, Ms. Russo.
12    You said that you looked at some documents
13 with your counsel when you met with your counsel a
14 couple weeks ago in Babylon, New York.  And then some
15 documents refreshed your recollection.
16    So far, you've referred to insurance cards and
17 to what we've now established this document.  Are there
18 any other documents you looked at during that meeting
19 that refreshed your recollection of events of this case?
20 A  I don't think so, no.
21 Q  And where did you meet with your counsel
22 yesterday?
23 A  In St. Petersburg.
24 Q  And who did you meet with?
25 A  Mr. Tusa and Mr. -- Eric.

Page 21

1          I'm not trying that last name.
2          MR. DWOSKIN:  Dwoskin.
3  BY MR. LEIB:
4      Q   And how long did you meet with counsel?
5      A   Several hours.
6      Q   Can you put any more specific time than
7  several?
8      A   Three to four hours.
9      Q   Did you look at any documents with your
10 counsel yesterday?
11     A   Yes.
12     Q   Did any of those documents that you looked at
13 refresh your recollection as to events of this case?
14     A   Yes.
15     Q   What documents were those?
16     A   We looked at this one, (indicating).
17     Q   Exhibit 26?
18     A   Um-hum.
19     Q   Any other documents?
20     A   No.  Copies of the insurance card.
21     Q   So, the same, the same documents that you
22 looked at a couple weeks ago with your counsel or a
23 week, week and a half -- no, a couple weeks ago with
24 your counsel are the documents you reviewed yesterday,
25 those same documents refreshed your recollection of what

Page 22

1  you were being asked?
2     A   Um-hum.  Yes.
3         MR. TUSA:  Wait for him to finish.
4  BY MR. LEIB:
5     Q   During either of these two meetings, was
6  anyone present other than lawyers?
7     A   No.
8     Q   Were these the only deposition preparation
9  sessions that you had with your counsel?
10    A   Yes.
11    Q   Other than the meeting with your counsel, did
12 you review any documents in preparation of this
13 deposition?
14    A   No.
15    Q   You referred to Babylon, New York.  Do you
16 have a home in Babylon, or the area?
17    A   We did.
18    Q   You no longer do?
19    A   No.
20    Q   Where do you live now?
21    A   Palm Harbor, Florida.
22    Q   And what's your address?
23    A   656 Channing Drive.
24    Q   And how long have you lived there?
25    A   Almost 15 years.

Page 44

1  A  They charged me and others more because I was
2  insured for the Medicare D program, and they charged for
3  their very low-cost drug plan club.
4  Q  Do you believe you've been damaged by
5  Walgreens' actions?
6  A  Yes.
7  Q  How do you believe you've been damaged?
8  A  Financially.
9  Q  You were previously in a class action, so I
10 know you're familiar with what a class action is. Do
11 you understand what your role in this litigation is?
12 A  Yes.
13 Q  And what is that role?
14 A  To represent myself and others who were
15 harmed.
16 Q  Do you know what that means to represent
17 others who were harmed, in your words?
18 A  Because the others are either those who are
19 named or who are not named who may have been financially
20 harmed.
21 Q  Do you know what your obligations as a class
22 representative are?
23 A  Yes.
24 Q  And what are those obligations?
25 A  To meet with my attorney, to attend a

Page 45

1  deposition, and if necessary and able, to attend a
2  trial.
3      Q   And are you prepared -- well, strike that
4  question.
5      Why did you agree to be a class
6  representative?
7      A   Because I was financially harmed.
8      Q   Any other reason?
9      A   And so I'd be able to assist others.
10     Q   Any other reason?
11     A   No.
12     Q   I'm going to mark this as Exhibit 27.
13     MR. TUSA:  Mike, you want do this now or do
14 you want to take a short break first?
15     MR. LEIB:  We can take a break now.
16     THE VIDEOGRAPHER:  We're off the record at
17 10:24.
18     (A brief recess is had from 10:24 a.m. to
19 10:34 a.m.)
20     THE VIDEOGRAPHER:  We're back on the record at
21 10:34 a.m.
22 BY MR. LEIB:
23     Q   All right.  We'll hand the court reporter the
24 document that we'll mark as deposition Exhibit --
25 defendant's deposition Exhibit 27.

```
                                                          Page 46
 1              (Exhibit 27 was marked.)
 2    BY MR. LEIB:
 3         Q    Ms. Russo, do you recognize this document?
 4         A    Yes.
 5         Q    What is it?
 6         A    This is the actual complaint.
 7         Q    Have you read it before?
 8         A    Parts of it.
 9         Q    Which parts did you read before?
10         A    Parts that pertain to me.
11         Q    When did you first read it?
12         A    Is this the second amended part?
13         Q    This is the original complaint.
14         A    Oh, the original complaint?  Not the
15    amendment?
16         Q    No.  This is the original complaint.
17         A    A couple of years ago.
18         Q    Do you know if you read it before it was
19    filed?
20         A    No.
21         Q    You don't know one way or the other?
22         A    I don't know one way or the other.
23         Q    For the next two questions, I'm looking only
24    for yes-or-no answers.  Do you recall if your lawyers --
25    strike that.
```

Page 160

```
 1       Q     So you did the taxes for 2017?
 2       A     For the calendar year 2017.
 3       Q     Correct.
 4       A     Last -- last year, yes.
 5       Q     And do you recall whether you took a tax
 6   deduction for medical expenses?
 7       A     No.
 8       Q     You don't recall one way or the other?
 9       A     I do recall.
10       Q     And you did not?
11       A     I did not.
12       Q     For years prior to that, though, your husband
13   did the taxes and you wouldn't know.
14       A     And I wouldn't know.
15       Q     Were you asked to collect documents for this
16   case and provide them to your lawyer?
17       A     Yes.
18       Q     Tell me where you looked for documents.
19       A     My home computer, my iPad.  I looked
20   throughout the house.
21       Q     Did you -- do you have a different computer
22   than your husband?
23       A     Yes.
24       Q     Did you look on your husband's computer?
25       A     No.
```

Page 161

1  Q   Why not?
2  A   Because I never use it.
3  Q   Since he does the tax returns, or did prior
4  to --
5  A   Right.
6  Q   -- last year, is it possible he has
7  information regarding your prescription drug purchases?
8  A   I doubt it.
9  Q   Why do you doubt it?
10 A   Because he wouldn't put it in his computer,
11 no.
12 Q   Where would he put it?
13 A   If he had it -- if he had it, it would be in
14 with the rest of the tax documents.
15 Q   Did you look at the tax documents to see if
16 there was any information regarding any prescription
17 drug benefits?  Or I'm sorry, any prescription drug
18 purchases?
19 A   The old -- no, I did not look.
20 Q   Did you ask your husband to look for any such
21 documents?
22 A   I did ask.
23 Q   Did he look?
24 A   He's confused half the time.
25 Q   Do you know whether -- where those documents

Page 168

1      CERTIFICATE

2

3    STATE OF FLORIDA    )

4    COUNTY OF HILLSBOROUGH )

5        I, DAWN A. HILLIER, RMR, CRR, CLR certify that I
6    was authorized to and did stenographically report the
7    deposition of CYNTHIA RUSSO; that a review of the
8    transcript was requested; and that the transcript is a
9    true and complete record of my stenographic notes.

10

11       I further certify that I am not a relative,
12   employee, attorney, or counsel of any of the parties,
13   nor am I a relative or employee of any of the parties'
14   attorney or counsel connected with the action, nor am I
15   financially interested in the action.

16

17       DATED this 6th day of March, 2019.

18

19

20       *[signature]*

         DAWN A. HILLIER, RMR, CRR, CLR

21

22

23

24

25