# EXHIBIT 12

Page 1

1         IN THE UNITED STATES DISTRICT COURT
2        FOR THE NORTHERN DISTRICT OF ILLINOIS
3                   EASTERN DIVISION
4
5   DOROTHY FORTH, DONNA BAILEY,      )
    LISA BULLARD, RICARDO GONZALES,   )
6   CYNTHIA RUSSO, TROY TERMINE,      )
    INTERNATIONAL BROTHERHOOD OF      )
7   ELECTRICAL WORKERS LOCAL 38       )
    HEALTH AND WELFARE FUND,          )
8   INTERNATIONAL UNION OF OPERATING  )
    ENGINEERS LOCAL 295-295C WELFARE  )
9   FUND, AND STEAMFITTERS FUND       )
    LOCAL 439, on Behalf of           )
10  Themselves and All Others         )
    similarly Situated,               )
11                                    )
            Plaintiffs,               )
12                                    ) Case No.
        vs.                           ) 1:17-cv-02246
13                                    )
    WALGREEN CO.,                     )
14                                    )
            Defendant.                )
15
16
17       The videotaped deposition of EDWARD FOX,
18  taken before Maria S. Winn, CSR, RPR and CRR,
19  pursuant to the Federal Rules of Civil Procedure
20  for the United States District Courts pertaining
21  to the taking of depositions, at Reed Smith,
22  10 South Wacker Drive, Suite 4000, Chicago,
23  Illinois, commencing at 9:22 a.m. on May 7, 2019.
24

Page 16

1    documents for now.
2             In general, how did you go about
3    preparing for the topics -- for testifying about
4    the topics for which you will be providing
5    testimony today on behalf of the Fund?
6        A    I went through my own files, went through
7    the topics with our attorney.
8             That was really the two points that I
9    did.  Just...
10       Q    Did you speak with anyone else at the
11   Fund?
12       A    No.  Because I mean, I would know the
13   most information.  I mean, the Fund office is only
14   myself and three -- three clerks, so there's
15   not -- we don't have a large staff.  And I would
16   have -- in my own personal files -- would have the
17   most information than anybody in the Fund would
18   have.
19       Q    So there's only four people who work for
20   the Fund?
21       A    Correct.
22       Q    And three of those people provide more
23   administrative tasks?
24       A    Correct.

Page 20

```
 1      he was -- okay.  Good enough.
 2   BY MR. LEIB:
 3      Q    Did you talk with anyone outside of the
 4   Fund to prepare for this deposition, other than
 5   your attorneys?
 6      A    No.
 7      Q    And did you meet with your attorneys to
 8   prepare for this deposition?
 9      A    I did last night for about an hour, hour
10   and a half.
11      Q    About when did that meeting start?
12      A    Probably about 5:00 to about 6:30.
13      Q    So it started at about 5:00 and ended at
14   about 6:30?
15      A    Yes.
16      Q    And that was here in Chicago?
17      A    Yes.
18      Q    Did you have any phone -- well, strike
19   that.
20           Was that the only meeting you had with
21   your attorneys to prepare for this deposition?
22      A    In person, yes.
23      Q    Did you have any phone conferences with
24   your attorney to prepare for this deposition?
```

Page 21

```
 1       A    Yes.
 2       Q    How many phone conferences did you have
 3   with your attorneys to prepare for this
 4   deposition?
 5       A    Three.
 6       Q    Let's talk about the first one.
 7            When did that take place?
 8       A    I do not know the exact date, but
 9   probably about -- maybe three weeks ago.
10       Q    And who was on that call?
11       A    Joe Gulian -- is that right?
12            And then Don came in on some of the
13   calls.  I don't know which ones he act- -- if it
14   was the first, second, or third one that Don was
15   on, but definitely not the last one.  But I think
16   Don was on the second one.
17       Q    And about how long did that call take
18   place?
19       A    About an hour.
20       Q    Did you go over any documents during that
21   phone call?
22       A    During the phone call, no.  No, because I
23   didn't have any documents in front of me, no.
24       Q    When did the second phone call
```

Page 68

1  A   Well, initially, it was Brittany, like,
2  Wheatall, and then she has actually moved on and
3  we've got a new person.  I just met her, but I
4  can't remember her name.
5  Q   This document also says that Caremark PCS
6  has knowledge of the claims that the Fund is
7  asserting in this case from 2004 to present.
8       Do you know what knowledge Caremark PCS
9  would have about the claims that the Fund is
10 asserting in the case?
11 A   I mean, I requested claims data from
12 them, so that's all the knowledge that I would
13 know that they would have.
14 Q   As part of this litigation, you requested
15 information from them?
16 A   Correct.
17 Q   Has anyone at the Fund discussed the
18 allegations of the case with anyone at Caremark
19 PCS?
20 A   No.
21 Q   On the prior page, it lists at the bottom
22 Caremark, LLC.
23      Do you know what the difference between
24 Caremark PCS and Caremark, LLC, is?

Page 99

1       MR. LEIB:  I'm not agreeing that this is
2    outside the scope.  But we can have --
3       MR. GUGLIELMO:  You're asking him
4    questions on behalf of his personal knowledge,
5    which is the 30(b)(1).
6       So again, I'm not objecting to the
7    questions now.  I'm just noting for the record
8    that it's outside the scope of the notice.
9       You can ask your questions.
10  BY MR. LEIB:
11     Q    Have you reviewed the contract between
12  Express Scripts and Local 310?
13     A    I mean, once again, we have coalition
14  pricing with that as well.  So I mean, ultimately,
15  the base contract for that, you know, is done --
16  is done by the labor Rx coalition, and we just
17  sign on to it with what our plan design is.
18     Q    Have you read that labor Rx coalition
19  contract?
20     A    No.
21     Q    And you understand the Fund's seeking to
22  bring this case as a class action, right?
23     A    Yes.
24     Q    And do you know what a class action is?

Page 100

```
 1      A    Yes.
 2      Q    Can you give me a description?
 3      A    It's where a group of parties, whether
 4  individuals or entities, come together who have
 5  been harmed and seek damages on a particular
 6  matter.
 7      Q    You know the Fund is a named plaintiff in
 8  this class action, correct?
 9      A    Yes.
10      Q    Do you know what that means, to be a
11  named plaintiff?
12      A    The named plaintiff -- in layman's terms
13  that I understand, that we're going to -- you
14  know, we're going to litigate it for all the other
15  people that have been harmed, that aren't named
16  parties.
17      Q    And do you understand the Fund's
18  obligation as a class representative?
19      A    So I mean, we are fiduciary to the class,
20  I mean, that we have to, you know, provide the
21  information and then to -- how we've been harmed,
22  and then that will be brought -- let's see how to
23  explain it.
24           So then how -- how -- what damages we
```

Page 101

```
 1   have will -- can be calculated in some format, and
 2   then the other parties who are part of the class,
 3   who are not named, can also obtain damages as
 4   well.
 5            That's -- I mean, I'm not an attorney, so
 6   I don't really...
 7       Q    Does the Fund have any financial
 8   obligations as a class representative?
 9       A    Obligation?  Like financial obligation?
10   No.
11       Q    Is the Fund paying its lawyers anything?
12       A    No.
13       Q    Is the Fund being reimbursed for your
14   travel today, or for your travel to be here today?
15       A    Well, I mean, Scott & Scott paid for my
16   airline tickets.
17       Q    And is Scott & Scott paying for your
18   hotel?
19       A    They haven't yet, but I am going to send
20   them the bill.
21       Q    And do you understand that they will,
22   correct?
23       A    Correct.
24       Q    Are you personally, or is the Fund being
```

Page 279

1          (Document previously marked as
2          Defendant's Exhibit No. 13 for
3          identification.)
4    BY MR. LEIB:
5        Q    Do you recognize this document?
6        A    Yes.  This is the amended responses and
7    objections.
8        Q    Well, that's what it says.  I'm asking
9    you if you recognize it.
10       A    Yes.
11       Q    Have you seen it before?
12       A    Yes.
13       Q    Did you read the responses to these
14   interrogatories?
15       A    Yes.
16       Q    Do you see that there's a verification on
17   here?  I think it's the third-to-last page.
18            Is that your signature?
19       A    Yes.
20       Q    And did you read the responses that
21   pertain to the Fund before signing that
22   verification?
23       A    Yes.
24       Q    And do you believe that the answers given

Page 280

1  that pertain to the Fund in these interrogatories
2  were accurate to the best of your knowledge?
3      A    Yes.
4      Q    We've talked a little bit about the
5  collection of documents in this case.
6          Can you tell me what you did -- strike
7  that.
8          You were asked -- is it correct you were
9  asked by your attorneys to collect documents?
10     A    Yes.
11     Q    And they gave you a list of documents, or
12 types of documents to search for, to provide to
13 them?
14     A    Yes.
15     Q    And did you do that search?
16     A    I did.
17     Q    Did you enlist anyone else to help in
18 that search?
19     A    No.
20     Q    Tell me what you did to search for
21 documents to provide to your counsel in this case.
22     A    I mean, I just searched all my paper
23 files that I had in my office, looking for
24 anything that related to contracts, information

Page 281

```
 1   with regards to the Sav-Rx or the CVS Caremark
 2   information.
 3           I mean, just -- I mean, I pulled
 4   everything and went through all my paper files,
 5   the -- Scott & Scott hired somebody to do a search
 6   of our hard drives based on key words.
 7           But I just went through all the files
 8   that I had in my office and looked for anything
 9   that related to Sav-Rx and CVS Caremark.
10      Q    Those were the only things that you
11   looked for, things that related to Sav-Rx and CVS
12   Caremark?
13      A    Because they were our two prescription
14   benefit managers, so those -- I couldn't think of
15   anything else, you know, to look for.  I mean...
16      Q    Is the only paper files that you looked
17   were -- are the ones in your office?
18      A    Yes.
19      Q    And when you say your office, do you mean
20   your personal office as opposed to the Fund's
21   offices?
22      A    Well, I mean, I have a separate office in
23   the 38 Fund office on the second floor.
24      Q    And why don't you describe for me the
```

Page 292

1 Ed Fox."
2     Do you see that?
3   A    Yes.
4   Q    Does this e-mail refresh your
5 recollection of having knowledge and being
6 involved in the process of the amendment of the
7 complaint at issue in this case in or about April
8 of 2017?
9   A    Yes, it does.
10   Q    Does it also refresh your recollection
11 that you were provided a copy of the complaint on
12 or before it was filed?
13     MR. LEIB: Objection.
14     MR. GUGLIELMO: You can answer.
15   A    Yes.
16 BY MR. GUGLIELMO:
17   Q    Okay. And with respect to this
18 litigation, is it your understanding that IBEW has
19 received quarterly updates from counsel about the
20 status of the litigation?
21   A    Yes.
22   Q    And that those quarterly updates were
23 received from the commencement of the litigation
24 until present?

Page 293

1  A  I mean, Walter would have received,
2  maybe, the initial ones.  But then thereafter, I
3  would have received them.
4  Q  And is it fair to say that IBEW has been
5  kept apprized of the filings in this case?
6  A  Yes.
7       MR. GUGLIELMO:  I have nothing further.
8       MR. LEIB:  Two quick lines of
9  questioning.
10            FURTHER EXAMINATION
11 BY MR. LEIB:
12  Q  With regard to Topic 11, which is on
13 page 12 of Exhibit 65, do you see it says:
14       "For each contract between IBEW and any
15 PBMs that administered any IBEW health benefit
16 plan, the administration and management actions
17 available to the PBM under the contract."
18       Do you see that?
19  A  Yes.
20  Q  Do you see it doesn't ask whether or not
21 the PBM actually took any action.  It only asks
22 what actions are available to them.
23       Do you see that?
24  A  Yes.

Page 300

1  STATE OF ILLINOIS )
                    ) SS:
2  COUNTY OF C O O K )

3

4           The within and foregoing deposition of
5  the aforementioned witness was taken before
6  MARIA S. WINN, CSR, RPR and CRR, at the place,
7  date and time aforementioned.
8           There were present during the taking of
9  the deposition the previously named counsel.
10          The said witness was first duly sworn and
11 was then examined upon oral interrogatories; the
12 questions and answers were taken down in shorthand
13 by the undersigned, acting as stenographer; and
14 the within and foregoing is a true, accurate and
15 complete record of all of the questions asked of
16 and answers made by the aforementioned witness, at
17 the time and place hereinabove referred to.
18          The signature of the witness was not
19 waived, and the deposition was submitted,
20 pursuant to Rule 30(e) and 32(d)4 of the Rules
21 of Civil Procedure for the United States District
22 Courts, to the deponent per copy of the attached
23 letter.
24

Page 301

1        The undersigned is not interested in the
2 within case, nor of kin or counsel to any of the
3 parties.
4        In witness whereof, I have hereunto set
5 my hand and seal of office this day, May 8, 2019.

6

7

8        *[Signature: Maria L. W...]*

9

10 CSR No. 084-003784 - Expiration Date: May 31, 2019