# EXHIBIT 13

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOROTHY FORTH, DONNA BAILEY,           )
LISA BULLARD, RICARDO GONZALES,        )
CYNTHIA RUSSO, TROY TERMINE,           )
INTERNATIONAL BROTHERHOOD OF           )
ELECTRICAL WORKERS LOCAL 38            )
HEALTH AND WELFARE FUND,               )
INTERNATIONAL UNION OF                 )
OPERATING ENGINEERS LOCAL              )
295-295C WELFARE FUND, AND             )
STEAMFITTERS FUND LOCAL 439,           )
on Behalf of Themselves and All        )
Others similarly Situated,             )
                                       )
        Plaintiffs,                    )
                                       ) Case No.
   vs.                                 ) 1:17-cv-02246
                                       )
WALGREEN CO.,                          )
                                       )
        Defendant.                     )

The videotaped deposition of JOHN P. CATALANO, taken before Maria S. Winn, CSR, RPR and CRR, pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, at Reed Smith, 10 South Wacker Drive, Suite 4000, Chicago, Illinois, commencing at 9:42 a.m. on May 9, 2019.

Page 17

1   A   Yes.
2   Q   And did you meet in person with
3   Mr. Alperstein to prepare for your deposition?
4   A   Yes.
5   Q   How many times did you meet in person
6   with Mr. Alperstein to prepare for your
7   deposition?
8   A   Oh, at least twice, I would say.  Was it
9   twice?  Three times?  Twice.  Well --
10  Q   Unfortunately, you're not allowed --
11  A   Three times.
12  Q   You're not allowed to ask Mr. Alperstein
13  questions.
14  A   Oh, okay.
15      MR. ALPERSTEIN:  Whatever your best of
16      recollection is.
17  A   To the best of my recollection, we met
18  three times.
19  BY MR. LEIB:
20  Q   Three times, specifically to prepare for
21  your deposition?
22  A   Yes.
23  Q   And again, I'm going to ask -- I'm
24  sorry.  But I'm going to ask that you let me

Page 113

```
 1   BY MR. LEIB:
 2       Q    How does the Fund believe that its
 3   members have been damaged by Walgreens' actions?
 4       A    My members?
 5       Q    Yeah.
 6       A    Well, when you hurt the Welfare Fund,
 7   indirectly, you're going to hurt the members.
 8       Q    Does the Fund believe that it's been
 9   damaged by Walgreens?
10       A    Absolutely.
11       Q    And how is that?
12       A    Well, because we're the bottom line.
13   We're the payer.
14       Q    So you believe the usual and customary
15   price was overinflated; and, therefore, you were
16   damaged?
17            MR. ALPERSTEIN:  Objection, form.
18       A    Yes.
19   BY MR. LEIB:
20       Q    Do you understand that the Fund is
21   seeking to bring this case as a class action?
22       A    Yes, I do.
23       Q    Do you know what a class action is?
24       A    Yes, I do.
```

Page 114

```
 1      Q    What is a class action?
 2      A    It's a group of complainants that are
 3   brought together for the same purpose.
 4      Q    Anything else?
 5      A    No.
 6      Q    Do you know what the Fund's role in the
 7   litigation is?
 8      A    Yeah.  We are one of the victims.
 9      Q    Do you understand that you're a named
10   plaintiff in this case?
11      A    Say that one again.
12      Q    A named plaintiff?
13      A    Me personally?
14      Q    The Fund.
15      A    Oh, yes, of course.
16      Q    Every time I'm saying "you" --
17      A    Yeah, I just didn't follow you.  I'm
18   sorry.
19      Q    It's easier than me saying "the Fund"
20   every time.
21      A    I understand.
22      Q    Do you know what it means to be a named
23   plaintiff?
24      A    Yes.  That you're pretty much responsible
```

Page 115

1  for answering the questions and being directly
2  involved in the case.
3      Q    Do you know if the named plaintiff has
4  any obligations to the people it's trying to have
5  as class members in the case?
6           MR. ALPERSTEIN:  Objection, form.
7      A    Can you say that again?
8  BY MR. LEIB:
9      Q    Sure.
10          You're asking that this case be brought
11 as a class action, correct?
12     A    Yes.
13     Q    And that would mean that other people,
14 who are not named plaintiffs, would be part of the
15 class, correct?
16     A    Yes.
17          MR. ALPERSTEIN:  Objection, form.
18 BY MR. LEIB:
19     Q    And when I say "people," I'm including
20 entities as well.
21          Do you understand that?
22     A    Yes.
23     Q    And do you know if the Fund has any
24 obligation to those people?

Page 323

1 many years, we finally put in a new system. And
2 now it's taking quite some time for them to
3 actually create the system and then implement it
4 and then train the girls on how it works.
5     And it's just been going on. We're at
6 the tail end of it right now.
7     Q    When was that new system put in place?
8     A    We're at the tail end of it right now.
9 It's just been going -- this is -- it's been going
10 on for almost two, three years now.
11     Q    Do you know whether electronic documents
12 were searched for this case?
13     A    Yes, I believe so.
14     Q    And do you know who searched the
15 electronic files?
16     A    I believe my computer people were of
17 assistance.
18     Q    Do you have an IT department?
19     A    I don't. I use a small company.
20     Q    And they worked with your attorneys to do
21 that?
22     A    Yes, they did.
23     Q    Would this problem, or situation with the
24 changeover into computer networks, affect the

Page 324

```
 1   ability to find files?
 2        A    No, I don't see -- not for the computer
 3   people.  Maybe for my girls, but not for the
 4   computer people.  They're the ones who created the
 5   system.  And the other ones, they're very familiar
 6   with, you know, software.
 7        Q    Were you involved at all in the
 8   electronic search of files -- I'm sorry -- in the
 9   search of electronic files?
10        A    No, I wasn't.
11             MR. ALBA:  Again, him personally or the
12        Fund?
13             MR. LEIB:  Him personally on that one.
14             THE WITNESS:  Oh.
15             MR. LEIB:  No further questions.
16             MR. ALPERSTEIN:  I just have a few
17        questions for you.
18                          EXAMINATION
19   BY MR. ALPERSTEIN:
20        Q    So we were just talking about the search
21   for electronic files that was done by, you said
22   your computer people, an IT representative; is
23   that correct?
24        A    Yes.
```

Page 331

1  Q  Yeah.
2  A  Okay. I got it.
3  Q  All right. And this was filed
4  October 17, 2017?
5  A  This is filed... I don't know.
6  Q  Is that your understanding?
7  A  I have to look.
8  Q  Look on the time stamp.
9  A  Oh, yes, I'm sorry. Yeah. On the top,
10 yes. 10/17/17.
11  Q  And is it correct that this was filed
12 approximately a month -- or at least in the month
13 after the meeting took place with Mario Alba and
14 the Fund, to discuss this litigation?
15  A  About that.
16  Q  And was Angelo Cordisco the main point
17 person at the Fund that would discuss the case
18 with his attorneys at Robbins Geller?
19  A  At that time, yes.
20  Q  And was it his practice to review
21 documents relative to litigation by himself and
22 with his attorney?
23       MR. LEIB: Objection.
24

Page 332

```
 1   BY MR. ALPERSTEIN:
 2       Q    Was it his practice to review documents
 3   to be filed in this case with others, or was it
 4   his practice -- I'm just trying to understand what
 5   his normal practice was.
 6       A    What do you mean by "his practice"?
 7       Q    So he was the point person in reviewing
 8   documents that were to be filed in this case,
 9   correct?
10       A    Oh, okay.  You mean the documents that
11   you asked for us to provide you?  He was the point
12   person?
13       Q    I'm asking --
14       A    I'm not sure I'm understanding.
15       Q    So what I'm asking is:  Who was the...
16            So is it correct that Angelo was the
17   point person in communications with Robbins Geller
18   as it pertains to this lawsuit?
19       A    Yes.
20       Q    And I would assume that would mean that
21   he would be in receipt of documents from attorneys
22   at Robbins Geller --
23       A    Yeah.
24       Q    -- this lawsuit?
```

Page 333

1           MR. LEIB:  Objection.
2      A    Yes.
3  BY MR. ALPERSTEIN:
4      Q    And documents provided by Robbins Geller,
5  do you understand that it was his practice to
6  review those documents by himself and with his
7  attorney?
8           MR. LEIB:  Objection.
9      A    Yes.
10 BY MR. ALPERSTEIN:
11     Q    Do you know who his attorney was at the
12 time, in October of 2017, the Fund's attorney?
13     A    We were going through a transitional
14 period with that as well.  We -- actually,
15 presently and for the next two years, have two
16 attorneys.
17     Q    Well, what about at that time?
18     A    They were both present, I believe, at
19 that board of trustee meeting and afterwards.
20     Q    Okay.  So is it your understanding that
21 Angelo would have reviewed the complaint, for
22 example, with his attorney?
23          MR. LEIB:  Objection.
24     A    Yes.

Page 334

```
 1   BY MR. ALPERSTEIN:
 2        Q    Would the same go for any type of
 3   discovery responses that were provided in this
 4   case?
 5             MR. LEIB:  Objection.
 6        A    Yes.  Angelo pretty much goes over
 7   everything with the attorney.
 8   BY MR. ALPERSTEIN:
 9        Q    So I understand that you might not have
10   been personally involved in reviewing discovery
11   requests from Walgreens; is that correct?
12        A    It's possible.
13        Q    But it would have been Angelo's practice
14   to review those discovery requests prior to
15   providing them to Walgreens?
16             MR. LEIB:  Objection.
17        A    Yes.
18   BY MR. ALPERSTEIN:
19        Q    And he would do that with his attorney?
20        A    Yes.
21             MR. LEIB:  Objection.
22             MR. ALPERSTEIN:  All right.  I have no
23        further questions.
24
```

Page 335

FURTHER EXAMINATION

BY MR. LEIB:

Q   Do you know for a fact whether Mr. Cordisco reviewed the complaint with his attorneys before it was filed?

A   I do not know that for a fact.

Q   Do you know for a fact that Mr. Cordisco read the interrogatory responses before signing the verification?

A   That, I do know he read. I witnessed him read the documentations and sign it at the meeting. I know that he read them, yes.

Q   The interrogatory responses?

A   The one that we discussed before that had a signature on the back of it, yes.

Q   Does the Fund have an e-mail document retention policy?

A   No.

Q   Do e-mails get destroyed or deleted on any kind of regular basis?

A   Whose e-mails?

Q   Anybody's e-mails. Is there an automatic deletion that happens?

A   Automatically? No.

Page 341

```
 1   STATE OF ILLINOIS )
                       ) SS:
 2   COUNTY OF C O O K )
 3
 4            The within and foregoing deposition of
 5   the aforementioned witness was taken before
 6   MARIA S. WINN, CSR, RPR and CRR, at the place,
 7   date and time aforementioned.
 8            There were present during the taking of
 9   the deposition the previously named counsel.
10            The said witness was first duly sworn and
11   was then examined upon oral interrogatories; the
12   questions and answers were taken down in shorthand
13   by the undersigned, acting as stenographer; and
14   the within and foregoing is a true, accurate and
15   complete record of all of the questions asked of
16   and answers made by the aforementioned witness, at
17   the time and place hereinabove referred to.
18            The signature of the witness was not
19   waived, and the deposition was submitted,
20   pursuant to Rule 30(e) and 32(d)4 of the Rules
21   of Civil Procedure for the United States District
22   Courts, to the deponent per copy of the attached
23   letter.
24
```

Page 342

1       The undersigned is not interested in the
2   within case, nor of kin or counsel to any of the
3   parties.
4       In witness whereof, I have hereunto set
5   my hand and seal of office this day, May 22, 2019.

6

7                               *[Signature: Maria S. W...]*

8

9

10  CSR No. 084-003784 - Expiration Date: May 31, 2021