# EXHIBIT 47

| | |
|---|---|
| **From:** | Parrella, Brenda M. |
| **Sent:** | Tuesday, December 28, 2010 5:06 PM |
| **To:** | 'ttucci@rc.com' |
| **Cc:** | Starkowski, Michael P.; Menchel, Arnold I.; Turekian, Karla A.; McCormick, John F. |
| **Subject:** | [not-secure] |
| **Attachments:** | Walgreens Declaratory Ruling 12282010 Final.pdf |

Please find Declaratory Ruling to replace the ruling sent earlier today, as two paragraphs were inadvertently omitted from the earlier version.

Thank you

Brenda Parrella

Brenda Parrella, Director
Office of Legal Counsel, Regulations and Administrative Hearings
Department of Social Services
25 Sigourney Street
Hartford, CT 06106
Telephone: (860) 424-5104
Fax: (860) 424-5403
Email: brenda.parrella@ct.gov


CONFIDENTIAL INFORMATION: The information contained in this e-mail may be confidential and protected from general disclosure. If the recipient or reader of this e-mail is not the intended recipient or a person responsible to receive this e-mail for the intended recipient, please do not disseminate, distribute or copy it. If you received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. We will take immediate and appropriate action to see to it that this mistake is corrected.[*LD*]

## Questions Presented for Declaratory Ruling

The Walgreen Co. ("Walgreens" or "Petitioner") petitioned the Department of Social Services ("Department" or "DSS") to issue a declaratory ruling to answer the following questions:

> 1. Were the prescription drug prices that Walgreens charged to members of its fee-based pharmacy discount program Walgreens' "usual and customary charges to the general public" as defined by section 17-134d-81(b)(21) of the Regulations of Connecticut State Agencies ("RCSA")?
>
> 2. Were the prescription drug prices that Walgreens charged to members of its fee-based pharmacy program Walgreens' "usual and customary charges" as defined by RSCA section 17b-262-685(30)?

## Authority to Issue Ruling

Section 4-176 of the Connecticut General Statutes provides that any person may petition an agency for a declaratory ruling as to the applicability of a regulation within the jurisdiction of the agency to specified circumstances. This Declaratory Ruling constitutes the Department's conclusions as to the applicability of RCSA sections 17-134d-81(b)(21) and 17b-262-685(30) to the facts relating to Walgreens' Prescription Savings Club ("PSC'), a pharmacy discount program.

## Procedural History

1. In September 2008, the Department undertook a review of billings to the Department for prescription drugs for Medicaid beneficiaries and Connecticut Pharmaceutical Contract for the Elderly and Disabled (ConnPACE) enrollees by Connecticut Medical Assistance Program ("CMAP") pharmacy providers, including Walgreens. Walgreens had recently made available to members of the general public a pharmacy discount program, known as Walgreens' Prescription Savings Club ("PSC").

2. After conducting a preliminary review, the Department determined that Walgreens was charging the Department more for Medicaid and for ConnPACE prescriptions than the Walgreens' PSC discounted drug prices.

3. Wal-Mart, Target, Shop Rite, and Stop & Shop have similar prescription drug savings programs. The Department determined after its preliminary review that -- in contrast to Walgreens -- Wal-Mart, Target, Shop Rite and Stop & Shop all were billing the Department for prescription drugs for Medicaid beneficiaries and for ConnPACE enrollees at the discount rate offered through their respective discount pharmacy programs available to members of the general public.

4. The Department contacted counsel for Walgreens by letter dated October 3, 2008, to express concern that Walgreens was billing DSS more than its "usual and customary

charge" for prescription drugs dispensed to Medicaid beneficiaries and to ConnPACE enrollees. The Department raised the concern that Walgreens was violating Medicaid and ConnPACE regulations because Walgreens was not charging the PSC price for Medicaid and ConnPACE prescription drugs.

5. By letter dated October 30, 2008, counsel for Walgreens responded on behalf of Walgreens that Walgreens' PSC price was not the "usual and customary charge" to the general public, because PSC pricing was available only to PSC members. Walgreens' counsel further asserted that the PSC pricing was a "special discount" within the meaning of RCSA section 17-134d-81 (b) and therefore was excluded from the definition of "usual and customary charge" to the general public.

6. At a December 22, 2008 meeting with Walgreens to discuss this matter further, the Department directed Walgreens to bill for the prescription drugs for Medicaid beneficiaries and for ConnPACE enrollees at Walgreens' PSC price, and also to determine the amount that the Department already had overpaid to Walgreens for Medicaid and ConnPACE prescription claims that Walgreens failed to bill at the PSC price.

7. Following that meeting, by letter dated December 22, 2008, counsel for Walgreens again expressed Walgreens' disagreement with the Department's determination that the PSC price was the "usual and customary charge" to the general public. Walgreens' counsel also asserted that the federal anti-inducement provisions in 42 U.S.C. § 1320a-7a (a)(5) prohibited Walgreens from allowing any CMAP enrollees from receiving the PSC price.

8. By letter to counsel for Walgreens dated July 29, 2009, the Office of the Connecticut Attorney General, writing on behalf of the Department, responded that Walgreens' PSC pricing was, in fact, its "usual and customary charge" and further, that Walgreens' concerns about violating the anti-inducement provisions in federal law by extending PSC membership to Medicaid beneficiaries or ConnPACE enrollees were irrelevant because DSS was not asking Walgreens to extend PSC membership either to Medicaid beneficiaries or ConnPACE enrollees.

9. On June 21, 2010, Walgreens filed this Petition for a Declaratory Ruling pursuant to section 4-176 of the Connecticut General Statutes and RCSA section 17-311-44.

10. By letter dated July 29, 2010, the Commissioner of Social Services ("Commissioner") agreed to issue a declaratory ruling by December 17, 2010.

11. On August 31, 2010, the Commissioner issued Interrogatories and Requests for Documents to Walgreens to be provided by September 15, 2010. By letter dated September 13, 2010, counsel for Walgreens challenged the Commissioner's authority to issue interrogatories or requests for documents in the context of a Petition for a Declaratory Ruling.

12. On September 13, 2010, the Commissioner issued an Order to Walgreens to provide certain information "in order to properly understand and evaluate the Petitioner's request and the potential ramifications of the relief sought by the Petitioner through this petition for declaratory ruling."

13. By letter of September 29, 2010, counsel for Walgreens requested an extension of time to respond to the Commissioner's Order until October 14, 2010. The Commissioner granted Walgreens' request for an extension of time and further requested Walgreens to stipulate to an extension of the deadline by which the declaratory ruling is to be issued until December 31, 2010. By letter dated October 8, 2010, counsel for Walgreens agreed to extend the deadline by which the declaratory ruling would be issued until December 31, 2010.

14. On October 14, 2010, Walgreens' counsel responded to the Commissioner's Order of September 30, 2010 seeking information. Counsel for Walgreens generally objected to the Commissioner's Order "on the ground that the Department lack[ed] legal authority to compel the production of information in this matter."

15. Specifically, Walgreens did not provide any information or documents in response to Request No. 5 of the Commissioner's October 14, 2010 Order, which asked for documents that identified "all drugs (brand and generic) subject to PSC discount drug pricing, including the National Drug Codes ("NDCs") that correspond with each drug" and that showed: the prices Walgreens charged to customers enrolled in Walgreens' PSC for each NDC; the prices Walgreens charged to DSS for Medicaid beneficiaries and ConnPACE enrollees for the same drugs; and, the price differential between the PSC drug prices and the amounts charged to DSS by Walgreens for Medicaid beneficiaries and ConnPACE enrollees for each NDC.

16. Walgreens objected to Request No. 5 of the Commissioner's October 14, 2010 Order on the grounds that the Department lacked legal authority to compel the production of information, the Commissioner's Order was overly broad and unduly burdensome and the "price differential" between the PSC price and the prices charged to the Department were irrelevant and unrelated" to Walgreens' Petition for Declaratory Ruling.

## The Record

The Department's ruling is based on the record. The record includes correspondence concerning the subject of the ruling, including electronic communications between the Department and Walgreens, and between the Office of the Connecticut Attorney General and Walgreens, from 2008 to the present date and any accompanying attachments; Walgreens' Petition for Declaratory Ruling and accompanying attachments; the Department's Orders dated August 31, 2010 and September 13, 2010 seeking more information from Walgreens; and Walgreens' responses to the Orders and accompanying attachments and enclosures; and the Department's records relating to the evaluation of the Petitioner's request for a Declaratory Ruling, including the amount charged to the Department by Wal-Mart, Target, Shop Rite and Stop & Shop.

## Relevant Law

### 1. Connecticut Medicaid program

RCSA section 17-134d-81(i), which establishes pharmacy provider reimbursement by the Department for eligible prescription drugs for Medicaid beneficiaries, provides:

> Reimbursement [for Legend Drugs] will be made under E.A.C. [(Estimated Acquisition Cost)] or F.A.C. [(Federal Acquisition Cost)], whichever is applicable to the particular drug dispensed plus the dispensing fee, or the usual and customary charge to the general public, whichever is lower.
>
> For each multiple-source drug for which HCFA has identified and designated a F.A.C., reimbursement shall be the lower of the following:
>
> (i) The F.A.C. as established by HCFA plus the applicable dispensing fee; or
> (ii) The provider's usual and customary charge to the general public; or
> (iii) The amount billed by the provider.

Section 17-134d-81 (b) (21) of Regs. Conn. State Agencies defines "the usual and customary charge to the general public" as follows:

> 'Usual and Customary Charge to the General Public' means a charge which will be made for the particular prescription by the provider to the patient group accounting for the largest number of non-Medicaid prescriptions. In determining such charge, all charges made to third party payors and special discounts offered to an individual such as a senior citizen will be excluded.

### 2. Connecticut Pharmaceutical Contract for the Elderly and Disabled Program ("ConnPACE")

RCSA section 17b-262-690, which establishes the rate at which a pharmacy provider shall bill the Department for eligible prescriptions for ConnPACE enrollees, provides:

> (a) The provider shall bill the usual and customary charge and the department shall pay the lowest of:
>
> 1. the estimated acquisition cost (EAC) plus the dispensing fee minus the copayment;
> 2. the federal upper limit (FUL) plus the dispensing fee minus the copayment;
> 3. the billed amount to the department, i.e. ingredient cost plus the dispensing fee, minus the copayment;
> 4. the usual and customary charge of the provider minus the copayment.

RCSA section 17b-262-685 defines the "usual and customary charge" as follows:

-4-

'Usual and customary charge' means an enrolled provider's charge to the general public for a prescription drug, in a specific strength and quantity on the day the prescription is dispensed. In determining such charges all charges made to third party payers shall be excluded.

## Findings of Fact

### Facts Relating to the Connecticut Medicaid Program

1. Medicaid is a joint federal-state program that provides health care to families and qualifying individuals "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1.

2. Generally, a person or family becomes eligible for Medicaid when they are living at or slightly above the federal poverty level. For example, the current poverty guideline for a family of four is $22,050. 75 *Federal Register* 45628–29 (2010).

3. The State of Connecticut participates in the Medicaid program. The Department administers the Connecticut Medicaid program, which is a part of the Connecticut Medical Assistance Program ("CMAP"). Conn. Gen. Stat. § 17b-2.

4. States that participate in the Medicaid program are required to offer certain medical benefits and may offer additional benefits, including prescription drug coverage. 42 CFR § 440.210; 42 CFR § 440.220; 42 CFR § 440.225. Connecticut's Medicaid program includes prescription drug coverage for Medicaid beneficiaries. 42 CFR § 440.120.

5. Pharmacy providers voluntarily apply for enrollment in CMAP, which includes enrollment as a provider in the Connecticut Medicaid program.

6. Healthcare providers, including pharmacies, are not required to participate in the Medicaid program. However, if they do participate, they must abide by all state and federal statutory and regulatory requirements. Pharmacy providers that participate in the Connecticut Medicaid program are reimbursed by the Department for prescriptions filled for Medicaid beneficiaries.

### Facts Relating to the ConnPACE Program

7. ConnPACE is a state-funded prescription drug assistance plan included in CMAP that supports eligible senior citizens and individuals with disabilities. In order to enroll in ConnPACE, an applicant must meet certain residency and age or disability requirements.

8. DSS administers the ConnPACE program, which is part of CMAP. Conn. Gen. Stat. § 17b-491 (a).

9. Currently, the ConnPACE income eligibility limit is $25,100 for single persons and $33,800 for married couples.

10. ConnPACE members pay a $15.00 annual premium and co-payment amounts up to sixteen dollars and twenty-five cents for each covered prescription. The Department pays the balances for eligible members' prescription drugs.

11. Pharmacy providers voluntarily apply for enrollment in CMAP, which includes enrollment as a provider in the ConnPACE program.

12. Pharmacies that enroll as providers in CMAP are required to participate in the ConnPACE program and must abide by all state statutory and regulatory requirements.

13. Pharmacy providers that participate in the ConnPACE program are reimbursed by the Department for prescriptions filled for ConnPACE enrollees.

**Facts Relating to Walgreens and Walgreens' Prescription Savings Club**

14. Walgreen Eastern Co. Inc. ("Walgreens") is the Walgreen Co. subsidiary that operates the Walgreens stores in Connecticut. Walgreens is incorporated in New York with its principal place of business in Illinois. Walgreen Co. has 7653 stores nationwide and 85 stores in Connecticut.

15. Walgreens voluntarily enrolled as a participating pharmacy provider in CMAP, which includes provider enrollment in the Connecticut Medicaid program and the ConnPACE program.

16. In October 2007, Walgreens launched the Prescription Savings Club ("PSC") in Connecticut.

17. There is an annual enrollment fee of $20.00 for individual members of the general public who wish to join Walgreens' PSC. There is a $35.00 annual enrollment fee for a family membership. Family enrollment in Walgreens' PSC includes spouse, dependents under the age of 23 and pets.

18. Walgreens offers PSC drug pricing to all members of the general public, excluding people enrolled in publicly-funded health care programs, such as Medicaid or ConnPACE. There are no age limits, gender or associational restrictions, health restrictions, medical exams or prior authorizations required to be eligible for Walgreens' PSC drug pricing.

19. PSC members receive discounts on thousands of brand name and generic prescription medications. Over 400 generic prescription drugs on the Walgreens PSC formulary are priced at $12.00 for a 90-day supply, or at $9.99 for a 30-day supply.

20. The discounts are available for all drug classes and include medications for:

    a. Allergy
    b. Antifungal
    c. Antiviral Treatments
    d. Arthritis and Pain
    e. Asthma and COPD
    f. Blood Pressure and Heart Health
    g. Cholesterol
    h. Cold and Cough
    i. Diabetes
    j. Eye Care
    k. Family Planning
    l. Gastrointestinal Health
    m. Infectious Treatment
    n. Mental Health
    o. Sexual Health
    p. Skin Conditions
    q. Thyroid Conditions
    r. Vitamins and Nutritional Health
    s. Weight Management
    t. Women's Health

21. Walgreens' PSC members also receive a 10% rebate on the purchase of any Walgreens' brand products or photofinishing service.

22. Walgreens advertises the PSC through television advertisements, radio advertisements, on Walgreens' website and with signage in their stores.

**Facts Relating to Walgreens Billing of Prescriptions through the Prescription Savings Club, Medicaid and ConnPACE Programs**

23. All drugs are identified by a unique National Drug Code ("NDC"), which is assigned by the Food and Drug Administration ("FDA").

24. Each NDC refers to a specific drug manufactured by a specific company in a specific strength and specific package size. Thus, for example, Metformin 1000, a generic prescription drug used in the treatment of diabetes, dispensed by Walgreens to PSC members manufactured by Ivax bears the NDC number 00172443280.

25. Walgreens uses the identical drugs by the same manufacturers, in the same strengths, with the exact same NDCs in filling prescriptions for the PSC program, the Medicaid program and ConnPACE program.

26. There is a significant difference between the prices billed to the Department for Medicaid prescriptions and to ConnPACE enrollees and the prices charged to PSC members for identical prescriptions and NDCs.

DSS0028

27. For example, notwithstanding that a PSC member pays $12.00 for a 90-day supply of Metformin 1000, Walgreens billed Medicaid and ConnPACE $163.09 for the same 90-day supply of Metformin 1000. The Department paid $113.00 for the 90-day supply of Metformin 1000, which constituted the lower of the amount Walgreens billed and the amount established in accordance with RCSA sections 17-134d-81(h)(A)(ii) and 17b-262-685(30).

28. Other examples of the significant differences between PSC drug pricing and the charges by Walgreens to the Connecticut Medicaid program and to the ConnPACE program for the same prescriptions include the following:

    a. PSC members pay $12.00 for a 90-day supply of Fluoxetine, Walgreens billed Medicaid and ConnPACE $227.89 for the same supply of Fluoxetine. The Department paid $97.78 for the 90-day supply of Fluoxetine.

    b. PSC club members pay $12.00 for a 90-day supply of Pravastatin, Walgreens billed Medicaid and ConnPACE $152.99 for the same 90-day supply of Pravastatin. The Department paid $73.71 for the 90-day supply of Pravastatin.

    c. PSC members pay $12.00 for a 90-day supply of Lisinopril-HCTZ. Walgreens billed Medicaid and ConnPACE $77.89 for the same supply of Lisinopril-HCTZ. The Department paid $66.00 for the 90-day supply of Lisinopril-HCTZ

29. Wal-Mart, Target, Shop Rite, and Stop & Shop have prescription drug savings programs similar to Walgreens PSC. The Department determined -- in contrast to Walgreens -- that Wal-Mart, Target, Shop Rite and Stop & Shop all were billing the Department for prescription drugs for Medicaid beneficiaries and for ConnPACE enrollees at the discount rate offered through their respective discount pharmacy programs available to members of the general public

## Conclusions of Law

The Department concludes that Walgreens PSC drug price is the "usual and customary charge to the general public" as defined by RCSA section 17-134d-81(b) (21) (Medicaid), and is the "usual and customary charge" as defined by RCSA section 17b-262-685 (30) (ConnPACE).

## Discussion

### 1. Medicaid

Medicaid is a joint state-federal program that provides healthcare to families and individuals "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1. Provider participation in the Connecticut Medicaid program is

voluntary. As a government health care program for the poor, Medicaid is the "payer of last resort," – that is, taxpayer funds are used when there is no other payer available. See RCSA section 17b-262-526(3). *Miller v. Wladyslaw*, 547 F.3d 273, 278 (5th Cir. 2008); *Arkansas Dept. of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 291 (2006).

Walgreens launched the PSC program in Connecticut in October 2007. Membership in the PSC is available to all retail customers of Walgreens for a modest annual enrollment fee. The only customers that Walgreens expressly excludes from enrollment in its PSC are individuals that are beneficiaries or enrollees in publicly-funded government health care programs such as Medicaid and ConnPACE.

The facts in the record show that the prices for prescription drugs available through the PSC are significantly lower than the amounts that Walgreens billed the Department for the exact same drugs for Medicaid beneficiaries. For example, notwithstanding that a PSC member pays $12.00 for a 90-day supply of Metformin 1000, Walgreens billed the Department $163.09 for the same 90-day supply of Metformin 1000 for Medicaid beneficiaries. In addition, although PSC members pay $12.00 for a 90-day supply of Fluoxetine, Walgreens billed Medicaid $227.89 for the exact same supply of Fluoxetine. Further, although PSC members pay $12.00 for a 90-day supply of Pravastatin, Walgreens billed Medicaid $152.99 for the same 90-day supply of Pravastatin. And similarly, notwithstanding that PSC members pay $12.00 for a 90-day supply of Lisinopril-HCTZ, Walgreens billed Medicaid $77.89 for the same supply of Lisinopril-HCTZ.

To respond to the questions posed in Walgreens' Petition for Declaratory Ruling, the Department is required to construe RCSA section 17-134d-81(b) (21), which governs pharmacy provider reimbursement for Medicaid prescription drug claims. Section 17-134d-81(b) (21) defines "usual and customary charge to the general public" as follows:

> 'Usual and Customary Charge to the General Public' means a charge which will be made for the particular prescription by the provider to the patient group accounting for the largest number of non-Medicaid prescriptions. In determining such a charge, all charges made to third party payors and special discounts offered to an individual such as a senior citizen will be excluded.

"Administrative rules and regulations are given the force and effect of law." *Hartford Electric Light Co. v. Sullivan*, 161 Conn. 145, 154, (1971); *Travelers Ins. Co. v. Kulla*, 216 Conn. 390, 399 (1990). The Department interprets the regulations it is charged with enforcing in accordance with established rules of statutory construction. *Teresa T. v. Ragaglia*, 272 Conn. 734, 751 (2005). "When a statute or regulation is open to interpretation, common sense must be used." *Citerella v. United Illuminating Co.*, 158 Conn. 600, 609 (1969).

In light of these interpretive principles, the Department first must identify the "patient group accounting for the largest number of non-Medicaid prescriptions" to answer Petitioner's question as to whether the PSC drug charge is the "usual and customary charge to the general public" within the meaning of RCSA section 17-134d-81(b) (21).

DSS0030

As a preliminary matter, the Department notes that the RCSA definition for Medicaid pharmacy reimbursement expressly excludes charges made to "third party payors," such as commercial insurers or Medicare, as well as "special discounts offered to an individual such as a senior citizen." As Walgreens acknowledges in its Petition, the PSC drug charges for prescription drugs are not charges made to a third party payor. There is no question, therefore, that PSC drug charges cannot be excluded on that basis from the definition of "usual and customary charge to the general public" under RCSA section 17-134d-81(b) (21).

Walgreens suggests in its Petition that the Department should construe the "special discounts" exception to the "usual and customary charge" definition broadly to include PSC drug pricing. Such a construction, however, is undermined by the facts in the record. PSC membership and the associated opportunity to receive the benefits of PSC discount drug pricing, is *not* limited to a specific group or category of Walgreens' customers. Indeed, only publicly funded, government health care program beneficiaries and enrollees are excluded from membership in the PSC.

Discount drug charges through the PSC are offered and available to *all* Walgreens' customers, without regard to age, gender, or any other associational characteristics. The discount, therefore, is far from "special." As set forth in the regulation, the Department's intention in this regulation was to create an exception for "an individual such as a senior citizen." The regulation does not contemplate that a "special discount" would be available to the general public.

Excluding prescription drug claims covered by third party payors and prescription drug claims subject to "special discounts," as interpreted by the Department, the "patient group" that constitutes the "largest number of non-Medicaid prescriptions" within the meaning of RCSA section 17-134d-81(b)(21) is Walgreens' other customers, all of whom may participate in the PSC program. Therefore, Walgreens' "usual and customary charge to the general public" for the purposes of Medicaid reimbursement is the "charge which will be made for a particular prescription" to all of Walgreens' other customers. Since Walgreens offers the opportunity to join the PSC program and purchase prescription drugs at discounted prices to all of its retail customers -- as opposed to only a subcategory of its retail customers -- the charge that "will be made . . . to the patient group accounting for the largest number of non-Medicaid prescriptions," i.e., the PSC price, is the prescription drug price offered and available to each and every Walgreens' retail customer through PSC membership.

The Department's interpretation of section 17-134d-81(b)(21), which the Department has held since the it became aware of the existence of Walgreens PSC in 2008, is also consistent with the purpose and policy underpinning the Connecticut Medicaid program, which is a publicly-funded health care program for the poor and is the payor of last resort. The Department is charged with ensuring that that the taxpayer funds intended to provide health care for the poor are accurately accounted for and appropriately spent.

If the Department were to follow Walgreens' interpretation – that because Walgreens' PSC prescription drug discounts are available only to those Walgreens' customers who are PSC members, the PSC drug charge does not reflect "usual and customary charge to the general

- 10-

public" – the Department would need to go to extraordinary lengths to determine the "usual and customary charge to the general public." First, because the PSC price must be evaluated and quantified by each "particular prescription," it would be necessary to divide Walgreens' customers into PSC members and non-PSC members. Then, the Department would need to determine, for *each* prescription drug claim on *a daily basis*, which category -- the PSC price or the non-PSC price - constitutes "the patient group accounting for the largest number of non-Medicaid prescriptions." In other words, the amount properly charged to the Department by Walgreens would depend entirely on the particular customers who purchased a particular prescription drug on a particular day.

The construction of the regulation that Walgreens suggests would impose a burden on the Department far in excess of what the regulation authorizes. *See Citerella v. United Illuminating Co.,* 158 Conn. at 609. The impracticality of Walgreens' interpretation is illustrated in the following example: Assume that on a given Monday, one hundred Walgreens retail customers throughout Connecticut purchase Metformin 1000, a prescription drug that is available through the PSC. If 51 or more of these Walgreens' customers are PSC members, the Department would be charged the discounted PSC price. If, however, more than 51 of these Walgreens' retail customers are not PSC members, Walgreens' could charge the Department the full cash retail price for the Medicaid beneficiaries for that prescription drug.

Under Walgreens' view, the proper charges to the Department would vary from day to day and prescription to prescription. This is implausible and unworkable. There are over 400 generic prescriptions available at the PSC discount price, and thousands of brand name prescription drugs available through the PSC. Not only would the Department be unable to anticipate reimbursement costs for Medicaid prescription drug claims, but, more importantly, it would be virtually impossible for the Department to audit and verify whether the amount billed to the Department by for Medicaid prescription claims was accurate. The Department would have to rely solely on Walgreens' information and representations regarding the appropriateness of its billings for such Medicaid prescription drug claims.

In addition, Walgreens' interpretation defies common sense. *Citerella,* 158 Conn. at 609. Taxpayers, through the Medicaid program, would pay $113.00 for the exact same Metformin pills, from the exact same manufacturer, in the exact same strength when PSC members would only pay $12.00. This clearly could not have been the Department's intention when it enacted the instant regulation.

Further, it is notable that Wal-Mart, Target, Shop Rite and Stop & Shop all were billing the Department, for prescriptions dispensed to both Medicaid beneficiaries and ConnPACE enrollees, at the discount rate offered through their respective pharmacy discount programs available to the general public. Each of these retailers has interpreted the Department's regulations consistent with the Department's interpretation.

For all the foregoing reasons, the Department concludes that the discounted price available through Walgreens' PSC constitutes the "usual and customary charge to the general public" within the meaning of RCSA section 17-134d-81 (b) (21).

### C. Federal Anti-Inducement Law

In its Petition for Declaratory Ruling, Walgreens' states that if Walgreens were to allow Medicaid beneficiaries and ConnPACE enrollees to join the PSC, Walgreens would violate the federal "anti-inducement" law prohibiting CMAP providers from offering remuneration to state health program beneficiaries. 42 USC § 1320a (a)(5). The Department, however, has never interpreted and is not now interpreting RCSA sections 17-134d-81 (b) (21) or 17b-262-685 (30) to require Walgreens to offer PSC membership to Medicaid beneficiaries and ConnPACE enrollees, or to waive the PSC membership fee or to provide any special benefits to Medicaid beneficiaries and ConnPACE enrollees. Rather, the Department's interpretation is predicated upon the fact that Medicaid and ConnPACE beneficiaries are ineligible for these discounts. The only requirement that these regulations, as construed by the Department, imposes upon Walgreens is for Walgreens to use its PSC price when billing the Department its "usual and customary charge" for prescription drugs claims for Medicaid beneficiaries and ConnPACE enrollees that are available through Walgreens' PSC. The Department's interpretation of these regulations, therefore, does not compel Walgreens to violate the federal law against offering Medicaid beneficiaries and ConnPACE enrollees "inducements" or "remuneration."

In the absence of PSC membership being offered to Medicaid beneficiaries and ConnPACE enrollees, Walgreens is required only to provide the Department accurate billing information relating to its "usual and customary charge" for PSC discounted drugs when seeking reimbursement from the Department for Medicaid and ConnPACE prescription drug claims.

### Order

The Department of Social Services hereby orders that as applied to the Walgreen Co.'s Prescription Savings Club, sections 17-134d-81(b)(21) and 17b-262-685(30) of the Regulations of Connecticut State Agencies require the Walgreen Co. to bill the Department of Social Services the discounted Prescription Savings Club price as its usual and customary charge to the general public for all qualifying prescriptions. It is so ordered this 28th day of December, 2010.

Michael P. Starkowski
Commissioner