# EXHIBIT 55

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**


**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**


| | |
|---|---|
| **CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295c WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439,** on Behalf of Themselves and All Others Similarly Situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**WALGREEN CO.,**<br><br>**Defendant.** | Civil No. 1:17-cv-02246<br><br>Judge Edmond E. Chang<br>Magistrate Judge Sheila Finnegan |


**REPORT OF LYNETTE HILTON, PH.D.**


**Econ ONE Research, Inc.**


550 South Hope St., Suite 800
Los Angeles, CA 90071

# TABLE OF CONTENTS

I.     Introduction ...................................................................................... 1

II.    Assignment, Materials Reviewed and Summary of
       Conclusions .................................................................................... 1

III.   Participants in the Pharmaceutical Distribution System ............ 4

IV.    Walgreens' Prescription Savings Club ...................................... 6

       A.  Background and Structure of the PSC .................................................. 6

           1.  VPG Pricing .......................................................................... 6

           2.  NVPG Pricing ........................................................................ 8

V.     Classwide Damages Methodology ............................................ 9

       A.  The Formulaic Nature of the Inquiry ................................................... 9

       B.  Classwide Overpayment Methodology ................................................. 9

           1.  Statutory Damages Calculation ................................................ 10

       C.  Implementing the Overpayment Damages Methodology ..................... 11

           1.  Consumer Plaintiff Damages ..................................................... 11

           2.  Fund Plaintiff Damages ............................................................ 11

           3.  Classwide Overpayment Damages ............................................ 12

       D.  Classwide Unjust Enrichment Damages ............................................. 12

       E.  Summary ......................................................................................... 13



**VI.  Appendix A:  Sources of PSC Price Information ....................... 15**

A.  PSC Claims Data ......................................................................... 15

B.  ESI and CT PSC Price Lists ........................................................... 16

　　1.  Express Scripts ("ESI") Price Lists .............................................. 16

　　2.  Connecticut ("CT") Reconciliation Production ................................ 16

　　3.  Using ESI and CT PSC Price List Data to Determine PSC Prices ........ 16

C.  A Note on Other PSC Data Produced .............................................. 17

**VII.  Appendix B:  Identifying Class Members ................................ 19**

A.  Sold Transactions ........................................................................ 19

B.  Date of Sale ............................................................................... 19

C.  State of Sale .............................................................................. 19

D.  Generic Drug .............................................................................. 20

E.  Plan Type .................................................................................. 20

F.  Relevant PBMs ............................................................................ 20

G.  U&C Used as Part of Adjudication Process ...................................... 20

H.  Identifying Consumers that Paid an Inflated Amount ......................... 21

I.  Identifying TPPs that Paid an Inflated Amount ................................. 21



CONFIDENTIAL – Subject to Protective Order

I, Lynette Hilton, pursuant to 28 U.S.C. § 1746, declare as follows:

## I.      Introduction

1.      I am a Senior Economist with Econ One Research Inc. ("Econ One"), an economic research and consulting firm with offices in half a dozen cities around the country.  I have bachelors and doctoral degrees in economics from the University of California, San Diego.  During the past 25 years, I have worked extensively on the analysis and calculation of damages.  During the past 22 years, much of my work has involved projects associated with the economics of the pharmaceutical industry.  In that regard, I have substantial experience in the calculation of damages in class action litigation and have frequently been involved in analyzing economic issues arising from impaired generic competition, including damages incurred by pharmaceutical purchasers.  Additionally, I have experience in calculating generic manufacturer lost profits as a result of delayed generic entry and calculating damages related to the overpayment of Medicaid benefits.  In addition, I have been retained by plaintiffs in a case involving kickbacks allegedly paid by a pharmaceutical company to increase prescriptions and a case calculating lost profits to a pharmaceutical manufacturer due to a delay of its ANDA approval.  Also, I have co-authored a number of articles on a wide range of topics relating to economics, statistics, and damage calculations.

2.      A detailed summary of my education, training, past experience, and prior expert engagements is provided in my Curriculum Vitae, attached as Exhibit 1.

3.      My analysis represents my best understanding of the datasets in my possession at the time of filing.  I may update my findings if additional information and/or documents become available to me.

4.      Econ One is being compensated for the time I spend on this matter at $475 per hour.  Econ One also is being compensated for time spent by research staff on this matter at hourly rates ranging from $195 - $425 per hour.  No part of my or Econ One's compensation is contingent on the outcome of this matter.

## II.      Assignment, Materials Reviewed and Summary of Conclusions

5.      The Plaintiffs in this case, Cynthia Russo, Lisa Bullard, Ricardo Gonzales, (collectively "Consumer Plaintiffs"), and International Brotherhood of Electrical



CONFIDENTIAL – Subject to Protective Order

Workers Local 38 Health and Welfare Fund ("IBEW Local 38"), International Union of Operating Engineers Local 295-295C Welfare Fund ("IUOE Local 295"), and Steamfitters Local Fund 439 ("Steamfitters Local 439") (collectively "Fund Plaintiffs," and with the Consumer Plaintiffs, "Plaintiffs"), seek to represent a proposed class of similarly situated parties.[1] The Defendant in this case is Walgreen Co. ("Walgreens"). I have been retained by counsel for Plaintiffs and the proposed class in this matter. I understand from Counsel that the proposed "Class" is defined as:

> All persons, or entities, for whom prescription drug insurance benefits were provided through the Relevant PBMs (a.k.a., A&A Services, LLC d/b/a SAV-RX Prescription Services; Caremark, LLC; Castia Rx (f/k/a Leehar Distributors Missouri, LLC); Express Scripts, Inc.; Medco Health Solutions, Inc.; MedImpact Healthcare Systems, Inc.; MedTrak Services, LLC; and/or OptumRx, Inc.), and who paid or reimbursed in whole, or in part, for generic prescription drugs from Walgreen Co. at any point in time from the period January 1, 2007 through the present, in Arizona, California, Connecticut, Delaware, Florida, Illinois, Massachusetts, New York, North Carolina, Ohio, Pennsylvania, and Wisconsin, where the usual and customary price was a basis for the amount paid or reimbursed in connection with the purchase of such drug, and the amount paid or reimbursed was inflated because the Prescription Savings Club price was not reported or otherwise included when determining the usual and customary price to report.

> Excluded from the Class are:

> a.  Walgreens and its management, employees, subsidiaries, and affiliates;

---

[1] See Fourth Amended Consolidated Class Action Complaint and Jury Demand, dated June 16, 2021, ECF No. 477 ("Complaint").



CONFIDENTIAL – Subject to Protective Order

  b. The Court, members of their immediate families, and judicial staff;

  c. All government entities, including Medicare and Medicaid, and their beneficiaries, except for Medicare Part D beneficiaries;

  d. All government-funded entities, and their beneficiaries;

  e. All pharmacy benefit managers and entities that have or had a parent or subsidiary relationship with any pharmacy benefit manager at any time since January 1, 2007; and

  f. All individuals and entities, except for the named Plaintiffs, that have sued or initiated formal dispute resolution proceedings against Walgreens relating to its determination of usual and customary prices in connection with the Prescription Savings Club.

6. Plaintiffs allege that they and Class members were overcharged on their payment for or purchase of generic prescription drugs as a result of Walgreens' "scheme to artificially inflate the 'usual and customary' prices reported and used to charge Plaintiffs and members of the Class for purchases of certain generic prescription drugs at Walgreens pharmacies."[2] Counsel has instructed me to assume that liability in this case has been established, and that Walgreens was required to report or otherwise include its Prescription Savings Club ("PSC") price when determining the usual and customary ("U&C") price to report for a generic prescription drug available through the PSC ("PSC Generics").

7. Based upon these assumptions, I have been asked by Plaintiffs' counsel to undertake several tasks in connection with Plaintiffs' motion for class certification. First, I have been asked to develop a formulaic methodology that can identify and calculate overpayments paid by Plaintiffs and Class members as a result of Walgreens' failure

---

[2] Complaint, ¶ 1.



Report of Lynette Hilton, Ph.D.

CONFIDENTIAL – Subject to Protective Order

to report or otherwise include PSC prices when determining the U&C price to report for PSC Generics. Second, I have been asked to provide a formulaic methodology that can be used to identify and calculate Walgreens' unjust enrichment as a result of its failure to report or otherwise include PSC prices when determining the U&C price to report for PSC Generics.

8.     In performing this analysis, I have reviewed the Complaint, PSC claims data provided by Walgreens, transaction data from Walgreens and certain Relevant PBMs for the Plaintiffs, and sample transactional data of classwide non-PSC member transactional data produced by Walgreens. A list of the materials considered is attached as Exhibit 2.

9.     Based on the work undertaken in this case, I have concluded that overpayments made by proposed Class members can be calculated on a classwide, formulaic basis that will not require individualized inquiries regarding members of the Class. I have developed methodologies that can identify and calculate overpayments paid by Plaintiffs and Class members, and can identify and calculate Walgreens' unjust enrichment as a result of its failing to report or otherwise include PSC prices when determining the U&C price to report for PSC Generics. These methodologies can be applied to the Class once classwide data is provided to me. In that regard, I have developed (and present below) illustrative calculations.

## III.  Participants in the Pharmaceutical Distribution System

10.    Physicians write prescriptions for consumers who then fill their prescriptions at a pharmacy. Pharmacies distribute pharmaceuticals to consumers and receive payment. When an insured consumer uses their pharmacy insurance benefits to purchase a prescription drug, he or she generally pays part of the cost of the drug in the form of a copay or coinsurance. The cost to purchase that prescription drug may be shared with a third-party payor entity ("TPP"), such as a health insurer or a health and welfare benefit fund.

11.    Pharmacy Benefit Managers ("PBMs") administer pharmaceutical benefits for insured customers on behalf of the insured consumer's TPP in exchange for fees and payments. TPPs engage PBMs for a variety of services including developing and maintaining formularies and establishing and maintaining pharmacy networks to



CONFIDENTIAL – Subject to Protective Order

dispense drugs to insured consumers. Through a process known as claims adjudication, PBMs serve as an intermediary in the prescription drug transaction, and identify the amount that an insured consumer must pay to receive a prescription drug, as well as the amount that the TPP is to pay in connection with the beneficiary's purchase of that drug.[3]

12. The National Council for Prescription Drug Programs ("NCPDP") sets forth industry standards that cover the electronic transfer of prescription data between PBMs and pharmacies.[4] Both PBMs and pharmacies maintain databases reflecting, among other things, the information exchanged in connection with the claims adjudication process.[5] Figure 1 illustrates the flow of drugs, money, services, and information between consumers, TPPs, PBMs, and pharmacies.

**Figure 1**
**Flow of Drugs, Money, Services, and Information**



---

[3] Kaiser Family Foundation, *Follow the Pill: Understanding the U.S. Commercial Pharmaceutical Supply Chain*, March 2005, at 14 ("PBMs work with third party payers (private insurers, self-funded employers and public health programs) to manage consumer drug purchases by defining which drugs will be paid for and the amounts that the pharmacy will receive and the consumer must pay out-of-pocket when the prescription is filled.").

[4] NCPDP/Forth v Walgreens 000001-2399.

[5] For example, ███████████████████████████████████████████. *See* "2018.12.21_Response to Mapping Request_Walgreens"; Declaration of Christopher Dymon, dated November 9, 2022 ("Dymon Decl."), ¶ 7.



Report of Lynette Hilton, Ph.D.

CONFIDENTIAL – Subject to Protective Order

## IV.   Walgreens' Prescription Savings Club

### A.   Background and Structure of the PSC

13.   ████████████████████████████████████████████████████
████████████.[6]  The PSC had two different groups of drugs, Value Price Generic
("VPG") and Non-Value Price Generic ("NVPG").  ████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████

### 1.   VPG Pricing

14.   ████████████████████████████████████████████████████
████████████████████████████████████████████████████.[7]
An example of a PSC 1.0 VPG price list is shown below.[8]



| Antifungal | | | Blood Pressure and Heart Health (Cont.) | | | Blood Pressure and Heart Health (Cont.) | | |
|---|---|---|---|---|---|---|---|---|
| **Drug Name** | **$9.99 Qty.** | **$12 Qty.** | **Drug Name** | **$9.99 Qty.** | **$12 Qty.** | **Drug Name** | **$9.99 Qty.** | **$12 Qty.** |
| FLUCONAZOLE 150MG TABS | 1 | 3 | BISOPROLOL/HCTZ 5MG/6.25MG TABS | 30 | 90 | QUINAPRIL 5MG, 10MG, 20MG, 40MG TABS | 30 | 90 |

15.   ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████

---

[6] Michael Amiet 30(b)(6) Deposition Transcript, dated Nov. 20, 2019 ("Amiet Dep. Tr.") at 69:25-70:10.

[7] Amiet Dep. Tr. at 94:21-95:2.

[8] Walg_Forth_00004833.

[9] Amiet Dep. Tr. at 136:7-17; see also, e.g., Walg_Forth_00354564.



Report of Lynette Hilton, Ph.D.



16.  ████████████████████████████████████████████████████
████.[10]  As shown in the flyer excerpt below, prices for a 30-day supply were $5 (tier 1), $10 (tier 2), or $15 (tier 3) and prices for a 90-day supply were $10 (tier 1), $20 (tier 2), or $30 (tier 3). ████████████████████████████ ████████████████████████  An example of a PSC 2.0 VPG Flyer is shown below.[11]



## Value-Priced Medication List

In addition to the discounts on thousands of brand-name and most other generic medications that Walgreens Prescription Savings Club members enjoy, club members receive greater discounts on three-tiers of value priced generics.*

The price for a generic drug is based on its tier and whether it is a 30-day or 90-day supply.†

The price may be as low as:

- 30-day-supply drugs cost $5 (tier 1), $10 (tier 2) or $15 (tier 3)
- 90-day-supply drugs cost $10 (tier 1), $20 (tier 2) or $30 (tier 3)

| VALUE GENERICS | | |
|---|---|---|
| **Antifungal** | | |
| | | Quantity |
| **Drug Name** | **Tier** | **30** **90** |
| FLUCONAZOLE 150MG TAB | 2 | 1 3 |
| TERBINAFINE 250MG TAB | 2 | 30 90 |

| Asthma (cont.) | | |
|---|---|---|
| | | Quantity |
| **Drug Name** | **Tier** | **30** **90** |
| AMINOPHYLLINE 200MG TAB | 2 | 60 180 |
| DYPHYLLINE-GG 100-100 ELIXIR | 2 | 240 720 |
| DYPHYLLIN-GG TAB | 3 | 30 90 |
| IPRATROPIUM INHAL SOLN 60 X 2.5ML | 2 | 75 225 |

| Blood Pressure/Heart Health (cont.) | | |
|---|---|---|
| | | Quantity |
| **Drug Name** | **Tier** | **30** **90** |
| ENALAPRIL-HCTZ 10-25MG TAB | 2 | 30 90 |
| FELODIPINE 2.5MG TAB | 3 | 30 90 |
| FOSINOPRIL 10MG TAB | 2 | 30 90 |
| FOSINOPRIL 20MG TAB | 2 | 30 90 |

17.  The VPG pricing Flyers depicted the pricing tier and the quantities corresponding to a 30-day and 90-day supply for certain VPG drugs.  For example, on the Flyer shown

---

[10] Amiet Dep. Tr. at 94:6-11.

[11] Complaint, Exhibit A.



Report of Lynette Hilton, Ph.D.

CONFIDENTIAL – Subject to Protective Order

above, Fluconazole 150mg tab (the first drug identified in the left column) is listed as a tier 2 drug with a 30-day supply equal to 1 tablet and a 90-day supply equal to 3 tablets.  Based on the tier pricing shown in the Flyer, Fluconazole 150mg tablets would cost $10 for 1 tablet and $20 for 3 tablets.

18.  ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████████
██████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

### 2.  NVPG Pricing

19.  ████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
██████████████████████[13]██████████████████████████
████████████████████████████████████████████████
████████████████████████████

20.  Walgreens has produced several different data sources which contain PSC pricing including PSC claims data.  Appendix A discusses each data source containing PSC prices.

---

[12] Walg_Forth_00320764.

[13] Amiet Dep. Tr. at 99:16-100:22 & 131:14-132:19; Dymon Decl., ¶¶ 36-37.



Report of Lynette Hilton, Ph.D.

CONFIDENTIAL – Subject to Protective Order

## V.     Classwide Damages Methodology

### A.     The Formulaic Nature of the Inquiry

21.     A formulaic approach can be applied here to estimate classwide damages. Individualized analysis for specific Class members will not be necessary. The susceptibility of damages estimation to classwide formulaic analysis is based on several factors:

   a.     The calculation of the amount paid to fill a prescription will be based upon historical transactional data. This classwide data comes from contemporaneous records maintained by Walgreens and from PBMs that adjudicated claims on behalf of Plaintiffs and Class members.

   b.     Beyond knowing the amounts actually paid, the calculation incorporates data reflecting PSC prices. The PSC prices are identified based on data that are classwide in nature--the PSC Claims Data provided by Walgreens and other PSC pricing data provided by Walgreens.

   c.     Unjust enrichment (the other focus of the damage estimation) considers the manner in which the challenged conduct resulted in an additional benefit to Walgreens above what it would have earned absent the challenged conduct. This benefit is similarly identified by reference to common, classwide data from Walgreens and from PBMs that adjudicated claims on behalf of Plaintiffs and Class members.

   d.     Both damages calculations will be performed through a set of computer programs and instructions applied to the data jointly and formulaically as to all Class members. No Class member-specific calculations or programs are needed.

### B.     Classwide Overpayment Methodology

22.     Conceptually, overpayments are the difference between what Class members actually paid for a generic drug and the PSC price for the same generic drug. The general formula that can be applied for purposes of calculating the total overpayment associated with a given claim is:



CONFIDENTIAL – Subject to Protective Order

Total Overpayment = (TPP Payment + Consumer Payment) – PSC Price.[14]

23. The following formulas can be used to determine which party paid an inflated amount--the TPP, the consumer, or both.

24. A consumer who paid a copay overpaid if the Consumer Payment > PSC Price. The consumer overpayment for a consumer who paid a copay is estimated as:

Consumer Overpayment = Consumer Payment – PSC Price.

25. A consumer who paid coinsurance overpaid if (i) the Consumer Payment > PSC Price; or (ii) if (TPP Payment + Consumer Payment) > PSC Price. The consumer overpayment for a consumer who paid coinsurance can be estimated using the following formula:

Consumer Overpayment = Consumer Payment – (PSC Price x Coinsurance%)

26. A TPP overpaid if the Total Overpayment > Consumer Overpayment. The TPP overpayment is estimated as:

TPP Overpayment = Total Overpayment – Consumer Overpayment.

### 1. Statutory Damages Calculation

27. It is my understanding that statutory damages may be available to Plaintiffs in certain states for each transaction in which the Class member incurred an overpayment. If statutory damages are available, they would be assessed on each transaction where Statutory Damages > TPP Overpayment and/or Statutory Damages > Consumer Overpayment.

28. The calculation of statutory damages can be made on a formulaic basis. Using the formulas outlined above, overpayments can be identified and calculated for each transaction for Class members in states where statutory damages are available. Based on this analysis, I can determine and calculate statutory damages based on whether the overpayment is greater than the statutory damages available.

---

[14] An overpayment is identified only when the Total Overpayment is greater than zero.



Report of Lynette Hilton, Ph.D.

CONFIDENTIAL – Subject to Protective Order

### C.    Implementing the Overpayment Damages Methodology

29.    To demonstrate the classwide formulaic manner in which I believe damages relevant to this case readily can be calculated, I have prepared illustrative damages calculations. As shown in the illustrative examples, the inputs to the methodology and the formulas used to calculate overpayments are sufficiently flexible to utilize data from various sources.  It is my understanding that as the case progresses, the data sources may change; however, the formulaic nature of the calculations and the ability to reliably estimate classwide damages without need for individual Class member inquires will not change.

#### 1.    Consumer Plaintiff Damages

30.    Walgreens has produced data reflecting its records of purchases of prescription drugs by the Consumer Plaintiffs made at Walgreens from January 1, 2007 to December 31, 2019.[15]  I use these data to demonstrate the formulaic nature of the overpayment calculation for the Consumer Plaintiffs.  These data provide information about each prescription drug purchased including but not limited to:  the date of the transaction, the drug purchased, the amount of the drug purchased, and the price paid.  Using these data I demonstrate how overpayment damages can be calculated for the Consumer Plaintiffs.

31.    Using information provided by Walgreens I am able to identify records that meet the Class inclusion criteria described in the Class definition.[16] Exhibit 3A provides an example of an overpayment for each of the named Consumer Plaintiffs.  For example, ██████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████

#### 2.    Fund Plaintiff Damages

32.    The Fund Plaintiffs have produced data from the PBMs that have adjudicated their prescription claims.  These data contain descriptive information about the

---

[15] Dymon Decl., ¶ 6(b).

[16] *See* Appendix B.



CONFIDENTIAL – Subject to Protective Order

prescriptions purchased by Fund Plaintiffs' beneficiaries at Walgreens, including information about what the Fund Plaintiffs paid for each prescription. Using the Fund Plaintiffs' PBM data in combination with the Walgreens transaction data, I demonstrate how overpayment damages can be calculated for the named Fund Plaintiffs.

33. As described in Appendix B, I first limit the Walgreens transaction data to those transactions that meet the Class inclusion criteria. The resulting set of Walgreens transactions is then matched to the corresponding transactions in the PBM data.

34. Exhibit 3C provides an example of an overpayment for each of the named Fund Plaintiffs. Exhibit 3C, Panel A provides examples where a copay was paid and Exhibit 3C, Panel B provides examples where coinsurance was paid. For example, ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████

### 3. Classwide Overpayment Damages

35. These same methodologies and data sources can be used to calculate overpayments on a classwide basis. It is my understanding that Walgreens maintains claims data for the entire Class period. Data can also be produced by PBMs. It is my understanding that classwide data is in the possession of the PBMs and that such data contain information sufficient to make these calculations.

36. Once classwide data is produced, classwide overpayments can be determined based on the same methodologies described above. I estimate that applying the methodologies to the data sources described herein would identify, at a minimum, thousands of transactions associated with an overpayment and identifiers for persons or entities in each of the states identified in the Class definition for every year from 2007 to the present.

### D. Classwide Unjust Enrichment Damages

37. I have been asked to provide a methodology for determining the difference between Walgreens' revenue and its PSC prices. It is my understanding that Plaintiffs may



CONFIDENTIAL – Subject to Protective Order

seek unjust enrichment damages for all transactions where an overpayment occurred based on the formulas described above.

38. An illustrative estimation can also be used here to highlight the formulaic nature of the inquiry. Utilizing the transactions where there was an overpayment based on the methodology described above, I calculate the difference between the revenue Walgreens received based on data produced by Walgreens and the PSC price for each transaction. Exhibits 3B and 3D provide an illustration of the unjust enrichment calculation using data produced by Walgreens.

### E. Summary

39. The methodologies set forth above use common classwide evidence to identify Class members that paid an inflated amount and can be used to calculate classwide damages.

40. The classwide damages sought by the Plaintiffs in this case (overpayments, statutory damages, and unjust enrichment) are readily susceptible to a common, formulaic calculation and do not require individualized Class member-specific analysis.

41. As the example calculations offered above demonstrate:

- The amount paid for a prescription can be estimated from common, classwide data, including Walgreens' own pharmacy-level electronic data and PBM electronic data.

- PSC prices can be formulaically derived from Walgreens' records for all Class members.

- The calculation of damages can be performed through a set of computer programs and instructions applied to the data formulaically as to all Class members. No individual Class member-specific analyses or calculations are required.

42. Finally, I note that my methodology for calculating damages is flexible and can accommodate, for example, changes in drugs included in the PSC price list, various time periods, inclusion of purchases in different states, and other sources of data reflecting Class member payments.



CONFIDENTIAL – Subject to Protective Order

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and ability.

Executed on November 16, 2022, in Los Angeles, California.

Lynette Hilton, Ph.D.

CONFIDENTIAL – Subject to Protective Order

## VI. Appendix A: Sources of PSC Price Information

43. ███████████████████████████████████████████
████████████████████████████████████[17] ████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████

Each of these data sources is described below. ██████████████████████████
███████████████████████████████████████████

### A. ████████████████

44. ████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████[18] ███████████
███████████████████████████████
███████[19] ████████████████████████████
███████████████████████████████████
███████[20] ████████████████████████████████
███████████████████████████████████[21]

45. ████████████████████████████████████████████
████████████████████████████████████
███████████████████████████████████████[22] ██████████████
████████████████████████████████████████████
███████████████████████████████

---

[17] Amiet Dep. Tr. at 60:7-16.

[18] Dymon Decl., ¶ 6(a).

[19] *Id.*, ¶¶ 34-36.

[20] ███████████████████████████████████████████
████████████████████████████████████████ (*Id.*, ¶ 6(a)). T███████████
███████████████████████ (*Id.*, ¶ 18(e)).

[21] ████████████████████████████████ (*Id.*, ¶ 45); ███████████████
██████████ (*Id.*, ¶ 36); █████████████████████████████████
█████████████████████████████████████████ *Id.*, ¶ 18(b)).

[22] *Id.*, ¶¶ 32-33.



CONFIDENTIAL – Subject to Protective Order



---

[23] *Id.*, ¶ 4; Declaration of Bill McLaughlin of Express Scripts, Inc., dated October 22, 2020, ¶ 9.

[24] Dymon Decl., ¶ 11.

[25] Walg_Forth_00320764.



CONFIDENTIAL – Subject to Protective Order



51. ██████████████████████████████████
██████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
██████████████████████████████████████
████████████████████████████

52. ██████████████████████████████████████
██████████████████████████████████████
██████████████████████

**C.** ████████████████████████████

53. ██████████████████████████████████
█████████████████████████[26]███████████[27].███████████████

---

[26] Dymon Decl., ¶ 12.

[27] *Id.*, ¶ 35.



Report of Lynette Hilton, Ph.D.

CONFIDENTIAL – Subject to Protective Order

54.

## VII.  Appendix B:  Identifying Class Members

55. It is my understanding that Walgreens stores transactional claims data in its data warehouses.[28]  In conjunction with this litigation, Walgreens has produced several datasets containing Walgreens' pharmacy transaction data.[29]



56. This appendix discusses filtering steps that can be taken in order to utilize Walgreens' transaction data to formulaically identify Class members.

**A.**

57.  .[30]

**B.**

58. .[31]

**C.**

59. .[32]

---

[28] Christopher Dymon 30(b)(6) Deposition Transcript, dated Oct. 5, 2018 ("Dymon Dep. Tr.") at 16:12-17:1.

[29] Dymon Decl., ¶¶ 6, 13.

[30] *Id.*, ¶¶ 27-28.

[31] *Id.*, ¶ 41.

[32] *Id.*, ¶ 59(a).



CONFIDENTIAL – Subject to Protective Order

**D.** ███████████

60. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████.[33]██████████████

█████████████████████

**E.** ██████████

61. ██████████████████████████████████████

███████████████████████████████

████████████████████.[34]

**F.** ███████████

62. ██████████████████████████████████████

████████████████████████████████████

██████████████████████████████

████████████████████████████████

██████████████.[35]

**G.** █████████████████

63. ████████████████████████████████

████████████████████████████████

██████████████████████████████████

█████████████”[36]████████████

██████████████████████████

████████████████.[37]██████████

████████████████████████████████

---

[33] *Id.*, ¶ 18(i).

[34] *Id.*, ¶ 18(h).

[35] Dymon Dep. Tr. at 17:2-21:9, 34:7-35:21, 60:12-64:24; Dymon Decl., ¶¶ 5, 6(c)(i) & n.7; ¶ 13(a) n.9; Megan Butterfield Deposition Transcript, dated December 5, 2019 at 196:17-206:17.

[36] "2018.12.21_Response to Mapping Request_Walgreens"; NCPDP/Forth v Walgreens 000001 at 033.

[37] Dymon Decl., ¶ 18(k).



CONFIDENTIAL – Subject to Protective Order



**H.**

64.

**I.**

65.

---

[38] NCPDP/Forth v Walgreens 000340 at 384.

[39] *Id.* Note that while these two values explicitly indicate that U&C was part of the basis upon which ingredient cost was based, other values in this field do not indicate the U&C price was not considered as part of the adjudication process but rather that it simply was not the basis upon which the ingredient cost was determined for a given claim.

[40] Dymon Decl., ¶¶ 18(b), 34.

[41] *See* Section V.C.



Report of Lynette Hilton, Ph.D.

CONFIDENTIAL – Subject to Protective Order

66.

Report of Lynette Hilton, Ph.D.

# EXHIBIT 1

Exhibit 1

**LYNETTE HILTON, Ph.D.**
*Senior Economist*
**Los Angeles, California**
**Tel: 213 624 9600**



Dr. Hilton specializes in projects involving economic damage assessment. Dr. Hilton has extensive experience with issues relating to the pharmaceutical industry. Most recently her work has focused on assessing exclusionary conduct in the pharmaceutical industry. She has taken a major role in calculating damages in a number of antitrust cases alleging delayed generic entry resulting from various conduct, such as reverse payments settlements and line extensions. In addition, she has worked on several projects calculating overpayments for Medicaid reimbursements.

Dr. Hilton has served as an expert for plaintiffs in multiple wrongful death cases and several pharmaceutical cases. She has co-authored a number of articles on a wide range of topics, including a study of immigration and the welfare state which appeared in The Quarterly Journal of Economics. Her career also includes studies of the semiconductor, plastics, computer and medical technology industries.

### Education

Ph.D. in Economics, University of California, San Diego

B.A. in Quantitative Economics and Decision Sciences, University of California, San Diego

### Work Experience

Econ One Research, Inc.
        Senior Economist, September 2001 - Present
        Economist, 1997 - August 2001

        **Expert Engagements**
        *In re: Zetia (Ezetimibe) Antitrust Litigation*

        *Nostrum Pharmaceuticals, L.L.C., et al. v. Dixit, et al.*

        *United States of America, et al. ex rel. Wetherholt and Drimer v. Pfizer, Inc.*

        *Charles T. Kusuno and Elsie M. Kusuno v. Owens-Illinois, Inc., et al.*
        *Solomon Keawe and Patricia A. Keawe v. Owens Corning, et al.*

        *Gary T. Matsumoto and Tamako S. Matsumotot v. Owens Illinois, Inc., et al.*

        *Edward T. W. Chang et al. v. Owens-Illinois, Inc., et al.*

        *Edna L. M. Johnson v. Owens Corning, et al.*

Lynette Hilton, Ph.D.
Senior Economist
Page 2 of 3

> *Donald James and Eldora K. James v. Owens Corning, et al.*

> *Nancy A. De Rego, individually and as Legal Representative of the Estate of James De Rego, deceased v. Owens Corning, et al.*

> *Raymondo Rellin and Felisa A. Rellin v. Allied-Signal, Inc., et al.*

> *Edward J. Sherry and Theresa M. Sherry v. Owens Corning, et. al.*

> *Theodore Y.C. Kam and Alice P.N. Kam v. Owens-Illinois, Inc., et al.*

Micronomics, Inc.
> Economist, 1996 - 1997

KPMG Peat Marwick, Barents Group
> Senior Associate, 1995 - 1996

University of California, San Diego Social Science Computing Services
> Statistical Consultant, 1994 - 1995

California State University San Marcos
> Lecturer, 1993

DeCotiis Erhard Strategic Consulting Group
> Data and Statistical Analysis Consultant, 1991 - 1993

**Papers**

"Lost Profits and Royalties In Intellectual Property Disputes: The Need to Avoid Double Dipping," *The Metropolitan Corporate Counsel*, February 2000, vol. 8, no. 2 (with Charles Mahla).

"A New Approach to Estimating Damages in Mass Torts," *International Journal of the Economics of Business*, Volume 7, Number 1, 2000 (with Atanu Saha).

"Expo-Power: A Flexible Hazard Function for Duration Data Models," *Economic Letters*, 54 (1997) (with Atanu Saha).

"The Role of Failure Time Models in Class-Action Litigation," October 1996 (with Atanu Saha).

**Papers (continued)**

"Immigration and the Welfare State: Immigrant Participation in Means-Tested Entitlement Programs," *The Quarterly Journal of Economics*, Vol. CXI, May 1996 (with George Borjas).

Lynette Hilton, Ph.D.
Senior Economist
Page 3 of 3

"AFDC-UP and Family Structure:  Does UP Encourage Two-Parent Families?" September 1994.

"AFDC and Household Formation," February 1994 (with Jean Shelton).

## Presentations

"Expo-Power:  A Flexible Hazard Function for Duration Data Models," presented at the American Agricultural Economic Association's Annual Conference, Toronto, Canada, July 27-30, 1997 (with Atanu Saha).

"A New Duration Model with a Flexible Hazard Function," presented at the 72nd Annual Western Economic Association International Conference, Seattle, July 9-13, 1997 (with Atanu Saha and Arthur Havenner).

# EXHIBIT 2

CONFIDENTIAL - Subject to Protective Order

**Exhibit 2**
**List of Materials Considered**

*Includes all documents, studies, and articles cited in the Report.*

**Pleadings**

Fourth Amended Consolidated Class Action Complaint
and Jury Demand, ECF No. 477 (6/16/2021)

**Depositions, Exhibits Thereto, and Declarations**

Declaration of Bill McLaughlin of Express Scripts, Inc. (10/22/2020)
Declaration of Christopher Dymon (11/9/2022)
Deposition of Michael Amiet (11/20/2019)
Deposition of Megan Butterfield (12/5/2019)
Deposition of Christopher Dymon (10/5/2018)
Ex. 62 from the Deposition of Cade Erlund

**Documents**

PBM

CAREMARK_FORTH-006410.xlsx
CAST000081.xlsx
ESI-0001548 ---ATTORNEYS EYES ONLY.xlsx
ESI-0001549 ATTORNEYS EYES ONLY.xlsx
IBEW 2008-2014 (IBEW_0017832).xlsx
IBEW 2014-2017.xlsx
IBEW 2018-2019 CAREMARK_FORTH-003386.xlsx
Local 2008-2017 - LOCAL295_0025215.xlsx
MTRX0001070.xlsx
Steamfitters 2014-2016 (LOCAL439_0000108).xlsx
Steamfitters 2017-2018.xlsx

NCPDP / Forth v Walgreens

000001
000340
000868
001790
001982
002074

WALG_FORTH Prefix

| | | |
|---|---|---|
| 00000186 | 00041936 | 00300646 |
| 00004833 | 00046050 | 00320050  -  00320101 |
| 00004923 | 00046218 | 00320133 |
| 00005032 | 00046311 | 00320138 |
| 00006832 | 00046611 | 00320143 |
| 00012962 | 00046670 | 00320148 |
| 00013003 | 00046702 | 00320153 |
| 00013064 | 00046871 | 00320158 |
| 00013080 | 00046906 | 00320163 |
| 00013095 | 00046934 | 00320173 |
| 00013133 | 00047165 | 00320183 |
| 00013174 | 00047236 | 00320217 |
| 00013261 | 00047795 | 00320227 |
| 00013324 | 00047804 | 00320237 |
| 00013332 | 00047813 | 00320247 |
| 00013375 | 00047817 | 00320257 |
| 00013391 | 00047825 | 00320262 |
| 00013543 | 00047829 | 00320272 |
| 00013548 | 00047833 | 00320282 |
| 00013688 | 00047877 | 00320292 |
| 00013718 | 00047951 | 00320302 |
| 00013741 | 00048046 | 00320312 |
| 00013780 | 00060296 | 00320322 |
| 00013790 | 00079753 | 00320332 |
| 00013824 | 00079758 | 00320342 |
| 00013864 | 00079778 | 00320352 |
| 00013876 | 00079791 | 00320362 |
| 00013884 | 00079818 | 00320372 |
| 00013888 | 00080969 | 00320399 |
| 00013896 | 00080988 | 00320409 |
| 00013908 | 00081008 | 00320419 |
| 00013916 | 00081014 | 00320428 |
| 00013924 | 00081406 | 00320436 |
| 00013932 | 00081412 | 00320445 |
| 00013940 | 00082948 | 00320455 |
| 00013948 | 00091083 | 00320465 |
| 00013956 | 00112026 | 00320475 |
| 00013968 | 00112531 | 00320485 |
| 00013972 | 00114890 | 00320495 |
| 00040465 | 00125545 | 00320505 |
| 00041452 | 00135342 | 00320515 |
| 00041457 | 00295614 | 00320525 |

Report of Lynette Hilton, Ph.D.

CONFIDENTIAL - Subject to Protective Order

**Exhibit 2**
**List of Materials Considered**

| | | |
|---|---|---|
| 00320549 | 00320660 | 00341208 |
| 00320557 | 00320668 | 00341210 |
| 00320565 | 00320676 | 00341334  -  00341335 |
| 00320573 | 00320684 | 00352607  -  00352608 |
| 00320581 | 00320692 | 00352862 |
| 00320589 | 00320700 | 00352903  -  00352996 |
| 00320597 | 00320708 | 00353301  -  00353308 |
| 00320605 | 00320716 | 00353523 |
| 00320613 | 00320724 | 00353525  -  00354292 |
| 00320620 | 00320732 | 00354310  -  00354364 |
| 00320628 | 00320740 | 00354564  -  00354635 |
| 00320636 | 00320748 | 00354639 |
| 00320644 | 00320756 | 00354643  -  00354658 |
| 00320652 | 00321180  -  00321187 | |

<u>WALGREENS</u>
2018.12.21_Response to Mapping Request_Walgreens.xlsx
2019-12-03 Individual Plaintiffs Data.xlsx
2020.03.04_Letter from S. Coleman to J. Guglielmo's February 14, 2020 letter re Structured Data
DRUG_TABLE.txt
Forth party fill_plan additional scripts.xlsx
Forth_2015_Patient_Plan.txt
Forth_2015_Plan_Category.txt
Forth_2015_Prescription.txt
Forth_2015_Prescription_Fill.txt
Forth_2015_Prescription_Fill_Plan.txt
Forth_2015_Prescription_Fill_Sales_Metric.txt
Forth_2015_Prescription_SDL.txt
Forth_2015_Store_Location.txt
Forth_2015_Third_Party_Plan.txt
LOCATION_STORE_2007_2016.txt
LOCATION_STORE_2017_2019.txt
LOCATION_STORE_PRE_2017_ADDITIONAL.txt
LOCATION_STORE_ZIP.txt
PATIENT_PLAN_2007_2016.txt
PATIENT_PLAN_2017_2019.txt
PATIENT_PLAN_CATEGORY_2007_2016.txt
PATIENT_PLAN_CATEGORY_2017_2019.txt
PATIENT_PLAN_PRE_2017_ADDITIONAL.txt
PRESCRIPTION_2007.txt
PRESCRIPTION_2008.txt
PRESCRIPTION_2009.txt
PRESCRIPTION_2010.txt
PRESCRIPTION_2011.txt
PRESCRIPTION_2012.txt
PRESCRIPTION_2013.txt
PRESCRIPTION_2014.txt
PRESCRIPTION_2015.txt
PRESCRIPTION_2016.txt
PRESCRIPTION_2017.txt
PRESCRIPTION_2018.txt
PRESCRIPTION_2019.txt
PRESCRIPTION_FILL_2007.txt
PRESCRIPTION_FILL_2008.txt
PRESCRIPTION_FILL_2009.txt
PRESCRIPTION_FILL_200907_200912.txt
PRESCRIPTION_FILL_2010.txt
PRESCRIPTION_FILL_2011.txt
PRESCRIPTION_FILL_2012.txt
PRESCRIPTION_FILL_2013.txt
PRESCRIPTION_FILL_2014.txt
PRESCRIPTION_FILL_2015.txt
PRESCRIPTION_FILL_2016.txt
PRESCRIPTION_FILL_2017.txt
PRESCRIPTION_FILL_2018.txt
PRESCRIPTION_FILL_2019.txt
PRESCRIPTION_FILL_PLAN_2007.txt
PRESCRIPTION_FILL_PLAN_2008.txt
PRESCRIPTION_FILL_PLAN_200901_200906.txt
PRESCRIPTION_FILL_PLAN_200907_200912.txt
PRESCRIPTION_FILL_PLAN_2010.txt
PRESCRIPTION_FILL_PLAN_2011.txt
PRESCRIPTION_FILL_PLAN_2012.txt
PRESCRIPTION_FILL_PLAN_2013.txt
PRESCRIPTION_FILL_PLAN_2014.txt
PRESCRIPTION_FILL_PLAN_2015.txt
PRESCRIPTION_FILL_PLAN_2016.txt
PRESCRIPTION_FILL_PLAN_2017.txt
PRESCRIPTION_FILL_PLAN_2018.txt
PRESCRIPTION_FILL_PLAN_2019.txt
PRESCRIPTION_FILL_POST_2017_ADDITIONAL.txt
PRESCRIPTION_FILL_PRE_2017_ADDITIONAL.txt
PRESCRIPTION_PRE_2017_ADDITIONAL.txt
PRESCRIPTION_POST_2017_ADDITIONAL.txt

Report of Lynette Hilton, Ph.D.

CONFIDENTIAL - Subject to Protective Order

**Exhibit 2**
**List of Materials Considered**

PRESCRIPTION_SDL_2007_2016.txt
PRESCRIPTION_SDL_2017_2019.txt
PRESCRIPTION_SDL_PRE_2017_ADDITIONAL.txt
Prod_Forth_12K_Sample_Location_Store.txt
Prod_Forth_12K_Sample_Patient_Plan.txt
Prod_Forth_12K_Sample_Plan_Category.txt
Prod_Forth_12K_Sample_Prescription.txt
Prod_Forth_12K_Sample_Prescription_Fill.txt
Prod_Forth_12K_Sample_Prescription_Fill_Plan.txt
Prod_Forth_12K_Sample_Prescription_Fill_Sales_Metric.txt
Prod_Forth_12K_Sample_Prescription_SDL.txt
Prod_Forth_12K_Sample_Third_Party_Plan.txt
Prod_Forth_PSC_Supplemental_Prescription_Fill_2007_2019.txt
Prod_Forth_PSC_Supplemental_Prescription_Fill_Plan_2007_2019.txt
Prod_Forth_PSC_Supplemental_Prescription_SDL_2007_2019.txt
Prod_Union_Fund_Caremark_Forth_006410_Location_Store.txt
Prod_Union_Fund_Caremark_Forth_006410_Patient.txt
Prod_Union_Fund_Caremark_Forth_006410_Patient_Plan.txt
Prod_Union_Fund_Caremark_Forth_006410_Plan_Category.txt
Prod_Union_Fund_Caremark_Forth_006410_Prescription.txt
Prod_Union_Fund_Caremark_Forth_006410_Prescription_Fill.txt
Prod_Union_Fund_Caremark_Forth_006410_Prescription_Fill_Plan.txt
Prod_Union_Fund_Caremark_Forth_006410_Prescription_SDL.txt
Prod_Union_Fund_Caremark_Forth_006410_Third_Party_Plan.txt
Prod_Union_Fund_CAST000081_Location_Store.txt
Prod_Union_Fund_CAST000081_Patient.txt
Prod_Union_Fund_CAST000081_Patient_Plan.txt
Prod_Union_Fund_CAST000081_Plan_Category.txt
Prod_Union_Fund_CAST000081_Prescription.txt
Prod_Union_Fund_CAST000081_Prescription_Fill.txt
Prod_Union_Fund_CAST000081_Prescription_Fill_Plan.txt
Prod_Union_Fund_CAST000081_Third_Party_Plan.txt
Prod_Union_Fund_IBEW_0017832_Location_Store.txt
Prod_Union_Fund_IBEW_0017832_Patient.txt
Prod_Union_Fund_IBEW_0017832_Patient_Plan.txt
Prod_Union_Fund_IBEW_0017832_Plan_Category.txt
Prod_Union_Fund_IBEW_0017832_Prescription.txt
Prod_Union_Fund_IBEW_0017832_Prescription_Fill.txt
Prod_Union_Fund_IBEW_0017832_Prescription_Fill_Plan.txt
Prod_Union_Fund_IBEW_0017832_Third_Party_Plan.txt
Prod_Union_Fund_MTRX0001070_Location_Store.txt
Prod_Union_Fund_MTRX0001070_Patient.txt
Prod_Union_Fund_MTRX0001070_Patient_Plan.txt
Prod_Union_Fund_MTRX0001070_Plan_Category.txt
Prod_Union_Fund_MTRX0001070_Prescription.txt
Prod_Union_Fund_MTRX0001070_Prescription_Fill.txt
Prod_Union_Fund_MTRX0001070_Prescription_Fill_Plan.txt
Prod_Union_Fund_MTRX0001070_Third_Party_Plan.txt
Prod_Union_Fund_ESI_0001548_Location_Store.txt
Prod_Union_Fund_ESI_0001548_Patient.txt
Prod_Union_Fund_ESI_0001548_Patient_Plan.txt
Prod_Union_Fund_ESI_0001548_Plan_Category.txt
Prod_Union_Fund_ESI_0001548_Prescription.txt
Prod_Union_Fund_ESI_0001548_Prescription_Fill.txt
Prod_Union_Fund_ESI_0001548_Prescription_Fill_Plan.txt
Prod_Union_Fund_ESI_0001548_Prescription_SDL.txt
Prod_Union_Fund_ESI_0001548_Third_Party_Plan.txt
Prod_Union_Fund_ESI_0001549_Location_Store.txt
Prod_Union_Fund_ESI_0001549_Patient.txt
Prod_Union_Fund_ESI_0001549_Patient_Plan.txt
Prod_Union_Fund_ESI_0001549_Plan_Category.txt
Prod_Union_Fund_ESI_0001549_Prescription.txt
Prod_Union_Fund_ESI_0001549_Prescription_Fill.txt
Prod_Union_Fund_ESI_0001549_Prescription_Fill_Plan.txt
Prod_Union_Fund_ESI_0001549_Third_Party_Plan.txt
RX_FILL_200907_200912.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Location.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Patient_Plan.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Plan_Category.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Prescription.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Prescription_Fill.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Prescription_Fill_Plan.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Prescription_Fill_Sales
_Metric.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Prescription_SDL.txt
Walgreens_Forth_12K_Sample_Excluded_Pat_IDs_Third_Party_Plan.txt

**Publicly Available Materials**

Kaiser Family Foundation, "Follow the Pill: Understanding the U.S. Commercial
Pharmaceutical Supply Chain," 2005.
The National Council for Prescription Drug Programs ("NCPDP"), Standards,
standards.ncpdp.org

# EXHIBIT 3

CONFIDENTIAL - Subject to Protective Order

**Exhibit 3A**
**Illustration: Named Consumer Plaintiff Overpayments**

| Plaintiff | Relevant PBM | State | Date | Drug ID | Drug Name | Quantity | PSC Price | Amount Paid by Consumer | Consumer Overpayment |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | (Dollars) | |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (9) - (8) (10) |



Report of Lynette Hilton, Ph.D.

CONFIDENTIAL - Subject to Protective Order

**Exhibit 3B**
**Illustration:  Unjust Enrichment on Named Consumer Plaintiff Claims**

| Plaintiff | Relevant PBM | State | Date | Drug ID | Drug Name | Quantity | PSC Price | Amount Paid by Consumer | Amount Paid by PBM | Total Received by Walgreens | Unjust Enrichment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | (Dollars) | | | | |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (9) + (10) (11) | (11) - (8) (12) |

CONFIDENTIAL - Subject to Protective Order

**Exhibit 3C**
**Illustration: Fund Plaintiff Overpayments**

**Panel A: Transactions with Copay**

| Fund Plaintiff | Relevant PBM | State | Date | Drug ID | Drug Name | Quantity | PSC Price | Amount Paid by Consumer | Amount Paid by TPP | Total Paid by TPP and Consumer | Total Overpayment | Consumer Overpayment | TPP Overpayment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | (Dollars) | | | |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (9) + (10) (11) | (11) - (8) (12) | (9) - (8) (13) | (12) - (13) (14) |

**Panel B: Transactions with Coinsurance**

| Fund Plaintiff | Relevant PBM | State | Date | Drug ID | Drug Name | Quantity | PSC Price | Amount Paid by Consumer | Amount Paid by TPP | Total Paid by TPP and Consumer | Total Overpayment | Consumer Overpayment | TPP Overpayment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | (Dollars) | | | |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (9) + (10) (11) | (11) - (8) (12) | (12) * (9) / (11) (13) | (12) * (10) / (11) (14) |

CONFIDENTIAL - Subject to Protective Order

**Exhibit 3D**
**Illustration:  Unjust Enrichment on Fund Plaintiff Claims**

| Fund Plaintiff | Relevant PBM | State | Date | Drug ID | Drug Name | Quantity | PSC Price | Amount Paid by Consumer | Amount Paid by PBM | Total Received by Walgreens | Unjust Enrichment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | (Dollars) | | |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (9) + (10) (11) | (11) - (8) (12) |

Report of Lynette Hilton, Ph.D.