# EXHIBIT 4

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



## CENTER FOR BENEFICIARY CHOICES

**October 11, 2006**

**Memorandum To:** All Part D Sponsors

**Subject:** HPMS Q & A  - Lower Cash Price Policy

**From:** Cynthia Tudor, Ph.D., Director, Medicare Drug Benefit Group

The following question and answer on the lower cash price policy has been revised and updated in the Frequently Asked Questions Database on the CMS website at http://questions.cms.hhs.gov.

> Q: What should an individual do if he or she is able to obtain a better price on a covered Part D drug at the point of sale than the negotiated price charged by his or her Part D plan if he/she is in the coverage gap or deductible phase of his or her benefit? Will that lower amount at the point of sale count toward the enrollee's TrOOP balance?
>
> A: Although we expect it to happen rarely, an individual <u>may</u> be able to obtain a lower price at a network pharmacy than that which his or her plan charges (the plan's negotiated price) in any applicable coverage gap or deductible. This may be possible if the pharmacy is offering a "special" price or other discount for all customers, or if the beneficiary using a discount card, and the beneficiary is in any applicable coverage gap or deductible phase of his or her Part D benefit and is able to receive a better cash price for a covered Part D drug at a network pharmacy than the plan offers via its negotiated price. In this situation, he or she may purchase that covered Part D drug without using his or her Part D benefit or a supplemental card. The enrollee's purchase price for the discounted drug will count toward total drug spend under his or her Part D benefit and TrOOP balance provided the Part D plan finds out about it.
>
> The enrollee must take responsibility for submitting the appropriate documentation to his or her plan in order to have the amount count toward his or her total drug spend and TrOOP balances.[1] Plans must accommodate the receipt of such information directly from enrollees

---

[1] We note that in cases where a pharmacy offers a lower price to its customers throughout a benefit year, this would not constitute a "lower cash price" situation that is the subject of this guidance. For example, Wal-Mart recently introduced a program offering a reduced price for certain generics to its customers. The low Wal-Mart price on these specific generic drugs is considered Wal-Mart's "usual and customary" price, and is not considered a one-time "lower cash" price. Part D sponsors consider this lower amount to be "usual and customary" and will reimburse Wal-Mart on the basis of this price. To illustrate, suppose a Plan's usual negotiated price for a specific drug is $10 with a beneficiary copay of 25% for a generic drug. Suppose Wal-Mart offers the same generic drug throughout the benefit for $4. The Plan considers the $4 to take the place of the $10 negotiated price. The $4 is not considered a lower cash price, because it is not a one-time special price. The Plan will adjudicate Wal-Mart's claim for $4 and the beneficiary will pay only a $1 copay, rather than a $2.50 copay. This means that both the Plan and the beneficiary are benefiting from the Wal-

SCHAFERMEYER_0000395

and adjust total drug spend and TrOOP balances accordingly consistent with their established processes and clear instructions for enrollee paper claim submissions. These processes and instructions should be designed to distinguish between claims submitted for: (1) out-of-network coverage; (2) adjustment to TrOOP balances based on wraparound payments made by supplemental payers not previously submitted to the plan; (3) documentation submitted for a purchase made via a discount card or other special cash discount outside the Part D benefit in any applicable deductible or coverage gap phase of the benefit; and (4) documentation submitted for a nominal copayment assessed by a PAP sponsor operating outside the Part D benefit for assistance provided with covered Part D drug costs.

We note that this policy does not apply in any phase of an enrollee's Part D benefit in which he or she is liable for any less than 100 percent cost-sharing. In other words, it does not apply outside of any applicable coverage gap or deductible phase of his or her benefit. We have limited the policy's applicability in order to ensure that enrollees: (1) do not unwittingly forego plan funded coverage, which in most cases will be the lowest price available given the price concessions built into the plan's negotiated prices; (2) have the benefit of plan drug utilization review and other safety edits that can only be provided if the plan adjudicates the claim; and (3) proceed through the benefit as quickly as possible in order to reach catastrophic coverage. It is unlikely that this policy is likely to be a significant source of savings for most enrollees, particularly since, if an enrollee fails to submit even one claim for a purchase made under the circumstances explained above, it is almost certain he or she will ultimately spend more than he or she would have under his or her plan's negotiated prices.

We also note that organizations or entities offering discount card or other discounted price arrangements must comply with all relevant fraud and abuse laws, including, when applicable, the Federal anti-kickback statute and the civil monetary penalty prohibiting inducements to beneficiaries. The HHS Office of the Inspector General (OIG) enforces Federal fraud and abuse statutes, and all questions regarding the compliance of specific arrangements with these statutes should be referred to the OIG.

Please contact Alissa DeBoy at (410) 786-6041 if you have any questions about this guidance.

---

Mart "usual and customary" price, and the discounted Wal-Mart price of the drug is actually offered within the Plan's Part D benefit design. Therefore, the beneficiary can access this discount at any point in the benefit year, the claim will be adjudicated through the Plan's systems, and the beneficiary will not need to send documentation to the plan to have the lower cash price count toward TrOOP.