# EXHIBIT 8

## *REDACTED*

CONFIDENTIAL

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF ILLINOIS
 3                   EASTERN DIVISION
 4
     DOROTHY FORTH, DONNA BAILEY,
 5   LISA BULLARD, RICARDO GONZALES,
     CYNTHIA RUSSO, TROY TERMINE,
 6   INTERNATIONAL BROTHERHOOD OF
     ELECTRICAL WORKERS LOCAL 38
 7   HEALTH AND WELFARE FUND,
     INTERNATIONAL UNION OF OPERATING
 8   ENGINEERS LOCAL 295-295C WELFARE
     FUND, AND STEAMFITTERS FUND
 9   LOCAL 439, on Behalf of
     Themselves and All Others
10   Similarly Situated,
                              No. 1:17-cv-02246
11             Plaintiffs,
12        vs.
13   WALGREEN CO.,
14             Defendant.
15   _____
16
17                   CONFIDENTIAL
18      VIDEOTAPED DEPOSITION of DAVID E. HALTER, JR.
19               San Diego, California
20            Thursday, December 19, 2019
21
22
23   Reported by:
     Kae F. Gernandt, CSR No. 5342
24
25
```

CONFIDENTIAL

                                                          Page 165

1    BY MR. LEIB:

2            Q.   So, for different drugs, they use

3    different PBMs?

4            A.   I don't know how they divvy up the

5    program between PBMs, but they work with multiple

6    PBMs.

7            Q.   Does MedImpact consider drug discount

8    cards such as GoodRx to be a rate offered to the

9    general public?

10           MR. OLAFSON:  Object to form.

11           THE WITNESS:  No.

12   BY MR. LEIB:

13           Q.   Why not?

14           A.   Requires active enrollment or

15   participation and sharing of information with GoodRX

16   by a member -- by an individual.

17           Q.   At the time of contracting the 2010

18   agreement, did MedImpact have a view on whether club

19   prices such as the PSC were rates offered to the

20   general public?

21           A.   Yes.

22           Q.   And what was its view?

23           A.   View was that a program that required

24   enrollment, active participation, fee, et cetera did

25   not constitute a price available to cash paying

CONFIDENTIAL

Page 166

1    customer coming in off the street on an individual

2    day.

3         Q.   And a cash paying customer is the same

4    as a general public member; is that fair to say?

5         MR. AGUILAR:  Objection.  Form.

6         THE WITNESS:  Yes.  I think I defined

7    "general public" as meaning cash paying customer.

8    BY MR. LEIB:

9         Q.   Is that also known as retail?

10        MR. OLAFSON:  Object to form.

11        THE WITNESS:  No.  Retail could be a very

12   broad term.

13        MR. LEIB:  We'll mark this as 136.

14             (Deposition Exhibit 136 marked for

15   identification.)

16        MR. LEIB:  And this is a document Bates

17   labeled 28 -- I'm sorry, MI-F 2844 to 2845 with an

18   attachment that is Bates labeled MI-F 2848 to 2853.

19   BY MR. LEIB:

20        Q.   Do you see at the bottom of the first

21   page of this document there's an e-mail from Jessica

22   Vachal.  I don't know if I'm pronouncing that

23   correctly.  And it says she's a proposal

24   coordinator.  She works for MedImpact, correct?

25        A.   Yes.

CONFIDENTIAL

Page 174

1    customer or a cash customer as being somebody who is

2    the general public, correct?

3           A.   Yes.

4           Q.   And you had said that somebody using the

5    discount card is not a part of the general public --

6           MR. AGUILAR:  Objection.  Form.

7    BY MR. LEIB:

8           Q.   -- correct?

9           A.   I think what we're distinguishing

10   between is -- is three separate things.  So, program

11   participants will be paying cash, but they're

12   different than a cash paying customer who's not

13   enrolled or utilizing an available program and is

14   also not using their insurance.

15          Q.   So, in that answer you're saying a cash

16   paying customer is somebody who is not enrolled or

17   using any available program and is also not using

18   their insurance, correct?

19          A.   Yes.

20          Q.   So, we're making a fine distinction here

21   between paying cash meaning they're handing dollars

22   over in some form and more of a term of art,

23   correct?

24          MR. AGUILAR:  Objection.  Form.

25          THE WITNESS:  Yeah, there's -- there's a

CONFIDENTIAL

**Page 192**



CONFIDENTIAL

Page 193



11    Q.    And we also saw that in the pharmacy
12    manual, the MedCare Pharmacy Network Policies and
13    Procedures Manuals that predate the 2016 agreement
14    use the term "cash paying customer."

CONFIDENTIAL

Page 194



20   mark as Exhibit 139.

21            (Deposition Exhibit 139 marked for

22   identification.)

23   BY MR. LEIB:

24        Q.   And this is a document that

25   unfortunately doesn't have a Bates label on it but

CONFIDENTIAL

Page 247

I, the undersigned, a Certified Shorthand
Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before
me at the time and place herein set forth; that any
witnesses in the foregoing proceedings, prior to
testifying, were placed under oath; that a verbatim
record of the proceedings was made by me using machine
shorthand which was thereafter transcribed under my
direction; further, that the foregoing is an accurate
transcription thereof.

I further certify that I am neither financially
interested in the action nor a relative or employee of
any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed
my name.

Dated:  December 30, 2019

Kae F. Gernandt

CSR No. 5342