# EXHIBIT 10

*REDACTED*

```
                                              Page 1
 1
 2    UNITED STATES DISTRICT COURT
 3    NORTHERN DISTRICT OF ILLINOIS
 4    EASTERN DIVISION
 5    ---------------------------------------------X
 6    DOROTHY FORTH, ET AL.,
 7                        Plaintiffs,
                                         Index No.
 8         -against-                     17-cv-02246
 9    WALGREEN CO.,
10                        Defendant.
11    ---------------------------------------------X
12
13                        January 21, 2021
14                        10:08 a.m.
15
16          VIDEO DEPOSITION OF JAMES JOHNSON,
17    taken via Zoom, before Fran Insley, a Notary
18    Public of the States of New York and New
19    Jersey.
20
21
22
23
24
25
```

Page 33

1 ▉
2 ▉ ▉
3 ▉ ▉
4 ▉ ▉
5 ▉ ▉
6 ▉ ▉ ▉ ▉
7 ▉ ▉
8 ▉ ▉ ▉
9 ▉ ▉
10 ▉ ▉
11 ▉ ▉
12     Q.    When you say coverage, are you
13 referring to insurance coverage?
14     A.    It could be insurance coverage.  It
15 could be any other program coverage that gives
16 them some benefits or discounted price.
17 ▉ ▉ ▉
18 ▉ ▉
19 ▉ ▉
20 ▉ ▉ ▉
21 ▉ ▉ ▉
22 ▉ ▉
23 ▉ ▉
24 ▉ ▉
25 ▉ ▉

Page 109

1  Johnson
2  the agreement?
3      MR. GARVEY: Objection to form.
4      MR. MONTCALM: Objection to form.
5      I'll just read again the standing
6      objection to asking about, to interpret
7      the meanings of the document that speaks
8      for itself.
9      MR. DWOSKIN: Just for the record, I
10     don't believe this document necessarily
11     speaks for itself, but please go ahead,
12     Mr. Johnson.
13     Q.   "The following terms are used
14  throughout this document and are derived from
15  the Agreement," and I'm asking you what it
16  means for the terms to be derived from the
17  agreement which we discussed, which includes,
18  in part, the 2017 Provider Agreement between
19  Optum and Walgreens?
20     A.   My interpretation is that these
21  terms are also used in many of our agreements
22  and those agreements supersede the Provider
23  Manual.
24     Q.   It doesn't say the word supersede in
25  there, does it?

Page 199

1 Johnson
2 A. Because again, it aligned with
3 Optum's understanding of what U&C pricing was
4 and what the PSC pricing and program entailed
5 and we wouldn't have objected because it did
6 align with our interpretation of the benefits
7 and the contracts in place.
8 Q. At any time did Optum consider
9 Walgreens PSC pricing as constituting U&C
10 pricing under any of Optum's agreements with
11 Walgreens in effect after the implementation of
12 the PSC program?
13 A. Not that I'm aware of.
14 Q. Is that for the reasons that
15 you've -- similar to what you just indicated?
16 A. Yes.
17 MR. DWOSKIN: Form.
18 Q. If Optum had considered Walgreens
19 PSC pricing to constitute U&C pricing, do you
20 believe Optum would have raised that issue with
21 Walgreens?
22 MR. DWOSKIN: Form.
23 A. Yes.
24 Q. If Optum considered Walgreens PSC
25 pricing to constitute U&C pricing, do you

```
                                        Page 200
 1                   Johnson
 2   believe that Optum would have insisted that
 3   U&C -- that Walgreens -- pardon me -- report
 4   its PSC pricing as U&C pricing?
 5           MR. DWOSKIN:  Form.
 6       A.   Likely, yes.
 7       Q.   To your knowledge, did Optum ever
 8   make such insistence?
 9       A.   No.
10           MR. DWOSKIN:  Form.
11       Q.   Let's take a look at what was
12   previously marked as Exhibit 370.  If we can
13   take down the screen share.  We already have,
14   sorry.  If you can, Kelsey, screen share
15   Exhibit 370, please.
16           Mr. Johnson, you'll see this is the
17   November 2000 agreement that you were shown
18   previously today.  Do you remember questions
19   and answers about this document?
20       A.   Yes.
21       Q.   Let's go to the page where the
22   definition of usual and customary is found.  It
23   is the page ending 540.  I understand,
24   Mr. Johnson, this is an agreement that started
25   in effect prior to the relevant time period,
```

Page 233

```
 3              C E R T I F I C A T E
 4         I, FRAN INSLEY, hereby certify that the
 5   Deposition of JAMES JOHNSON was held before me
 6   on the 21st day of January, 2021; that said
 7   witness was duly sworn before the commencement
 8   of testimony; that the testimony was taken
 9   stenographically by myself and then transcribed
10   by myself; that the party was represented by
11   counsel as appears herein;
12         That the within transcript is a true
13   record of the Deposition of said witness;
14         That I am not connected by blood or
15   marriage with any of the parties; that I am not
16   interested directly or indirectly in the
17   outcome of this matter; that I am not in the
18   employ of any of the counsel.
19         IN WITNESS WHEREOF, I have hereunto set
20   my hand this 1st day of February, 2021.


                         _____
                                FRAN INSLEY
```