**UNITED STATES COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>                   Plaintiffs,<br><br>    v.<br><br>WALGREEN CO.,<br><br>                   Defendant. | Civil No. 1:17-cv-02246<br><br>Judge Edmond E. Chang<br><br>Magistrate Judge Sheila Finnegan |

**PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY**
**OF JOHN W. HANIFIN PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARDS ...........................................................................................2

III. ARGUMENT ...........................................................................................................4

    A.    Hanifin Is Not Qualified to Opine on Matters Unique to the Pharmacy Industry .............................................................................................................4

    B.    Hanifin's Opinions Are Unsupported and Unreliable ...............................8

    C.    Hanifin's Testimony is Irrelevant Because it is Divorced from Pharmacy Industry Realities and is Otherwise Unhelpful .......................................11

IV. CONCLUSION.......................................................................................................13

4895-4565-8730.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Ameritech Servs., Inc.*,
231 F.3d 414 (7th Cir. 2000) .......................................................................................4

*Bone Care Int'l LLC v. Pentech Pharms., Inc.*,
2010 WL 3928598 (N.D. Ill. Oct. 1, 2010)................................................................13

*Botnick v. Zimmer, Inc.*,
484 F. Supp. 2d 715 (N.D. Ohio 2007)......................................................................12

*Brown v. Burlington N. Santa Fe Ry. Co.*,
765 F.3d 765 (7th Cir. 2014) ................................................................................2, 10

*Burns v. Sherwin-Williams Co.*,
2022 WL 4329417 (N.D. Ill. Sept. 18, 2022) .............................................................3

*Clark v. Takata Corp.*,
192 F.3d 750 (7th Cir. 1999) .......................................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) .....................................................................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)............................................................................................ *passim*

*Davis v. Duran*,
277 F.R.D. 362 (N.D. Ill. 2011)..................................................................................11

*Deimer v. Cincinnati Sub-Zero Prods., Inc.*,
58 F.3d 341 (7th Cir. 1995) .......................................................................................10

*Dhillon v. Crown Controls Corp.*,
269 F.3d 865 (7th Cir. 2001) .......................................................................................3

*Elkins v. Richardson-Merrell, Inc.*,
8 F.3d 1068 (6th Cir. 1993) .......................................................................................10

*Ervin v. Johnson & Johnson, Inc.*,
492 F.3d 901 (7th Cir. 2007) .......................................................................................4

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1977)....................................................................................................11

- ii -

**Page**

*Good Shepherd Manor Found., Inc. v. City of Momence*,
    323 F.3d 557 (7th Cir. 2003) ................................................................3

*Gopalratnam v. Hewlett-Packard Co.*,
    877 F.3d 771 (7th Cir. 2017) ................................................................2

*Huey v. United Parcel Serv., Inc.*,
    165 F.3d 1084 (7th Cir. 1999) ............................................................11

*Klaczak v. Consol. Med. Transp. Inc.*,
    2005 WL 1564981 (N.D. Ill. May 26, 2005) ........................................3

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999).........................................................................3, 8

*Lapsley v. Xtek, Inc.*,
    689 F.3d 802 (7th Cir. 2012) ................................................................8

*Lewis v. Citgo Petroleum, Corp.*,
    561 F.3d 698 (7th Cir. 2009) ................................................................8

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007)................................................10

*Mihailovich v. Laatsch*,
    359 F.3d 892 (7th Cir. 2004) ................................................................8

*Myers v. Ill. Cent. R.R. Co.*,
    629 F.3d 639 (7th Cir. 2010) ................................................................2

*Owens v. Auxilium Pharms., Inc.*,
    895 F.3d 971 (7th Cir. 2018).........................................................3, 12

*Porter v. Whitehall Labs., Inc.*,
    9 F.3d 607 (7th Cir. 1993) .....................................................10, 12, 13

*Rosen v. Ciba-Geigy Corp.*,
    78 F.3d 316 (7th Cir. 1996) ............................................................8, 11

*Sinatra v. Ikaros Aviation, Inc.*,
    723 So. 2d 358 (Fla. Dist. Ct. App. 1998) ............................................2

*Timm v. Goodyear Dunlop Tires N. Am., Ltd.*,
    932 F.3d 986 (7th Cir. 2019) ................................................................3

4895-4565-8730.v1

**Page**

*Turubchuk v. So. Ill. Asphalt Co., Inc.*,
   958 F.3d 541 (7th Cir. 2020) .................................................................................10

*United States Gypsum Co. v. Lafarge N. Am. Inc.*,
   670 F. Supp. 2d 748 (N.D. Ill. 2009) .................................................................10

*United States v. Mamah*,
   332 F.3d 475 (7th Cir. 2003) .................................................................................11

*United States ex rel. Garbe v. Kmart Corp.*,
   824 F.3d 632 (7th Cir. 2016) ..............................................................................4, 5

*United States v. Krejsa*,
   2022 WL 17980145 (S.D. Ind. Dec. 28, 2022) ...................................................12

*Varlen Corp. v. Liberty Mut. Ins. Co.*,
   924 F.3d 456 (7th Cir. 2019) ..................................................................................4

*Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*,
   521 F.3d 790 (7th Cir. 2008) .................................................................................11

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
   395 F.3d 416 (7th Cir. 2005) ...........................................................................10, 11

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
   Rule 702 .................................................................................. *passim*
   Rule 702(a)..........................................................................................3
   Rule 703 ...............................................................................................10

Plaintiffs Cynthia Russo, Lisa Bullard, Ricardo Gonzales, International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund, International Union of Operating Engineers Local 295-295c Welfare Fund, and Steamfitters Fund Local 439 (together, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion to Exclude the Expert Report and Testimony of John W. Hanifin ("Hanifin") Pursuant to Federal Rule of Evidence 702.

## I.  INTRODUCTION

Plaintiffs move this Court to exclude the Hanifin Report and testimony, and to preclude Defendant Walgreen Co. ("Walgreens") from relying on any testimony regarding such opinions.[1]  As an initial matter, Hanifin has literally no experience or training in pharmacy operations, the pharmacy industry or a pharmacy's requirements attendant to filling prescriptions – *matters central to understanding this case and facts that stand in stark contradiction to Hanifin's opinions*.  He lacks even a single peer-reviewed publication in any academic or scholarly journal, and in his resume claims to have a "degree" that was not obtained from any academic institution but was merely given to him by his own company.

In addition, Hanifin's opinions in this case are unreliable.  Not only does he lack the required pharmacy-specific knowledge and experience in order to offer an opinion in this case – the lack thereof leading him to demonstrably wrong and potentially misleading conclusions – in describing the Prescription Savings Club ("PSC"), he speculates about Walgreens customer decisions-making and motivations without any related surveys or samples or testing of any kind.

---

[1]  Walgreens served various expert reports and accompanying attachments, exhibits and materials they rely on in support of their class-certification opposition on March 17, 2023, including the Expert Report of John W. Hanifin, dated March 17, 2023 ("Hanifin Rpt.").  It is unclear from their briefing to what extent they rely on Hanifin's testimony in opposition to class certification or to what extent they intend to rely on his testimony in the future.  Nonetheless, Hanifin's opinions fail to satisfy *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence, and should be excluded for all purposes for the reasons discussed herein.  Citations are omitted and emphasis is added, unless otherwise noted.  All references to "Ex. __" are to the exhibits attached to the Supplemental Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification, filed concurrently.

Finally, his opinions are not helpful.  He offers opinions – without any empirical bases – as to customer experiences in filling prescriptions (something consumers experience regularly **on their own**), opinions about the PSC enrollment that **contradict actual facts in this case**, and what he ultimately admits are simple math calculations consumers might do (**math that any fact-finder can do** without the assistance of any expert).  In short, the non-prescription-related loyalty programs that Hanifin relies on simply are not analogous to pharmacies and the filling of prescriptions, which are entirely unique and necessary operations apart from some routine retail rewards program.[2]

As a result, and for the reasons set forth below, the Court should exclude Hanifin's opinions.

## II.    LEGAL STANDARDS

Rule 702 and *Daubert* govern the admissibility of expert testimony.  *See Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014).  In assessing the admissibility of expert testimony, the district court must engage in a three-step analysis.  *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017).  "It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *Id.* at 779 (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)).

---

[2]    Significantly, it should also be noted that **any** testimony offered by Hanifin is suspect.  Judgment was entered against Hanifin individually for **fraud** in Florida state court, a judgement upheld on appeal, and he demonstrated in that case a complete disregard for the judicial system and the administration of justice.  *See Sinatra v. Ikaros Aviation, Inc.*, 723 So. 2d 358, 359 (Fla. Dist. Ct. App. 1998) (**willful and repeated violation** of discovery orders sufficient to support liability sanction).  Hanifin testified falsely about that case while under oath.  Compare *id*. ("[w]e affirm the final judgment as entered **against . . . William Hanifin**" – Hanifin's company, Ampac Air Services Corp., did not appeal the judgment), *with* Ex. 70, May 4, 2023 Deposition Transcript of John W. Hanifin ("Hanifin Tr.") *id.* at 22:18-19 ("Q.  Were you named individually?  A.  No.").  Hanifin was also evasive about the case during his deposition, initially referring to the suit as simply about a "dispute over payment for goods and services" (*id.* at 22:5-6), while **never disclosing** he had been accused and found liable for fraud, and then attempting to hide the name of his accuser.  *See id.* at 62:8-25 ("Q.  Do you remember who the plaintiff was in that case?  A.  I don't, exactly. It was another supplier in the business. Q. Do you have a general sense of who it was? A.  Yeah, yes.  Q.  What's your general sense?  A.  General sense, what do you want to know?  Q.  I'm trying to identify the organization.  A.  Oh, oh. I think at the time it was called Ikaros.").

Under this framework, a trial judge, acting as gatekeeper, is responsible for ensuring that proposed expert testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. 589. When determining reliability, the Court's role is to assess the expert's qualifications in the relevant field and the methodology he used in reaching his conclusions. *See Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). While an expert is qualified to testify by virtue of his "knowledge, skill, experience, training or education" (Fed. R. Evid. 702), "[a] district court must exercise its informed discretion to determine whether to admit expert testimony or not." *Klaczak v. Consol. Med. Transp. Inc.*, 2005 WL 1564981, at *2 (N.D. Ill. May 26, 2005) (citing *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003)); *accord Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (district courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable").

"An expert, even if supremely qualified, does not have open season to say whatever he or she wants. The opinions must satisfy the reliability standards of the Federal Rules." *Burns v. Sherwin-Williams Co.*, 2022 WL 4329417, at *18 (N.D. Ill. Sept. 18, 2022); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001) (citing *Daubert*, 509 U.S. at 589) (expert testimony should only be admitted after the court receives a "satisfactory evidence of its reliability"). To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 972 (7th Cir. 2018) (to be relevant, expert testimony must assist the trier of fact in understanding the evidence or in determining a fact in issue). To meet this standard, the expert opinion must "'fit the issue to which the expert is testifying and be tied to the facts of the case.'" *Owens*, 895 F.3d at 973.

The party offering expert testimony, bears the burden of satisfying the Rule 702 standards, and of establishing the admissibility of the evidence by a preponderance of the evidence. *Daubert*,

- 3 -

509 U.S. at 592 n.10; *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019) (proponent bears burden to establish the admissibility of an expert's opinions by a preponderance of the evidence).

## III. ARGUMENT

### A. Hanifin Is Not Qualified to Opine on Matters Unique to the Pharmacy Industry

The Seventh Circuit and *Daubert* framework requires that the Court determine whether the proffered expert is qualified to give the opinion that they are giving. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). A person with a specialized degree or profession is not automatically qualified as an expert. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 422-23 (7th Cir. 2000). Indeed, "Daubert made clear that expert testimony should not be considered in a case unless the expert has **genuine** expertise. . . ." *Id.* at 423.

Hanifin is not a pharmacist, nor does he have any experience or understanding of pharmacy pricing. Despite this lack of knowledge or understanding, Hanifin opines on matters that cannot be properly addressed outside of the context of the pharmacy industry. For example, Hanifin states that Walgreens' PSC is a loyalty program, comparable (in his opinion) to a number of loyalty and frequent shopper programs like Amazon Prime, American Express Rewards, and other non-pharmacy programs. Hanifin Rpt. at 6, 10-12. He then proceeds to opine that such programs present "obstacles" to enrolling, including: (1) time and effort to enroll; (2) provision of personal information; and (3) payment of a membership fee. *Id.* at 10-12. The sole purpose of Hanifin's testimony is to suggest that the presence of these so-called "obstacles" in an attempt to distinguish Walgreens' PSC from the holdings in *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 643 (7th Cir. 2016) regarding Walmart's PSC, to take the PSC prices out of the realm of being offered to the general public, though he openly admitted that Walgreens offers PSC prices to its entire

- 4 -

customer base.[3]  *See* Ex. 70 (Hanifin Tr.) at 87:17-88:2 ("Q: It's your understanding that Walgreens generally makes the PSC offer or membership in the PSC program available to anyone filling prescriptions at Walgreens, right? A: It's my understanding that they make the offer to their entire customer base.").

But the filling of prescriptions by pharmacies is entirely separate and distinct from general retail operations like those Hanifin refers to in his report.[4]  Schafermeyer Rebuttal Rpt., ¶144.  In particular, among other things, "[a] prescription is an instruction by a medical practitioner that a patient receive medically necessary medication, the amount of the medication to be dispensed and the manner in which the medication is to be used." *Id.*  And, for example, "[e]very member of the general public getting a prescription is required to provide personal information to obtain their medication, whether joining the PSC or not.  Information needed for PSC is nothing more than what a pharmacy already captures for patient records or for dispensing prescriptions." *Id.*, ¶147.  In addition, while self-evident to anyone having filled a prescription at a pharmacy, "time and effort [is] required to get a prescription in the first place – to drive to the pharmacy, to navigate the parking lot, or wait to be for service from pharmacy staff or the cashier" all takes time and, as Dr. Schafermeyer (who is a pharmacist and has extensive real world first-hand experience of such efforts from an industry perspective) are "more than the effort required for the one-time enrollment procedure,

---

[3]    The assertion that "general public" excludes customers who join a discount program has been roundly rejected by the Seventh Circuit in *Garbe*, 824 F.3d at 643.  Indeed, *Garbe* found in circumstances virtually identical to those present here that: (i) there was no meaningful selectivity for who joined the program; rather, the opportunity to join was open to anyone; and (ii) discounts were offered in exchange for "nothing more than assent, demographic data the pharmacy already needed to fill a prescription, and a nominal fee [which in *Garbe*, as an example, was an aggregate $25 for fee and first prescription fill]." *Id.*

[4]    Indeed, not one of the entities Hanifin relies or references is a pharmacy at which patients obtain prescribed, medically necessary medications. *See, e.g.*, Ex. 70 (Hanifin Tr.) at 126:5-9 (Ann Taylor is not a pharmacy); *id.* at 126:10-14 (Banana Republic is not a pharmacy); *id.* at 127:16-21 (Famous Footwear is not a pharmacy); *id.* at 128:23-129:4 (American Express Reward is not a pharmacy), among others.  "Schafermeyer Rebuttal Rpt." refers to Rebuttal Report of Kenneth W. Schafermeyer, Ph.D., filed concurrently.

- 5 -

especially since enrollment can be done at the pharmacy counter when getting a prescription." *Id.*, ¶¶145-46.

While Hanifin does hold a bachelor's degree in accounting and has spent years in the loyalty marketing business, he has no meaningful experience within the pharmacy industry, other than as a member of the general public. Beyond a bachelor's degree, Hanifin also claims to have a for Certified Loyalty Marketing Professional ("CLMP") degree: "Q. You have a CLMP degree; is that right? A. I do. Q. That stands for Certified Loyalty Marketing Professional; is that correct? A. That's correct." Ex. 70 (Hanifin Tr.) at 47:17-48:2.

In truth, though, CLMP is merely a non-academic title his own company gave him. *Id.* at 48:3-6 (Loyalty Academy gave Hanifin CLMP in 2017); *id.* at 57:2-9 (describing Hanifin's ownership of The Wise Marketer business). Despite its arguably misleading use of the word "Academy," The Loyalty Academy is not an accredited college or university, or academic institution but, rather, simply a marketing product of a company Hanifin owns called "The Wise Marketer." *Id.* at 48:7-12 ("Q. Is The Loyalty Academy an accredited educational institution? A. It is not accredited."). Ex. 88 (Hanifin Dep. Ex. 0553) ("The Loyalty Academy [is] a product of the Wise Marketer Group. . . .").

Hanifin also admits that he has never published even a single article regarding any research on any subject in any academic or scholarly journal, let alone any research or articles on the subject of U&C prices in the pharmacy industry. Ex. 70 (Hanifin Tr.) at 66:24-67:6 ("Q. My question was, were these published in scholarly journals? A. You mean an academic journal, something like that? Q. Yes. A. Research, no."); *id.* at 66:3-9 ("Q. Which of these publications discuss the calculation of the U&C prices in the pharmacy industry? A. I don't think any of these would have discussed that matter.").

In fact, virtually all that Hanifin has "published" consists of simple and short blog posts on predominantly **his own** websites. *See id*. at 66:10-23 ("Q. Were these published in scholarly journals? A. These are published on websites. Blogs, websites."). Indeed:

> Q. You indicated these were things you posted on your company's website over the years, correct?
>
> A. These have been posted on "Loyalty Truth," which was the blog that I had with Hanifin Loyalty, and on "The Wise Marketer." And I believe there are a couple that were published in Forbes.
>
> Q. So just to be clear, they're not peer-reviewed scholarly articles concerning –
>
> A. No, they're not.

*Id*. at 67:7-19.[5]

As discussed herein, Hanifin's lack of expertise in pharmacy operations and the pharmacy industry leads him to offer entirely unsupported and unreliable opinions about the PSC program. Indeed, Hanifin offers his opinions about "Loyalty Programs" such as Netflix, Costco and Sam's Club and equates them to the PSC without any education, experience, or expertise in the areas of medicine, prescription medication, or, most importantly, the pharmacy industry. *Id.* at 51:2-6 (admits to **no** coursework specific to pharmacy operations or the pharmacy industry); *id.* at 51:7-11 (admits he is **not** an expert in pharmacy operations or pharmacy industry); *id.* at 63:24 -64:12 (admits to **never** working for a pharmacy, a PBM or a TPP).

---

[5] In one such blog post from 2012 – years **after** Walgreens rolled out the PSC program – Hanifin writes about Walgreens' "enter[ing] the loyalty game" with its "Balance Rewards" program, which is a routine retail-oriented rewards program in which a consumer earns points from current purchases which can be accumulated and used toward future purchases. *See* Bill Hanifin "BrainTrust Query: Walgreens Enters the Loyalty Game," RetailWire (Aug. 28, 2012), https://retailwire.com/discussion/braintrust-query-walgreens-enters-the-loyalty-game/ (last accessed June 19, 2023). Hanifin's observation in the blog post that Walgreens was only then "enter[ing] the loyalty game" is evidence that, in and of itself, the PSC is **not** a rewards program. Indeed, as discussed herein, the PSC prescription drug cash discount program at issue here – which involves obtaining an immediate cash discount for certain drugs subject to a panoply of prescription-filling requirements – clearly is **not** a simple retail-oriented rewards program, despite Hanifin's attempts to equate it with such programs in his report.

Accordingly, Hanifin's opinions and any subsequent testimony must be barred because they do not meet the qualification requirements of *Daubert* and its progeny.

### B. Hanifin's Opinions Are Unsupported and Unreliable

Rule 702 permits a witness to offer opinion testimony if the witness is qualified based on "knowledge, skill, experience, training, or education" in the pertinent field. *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004). As demonstrated above, Hanifin fails in this regard. Nonetheless, even if he did qualify as an expert (Hanifin does not), the Court still must ensure that the evidence "is sufficiently reliable to qualify for admission." *Id.*; *Daubert*, 509 U.S. at 592-93; *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999) (Even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognizable scientific method.").[6]

Under Rule 702, the three requirements for reliability are: "(b) the testimony is based upon sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the [witness] has reliably applied the principles and methods to the facts of the case." *Mihailovich*, 359 F.3d at 918 (quoting Fed. R. Evid. 702). To make this evaluation, the district court must "scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152). In short, a court must determine whether an expert opinion is "based on a reliable methodology," and must rule out "'subjective belief or unsupported speculation.'" *Clark*, 192 F.3d at 756-57; *Daubert*, 509 U.S. at

---

[6]    As the Seventh Circuit has expressly recognized, in the *Daubert* inquiry: "'[Q]ualifications alone do not suffice.'" *Lewis v. Citgo Petroleum, Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (quoting *Clark*, 192 F.3d at 759 n.5). While Hanifin's testimony is not scientific, *per se*, by analogy: "[A] district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

595 ("The focus, of course, must be solely on principles and methodology, not on the conclusion that they generate.").

Hanifin offers no empirical basis or methodology for his opinions. Instead, he makes numerous bare subjective assertions about consumer behavior and motivations surrounding Walgreens PSC enrollment without providing any specific analytical basis for these opinions. In particular, while conceding that he has no relevant experience or training in pharmacy operations, the pharmacy industry or the requirements of filling prescriptions, Hanifin concludes that consumers are unwilling to provide particular personal information, take the time to enroll in the PSC program, or pay the enrollment fee. Hanifin Rpt. at 10-12.[7] But the basis of this opinion is not any empirical research or study, of Walgreens customers. Hanifin did not conduct any survey or otherwise inquire into any actual pharmacy customer behaviors, or analyze the nature and requirements of filling prescriptions at Walgreens or within the pharmacy industry. He simply says this is so in loyalty programs in general and then makes conspicuously exaggerated assumptions about Walgreens customers in general, claiming: (i) "[C]ustomers generally resist providing personal information" (Hanifin Rpt. at 10), though he fails to acknowledge or even reference, as Dr. Schafermeyer points out, that the provision of personal information is required for filling prescriptions in all instances (Schafermeyer Rebuttal Rpt., ¶147); (ii) that enrolling is time consuming (Hanifin Rpt. at 11), though, again, as Dr. Schafermeyer describes, the act of filling a prescription takes time in and of itself and the very limited tasks required to enroll are nominal at best (Schafermeyer Rebuttal Rpt., ¶146); and that payment of an enrollment fee is a "significant" obstacle (Hanifin Rpt. at 12), though

---

[7]    Indeed, as discussed more fully below, Hanifin claims that Walgreens' customers would be reluctant to provide personal information while ignoring the obvious fact that such customers *already* would have provided such information when filling prescriptions.

under cross-examination he admitted that the savings were immediate, guaranteed and required pretty basic addition and subtraction. Ex. 70 (Hanifin. Tr.) at 115:6-22.[8]

As an initial matter, Hanifin's "opinions" concerning the time it takes to enroll and to pay an enrollment fee, and his opinions regarding consumer attitudes concerning personal information that, in truth, a pharmacist already has or is required to obtain in order to fill a prescription, are entirely speculative and not admissible. *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 643 (S.D.N.Y. 2007) ("[t]he court does not fulfill its gatekeeper function if it simply accepts the ipse dixit of an expert"). Indeed, the Court must exclude testimony based on "'subjective belief or unsupported speculation.'" *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995) (quoting *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418-19 (7th Cir. 2005) ("[R]elying on intuition . . . won't do. . . . An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable."); *United States Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 753 (N.D. Ill. 2009) ("The requirement that expert testimony be based on rigorous and reliable methods applies even when the testimony is not of a scientific nature.").

"'An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" *Turubchuk v. So. Ill. Asphalt Co., Inc.*, 958 F.3d 541, 554-55 (7th Cir. 2020). "Rule 703 requires the expert to rely on "'facts or data,'" as opposed to subjective impressions." *Brown*, 765 F.3d at 772. "A witness who invokes "'my expertise'" rather than analytic strategies widely used by

---

[8]    At best, he offers general notions that could be relevant to loyalty programs outside of pharmacy operations but are entirely divorced from the unique realities of filling prescriptions either from the consumer perspective or pharmacy prescription-filling requirements. Moreover, in much the same way Hanifin exaggerates his credentials and academic degrees, Hanifin exaggerates the significance of the various "obstacles" he opines on. But "'close judicial analysis [[aka "a hard look")] of . . . technical and specialized matter' is necessary not only to control juror misunderstanding, but also to curtail 'the potential for exaggeration and fraud on the court.'" *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1073 (6th Cir. 1993).

specialists is not an expert as Rule 702 defines that term." *Zenith*, 395 F.3d at 419. "[E]xpert opinions that merely set forth conclusions, but without any basis or reasonable analysis, are of no assistance. . . ." *Davis v. Duran*, 277 F.R.D. 362, 372 (N.D. Ill. 2011).

Hanifin's opinions are plainly inconsistent with the realities and necessary requirements of pharmacy prescription filling, as discussed above and at length by Dr. Schafermeyer in his rebuttal reports and admitted by Hanifin at deposition.[9] *See* Schafermeyer Rebuttal Rpt., ¶¶144-55; Ex. 70 (Hanifin Tr.) at 84:24-87:16 ("Q. In your personal experience, not only is a patient compelled by medical need to obtain a prescription, but they're required to give the pharmacy personal information as well, in order to obtain the medication, correct? A. Correct.").

In sum, Hanifin's testimony is unsupported and unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1977) (expert testimony excluded where there was "simply too great an analytical gap" between actual facts and the expert's opinion). Hanifin's opinions are thus neither reliable nor helpful, and the court should therefore exclude them. *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791-92 (7th Cir. 2008) ("'An expert who supplies nothing but the bottom line supplies nothing of value to the judicial process.'"); *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003); *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1086-87 (7th Cir. 1999).

### C.     Hanifin's Testimony is Irrelevant Because it is Divorced from Pharmacy Industry Realities and is Otherwise Unhelpful

In addition to requiring reliability, the framework for testing admissibility requires that the Court also determine whether the expert's opinions will aid the trier of fact. This factor is often

---

[9]     Because "a scientist's normal workplace is the lab or the field, not the courtroom or lawyer's office" (*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995)), "[o]ne very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation, or whether they have developed their opinions expressly for purposes of testifying." *Id.* "[T]he courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it." *Rosen*, 78 F.3d at 319 (finding that physician's testimony "while expressing what may be an insightful, even an inspired, hunch concerning the cause of the heart attack . . . lacks scientific rigor.").

viewed as a relevance inquiry. *Porter*, 9 F.3d at 613. To be relevant for purposes of Rule 702, the proposed expert testimony must assist the trier of fact in understanding the evidence or in determining a fact in issue. *Auxilium*, 895 F.3d at 972. To meet this standard, the expert opinion must "'fit the issue to which the expert is testifying and be tied to the facts of the case.'" *Id.* at 973; *see Daubert*, 509 U.S. at 591-92 ("'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . . Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.").

Moreover, "the Seventh Circuit has explained that 'expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person, assists the jury in understanding facts at issue, or puts the facts in context.'" *United States v. Krejsa*, 2022 WL 17980145, at *4 (S.D. Ind. Dec. 28, 2022). "'Where expert testimony addresses an issue of which the jury is already generally . . . aware, such testimony does not assist the jury.'" *Id.* at *5. Indeed, proffered expert testimony should be excluded when it "is not driven, as it must be, by the context of the issues in this case." *Botnick v. Zimmer, Inc.*, 484 F. Supp. 2d 715, 721 (N.D. Ohio 2007).

As discussed above, a fact finder does not need an expert to do simple math for them, or explain to them the implications of a few minutes of their time. Moreover, simply blogging about various "loyalty programs" does not make one an expert on Walgreens' PSC. Hanifin's opinions about the provision of personal information being a so-called "obstacle" is potentially misleading in that such provision is already a necessary component of filling a prescription in the first place. In addition, Hanifin's testimony doesn't fit where his conclusions are based on an assumption that the PSC is analogous to other non-prescription-related loyalty programs like American Express Rewards or Amazon Prime when, in fact, pharmacies and the filling prescriptions are entirely unique and necessary operations.

- 12 -

Because Hanifin's opinions are not relevant to any fact at issue in this case, they should be excluded. *Porter*, 9 F.3d at 613 ("""Expert testimony which does not relate to an issue in the case is not relevant, and, ergo, non-helpful"""); *Bone Care Int'l LLC v. Pentech Pharms., Inc.*, 2010 WL 3928598, at *11 (N.D. Ill. Oct. 1, 2010).

## IV. CONCLUSION

For the reasons stated herein and in Plaintiffs' Reply in Support of Class Certification and supporting papers, Hanifin's testimony should be excluded.

DATED: June 20, 2023                    Respectfully submitted,

                                        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**


                                        /s/ Joseph P. Guglielmo
                                        Joseph P. Guglielmo (IL Bar #2759819)
                                        Carey Alexander (IL Bar #5188461)
                                        The Helmsley Building
                                        230 Park Avenue, 17th Floor
                                        New York, NY 10169
                                        Telephone: (212) 223-4478
                                        Facsimile:  (212) 223-6334
                                        jguglielmo@scott-scott.com
                                        calexander@scott-scott.com

                                        Erin Green Comite (IL Bar #420630)
                                        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                        156 S. Main Street
                                        P.O. Box 192
                                        Colchester, CT 06415
                                        Telephone: (860) 531-2632
                                        Facsimile:  (860) 537-4432
                                        ecomite@scott-scott.com

                                        David W. Mitchell (IL Bar #199706)
                                        Arthur L. Shingler III (IL Bar # 181719)
                                        **ROBBINS GELLER RUDMAN & DOWD LLP**
                                        655 West Broadway, Suite 1900
                                        San Diego, Ca  92101
                                        Telephone: (619) 231-1058
                                        Facsimile:  (619) 231-7423
                                        davidm@rgrdlaw.com
                                        ashingler@rgrdlaw.com

- 13 -

4895-4565-8730.v1

Mark J. Dearman (IL Bar #0982407)
Stuart A. Davidson (IL Bar #084824)
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: (561) 750-3000
Facsimile:  (561) 750-3364
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com

*Interim Co-Lead Counsel*

Katrina Carroll (IL Bar #6291405)
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
katrina@lcllp.com

*Local Counsel*

4895-4565-8730.v1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document was filed electronically through the Court's Electronic Case Filing System, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo