**UNITED STATES COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Civil No. 1:17-cv-02246 <br><br> Judge Edmond E. Chang <br><br> Magistrate Judge Sheila Finnegan |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WALGREEN CO.'S MOTION TO EXCLUDE OPINIONS 3, 6, AND 7 OF DR. SCHAFERMEYER'S EXPERT REPORT AND ANY TESTIMONY REGARDING THE SAME PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

Plaintiffs Cynthia Russo, Lisa Bullard, Ricardo Gonzales (the "Individual Plaintiffs"), International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund, International Union of Operating Engineers Local 295-295c Welfare Fund, and Steamfitters Fund Local 439 (the "Fund Plaintiffs," and together with the Individual Plaintiffs, "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to Defendant Walgreen Co.'s ("Walgreens") Motion to Exclude Opinions 3, 6, and 7 of Dr. Schafermeyer's Expert Report and Any Testimony Regarding the Same Pursuant to Federal Rule of Evidence 702 ("Motion" or "Mot.") (ECF 580).

## I.  INTRODUCTION

In its Motion, Walgreens seeks to exclude three of the seven opinions offered by Plaintiffs' expert, Kenneth W. Schafermeyer, Ph.D. ("Dr. Schafermeyer"), including: (1) that the industry definition of usual and customary ("U&C") prices is common and has been established for decades as meaning the lowest price offered, including discounts (Opinion 3); (2) that Walgreens should have reported or otherwise included its Prescription Savings Club ("PSC") prices when determining the U&C prices to report (Opinion 6); and (3) that Walgreens failed to meet the reasonable expectations of Third-Party Payers ("TPPs") and their insured beneficiaries by failing to report or otherwise include its PSC prices when determining the U&C prices to report (Opinion 7). Mot. at 1.

Although Walgreens does not dispute Dr. Schafermeyer's qualifications, it nonetheless seeks to exclude these three opinions under Rule 702 of the Federal Rules of Evidence, arguing that they are unreliable, unsupported, speculative, constitute improper legal opinions, or were formed without considering certain sources of information. *Id.* Yet none of these challenges merit excluding Dr. Schafermeyer's opinions. Ultimately, Walgreens' critiques of Dr. Schafermeyer's opinions are

based on hollow mischaracterizations of his Report[1] or simply go to the weight of the proffered opinions, not their reliability.

The Court should deny Walgreens' Motion.

## II. LEGAL STANDARD

In its gatekeeping role, a district court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Because "there are many different kinds of experts, and many different kinds of expertise[,] . . . the gatekeeping inquiry must be "'tied to the facts'" of a particular 'case.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 591).[2] The Seventh Circuit has identified a three-step analysis district courts must take in order to admit expert testimony: "It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). However, "Rule 702's requirement that the district judge determine that the expert used reliable methods does not ordinarily extend to the reliability of the conclusions those methods produce – that is, whether the conclusions are unimpeachable." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765-66 (7th Cir. 2013). "Absent strong factors favoring exclusion, '[d]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *Davis v. Duran*, 277 F.R.D. 362, 366 (N.D. Ill. 2011) (quoting *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)).

---

[1] "Report" and "Schafermeyer Rpt." refer to the Report of Kenneth W. Schafermeyer, Ph.D. (ECF 553-45).

[2] Citations are omitted and emphasis is added, unless otherwise noted.

**III.     ARGUMENT**

     **A.     Dr. Schafermeyer's Opinion that Walgreens Failed to Meet the Reasonable Expectations of TPPs Is Reliable and Does Not Provide Any Legal Opinion as to the Contractual Rights of PBMs or Pharmacies**

In Opinion 7, Dr. Schafermeyer opines: "Walgreens has failed to meet the reasonable expectations of TPPs and their insured beneficiaries by failing to report or otherwise include its PSC prices when determining the U&C prices to report." Schafermeyer Rpt., ¶24. In response, Walgreens argues that the Court should exclude Opinion 7 because Dr. Schafermeyer has not provided a basis for his opinion other than his own speculation, and that Opinion 7 constitutes an improper legal conclusion. Mot. at 6-11. Walgreens is wrong on both counts.

          **1.     Dr. Schafermeyer's Opinion Is Reliable and Not Based on Speculation**

Walgreens incorrectly claims that Dr. Schafermeyer relies solely on the allegations in the Complaint[3] to support his opinion that Walgreens failed to meet the reasonable expectations of TPPs and their insured beneficiaries by failing to report or otherwise include its PSC prices when determining the U&C prices to report. Mot. at 6-7. To the contrary, Dr. Schafermeyer draws upon his long-term professional experience, education, and extensive knowledge of the industry to inform his opinion. Specifically, Dr. Schafermeyer's experience, and the basis for his opinion, includes: (1) over 45 years spent in the managed care industry consulting with pharmacy benefit managers ("PBMs"), Medicaid programs, and private employer groups; (2) operation of managed prescription network programs contracting with both employer groups and pharmacy providers; and (3) service as the Director of Graduate Studies in Managed Care Pharmacy for the University of Health Sciences and Pharmacy. *See* Schafermeyer Rpt., ¶¶1-10 & Ex. A; *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it

---

[3] "Complaint" and "FAC" refer to the Fourth Amended Consolidated Class Action Complaint and Jury Demand (ECF 477).

is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, *experience*, training, or education.'") (emphasis in original) (quoting Fed. R. Evid. 702).

This wealth of experience in the industry grants Dr. Schafermeyer unique insight into the relationships between consumers, TPPs, pharmacies, and PBMs. As a result, his extensive experience provides a sound foundation for his testimony regarding the reasonable expectations of the parties when it comes to a beneficiary's purchase of medication from a pharmacy. Tellingly, Walgreens does not challenge Dr. Schafermeyer's qualifications under Rule 702.

Walgreens also criticizes Dr. Schafermeyer for not speaking with the Individual Plaintiffs as to what they expected to be charged under their insurance plans, and for not discussing with the Fund Plaintiffs whether they were aware of the terms in the contracts between the PBMs and pharmacies or reviewed any of the PBMs' Provider Manuals. Mot. at 7. Yet Walgreens fails to explain why speaking to the Individual Plaintiffs or Fund Plaintiffs in this case is necessary for Dr. Schafermeyer to render his opinion. The Complaint and Plaintiffs' Motion for Class Certification clearly allege that Fund Plaintiffs expected Walgreens to report or otherwise include its PSC prices when determining the U&C.[4] Walgreens presented no evidence to the contrary. Thus, Walgreens' challenge rings hollow. Nor does Walgreens credibly argue that Dr. Schafermeyer's immense knowledge of and experience in the industry is an insufficient basis for his opinion. *See Woods v. Amazon.com, LLC*, 2019 WL 2323874, at *22 (N.D. Ill. May 30, 2019) ("An expert's opinion is not excluded simply because a party opposing it disagrees with the expert's conclusions."). Even if such criticisms were relevant, given the extent of Dr. Schafermeyer's industry-related experience, they go to the weight of Dr. Schafermeyer's opinion, not reliability. *See Jordan v. Dominick's Finer Foods*,

---

[4] *See, e.g.*, FAC, ¶¶ 5, 12, 40, 50-51, 56-90, 107, 116-120, 140, 152, 162, 174, 184, 194, 205, 215-216, 223, 338, 350, 361, 371, 404; Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (ECF 552) at 4-14, 25-28.

115 F. Supp. 3d 950, 963 (N.D. Ill. 2015) ("[O]bjections as to whether an expert considered certain factors that the opposing side deems irrelevant generally go to the weight of the expert's opinion, not its admissibility.").

### 2. Dr. Schafermeyer Does Not Offer Any Legal Opinion Regarding the Contractual Rights of PBMs or Pharmacies

Walgreens contends that Opinion 7 constitutes an improper legal conclusion that Walgreens and the relevant PBMs cannot enter into contracts that define U&C differently than the standard industry definition. Mot. at 7-11. To be clear, Dr. Schafermeyer says ***nothing*** in his Report that could be construed as a legal opinion regarding Walgreens' ability to enter into contracts at all. Nor does Walgreens provide a single cite to Dr. Schafermeyer's Report that discusses the validity or enforceability of contracts. Instead, Walgreens quotes a portion of Dr. Schafermeyer's deposition testimony – in which he merely states that a certain contract between Walgreens and Express Scripts does not meet the reasonable expectations of the payer that it will receive the true U&C – to support its unfounded contention. *See* Mot. at 10; Supplemental Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification, filed concurrently ("Supplemental Guglielmo Decl."), Ex. 87 (Jan. 13, 2023 Deposition Transcript of Dr. Kenneth Schafermeyer) ("Schafermeyer Tr.") at 150:7-151:2. Essentially, Walgreens asks the Court to exclude a non-existent legal conclusion of its own making.

Additionally, Walgreens falsely claims that Dr. Schafermeyer opines that PBM Provider Manual's definitions of U&C supersede the definitions in Walgreens' contracts with the PBMs. Mot. at 9. Again, Dr. Schafermeyer does not offer any opinion as to whether the PBM Provider Manual U&C definition prevails as between Walgreens and any PBM. As Walgreens recognizes in its Motion, there is a "'difference between stating a legal conclusion and providing concrete information against which to measure abstract legal concepts.' The former is prohibited; the latter is

not." *Dolmage v. Combined Ins. Co. of Am.*, 2017 WL 1754772, at *4 (N.D. Ill. May 3, 2017). Here, Dr. Schafermeyer has merely reported the definitions contained in the PBM Provider Manuals to support his "long-held understanding that U&C is the lowest price offered to cash customers (*i.e.*, those paying without insurance), including various discounts offered." Schafermeyer Rpt., ¶¶87-90 & Table 2.

"Sometimes expert reports rest on nothing more than the *ipse dixit* of the expert. But here, the shoe is on the other foot. [Walgreens'] *Daubert* motion rests on the *ipse dixit* of the party making the *Daubert* motion." *Wilda v. JLG Indus., Inc.*, 2021 WL 392705, at *5 (N.D. Ill. Feb. 3, 2021). The Court should thus reject Walgreens' attempt to mischaracterize Opinion 7 as an improper legal conclusion.

### B. Dr. Schafermeyer's Opinions as to the Industry Definition of U&C and Walgreens' Practices Are Reliable

In Opinion 3, Dr. Schafermeyer opines that "[t]he industry definition of U&C is common and has been established for decades." Schafermeyer Rpt., ¶20. In Opinion 6, Dr. Schafermeyer opines: "Walgreens should have reported or otherwise included its PSC prices when determining the U&C prices to report." *Id.*, ¶23. In response, Walgreens contends that Dr. Schafermeyer has not provided any relevant support for Opinions 3 and 6 other than his own say-so and has ignored all record evidence and industry guidance to the contrary. Mot. at 11-15. Walgreens' arguments are unavailing.[5]

---

[5] In a footnote, Walgreens takes issue with Dr. Schafermeyer's references to statements from the National Council for Prescription Drug Programs ("NCPDP"), Medicare Part D, and State Medicaid programs regarding U&C definitions. *See* Mot. at 11 n.5. Walgreens argues that it is possible to have a definition of U&C in a contract that differs from the NCPDP format, that nothing in the Medicare Part D Program would override a contractual definition of U&C agreed upon by a PBM and retail pharmacy; and that State Medicaid U&C definitions vary and are irrelevant because this case does not involve Medicaid claims. *Id.* Once again, Walgreens completely misses the mark. The NCPDP, Medicare Part D, and State Medicaid programs' statements regarding U&C all support Dr. Schafermeyer's opinion, which is that there is a standard industry definition of U&C.

      **1.    Dr. Schafermeyer's Opinion that U&C Has Been Commonly Defined for Decades as the Lowest Price Offered to Cash Customers Is Reliable and Well Founded**

Walgreens falsely claims that Dr. Schafermeyer fails to identify any authorities that agree that the industry definition of U&C has been commonly defined for decades to mean the lowest price offered to cash customers. *Id.* at 12-14. Walgreens also incorrectly contends that Dr. Schafermeyer did not conduct any research to verify that pharmacies, PBMs, and TPPs knew that U&C meant the lowest price offered, including discounts, since the 1970s. *Id.* at 14-15. Given the wide swath of evidence included in Dr. Schafermeyer's Report from various participants across the industry concerning the existence of an industry definition of U&C, Walgreens' arguments border on the absurd. *See* Schafermeyer Rpt., ¶¶50-101. Indeed, unlike Walgreens' purported expert, Mr. Jacobs, whose opinions regarding the industry exclude participants such as consumers, TPPs, and governmental entities such as Medicaid and Medicare,[6] Dr. Schafermeyer provides an extensive survey of sources that reflect that the common industry understanding of U&C price refers to the lowest price offered to customers not using a prescription insurance benefit (*i.e.*, cash customers). These sources include industry documents from: (1) the NCPDP (Schafermeyer Rpt., ¶¶54-55); (2) Medicare Part D (*id.*, ¶¶56-58); (3) State Medicaid programs (*id.*, ¶¶59-75); (4) Federal Employee Program Insurance Benefits (*id.*, ¶¶76-80); (5) Pharmacy Benefit Management Agreements between Fund Plaintiffs and PBMs (*id.*, ¶¶84-86 & Table 1); (6) PBM Provider Manuals (*id.*, ¶¶87-94 & Table 2); and (7) Walgreens' Participating Pharmacy Agreements (*id.*, ¶¶95-98 & Table 3).

Additionally, Dr. Schafermeyer's opinion is consistent with the decision in *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016), which presents a clear and accurate explanation of how U&C pricing practices should be applied in the pharmaceutical industry, as well

---

[6]   *See* Expert Report of Michael S. Jacobs (ECF 580-1).

as the policies supporting and necessitating that application. *See* Schafermeyer Rpt., ¶81. Specifically, in *Garbe*, the Seventh Circuit found that "[b]ecause Kmart offered the terms of its 'discount programs' to the general public and made them the lowest prices for which its drugs were widely and consistently available, the Kmart 'discount' prices at issue represented the 'usual and customary' charges for the drugs." 824 F.3d at 645. This accords with Dr. Schafermeyer's opinion that the industry definition of U&C has long been understood to be the lowest price offered to cash customers, including discounts.

Accordingly, the Court should reject Walgreens' claim that Dr. Schafermeyer failed to identify any authorities that agree with his understanding of the common industry definition of U&C.

### 2. Walgreens' Assertions that Dr. Schafermeyer Does Not Consider Certain Materials Goes to the Weight of His Opinions, Not Reliability

Walgreens accuses Dr. Schafermeyer of ignoring the language defining U&C found in certain contracts between Walgreens and some PBMs and PBM testimony, which it claims contradicts Dr. Schafermeyer's industry definition. Mot. at 12-14. Yet, as discussed above, Dr. Schafermeyer *did* in fact consider the language contained in these contracts in forming his opinion as to the industry definition of U&C. *See* Schafermeyer Rpt., ¶¶95-101 & Table 3. What Walgreens refuses to acknowledge, however, is the fact that a limited number of confidential contracts that Walgreens negotiated with certain PBMs appear to define U&C in a manner inconsistent with the industry definition does not alter the fact that the long-standing common industry definition of U&C is the lowest price offered to cash customers, excluding discounts. Walgreens is thus wrong that these limited and confidential contracts contradict Dr. Schafermeyer's testimony regarding the broader industry understanding.[7]

---

[7] The same holds true for the supposedly contradictory language Walgreens quotes from certain contracts between some of the Fund Plaintiffs and PBMs. *See* Mot. at 13.

In any event, even if Walgreens was correct that Dr. Schafermeyer did not account for this supposedly contradictory information, that fact would go to the weight of his opinion rather than its admissibility. *See Cates v. Whirlpool Corp.*, 2017 WL 1862640, at *15 (N.D. Ill. May 9, 2017) ("[F]ailing to account for supposedly contradictory information often is a question going to the weight of the evidence rather than its admissibility, which a lawyer can address on cross-examination."); *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment."). Either way, Walgreens' bid to exclude Dr. Schafermeyer's opinion as to the industry definition of U&C as unreliable fails.

Lastly, in an attempt to undermine his opinion that the industry definition of U&C is the lowest price offered, including discounts, Walgreens' misleading quotes from a book chapter authored by Dr. Schafermeyer, where he stated that notwithstanding variations in any definition, U&C translates to the cash price normally charged to uninsured customers. *See* Mot. at 15. However, Dr. Schafermeyer explained in his deposition that at the time he authored this book chapter – *i.e.*, in 2007 – this statement was accurate and uncontroversial because pharmacy "membership club" schemes like Walgreens had not yet been exposed, and pharmacies generally had a single cash price they reported and charged consumers. Supp. Guglielmo Decl., Ex. 87 (Schafermeyer Tr.) at 185:19-189:10. Accordingly, Walgreens' critique falls flat.

4859-2519-2299.v1

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Walgreens' Motion.

DATED: June 20, 2023

Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo (IL Bar #2759819)
Carey Alexander (IL Bar #5188461)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-4478
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (IL Bar #420630)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 531-2632
Facsimile: (860) 537-4432
ecomite@scott-scott.com

David W. Mitchell (IL Bar #199706)
Arthur L. Shingler III (IL Bar # 181719)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, Ca 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
davidm@rgrdlaw.com
ashingler@rgrdlaw.com

Mark J. Dearman (IL Bar #0982407)
Stuart A. Davidson (IL Bar #084824)
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com

*Interim Co-Lead Counsel*

- 11 -

Katrina Carroll (IL Bar #6291405)
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
katrina@lcllp.com

*Local Counsel*

4859-2519-2299.v1

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically through the Court's Electronic Case Filing System, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

                                                             /s/ Joseph P. Guglielmo
                                                           Joseph P. Guglielmo