**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, | Civil No. 1:17-cv-02246 Judge Edmond E. Chang Magistrate Judge Sheila Finnegan |
| Plaintiffs, | |
| v. | |
| WALGREEN CO., | |
| Defendant. | |

**<u>REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 1

I.     WALGREENS' CONTRACTS-BASED CHALLENGES TO COMMONALITY, PREDOMINANCE, AND SUPERIORITY ARE UNAVAILING .................................. 1

    A.     Contracts Are Not Relevant to Plaintiffs' State Consumer Protection and Unjust Enrichment Claims ...................................................................... 1

    B.     Plaintiffs Will Establish Liability by Reference to Common, Classwide Evidence ............................................................................................ 3

        1.     Common Questions Predominate Over the Class's Multi-State Consumer Protection Claims ................................................ 6

        2.     Common Questions Predominate Over the Unjust Enrichment Subclass's Claims ..................................................... 9

    C.     Walgreens' Data-Related Arguments Are Off-Base and Can Be Addressed by Common, Classwide Evidence ...................................................... 11

        1.     Data Show Whether the Amount Class Members Paid Was Determined by Reference to the U&C Price ............................... 12

        2.     Plan Design Features Can Be Accounted for and Do Not Defeat Predominance .................................................................. 13

        3.     Whether the Collateral Source Rule Bars Evidence of Back-End Reconciliation Payments Is a Common Question .................... 14

        4.     The Relevant PBMs Can Re-Adjudicate Class Members' Pharmacy Claims, If Necessary ............................................. 15

        5.     Walgreens' Inconsistently Applied and Fraudulent Membership Fee Can, but Should Not Be, Considered When Determining PSC Prices ..... 16

II.     THE CLASS IS ASCERTAINABLE AND THE CLASS DEFINITION WITH MODIFIED EXCLUSIONS IS CLEAR AND BASED ON OBJECTIVE CRITERIA .. 16

III.     THE RULE 23(A) REQUIREMENTS ARE SATISFIED ................................. 18

    A.     Walgreens Does Not Contest Numerosity ............................................ 18

    B.     Walgreens' Challenges to Plaintiffs' Typicality and Adequacy Lack Merit ........ 18

        1.     Different Relevant PBMs Do Not Render Plaintiffs Atypical ................. 19

        2.     TPPs and Consumers Are Not Atypical of One Another ........................ 20

        3.     The Fund Plaintiffs' Claims Are Not Limited to Those Under the Laws of Their Home Jurisdictions, and Thus, This Typicality Challenge Fails ........................................................................... 21

        4.     Walgreens' Defenses Based on Plaintiffs' Continued Patronage Do Not Defeat Plaintiffs' Typicality and Adequacy ............................... 22

        5.     IBEW Is Not Subject to Unique Defenses ................................. 24

i

6.      Walgreens Fails to Rebut that Cynthia Russo Is Typical of the
        Florida Class ........................................................................................ 25

7.      Walgreens Fails to Rebut that Ricardo Gonzales Is Typical of the
        Wisconsin Class .................................................................................... 25

8.      No Intraclass Conflicts Exist, and Thus, Adequacy Is Satisfied .............. 26

IV.     THE RULE 23(B)(2) REQUIREMENTS ARE SATISFIED ......................................... 28

A.      Plaintiffs Have Article III Standing to Seek Equitable Relief ............................. 28

B.      The Court Can Certify a Rule 23(b)(2) Class and *Also* a Rule 23(b)(3) Class ..... 30

V.      EACH OF WALGREENS' "STANDING" ARGUMENTS FAILS ................................. 31

A.      The Fund Plaintiffs Are Injured Where Their Beneficiaries Reside, and
        Thus, Walgreens' Statutory Standing Arguments Are Meritless ........................ 31

B.      Walgreens' Merits-Based Attack on IBEW's ODTPA Claim Is an
        Inappropriate Challenge at Class Certification ...................................... 33

CONCLUSION ............................................................................................... 34

# TABLE OF AUTHORITIES

## Cases

*A&E Adventures LLC v. Intercard, Inc.*,
    529 F. Supp. 3d 1333 (S.D. Fla. 2021) ................................................................13

*Abbott v. Lockheed Martin Corp.*,
    725 F.3d 803 (7th Cir. 2013) ..........................................................................27

*Ace Tree Surgery, Inc. v. Terex Corp.*,
    No. 1:16-CV-0775-SCJ, 2018 WL 11350262 (N.D. Ga. Dec. 10, 2018) ..............................32

*Barnes v. Air Line Pilots Ass'n, Int'l*,
    310 F.R.D. 551 (N.D. Ill. 2015) ......................................................................11

*BCBSM, Inc. v. Walgreen Co.*,
    No. 20 C 1853, 2023 WL 3601826 (N.D. Ill. May 23, 2023) ....................................3

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ....................................................................18, 20

*Beck-Ellman v. Kaz USA, Inc.*,
    283 F.R.D. 558 (S.D. Cal. 2012) .....................................................................11

*Bell v. Bimbo Foods Bakeries Distrib., Inc.*,
    No. 11 C 03343, 2013 WL 6253450 (N.D. Ill. Dec. 3, 2013) ....................................2

*Benson v. Newell Brands, Inc.*,
    No. 19 C 6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ...............................7, 8, 9

*Bonte v. U.S. Bank, N.A.*,
    624 F.3d 461 (7th Cir. 2010) ..........................................................................18

*Boswell v. Costco Wholesale Corp.*,
    No. SACV160278DOCDFMX, 2016 WL 3360701 (C.D. Cal. June 6, 2016) ......................24

*Bridging Communities Inc. v. Top Flite Fin. Inc.*,
    843 F.3d 1119 (6th Cir. 2016) ..........................................................................7

*Calkins v. Fid. Bond & Mortg. Co.*,
    No. 94C5971, 1998 WL 719569 (N.D. Ill. Oct. 8, 1998) .........................................9

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ..........................................................................29

*Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*,
    797 F.3d 426 (7th Cir. 2015) ..........................................................................31

*Clark v. Retrieval Masters Creditors Bureau, Inc.*,
   185 F.R.D. 247 (N.D. Ill. 1999)............................................................22

*Coady v. Wellfleet Marine Corp.*,
   816 N.E.2d 124 (Mass. 2004) ............................................................13

*Com. Fin. Consulting, LLC v. Conquest Cap. Partners, LLC*,
   No. 18-P-1710, 2020 WL 2206055 (Mass. App. Ct. May 7, 2020) ......................................10

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)............................................................16

*Corcoran v. CVS Health Corp.*,
   779 F. App'x 431 (9th Cir. 2019) .............................................19, 20, 21

*Corcoran v. CVS Health*,
   No. 15-CV-03504-YGR, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017) .........................14, 23

*Cottrell v. AT&T Inc.*,
   No. 19-CV-07672-JCS, 2020 WL 4818606 (N.D. Cal. Aug. 19, 2020)..............................14

*Curran v. Bayer Healthcare LLC*,
   No. 17 C 7930, 2019 WL 398685 (N.D. Ill. Jan. 31, 2019) ..................................29

*Danis v. USN Commc'ns, Inc.*,
   189 F.R.D. 391 (N.D. Ill. 1999)............................................................7

*Donovan v. Philip Morris USA, Inc.*,
   65 F. Supp. 3d 251 (D. Mass. 2014) ............................................................15

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008)............................................................23

*Elkies v. Johnson and Johnson Servs., Inc.*,
   No. CV 17-7320, 2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) ...........................13

*Escorbor v. Helping Hands Co., Inc.*,
   No. SUCV20152053D, 2017 WL 4872657 (Mass. Super. Ct. Sept. 13, 2017).....................11

*Ferrari v. Nat'l Football League*,
   61 N.Y.S.3d 421 (N.Y. App. Div. 2017) ...............................................11

*Ferrell v. Wyeth-Ayerst Lab'ys, Inc.*,
   No. C-1-01-447, 2004 WL 6073010 (S.D. Ohio June 30, 2004)......................21, 32

*Forth v. Walgreen Co.*,
   No. 17-CV-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018)..............................2, 4

*United States ex rel. Garbe v. Kmart Corp.*,
    824 F.3d 632 (7th Cir. 2016) ...................................................5

*Gerstein v. Pugh*,
    420 U.S. 103 (1975)...................................................30

*Grimmelmann v. Pulte Home Corp.*,
    No. CV-08-1878, 2010 WL 3430706 (D. Ariz. Aug. 30, 2010)...........................................13

*Gurliacci v. Mayer*,
    590 A.2d 914 (Conn. 1991) ...................................................14

*Gutierrez v. Wells Fargo Bank, NA*,
    704 F.3d 712 (9th Cir. 2012) ...................................................23

*Ha v. Alexander*,
    No. FSTCV095012884S, 2010 WL 3259914 (Conn. Super. Ct. July 21, 2010)...................13

*Hairston v. Harward*,
    821 S.E.2d 384 (N.C. 2018)...................................................15

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*,
    649 A.2d 518 (Conn. 1994) ...................................................10

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
    607 N.E.2d 165 (Ill. 1992) ...................................................10

*Hirsch v. Bank of Am.*,
    132 Cal. Rptr. 2d 220 (Cal. 2003)...................................................10

*Howard v. Cook Cnty. Sheriff's Off.*,
    989 F.3d 587 (7th Cir. 2021) ...................................................26

*Illinois Graphics Co. v. Nickum*,
    639 N.E.2d 1282 (Ill. 1994) ...................................................22

*In re Abbott Lab'ys Norvir Anti-Trust Litig.*,
    No. C 04-1511 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007)........................................10

*In re Allstate Corp. Sec. Litig.*,
    966 F.3d 595 (7th Cir. 2020) ...................................................33

*In re Amla Litig.*,
    282 F. Supp. 3d 751 (S.D.N.Y. 2017)...................................................11

*In re Aqua Dots Prods. Liab. Litig.*,
    270 F.R.D. 377 (N.D. Ill. 2010)...................................................11

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550 (D. Kan. Mar. 10, 2020)...........................15

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
No. 17-MD-2785-DDC-TJJ, 2020 WL 1873989 (D. Kan. Feb. 27, 2020) ...........................17

*In re Flonase Antitrust Litig.*,
692 F. Supp. 2d 524 (E.D. Pa. 2010) ........................................................................21, 31, 33

*In re Gruver*,
No. 1:20-CV-229, 2022 WL 1500695 (W.D. Pa. May 12, 2022) ...........................................13

*In re Lidoderm Antitrust Litig.*,
No. 14-md-2521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)...................................27

*In re Loestrin 24 FE Antitrust Litig.*,
410 F. Supp. 3d 352 (D.R.I. 2019)................................................................................. *passim*

*In re Namenda Indirect Purchaser Antitrust Litig.*,
No. 1:15-cv-6549(CM)(RWL), 2021 WL 100489 (S.D.N.Y. Jan. 12, 2021)........................12

*In re Nexium (Esomeprazole) Antitrust Litig.*,
297 F.R.D. 168 (D. Mass. 2013)..........................................................................................27

*In re NorthShore Univ. HealthSystem Antitrust Litig.*,
No. 07 CV 04446, 2023 WL 2138971 (N.D. Ill. Feb. 20, 2023) (Chang, J.) ...........................2

*In re Opana ER Antitrust Litig.*,
No. 14 C 10150, 2021 WL 3627733 (N.D. Ill. June 4, 2021) ...............................................21

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................................23

*In re Sears, Roebuck & Co.*
2006 U.S. Dist. LEXIS 5698 (N.D. Ill. Dec. 18, 2006) ........................................................11

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. CV 14-MD-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).......................21, 27, 28

*In re Stericycle, Inc.*,
No. 13 C 5795, 2017 WL 635142 (N.D. Ill. Feb. 16, 2017)...................................................31

*In re: Syngenta AG MIR 162 Corn Litig.*,
No. 14-MD-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016)...................................15

*In re Tobacco II Cases*,
93 Cal. Rptr. 3d 559 (Cal. 2009)............................................................................................7

*In re Zetia (Ezetimibe) Antitrust Litig.*,
 No. 2:18MD2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021) ...........................................12

*Jermyn v. Best Buy Stores, L.P.*,
 276 F.R.D. 167 (S.D.N.Y. 2011) ...........................................................................................31

*Joerg v. State Farm Mut. Auto. Ins. Co.*,
 176 So. 3d 1247 (Fla. 2015)....................................................................................................14

*Johnson v. Allsteel, Inc.*,
 259 F.3d 885 (7th Cir. 2001) ..................................................................................................29

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
 702 F.3d 364 (7th Cir. 2012) .............................................................................................27, 31

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
 571 F.3d 672 (7th Cir. 2009) ..................................................................................................27

*Koos v. First Nat. Bank of Peoria*,
 496 F.2d 1162 (7th Cir. 1974) ................................................................................................19

*Kurtz v. Kimberly-Clark Corp.*,
 321 F.R.D. 482 (E.D.N.Y. 2017) ...........................................................................................13

*Leitinger v. DBart, Inc.*,
 736 N.W.2d 1 (Wis. 2007).......................................................................................................15

*Lemon v. Int'l Union of Operating Eng'rs, Loc. No. 139*,
 216 F.3d 577 (7th Cir. 2000) .............................................................................................30, 31

*Lilly v. Ford Motor Co.*,
 No. 00 C 7372, 2002 WL 507126 (N.D. Ill. Apr. 3, 2002).....................................................11

*Loeb Indus., Inc. v. Sumitomo Corp.*,
 306 F.3d 469 (7th Cir. 2002) ..................................................................................................13

*Mahon v. Chicago Title Ins. Co.*,
 296 F.R.D. 63 (D. Conn. 2013)................................................................................................11

*McCleese v. Natorp's, Inc.*
 No. 1:20-CV-118, 2021 WL 2270511, at *4 (S.D. Ohio June 3, 2021) ..................................34

*Mednick v. Precor, Inc.*,
 320 F.R.D. 140 (N.D. Ill. 2017)................................................................................................9

*Mitchell v. Haldar*,
 883 A.2d 32 (Del. 2005) ..........................................................................................................14

*Moehrl v. Nat'l Ass'n of Realtors*,
No. 19-CV-01610, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023)...........................................31

*MSP Recovery Claims, Series LLC v. Abbott Lab'ys*,
No. CV1921607FLWZNQ, 2021 WL 2177548 (D.N.J. May 28, 2021)................................34

*Muir v. Nature's Bounty (DE), Inc.*,
No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018)....................................................8

*Mullen v. GLV, Inc.*,
488 F. Supp. 3d 695 (N.D. Ill. 2020), *aff'd*, 37 F.4th 1326 (7th Cir. 2022) ...........................30

*Mullins v. Direct Digit., LLC*,
No. 13 C 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d
654 (7th Cir. 2015).................................................................................................................9

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .........................................................................................17, 27

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ................................................................................................13

*Puffer v. Allstate Ins. Co.*,
255 F.R.D. 450 (N.D. Ill. 2009), *aff'd*, 675 F.3d 709 (7th Cir. 2012) ....................................30

*Puopolo v. Com. Ins. Co.*,
No. 1984CV00977BLS2, 2019 WL 3211315 (Mass. Super. Ct. June 10, 2019)...................11

*re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015)......................................................................................................27

*Robinson v. Bates*,
857 N.E.2d 1195 (Ohio 2006)...............................................................................................15

*Robinson v. City of Chic.*,
868 F.2d 959 (7th Cir. 1989) ..........................................................................................29, 30

*Rojas v. Bosch Solar Energy Corp.*,
No. 18-CV-05841-BLF, 2022 WL 717567 (N.D. Cal. Mar. 9, 2022)....................................11

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ......................................9

*Schorsch v. Hewlett-Packard Co.*,
417 F.3d 748 (7th Cir. 2005) ................................................................................................18

*United States ex rel. Schutte v. SuperValu Inc.*,
_U.S._, 143 S. Ct. 1391 (2023)..............................................................................................4

*Sharpe v. Puritan's Pride, Inc.*,
    466 F. Supp. 3d 1066 (N.D. Cal. 2020) ...............................................................13

*Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*,
    540 F. Supp. 3d 182 (D.R.I. 2021) .................................................................. *passim*

*Siegel v. Shell Oil Co.*,
    256 F.R.D. 580 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010) ...................11

*Snyder v. Ocwen Loan Servicing, LLC*,
    258 F. Supp. 3d 893 (N.D. Ill. 2017) ..................................................................30

*Sosna v. Iowa*,
    419 U.S. 393 (1975)..............................................................................................30

*Standard Petroleum Co. v. Faugno Acquisition, LLC*,
    191 A.3d 147 (Conn. 2018) .................................................................................11

*State v. Dey, Inc.*,
    No. A0402047, 2005 WL 6294429 (Ohio C.P. Hamilton Cnty. June 13, 2005)....................34

*United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*,
    No. 18-CV-673-GKF-FHM, 2019 WL 1086363 (N.D. Okla. Mar. 7, 2019) ...........8

*Streeter v. Sheriff of Cook Cnty.*,
    256 F.R.D. 609 (N.D. Ill. 2009)...........................................................................18

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ................................................................................2

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) .............................................................................9

*Suchanek v. Sturm Foods, Inc.*,
    No. 11-CV-565-NJR-RJD, 2018 WL 6617106 (S.D. Ill. July 3, 2018) ...........4, 7, 9, 13

*Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*,
    620 S.E.2d 222 (N.C. 2005)..................................................................................13

*Taylor v. S. Pac. Transp. Co.*,
    637 P.2d 726 (Ariz. 1981)....................................................................................14

*Torrance v. Rom*,
    157 N.E.3d 172 (Ohio Ct. App. 2020) .................................................................34

*Turnbull v. USAir, Inc.*,
    133 F.3d 184 (2d Cir. 1998).................................................................................15

*United States v. SuperValu, Inc.*,
    No. 11-3290, 2019 WL 3558483 (C.D. Ill. Aug. 5, 2019) .......................................................6

*Van v. Ford Motor Co.*,
    332 F.R.D. 249 (N.D. Ill. 2019)...........................................................................................29

*Wagner v. NutraSweet Co.*,
    95 F.3d 527 (7th Cir. 1996) .................................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...............................................................................................................7

*Weissman v. Bondy & Schloss*,
    660 N.Y.S.2d 115 (N.Y. App. Div. 1997) ...........................................................................10

*Whitney v. Khan*,
    330 F.R.D. 172 (N.D. Ill. 2019)...........................................................................................18

*Wills v. Foster*,
    892 N.E.2d 1018 (Ill. 2008) ................................................................................................15

## Statutes, Rules & Regulations

Federal Rules of Civil Procedure
    Rule 23(a)(1)........................................................................................................................18
    Rule 23(b)(2)....................................................................................................28, 29, 30, 31
    Rule 23(b)(3)..............................................................................................................30, 31


Federal Rule of Evidence 702................................................................................................6, 12

Connecticut General Statutes
    Conn. Gen. Stat. Ann. §42-110g...................................................................................32, 33

## Other Authorities

RESTATEMENT (FIRST) OF RESTITUTION, §1 ..........................................................................10, 20

Plaintiffs respectfully submit this Reply in further support of their Motion for Class Certification.  ECF No. 554 ("Motion").[1]  Plaintiffs have satisfied Rule 23's requirements for certification of the Class and Subclasses' claims.  Despite the weight of authority supporting certification, Walgreens attempts to mischaracterize Plaintiffs' state consumer protection and unjust enrichment claims as sounding in contract in a doomed effort to defeat commonality, predominance, and superiority.  No contract review is required to answer the objective question of whether Walgreens' uniform failure to report or otherwise include its Prescription Savings Club ("PSC") prices when determining the usual and customary ("U&C") price to report for PSC Generics constituted an unfair or deceptive practice or whether Walgreens was unjustly enriched as a result of its conduct.  Though Walgreens raises myriad challenges to Plaintiffs' standing, typicality, and adequacy, each Plaintiff has been damaged by Walgreens' conduct and will continue to adequately represent the interests of the Class.  The Court should grant Plaintiffs' Motion.

## ARGUMENT

## I.  WALGREENS' CONTRACTS-BASED CHALLENGES TO COMMONALITY, PREDOMINANCE, AND SUPERIORITY ARE UNAVAILING

### A.  Contracts Are Not Relevant to Plaintiffs' State Consumer Protection and Unjust Enrichment Claims

In challenging Rule 23's commonality, predominance, and superiority requirements, Walgreens intentionally contorts Plaintiffs' theory of liability.  Despite Walgreens' repeated mischaracterizations to the contrary, Plaintiffs' state consumer protection and unjust enrichment claims do not sound in contract or require Plaintiffs to demonstrate a breach of any contract.  As this Court previously recognized in denying Walgreens' motion to dismiss, contracts are "not the

---

[1]    Unless otherwise defined, capitalized terms have the meaning defined in the Motion.  Emphasis is added and citations are omitted unless otherwise noted.

1

basis of Plaintiffs' claim." *Forth v. Walgreen Co.*, No. 17-CV-2246, 2018 WL 1235015, at *5 (N.D. Ill. Mar. 9, 2018). Plaintiffs seek only to certify claims arising under state consumer protection statutes and common law claims for unjust enrichment.

"The starting point of predominance analysis is the elements of the underlying cause of action," *In re NorthShore Univ. HealthSystem Antitrust Litig.*, No. 07 CV 04446, 2023 WL 2138971, at *8 (N.D. Ill. Feb. 20, 2023) (Chang, J.), not hypothetical claims Defendant may prefer to defend against.[2] As in *Suchanek v. Sturm Foods, Inc.*, each of the state consumer protection claims Plaintiffs seek to certify "may be satisfied by proof that a statement is likely to mislead a reasonable consumer." 764 F.3d 750, 761-62 (7th Cir. 2014).[3] Critically, whether a statement is likely to mislead a reasonable consumer or is unfair "is an objective question, not one that depends on each purchaser's subjective understanding." *Id.* at 758.

Against this backdrop, Walgreens' response is that "Walgreens and PBMs can contract however they want." Opp. at 21. **Plaintiffs agree**. But Walgreens fails to explain how its freedom to contract with pharmacy benefit managers ("PBMs") bears upon the elements of Plaintiffs' state consumer protection or unjust enrichment claims, or on the legal duties to third-party payers ("TPPs") and consumers those consumer protection and unjust enrichment laws impose on Walgreens. Walgreens' contracts with PBMs cannot immunize it from liability to those deceived and damaged by Walgreens' fraudulent conduct. Walgreens fails to cite, and Plaintiffs are not

---

[2] Walgreens' extensive reliance on *Bell v. Bimbo Foods Bakeries Distrib., Inc.*, No. 11 C 03343, 2013 WL 6253450, at *8-11 (N.D. Ill. Dec. 3, 2013) is misplaced as that action involved a breach of contract claim and not any claim under a consumer protection statute at issue here.

[3] Walgreens attempts to distinguish *Suchanek* by suggesting that the Seventh Circuit's decision was based only on an admission in Defendant's brief. Walgreen Co.'s Opposition to Plaintiffs' Motion for Class Certification, ECF No. 589 (Mar. 17, 2023) ("Opp.") at 16. This is false. The Seventh Circuit extensively cited authority for the proposition that the "same legal standards govern every class member's claim," 764 F.3d at 756-57, and referenced this authority when later conducting a *de novo* review of summary judgment. *Id.* at 761.

2

aware of, any authority for the proposition that a contract can extinguish a state consumer protection or unjust enrichment claim asserted on the basis of an unjust, unfair, or deceptive act directed towards a person not in privity therewith. "Whether the Pharmacy-PBM Contracts required Walgreens to report its PSC prices as its U&C prices," *id.* at 23, quite simply is irrelevant to the common and predominant question of whether Walgreens violated consumer protection statutes or was unjustly enriched, as Walgreens concedes. *Id.* at 6 ("[T]he U&C definition in the PBM-pharmacy contract has no bearing on the separate, independent term in the PBM's contract with the TPP."). If Walgreens believes that "Caremark, Express Scripts, and Optum . . . ███████ ████████████████████████████████████████████████," *id.* at 25, Walgreens is free to bring actions seeking contribution from those PBMs on the basis of those contracts. In a related context, it has done exactly that. *BCBSM, Inc. v. Walgreen Co.*, No. 20 C 1853, 2023 WL 3601826, at *1 (N.D. Ill. May 23, 2023) (denying motion to dismiss Walgreens' claim seeking "contribution from the PBMs as joint tortfeasors in the alternative to its denial of liability for the health care plans' purported losses"). As explained below, common questions predominating over Plaintiffs' state consumer protection and unjust enrichment claims are answerable without reference to contracts, which unquestionably makes proceeding on a class basis superior to numerous individual actions.

**B.     Plaintiffs Will Establish Liability by Reference to Common, Classwide Evidence**

Common evidentiary proof will answer the predominant question of whether Walgreens' failure to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics was likely to deceive a reasonable consumer. Walgreens admits that an industry understanding exists as to the meaning of the U&C price, Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification, ECF 556 (Nov. 17, 2022) ("Guglielmo

Decl."), Ex. 15, at 21-22 (Walgreens' Resp. to RFA No. 21), which in itself is classwide evidence probative of Plaintiffs and the Class's claims. *See* Fed. R. Civ. P. 36(b). Plaintiffs proffer the expert testimony of Dr. Schafermeyer to explain the meaning of the industry standard and establish that Walgreens' failure to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics was likely to deceive the reasonable consumer and to unjustly enrich Walgreens. *See Suchanek*, 764 F.3d at 761 (recognizing that classwide "proof might include . . . expert testimony supporting the classwide allegations"); *Forth*, 2018 WL 1235015, at \*5 n.9 (recognizing Plaintiffs may rely on expert testimony for "the industry definition of what constitutes 'usual and customary' prices"); *see also United States ex rel. Schutte v. SuperValu Inc.*, _U.S._, 143 S. Ct. 1391, 1393 (2023) ("[T]he phrase 'usual and customary' may be ambiguous on its face . . . ."). Thus, predominance is readily established here.

As set forth in his opening report, Guglielmo Decl., Ex. 56 ("Schafermeyer Rpt."), and his rebuttal report, Supplemental Declaration of Joseph P. Guglielmo in Support of Plaintiff's Motion for Class Certification ("Supp. Guglielmo Decl."), Ex. 62 ("Schafermeyer Rebuttal Rpt."), Dr. Schafermeyer explains in detail why "Walgreens should have reported or otherwise included its PSC price when determining the U&C price to report" for PSC Generics. Schafermeyer Rpt., ¶32. As Dr. Schafermeyer explains, because "[t]he U&C price serves as a 'ceiling' or 'cap' on prescription drug prices for TPPs and their insured members," consumers and TPPs reasonably understood that they would pay no more than the U&C price to receive prescription drugs. *Id.*, ¶40.

Though Walgreens and its experts attempt to analogize the PSC to third-party discount cards that are available to the general public, like GoodRx, as explained in his rebuttal report, Walgreens' PSC is entirely distinguishable. Schafermeyer Rebuttal Rpt., ¶¶135-41. Unlike third-

party discount cards, the PSC was created, owned, and controlled by Walgreens. *Id.*, ¶¶137-38. Walgreens alone determined who was eligible to receive PSC prices, which drugs would be offered through the PSC, and what the PSC price – which was represented as a discount off of Walgreens' "cash" prices – would be. *Id.*, ¶140. While a GoodRx member can use the discount card at CVS, Shop-Rite, or any number of other pharmacies, the PSC and PSC prices are available exclusively at Walgreens. *See id.* As Dr. Schafermeyer testified, and Walgreens' documents plainly state, the PSC was nothing more than an extension of Walgreens' cash business. *Id.,* ¶¶46-54; Guglielmo Decl., Ex. 27 at Walg_Forth_00123486; Guglielmo Decl., Ex. 29 at Walg_Forth_00058230.

As Dr. Schafermeyer explains, PBMs, their employees, the government, and participants in the broader industry all understood that prices offered through pharmacy discount programs, including the PSC, needed to be reported or otherwise included when determining the pharmacy's U&C price. *See generally* Schafermeyer Rebuttal Rpt. Indeed, Walgreens' internal communications ███████████████████████████████████████████████████ ████. Memorandum of Law in Support of Plaintiffs' Motion, ECF No. 552 (Nov. 17, 2022) ("Mem."), at 8-10. Thus, Dr. Schafermeyer's testimony, and the common evidence he cites, establishes that Walgreens' failure to report or otherwise include its PSC prices was likely to deceive a reasonable consumer and unjustly enrich Walgreens. *Id.*

Dr. Schafermeyer's position is fully consistent with binding Seventh Circuit authority. "Unless state regulations provide otherwise, the 'usual and customary' price is defined as the 'cash price offered to the general public.'" *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 643-45 (7th Cir. 2016) ("The 'usual and customary' price requirement should not be frustrated by so flimsy a device as Kmart's 'discount programs.' Because Kmart offered the terms of its 'discount programs' to the general public and made them the lowest prices for which its drugs

were widely and consistently available, the Kmart 'discount' prices at issue represented the 'usual and customary' charges for the drugs."); *see also United States v. SuperValu, Inc.*, No. 11-3290, 2019 WL 3558483, at *6 (C.D. Ill. Aug. 5, 2019) ("The Defendants' actual usual and customary price can be determined by noting the discount lower cash prices that were offered to the general public and accepted over the years. . . . 'The offer to the general public determines the usual and customary price—not whether the offer was couched as a discount club or whether a majority of people accepted it.'") (granting partial summary judgment against SuperValu on the question of falsity under the False Claims Act).

Walgreens' reliance on the reports and testimony from its experts Michael S. Jacobs and John W. Hannifin to the contrary is unavailing. Those experts' opinions are unreliable and based on a misunderstanding or mischaracterization of the evidence. Plaintiffs identify many deficiencies in the experts' contentions, as Plaintiffs fully explain in their motions to strike those opinions.[4] And, in any event, those opinions and testimony do not refute Dr. Schafermeyer's and Plaintiffs' claim that Walgreens should have reported or otherwise included its PSC prices when determining the U&C price for PSC Generics.

### 1. Common Questions Predominate Over the Class's Multi-State Consumer Protection Claims

Whether Walgreens' conduct was likely to deceive a reasonable consumer is an objective and common question that can be answered without reference to contracts. Walgreens admits that it uniformly failed to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics to Plaintiffs and the Class. Guglielmo Decl., Ex. 17 at 18-19 (Walgreens' Resp. to ROG No. 9). Where, as here, "the same conduct or practice by the same

---

[4] Plaintiffs incorporate by reference their Motion to Exclude Michael S. Jacobs' Expert Report and Testimony Under Federal Rule of Evidence 702 and their Motion to Exclude the Expert Report and Testimony of John W. Hanifin Under Federal Rule of Evidence 702, filed contemporaneously herewith.

defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d 750, 756 (7th Cir. 2014). All of the proposed Class members' claims will rise or fall on the common question of whether Walgreens' conduct was, in fact, likely to mislead or unfair. *Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182, 206 (D.R.I. 2021). Common questions predominate because they are capable of generating a common answer that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, at *9 (N.D. Ill. Nov. 16, 2021) ("What is important for class-certification purposes, and what plaintiffs have demonstrated, is that all of the ten states' statutes require proof (which is common here) that the deceptive conduct at issue was likely to mislead a reasonable consumer."). Further, though reliance is not required under many state consumer protection statutes, Guglielmo Decl., Ex. 57, where it is, it can be established on a classwide basis by proof that the deceptive statement was material.[5] *See, e.g.*, *In*

---

[5] "[I]f the class prevails on the common issue, it would be a straightforward matter for each purchaser to present her evidence on reliance and causation." *Suchanek*, 764 F.3d at 759-60; *see also Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR-RJD, 2018 WL 6617106, at *11-*12 (S.D. Ill. July 3, 2018) ("[C]lass-wide proof is appropriate to establish causation . . . ."). While Walgreens speculates that evidence may exist that an agreement entered into by a TPP Class member may exclude PSC prices from the ambit of U&C prices, Walgreens has failed to generate any evidence of such an agreement, despite having years to develop a record in discovery. Though Walgreens claims that it will "conduct discovery as to each TPP class member," Opp. at 28, the Court declined to bifurcate class and merits discovery, ECF Nos. 45, 80, 93 & 94, and Walgreens chose not to pursue such discovery when it could. While Walgreens subpoenaed the Relevant PBMs, it chose not to seek, let alone preserve, any request for additional PBM-TPP contracts. Discovery as to non-party TPP Class members is now closed. *See, e.g.*, ECF No. 593 at 1; *cf.* ECF No. 491; ECF No. 336, ¶3 ("*Plaintiffs'* amended subpoenas seek production of class-wide transactional data in the event a class is certified from each of the Relevant PBMs."). Thus, on the record before the Court, Walgreens' attempt to spook the Court with the specter of reviewing "hundreds of thousands, if not millions of PBM-TPP" contracts, Opp. at 29, is nothing more than speculation – and "the court is not required to deny certification for speculative reasons." *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999): *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) ("We are unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling . . . .'"). The most Walgreens can say of the record is that Plaintiff Steamfitters had a contract that ███████ ███████████████████ for a limited period. Opp. at 28. As Dr. Schafermeyer explains, however, "because

*re Tobacco II Cases*, 93 Cal. Rptr. 3d 559, 581-83 (Cal. 2009). By misrepresenting the U&C price of PSC Generics, Walgreens' "alleged misrepresentations go to an essential element of the bargain—price." *United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. 18-CV-673-GKF-FHM, 2019 WL 1086363, at *14 (N.D. Okla. Mar. 7, 2019). Because of the uniformity in state consumer protection statutes prohibiting unfair and deceptive conduct, Walgreens' argument against a multi-state class "ignores the core, overlapping elements in the . . . states' consumer protection laws. All [the] states' laws prohibit, in one phrasing or another, unfair, fraudulent, or deceptive practices in the course of trade or commerce." *Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *8 (N.D. Ill. Aug. 1, 2018); *see also* Guglielmo Decl., Ex. 57.

Rather than face Plaintiffs' detailed review of the near uniformity of the elements of the state consumer protection statutes head on, Walgreens argues that class certification is "inappropriate" here because there are a number of "material differences" between the state consumer protection laws. Walgreens fails to demonstrate why any of the purported variations, such as differences in the statute of limitations, are material. *Compare* Opp. at 13-15 *with Benson*, 2021 WL 5321510, at *9 ("Defendants also present a laundry list of what they deem 'outcome-determinative' variations among the statutes. This list is unhelpful because defendants do not explain why the variations are material; it is simply stated in conclusory fashion that they 'render class certification entirely improper here.'"). Standing alone, Walgreens' failure to demonstrate the materiality of any of these purported variations in the state consumer protection laws warrants

---

the meaning of the U&C price was universally understood within the industry, some agreements . . . did not bother to define U&C. Absent a definition in the PBM Agreement, the meaning of 'U&C' would be consistent with the industry understanding of U&C." Schafermeyer Rpt., ¶86; *see also id.,* ¶42 ("I am not aware of any third-party prescription programs that did not use the 'lower of' logic during the Class Period . . . .").

rejection by the Court of its argument.

However, even if Walgreens had not failed to explain the materiality of any purported variations, courts in this District have found that several of the types of variations proffered by Walgreens either do not present a challenge to the certification of multi-state classes or may otherwise be remedied by subclasses, as Plaintiffs propose in the alternative. *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 486 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391, 393 (7th Cir. 2010) ("[T]his Court has rejected the per se prohibition against certification based upon statute of limitations differences . . . ."); *Calkins v. Fid. Bond & Mortg. Co.*, No. 94C5971, 1998 WL 719569, at *3 (N.D. Ill. Oct. 8, 1998).

Moreover, Courts have repeatedly found that the type of multi-state class Plaintiffs seek to certify is appropriate for certification. *Sheet Metal*, 540 F. Supp. 3d at 182 (certifying claims under California, Connecticut, Illinois, New York, and Ohio consumer protection statutes); *Suchanek*, 764 F.3d at 754-61; *Benson*, 2021 WL 5321510, at *9 (certifying a multi-state consumer-protection class that included purchasers in Illinois, California, Florida, Massachusetts, and New York); *Mullins v. Direct Digit., LLC*, No. 13 C 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014) (certifying a multi-state consumer-protection class that included purchasers in ten states), *aff'd*, 795 F.3d 654 (7th Cir. 2015); *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 157 (N.D. Ill. 2017) (certifying a multi-state consumer-protection class that included purchasers in Illinois, California, and New York); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015) (on remand, certifying a multi-state consumer-protection liability class that included purchasers in Illinois, California, and New York).

### 2. Common Questions Predominate Over the Unjust Enrichment Subclass's Claims

Plaintiffs have also demonstrated that common questions predominate over the Unjust

Enrichment Subclass's claims. Each Unjust Enrichment Subclass member's claim results from Walgreens' failure to report or otherwise include its PSC prices when determining the U&C price to report for PSC Generics. Plaintiffs will use common evidence in the form of classwide data to establish that Walgreens received a benefit at the expense of Unjust Enrichment Subclass members, as well as common evidence of Walgreens' uniform actions to demonstrate that its retention of these benefits would be unjust.

Walgreens contends that "each state's court interprets the Restatement elements differently," Opp. at 17, but unjust enrichment claims under California, Connecticut, Illinois, Massachusetts, and New York law all follow the elements set forth in the Restatement (First) of Restitution and require a showing of the same three elements: (a) defendant received a benefit; (b) at plaintiff's expense; (c) and retention of the benefit would be unjust without compensation.[6] Though Walgreens fails to identify any material differences that exist among the five states' interpretation of the Restatement elements, courts have recognized that "variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof." *In re Abbott Lab'ys Norvir Anti-Trust Litig.*, No. C 04-1511 CW, 2007 WL 1689899, at *8-*10 (N.D. Cal. June 11, 2007).

---

[6]     *Hirsch v. Bank of Am.*, 132 Cal. Rptr. 2d 220, 229 (Cal. 2003) ("An individual is required to make restitution when he or she has been unjustly enriched at the expense of another. A person is enriched if he or she receives a benefit at another's expense.") (citing RESTATEMENT (FIRST) OF RESTITUTION, §1 (Am. Law. Inst. 1937)); *Weissman v. Bondy & Schloss*, 660 N.Y.S.2d 115, 118 (N.Y. App. Div. 1997) ("'A person may be deemed to be unjustly enriched if he (or she) has received a benefit, the retention of which would be unjust.'"); *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 649 A.2d 518, 521-22 (Conn. 1994) ("Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiff for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."); *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("[P]laintiffs must show that defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment."); *Com. Fin. Consulting, LLC v. Conquest Cap. Partners, LLC*, No. 18-P-1710, 2020 WL 2206055, at *3 (Mass. App. Ct. May 7, 2020) ("It is well settled that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'").

Walgreens' cited cases are distinguishable in that the plaintiffs proposed a nationwide class or numerous different groups of multi-state classes. *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 582 (N.D. Ill. 2008) (involving a nationwide unjust enrichment class), *aff'd*, 612 F.3d 932 (7th Cir. 2010); *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 507126, at \*1 (N.D. Ill. Apr. 3, 2002) (same); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 385-87 (N.D. Ill. 2010) (four separate multi-state unjust enrichment classes). Additionally, Walgreens mischaracterizes *In re Sears, Roebuck & Co.* by incorrectly claiming that it involved denial of certification of a multi-state unjust enrichment class, (Opp. at 17 n.2), when, in fact, it merely involved dismissal of an unjust enrichment claim. Nos. MDL-1703, 05 C 4742, 05 C 2623, 2006 U.S. Dist. LEXIS 5698, at \*16 (N.D. Ill. Dec. 18, 2006). Accordingly, common questions predominate over the Unjust Enrichment Subclass's claims.[7]

### C. Walgreens' Data-Related Arguments Are Off-Base and Can Be Addressed by Common, Classwide Evidence

Walgreens raises a litany of challenges to Plaintiffs' ability to establish damages by reference to common, classwide evidence, however, none establishes that individualized issues

---

[7] In the alternate, certification of five single-state unjust enrichment subclasses also would be appropriate. *See, e.g.*, *Rojas v. Bosch Solar Energy Corp.*, No. 18-CV-05841-BLF, 2022 WL 717567, at \*13 (N.D. Cal. Mar. 9, 2022) (certifying unjust enrichment claim); *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012) (certifying unjust enrichment claims because "they require common proof of the defendant's conduct and raise the same legal issues for all class members"); *Standard Petroleum Co. v. Faugno Acquisition, LLC*, 191 A.3d 147, 171 (Conn. 2018) (affirming certification of claims including unjust enrichment); *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 77-78 (D. Conn. 2013) (certifying unjust enrichment claim where defendant allegedly received inflated and improper title insurance premiums); *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 555 (N.D. Ill. 2015); *Puopolo v. Com. Ins. Co.*, No. 1984CV00977BLS2, 2019 WL 3211315, at \*2 (Mass. Super. Ct. June 10, 2019) (certifying unjust enrichment claim); *Escorbor v. Helping Hands Co., Inc.*, No. SUCV20152053D, 2017 WL 4872657, at \*6 (Mass. Super. Ct. Sept. 13, 2017) (certifying unjust enrichment claim, where the class "based their claims upon the same pattern and practices"); *Ferrari v. Nat'l Football League*, 61 N.Y.S.3d 421, 424 (N.Y. App. Div. 2017) (affirming certification of unjust enrichment claim); *In re Amla Litig.*, 282 F. Supp. 3d 751, 766 (S.D.N.Y. 2017) (finding predominance and certifying unjust enrichment class, including under New York law, where defendants' "business operations are the same as to all members of the putative class").

will predominate. Walgreens' experts criticize Plaintiffs for not presently possessing all the data required to perform Dr. Lynette Hilton's damages calculations. Plaintiffs have sought and will obtain the necessary data once the Class is certified. *See* n.5. Plaintiffs have moved to exclude Dr. James W. Hughes' opinions as unreliable for failing to consider the data or discovery actually produced in this case.[8] As set forth in the rebuttal reports of Dr. Hilton and Dr. Susan A. Hayes, historical data confirming whether claims were adjudicated by reference to the U&C price, whether a copay or coinsurance was charged, and even information relating to deductibles, Medicare Part D coverage bands, and out-of-pocket maximums indisputably exists and can be produced in this action or used by PBMs to re-adjudicate Plaintiffs and Class members' claims.[9] Supp. Guglielmo Decl., Ex. 61 ("Hilton Rebuttal Rpt."), ¶¶7-8, 20-24, 47-49; Supp. Guglielmo Decl., Ex. 63 ("Hayes Rebuttal Rpt."), ¶¶40-71; *see also In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2021 WL 3704727, at *4 (E.D. Va. Aug. 20, 2021) (Plaintiffs can "obtain relevant PBM data, standardize it, then identify class members and exclude non-members - all without the type of individualized inquiry that would make any proposed methodology unfeasible"); *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-cv-6549(CM)(RWL), 2021 WL 100489, at *12 (S.D.N.Y. Jan. 12, 2021) (same); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 399 (D.R.I. 2019) (same); *Sheet Metal.*, 540 F. Supp. 3d at 204.

### 1. Data Show Whether the Amount Class Members Paid Was Determined by Reference to the U&C Price

Mr. Smith claims that he does not believe that the data produced in this action is sufficient to determine whether the U&C price served as the basis for determining the amounts paid by Class

---

[8] Plaintiffs incorporate by reference their Motion to Exclude James W. Hughes' Expert Report and Testimony Under Federal Rule of Evidence 702, filed contemporaneously herewith.

[9] Plaintiffs incorporate by reference their Opposition to Walgreens' Motion to Exclude Dr. Hilton's Expert Report, filed contemporaneously herewith, which discusses these issues in further detail.

members.  As set forth in the rebuttal reports of Dr. Hilton and Dr. Hayes, however, ample data exists to evidence the use of the U&C price in the adjudication process that can be used on a formulaic, classwide basis.  Hilton Rebuttal Rpt., ¶¶7-8; Hayes Rebuttal Rpt., ¶¶51-63.

### 2. Plan Design Features Can Be Accounted for and Do Not Defeat Predominance

Walgreens contends that any damages model must account for various plan design features such as deductibles, Medicare Part D coverage bands, and out of pocket maximums.  Opp. at 30-35.  This is inconsistent with the applicable substantive law.  *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 490 (7th Cir. 2002) ("It is certainly acceptable through expert economic testimony to make a reasonable estimation of actual damages through probability and inferences.").[10]

---

[10]    *See also, e.g.*, *Grimmelmann v. Pulte Home Corp.*, No. CV-08-1878, 2010 WL 3430706, at *5 (D. Ariz. Aug. 30, 2010) ("Generally, 'once the right to damages has been established, uncertainty as to amount of damages will not preclude recovery.' . . . The party seeking damages must prove them with 'reasonable certainty,' by providing 'some basis for estimating his loss.'"); *Elkies v. Johnson and Johnson Servs., Inc.*, No. CV 17-7320, 2018 WL 11223465, at *9 (C.D. Cal. Oct. 18, 2018) ("'Class wide damages calculations under the UCL , FAL, and CLRA are particularly forgiving.  California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'"); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019); *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1076 (N.D. Cal. 2020) ("No specific damages measure is prescribed in the CLRA, and the door is open to any reasonable measure."); *Ha v. Alexander*, No. FSTCV095012884S, 2010 WL 3259914, at *13 (Conn. Super. Ct. July 21, 2010) ("'[T]he likely amount of damages need not be determined with mathematical precision . . . .'"); *A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1345 (S.D. Fla. 2021) ("[T]he plaintiff need not calculate these damages with 'mathematical precision,' . . . 'The proof may be indirect and it may include estimates based on assumptions, so long as the assumptions rest on adequate data.'"); *Suchanek*, 764 F.3d at 760 (under California, Illinois, and New York law "damages can be estimated"); *Coady v. Wellfleet Marine Corp.*, 816 N.E.2d 124, 131 (Mass. 2004) ("Although mere speculation is insufficient, 'the amount of damages need not be proved with mathematical precision; the extent of damages often must be left to estimate and judgment.'  Evidence that enables the jury to arrive at an approximate estimate of damages is sufficient."); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 550 (E.D.N.Y. 2017) ("Plaintiffs need not prove exactly what their damages will be. . . . 'New York law does not require that the injury must be proven with a specified degree of certitude . . . .'"); *Sunbelt Rentals, Inc. v. Head & Enquist Equip., L.L.C.*, 620 S.E.2d 222, 231 (N.C. 2005) ("[W]here a claim for damages . . . are shown to a reasonable certainty, the plaintiff should not be required to show an exact dollar amount with mathematical precision."); *In re Gruver*, No. 1:20-CV-229, 2022 WL 1500695, at *12 (W.D. Pa. May 12, 2022) ("'"[D]amages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences. . . . [D]amages are speculative only if the uncertainty concerns the fact of damages rather than the amount."'").

The *Corcoran* court similarly held that "'differences in damage calculations' among class members do[] 'not defeat class certification.'" *Corcoran v. CVS Health*, No. 15-CV-03504-YGR, 2017 WL 3873709, at *8 (N.D. Cal. Sept. 5, 2017), *rev'd and remanded sub nom. Corcoran v. CVS Health Corp.*, 779 F. App'x 431 (9th Cir. 2019). The *Corcoran* court explained:

> [P]laintiffs need only demonstrate that their damages stemmed from the defendants' actions that created the legal liability. Here, assuming that defendants are liable, plaintiffs' damages calculations are tied to the delta between what plaintiffs were charged by defendants and defendants' true U&C price, which plaintiffs allege is the HSP program price for each drug. For the percentage of putative class members whose insurance provided them with out-of-pocket caps, damages can be determined by calculating the difference between those caps and what they would have paid had defendants submitted the correct U&C price. That some of these calculations will involve individualized and fact-specific determinations is insufficient to defeat class certification.

*Id.* The *Corcoran* court's rationale applies here as well. As set forth in the rebuttal reports of Dr. Hilton and Dr. Hayes, data relating to plan design features exists and can be accounted for as part of any methodology. Hilton Rebuttal Rpt., ¶¶23-24, 47-49; Hayes Rebuttal Rpt., ¶¶46-71.

### 3. Whether the Collateral Source Rule Bars Evidence of Back-End Reconciliation Payments Is a Common Question

Walgreens claims that "back-end reconciliation" payments associated with generic effective rates ("GERs") that TPPs may have negotiated with PBMs or stop-loss insurance must be accounted for in Plaintiffs' damages model as relevant to Walgreens' affirmative defenses. Walgreens' experts admitted that both GERs and stop-loss payments are made by third-parties independent of Walgreens. Supp. Guglielmo Decl., Ex. 69 ("Hughes Tr.") at 109:8-110:9 & 117:3-6. Though Plaintiffs believe that evidence regarding these collateral source payments is inadmissible as a matter of law and need not be considered as part of Plaintiffs' damages model,[11]

---

[11] *See, e.g., Taylor v. S. Pac. Transp. Co.*, 637 P.2d 726, 729-30 (Ariz. 1981); *Cottrell v. AT&T Inc.*, No. 19-CV-07672-JCS, 2020 WL 4818606, at *7 (N.D. Cal. Aug. 19, 2020); *Gurliacci v. Mayer*, 590 A.2d 914, 928 (Conn. 1991); *Mitchell v. Haldar*, 883 A.2d 32, 39 (Del. 2005); *Joerg v. State Farm Mut.*

for class certification purposes, the "question whether the collateral source doctrine applies . . . is a legal issue that presents a common question that applies classwide." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550, at *27 (D. Kan. Mar. 10, 2020); *In re: Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 5371856, at *9 (D. Kan. Sept. 26, 2016) (same).

### 4. The Relevant PBMs Can Re-Adjudicate Class Members' Pharmacy Claims, If Necessary

Walgreens' experts claim that re-adjudication of Plaintiffs and Class members' claims is necessary to quantify damages with mathematical precision. Hughes Rpt.,[12] ¶15; Smith Rpt.,[13] ¶30; Supp. Guglielmo Decl., Ex. 68 ("Smith Tr.") at 193:24-194:3. That, however, is not the applicable standard under the substantive law, *see supra* n.10, and no court has required the re-adjudication that Walgreens' experts claim should be performed. Regardless, as set forth in Dr. Hayes' rebuttal report, if necessary, the Relevant PBMs are capable of re-adjudicating Plaintiffs and Class members' pharmacy claims. Hayes Rebuttal Rpt., ¶¶31-35. To do so, the Relevant PBMs would only need to be provided with the applicable PSC prices. *Id.* They would then substitute those PSC prices for the U&C prices that Walgreens fraudulently reported and re-adjudicate the claims. *Id.* This would be another reasonable basis to calculate damages consistent

---

*Auto. Ins. Co.*, 176 So. 3d 1247, 1256 (Fla. 2015) ("It is a basic principle of law that tortfeasors should not receive a windfall due to benefits available to the injured party, however those benefits were accrued."); *Wills v. Foster*, 892 N.E.2d 1018, 1022 (Ill. 2008); *Donovan v. Philip Morris USA, Inc.*, 65 F. Supp. 3d 251, 279 (D. Mass. 2014); *Turnbull v. USAir, Inc.*, 133 F.3d 184, 186 (2d Cir. 1998) (New York law); *Hairston v. Harward*, 821 S.E.2d 384, 391 (N.C. 2018); *Robinson v. Bates*, 857 N.E.2d 1195, 1199 (Ohio 2006); *Leitinger v. DBart, Inc.*, 736 N.W.2d 1, 8 (Wis. 2007) ("In other words, '[t]he tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or good fortune to receive, benefits from a collateral source for injuries and expenses.'").

[12]     Declaration of Michael S. Leib in Support of Defendant Walgreen Co.'s Opposition to Plaintiffs' Motion for Class Certification, ECF No. 588 (Mar. 17, 2023) ("Leib Decl."), Ex. 24 ("Hughes Rpt.").

[13]     Leib Decl., Ex. 1 ("Smith Rpt.").

with Plaintiffs' legal theory that Walgreens unfairly and deceptively overcharged Plaintiffs and the Class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

### 5. Walgreens' Inconsistently Applied and Fraudulent Membership Fee Can, but Should Not Be, Considered When Determining PSC Prices

Walgreens claims that any assessment of PSC prices must include an allocated portion of a membership fee. For class certification purposes, Mr. Smith concedes that a methodology to allocate membership fees to PSC prices exists by reference to common, classwide evidence.[14] At this stage of the case, no fee should be allocated to PSC prices for several reasons. Fundamentally, it would be unjust and inconsistent with the remedial aims of the applicable substantive law to allow Walgreens to claim an offset on the basis of a sham that was designed to effectuate its fraudulent reporting scheme. *See supra* n.10; Schafermeyer Rpt., ¶¶15, 127-191. As a factual matter, the evidence demonstrates that █████████████████████████████████

███████. Hilton Rebuttal Rpt., ¶¶54-57. Mr. Smith concedes that ████████████████

████████████████████████████████████████████████████████████████████

██. *Id.*, ¶55; Smith Rpt., Attachment 3 at 94. ███████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████. Hilton Rebuttal Rpt., ¶¶56-57; *see also* Guglielmo Decl., Ex. 47. ████████

██████████████████████████████████████████, there is no need to allocate any membership fee.

## II. THE CLASS IS ASCERTAINABLE AND THE CLASS DEFINITION WITH MODIFIED EXCLUSIONS IS CLEAR AND BASED ON OBJECTIVE CRITERIA

The parties agree that a class must be clearly defined by reference to objective criteria. *See*

---

[14] Smith Rpt., ¶38 ("I performed an analysis to calculate the amount of membership fees to allocate to each PSC transaction."); Smith Tr. at 236:6-15. As set forth in Dr. Hilton's rebuttal report, Plaintiffs disagree with Mr. Smith's methodology. Hilton Rebuttal Rpt., ¶58.

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Walgreens, however, loses sight of the fact that the Seventh Circuit has rejected the more "stringent" version of ascertainability that would require a plaintiff "to show a reliable and administratively feasible way to determine whether a particular person is a member of the class." *Id.* at 661. As long as objective criteria are used, the Court "has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed." *Id.* at 669.[15] This renders Mr. Smith's repeated criticism that class members cannot be identified through the data ***alone*** (Smith Rpt., §V.A) moot.

Plaintiffs' proposed methodology is sufficient to objectively determine class membership because each aspect of Plaintiffs' class definition is supportable either by reference to objective classwide data, *see supra* §I.C, or is sufficiently definite for Class members to understand whether they would be bound by a judgment. Courts have concluded that similar class definitions are sufficiently clear and based on objective criteria. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1873989, at *7-*12 (D. Kan. Feb. 27, 2020) (rejecting Dr. Hughes' arguments, following *Mullins*, and finding similar classes ascertainable); *Sheet Metal*, 540 F. Supp. 3d at 202-05.

**Fully-insured health plans.** Walgreens claims it is "unclear" as to whether fully-insured health plans are Class members. Opp. at 48. Yet, Dr. Hilton's methodology mechanistically filters out TPPs that are not injured. Guglielmo Decl., Ex. 55 ("Hilton Rpt."), ¶¶22-26. Thus, only injured TPPs are included within the Class, regardless of whether they are fully or self-insured. *Id.*; Hilton

---

[15]     Walgreens concocts illusory ambiguities in the class definition. Walgreens' conclusion that the class definition makes no sense because "PBMs do not provide insurance benefits," Opp. at 48, requires ignoring the word "through" in the proposed Class definition. Mem. at 3 ("All persons, or entities, for whom prescription drug insurance benefits were provided ***through*** the Relevant PBMs"). A PBM's purpose is to act as the conduit through which prescription drug insurance benefits are provided from a TPP to a consumer.

17

Rebuttal Rpt., ¶¶9-10; Hayes Rebuttal Rpt., ¶¶21, 79-82.

**PBM affiliation exclusion.** Smith criticizes that whether a Class member is affiliated with a Relevant PBM is not in the data. Smith Rpt., ¶22. This, however, is an objectively knowable fact that any TPP will know, as Mr. Smith conceded at deposition. Smith Tr. at 136:20-140:17.

**Government entities and government-funded entities exclusions:** In considering Walgreens' arguments, Plaintiffs propose modifying the proposed Class exclusions by specifying: (1) that their exclusion reaches only federal and state government entities and their beneficiaries, except for Part D beneficiaries; and (2) expressly clarifying that the Class *includes* state political subdivisions, such as, for example, cities, towns, municipalities, counties, and school districts, and their beneficiaries. *See* Supp. Guglielmo Decl., Exs. 64 & 65. Both modifications identify objective criteria and, as set forth in Dr. Hilton's rebuttal report, are supported by data. *See* Hilton Rebuttal Rpt., ¶¶13-19. These modifications clarifying the exclusions resolve Walgreens' arguments concerning class membership. Opp. at 48.[16]

## III. THE RULE 23(A) REQUIREMENTS ARE SATISFIED

### A. Walgreens Does Not Contest Numerosity

By its silence, Walgreens concedes that Rule 23(a)(1)'s numerosity requirement is met. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); s*ee also* Mem. at 15.

### B. Walgreens' Challenges to Plaintiffs' Typicality and Adequacy Lack Merit

Plaintiffs' claims are typical of the Class members' claims because Plaintiffs were harmed by the same fraudulent scheme: Walgreens' failure to report or otherwise include PSC prices when determining the U&C price to report for PSC Generics. *See, e.g.*, Guglielmo Decl., Ex. 16 at 59-

---

[16]     Such modifications are entirely appropriate. *Beaton*, 907 F.3d at 1023 ("District courts may amend class definitions either on motion or on their own initiative."); *Schorsch v. Hewlett-Packard Co*., 417 F.3d 748, 750 (7th Cir. 2005) ("[l]itigants and judges regularly modify class definitions"); *Whitney v. Khan*, 330 F.R.D. 172, 175 (N.D. Ill. 2019); *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 615 (N.D. Ill. 2009).

60 (Walgreens' Resp. to RFA No. 95) ("

."). Typicality is "determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). Typicality is defeated only if the defenses threaten to become "a major focus of the litigation." *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974). None of the defenses Walgreens raises have been or will become the focus of the litigation.

### 1. Different Relevant PBMs Do Not Render Plaintiffs Atypical

Reprising its well-worn contract argument, Walgreens argues that no Plaintiff is typical of the entire proposed Class because a Plaintiff's claims purportedly relate only to the contracts that apply to the specific PBM that adjudicated that Plaintiff's claims. Opp. at 36. In other words, according to Walgreens, a Plaintiff whose claims were adjudicated through Optum is not typical of Class members whose claims were adjudicated through any other PBM, or even, in Walgreens' view, through Optum, but for a different time period because the Pharmacy-PBM Contracts differ across PBMs and may apply only to specific time periods. *Id*. at 36-37. Walgreens also argues that because no Plaintiff used MedImpact as its PBM, no certified class can include members with MedImpact as the PBM. *Id*. at 37. Aside from the fact that Walgreens again contorts the legal theory of Plaintiffs' case (as one entirely dependent on contracts), the Ninth Circuit in *Corcoran v. CVS Health Corp*., 779 F. App'x 431, 434 (9th Cir. 2019), rejected this very argument and found that the district court abused its discretion when it narrowed the plaintiffs' proposed classes on typicality grounds by limiting each class to the PBMs that adjudicated each respective class

19

representative's claims. Even if the contracts were integral to Plaintiffs' claims (which as explained *supra* §I, they are not), the Ninth Circuit recognized that the contracts were irrelevant for typicality purposes, explaining:

> While plaintiffs' motion for class certification focused on CVS's agreements with five PBMs, the alleged overall conduct or scheme was the same. That is, plaintiffs alleged that insured CVS customers were charged higher copayments as a result of CVS's failure to report its actual U & C prices in accordance with its agreements with the PBMs. The district court did not identify any meaningful differences in the PBM agreements that would result in the interests of the class representatives being misaligned with those of the absent class members. ***Indeed, CVS reported the same prices to the PBMs notwithstanding any variation in the language of the PBM contracts.*** In other words, CVS's actual reporting to the PBMs underscores the fact that the class representatives' claims are "reasonably coextensive," if not "substantially identical" to the claims of the absent class members.

*Corcoran*, 779 F. App'x at 434. Likewise, here, ███████████████████████████████ ████████████████████████████████████████████████████. Guglielmo Decl., Ex. 17 at 18-19 (Walgreens' Resp. to ROG No. 9); Guglielmo Decl., Ex. 16 at 5-6 (Walgreens' Resp. to RFA No. 28); Guglielmo Decl., Ex. 40. The *Sheet Metal* Court also rejected this argument in certifying the TPP class, where no TPP class representative had Optum or MedImpact as its PBM. *See Sheet Metal*, 540 F. Supp. 3d at 199-200. Because Walgreens' dual-pricing scheme involved uniform conduct, the proposed class representatives' claims "arise from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). Thus, Plaintiffs are typical of the Class they seek to represent, including where MedImpact is a Class member's PBM. *Corcoran*, 779 F. App'x at 434; *Sheet Metal*, 540 F. Supp. 3d at 199-202.

## 2. TPPs and Consumers Are Not Atypical of One Another

Staying on theme, Walgreens contends that the "Individual Plaintiffs . . . cannot represent TPPs and Fund Plaintiffs cannot represent consumers" because "their claims are not typical of each other" since "the consumers' claims and TPPs' claims are governed by different contracts."

Opp. at 37.  As the Ninth Circuit discussed in *Corcoran*, the contracts are irrelevant to typicality

███████████████████████████████████████████████████████████████████████.

Guglielmo Decl., Ex. 17 at 18-19 (Walgreens' Resp. to ROG No. 9); *Corcoran*, 779 F. App'x at

434.  Typicality is satisfied because both consumers and TPPs were subjected to the same unlawful

conduct and suffered the same injury in the form of overpayments.  *See In re Opana ER Antitrust

Litig*., No. 14 C 10150, 2021 WL 3627733, at *2 (N.D. Ill. June 4, 2021) (finding TPP plaintiffs

typical and adequate of class that also included consumers because "both direct consumers and

third-party payors suffered a concrete and financially calculable injury, and, assuming the lawsuit

is successful, both would be entitled to immediate payment"); *In re Solodyn (Minocycline

Hydrochloride) Antitrust Litig*., No. CV 14-MD-02503, 2017 WL 4621777, at *12 (D. Mass. Oct.

16, 2017) (certifying end payer class of consumers and entities because the plaintiffs' "claims arise

from the same unlawful conduct by the Defendants as absent class members and they suffered the

same injury in the form of overpayments . . . satisfying the typicality requirement").

> **3.**     **The Fund Plaintiffs' Claims Are Not Limited to Those Under the
> Laws of Their Home Jurisdictions, and Thus, This Typicality
> Challenge Fails**

Walgreens rehashes its argument that the Fund Plaintiffs cannot assert claims outside their

respective home states as a challenge to the Fund Plaintiffs' typicality.  Opp. at 38-39.  As

discussed (*see infra* §V.A), the Fund Plaintiffs, in fact, do have standing to assert claims based on

prescription drug purchases in states where their beneficiaries reside and purchased PSC Generics

at artificially inflated prices.  *See*, *e.g.*, *Loestrin*, 410 F. Supp. 3d at 368; *In re Flonase Antitrust

Litig*., 692 F. Supp. 2d 524, 533 (E.D. Pa. 2010); *Ferrell v. Wyeth-Ayerst Lab'ys, Inc*., No. C-1-

01-447, 2004 WL 6073010, at *4 (S.D. Ohio June 30, 2004).  Thus, the Fund Plaintiffs' typicality

remains unrebutted.

### 4. Walgreens' Defenses Based on Plaintiffs' Continued Patronage Do Not Defeat Plaintiffs' Typicality and Adequacy

Walgreens argues that Plaintiffs are not typical or adequate because they continued to purchase, or allowed their beneficiaries to purchase, prescription drugs from Walgreens after learning that Walgreens did not report or otherwise include its PSC prices when determining the U&C price to report "even though they [purportedly] did not have to," subjecting them to failure to mitigate and voluntary payment defenses for consumer fraud and unjust enrichment claims. Opp. at 39-40. Walgreens further contends that it is unlikely that Plaintiffs can prove reliance, causation, and/or materiality where required for their consumer fraud claims or unjust enrichment, further supporting that Plaintiffs are atypical and inadequate. *Id*. at 41.

Walgreens makes no attempt to explain why its actual-knowledge defense is "likely to usurp a significant portion of [Plaintiffs'] time and energy, distracting [them] from representing the interests of other class members." *Clark v. Retrieval Masters Creditors Bureau, Inc.*, 185 F.R.D. 247, 249 (N.D. Ill. 1999). Even if TPP knowledge were an issue, that alone does not foreclose class certification and would be manageable. *Sheet Metal*, 540 F. Supp. 3d at 202 ("[T]he Court disagrees that any purported actual knowledge of the HSP pricing scheme on the part of the named Plaintiffs renders them inadequate or atypical class representatives."); *see also id.* at 209-11.

Walgreens' "actual knowledge" defense is far from clear. The voluntary payment doctrine only bars claims where there is "full knowledge of the facts by the person making the payment." *Illinois Graphics Co. v. Nickum*, 639 N.E.2d 1282, 1295 (Ill. 1994). It is an admitted fact in this litigation that Walgreens "████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████.” Supp. Guglielmo Decl., Ex 66. (Walgreens' Resp. to RFA No. 15).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

Supp. Guglielmo Decl., Ex. 72 at 132:10-25 ("█████████████████████████████████

████████████ . . . ."); *cf. Corcoran*, 2017 WL 3873709, at *7 ("Putative class members likely did not understand the relationship between the pharmacy's U&C and what the pharmacy charges them, which may be at times less than or more than the HSP program prices."). Regardless, as Walgreens asserts the defense against nearly every Plaintiff, Opp. at App'x B, "it is not entirely clear either defense will be atypical." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 39 (E.D.N.Y. 2008) ("Thus, far from being atypical, the voluntary payment doctrine issue may be common to numerous class members.").

Further, there is no evidence that Plaintiffs or Class members had reasonably practical and economical alternatives while preserving important continuity of care healthcare objectives. Thus, the continuing purchase and voluntary payment cases Walgreens cites are a far cry from ongoing purchases of medically necessary drugs from an established pharmacist with whom the patient has a relationship and a prescription history. In sum, a patient who acts in a medically prudent manner to preserve his or her continuity of care, while at the same time filing a lawsuit to seek redress for the pharmacy's overpricing practice, should not be penalized. Plaintiffs and Class members had no actual or constructive notice of the overcharges prior to making their first purchases. Once deceived, Plaintiffs should not be required to stop purchasing their medications or switch pharmacies. *Gutierrez v. Wells Fargo Bank, NA,*, 704 F.3d 712, 729 (9th Cir. 2012) (distinguishing between discretionary and non-discretionary purchases). Plaintiffs' decisions to continue making

non-discretionary purchases does not negate their reliance on Walgreens' representation that they were receiving an accurate price when they made those purchases. *See Boswell v. Costco Wholesale Corp*., No. SACV160278DOCDFMX, 2016 WL 3360701, at *5 (C.D. Cal. June 6, 2016) ("[E]ven if Plaintiffs still would have purchased the product, but would not have paid as much, "the extra money paid . . . is economic injury and affords the consumer standing to sue.").

### 5.     IBEW Is Not Subject to Unique Defenses

Walgreens contends that IBEW knew that it was not receiving PSC prices as early as 2008, and thus, is subject to unique defenses and is not typical or adequate. Opp. at 42-43. This argument, however, rests on the faulty premise that the PSC is the same as a discount card. A prescription drug discount card, like the one Sav-Rx offered or like GoodRx, can be used in any pharmacy. "███████████████████████████████████████████████████████████████████████████████████████." Supp. Guglielmo Decl., Ex. 73 at 102:25-104:14. In contrast to discount cards, Walgreens set its own discount prices through the PSC, *id.*, and those prices were its U&C prices. Schafermeyer Rpt., ¶¶31-32, 127-179; *see also supra* §I.B. Thus, this argument fails because the PSC, which Walgreens used as a shield to protect its U&C prices, Schafermeyer Rpt., ¶¶112-117, 142-179, 191, is not comparable to the Sav-Rx discount card, and whether IBEW knew the Sav-Rx discount card offered a discount off of U&C is irrelevant to whether Walgreens should have reported or otherwise included its PSC prices when determining the U&C price to report. Importantly, IBEW's Fund Administrator Edward Fox testified that IBEW did not know that Walgreens was not reporting its PSC prices as U&C prices. Supp. Guglielmo Decl., Ex. 76 at 118:19-24 & 177:17-178:4. Walgreens offers nothing to demonstrate that any knowledge on the part of the Segal Group, IBEW's outside benefits consultant and actuary, is imputable to the health plan. *Sheet Metal*, 540 F. Supp. 3d at 209. Thus, IBEW remains both typical and adequate. *Id.* at 202 ("[T]he Court disagrees that any purported actual knowledge of the HSP pricing scheme on

the part of the named Plaintiffs renders them inadequate or atypical class representatives.").

### 6. Walgreens Fails to Rebut that Cynthia Russo Is Typical of the Florida Class

Walgreens asserts two invalid reasons that Ms. Russo is atypical. First, Walgreens claims one of Ms. Russo's two transactions (on April 21, 2011) is through Argus, a PBM that is not a Relevant PBM. Opp. at 43. As explained in Dr. Hilton's rebuttal report, ███████████████████ ████████████████████████████████████. Hilton Rebuttal Rpt., ¶20 & n.31. Second, Walgreens claims Ms. Russo purportedly has no damages associated with her second qualifying transaction on April 27, 2011. Opp. at 43-44. Walgreens, however, doesn't actually dispute that Ms. Russo paid more than the PSC price for this transaction. *Id.* Instead, Walgreens claims that Ms. Russo's damages for this transaction are negated when the per-transaction PSC membership fee amount is added to the PSC price. As discussed above, adding in the illusory PSC membership fee is inappropriate and should not be used to defeat class membership. *See supra* §I.C.5.[17] Walgreens thus fails to demonstrate that Ms. Russo is atypical of the Florida class.

### 7. Walgreens Fails to Rebut that Ricardo Gonzales Is Typical of the Wisconsin Class

Walgreens argues that Mr. Gonzales is not typical because he is subject to a class exclusion, did not ever make a purchase in Arizona, and purportedly has no damages in Wisconsin. Opp. at 44-47.

As discussed, Plaintiffs have proposed a modified class definition which clarifies that Mr.

---

[17]      Even if the Court were to find Ms. Russo to be atypical of the Florida class, each of the Fund Plaintiffs is still a suitable Florida class representative. Walgreens argues that no other Individual Plaintiff (as opposed to a Fund Plaintiff) can act as a Florida class representative, and thus, there can be no consumer class or subclass under FDUTPA. Opp. at 44. Walgreens repeats this argument as to Mr. Gonzales. *Id.* at 45-46 (Arizona). As explained above, this is incorrect. *See supra* §III.B.2. Thus, a class or subclass under Florida law with the Fund Plaintiffs as the class representatives and under Arizona law with Steamfitters as the class representative remains viable.

Gonzales is not subject to a class exclusion. *See supra* §II. Plaintiffs concede that Mr. Gonzales was not overcharged in Arizona.[18] Walgreens, however, does not dispute that Mr. Gonzales paid more than the PSC price for a generic drug transaction. Opp. at 46 ███████████████████████████ ██████████████████████████████████████████.”). In the same way as with Ms. Russo, Walgreens' claims that Mr. Gonzales' damages for the Wisconsin transaction are negated when the per-transaction PSC membership fee amount is added to the PSC price. As discussed, adding in the illusory PSC membership fee is inappropriate and should not be used to defeat class membership at this time. *See supra* §I.C.5. Walgreens thus fails to demonstrate that Mr. Gonzales is atypical of the Wisconsin class members. Further, as set forth in Dr. Hilton's rebuttal report, Dr. Hilton has also identified overcharges in Wisconsin associated with IBEW, which can alternatively serve as a representative for Wisconsin class members. Hilton Rebuttal Rpt., Exs. 3C & 3D.

### 8. No Intraclass Conflicts Exist, and Thus, Adequacy Is Satisfied

Walgreens contends a conflict exists between consumers and TPPs because any overpayment must be apportioned between them for each transaction and because Walgreens claims that Fund Plaintiffs "have no incentive to determine a proper division between a health plan and health insurer when both types of TPPs are on a single transaction." Opp. at 37-38 & n.32.

It is hornbook class action law that "potential conflicts over the distribution of damages—which would arise only if the plaintiffs succeed in showing liability on a class-wide basis—will not bar a finding of adequacy at the class certification stage." 1 Newberg and Rubenstein on Class Actions §3:58 (6th ed.); *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 609-10 (7th Cir. 2021). Walgreens can claim "'no interest in the method of distributing the aggregate damages award

---

[18]    As Dr. Hilton explains in her rebuttal report, and as Mr. Smith testified, Walgreens will be able to identify which of its stores are fulfillment centers. Hilton Rebuttal Rpt, ¶22 n.32; Smith Tr. at 75:24-79:10.

among the class members.'" *Mullins*, 795 F.3d at 670. At most, Walgreens' claims are hypothetical and speculative and do not defeat adequacy. *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009) (affirming class certification where the existence of conflicts of interest was "hypothetical"); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012). Only "fundamental" conflicts that "go to the heart of the litigation" render a class representative inadequate. Newberg on Class Actions §3:58 at 341-42.

Other courts have considered and rejected objections similar to Walgreens' argument here. For example, one court specifically rejected Dr. Hughes' position that "certain class members did not suffer any damages, and that it will be too difficult to allocate damages because various entities pay different portions of the purchase price of prescriptions" in its adequacy analysis and concluded that "potential issues with the damages allocation are but weak indicators of existing conflicts of interest between the named representative plaintiffs and the remaining class members." *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 173 (D. Mass. 2013), *aff'd In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015).

In *In re Lidoderm Antitrust Litig.*, No. 14-md-2521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017), the defendants asserted that the amount of overcharge damages would need to be assigned between TPPs and consumers, "putting the parties into conflict over who gets what recovery." *Id.*, at *26. The court found the defendants had not shown the alleged conflict "would permeate the aggregate damages calculation," and that the claims mechanisms could be used to resolve any conflict "between, for example, an end payor consumer and her health insurance plan over how their overcharge damages should be split." *Id.*

Likewise, in *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-

02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017), the defendants challenged the end payers'
showing of adequacy of representation, claiming third-party insurers and consumers are
fundamentally different groups. *Id*., at *12. The court rejected this argument, finding those parties
shared a common goal. Each wanted to show they all were injured in the same way by overcharges,
and through the same illegal conduct by the defendants. *Id*. This "alignment of incentives" was
sufficient to overcome the conflict challenge. *Id*. Also, the defendants argued that class members
would compete with one another for damage shares. *Id*., at *13. Citing *Lidoderm*, the court
concluded it could address this issue, if necessary, when damages were allocated. *Id*.

## IV. THE RULE 23(B)(2) REQUIREMENTS ARE SATISFIED

### A. Plaintiffs Have Article III Standing to Seek Equitable Relief

Walgreens argues that each Plaintiff lacks Article III standing to pursue equitable relief.
Opp. at 49-50. Walgreens made this same argument in support of its motion to dismiss,
Memorandum Opinion and Order, ECF No. 91 (Nov. 9, 2018), at 32, which the Court rejected as
to Plaintiffs Cynthia Russo and Lisa Bullard because they were Medicare recipients and, at the
time, were therefore ineligible to enroll in the PSC. *Id*. at 33-34. The Court also held that IBEW
had standing to pursue equitable relief. *Id*. at 34-35.[19] Walgreens argues that Plaintiffs Russo and
Bullard now lack standing because: (i) Medicare-covered individuals can join the PSC; (ii) Ms.
Russo no longer uses Walgreens as her pharmacy; and (iii) Ms. Bullard purportedly can use other
pharmacies and the PSC no longer is offered in Massachusetts, where she resides. Opp. at 49-
50.[20] Similarly, Walgreens argues the Fund Plaintiffs lack standing because each could have

---

[19] Plaintiffs IUOE and Steamfitters were not part of the case when the Court ruled on this motion, but
under the Court's rationale both also would have Article III standing to pursue injunctive relief.

[20] In a footnote, Walgreens contends that it is Ms. Russo who lacks standing because Walgreens no
longer offers the PSC in Massachusetts. Opp. at 50 n.41. It is Ms. Bullard, not Ms. Russo, who lives in
Massachusetts. Supp. Guglielmo Decl., Ex. 74 ("Russo Tr.") at 22:15-25; Supp. Guglielmo Decl., Ex. 75

removed Walgreens as a network pharmacy but chose not to do so. *Id*. at 50.

In consumer fraud class actions, courts in this Circuit have held that a plaintiff has Article III standing to seek equitable relief where it is plausible that the plaintiff will purchase the product at issue again. *See, e.g.*, *Curran v. Bayer Healthcare LLC*, No. 17 C 7930, 2019 WL 398685, at *5 (N.D. Ill. Jan. 31, 2019) (finding plaintiff alleged future harm sufficiently by expressing continued desire to purchase product if assured correct SPF rating is stated on packaging) (interpreting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734-35 (7th Cir. 2014)); ECF No. 91 at 33-35. Here, Plaintiffs (and their beneficiaries) cannot know for any given transaction whether they will be overcharged. *See* §III.B.4, *supra*. And, as explained above, these are non-discretionary purchases, and thus, Class members, most of whom are likely unaware of the overcharges, undoubtedly will continue to purchase. *See id*. Moreover, Ms. Russo no longer uses Walgreens because it is not the preferred pharmacy under her health plan. Supp. Guglielmo Decl., Ex. 74 at 75:12-76:8, 83:5-11; 117:14-118:1. If Walgreens is a preferred pharmacy for a future health plan, she will use Walgreens. *Id*. at 89:6-9; 101:2-23; 118:2-7. While Walgreens may no longer offer the PSC in Massachusetts, Ms. Bullard continues to use Walgreens and Walgreens has provided no evidence that the PSC will not be offered in Massachusetts in the future. Guglielmo Decl., Ex. 18 (Walgreens' Resp. to ROG No. 21).[21]

Moreover, the Supreme Court has recognized an exception to the mootness doctrine in the context of class actions where it is "'by no means certain that any given individual, . . . would be [subject to the unlawful conduct] long enough for a district judge to certify the class." *Robinson*

---

(Bullard Tr.) at 18:2-4. Because the Court may *sua sponte* address Article III standing, *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 887 (7th Cir. 2001), Plaintiffs will address Walgreens' argument as if it were made as to Ms. Bullard.

[21] Because Plaintiffs have satisfied the requirements of Rule 23(b)(2), *Van v. Ford Motor Co.*, 332 F.R.D. 249, 292 (N.D. Ill. 2019), is of no moment.

*v. City of Chic.*, 868 F.2d 959, 968 (7th Cir. 1989). The Supreme Court has recognized that when the time frame for the alleged injury is by nature temporary, a named plaintiff can continue to pursue the interests of the class even after his own claim has been rendered moot. *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). For example, one court in this District, recognizing that an individual's claim in a consumer fraud case is easily mooted, has held that "when [such a] plaintiff represents class members who may later discover the defendants' fraud, her claim is 'capable of repetition,' and she may pursue her claim for injunctive relief despite loss of her personal stake." *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 706 (N.D. Ill. 2020), *aff'd*, 37 F.4th 1326 (7th Cir. 2022). In order for the mootness exception to apply, a court still requires the named plaintiff to have a live claim at the time that the complaint was filed. *See Sosna v. Iowa*, 419 U.S. 393, 402 (1975); *Robinson*, 868 F.2d at 968 ("[A] representative's claim must at least be live when he files the case."). Plaintiffs here have met this exception to the mootness doctrine. As Walgreens concedes, at the time that Plaintiffs Russo and Bullard joined this lawsuit, they possessed live claims for prospective equitable relief, and thus, may pursue claims for equitable relief on behalf of the Class. ECF No. 91 at 33. *See, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017).

**B.     The Court Can Certify a Rule 23(b)(2) Class and *Also* a Rule 23(b)(3) Class**

Plaintiffs move for hybrid certification pursuant to both Rule 23(b)(2) and (3). A hybrid class action is one in which the court certifies "a Rule 23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages." *Lemon v. Int'l Union of Operating Eng'rs, Loc. No. 139*, 216 F.3d 577, 581 (7th Cir. 2000). To certify a hybrid class, Plaintiffs must satisfy both Rule 23(b)(2) and (b)(3). *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 470 (N.D. Ill. 2009), *aff'd*, 675 F.3d 709 (7th Cir. 2012). The Seventh Circuit has indicated its approval of separate certification of damages and injunctive relief

30

classes. *See, e.g.*, *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 443 (7th Cir. 2015); *Lemon*, 216 F.3d at 581; *Johnson*, 702 F.3d at 371.

Plaintiffs emphasize that the class they seek to certify under Rule 23(b)(2) seeks no monetary damages; that form of relief is sought only pursuant to Rule 23(b)(3). *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 174 (S.D.N.Y. 2011) ("[A] (b)(2) class is not seeking monetary relief, but only an injunction against further statutory violations. It is a separately certified (b)(3) class that seeks money damages."). Thus, because the Rule 23(b)(2) class asks only for a single injunction that applies generally to the class and there are Plaintiffs with standing to represent the class, certification is proper under Rule 23(b)(2). *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-CV-01610, 2023 WL 2683199, at *23 (N.D. Ill. Mar. 29, 2023); *In re Stericycle, Inc.*, No. 13 C 5795, 2017 WL 635142, at *8 (N.D. Ill. Feb. 16, 2017).

## V.    EACH OF WALGREENS' "STANDING" ARGUMENTS FAILS

Walgreens raises illusory statutory standing arguments, each of which fails. Opp. at 7-9. IUOE and IBEW have standing to bring claims in Connecticut and North Carolina, respectively, where their beneficiaries reside and purchased PSC Generics at artificially inflated prices. Additionally, Walgreens' ODTPA challenge is a merits-based attack that is inappropriate for consideration at class certification, and in any event, IBEW satisfies the ODTPA elements.

### A.    The Fund Plaintiffs Are Injured Where Their Beneficiaries Reside, and Thus, Walgreens' Statutory Standing Arguments Are Meritless

Courts commonly hold that TPPs, like Fund Plaintiffs, have Article III standing to assert claims based on prescription drug purchases in states where their beneficiaries reside. *See*, *e.g.*, *Loestrin*, 410 F. Supp. 3d at 368 ("[T]he named TPPs allege injury, and thus have standing, in states where they purchased the drugs at issue and/or reimbursed their members for purchases of the drugs at issue."); *Flonase*, 692 F. Supp. 2d at 532-33 (same, finding TPP standing for

NCUDTPA claim); *Ferrell*, 2004 WL 6073010, at \*4 (same).  The majority of courts have rejected Walgreens' argument that choice-of-law principles limit a TPP's claim to those under the law of the state where the TPP is headquartered.  *See Loestrin*, 410 F. Supp. 3d at 368 n.12.

Walgreens contends that IUOE's CUTPA claim can only be brought by persons "'who are residents of this state or injured in this state.'"  Opp. at 8.  Walgreens misstates Connecticut law. Contrary to Walgreens' contention, CUTPA states that "*[a]ny person* who suffers any ascertainable loss of money . . . as a result of the use or employment of a method, act or practice prohibited by [this statute], may bring an action . . . to recover actual damages."  Conn. Gen. Stat. Ann. §42-110g(a).[22]  CUTPA then limits the scope of the class that such a person can represent:

> Persons entitled to bring an action under subsection (a) of this section may . . . bring a class action on behalf of themselves and other persons similarly situated who are residents of this state or injured in this state to recover damages.

Conn. Gen. Stat. Ann. §42-110g(b).  As a person entitled to sue under CUTPA, IUOE may represent similarly situated persons who are residents of or are injured in Connecticut, which is exactly what IUOE seeks to do.  Mem. at 3 n.2.  Walgreens' cited cases are inapposite because, unlike IUOE, the out-of-state plaintiffs brought a CUTPA claim against an in-state defendant and sought to represent a *nationwide* class.  Opp. at 8 (citing *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 502 (D. Conn. 2015) (class defined as "[a]ll persons in the United States"); *Chapman v. Priceline Grp., Inc.*, No. 3:15-CV-1519(RNC), 2017 WL 4366716, at \*2 (D. Conn. Sept. 30, 2017) (class defined as "'[a]ll natural persons in the United States of America'")).[23]

---

[22]     Under CUTPA, a "'[p]erson' means a . . . trust, . . . and any other legal entity."  Conn. Gen. Stat. Ann. §42-110a(3).  Walgreens does not dispute that IUOE, as a trust (Fourth Amended Cpt., ECF No. 477, ¶31), is a "person" entitled to bring suit.

[23]     Even if IUOE were attempting to represent a broader class, "Rule 23 supersedes CUTPA's class-action provision and permits [p]laintiffs to bring their CUTPA claims in a representative capacity."  *Ace Tree Surgery, Inc. v. Terex Corp.*, No. 1:16-CV-0775-SCJ, 2018 WL 11350262, at \*15 (N.D. Ga. Dec. 10,

Walgreens also argues that IBEW, as a non-resident of North Carolina, cannot bring a claim under the NCUDTPA because it did not make a purchase of a drug in North Carolina (its beneficiaries did). Opp. at 8-9. A TPP has standing to sue where its beneficiaries reside and purchase PSC Generics at artificially inflated prices. *See*, *e.g.*, *Loestrin*., 410 F. Supp. 3d at 368. Whether a non-resident plaintiff can state a claim under the NCUDTPA turns on whether "the injuries have a 'substantial in-state effect on North Carolina trade or commerce.'" *Flonase*, 692 F. Supp. 2d at 540-41 (holding non-resident TPP satisfied the substantial in-state effects requirement where significant quantity of drug was sold in North Carolina at artificially inflated prices). Here, as Walgreens concedes in its argument, Plaintiffs' evidence demonstrates that Walgreens overcharged consumers (who are IBEW's beneficiaries) in North Carolina, Hilton Rpt., Ex. 3C, which constitutes the substantial in-state effect the NCUDTPA requires.

## B. Walgreens' Merits-Based Attack on IBEW's ODTPA Claim Is an Inappropriate Challenge at Class Certification

Walgreens' challenge to IBEW's "standing" to bring an ODTPA claim is a thinly veiled attack on whether IBEW can satisfy the elements of an ODTPA claim. The Seventh Circuit plainly eschews merits determinations at the class certification stage. *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 604 (7th Cir. 2020) ("At class certification, the issue is not whether plaintiffs will be able to prove these elements on the merits, but only whether their proof will be common for all plaintiffs, win or lose."). The Court should thus reject this argument on this basis alone.

Walgreens claims that the ODTPA requires a showing of "injury to a commercial interest in reputation or sales" and that IBEW has failed to present any such evidence. Opp. at 9. This argument fails for two reasons. First, Ohio law does not interpret injury under the ODTPA so

---

2018). Section 42-110g(b)'s procedural restriction does not substantively define who can assert a CUTPA claim but restricts the size of classes in Connecticut state courts. Rule 23 thus supersedes Section 42-110g(b) in federal court.

narrowly. A plaintiff "need only establish an injury that was proximately caused by a person who commits a deceptive trade practice" listed in the ODTPA. *Torrance v. Rom*, 157 N.E.3d 172, 189 (Ohio Ct. App. 2020). Plaintiffs' expert evidence establishes both proximate causation and injury. Hilton Rpt., Ex. 3C; Hilton Rebuttal Rpt., Ex. 3C; *see generally* Schafermeyer Rpt. Second, even if injury to a commercial interest is required, IBEW meets this standard. IBEW, as a TPP, has overpaid for Walgreens' PSC Generics and would not have done so but for Walgreens' alleged misrepresentations. Hilton Rpt., Ex. 3C; Hilton Rebuttal Rpt., Ex. 3C. Thus, IBEW has commercial interests that were directly injured by Walgreens, satisfying this standard. *See MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, No. CV1921607FLWZNQ, 2021 WL 2177548, at *15 (D.N.J. May 28, 2021) (denying motion to dismiss ODTPA claim where plaintiff (an entity assigned recovery rights by TPPs) alleged scheme to artificially inflate drug prices); *State v. Dey, Inc.*, No. A0402047, 2005 WL 6294429 (Ohio C.P. Hamilton Cnty. June 13, 2005) (denying motion to dismiss ODTPA claim based on overpriced drugs).[24]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion, certify the Class and Subclasses with the modified exclusions, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

Dated: June 20, 2023

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (IL Bar #2759819)
Carey Alexander (IL Bar #5188461)
Amanda M. Rolon (*admitted pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor

---

[24] *McCleese v. Natorp's, Inc.*, is factually inapposite. No. 1:20-CV-118, 2021 WL 2270511, at *4 (S.D. Ohio June 3, 2021) (plaintiff conceded that he "'does not license his photos for any commercial purpose, does not sell copies of his photos, and his photos are unpublished,'" and thus, could not establish any commercial injury when those photos allegedly were infringed).

New York, NY 10169
Telephone: (212) 223-4478
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com
arolon@scott-scott.com

Erin Green Comite (IL Bar #420630)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 531-2632
Facsimile: (860) 537-4432
ecomite@scott-scott.com

David W. Mitchell (IL Bar #199706)
Arthur L. Shingler III (IL Bar # 181719)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
davidm@rgrdlaw.com
ashingler@rgrdlaw.com

Mark J. Dearman (IL Bar #0982407)
Stuart A. Davidson (IL Bar #084824)
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com

*Interim Co-Lead Counsel*

Katrina Carroll (IL Bar #6291405)
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
katrina@lcllp.com

*Local Counsel*

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically through the Court's Electronic Case Filing System, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

<u>*/s/ Joseph P. Guglielmo*</u>
Joseph P. Guglielmo