**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>      Plaintiffs,<br><br> v.<br><br>WALGREEN CO.,<br><br>      Defendant. | Civil No. 1:17-cv-02246<br><br>Judge Edmond E. Chang<br><br>Magistrate Judge Sheila Finnegan |

**MOTION TO EXCLUDE MICHAEL S. JACOBS' EXPERT REPORT AND TESTIMONY UNDER FEDERAL RULE OF EVIDENCE 702**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1
BACKGROUND ............................................................................................................................ 2
LEGAL STANDARDS .................................................................................................................. 3
ARGUMENT .................................................................................................................................. 4
    I.      Mr. Jacobs' Opinions Regarding Questions of Law Should be Stricken and Excluded ................................................................................................................ 4
    II.     Mr. Jacobs' Analysis of *Garbe* Should be Excluded ............................................. 8
    III.    Mr. Jacobs' Opinions Contradict the Seventh Circuit's Decision in *Garbe* .......... 9
    IV.    Mr. Jacobs Opinion of the Industry Understanding as to the Meaning of the U&C Price Is Unreliable as He Ignored Necessary Materials ....................... 10
CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   133 S. Ct. 1184 (2013) ..................................................................................................10

*Bailey v. Ramos*,
   No. 20-cv-00466-XR, 2022 WL 17658641 (W.D. Tex. Nov. 21, 2022) ...................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ......................................................................................................3

*Fox v. Admiral Ins. Co.*,
   No. 12-cv-8740, 2016 WL 6476461 (N.D. Ill. Nov. 2, 2016) ..................................................4

*Frye v. Hamilton Cty. Hosp.*,
   No. 18-cv-3031-CJW-MAR, 2019 WL 2404330 (N.D. Iowa June 7, 2019) ............................8

*United States ex rel Garbe v. Kmart*,
   73 F. Supp. 3d 1002 (S.D. Ill. 2014) *aff'd in part rev'd in part* 824 F3d 632
   (7th Cir. 2016) ..............................................................................................................8

*United States ex rel Garbe v. Kmart*,
   824 F.3d 632 (7th Cir. 2016) ................................................................................1, 8, 9

*Good Shepherd Manor Found., Inc. v. City of Momence*,
   323 F.3d 557 (7th Cir. 2003) .........................................................................................3

*In re Dealer Management Systems Antitrust Litigation*,
   581 F. Supp. 3d 1029 (N.D. Ill. 2022) ...........................................................................9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ......................................................................................................3

*Morris v. Ford Motor Co.*,
   No. 10-cv-504, 2012 WL 5947753 (N.D. Ind. Nov. 28, 2012) ................................................8

*RLJCS Enters., Inc. v. Pro. Benefit Tr. Multiple Emp. Welfare Benefit Plan & Tr.*,
   487 F.3d 494 (7th Cir. 2007) .........................................................................................4

*Segerdahl Corp. v. Ferruzza*,
   No. 17-cv-3015, 2023 WL 2161774 (N.D. Ill. Feb. 22, 2023) ..............................................10

*Timm v. Goodyear Dunlop Tires N. Am., Ltd.*,
   932 F.3d 986 (7th Cir. 2019) .......................................................................................10

*Tyson Foods, Inc. v. Bouaphakeo*,
 136 S. Ct. 1036 (2016) ...................................................................................................10

*United Specialty Ins. Co. v. Dorn Homes Inc.*,
 No. 18-cv-08092-PCT MTL, 2020 WL 4464400 (D. Ariz. Aug. 4, 2020) ...............................8

*United States v. Diekhoff*,
 535 F.3d 611 (7th Cir. 2008) ...........................................................................................3

*United States v. Lupton*,
 620 F.3d 790 (7th Cir. 2010) ...........................................................................................4

*United States v. Sinclair*,
 74 F.3d 753 (7th Cir. 1996) .............................................................................................3

*United States v. Supervalu, Inc.*,
 No. 11-3290, 2019 WL 6310222 (C.D. Ill. Nov. 25, 2019) .........................................................9

*United States v. Z Inv. Props., LLC*,
 No. 17-cv-4405, 2018 WL 1610264 (N.D. Ill. Apr. 3, 2018) ...................................................3

**Statutes, Rules & Regulations**

FED. R. EVID. 702 ..............................................................................................................1, 3

Plaintiffs Cynthia Russo, Lisa Bullard, Ricardo Gonzales, International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund, International Union of Operating Engineers Local 295-295C Welfare Fund and Steamfitters Fund Local 439 (collectively "Plaintiffs") respectfully submit this memorandum of law in support of their Motion to Exclude Michael S. Jacobs' Expert Report and Testimony Under Federal Rule of Evidence 702.

## INTRODUCTION

Michael Jacobs holds a bachelor's degree in pharmacy and was a licensed pharmacist until surrendering his license nine years ago. Yet, he spends the majority of his report interpreting the meaning of contracts between Walgreen Co. ("Walgreens") and various pharmacy benefit managers ("PBMs"). His reason for doing so is to provide his opinion on the ultimate issue in this case, namely whether Walgreens was obligated to report or otherwise include its Prescription Savings Club ("PSC") prices when determining the usual and customary ("U&C") price to report for PSC Generics. Because Mr. Jacobs admitted that he is not offering legal opinions, nor could he, his opinions and legal analyses of Walgreens' PBM contracts must be excluded. Jacobs Rpt.,[1] ¶¶10, 12 & §§V.C., V.E.

Similarly inappropriate is Mr. Jacobs' opinions concerning the meaning and scope of the Seventh Circuit's decision in *United States ex rel Garbe v. Kmart*, 824 F.3d 632 (7th Cir. 2016). Jacobs Rpt., §V.D.4. Worse still, Mr. Jacobs misapprehends *Garbe*, which commands that Walgreens report or otherwise include its PSC prices when determining the U&C prices for PSC Generics purchased by Medicare Part D beneficiaries like Plaintiffs Russo and Bullard and similarly situated Class members.

---

[1] Declaration of Michael S. Leib in Support of Defendant Walgreen Co.'s Opposition to Plaintiffs' Motion for Class Certification, ECF 588 (Mar. 17, 2023), Ex. 2 ("Jacobs Rpt.").

1

When Mr. Jacobs is not providing legal opinions and analyses as to Walgreens' contracts or interpreting case law or federal statutes to opine on the ultimate issues in this case, he purports to opine on industry standards regarding the meaning of the U&C price. Those opinions should also be excluded and stricken. Mr. Jacobs selectively and inappropriately defines the "industry" to include *only* retail pharmacies and PBMs, excluding health insurers, third-party payors, government payors, and consumers. In fact, Mr. Jacobs admitted that he failed to review, or even consider, information central to establishing the industry standards. For example, he failed to consider whether other retail pharmacies treat their discount "club" prices as U&C prices, ignored the retail pharmacy industry group's position on whether discount club prices are U&C prices, and selectively ignored PBM manuals reaching the same conclusion. And, even though various federal and state regulators have determined that Walgreens should have reported or otherwise included its PSC prices when determining the U&C prices to report for PSC drugs, Mr. Jacobs did not review or consider those opinions in forming his view of the industry standards. In addition, Mr. Jacobs' understanding of the industry and the opinions he offers are not the subject of rigorous analysis and amount to little more than speculation. What remains are his views on the purpose of insurance and the role of PBMs. Save for those narrow opinions, his report and opinions should be stricken and excluded as inadmissible.

## BACKGROUND

Mr. Jacobs was retained by Reed Smith as a consulting expert in 2019, and in 2023 was tasked with crafting an expert report to opine on Walgreens' compliance with its PBM agreements. During his deposition, Mr. Jacobs admitted that the central purpose of his engagement was to provide opinion of Walgreens' PBM agreements and whether they required, under law, to include

PSC prices: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Jacobs Tr.[2] at 153:20-21.

## **LEGAL STANDARDS**

"[T]he Rules of Evidence—especially Rule 702—[] assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). To be admissible, expert testimony must (1) "help the trier of fact to understand the evidence or to determine a fact in issue," (2) be "based on sufficient facts or data," (3) be "the product of reliable principles and methods," and (4) "reliably appl[y] the principles and methods to the facts to the facts of the case." FED. R. EVID. 702. The Court's "'gatekeeping' obligation" "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) (citing FED. R. EVID. 702).

An expert may not provide legal opinions or conclusions on the ultimate issue of liability, a task entrusted to the expertise of the Court. *United States v. Sinclair*, 74 F.3d 753, 758, n.1 (7th Cir. 1996) (noting that FED. R. EVID. 702 and 704 "prohibit experts from offering opinions about legal issues that will determine the outcome of a case"); *see also United States v. Diekhoff*, 535 F.3d 611, 619 (7th Cir. 2008) ("This kind of testimony would involve a legal conclusion (or more accurately a fact-law conclusion), and experts cannot make those."). An expert is not permitted to offer opinions on the ultimate issue to be decided by the jury. *See Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *United States v. Z Inv. Props., LLC*, No. 17-cv-4405, 2018 WL 1610264, at *3 (N.D. Ill. Apr. 3, 2018) ("Expert testimony 'as to legal

---

[2] Supplemental Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification ("Supp. Guglielmo Decl."), Ex. 71 ("Jacobs Tr."). Unless otherwise indicated, emphasis is added and citations are omitted.

3

conclusions that will determine the outcome of the case' is categorically inadmissible.") (quoting *Good Shepard*, 323 F.3d at 564).

## ARGUMENT

### I. MR. JACOBS' OPINIONS REGARDING QUESTIONS OF LAW SHOULD BE STRICKEN AND EXCLUDED

The prohibition on providing legal opinions in expert reports includes interpreting the meaning, scope, or application of contracts. *United States v. Lupton*, 620 F.3d 790, 799 (7th Cir. 2010) ("[T]he meaning of statutes, regulations, and contract terms is 'a subject for the court, not for testimonial experts. The only legal expert in a federal courtroom is the judge.'") (quoting *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008)); *RLJCS Enters., Inc. v. Pro. Benefit Tr. Multiple Emp. Welfare Benefit Plan & Tr.*, 487 F.3d 494, 498 (7th Cir. 2007) ("Argument about the meaning of . . . contracts . . . belongs in briefs, not in 'experts' reports'"); *Fox v. Admiral Ins. Co.*, No. 12-cv-8740, 2016 WL 6476461, at *2 (N.D. Ill. Nov. 2, 2016).

Mr. Jacobs was tasked to determine whether: "Walgreens complied with the U&C provisions of its agreements with the PBMs at issue in this case . . . ." Jacobs Rpt., ¶3.C; *see also* Jacobs Tr. at 74:13-18 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Spanning over twenty pages of his report, he proceeds to analyze the meaning and application of the terms of sixteen different agreements between Walgreens and various PBMs. Jacobs Rpt., §V.C (¶¶48-65), §V.E (¶¶82-86) and App'x. A.

He offers the following summary opinions, before reviewing the contracts separately:

- "[I]t is my opinion that the terms in the agreements required Walgreens to report its retail prices, not its PSC prices, as its U&C prices to the Relevant PBMs." *Id.*, ¶10;

4

- "[T]he U&C definitions set forth in Walgreens' agreements with the Relevant PBMs do not require Walgreens to report prices available through membership clubs like PSC to the Relevant PBMs when submitting claims." *Id.*, ¶12;

- "[T]he U&C definitions in Walgreens' PBM agreements at issue in this case did not seek to capture membership club prices, and instead sought Walgreens' retail prices as U&C prices." *Id.*, ¶48; and

- "[I]n the event of a conflict between a provision of a pharmacy-PBM agreement and a provision of a PBM manual, the provision of the pharmacy-PBM agreement takes precedence." *Id.,* ¶82.

In Section V.C. and Appendix A, Mr. Jacobs analyzes Walgreens' PBM contractual terms defining U&C pricing, and then provides his opinion as to their meaning and application:

| Citation (Jacobs Rpt.): | Contract Analyzed: | Legal Opinions: |
|---|---|---|
| ¶49 | ■■■ | ■■■ |
| ¶50 | ■■■ | ■■■ |
| ¶51 | ■■■ | ■■■ |
| ¶52 | ■■■ | ■■■ |
| ¶53 | ■■■ | ■■■ |
| ¶54 | ■■■ | ■■■ |

5





| ¶63 | | | |
| ¶64 | | | |

Jacobs reached his uniform conclusions about the meaning and application of these contracts while admitting that key terms in the contracts he analyzed were not defined, such as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Jacobs Tr. at 77:25-78:3, 124:8-13, 219:18-220:3. Further, there is an obvious contradiction in Mr. Jacobs' analysis of the term "▉▉▉▉." When the U&C definition *includes* ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Jacobs Rpt., ¶¶49, 53, 55, 61, 62, 63.[3] But when the definition *excludes* "discounts" to the "cash" or "retail" price, ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.*, ¶¶50, 52, 54, 56, 60. Either Walgreens' PSC prices are ▉▉▉▉ or they are not. Mr. Jacobs' contract analysis seeks to have it both ways.

After analyzing the U&C contractual definitions, Mr. Jacobs purports to perform a conflict of laws analysis to resolve what he perceives as a disagreement between the U&C contract definitions and eleven different PBM manuals about the definition and application of the U&C price. *See id.*, §V.E (¶¶ 82-86). Unsurprisingly, he concludes that Walgreens' PSC prices are not

---

[3] Mr. Jacobs conceded that his opinion is contrary to Walgreens' interpretation of its own agreements, confirmed during sworn testimony in this action, that its PSC prices *are* discounts to the cash price. *See* Jacobs Tr. at 160:23-161:8.

7

U&C prices and that the PBM manuals, statutes, and opinions that contradict his opinions about the meaning, scope, and application of Walgreens' PBM contracts should be ignored. *Id.*, ¶¶82, 84 (chart).

Mr. Jacobs cannot escape the exclusion of his opinions about the meaning of the U&C price in Walgreens' contracts by couching them as based on his "experience." *Garbe*, 824 F.3d at 645 ("[T]he interpretation of contractual and regulatory terms is generally a question of law.") Reliance on an expert's "experience" does not change that result. *See Morris v. Ford Motor Co.*, No. 10-cv-504, 2012 WL 5947753, at *5 (N.D. Ind. Nov. 28, 2012). Similarly, ███████ ████████████████████████████████████████ *see* Jacobs Tr. at 70:3-5, cannot change the true import of his opinions. *See Bailey v. Ramos*, No. 20-cv-00466-XR, 2022 WL 17658641, at *4 (W.D. Tex. Nov. 21, 2022) (expert providing "disclaimer" that he was not offering a "legal conclusion" held to be proffering an "inadmissible legal conclusion"); *United Specialty Ins. Co. v. Dorn Homes Inc.*, No. 18-cv-08092-PCT MTL, 2020 WL 4464400, at *16-17, 52 (D. Ariz. Aug. 4, 2020) (legal conclusions excluded even where expert stated "'it is not my intent to offer legal opinions.'"); *Frye v. Hamilton Cty. Hosp.*, No. 18-cv-3031-CJW-MAR, 2019 WL 2404330, at *4 (N.D. Iowa June 7, 2019) ("Dr. Stilley's characterization of his own opinions as not being legal conclusions is not dispositive or binding on the Court.").

Mr. Jacobs' opinions and conclusions concerning the meaning, application, and scope of Walgreens' PBM agreements should be stricken and excluded as inadmissible.

## II. MR. JACOBS' ANALYSIS OF *GARBE* SHOULD BE EXCLUDED

Mr. Jacobs is not an attorney, and this Court does not require his assistance in interpreting judicial opinions. Yet, he provides his opinion on the district court's and Seventh Circuit's decisions in *United States ex rel Garbe v. Kmart,* 73 F. Supp. 3d 1002 (S.D. Ill. 2014) *aff'd in part rev'd in part* 824 F3d 632 (7th Cir. 2016). *See* Jacobs Rpt., §V.D.4 (¶¶80-81). Those opinions

8

should be excluded. *See United States v. Supervalu, Inc.*, No. 11-3290, 2019 WL 6310222, at *2 (C.D. Ill. Nov. 25, 2019) ("Similarly, an extensive expert legal analysis of *Garbe* or any other case will not be necessary.")

### III. MR. JACOBS' OPINIONS CONTRADICT THE SEVENTH CIRCUIT'S DECISION IN *GARBE*

The Seventh Circuit's decision in *Garbe* is controlling in this Circuit and an expert's opinions that contradict that decision must be excluded. *See e.g., In re Dealer Management Systems Antitrust Litigation*, 581 F. Supp. 3d 1029, 1063 (N.D. Ill. 2022) ("'Expert opinions that are contrary to law are inadmissible.'").

*Garbe* resolved that a pharmacy's discount club prices must be reported as the U&C price for consumers with Medicare Part D insurance plans. *Garbe,* 824 F3d at 644-45 ("Because Kmart offered the terms of its 'discount programs' to the general public and made them the lowest prices for which its drugs were widely and consistently available, the Kmart 'discount' prices at issue represented the 'usual and customary' charges for the drugs.") (citing and discussing Medicare regulations and supporting materials).[4] A pharmacy like Walgreens cannot avoid this result by charging a fee to join its club, thereby claiming its club prices are not offered to the "general public." *Id.* at 643.

In his report, Mr. Jacobs concludes that Walgreens and the PBMs administering Medicare Part D insurance plans are free to ignore *Garbe* and define U&C to exclude Walgreens' PSC prices. *See* Jacobs Rpt., ¶67 ("Medicare Part D … ha[s] no bearing on any of the agreements in this dispute that specifically define the term U&C."). He doubles-down on that opinion, attempting to justify his view that private parties can contractually evade *Garbe* in a section of his report, styled: "Medicare Part D Does Not Restrict The Freedom Of PBMs And Retail Pharmacies To Contract

---

[4] Mr. Jacobs concedes that the PSC is offered to the general public. Jacobs Tr. at 118:10-18.

9

For A U&C Definition That Governs The Pharmacy's U&C Obligations Under A Pharmacy-PBM Agreement." *See id.*, §V.D.2 (¶¶72-77). His rationale hinges on his analysis of a federal statute, *id.*, ¶74, and a paragraph from a 2006 CMS publication, *id.*, ¶74 and n.84, ten years prior to the *Garbe* decision. Once again, Mr. Jacobs offers his improper analysis of federal law.

His opinion that "there is nothing in the Medicare Part D program that would override a contractual definition of U&C agreed upon by a PBM and retail pharmacy," *Id.*, ¶77, is contrary to *Garbe* and wrong as a matter of law. Those opinions should be stricken and excluded as inadmissible.[5]

### IV. MR. JACOBS OPINION OF THE INDUSTRY UNDERSTANDING AS TO THE MEANING OF THE U&C PRICE IS UNRELIABLE AS HE IGNORED NECESSARY MATERIALS

An expert seeking to opine on an industry standard is required to engage in a rigorous, scientific analysis of the available evidence. *See Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 994 (7th Cir. 2019); *Segerdahl Corp. v. Ferruzza*, No. 17-cv-3015, 2023 WL 2161774, at *3 (N.D. Ill. Feb. 22, 2023). ▮

▮ *See* Jacobs Tr. at 121:6-11.[6] When not premised on his analysis of Walgreens' contracts, he bases his view on his narrow definition of the "industry" standard. *See* Jacobs Rpt., ¶¶ 13, 27, 41.

▮

▮ *See* Jacobs Tr.

---

[5] Even while discussing Medicare Part D extensively in his report, Mr. Jacobs testified that he did not consider or offer any opinions concerning Medicare Part D. *See* Jacobs Tr. at 189:8-16. In the event Mr. Jacobs was not intending to withdraw the portions of his report (errantly) opining on Medicare Part D, they should be excluded.

[6] That position is echoed by Walgreens' opposition to class certification, comprising a common defense (whether right or wrong) applicable to all Class members, and which therefore supports class certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045-47 (2016); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191, 1197 (2013).

at 70:12-73:3. While Plaintiffs disagree that Mr. Jacobs' exclusion of health insurers, third-party payors, government payers, and consumers is appropriate, he did not even consider materials within the "industry" he defined.[7] ███████████████████████████████

███████████████████████████████████████████████████████████████████████ *See id*. at 56:5-12; 205:13-18. ███████████████████████████████████████

██████████████████████████████████████████████ *Id*. at 154:9-14 █████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████. But a strict focus on Walgreens in isolation is ***not*** a complete or rigorous analysis of the "industry," even in the narrow manner defined by Mr. Jacobs.

Aside from ignoring relevant "industry" materials, Mr. Jacobs did not review or consider governmental enforcement actions filed ***against Walgreens*** asserting that it should have reported or otherwise included its PSC prices when determining the U&C prices to report for PSC drugs. For example, the United States government and thirty states sued Walgreens, resulting in Walgreens paying millions of dollars to settle claims of overpayment. Guglielmo Decl., Ex. 53. ████████████████████████████████████████████████████ Jacobs Tr. at 127:12-

---

[7] Further evidence demonstrating that Mr. Jacobs' definition and understanding of the "industry" is unreliable and should be excluded is shown by his intentional mischaracterization of Dr. Schafermeyer's statement that the U&C price sets the ceiling for amounts charged to insureds because "[a]llowing pharmacy customers without insurance to get routinely lower prices than those with insurance would defeat the cost-containment purpose of insurance." Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification, ECF 556 (Nov. 17, 2022) ("Guglielmo Decl."), Ex. 56 ("Schafermeyer Rpt.") at 4. Mr. Jacobs attempted to argue that Dr. Schafermeyer's understanding of the purpose of insurance and of U&C reporting was wrong, claiming that Dr. Schafermeyer stated that the purpose of health insurance was to "ensure that TPPS and customers paying with insurance always receive the lowest price on a prescription drug." Jacobs Rpt., ¶¶11, 36. In fact, upon cross examination, Mr. Jacobs conceded that he misstated what Dr. Schafermeyer actually stated in his report, further undermining the credibility of Mr. Jacobs' opinions relating to U&C as unreliable and should be excluded. Jacobs Tr. at 233:13-17: (████████████ ███████████████████████████████████████████████████████████████).

11

128:1, 181:1-184:24

231:4-8.

*Id*. at 148:1-150:8

Mr. Jacobs' opinions concerning the "industry" standards proffered in his report and opinions should be excluded as inadmissible speculation failing the rigorous analysis standard.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order striking and excluding the opinions at Paragraphs 11-13, 27, 34, 35-39, 41-47, 48-65, 67, 70-71, 75-77, 78, 82-86, 87, 89, 91, 93, and 95 of the Jacobs Rpt., and any related testimony by Mr. Jacobs.

Dated: June 20, 2023

Respectfully submitted,
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 */s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (IL Bar #2759819)
Carey Alexander (IL Bar #5188461)
Amanda M. Rolon (*admitted pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-4478
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com
arolon@scott-scott.com

Erin Green Comite (IL Bar #420630)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 531-2632

12

Facsimile: (860) 537-4432
ecomite@scott-scott.com

David W. Mitchell (IL Bar #199706)
Arthur L. Shingler III (IL Bar #181719)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
davidm@rgrdlaw.com
ashingler@rgrdlaw.com

Mark J. Dearman (IL Bar #0982407)
Stuart A. Davidson (IL Bar #084824)
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com

*Interim Co-Lead Counsel*

Katrina Carroll (IL Bar #6291405)
**CARLSON LYNCH LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kcarroll@carlsonlynch.com

*Local Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically through the Court's Electronic Case Filing System, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
