**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Civil No. 17-cv-2246 <br><br> Judge Edmond E. Chang <br> Magistrate Judge Sheila Finnegan |

**WALGREEN CO.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF JOHN W. HANIFIN PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

Walgreen Co. ("Walgreens") opposes Plaintiffs' motion to exclude the March 17, 2023 expert report (the "Hanifin Report") and testimony of John W. Hanifin pursuant to Federal Rule of Evidence 702 ("Motion").

I.  **INTRODUCTION AND BACKGROUND**

Hanifin is an expert in customer loyalty programs, with more than 25 years of experience in that field. Customer loyalty programs are the range of business models used by a seller of branded products to connect that brand with its customers in order to encourage customers to change how they interact with the brand. **Ex. A:** Hanifin Report at 3-4. In the Hanifin Report, Hanifin offered opinions regarding the structure and operation of Walgreens' Prescription Savings Club ("PSC"), including whether there were meaningful obstacles to enrolling in PSC that differentiated PSC members from non-members. The Hanifin Report included an analysis of the value considerations customers typically evaluate when deciding whether to enroll in a business's loyalty program.[1] **Ex. A:** Hanifin Report at 3.

Hanifin offered the following three opinions:

1. PSC qualifies as a customer loyalty program because of its marketing and operating structure, including creation of obstacles to enrollment, one of which is the membership fee;

2. Walgreens designed PSC so that customers faced obstacles to enrollment, which distinguished PSC members from other customers; and

3. The obstacles to enroll in PSC were significant, which likely resulted in fewer enrollments.

*See* **Ex. A:** Hanifin Report at 3 and *generally*. In addition to relying on his decades of experience in loyalty marketing, Hanifin supported his opinions through his review of, and citation to, (1) the

---

[1] Walgreens is not relying on Hanifin's opinions to support its opposition to class certification. Walgreens, however, served the Hanifin Report on Plaintiffs in light of the parties' dispute as to whether the parties were required to disclose *all* experts on whom they intend to rely in the case by the expert report deadlines previously set in the case, or only those experts relied upon for class certification.

record in this case, including filings, deposition testimony, discovery, and produced documents; (2) publicly available documents relating both to PSC and other brand loyalty programs; and (3) scholarly articles discussing concepts regularly used by experts in his field. *See* **Ex. A:** Hanifin Report at Ex. B to Hanifin Report.

Plaintiffs attempt to exclude Hanifin's opinions for three reasons, none of which have merit. First, Plaintiffs claim that Hanifin is not qualified because he is not a pharmacy expert. But that is not the field in which Walgreens offers Hanifin's testimony; he is being offered as a loyalty marketing expert, and caselaw makes it clear that an expert who has experience in a particular field that spans multiple industries need not have specific experience in the particular industry involved in the case in order to testify as an expert regarding a relevant field. Second, Plaintiffs claim that Hanifin's opinions are unsupported and unreliable. That critique fails, however, because Hanifin's opinions are based on his review and citation to facts in the case and scholarly articles of the type typically consulted in the field of loyalty marketing, as well as his experience, which caselaw provides is a proper basis on which to base expert testimony. Finally, Plaintiffs suggest that Hanifin's opinions are irrelevant and will not aid the trier of fact. Hanifin's opinions on obstacles to joining PSC are relevant to Plaintiffs' argument that the membership fee was "illusory" and an argument Plaintiffs admit they intend to make regarding the Seventh Circuit's opinion in *U.S. ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 643 (7th Cir. 2016) ("*Garbe*"), where the Court found that barriers to joining were virtually non-existent in Kmart's program. Moreover, Hanifin's expertise on customer loyalty programs based on his decades of experience in the loyalty marketing industry go beyond the average person's knowledge. The Court should deny Plaintiffs' motion to exclude Hanifin.

## II. APPLICABLE STANDARD

"The admissibility of expert testimony is governed by Rule 702 and the Supreme Court's seminal decision in *Daubert*." *Sgouros v. Trans Union LLC*, No. 14 C 1850, 2022 U.S. Dist. LEXIS 49585, at *3 (N.D. Ill. Mar. 21, 2022) (citations omitted)). Rule 702 allows for opinion testimony by an expert—that is, someone with the requisite "'knowledge, skill, experience, training, or education'—to help the trier of fact 'understand the evidence or [] determine a fact in issue.'" *United States v. Hill*, 818 F.3d 289, 296 (7th Cir. 2016) (quoting Rule 702). Specifically, "[t]he proponent of an expert witness bears the burden of demonstrating that the expert's testimony is admissible by a preponderance of the evidence." *Sgouros*, 2022 U.S. Dist. LEXIS 49585, at *3 (citing *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009)). Expert testimony is admissible only when (1) it is "based on sufficient facts or data," (2) it is "the product of reliable principles and methods," and (3) the witness has "reliably applied the principles and methods to the facts of the case." *Id.* "A court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

The Supreme Court made clear in *Daubert* that district courts reviewing Rule 702 motions must perform the "critical gatekeeping function" concerning the admissibility of such evidence. *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018). "Because expert testimony can be both highly persuasive and difficult for a lay jury to evaluate, the importance of this gatekeeping function cannot be overstated." *Id.* (citations omitted). Judicial gatekeeping is thus "indispensable." *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 284 (4th Cir. 2021). Indeed, the Amendments to Rule 702, which are merely clarifying amendments and which take effect in December 2023, further emphasize this gate-keeping function. *See* Report of the Advisory

3

Committee on Evidence Rules, at 6 (May 15, 2022) *available at* https://www.uscourts.gov/rules-policies/archives/committee-reports/advisory-committee-evidence-rules-may-2022.

## III. ARGUMENT

### A. Hanifin Is Qualified To Render Opinions On Consumer Behavior And Loyalty Marketing Programs

Plaintiffs have made no secret of their intention to argue that, because of the 7th Circuit's ruling in *Garbe*, Walgreens must take into account its PSC price when determining its U&C price. *See* Dkt. 62 at 1-2 (Pls.' Mem. in Opp'n to Mot. to Dismiss First Am. Compl.) (arguing that "*Garbe* controls in this case," and that in *Garbe*, "[t]he Seventh Circuit has held that when pharmacies offer generics through a discount program open to the general public, like through the PSC, the discount price must be considered in determining the pharmacy's U&C price."). As Walgreens will show as this case proceeds, Plaintiffs exaggerate and distort the meaning of *Garbe*. In fact, the district court in *Garbe* made it clear, in a finding the 7th Circuit did not disturb on appeal, that a pharmacy and a PBM can contract for any U&C definition they choose. *See U.S. ex rel. Garbe v. Kmart Corp.*, 73 F. Supp. 3d 1002, 1016 (S.D. Ill. 2014), *amended by* 2015 U.S. Dist. LEXIS 73520 (Jan. 12, 2015), *aff'd in part, rev'd in part*, 824 F.3d 632 (7th Cir. 2016) ("[i]t would be nonsensical to find that [contractual] definitions would not control the specific contracts or agreements with these specific payers."). Thus, the contracts are what matter in this case, not the non-contractual standard applied in *Garbe*.

Walgreens will also show that the facts regarding Kmart's membership program, which were at issue in *Garbe*, are very different than Walgreens' pharmacy membership program, and do not support the same result. For example, in *Garbe*, a False Claims Act case involving Kmart's pharmacy membership programs, the 7th Circuit found that "[t]he evidence submitted shows that the barriers to joining the Kmart programs were almost nonexistent, to the extent they were

4

enforced at all." *Garbe*, 824 F.3d at 643. In other words, the 7th Circuit reviewed the evidentiary record before it to determine whether the Kmart programs had actual barriers to entry. Similarly, Hanifin, reviews the evidentiary record in this case and offers an opinion that will assist the jury in evaluating whether PSC has significant barriers to entry.[2] And Hanifin is qualified to offer that opinion.

          **1.**      **Hanifin's 25-year experience in loyalty marketing is sufficient to qualify him as an expert in that field**

Plaintiffs attempt to discredit Hanifin's qualifications by minimizing his real-work experience because it is not an academic background. *See* Mot. at 6. The 7th Circuit, however, has expressly rejected this type of complaint. "[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge *is based on experience*." *Trs. of Chi. Painters & Decorators Pension v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir. 2007) (emphasis added) (internal citation omitted).

Hanifin has decades of experience in the loyalty marketing field, and Plaintiffs acknowledge his years of experience. *See* Mot. at 6. Hanifin first entered the loyalty marketing field in 1997, when he began working for Visa as a product manager and led the development and deployment of a software product designed to manage co-branded rewards programs for Visa member banks. *See* **Ex. B:** Hanifin Dep. at 54:7-21. After leaving Visa, he started in a director role with a consulting group, where he worked with a wide variety of brands in various industries, helping them with strategy and business development for customer loyalty. **Ex. A:** Hanifin Report at 2. Notably, in 2003, Hanifin worked with Best Buy to help launch its Rewards Zone Loyalty

---

[2] Hanifin is not offering a legal opinion. While he lists *Garbe* on his materials considered list, (**Ex. A:** Hanifin Report at Ex. B to Hanifin Report), he neither cites to nor discusses *Garbe* in his Report.

Program, a fee-based membership loyalty program. *Id*. Since 2006, Hanifin has managed several companies, all of which are focused on Loyalty Marketing and customer strategy, in which he works with various brands to help create, launch, manage, and measure the effectiveness of customer marketing. *Id*. Hanifin is frequently asked to serve as a speaker or presenter at loyalty marketing industry events, such as the Loyalty Expo, Loyalty Summit UK, C2 Montreal, and Winsight Convenience Retail University. *Id.* Currently, Hanifin serves as the Chief Executive Officer of the Wise Marketer Group, which consists of two main professional components: (1) TheWiseMarketer.com, a global online publication, which serves as a resource for professionals interested in customer engagement, customer loyalty, customer relationship management, and digital marketing; and (2) the Loyalty Academy, an educational service for marketing professionals in the industry. *Id.*[3]

Unable to assail his professional credentials, Plaintiffs point to the fact that Hanifin's Certified Loyalty Marketing Professional ("CLMP") certification is a non-academic certification

---

[3] In a footnote, Plaintiffs attempt to cast doubt on Hanifin's credibility based on a 1998 case filed against Hanifin, in his individual capacity, and two other defendants (the "1998 Lawsuit"), by claiming that Hanifin was found liable for fraud in *Sinatra v. Ikaros Aviation, Inc.*, 723 So.2d 358 (Fla Dist. Ct. App. 1998), and then testified falsely about it in this case. Plaintiffs' evidence, however, does not support their arguments. The opinion in *Sinatra* was a two-paragraph ruling that affirmed the trial court's entry of default judgment on liability for fraudulent inducement against the defendants after striking their pleadings as a sanction for discovery violations. 723 So. 2d 358, 359 (Fla. Dist. Ct. App. 1998). The appellate court's opinion did not include any facts or specific context surrounding the discovery violations, including whether they were a result of Hanifin's actions. And any discovery violation is the fault of the counsel in the case, not Hanifin. Plaintiffs' cherry-picked quotes from Hanifin's deposition similarly fail to support their attempt to attack his credibility. Although Hanifin did not recall being named individually in the 1998 Lawsuit, which was filed more than 25 years ago, he testified that he "was a party in that matter" and was "an owner of the business that was named as a party." **Ex. B:** Hanifin Dep. at 21:15-22:22. Hanifin, a customer loyalty program expert, is not trained as a lawyer and may have misunderstood Plaintiffs' question about whether he was "named individually," especially after having admitted that he was a party to that matter. *Id.* Plaintiffs' failure to clarify a legal term with Hanifin does not support an attack on his credibility. And Hanifin's inability to recall details about a case that was closed more than 25 years ago does not mean that was was being "evasive" in his deposition, as Plaintiffs claim. *See* Mot. at 2 n.2. The *Sinatra* case, and Hanifin's testimony about that case, has no bearing on his credibility; Plaintiffs' attempt to attack Hanifin's character is baseless and fails entirely.

given out by the company he owns. Mot. at 6. But that argument falls flat. If anything, the fact that Hanifin founded and runs the company that executes the trainings for the CLMP, and the fact that he is a significant contributor to the certification training class that has certified more than 580 marketing professionals, lends more creditability to his qualifications. *See* **Ex. A:** Hanifin Report at 2.

Plaintiffs also point out that Hanifin has not published an article in an academic or scholarly journal. Mot. at 6. But he has published hundreds of articles that are widely read by those in the loyalty industry. **Ex. A:** Hanifin Report at Ex. A to Hanifin Report. In fact, between 2006 – 2020, Hanifin wrote over 750 articles, all of which related to loyalty marketing.[4] *Id.* Plaintiffs have cited no caselaw that would allow the Court to conclude that publications in academic or scholarly journals are required to offer an expert opinion. In fact, the caselaw says just the opposite. *See, e.g., Lurry v. City of Joliet*, No. 20-C-4545, 2023 U.S. Dist. Lexis 28289, at *8 (N.D. Ill. Feb. 21, 2023) (noting that "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience.") (internal citations omitted).

Hanifin is an expert in customer loyalty marketing and he is, therefore, qualified to offer opinions in that field of expertise, which is exactly what he does.

> **2. Hanifin does not need experience as a pharmacist or in pharmacy pricing, as he is being offered as a customer loyalty marketing expert**

---

[4] Plaintiffs, in a footnote, seemingly attempt to discredit Hanifin's opinions by citing to one of his articles from 2012 that related to Walgreens' "Balance Rewards" program. Mot. at 7 n.5. Walgreens' Balance Rewards Program, which was revamped in 2020 to myWalgreens, is a loyalty program separate and apart from PSC, with a different structure, rewards, and enrollment requirements. *Compare* **Ex. C:** "Walgreens Balance Rewards" *with* "Walgreens Prescription Savings Club," https://www.walgreens.com/psc/prescription-savings-club. In 2012, when Hanifin wrote about Balance Rewards, he had not yet been engaged by Walgreens to serve as an expert to evaluate PSC and the programs are distinct. Accordingly, Plaintiffs' citation to Hanifin's failure to address or acknowledge PSC in that article is a red herring, as it is irrelevant to whether Hanifin is qualified to serve as an expert in this case.

Plaintiffs also argue that Hanifin cannot serve as a loyalty expert because he is not a pharmacist and does not have any experience or "understanding of pharmacy pricing," an argument Plaintiffs do not support with caselaw. *See* Mot. at 4, 6. Plaintiffs' complaint both misunderstands the scope of Hanifin's opinions and the required qualifications for an expert.

As a threshold matter, Plaintiffs' criticisms are aimed to disqualify Hanifin as an expert for opinions that he never presented. Hanifin is not attempting to offer opinions regarding pharmacy drug pricing or about how pharmacists fulfill their professional duties. Instead, Hanifin's opinions are solely related to the characteristics of PSC, a loyalty marketing program, and the factors that go into a customer's decision on whether or not to join loyalty programs such as PSC, including obstacles to enrollment in PSC. Accordingly, Plaintiffs' argument claiming that Hanifin is not qualified to serve as an expert in pharmacy operations mischaracterizes the scope of Hanifin's opinions and should be disregard.

In fact, Hanifin is not required to have expertise in loyalty marketing programs ***for pharmacies*** because he is an expert in ***loyalty marketing***. By Plaintiffs' logic, for Hanifin to be qualified to testify about Best Buy's, Jimmy John's, and Sephora's loyalty programs, he must be an electronics expert, a fast-food expert, and a beauty products expert. Plaintiffs, however, have not cited a single case supporting such an extreme position. Indeed, caselaw supports just the opposite. *See, e.g., Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 845-46 (7th Cir. 2017) (denying *Daubert* motion where movant failed to explain how the proffered expert's lack of experience within a particular specialty rendered him unqualified); *Segerdahl Corp. v. Ferruzza*, No. 17-cv-3015, 2023 U.S. Dist. LEXIS 28818, at *8 (N.D. Ill. Feb. 22, 2023) (refusing to exclude an expert in the printing industry simply because the expert did not have particular expertise as to large printers); *see also Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) ("Whether a witness is

8

qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.") (internal citations omitted)). For example, another court in this District considered whether a marketing expert's lack of experience in the tire industry (the industry relevant to that case) disqualified him from rendering an opinion about tire marketing, designing, or sales. *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14-cv-00206, 2019 U.S. Dist. LEXIS 219398, at *25-28 (N.D. Ill. Dec. 20, 2019). The court allowed the expert to testify based upon his significant marketing experience, even if not in the industry relevant to the case. *Id.* Hanifin is an expert on customer loyalty programs, and that is the area in which he is offering testimony.

As for Plaintiffs' argument that PSC is different than other loyalty programs because pharmacies dispense "medically necessary medication," (Mot. at 5), the argument cannot support excluding Hanifin's report and testimony. Whether or not medications dispensed at Walgreens are medically necessary, PSC remains a club that provides members with benefits similar to many other clubs and loyalty programs that require enrollment to access lower prices. Customers need not enroll in PSC to access medically necessary drugs: they may use insurance, use a third-party discount card, pay the retail price, or shop at another pharmacy. PSC, like the other loyalty marketing programs with which Hanifin has experience, presents an option for customers to engage in the enrollment process to gain access to lower prices on products. Indeed, Walgreens has testified that PSC was created to increase customer loyalty to make it more likely that patients would choose to fill their prescriptions at Walgreens, rather than a competitor pharmacy. *See* Dkt. 556-2 (Dep. of Walgreens' 30(b)(6), M. Amiet) 72:16-73:16 (explaining that one of PSC's

9

purposes was to drive customer loyalty). PSC, therefore, has similar attributes to other loyalty programs, with which Hanifin has extensive experience.[5]

As for Plaintiffs' argument that "[i]nformation needed for PSC is nothing more than what a pharmacy already captures for patient records or for dispensing prescriptions," (Mot. at 5), the argument not only has no merit, but it should not be considered by the Court. The argument is based on an opinion given by Plaintiffs' expert, Dr. Kenneth W. Schafermeyer, in his rebuttal report. As noted in footnote six, below, Schafermeyer is not an expert in customer loyalty programs, and this section of his rebuttal report should be excluded. *See* Mot. to Exclude Portions of Schafermeyer's Rebuttal Report and Any Testimony Regarding the Same, also filed today. Moreover, Plaintiffs cite to Paragraph 147 of Schafermeyer's rebuttal report for this proposition, which in turn cites to nothing and, therefore, is improper *ipse dixit*. In Paragraph 148 of his rebuttal report, Schafermeyer cites to Hanifin deposition testimony, which merely says that a person filling out a prescription is required to provide personal information. **Ex. B:** Hanifin Dep. at 10:20-14:18; 86:8-87:16. Neither of these deposition citations have anything to do with information needed to be provided to enroll in the PSC. In other words, Plaintiffs have not shown that all of the personal information required to be provided to sign up for PSC, including an email address, (**Ex. A:** Hanifin Report at 10), is required to be provided for a patient filling out a prescription, nor have they addressed Hanifin's testimony that, not only are many customers hesitant to provide personal

---

[5] Plaintiffs' expert's opinion that it takes more time and effort for someone to drive to the pharmacy, park, and wait to be served than to sign up for PSC, and that this somehow affects whether there is an obstacle to enrollment, is irrelevant. Mot. at 5. First, Schafermeyer has no expertise in the customer loyalty program field and his opinion on this subject should be excluded for the reasons stated in Walgreens' Motion to Exclude Portions of Schafermeyer's Rebuttal Report and Any Testimony Regarding the Same, filed the same day as this brief. Second, the argument is nonsensical. It also takes someone who goes to Best Buy time to drive to the store, park, and be served, and yet, that does not mean there are not barriers to entry with regard to signing up for the Best Buy loyalty program. This, of course, is an argument Plaintiffs can explore on cross-examination of Hanifin, but notably, they did not do so in his deposition.

information to enroll in a club, like PSC, but also a customer may not have the time or interest to provide the information requested and, therefore, may decide not to join PSC. *Id*. For all these reasons, Plaintiffs' argument fails. Moreover, Hanifin's testimony that the requirement that personal information, including an email address, be provided to enroll in the PSC is only one of many obstacles to enrollment.

> B. **Hanifin's Opinions Are Supported By Reliable Methodology, And Plaintiffs' Cannot Seek To Exclude Him Because They Disagree With His Conclusions**

Plaintiffs next attack the reliability of Hanifin's opinions, claiming that he makes subjective assertions "without providing any specific analytical basis" for his opinions. Mot. at 9. Plaintiffs, however, ignore Hanifin's methodology, including the documents he considered and cited, in connection with his experience. Hanifin's opinions are grounded in his (1) experience; (2) review of case-related documents; and (3) consideration of notable scholarly articles that are typically consulted in his field. Rather than acknowledge Hanifin's methodology, which is described in detail throughout the Hanifin Report, Plaintiffs focus on his conclusions, with which they disagree. Mot. at 9. But as noted above, a court's evaluation of reliability should focus on whether the expert has reliably applied their methodology to the facts or data in this case. *See Wilkerson v. Chamberlain*, No. 3:17-cv-50046, 2023 U.S. Dist. LEXIS 85920, at *2 (N.D. Ill. May 17, 2013) (explaining that the expert's opinion must be "based on a reliable application of [their] principles and methods to the facts of the case."). Although Plaintiffs may disagree with Hanifin's conclusions, that is no basis for the Court to conclude that Hanifin should be excluded. "[T]he correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or where appropriate, on summary judgment." *Smith*, 215 F.3d at 718.

Hanifin's conclusions are based in both his experience and his analysis of well-known concepts evaluated and researched in his field. *See* **Ex. A:** Hanifin Report at 7-9. In other words,

11

he does not just assert a bottom line based on his experience. For example, Hanifin explained that a customer's decision-making process is described by the "Idiosyncratic Fit Heuristic," a concept that has been researched and considered by experts in this field. *Id.* at 8 (citing Kivetz, R., & Simonson, I., "The Idiosyncratic Fit Heuristic: Effort advantage as a Determinant of Consumer response to Loyalty Programs," *Journal of Marketing Research*, vo. 40, no. 4, Nov. 2003, pp. 454—67, *JSTOR*, available at http://www.jstor.org/stable/30038878 (the "Idiosyncratic Fit Heuristic")). Based upon this research, which helps to guide the evaluation of a customers' potential Idiosyncratic Fit with a particular brand, a loyalty marketing expert is better able to determine how various aspects of a loyalty program, including the enrollment process, will affect enrollment. *Id.* (citing the Idiosyncratic Fit Heuristic as explaining the enrollment decision-making process because "[a] key factor that affects customer response to marketing programs and promotional offers is the perceived relative advantage of "fit" with customer idiosyncratic conditions and preference."). Hanifin's opinions, which flow from his experience and reliance on research performed by experts in the loyalty marketing field, (*id.*), are not speculative.

Hanifin was not required to conduct a particular survey of Walgreens' customers to conclude that a loyalty marketing program, such as PSC, may cause certain customers to decide not to enroll. Instead, Hanifin used and cited to well-known research and his own experience, both of which are sufficient to qualify his opinions as reliable. *See* **Ex. A:** Hanifin Report at 8 n.13-16 (citing Idiosyncratic Fit Heuristic); 9 n.17 (citing research published in the Journal of Marketing Research, the Journal of the Academy of Marketing Science, and the International Journal of Research in Marketing). "An expert's testimony is not unreliable simply because it is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be qualified as an expert by knowledge, skill, experience, training, or education." *Toyo Tire & Rubber Co.*, 2019 U.S. Dist.

LEXIS 219398, at *31 (internal citations omitted) (finding a marketing expert's testimony to be reliable because expert analyzed (1) testimony in the case and (2) publications relevant to the product at issue, and applied marketing principles from scholarly research articles).

In short, Hanifin based his conclusions upon his experience, publications that are regularly used by experts in the loyalty marketing field, and his review of case-related documents. His opinions meet the requirements of Rule 702.

        **C.**     **Hanifin's Opinions Will Aid The Jury's Understanding Of Customer Behavior Concerning Loyalty Programs**

Plaintiffs' final argument—that Hanifin's opinions will not aid the trier of fact—similarly fails. *See* Mot. at 12. In light of Plaintiffs' claim that they should be entitled to the same prices as PSC members even though they did not enroll in PSC or pay the fee, in part because they claim the membership fee was "illusory," (*see, e.g.,* Dkt. 608 (Reply In Supp. of Pls.' Mot. for Class Certification) at 25), and Plaintiffs' intention to argue that this case is like *Garbe* in that the "barriers to joining [PSC] were almost nonexistent," *Garbe*, 824 F.3d at 643, and assuming the Court accepts these as potentially valid legal arguments, the Court and/or jury will need to determine, as a matter of fact, if there were barriers to joining PSC and the significance of those barriers. Evaluating the significance of the barriers to entry is not a factual issue that can just be assumed away. Instead, Hanifin's opinion will aid the trier of fact on this very subject by explaining how the facts of PSC fit in with his experience, backed by research, on the operation of loyalty programs and the effect of consumer behavior.

Indeed, Hanifin's testimony not only would "assist[] the jury in understanding facts at issue," but also it "puts the facts in context" and explains concepts that are "beyond the understanding of the average person." Mot. at 12 (quoting *United States v. Krejsa*, No. 1:20-cr-00094-TWP-TAB, 2022 WL 17980125, at *4 (S.D. Ind. Dec. 28, 2022)). For example, Hanifin

13

opines on how the average American belongs to 14.8 loyalty programs of which only one or two require a membership fee, and that the inclusion of a membership fee in a program means having fewer members, something the average person would not know. **Ex. A:** Hanifin Report at 9 (citing article from *Journal of Retailing and Consumer Services*). He describes why even the enrollment process is a barrier in and of itself, and how a membership fee "raises the bar of the Idiosyncratic Fit for customers," another concept the average person would not know. **Ex. A:** Hanifin Report at 10-11.

Hanifin further opines that, in his experience, "many customers resist paying a membership fee at any amount and will decline to join Loyalty Programs that charge a membership fee" (*id*., at 11), and he supports this opinion up with facts from this case. For example, he puts into context why, when Walgreens lowered the membership fee from $20 to $5 for a three-month period in 2012, enrollment "noticeably increased from approximately 100,000 to over 700,000," and how when the fee returned to $20, "the number of monthly enrollments and renewals decreased significantly." *Id*. at 12. He further noted that "no other significant changes were made to the program during those months" leading to his conclusion that the increased enrollment was a result of the change in the fee. *Id*. In other words, he marshalled his experience and industry literature, along with facts from the case, in a way that will help the jury understand the fact and put them in context so that they can determine whether there were significant barriers to entry into PSC. He also does not only identify the obstacles to joining the PSC, but also speaks to the significance of the obstacles and how they can affect consumer behavior. His opinions are admissible.

### IV. CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion to Exclude the Report and Testimony of John W. Hanifin.

DATED: August 22, 2023

    *Michael Scott Leib*
Michael Scott Leib
Anthony Robert Todd
**REED SMITH LLP**
10 S Wacker Dr # 4000
Chicago, IL 60606
Telephone: 312/207-1000
*mleib@reedsmith.com*
*atodd@reedsmith.com*

Frederick Robinson (*pro hac vice*)
Selina Coleman (*pro hac vice*)
Megan Engel (*pro hac vice*)
Jessica Christensen (*pro hac vice*)
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 East Tower
Washington, DC 20005
Telephone: 202-414-9200
*frobinson@reedsmith.com*
*scoleman@reedsmith.com*
*mengel@reedsmith.com*
*jchristensen@reedsmith.com*

***Attorneys for Defendant Walgreen Co.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of August, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*Michael Scott Leib*
Michael Scott Leib