# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
Civil Action No. 1:17-cv-02246

- - - - - - - - - - - - - - - - - - - - -x

CYNTHIA RUSSO, et al.,

Plaintiffs,

-against-

WALGREEN CO.,

Defendant.

- - - - - - - - - - - - - - - - - - - - -x

Virtual Zoom Deposition

May 4, 2023
9:00 a.m.

CONFIDENTIAL DEPOSITION of JOHN W. HANIFIN, in the above-entitled action, held at the above time and place, taken before Jeremy Richman, a Shorthand Reporter and Notary Public of the State of New York, pursuant to the Federal Rules of Civil Procedure, and stipulations between Counsel.

*   *   *

MS. COLEMAN: Same objection.

Q. Obstacles exist in terms of their relative difficulty on a spectrum; is that right?

MS. COLEMAN: Objection to form.

A. I don't know that that's true. That's -- I guess, yeah, I guess the answer would be yes. Some obstacles are bigger than others; obviously, there's mountains, and then there's mole hills.

Q. And I was going to say they might range from relatively insignificant, these obstacles, from an analytical standpoint, to potentially insurmountable, yes?

A. Yes.

Q. You would agree that another example of an obstacle in the context of Walgreens PSC would include a consumer's taking their prescription to a Walgreens pharmacy to be filled, yes?

A. That's not necessarily an

obstacle to PSC. That's an obstacle to filling a prescription.

Q. Mm-hmm. But to filling a prescription at a Walgreens store, that would be an obstacle, correct?

A. I mean, as a consumer, I think it's an obstacle for somebody filling a prescription at any pharmacy, whether it's Walgreens or another one.

Q. Would it be accurate to say -- strike that.

Okay. But if Walgreens or any other pharmacy already has the consumer's prescription, then that reduces, from an analytical perspective, the significance of that obstacle, correct?

MS. COLEMAN: Objection to form.

A. I don't think that's necessarily true. They, the person still has to go through some effort, whether it's walking in the store or driving through a line. So I guess I

would say no.

Q. I appreciate that, but that wasn't my question.

A. Then --

Q. My question was, we're talking about a specific obstacle, which you identified as filling a prescription at a pharmacy, and I was suggesting that the choice of where to fill that pharmacy, fill that prescription, excuse me, that particular obstacle is reduced in significance, from an analytical standpoint, if the pharmacy already has the prescription, correct?

MS. COLEMAN: Objection to form.

A. I would agree.

Q. In the context of Walgreens, if Walgreens has that prescription information, then the obstacle we're talking about, taking a prescription to Walgreens, would be relatively small, correct?

CONFIDENTIAL - HANIFIN

MS. COLEMAN: Objection to form.

A. I don't think you can say, compare it, you can't say relative, it's just less than if they didn't have a prescription on file.

Q. Okay. So since you don't like my use of the word "relative" in that context, but you would agree there is a lesser significance to that obstacle than the pharmacist not having that prescription information, correct?

MS. COLEMAN: Objection to form.

A. If Walgreens has the prescription on file, it's probably easier for the consumer to fill it at Walgreens than to go to a competing pharmacy and have to start that process from the beginning.

Q. We may be saying the same thing, but I want to make sure that we are. So the obstacle we're talking about -- let's just jump back to the

question.

MR. SHINGLER: Reporter, can you read back the question I asked previously?

(Requested portion of the record was read back.)

A. Correct.

Q. In other words, because the pharmacist already has the relevant information, the task of providing the information requires significantly less effort than the patient needing to affirmatively provide that information, correct?

MS. COLEMAN: Objection to form.

A. Correct.

Q. When it comes to a "obstacle" in the context of analyzing a loyalty program, every task or step facing a consumer is considered an obstacle, even where that task or step is not considered particularly meaningful to a consumer, correct?

business situation that you mentioned, when did that occur?

A. I don't remember exactly --

Q. The deposition, I mean.

A. Sorry?

Q. The deposition I'm referring to.

A. Probably around 2005, right in that, actually a little earlier than that, yeah. It's been a while.

Q. And that was a civil or criminal matter?

A. Civil.

Q. Were you a party or an expert in that matter?

A. I was a party in that matter.

Q. What was the name of the business -- let me ask you differently, was this a business that you were involved in?

A. Yes.

Q. Were you an employee, or an owner of the business?

A. I was an owner of the

business.

Q. What was the general context of the dispute?

A. Dispute over payment for goods and services.

Q. Were you the claimant in that case, or were you on the receiving end of that claim?

A. I was the receiver of that complaint.

Q. Did that circumstance result in a lawsuit?

A. Yes.

Q. Do you remember the name of the lawsuit?

A. No.

Q. Were you named individually?

A. No.

Q. The company that you owned was named as a party; is that correct?

A. That's what I recall.

Q. What was the name of that company?

A. It was AMPAC Aircraft

CONFIDENTIAL - HANIFIN

finance from University of Virginia.

Q. Right. But my question was, this LinkedIn page indicates that, correct?

A. Yes, it does.

Q. And above that it references you worked for Visa as a product manager; is that correct?

A. That's correct.

Q. You agree with the description below that, that you led the development and deployment of Cobrasys, a software product designed to manage co-branded rewards programs for Visa member banks?

A. Yes, I do.

Q. And that was from December '97 to September 1999; is that correct?

A. That's correct.

Q. And then you left Visa and joined COLLOQUY; is that correct?

A. That's correct.

Q. What's the nature of

to obtain the medication, correct?

MS. COLEMAN: Objection to form, objection to scope.

A. Again, that's not part of my opinion. I can't really comment on that definitively.

Q. But in your own experience, not only is a patient compelled by medical need to obtain a prescription, but they are required to give the pharmacy certain personal information as well in order to obtain the medication, correct?

MS. COLEMAN: Objection to scope.

A. It's not part of my opinion to look at that.

Q. I didn't ask you that, I asked you in your experience.

A. You're asking me as a human being, as a consumer?

Q. Yes.

A. It's my experience that I have to give personal information to

the pharmacist, or they have it on file, for me to fill a prescription.

Q. All right. So I'm going to try one more time so I have a real clean record.

In your personal experience, not only is a patient compelled by medical need to obtain a prescription, but they're required to give the pharmacy personal information as well, in order to obtain the medication, correct?

MS. COLEMAN: Objection to form.

A. Correct.

Q. It's your understanding that Walgreens generally makes the PSC offer or membership in the PSC program available to anyone filling prescriptions at Walgreens, right?

MS. COLEMAN: Objection to form.

A. It's my understanding that they make the offer to their entire

CERTIFICATION

I, JEREMY RICHMAN, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of May, 2023.

______________________

JEREMY RICHMAN