# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Civil No. 17-cv-2246 <br><br> Judge Edmond E. Chang <br> Magistrate Judge Sheila Finnegan |

**WALGREEN CO.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE OPINIONS 3, 6, AND 7 OF DR. SCHAFERMEYER'S EXPERT REPORT AND TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

In its Motion to Exclude Opinions 3, 6, and 7 of the Expert Report and Testimony of Dr. Kenneth Schafermeyer pursuant to Federal Rule of Evidence 702 ("Motion"), (Dkt. 580), Walgreen Co. ("Walgreens") demonstrated that these three opinions are not based on reliable methodologies and should be excluded. Specifically, Walgreens has shown that Schafermeyer's Opinion 7 is entirely speculative and constitutes an improper legal opinion. Walgreens further demonstrated that Opinions 3 and 6 seek to impose a made-up and unsupported definition of usual & customary ("U&C") in lieu of the applicable U&C contractual definitions in agreements between Walgreens and pharmacy benefits managers ("PBMs") administering drug plans for third-party payers ("TPPs").

Attempting to rehabilitate Schafermeyer's unreliable opinions that are inconsistent with industry understanding, Plaintiffs' Opposition to the Motion ("Opposition"), (Dkt. 600), generally falls back on Schafermeyer's "extensive experience" in the industry. Opp'n at 4. His experience, however, does not give him carte blanche to opine on any topic without explaining the methodologies and principles supporting his opinions, which is exactly what he does. Plaintiffs then attempt to cherry-pick evidence that could *potentially* support Schafermeyer's positions but ultimately *do not* support the opinions he has rendered. *See generally id*. At bottom, the Opposition only highlights the *ipse dixit* nature of these three opinions. Because the purpose of Rule 702 is to weed out unsupported, unreliable opinions that are divorced from reality, that lack sound methodologies, or that are not supported by empirical evidence, the Court should exclude Schafermeyer's Opinions 3, 6, and 7.

I. **SCHAFERMEYER'S OPINION ON THE "REASONABLE EXPECTATIONS" OF TPPs AND THEIR BENEFICIARIES SHOULD BE EXCLUDED AS SPECULATIVE, NOT BASED ON RELIABLE METHODOLOGY, AND AN IMPROPER LEGAL OPINION**

In Opinion 7, Schafermeyer opines that, by not reporting its Prescription Savings Club ("PSC") prices as its U&C prices, "Walgreens has failed to meet the reasonable expectations of TPPs and their insured beneficiaries[.]" Dkt. 553-45 (Expert Report of Kenneth Schafermeyer) ("Schafermeyer Report") ¶ 24. In its opening brief, Walgreens pointed out that "Schafermeyer has provided no basis for this opinion other than his own speculation, making it unreliable and unhelpful," and that, in addition, "Opinion 7 is an improper legal conclusion." Mot. at 6. Plaintiffs' arguments to the contrary fail.

A. **Schafermeyer's Opinion, Which Relies Exclusively On Allegations In The Complaint And Plaintiffs' Class Certification Motion Rather Than Facts Established In The Case, Is Speculative And Unreliable**

In its opening brief, Walgreens pointed out, among other things, that "[t]he only support Schafermeyer provides for Opinion 7," in which Schafermeyer opined regarding TPPs' and their beneficiaries' "reasonable expectations," "is his reliance on the allegations in Plaintiffs' complaint." Mot. at 6-7 (citations omitted). In response, Plaintiffs take the position that Schafermeyer can rely on the allegations in the Complaint, as well as Plaintiffs' Motion for Class Certification, although they cite no source for this position, which is wrong. Opp'n at 4. Indeed, Walgreens cited *Chen v. Yellen*, No. 3:14-cv-50164, 2021 U.S. Dist. LEXIS 175372, at *8 (N.D. Ill. Sept. 15, 2021) for the proposition that "expert opinions that rely primarily upon allegations in a complaint are not based on sufficient facts and data, as required by Rule 702, and are otherwise unreliable." Mot. at 7 (quoting *Chen*, 2021 U.S. Dist. LEXIS 175372, at *8) (citation omitted). This is because, as *Chen* points out, "[a]llegations in a complaint are not evidence." *Chen*, 2021 U.S. Dist. LEXIS 175372, at *8 (quoting *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 810 (7th

Cir. 2003)). Of course, statements made by a lawyer in a class certification brief are also not evidence. Not surprisingly, Plaintiffs fail to address *Chen*.[1]

Plaintiffs also argue that Schafermeyer did not "rel[y] solely on the allegations in the Complaint to support his opinion that Walgreens failed to meet the reasonable expectations of TPPs and their insured beneficiaries," because he "draws upon his long-term professional experience, education, and extensive knowledge of the industry to inform his opinion." Opp'n at 3. In support, Plaintiffs cite to *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010), for the proposition that an expert can rely on experience rather than data. *Id*. at 3-4. But *Metavante* expressly holds that, when an expert relies on experience, Rule 702 requires "that the expert explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.'" *Metavante*, 619 F.3d at 761 (citations omitted) (noting that the expert did not testify that his opinion was correct "because he said so," but rather explained the basis for his opinion based on his experience). *Metavante* also holds that the expert's testimony may not be based "on subjective believe or speculation." *Id*. (citation omitted). Other courts have made it clear that, an expert testifying primarily based on experience "must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts." *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 794 (N.D. Ill. 2011) (citation omitted); *see also Holden Metal & Aluminum Works v. Wismarq Corp.*, No. 00 C 0191, 2003 U.S. Dist. LEXIS 5247, at *7 (N.D. Ill. Apr. 2, 2003) (In barring an expert who relied, in part, on his "experience," the court found that he failed to explain how his experience led to his conclusion, why that experience was

---

[1] Plaintiffs state that Walgreens "presented no evidence" contradicting the allegations of the Complaint as to Plaintiffs' "reasonable expectations." Opp'n at 4. It is Plaintiffs, however, who have the burden of demonstrating that Schafermeyer's testimony is admissible, not Walgreens. *See, e.g.*, Fed. R. Evid. 702; *Sgouros v. Trans Union LLC*, No. 14 C 1850, 2022 U.S. Dist. LEXIS 49585, at *3 (N.D. Ill. Mar. 21, 2022) ("The proponent of an expert witness bears the burden of demonstrating that the expert's testimony is admissible by a preponderance of the evidence.") (citation omitted).

3

sufficient for his opinion, and how that experience reliably applied to the facts.); *Briscoe v. Health Care Serv. Corp.*, No. 16-cv-10294, 2020 U.S. Dist. LEXIS 9447, at *9 (N.D. Ill. Jan. 21, 2020) (denying class certification and finding plaintiffs' expert witnesses unreliable while reasoning that "witnesses relying upon experience must still explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts' so that the court is not simply required to take the expert's word for it") (citation omitted). Here, Schafermeyer falls short of meeting this requirement.

Schafermeyer's report contains only conclusory allegations regarding the "reasonable expectations" of TPPs and their insured beneficiaries. *See, e.g.*, Dkt. 553-45 (Schafermeyer Report) ¶ 48 ("TPPs have generally long been aware and reasonably understand that they pay based on the lower of the pharmacy's U&C price or the price negotiated with the PBM.") Nowhere in his report does Schafermeyer explain *how* his experience leads to his conclusion as to the TPPs' and their beneficiary's "reasonable expectations" or *how* his experience is reliably applied to the facts. *See Briscoe*, 2020 U.S. Dist. LEXIS 9447, at *9; *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term[.]"); *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, No. 12 C 6279, 2015 U.S. Dist. LEXIS 115633, at *41 (N.D. Ill. Aug. 31, 2015) (explaining that expert must do more than "simply proclaim" his conclusion). As a result, Opinion 7 does not meet the standards of Rule 702.

Moreover, Plaintiffs' argument that, "[e]ven if such criticisms were relevant . . . they go to the weight of Dr. Schafermeyer's opinion, not reliability," (Opp'n at 4), is incorrect. As the Advisory Committee on Evidentiary Rules has explained in relation to the Amendments to Rule 702 taking effect in December of this year, which are merely clarifying amendments, whether an

expert's opinion relies on sufficient facts or data and applies a reliable methodology goes to admissibility, not weight, and courts that have said otherwise are incorrect. *See* Report of the Advisory Committee on Evidence Rules, at 6 (May 15, 2022), https://www.uscourts.gov/rules-policies/archives/committee-reports/advisory-committee-evidence-rules-may-2022 ("Advisory Committee Report"). Here, Schafermeyer has not used sufficient facts or a reliable methodology for Opinion 7. Accordingly, the Court should exclude Opinion 7 from the Schafermeyer Report.

### B. Schafermeyer's Opinion Is An Improper Legal Conclusion As To Contracts

In addition to Opinion 7 being speculative and failing to meet the requirements of Rule 702, in its opening brief, Walgreens pointed out that Schafermeyer's opinion that Walgreens and the Relevant PBMs[2] may not enter into contracts that exclude PSC prices from the definition of U&C because that would defy the "reasonable expectations" of the TPPs and their beneficiaries is an improper legal conclusion. Mot. at 7-11. Plaintiffs respond by arguing that Schafermeyer has not offered a legal conclusion. Opp'n at 5-6. This argument, however, is disingenuous.

In their Reply in Support of Plaintiffs' Motion for Class Certification, Plaintiffs argue that Schafermeyer opined that "Walgreens should have reported or otherwise included its PSC price when determining the U&C price to report," because "consumers and TPPs reasonably understood that they would pay no more than the U&C price to receive prescription drugs." Dkt. 608 (Reply to Class Cert Mot.) at 4 (citing Dkt. 553-45 (Schafermeyer Report) ¶¶ 32, 40). Plaintiffs go on to argue that "Schafermeyer's testimony . . . establishes that Walgreens' failure to report or otherwise include its PSC prices was likely to deceive a reasonable consumer and unjustly enrich Walgreens." Reply to Class Cert. Mot. at 5. Plaintiffs further argue that "Walgreens' contracts

---

[2] Relevant PBMs refers to the PBMs that administered the pharmacy benefits for the TPP plaintiffs in this case and which are set forth in the Plaintiffs' proposed class definition. Pls.' Mot for Class Cert. (Dkt. 555) at 3.

with PBMs cannot immunize it from liability to those deceived and damaged by Walgreens' fraudulent conduct." *Id*. at 2. In other words, the import of Plaintiffs' argument, which is based entirely on Schafermeyer's speculative opinion, is that, because of what Schafermeyer claims are consumers' and TPPs' "reasonable expectations," Walgreens' contracts with Relevant PBMs ("Pharmacy-PBM Contracts") are not valid to the extent they define U&C to exclude the PSC price, or that Walgreens has committed fraud for abiding by its Pharmacy-PBM Contracts because the PBMs did not abide by their contracts with the TPPs.

And Schafermeyer demonstrated in his deposition that Opinion 7 is a legal conclusion in disguise, stating that "the fact that Walgreens convinced Express Scripts" to sign a contract that expressly excludes membership clubs from U&C "does [not] relieve them of their duty to provide the true usual and customary price." **Ex. A**: Schafermeyer Dep. at 150:7-151:2. Thus, despite being couched as an opinion regarding the Plaintiffs' "reasonable expectations," in Opinion 7, Schafermeyer opines that Walgreens and Relevant PBMs like Express Scripts, which are ***private parties***, cannot enter into legally enforceable contracts, or the contracts are not valid, because they define U&C in a way that would defy the so-called "reasonable expectations" of consumers and TPPs. This is an improper legal opinion, and the Court should exclude this opinion from Schafermeyer's report.

Moreover, Schafermeyer's opinion is wrong. *See Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 733 (7th Cir. 2021) (stating that, under Illinois law, "courts should not interfere with the right of two private parties to contract with one another if they freely and knowingly enter into the agreement") (citation omitted). Indeed, if TPPs had a reasonable expectation that they would receive Walgreens' PSC prices as U&C based on their PBM-TPP contracts, they should raise the issue with the PBMs with which they contracted, not with Walgreens, which was not a party to the

6

PBM-TPP contracts. That is, if the PBMs have violated their PBM-TPP contracts, the Plaintiffs should file claims *against the PBMs*, not against the pharmacies who are abiding by the contracts they legally entered into with the PBMs.

II. **SCHAFERMEYER'S UNSUPPORTED OPINIONS 3 AND 6 SHOULD BE EXCLUDED AS THEY ARE INCONSISTENT WITH THE RECORD AND APPLICABLE CONTRACTS AND LACK RELIABLE METHODOLOGY**

In Opinions 3 and 6, Schafermeyer opines that the industry uniformly understood U&C to mean the "lowest" price available to a cash customer for decades (Opinion 3) and that Walgreens should have reported its PSC prices as its U&C prices to PBMs (Opinion 6). Dkt. 553-45 (Schafermeyer Report) ¶¶ 20, 50-101. These opinions assert that the industry standard Schafermeyer posits controlled as to the definition of U&C price. *Id*. Walgreens has demonstrated, however, that these opinions lack a reliable methodology because Schafermeyer ignores the contractual language found in Walgreens' contracts with PBMs and Schafermeyer fails to consider relevant authorities that disagree with him. Mot. at 11-15.

The Opposition responds by: (1) citing the National Council for Prescription Drug Programs ("NCPDP") standards and a handful of other sources that Plaintiffs claim support Schafermeyer's opinions in light of Schafermeyer's experience; (2) arguing that Walgreens' arguments go to "weight" and not reliability under Rule 702; and (3) arguing that *U. S. ex rel. Garbe v. Kmart Corp.*, 824 F.3d 636 (7th Cir. 2016), supports and confirms Schafermeyer's opinions. Opp'n at 7-9. Plaintiffs are wrong on all fronts.

The materials that Plaintiffs reference in the Opposition—the NCPDP, Medicare Part D, State Medicaid Programs, Federal Employee Program Insurance Benefits ("FEP"), PBM Agreements, PBM Manuals, and Walgreens' Participating Pharmacy Agreements—do not expressly support Opinions 3 and 6. Opp'n at 7. For example, the NCPDP standards do not define U&C as the "lowest price including discounts"; rather, as addressed in the Motion and in the Expert

7

Report of Michael Jacobs ("Jacobs Report"), the NCPDP standards serve only to "provide[] [a] data field specification for submission of claims data, as NCPDP is a standards-development organization." Dkt. 586-2 (Jacobs Report) ¶ 68. In fact, parties are entitled to contract for a different U&C definition than the definition provided by the NCPDP. *Id*. ¶¶ 68-71. Nor is Walgreens aware of anything in Medicare Part D or FEP that would override a contractual definition of U&C agreed upon by a PBM and retail pharmacy (*see id.* ¶ 77), and state Medicaid definitions of U&C not only vary, but also they have no impact here because this dispute does not involve Medicaid claims. *Id.* ¶¶ 78-79.

Looking at the record evidence, including the applicable agreements and manuals cited, Schafermeyer offers no reliable methodology for his opinion that U&C always means the ***lowest*** price and that Walgreens was required under its Pharmacy-PBM Contracts to submit its PSC prices. Instead, the Pharmacy-PBM Contracts, which governed Walgreens' U&C submission obligations, demonstrate that U&C was subject to multiple different definitions controlled by agreement between Walgreens and the Relevant PBMs. *See* Mot. at 11-15. Critically, several of these agreements expressly defined U&C to ***exclude*** discounts, in direct contravention to Schafermeyer's opinions. *Id.* at 12-13. Moreover, the contracts between the Relevant PBMs and TPPs like the Fund Plaintiffs each defined U&C differently, with the exception of one that did not refer to, let alone define, U&C at all.

Yet Schafermeyer turns a blind eye to these same contractual definitions in formulating Opinions 3 and 6. He not only ignores these definitions, but also ignores the wealth of evidence from the pharmacy industry and PBMs, much of which is referenced in Jacobs' Report, such as the Academy of Managed Care Pharmacy ("AMCP"), Guide to Pharmaceutical Payment Methods, testimony and evidence directly from the Relevant PBMs, and other industry materials cited by

8

Jacobs. *See* Dkt. 586-2 (Jacobs Report) ¶¶ 40-65. Such evidence demonstrates that PBMs and pharmacies do not define U&C as the ***lowest*** price offered to cash customers. *See, e.g.*, *id.*; Mot. at 13-15. Even more surprisingly, Schafermeyer ignores **his own prior writings on the subject** in which he defined U&C as the "average"—not the lowest—cash price. Mot. at 15; Dkt. 553-45 (Schafermeyer Report) ¶ 141(b) n. 133; **Ex. A**: Schafermeyer Dep. at 191:13-194:3.[3]

Schafermeyer's standardless, experience-based opinions are inadmissible under Rule 702 because they have no basis other than his say-so. Schafermeyer's failure to consider directly relevant, contrary data in formulating Opinions 3 and 6 goes to his lack of reliable methodology and not to weight. *See Kljaic v. Whirlpool Corp.*, No. 15-CV-5980, 2017 U.S. Dist. LEXIS 70784, at *46-52 (N.D. Ill. May 9, 2017) (excluding expert opinions because "[i]gnoring relevant data is not a scientifically valid method" and "an expert is not permitted to simply ignore evidence that is contrary to her opinion in implementing an accepted methodology") (citation omitted); *see also Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 558-59 (7th Cir. 2019) (finding that the expert's "reliance on an anemic and one-sided set of facts casts significant doubt on the soundness of her opinion, and the court did not abuse its discretion by excluding it"); *Barber v. United Airlines, Inc.,* 17 F. App'x 433, 437 (7th Cir. 2001) ("Because in formulating his opinion Dr. Hynes cherry-picked the facts he considered to render an expert opinion, the district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to 'assist the trier of fact.'") (citation omitted). Schafermeyer's cherry-picking and reversal from his prior views reflected in his earlier book publication further suggest that he has

---

[3] Despite his attempt to walk back his prior publication, Schafermeyer's flip-flop on the meaning of U&C price from the "average" price to the *lowest* price calls into question his methodology in concluding that the latter view reflects the singular industry understanding of U&C "for decades" that overrides Walgreens' agreements with the Relevant PBMs at issue.

developed Opinions 3 and 6 "expressly for the purposes of testifying, has not accounted for obvious alternative explanations, and has not been as careful as [he] would have been in his regular professional work." *Kljaic,* 2017 U.S. Dist. LEXIS 70784, at *47-48 (citing *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) (per curiam)). "[T]his is not the type of case where an expert has chosen between two 'competing theories when both are supported by reliable scientific evidence.' Rather, it is a case in which ***an expert had highly relevant data in front of him and effectively crossed out a large portion of it without any adequate explanation***." *Kljaic,* 2017 U.S. Dist. LEXIS 70784, at *48 (emphasis added) (quoting *Kuhn v. Wyeth, Inc.,* 686 F.3d 618, 633 (8th Cir. 2012)).

Plaintiffs' argument that the Seventh Circuit's decision in *U.S. ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016), supports Schafermeyer's Opinions 3 and 6 also fails. *Garbe* does not concern pharmacy industry standards, insurance coverage, PSC, or the Pharmacy-PBM Contracts at issue in this case. Rather, *Garbe* addressed the reporting obligation of U&C with respect to Kmart's club program under a specific contract with respect to certain federal health programs. *Garbe*, 824 F.3d at 634-35. Plaintiffs' argument that a 2016 legal opinion supports or confirms Schafermeyer's expert opinions as to what he claims is a decades-old industry standards imposed on negotiated private contracts—rather than ***the actual contracts themselves***—defies reason and provides no reliable basis for his opinions. Accordingly, the Court should exclude Schafermeyer's Opinions 3 and 6 under Rule 702.

### III.　CONCLUSION

For the foregoing reasons and the reasons stated in Walgreens' Motion, the Court should exclude Opinions 3, 6, and 7 of Schafermeyer's Report, and Plaintiffs should be precluded from relying on any testimony from Schafermeyer about those opinions in this matter.

DATED: August 22, 2023

          *s/ Michael Scott Leib*
          Michael Scott Leib
          Anthony Robert Todd
          **REED SMITH LLP**
          10 S Wacker Dr # 4000
          Chicago, IL 60606
          Telephone: 312/207-1000
          *mleib@reedsmith.com*
          *atodd@reedsmith.com*

          Frederick Robinson (*pro hac vice*)
          Selina Coleman (*pro hac vice*)
          Megan Engel (*pro hac vice*)
          Jessica Christensen (*pro hac vice*)
          **REED SMITH LLP**
          1301 K Street, N.W.
          Suite 1100 East Tower
          Washington, DC 20005
          Telephone: 202-414-9200
          *frobinson@reedsmith.com*
          *scoleman@reedsmith.com*
          *mengel@reedsmith.com*
          *jchristensen@reedsmith.com*

          **Attorneys for Defendant Walgreen Co.**

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 22nd day of August, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

                                  *Michael Scott Leib*
                                  Michael Scott Leib