**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Civil No. 17-cv-2246 <br><br> Judge Edmond E. Chang <br> Magistrate Judge Sheila Finnegan |

**MOTION TO STRIKE OR EXCLUDE PORTIONS OF
SCHAFERMEYER'S REBUTTAL REPORT AND ANY TESTIMONY REGARDING
THE SAME PURSUANT TO FEDERAL RULES OF EVIDENCE 702 AND 403 AND
FEDERAL RULE OF CIVIL PROCEDURE 26**

Walgreen Co. ("Walgreens") moves this Court pursuant to Federal Rules of Evidence 702 ("Rule 702") and 403 ("Rule 403") and Federal Rule of Civil Procedure 26(a)(2)(D)(ii) to strike or exclude Opinions II.B(1), IV.A, XIV, XV, and a portion of footnote 151 of the rebuttal report of Plaintiffs' expert, Kenneth W. Schafermeyer, Ph.D. Dkt. 603-1 (Rebuttal Report of Dr. Kenneth Schafermeyer) ("Schafermeyer Reb. Report"), and to preclude Plaintiffs from relying on testimony regarding such opinions. In support, Walgreens states as follows:

## I. WALGREENS' MOTION MUST BE ADDRESSED BEFORE THE COURT ADDRESSES CLASS CERTIFICATION

For the reasons set forth in Section II of Walgreens' Motion to Exclude Opinions 3, 6, and 7 of Schafermeyer's Expert Report pursuant to Rule 702 (Dkt. 580) ("Schafermeyer Motion I"), the Court must address and resolve the admissibility of Schafermeyer's rebuttal opinions before resolving class certification.

## II. FACTS AND LEGAL STANDARD

Walgreens refers to and incorporates the facts and legal standard set forth in Section I and III of the Schafermeyer I Motion.

In addition, Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403. As the Supreme Court noted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), evaluating whether testimony is admissible pursuant to Rule 403 is critical in the case of expert testimony, which can be "both powerful and quite misleading because of the difficulty in evaluating it." *Id.* at 595 (citation omitted).

### III. ARGUMENT

#### A. Schafermeyer's Citations To Expert Testimony From Other Cases (Opinion II.B(1)) Is Inappropriate And Highly Prejudicial

Walgreens' expert Michael Jacobs opines that, in the PBM and retail pharmacy industries, the terms "cash price" and "retail price" are not "understood to encompass pricing available to customers who have joined a membership club like PSC." Dkt. 586-2 (March 16, 2023 Expert Report of Michael S. Jacobs) ("Jacobs Report") ¶ 41. He points out that his position "is supported by evidence in the record," citing deposition testimony *in this case* from PBMs Express Scripts and Medco, Caremark, and Optum. *Id*. ¶¶ 43-46. He specifically notes:

> Although Schafermeyer makes the claim that the industry views membership club prices as cash prices, this is the opposite of my understanding, and I am not aware of any testimony *from the PBM representatives deposed in this case* that conflicts with my understanding that a pharmacy's 'cash price' is separate from its membership club prices.

*Id*. ¶ 47. In Schafermeyer's Rebuttal Report (Opinion II.B(1)), he responds that Jacobs's "selection of certain PBM representatives' statements and omissions of others renders his opinions unreliable as he omitted declarations and testimony by others associated with PBMs whose opinions are in opposition to his." Dkt. 603-1 (Schafermeyer Reb. Report) ¶¶ 14-15. Schafermeyer then cites to the declaration of Dale Chamberlain and testimony of Robert Navarro *from another case*, neither of which was produced in discovery in this case, for the proposition that other PBM testimony conflicts with the PBM testimony Jacobs cited. *Id*. ¶ 15. Schafermeyer's argument, however, is not proper expert testimony and should be stricken for three reasons: (i) it is an improper attempt to bolster Schafermeyer's expert report with purportedly similar expert testimony from undisclosed experts; (ii) it is not proper rebuttal testimony; and (iii) its probative value is substantially outweighed by the danger of unfair prejudice.

1. **Schafermeyer cannot rely on expert opinions from another case that merely state the same thing as Schafermeyer's opinion**

While Schafermeyer cites to Dale Chamberlain's declaration and Robert Navarro's testimony in *Corcoran v. CVS Pharmacy, Inc.*—which was later recaptioned as *Washington v. CVS Pharmacy, Inc.*—as evidence that "others associated with PBMs" disagree with Jacobs, at the time of their testimony, Chamberlain and Navarro were not "associated with PBMs." Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 15. In fact, in *Corcoran*, Chamberlain and Navarro testified on behalf of the plaintiffs as ***paid experts***, not as PBM representatives. *See* Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 15 n.13 (citing "Expert Declaration of Dale Chamberlain"); *Corcoran v. CVS Pharmacy, Inc.*, 4:15-cv-03504-YGR, Dkt. 274-12 (attaching expert declaration of Chamberlain), Dkt. 186 (motion to strike Navarro's expert declaration and testimony) (a copy of the Docket Report is attached as **Ex. A**.).[1]

Schafermeyer's opinion impermissibly rests on the two experts' conclusions from *Corcoran* and is not admissible because he relies on two undisclosed expert witnesses who have not submitted a report in this case or been offered for deposition. Moreover, Schafermeyer merely recites the expert conclusions—as if they are facts—without assessing or analyzing their merit. The Seventh Circuit does not permit experts to simply parrot another expert's opinion or allow one expert to vouch for the other expert's opinion. *See, e.g.*, *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614-16 (7th Cir. 2002) (affirming the district court's striking of the plaintiff's expert opinions that simply parroted the opinions of the four affiants on which the expert based his

---

[1] As the Court is no doubt aware, *Corcoran* involved similar claims against CVS by a putative class of insured consumers alleging that CVS should not have charged them more than CVS's club price. On June 22, 2021, a jury found in CVS's favor on all claims. *See* Brendan Pierson, *Jury sides with CVS, accused of overcharging insurance customers*, Reuters (Jun. 24, 2021), https://www.reuters.com/legal/litigation/jury-sides-with-cvs-accused-overcharging-insurance-customers-2021-06-24/.

conclusions); *see also In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 U.S. Dist. LEXIS 48792, at *75-76 (N.D. Ill. Mar. 31, 2017) ("While . . . an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts, such expert must make some findings and not merely regurgitate another expert's opinion.") (citation omitted); *Rivera v. Guevara*, No. 12-CV-4428, 2018 U.S. Dist. LEXIS 248449, at *18 (N.D. Ill. June 5, 2018) (excluding expert's opinion quoting another expert as improper where he does no more than "parrot the opinions of another expert on the same subject," provides "no synthesis," and only "amplifies" the other expert's opinion) (citation omitted). Here, Schafermeyer parrots the opinions of experts Chamberlain and Navarro from the *Corcoran* case without analyzing or assessing their methodologies and attempts to use them to vouch for his own opinion (and *vice versa*). Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 15. The Court should exclude Opinion II.B(1) for impermissibly relying on expert opinions from another case that state the same thing as Schafermeyer's opinion.

2.  **Schafermeyer's testimony is improper rebuttal**

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii), an expert witness is permitted "to contradict or rebut evidence on the same subject matter identified by" another expert. "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Lowe v. CVS Pharm., Inc.,* No. 14 C 3687, 2017 U.S. Dist. LEXIS 74908, at *4 (N.D. Ill. May 17, 2017) (quoting *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th. Cir. 2008)). A "rebuttal expert report 'cannot be used to advance new arguments or new evidence to support [a] plaintiff's expert's initial opinions.'" *Id*. at *4-5 (citation omitted)); *see also Stanfield v. Dart,* No. 10 C 6569, 2013 U.S. Dist. LEXIS 20175, at *9 (N.D. Ill. Feb. 14, 2013) ("A party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief.") (citation omitted); *Noffsinger v. Valspar Corp.*, No. 09 C 916, 2011

U.S. Dist. LEXIS 60, at *18-20 (N.D. Ill. Jan. 3, 2011) (striking portions of an expert's rebuttal report that were not "limited to contradicting or rebutting evidence on the same subject matter identified by another party in its expert disclosures").

Here, Schafermeyer cites Chamberlain and Navarro for the proposition that "patients using a club membership discount program to purchase medication are 'cash customers.'" Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 15. In his opening report, however, Schafermeyer included an entire section titled "PSC Customers Are Cash Customers." Dkt. 553-45 (November 16, 2022 Report of Kenneth W. Schafermeyer, Ph.D.) ("Schafermeyer Report") ¶¶ 137-150. Although, for the reasons stated above and below, it still would have been improper testimony, Schafermeyer could have included his citation to the Chamberlain and Navarro testimony in his opening report, rather than add new evidence in his rebuttal report in an attempt to support his original opinion. These references to witness testimony in other cases are, therefore, improper rebuttal that the Court should exclude.[2]

### 3. Schafermeyer's testimony is highly prejudicial

Opinion II.B(1) also should be excluded under Rule 403, as any limited probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues [and] misleading the jury." Fed. R. Evid. 403; *Forsythe v. Rosen Med. Grp., LLC*, No. 11-cv-07676, 2015 U.S. Dist. LEXIS 1686, at *11 (N.D. Ill. Jan. 8, 2015). Rule 403 "applies to expert testimony just as it applies to any other evidence." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C

---

[2] Schafermeyer also cites to inconsistent testimony from a former executive at PBM Prime Therapeutics, Bretta Grinsteinner, which is not a PBM at issue in this case. Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 15. Any purported relevance of this testimony is questionable, however, given that (i) Grinsteinner, as even Schafermeyer admits, has flip-flopped on the issue for which Schafermeyer relies on her testimony, and (ii) there is no ability for the Court or a jury to judge whether her original testimony or her most recent testimony is more credible given that Schafermeyer cites only to an arbitration decision discussing Grinsteinner's declarations (and, therefore, it is hearsay within hearsay). Moreover, his citation to Grinsteinner's declarations is improper rebuttal for the same reasons discussed above.

1748, 2018 U.S. Dist. LEXIS 41677, at *362 (N.D. Ill. Mar. 14, 2018). In *Daubert*, the Supreme Court noted that evaluating admissibility pursuant to Rule 403 is critical in the case of expert testimony, which can be "both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (citation omitted). Here, Schafermeyer's opinion has limited, if any, probative value and would be significantly prejudicial to Walgreens and misleading to the jury.

Schafermeyer's claim that Chamberlain and Navarro were "PBM representatives" or "associated with PBMs" at the time of their *Corcoran* testimony is demonstrably false and misleading as they were acting as paid experts at the time of their testimony. Schafermeyer's opinion obfuscates and is likely to mislead the jury as to whether the two witnesses were stating facts as former employees of PBM Express Scripts or opinions as retained experts. Moreover, these witnesses are not being offered for cross-examination here, their cross-examination in *Corcoran* is not being provided, and Walgreens is not being afforded the opportunity to admit into evidence CVS's PBM expert's testimony in *Corcoran*—a former Optum and Blue Cross Blue Shield PBM Executive whose testimony was accepted by the jury, which found that CVS's contracts did not require CVS to report its club prices as its U&C prices. In other words, the only way to avoid the significant prejudice to Walgreens would be to admit large swaths of testimony from *Corcoran*, including the expert testimony that supports Jacobs's position, which would relegate the issue into an unnecessary sideshow given that the parties here already have testifying experts on the issues for which Schafermeyer cites Chamberlain and Navarro (Schafermeyer and Jacobs). *See Ratliff v. City of Chi.,* No. 10 C 739, 2012 U.S. Dist. LEXIS 164500, at *7 (N.D. Ill. Nov. 19, 2012) ("[I]n conducting the Rule 403 analysis, the Court must consider whether the potential for a complex 'trial within a trial' . . . will distract the jury from the critical issues for

decision while adding very little of probative value for their consideration."). No grounds support Schafermeyer sneaking in cumulative expert testimony, which has limited or no probative value, and allowing him to do so will be highly prejudicial to Walgreens. *See Dahlin v. Evangelical Child & Family Agency,* No. 01 C 1182, 2002 U.S. Dist. LEXIS 24558, at *15-16 (N.D. Ill. Dec. 18, 2002) (requiring the plaintiff to choose between two expert witnesses prior to trial to avoid "needlessly cumulative . . . duplication [that] would substantially outweigh the probative value"). For this reason and all the reasons set forth above, the Court should exclude Opinion II.B(1).

    **B. Schafermeyer Cannot, On Rebuttal, Point To Additional Record Evidence To Bolster His Opinion And, Therefore, The Court Should Exclude Opinion IV.A**

In his report, Jacobs opined that a "cash customer" is one that "does not use insurance or some other benefit to pay for a prescription (such as a third-party discount card like GoodRx or a membership club)," and that PSC prices are not "cash prices." Dkt. 586-2 (Jacobs Report) ¶¶ 40-47. In his original report, Schafermeyer opined on this exact issue, stating that a "cash customer" is one who does not use insurance and that "PSC Customers Are Cash Customers." Dkt. 553-45 (Schafermeyer Report) ¶¶ 25, 137-150. He even referred to evidence that he claims stands for the proposition that "Walgreens employees described the PSC as offering discounts to cash customers." *Id.* ¶¶ 127(c), 131, 141(c), 142-150.

In his rebuttal report, Schafermeyer now attempts to add what he calls "additional evidence" to bolster his opinion, citing to further documents that he characterizes as showing that "Walgreens repeatedly characterized the PSC as a cash program." Dkt. 603-1 (Schafermeyer Reb. Report) ¶¶ 50-54. One of those pieces of "additional evidence" was, in fact, cited by Schafermeyer in his opening report. Dkt. 553-45 (Schafermeyer Report) ¶ 142 n.138 (citing Amiet Dep. Ex. 73 at 3486); Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 51 n.45 (same). But Schafermeyer did not cite the other documents in that report. And because a "rebuttal expert report 'cannot be used to

advance . . . new evidence to support [a] plaintiff's expert's initial opinions'" (*see Lowe*, 2017 U.S. Dist. LEXIS 74908, at *4-5 (citation omitted)), the Court should exclude Opinion IV.A, as well as Paragraph 50, which introduces Opinion IV.A.

### C. Schafermeyer Has No Expertise In Customer Loyalty Programs And, Therefore, The Court Should Exclude His Opinion On The Topic In Rebuttal To Walgreens' Expert John W. Hanifin (Opinion XIV)

Walgreens submitted the expert report of John W. Hanifin to opine on the field of customer loyalty programs and the obstacles consumers face in joining PSC. Hanifin offered the following three opinions:

- PSC qualifies as a Customer Loyalty Program because of its marketing and operating structure, including the obstacles of enrollment.
- Walgreens designed PSC so that customers faced obstacles to enrollment, which distinguished PSC members from other customers.
- The obstacles to enroll in PSC were significant, which likely resulted in fewer enrollments.

*See generally* Hanifin Report, attached as Exhibit A to Walgreens' Opp'n to Pls. Mot. to Excl. the Expert Report and Test. of John W. Hanifin, also filed today. In Opinion XIV of his rebuttal report, Schafermeyer criticizes Hanifin's opinion because Hanifin is not a pharmacy expert. Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 143. But Schafermeyer has it backwards. Hanifin is uniquely qualified given his 25 years of experience in the field of customer loyalty programs to offer his opinions, whether it be relating to customer loyalty programs in the pharmacy field, electronics field, beauty products field, or any other field. *See generally* Walgreens' Opp'n to Plaintiffs' Mot. to Excl. the Expert Report and Test. of John W. Hanifin. By contrast, Schafermeyer has no credentials in the customer loyalty field and tries to offer opinions in that specialized field based on his experience in the pharmacy industry. The Court should not allow his attempt to opine in a field in which he has no credentials or experience.

Schafermeyer has not identified any qualifications or specialized skill in his report, rebuttal

report, or *curriculum vitae* related to customer loyalty programs or the loyalty marketing industry. *See generally* Dkt. 553-45 (Schafermeyer Report) and Ex. A (*Curriculum Vitae* of Kenneth W. Schafermeyer); Dkt. 603-1 (Schafermeyer Reb. Report). He has not identified any training or courses that he took related to customer loyalty programs, and he has never published an article or given a presentation on customer loyalty programs or the loyalty marketing industry. *See generally* Dkt. 553-45 (Schafermeyer Report) and Ex. A (*Curriculum Vitae* of Kenneth W. Schafermeyer); Dkt. 603-1 (Schafermeyer Reb. Report). Schafermeyer identifies no practical or specialized experience with respect to customer loyalty programs and cites no relevant experience in designing, implementing, quantifying, marketing, surveying customers, or managing such programs. *See generally* Dkt. 553-45 (Schafermeyer Report) and Ex. A (*Curriculum Vitae* of Kenneth W. Schafermeyer); Dkt. 603-1 (Schafermeyer Reb. Report). Although he claims to be informed by teaching courses in "microeconomics and pharmacy operations management," Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 154, he has not identified anything from the courses that address customer loyalty programs.

To render opinions on a subject, an expert must be qualified "by knowledge, skill, experience, training, or education." *See* Fed. R. Evid. 702; *see also Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). To determine whether an expert is qualified, "we ask not whether an expert 'is qualified in general' but whether he is qualified 'to answer a specific question.'" *United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Burns v. Sherwin-Williams Co.*, No. 19-cv-5258, 2022 U.S. Dist. LEXIS 168122, at *42 (N.D. Ill. September 18, 2022) (quoting

*Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir. 1990)). Courts "consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Trs. of the Chi. Painters & Decorators Pension v. Royal Int'l Drywall & Decorating*, 493 F.3d 782, 788 (7th Cir. 2007) (citation omitted). A court "must look at each of the conclusions [the expert witness] draws individually to see if [s]he has the adequate education, skill, and training to reach them." *Gayton*, 593 F.3d at 617. Courts have excluded expert reports and testimony where the experts were qualified in the relevant industry generally but were not qualified to opine on the **specific issues** in the case. *See Sgouros v. Trans Union LLC*, No. 14 C 1850, 2022 U.S. Dist. LEXIS 49585, at *5-6 (N.D. Ill. Mar. 21, 2022) (excluding consumer finance industry expert opinions where the expert did not have expertise on how consumers view credit report services).

Here, Schafermeyer's general academic credentials and general pharmacy experience do not qualify Schafermeyer to render opinions in the field of customer loyalty programs, including on the obstacles to joining the loyalty program of PSC. This field requires an understanding of consumer marketing which is wholly absent from Schafermeyer's knowledge, training, and experience. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 422-23 (7th Cir. 2000) (A person with a specialized degree or profession is not automatically qualified as an expert on any topic, as an expert must have "genuine expertise."). For these reasons, the Court should exclude Opinion XIV and preclude Schafermeyer from offering expert testimony regarding Hanifin's opinions.

> **D. Schafermeyer's Opinion XV Relies On Say-So Opinions That Are Unsupported, Improper Testimony Based On Experience Without Any Explanation As To How That Experience Shapes His Opinion, Cherry-Picked Information, And Citations To *Garbe* That Do Not Support His Opinion**

Walgreens submitted the expert report of Dr. Kelly Lear Nordby, an economist who opined that, "[a]s a matter of economics, the PSC membership fee is part of the PSC price." Dkt. 586-48

(Expert Report of Kelly Lear Nordby, Ph.D.) ("Nordby Report") ¶ 10. In Opinion XV, Schafermeyer criticizes Nordby. Dkt. 603-1 (Schafermeyer Reb. Report) ¶¶ 156-174. Opinion XV, however, fails to contain a reliable methodology that satisfies the requirements of Rule 702.[3]

*First*, Opinion XV relies on say-so opinions. For example, Schafermeyer testifies that "the membership fee is better understood as a profit center," (Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 160), with no explanation of the basis for this opinion. He also points out that Nordby criticizes him for overlooking that the two-part pricing structure of PSC (a membership fee plus a charge per purchase) "enables Walgreens to separate high-demand, price-sensitive cash customers from low-demand, less price-sensitive cash customers." Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 168 (quoting Dkt. 586-48 (Nordby Report) ¶ 49)). He opines that, "[b]ased on my knowledge and experience in this industry and examination of the record, I disagree with Nordby's conclusions" without providing any explanation as to why he disagrees or the basis for his disagreement other than claiming that her report is not specific to "pharmacy operations and managed care environment." Dkt. 603-1 (Schafermeyer Reb. Report) ¶¶ 169-70. Even then, he fails to provide any explanation for why that matters.

Rule 702 requires "that the expert explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (citations omitted) (noting that the expert did not testify that his opinion was correct "because he said so," but rather explained the basis for his opinion based on his experience). Other courts have made clear that an expert testifying primarily based on

---

[3] While Schafermeyer cites to the Humana arbitration throughout his Rebuttal Report, his failure to do so here is noteworthy given that Nordby provided the same opinion in that arbitration and the arbitrator found that, "[a]s a matter of pure economic theory, there is no question that Nordby's opinion is correct: the true cost of drugs purchased through the PSC included the membership fee customers had to pay to access those drugs." **Ex. E:** Excerpt of Phase II Damages "Framework" Ruling, at 25. The arbitrator sided with Nordby, finding that allocating a portion of the PSC membership fee was appropriate. *Id*. at 27.

experience "must explain *how that experience leads to the conclusion reached* . . . and *how that experience is reliably applied to the facts*." *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 794 (N.D. Ill. 2011) (emphases added) (citation omitted); *see also Briscoe v. Health Care Serv. Corp.*, No. 16-cv-10294, 2020 U.S. Dist. LEXIS 9447, at *9 (N.D. Ill. Jan. 21, 2020); *Holden Metal & Aluminum Works v. Wismarq Corp.*, No. 00 C 0191, 2003 U.S. Dist. LEXIS 5247, at *6-7 (N.D. Ill. Apr. 2, 2003). Schafermeyer does not meet this requirement.

Indeed, aside from casually claiming that Nordby's opinion is not specific to pharmacy operations, he claims Nordby fails to cite certain passages from *Garbe*, one of which she does cite, (*compare* Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 171, *with* Dkt. 586-48 (Nordby Report) ¶ 61), and the other of which is completely irrelevant to her opinion. Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 172. This does not rebut anything she says and is a non-sequitur. As to the second point, Schafermeyer refers to a section of *Garbe* that discusses Kmart's program and whether members of that program could be considered the "general public." *Id*. Nordby, however, does not opine as to whether PSC members are members of the "general public." *See* Dkt. 586-48 (Nordby Report) ¶ 15 n. 11 (noting that she has been informed that Walgreens disputes how Plaintiffs define U&C price as "the cash price to the general public, exclusive of sales tax or other amounts claimed," without opining on the dispute). Schafermeyer also writes that Nordby admitted in her deposition "that the *Garbe* Court **did not view the membership fee as a barrier**." Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 173 (emphasis in original). In addition to Schafermeyer failing to note that this part of the *Garbe* opinion was specific to Kmart's program, which has significant differences to PSC, (*see* Dkt. 586-48 (Nordby Report) ¶ 61), Schafermeyer conveniently omits the part of the deposition transcript between the two deposition cites in footnote 160 of his rebuttal report, in which Nordby testifies:

> That wasn't part of my assignment, to review the Garbe decision. I think, again, my opinions about the Garbe decision are what it found with respect to allocating the membership fee, and with respect to the barrier, it is specific to the fee in that case, which was $10, which is different from the fee in this case.

**Ex. B:** Nordby Dep. at 122:6-14; **Ex. C:** May 23, 2023 Nordby Errata at 153. In other words, Schafermeyer's citation to *Garbe* did not rebut anything from Nordby's report or testimony, and has nothing to do with supporting Schafermeyer's opinion that he disagrees with Nordby's conclusions as to the two-part pricing structure of PSC.

*Second*, Opinion XV fails to set forth a reliable methodology because it provides a cherry-picked, one-sided misstatement of the record to bolster Schafermeyer's ends-driven rebuttal. *See Kljaic v. Whirlpool Corp.*, No. 15-CV-5980, 2017 U.S. Dist. LEXIS 70784, at *46-48 (N.D. Ill. May 9, 2017) (criticizing an expert's "cherry picking" as demonstrating "that he has developed his opinion expressly for the purposes of testifying"); *see also Smith v. Ill. Dep't. of Transp.*, 936 F.3d 554, 558-59 (7th Cir. 2019) (finding that the expert's "reliance on an anemic and one-sided set of facts casts significant doubt on the soundness of her opinion, and the court did not abuse its discretion by excluding it"); *Barber v. United Airlines, Inc.,* 17 F. App'x 433, 437 (7th Cir. 2001) ("[S]elective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to 'assist the trier of fact.'") (citation omitted). In attempting to bolster his critique, Schafermeyer cites the fact that Walgreens' damages expert, Jed Smith, who had found that it is possible that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 603-1 (Schafermeyer Reb. Report) ¶¶ 160-164; *see also* **Ex. D:** April 25, 2023 Am. Expert Report of Jed Smith ("Smith Report") ¶ 37, Attach. 3. Schafermeyer, however, omits the relevant context—namely, that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* **Ex. D:** Smith Report ¶ 37, Attach. 3. Schafermeyer fails to explain how such a small percentage supports his critique. Thus, this too fails to support his opinion. *See Kljaic*, 2017 U.S. Dist. LEXIS 70784, at *48 ("[I]t

is a case in which an expert had highly relevant data in front of him and effectively crossed out a large portion of it without any adequate explanation.").[4]

For these reasons, the Court should exclude Opinion XV and preclude Schafermeyer from offering expert testimony regarding Nordby's opinions.

### E. Schafermeyer's Claim That Walgreens And PBMs Engaged In A Scheme Should Be Stricken As Prejudicial

Alternatively, if the Court does not exclude Schafermeyer's rebuttal to Nordby's opinion, his footnote asserting that Walgreens and PBMs engaged in a "scheme" should be stricken. In footnote 151 to Paragraph 160, Schafermeyer writes: "Obviously, there would also be some expenses associated with creating, operating and promoting the program *as well as paying the PBM partners for their participation in the scheme*." Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 160 n. 151 (emphasis added). There is no evidence that PBMs were involved in a scheme with Walgreens, nor have Plaintiffs made this allegation. *See generally* Fourth Am. Compl. (Dkt. 477). Such testimony could mislead the jury into believing Walgreens was involved in a scheme with the PBMs and paid the PBMs for their participation. Allowing that sentence to stand and Schafermeyer to testify regarding it would be highly prejudicial. For this reason, Walgreens asks

---

[4] Schafermeyer also claims that Nordby "ignores **the fact** that Walgreens provided PSC prices to FEP and state Medicaid enrollees *without including the membership fee*." Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 164 (first emphasis added). There is, however, no such fact. His contention regarding FEP (the Federal Employees Program), for which he provides no citations to anything in the record, is demonstrably false, as shown in Walgreens' Opposition to Plaintiffs' Motion for Class Certification, a document filed before Schafermeyer filed his Rebuttal Report. Dkt. 587 (Walgreens' Opp. to Class Cert.) at 26 n.23. Even Schafermeyer's opening report shows that Walgreens did not provide PSC prices to FEP. Dkt. 553-45 (Schafermeyer Report) ¶¶ 76-79. As for Schafermeyer's contention regarding the prices provided to state Medicaid enrollees, he also cites nothing in the record to support this assertion. To the extent he is referring to Walgreens' negotiated settlement with Connecticut, the parties agreed to terms to resolve litigation related to a Connecticut law that is not at issue in this case (and which did not include the passing on Pof SC prices to state Medicaid enrollees). Dkt. 553-45 (Schafermeyer Report) ¶¶ 71-75. There is nothing he points to that Nordby has ignored.

the Court to exclude the words "as well as paying the PBM partners for their participation in the scheme" and prohibit Schafermeyer from testifying that there was such a scheme or payments.

## IV. CONCLUSION

For all of the reasons set forth above, the Court should exclude or strike Opinions II.B(1), IV.A, XIV, XV, and part of footnote 151 of Schafermeyer's Rebuttal Report, and preclude Plaintiffs from offering or relying on any testimony from Schafermeyer about those opinions.

DATED: August 22, 2023

*Michael Scott Leib*
Michael Scott Leib
Anthony Robert Todd
**REED SMITH LLP**
10 S Wacker Dr # 4000
Chicago, IL 60606
Telephone: 312/207-1000
*mleib@reedsmith.com*
*atodd@reedsmith.com*

Frederick Robinson (*pro hac vice*)
Selina Coleman (*pro hac vice*)
Megan Engel (*pro hac vice*)
Jessica Christensen (*pro hac vice*)
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 East Tower
Washington, DC 20005
Telephone: 202-414-9200
*frobinson@reedsmith.com*
*scoleman@reedsmith.com*
*mengel@reedsmith.com*
*jchristensen@reedsmith.com*

**Attorneys for Defendant Walgreen Co.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of August, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

                                             *Michael Scott Leib*
                                             Michael Scott Leib