## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DOROTHY FORTH, LISA BULLARD, RICARDO GONZALES, CYNTHIA RUSSO, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, On Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>v.<br><br>WALGREEN CO.,<br><br>        Defendant. | Civil No. 1:17-cv-02246<br><br><br><br>Judge John Z. Lee<br><br>Magistrate Judge Sheila Finnegan |

## WALGREENS' MOTION FOR LEAVE TO FILE A SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND A SURREBUTTAL REPORT FROM ITS EXPERT, JED SMITH

Walgreens respectfully moves the Court for leave to file a surreply in opposition to Plaintiffs' motion for class certification ("Surreply"), and a surrebuttal report from one of Walgreens' experts, Jed Smith ("Smith Surrebuttal Report"). Copies of the proposed Surreply and Surrebuttal Report are attached as Exhibits A and B.[1] In support, Walgreens states as follows:

## I. INTRODUCTION

1. On June 20, 2023, Plaintiffs filed their reply in support of their motion for class certification ("Reply") and accompanying exhibits. Dkt. 602, 603, 609. The Reply has several new arguments not contained in Plaintiffs' opening brief. Among other things, Plaintiffs revised their proposed class definition and argued that, based on this revision, Plaintiff Ricardo Gonzales is now an appropriate class representative. Plaintiffs also raised several new arguments related to their damages model and Walgreens' criticisms of that model, and they grossly mischaracterize other Walgreens arguments. Walgreens seeks leave to file a 12-page surreply to address these new arguments.

2. Along with their Reply, Plaintiffs filed a rebuttal expert report from a newly disclosed expert, Dr. Susan Hayes (the "Hayes Report"), as well as a second expert report from Dr. Lynette Hilton (the "Hilton Rebuttal Report"). The Hayes Report contains new opinions to which Walgreens' experts have never had an opportunity to respond. And with respect to Hilton's Rebuttal Report, she purported to correct "minor coding errors" and produced over 150 pages of computer scripts, workpapers, and other materials in support of her analyses ***after*** Smith served his Amended Expert Report on April 25, 2023 ("Smith Report"). Hilton also cited, for the first

---

[1] Although the parties agreed to a briefing schedule for this motion for leave, Plaintiffs have informed Walgreens that they will not decide whether to agree to or oppose the motion until after seeing the proposed Surreply and the proposed Surrebuttal Report. Plaintiffs, however, have not disputed that they have amended their proposed class definition, disclosed a report for a new expert, and provided additional back-up materials for one of their original expert's methodology, and that Walgreens has never had an opportunity to respond to any of these things.

time, declarations from another case, which were never produced in this case. After Plaintiffs filed their Reply and Hilton filed the Hilton Rebuttal Report, Walgreens took Hilton's deposition on the topics of her opinions related to Plaintiffs' revised proposed class definition, the "minor coding errors" she opined on, and her new workpapers. To address (i) the new report from Hayes, (ii) the additional evidence submitted along with, and referred to in, Hilton's report and Hilton's testimony from her second deposition, and (ii) gross mischaracterizations that Hilton made of Smith's report, Walgreens seeks leave to file the Smith Surrebuttal Report.

3.      Walgreens believes that its Surreply and the Smith Surrebuttal Report are necessary to address Plaintiffs' newly raised arguments and newly produced evidence, particularly when Plaintiffs' class certification motion raises the potential of exposing Walgreens to a class of millions of consumers and tens, if not hundreds of thousands, of third-party payers. Moreover, Walgreens believes its Surreply and the Smith Surrebuttal Report will be helpful to the Court in making an informed decision as to Plaintiffs' class certification motion, as well as the Rule 702 Motions relating to Hilton, Smith, Hughes, and Hayes, as Walgreens refers to analyses Smith includes in the Surrebuttal Report in the briefs it is filing today relating to those motions. For these reasons and those set forth below, Walgreens asks the Court to grant its motion for leave.

4.      Although Walgreens requested oral argument on the motions to exclude experts and the class certification motion, Walgreens does not request oral argument on this motion.[2]

---

[2] Walgreen inadvertently did not include a request for oral argument on the motion, opposition, and reply briefs it filed on August 22, 2023. Dkts. 627, 623, and 625. Walgreens does seek oral argument with regard to those motions, as well Plaintiffs class certification motion and all motions regarding the various experts. Walgreens requests oral argument because of the complexity of the issues and the importance of the class certification motion, both as to Walgreens and Plaintiffs. Of course, the Court may decide to convene an evidentiary hearing with live witnesses on certain issues. For example, Walgreens has argued that Ricardo Gonzales and Cynthia Russo are not proper class representatives because, when determining the true PSC prices, there needs to be an allocation of the membership fee paid to join the Prescription Savings Club ("PSC"), and with an allocation, neither Gonzales nor Russo have any damages. Dkt 587 (Opp'n to Class Cert.) at 43-44, 46. Plaintiffs disagree. Dkt. 602 (Reply to Class Cert.) at 25-26. Depending

## II. LEGAL STANDARD

5.      "The decision whether to grant a motion for leave to file a surreply is within the Court's discretion." *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 857 (N.D. Ill. 2015) (citation omitted). The purpose of a surreply is to protect "the aggrieved party's right to be heard and provide[] the court with the information necessary to make an informed decision." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 329 (N.D. Ill. 2005). Appropriate grounds for granting leave to file a surreply include (1) allowing a party to address a new argument made in a reply brief, and (2) to correct "gross mischaracterizations" in a reply brief. *See In re Dairy Farmers*, 80 F. Supp. 3d at 857; *see also Franek v. Walmart Stores, Inc.*, No. 08-CV-0058, 2009 U.S. Dist. LEXIS 20361, at *60 n.14 (N.D. Ill. Mar. 13, 2009) (recognizing that a surreply might be appropriate "when a moving party 'sandbags' an adversary by raising new arguments in a reply brief").

## III. ARGUMENT

### A. The Proposed Surreply

6.      As noted above, Plaintiffs' Reply contains several new arguments and grossly mischaracterizes Walgreens' arguments. To that end, Walgreens seeks leave to file a 12-page surreply to address the following matters.

7.      *First*, through their Reply, Plaintiffs revised their proposed class definition. *See* Dkt. 602 (Reply) at 18. Because Walgreens did not have an opportunity to address Plaintiffs' new proposed class definition or Hilton's deposition testimony related to this revised definition,

---

on the Court's decision on other aspects of the class certification motion, this issue may need to be resolved for the Court to resolve the class certification motion, in which case the Court may need to hear from the parties' experts on the issue. In the event the Court does hold a hearing, Walgreens would still request oral argument, either before or after the hearing, or both, on the relevant motions.

Walgreens should receive the opportunity to address the issue through its Surreply. This would also include addressing Plaintiffs' new arguments that class members can identify themselves (*id.* at 17) and that Gonzales, who Walgreens proved in its opposition brief was excluded from the class under Plaintiffs original proposed class definition, is an appropriate class representative under the newly revised definition. *Id.* at 25-26.

8.    *Second*, in light of Walgreens' criticism of Hilton's damages methodology, specifically that Hilton's methodology does not account for the necessity of readjudicating every claim for every consumer class member in a plan year, and that it does not account for certain payments third party payers ("TPPs") receive from pharmacy benefit managers ("PBMs") or stop-loss insurance, Plaintiffs make a new argument that, even if her methodology is not precise, it establishes damages to a reasonable degree of certainty. *See* Dkt. 602 (Reply) at 13. Walgreens believes, however, that this new argument is incorrect and that the case law Plaintiffs cite is inapposite. Walgreens should be afforded the opportunity to present its response to Plaintiffs' new argument.

9.    *Third*, Plaintiffs argued in their Reply that, if the Court agrees that readjudication is required, then the PBMs relevant to their class definition can perform the readjudication. *See* Dkt. 602 (Reply) at 15-16. Walgreens has moved to exclude Hayes's opinion on this topic but, in the event the Court admits her opinion, Walgreens should have the opportunity to explain through this Surreply why the PBMs cannot be forced by the Court to conduct damage analyses.

10.   *Fourth*, Plaintiffs argue for the first time in their Reply that the collateral source rule bars evidence of certain payments that Walgreens believes need to be taken into account in any damages methodology and that whether the doctrine applies is a legal issue that presents a common question that applies classwide. *See* Dkt. 602 (Reply) at 14-15. Not only is this argument

new, but also it relies on case law that was not raised in Plaintiffs' motion and to which Walgreens has not had the opportunity to respond. Walgreens should be allowed to respond to this new argument.

11.     *Fifth*, in their Reply, Plaintiffs argue that Walgreens cannot seek discovery from PBMs and third-party payer class members as to their TPP-PBM contracts in the event a class is certified. *See* Dkt. 602 (Reply) at 7 n.5. This argument grossly mischaracterizes Walgreens' argument, as Walgreens wrote that the "parties," not Walgreens, need to conduct this discovery because it is Plaintiffs' burden to show damages, which they cannot do without the contracts. The Court should afford Walgreens the opportunity to correct Plaintiffs' misassertion. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 857 (N.D. Ill. 2015) (stating that correcting gross mischaracterization is a ground for permitting a surreply); *see also Univ. Healthsystem Consortium v. Unitedhealth Grp., Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (granting Plaintiff's motion for a surreply to address new arguments and correct the defendant's mischaracterizations of the plaintiff's arguments).

### B.     Proposed Surrebuttal Report

12.     As noted above, after Smith submitted the Smith Report, Plaintiffs revised their proposed class definition and offered the expert report of a newly disclosed expert, Hayes, as well as new opinions in the Hilton Rebuttal Report. Plaintiffs also made three separate productions totaling over 150 pages of computer scripts, workpapers, and other materials in support of Hilton's analyses. **Ex. B:** (Smith Surrebuttal Report) ¶ 7, App'x A. As Smith notes in his proposed Surrebuttal Report, "[e]ach additional production contained materials that amended or replaced materials in the prior productions." *Id*. at App'x A. In fact, in the Notice Plaintiffs filed on August 9, 2023, they admitted that Hilton had not produced her entire methodology until after Smith filed

the Smith Report. Dkt. 621. Smith attaches as Appendix A to his proposed Surrebuttal Report a timeline of the various Hilton reports, depositions, and data productions.

13. As noted above, since the Smith Report, Hilton was deposed on the topics of her opinions related to Plaintiffs' revised proposed class definition, the "minor coding errors" she opined on, and her new workpapers.

14. The proposed Surrebuttal Report responds to the opinions and information contained in the new Hayes report, the new opinions and information offered in Hilton Rebuttal Report, and select statements in Plaintiffs' Opposition to Motion to Exclude Hilton's Expert Reprot and Testimony. Specifically, the proposed Surrebuttal Report addresses the following topics on which Smith has never had a chance to provide his views:

15. *First*, the Surrebuttal addresses various opinions and information offered in Hayes's report. Because Hayes is a newly disclosed expert, the Court should grant leave for Smith to respond to the Hayes Report. Otherwise, Walgreens would be at a severe disadvantage.

16. *Second*, in Plaintiff's Opposition to Motion to Exclude Hilton's Expert Report and Testimony, Plaintiffs' reference certain fields in Walgreens' data in support of their argument (and Hilton's argument) that the PBMs will have this data. Dkt. 607, at 14. In his proposed Surrebuttal Report, Smith testifies that these fields are actually sparsely populated in the 2015 sample of Walgreens' data, with the fields being blank or null anywhere from 80-100% of the time. Walgreens needs this analysis to be part of the record to properly reply to Plaintiffs' argument. In arguing that the PBMs will have certain data, Hilton also refers to three declarations from another case that have never been referred to, or produced, in this case. In his Surrebuttal Report, Smith shows that these declarations do not prove Hilton's point. Because this is new evidence that is not part of the record, Smith should receive an opportunity to respond.

17.     *Third*, in the Hilton Rebuttal Report, Hilton makes various new assertions to which

Smith should be afforded an opportunity to provide a response:

      a.     Hilton claims that, in determining whether the usual and customary ("U&C") price was a basis for the price paid by potential class members, one should look to the U&C price and a tax field in Walgreens' data rather than in the PBMs' data. This responds directly to an analysis Smith did in his report where he showed that certain PBM data shows that, on some transactions, the consumer and TPP combined paid more than the U&C price. Smith needs to respond to Hilton's new argument, in particular to show that, even under her newly proposed methodology, there are still transactions in PBM data where the consumer and TPP paid more than the U&C price.

      b.     Hilton claims that the TPP identified in the PBM data is the TPP that paid for part or all of a prescription drug claim. In the Surrebuttal Report, Smith shows that this is not the case in various PBM productions produced in this case.

      c.     In Smith's original report, he opined that the Walgreens 2015 sample data shows over 149,725 different health plans that had claims adjudicated by the PBMs relevant to Plaintiffs' class certification motion. Hilton responds by claiming that Walgreens' PSC has almost 10,000 group numbers, in an attempt to argue that Smith's analysis is incorrect. In the Surrebuttal Report, Smith opines that Hilton's response is misleading and irrelevant and, in any case, even if Hilton was correct, additional analysis Smith conducted shows that, under Hilton's analysis, there would still be over 7,000 health plans to investigate in the 2015 sample data.

      d.     Hilton responds to criticisms Smith made regarding Hilton's methodology for matching transactions in Walgreens' data with transactions in PBM data, but does not explain how she would amend her methodology and claims Smith said something regarding this opinion that he did not say. Smith needs to respond to this, which he does in the Surrebuttal Report.

18.     *Fourth*, Smith responds to a change Hilton made to her methodology after Smith

filed his Amended Report for identifying plans that should be excluded under Plaintiffs' revised

proposed class definition. Smith's analysis also includes an analysis of this revised proposed class

definition. Because this involves changes Hilton made to her methodology and Plaintiffs' revised

proposed class definition, it is appropriate for the Surrebuttal Report.

19.     *Fifth*, as noted above, Plaintiffs admit that Hilton did not provide her entire methodology until after Smith filed the Smith Report. In the Surrebuttal Report, Smith addresses newly provided information, including scripts Hilton produced and revised workpapers, regarding her methodology.

20.     *Sixth*, Smith provides a methodology for allocating part of the PSC membership fee to the PSC price. Hilton grossly mischaracterizes Smith's methodology, and Smith should receive an opportunity to correct the record.

21.     *Seventh*, Hilton responds to a criticism that Smith makes regarding her unjust enrichment methodology. In the Surrebuttal Report, Smith points out that Hilton provides no methodology for allocating unjust enrichment damages between consumers and TPPs.

## IV.     CONCLUSION

For these reasons, Walgreens respectfully requests that the Court grant Walgreens leave to file a Surreply and Surrebuttal Report, copies of which are attached as Exhibits A and B.

DATED: September 14, 2023

/s/ Michael S. Leib
Michael S. Leib (IL Bar No. 6243348)
Anthony R. Todd (IL Bar No. 6317101)
**Reed Smith LLP**
10 S. Wacker Drive, Ste. 4000
Chicago, IL 60606

Frederick Robinson*
Selina Coleman*
Jessica Christensen*
**Reed Smith LLP**
1301 K Street, N.W.
Suite 1000
Washington, DC 20005-3317
*Admitted *Pro Hac Vice*

*Attorneys for Defendant Walgreen Co.*

## CERTIFICATE OF SERVICE

I certify that on the September 14, 2023, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

/s/ *Michael S. Leib*___
Michael S. Leib