# EXHIBIT A

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO.,<br><br>Defendant. | Civil No. 17-cv-2246<br><br>Judge Edmond E. Chang<br>Magistrate Judge Sheila Finnegan<br><br>**ORAL ARGUMENT REQUESTED** |

**WALGREEN CO.'S PROPOSED SURREPLY IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

I.      **INTRODUCTION**

In the Reply In Support of Plaintiffs' Motion for Class Certification ("Reply"), Plaintiffs revised their proposed class definition and made several new arguments, none of which support class certification.

*First*, Plaintiffs appear to concede that their original proposed class definition, which excluded "government-funded entities, and their beneficiaries," would have excluded Named Plaintiff Ricardo Gonzales. Plaintiffs have belatedly revised their proposed class definition to instead exclude "government entities" and their beneficiaries, except "state political subdivisions." But this revised proposed class definition exacerbates the ascertainability problem Walgreens already raised. Even Plaintiffs' own expert, Dr. Lynette Hilton, could not explain what a "government entity" or a "state political subdivision" is, and that information cannot be determined from Walgreens or pharmacy benefit manager ("PBM") data alone. Moreover, Plaintiffs have not presented evidence sufficient to show that Gonzales's health plan is a "state political subdivision" and, therefore, still have failed to establish that he is an appropriate class representative.

*Second*, in light of Walgreens' criticism of Hilton's damage methodology, Plaintiffs make a new argument that, even if her methodology is not precise, it establishes damages to a reasonable degree of certainty. The evidence, however, does not support this position. Instead, Hilton's methodology would assign damages to customers and third-party payers ("TPPs") that have none and would misallocate damages between TPPs and their beneficiaries causing damages to be overstated for some and understated for others.

*Third*, Plaintiffs boldly claim that, even if the Court accepts Walgreens' argument that a re-adjudication of all of a consumer's claims in a given plan year must be a component of any appropriate damages methodology, the third-party PBMs can perform this re-adjudication. The

1

Court, however, cannot force a third-party to act as Plaintiffs' expert, and this argument tacitly admits that Plaintiffs' own expert cannot conduct the required re-adjudication.

*Fourth*, Plaintiffs argue that the collateral source doctrine either completely bars Walgreens' argument that any damages analysis needs to account for General Effective Rate ("GER") payments and stop-loss insurance payments, or that its application to the facts of this case is a common question. Plaintiffs case law, however, is insufficient to establish that the issue of the application of the doctrine is a common question. Moreover, GER payments, which are merely PBM payments to TPPs in the event that TPPs overpay the PBMs, are not payments from a collateral source. In addition, some states have altered the collateral source doctrine by statute and Plaintiffs have failed to show that the doctrine applies with regard to consumer fraud statutes.

*Finally*, Plaintiffs' argument that Walgreens will not be able to take discovery as to the hundreds of thousands, if not millions, of contracts between PBMs and TPPs if a class is certified because the time period for that discovery has closed is misguided. It is Plaintiffs, not Walgreens, who need this discovery. Without it, TPP class members will be unable to show damages. Thus, either the discovery will not be allowed, resulting in TPP class members being unable to show damages, or the discovery will be allowed, resulting in individualized evaluations of hundreds of thousands, if not millions, of contracts. Either way class certification is not appropriate.

For all these reasons, class certification is not appropriate in this case and the Court should deny Plaintiffs motion seeking certification.

**II. DESPITE PLAINTIFFS' CHANGE TO THEIR PROPOSED CLASS DEFINITION, IT IS STILL NOT ASCERTAINABLE, AND PLAINTIFFS HAVE NOT SHOWN THAT NAMED PLAINTIFF GONZALES WOULD BE IN THE CLASS**

**A. Plaintiffs' Revised Proposed Class Is Still Not Ascertainable**

On the issue of ascertainability, in Walgreens' Opposition to Plaintiffs' Motion for Class Certification ("Opposition"), Walgreens identified various problems with Plaintiffs' proposed

class definition that make the definition so vague that it is difficult, if not impossible, to identify who is in the class. Dkt. 587 (Opp'n) at 47-48.[1] In their Reply, Plaintiffs proposed a revised class definition, although the revision did not address most of the issues that Walgreens raised. Dkt. 602 (Reply) at 18. Moreover, Plaintiffs' proposed modification makes the proposed definition more vague, not less.

Plaintiffs' original proposed class definition excluded "all government entities, including Medicare and Medicaid, and their beneficiaries, except for Medicare Part D beneficiaries" and "all government-funded entities, and their beneficiaries." Dkt. 554 (Mot.) at 2-3. In the revised definition, Plaintiffs propose excluding "all federal government entities, including Medicare and Medicaid, and their beneficiaries, except Medicare Part D beneficiaries," and "all state government entities, and their beneficiaries, except for state political subdivisions, such as, for example, cities, towns, municipalities, counties, and school districts, and their beneficiaries." Dkt. 602 (Reply) at 18. This revised exclusion leaves too many questions unanswered to lead to an ascertainable class.

As the Seventh Circuit has made clear, for a class to be ascertainable, "a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (citations omitted). As to this new class definition, one must first ask what is a "federal government entity"? Plaintiffs' expert, Hilton, who testified she understood the revised exclusions from reading them and from discussions with counsel, could not identify whether a federal workers' compensation plan, the Federal Employees Health Benefits Program ("FEP"), or TRICARE (coverage for active duty and reserve military members, or the Veteran's Administration) are "federal government entities." **Ex. 1**: (August 11, 2023 Deposition of Lynette Hilton, Ph.D. ("Hilton Reb. Dep."))

---

[1] Terms defined in the Opposition have the same meaning in this brief.

3

22:13-27:20. Hilton testified that, according to her understanding, a "federal government entity" is one "that is funded by the federal government" or "associated with the federal government," but she did not know if the entity had to be fully funded by the federal government to be a "federal government entity," and she did not know of any entities "associated" with the federal government that would not be funded by the federal government. *Id*. at 27:6-13; 33:2-12. For example, she did not know if a government contractor funded in part by the federal government is a "federal government entity." *Id*. at 33:13-18.

And then one must ask what is a "state government entity"? Hilton also did not know. She testified that it is an entity that is "funded by the state, or associated with the state," but she did not know if the entity had to be fully funded by the state and could not provide an example of an entity that was associated with the state but not funded by the state. **Ex. 1**: (Hilton Reb. Dep.) 31:1-14. As for "state political subdivisions," which Plaintiffs state would be an exception to the exception and, therefore, included in the proposed class, aside from the examples provided in the proposed class definition of "cities, towns, municipalities, counties, and school districts," Plaintiffs have not provided a definition of the term and, therefore, there is no way to know if an entity is a "state political subdivision." In fact, Hilton was not aware of any types of entities that would be "state political subdivisions" other than the examples in the proposed definition. *Id*. at 35:7-13.[2]

Hoping to salvage this unworkable class definition, Plaintiffs argue that the Court can allow class members to identify themselves. Dkt. 602 (Reply) at 17. But consumers and TPPs cannot self-identify whether they are in the class if the proposed class definition is so vague that the

---

[2] Even if the definitions of "government entity" and "state political subdivision" could be understood, data alone would not establish whether an entity is a "government entity or a "statement political subdivision," and individualized analysis would be required. *See* (Proposed Surrebuttal Report of J. Smith, attached as Ex. B to Walgreens' Mot. for Leave to file a surreply and surrebuttal report) ("Smith Surreb. Report"), Exhibit B to Walgreens' Motion to Exclude Hilton's Rebuttal Report, also filed today) at ¶ 15; **Ex. 1:** (Hilton Reb. Dep.) 58:17-23.

4

consumers and TPPs would not know. For example, how could a consumer know if they receive health benefits from a "state government entity" and how could a TPP know if they are a "state government entity" if that term is not defined and Hilton could not answer which types of entities are "state government entities"? And how could a consumer know if they receive health benefits from a "state political subdivision" and how could a TPP know if they are a "state political subdivision" if that term too is not defined (other than through the examples provided in the definition) and Hilton could not answer which types of entities are "state political subdivisions"? Even if potential class members provided declarations, the Court and the parties would have no way to determine if the answers meant the potential class members actually are class members. It is also noteworthy that Plaintiffs have failed to provide any proposed trial plan (even after Walgreens pointed this failure out multiple times in its Opposition) (*see* Dkt. 587 (Opp'n) at 11, 11 n.7, 15-16 n.11, 35), let alone one that would explain how self-identification would work.

Given the above, as well as Walgreens' argument on ascertainability in its Opposition, Plaintiffs have failed to establish the ascertainability class certification requirement.

### B. Because Plaintiffs Have Failed To Establish That Gonzales Is Included In Their Proposed Class, He Is Not Eligible To Act As A Class Representative

Plaintiffs appear to have made the change to the exclusions part of their proposed class definition in response to Walgreens having demonstrated in its Opposition that Named Plaintiff Gonzales was excluded from the class under the original proposed definition because he received his prescription drug benefits from a "government-funded entity"—the New Mexico Public School Insurance Authority ("NMPSIA"). Dkt. 587 (Opp'n) at 44-45. Despite their attempt to revise the proposed class definition to eliminate the "government-funded" part of the definition, Plaintiffs still have not shown that the NMPSIA is included within the class. In their Reply, Plaintiffs merely state that "Plaintiffs have proposed a modified class definition which clarifies that Mr. Gonzales

5

is not subject to a class exclusion," with no further explanation. Dkt. 602 (Reply) at 25-26. Walgreens, however, had pointed out in its Opposition that the NMPSIA is "a legislatively created body that receives government funds to provide insurance to, among others, public school employees." Dkt. 587 (Opp'n) at 45 (citations omitted). And Walgreens' expert Jed Smith provided evidence that the NMPSIA receives funds from the state general fund. *See* Dkt. 586-1 (Smith Report) ¶ 58. When Hilton was first asked at her deposition whether she had an opinion on whether the NMPSIA is a "state political subdivision," she testified that it appeared to be based on it having the words "public schools" in it. **Ex. 1:** (Hilton Reb. Dep.) 71:6-72:10. But then when asked whether finding out that "state funds from the state general coffers funded" the NMPSIA would affect her opinion on whether it was a "state government entity," she said she would have to consider that information, but did not have an opinion at the time. *Id*. 73:9-24. In other words, even Plaintiffs' expert cannot say whether the NMPSIA is a "state political subdivision." Because Plaintiffs have the burden of establishing that Gonzales is eligible to be a class representative, he is still not an appropriate class representative. *See* case law cited in Section IV.B.7 of Opp. And because Plaintiffs have not proposed any other Individual Plaintiff to act as a Wisconsin class representative, there can be no consumer class (as opposed to a TPP class) under Wisconsin law.[3]

---

[3] Apparently fearing that the Court will not name Gonzales as a class representative, through their Reply and Hilton's Rebuttal Report, Plaintiffs now seek to have Fund Plaintiff IBEW named as a class representative for Wisconsin. Dkt. 602 (Reply) at 26; (Hilton Reb. Report), Exs. 3C & 3D. Before, Plaintiffs only sought to have Gonzales named as a Wisconsin class representative. Dkt. 544 (Mot.) at 3 n.2. But a Fund Plaintiff cannot act as a named representative for consumers. *See* Dkt. 587 (Opp'n) at Section IV.C.2. Plaintiffs also "concede that Mr. Gonzales was not overcharged in Arizona," (Dkt. 602 (Reply) at 26), and, thus, there can be no consumer class or unfairness subclass (as opposed to a TPP Class) involving the Arizona Consumer Fraud Act. *See* Dkt. 587 (Opp'n) at Section IV.7.b.

6

### III. HILTON'S DAMAGES METHODOLOGY WOULD NOT ESTABLISH DAMAGES TO A REASONABLE DEGREE OF CERTAINTY, BUT RATHER WOULD ASSIGN DAMAGES WHERE THERE ARE NONE IN SOME CASES AND OVERSTATE AND UNDERSTATE DAMAGES IN OTHER CASES

In its Opposition, Walgreens showed that, "to properly calculate damages, Plaintiffs must 'readjudicate' *every claim* for *every class member* in a **plan year**, which requires individualized review for each customer, given that benefit designs of health plans differ widely." Dkt. 587 (Opp'n) at 30-31. Plaintiffs take issue with this, claiming for the first time in their Reply that Hilton's transaction-by-transaction approach allows for a reasonable estimation of actual damages, which, according to Plaintiffs, is all the law requires. Dkt. 602 (Reply) at 13 (citations omitted). But this ignores the evidence that shows that, assuming Plaintiffs could establish liability, Hilton's methodology would not be a reasonable estimation of damages, but rather would assign damages to those that have no damages and understate or overstate damages for those that do have damages. This would violate Seventh Circuit law. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013) (affirming decertification order where the plaintiffs damage theory would provide a "windfall" to some class members while "undercompensating" others).

For example, anyone who met their out-of-pocket maximum in a benefit year may have paid more than the PSC price for one or more transactions, but would have paid the same overall amount during the plan year regardless. (Amended Report of James Hughes) (Ex. A to Walgreens' Opp'n to Mot. to Excl. Hughes's Report, also filed today) ("Hughes Report") ¶¶ 98-104; Dkt. 627-1 (Amended Report of Jed Smith) ("Smith Report") ¶¶ 93-96. In addition, the failure to account for the effect an entire year of deductibles and copayments/coinsurance has on other transactions during the year could impact damages, which could result in assigning damages to consumers with none or misallocating damages between the consumer and the TPP. (Hughes Report) ¶¶ 91-112, 177-178. Moreover, GER and stop loss payments could eliminate TPP damages completely for a

7

year. (Hughes Report) ¶¶ 152-167; Dkt. 627-1 (Smith Report) ¶¶ 104-109. This is not a hypothetical; IBEW received a GER payment for ▮ for retail purchases in 2018 alone. Dkt. 627-1 (Smith Report) ¶ 108. This means that, because Hilton, in a document produced after Walgreens filed its Opposition, claims that IBEW had only ▮ in damages in 2018, IBEW had ▮ damages in that year. Dkt. 627-1 (Smith Report) ¶ 108; (Smith Surreb. Report) ¶ 18. Yet, Hilton would assign damages to IBEW in what Plaintiffs claim is a reasonable estimation of damages.

The hypothetical given by Plaintiffs' newly disclosed expert, Dr. Susan Hayes, whose report was provided after Walgreens filed its Opposition, is instructive. As Smith explains in his proposed surrebuttal report, under Hayes's methodology, she assigns $25 in damages to the consumer and no damages to the TPP when a readjudication of the entire plan year shows that the consumer was not damaged at all while the TPP would have damages of $25. (Smith Surreb. Report) ¶ 10. In other words, this is not an issue of a reasonable estimation of damages, but whether there were damages at all, and who was damaged.[4,5]

### IV. CONTRARY TO PLAINTIFFS' ARGUMENT, THE COURT HAS NO POWER TO FORCE THE PBMS TO READJUDICATE CLAIMS

Plaintiffs argue for the first time in their Reply that, in the event the Court requires re-adjudication, "the Relevant PBMs are capable of re-adjudicating Plaintiffs and Class members'

---

[4] Plaintiffs also point out that the Northern District of California certified a class in *Corcoran v. CVS Health*, No. 15-CV-03504-YGR, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017), *rev'd* 779 F. App'x 431 (9th Cir. 2019), a U&C case brought against CVS. Dkt. 602 (Reply) at 14. Plaintiffs argue that the court found that differences in damages amounts among members of a class do not bar class certification. However, while the *Corcoran* court did address the issue of out-of-pocket maximums, (*id.*, at *8), it did not consider the other individualized factors that Walgreens raised in its Opposition, such as the need to readjudicate because of deductibles and copayments/coinsurance.

[5] The fact that Hayes made so many errors in her hypothetical example, that the parties' experts still disagree about the proper PSC prices, and that Hilton cannot accurately apply her own methodology shows that, in the event a class is certified, experts will be needed in each of the millions of individual damages hearings, making class certification inappropriate. (Smith Surreb. Report.) ¶¶ 10, 17.

8

pharmacy claims." Dkt. 602 (Reply) at 15. But this new argument is a non-starter. The Court cannot require the Relevant PBMs, who are non-parties, to re-adjudicate one Plaintiff's transactions, let alone hundreds of millions of Plaintiffs' transactions. *See United States v. Kirschnbaum*, 156 F.3d 784, 794 (7th Cir. 1998) ("A district court may not enjoin non-parties who are neither acting in concert with the enjoined party nor are in the capacity of agents, employees, officers, etc. of the enjoined party."). Moreover, the fact that Plaintiffs devote an entire section of their Reply to arguing that "The Relevant PBMs Can Re-Adjudicate Class Members' Pharmacy Claims, If Necessary" appears to be a tacit admission that Plaintiffs' experts cannot perform this re-adjudication, meaning classwide damages are not feasible.[6]

## V.     THE COLLATERAL SOURCE RULE DOES NOT APPLY HERE

In its Opposition, Walgreens pointed out that TPP damages are individualized because, among other things, even if Plaintiffs succeed on liability, TPP class member damages may be affected by GER payments and stop-loss insurance payments that could reduce or eliminate damages. Dkt. 587 (Opp'n) at 33-35. As a result, individualized discovery from the Relevant PBMs and all of the TPP class members would be necessary. *Id.* Plaintiffs respond by arguing that they believe that the collateral source rule bars evidence regarding collateral source payments, but, in any case, the question of whether the collateral source doctrine applies is a common issue that

---

[6] Plaintiffs also argue that Hilton and Hayes have shown that information that is not in the data produced to date in this case by the Relevant PBMs that would be needed for re-adjudication, such as "historical data confirming whether claims were adjudicated by reference to the U&C price, whether a copay or coinsurance was charged, and even information relating to deductibles, Medicare Part D coverage bands, and out-of-pocket maximums indisputably exists and can be produced in this action or used by PBMs to re-adjudicate Plaintiffs and Class members' claims." Dkt. 602 (Reply) at 12. As shown, however, in Walgreens' Reply in Support of its Motion to Exclude Hilton's Expert Report and Walgreens' Motion to Strike or Exclude Hilton's Rebuttal Report, both filed today, and which Walgreens incorporates by reference, Hilton and Hayes have **not** made that showing. *See* Walgreens' Reply in Support of its Motion to Exclude Hilton's Expert Report, at 8-10, 14-15; Walgreens' Motion to Strike or Exclude Hilton's Rebuttal Report, at 10-11.

9

applies classwide and, therefore does not defeat class certification. Dkt. 602 (Reply) at 14-15. Plaintiffs' new argument fails for several reasons.

As a threshold matter, Plaintiffs cite only two District of Kansas cases for the proposition that whether the collateral source doctrine applies is a common question among the entire class, and one of those two Kansas cases cites to the other. Walgreens is unaware of any other cases that rule this way. And the facts of those cases were very different from this case. In both *In re EpiPen (Ephinephrine Injection USP) Mktg. Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 U.S. Dist. LEXIS 40789, at *99-100 (D. Kan. Mar. 10, 2020) and *In re Syngenta AG Mir 162 Corn Litig.*, 2016 U.S. Dist LEXIS 132549, at *1383-84 (D. Kan. Sept. 26, 2016), the courts found that, even if the courts had to take into account the third-party payments at issue, individual inquiries would not "be so overwhelming as to defeat predominance." That is not the case here.

Moreover, GER payments are not collateral sources. As described in Walgreens' Opposition, the TPPs pay PBMs, not Walgreens, for prescription drugs purchased by their members. Dkt. 587 (Opp'n) at 33-34. GER provisions are where "the PBM guarantees that, over a certain amount of time, the TPP will not be charged more than a certain amount, which is not based on U&C." *Id*. at 33 (citations omitted). If the PBM charges more than allowed under the guarantee, the PBM returns money to the TPP. Thus, it is not a third party (i.e., a collateral source) making a payment to the TPP—rather, it is the very entity that the TPP paid returning some of the money back to it (i.e., a direct source). It is like a customer paying $50 for a product and the store informing the customer of an accidental overcharge, refunding $5 back to the customer. The $5 is not a collateral source payment. Here, the fact that the TPP pays the PBM rather than Walgreens does not make the PBM payment to the TPP a collateral source payment.

Moreover, Plaintiffs' cases do not show that the collateral source rule applies in this case. As to Ohio law, an Ohio statute has modified the collateral source doctrine to make it clear that collateral source evidence may be introduced for any damage resulting from "loss to person or property." ORC Ann 2315.20. In Illinois, the doctrine does not apply when a plaintiff has not suffered an injury. *Lewis v. Lead Indus. Ass'n*, 178 N.E.3d 1046, 1059-61 (Ill. 2020). For example, as noted above, in 2018, Hilton claims IBEW had ▮▮▮▮ in damages, but IBEW received ▮▮▮▮ in GER payments for retail purchases and, therefore, was not damaged in that year. *See* Section III, above. For those class members who were not damaged, Illinois would not apply the collateral source doctrine. Moreover, the cases Plaintiffs cite in footnote 11 of their Reply are virtually all personal injury/wrongful death cases. The only case that Plaintiffs cite that applies to one of the claims brought in this case is *Cottrell v. AT&T Inc.*, NO. 19-cv-07672-JCS, 2020 U.S. Dist. LEXIS 151270, at *17-19 (N.D. Calif. 2020), where the court stated that it was not aware of any cases applying the collateral source doctrine to California's Unfair Competition Law, then decided to allow it in that case. But even in *Cottrell*, the court cited an Eighth Circuit opinion that decided not to apply the collateral source doctrine to a claim under the Illinois Consumer Fraud Act, noting that the plaintiff there had not cited any case applying the doctrine to the Act. *Id*. at *13-14 (quoting *In re SuperValu, Inc.*, 925 F.3d 955, 965 (8th Cir. 2019)). Thus, Plaintiffs have not shown that the doctrine applies to consumer fraud claims such as the ones asserted in this case.

VI. **PLAINTIFFS' ARGUMENT THAT, IN THE EVENT A CLASS IS CERTIFIED, DISCOVERY WILL NOT BE ALLOWED AS TO PBM-TPP CONTRACTS PROVES THAT CLASS CERTIFICATION IS NOT APPROPRIATE AS TO TPPS**

In their Reply, Plaintiffs argue that, while "Walgreens claims that it will 'conduct discovery as to each TPP class member,' . . . the Court declined to bifurcate class and merits discovery . . . and Walgreens chose not to pursue such discovery when it could." Dkt. 602 (Reply) at 7 n.5. Plaintiffs claim, therefore, that, in the event a class is certified, the Court will not need to review

11

"hundreds of thousands, if not millions of PBM-TPP" contracts, as Walgreens claims. *Id.* (quoting Opp'n at 29). Plaintiffs, however, have it all wrong. Walgreens wrote that "the parties," not Walgreens, "will need to conduct discovery as to ***each TPP class member*** and each of the PBMs to discover ***every contract between TPP class members and the Relevant PBMs*** (except those the proposed class definition excludes)." Dkt. 587 (Opp'n) at 28-29 (emphasis in original). And that is because it is Plaintiffs' burden to show damages. Without each TPP class member producing their contract with their PBM, the TPP class members will be unable to show they were damaged. In other words, Plaintiffs will need this discovery, not Walgreens. Thus, either Plaintiffs are correct and the discovery will not be allowed, resulting in TPP class members being unable to show damages, or discovery will be allowed resulting in individualized evaluations of hundreds of thousands, or millions, of PBM-TPP contracts. Either way, class certification as to TPPs is not appropriate.

## VII. CONCLUSION

For these reasons, and those discussed in Walgreens' Opposition, Walgreens' experts' reports, and briefing on excluding Plaintiffs' experts, the Court should deny Plaintiffs' motion for class certification.

DATED: September 14, 2023

        */s/ Michael S. Leib*
        Michael Scott Leib
        Anthony Robert Todd
        **REED SMITH LLP**
        10 S Wacker Dr # 4000
        Chicago, IL 60606
        Telephone: 312/207-1000
        *mleib@reedsmith.com*
        *atodd@reedsmith.com*

        Frederick Robinson (*pro hac vice*)
        Selina Coleman (*pro hac vice*)
        Megan Engel (*pro hac vice*)
        Jessica Christensen (*pro hac vice*)
        **REED SMITH LLP**
        1301 K Street, N.W.
        Suite 1100 East Tower
        Washington, DC 20005
        Telephone: 202-414-9200
        *frobinson@reedsmith.com*
        *scoleman@reedsmith.com*
        *mengel@reedsmith.com*
        *jchristensen@reedsmith.com*

        ***Attorneys for Defendant Walgreen Co.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

                                                  */s/ Michael S. Leib*
                                                  Michael S. Leib