# EXHIBIT C

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF ILLINOIS
 3                 EASTERN DIVISION
 4
 5  CYNTHIA RUSSO, LISA BULLARD,        )
    RICARDO GONZALES, INTERNATIONAL     )
 6  BROTHERHOOD OF ELECTRICAL WORKERS   )
    LOCAL 38 HEALTH AND WELFARE FUND,   )
 7  INTERNATIONAL UNION OF OPERATING    )
    ENGINEERS LOCAL 295-295C WELFARE    )
 8  FUND, AND STEAMFITTERS FUND LOCAL   )
    439, on Behalf of Themselves and    )
 9  All Others Similarly Situated,      )
                                        )
10              Plaintiffs,             )
                                        )
11                vs.                   )Case No.
                                        )17-cv-2246
12  WALGREEN CO.,                       )
                                        )
13              Defendant.              )
    _____)
14
15
16        VIDEO-RECORDED REMOTE DEPOSITION OF
17               LYNETTE HILTON, Ph.D.
18             Tuesday, January 17, 2023
19                    Volume I
20
21   *** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ***
22  Reported by:
    CARLA SOARES
23  CSR No. 5908
24  Job No. 5645367
25  Pages 1 - 347
```

Page 74

```
 1    generic prescription drugs from Walgreens?          17:22:12

 2              MR. ALEXANDER:  Objection to form.

 3              THE WITNESS:  For example, the PBM could

 4    pay Walgreens for a prescription, and the TPP would

 5    reimburse the PBM for that amount.                 17:22:15

 6    BY MR. LEIB:

 7         Q   Is that a real-world situation that

 8    occurs?

 9              MR. ALEXANDER:  Objection to form.

10              THE WITNESS:  It is my understanding that  17:22:18

11    that can occur, yes.

12    BY MR. LEIB:

13         Q   In what situations can that occur?

14              MR. ALEXANDER:  Objection to form.

15    Objection to scope.                                17:22:21

16              THE WITNESS:  The example that I just gave

17    where a PBM would be paying the pharmacy, and then

18    the TPP would be paying the PBM.

19    BY MR. LEIB:

20         Q   Do you know the terms "spread pricing" and  17:22:24

21    "pass-through pricing"?

22         A   I have heard those terms, yes.

23         Q   Are you referring -- in your example, are

24    you referring to one of those situations?

25         A   I wasn't intending to.  I suppose that     17:22:28
```

Page 76

| | | |
|---|---|---|
| 1 | in part, for generic prescription drugs from | 17:22:48 |
| 2 | Walgreens? | |
| 3 | A   I'm sorry.  Could you repeat that?  Did | |
| 4 | you say "person or entity"? | |
| 5 | Q   Yes.  Are you aware of any other examples | 17:22:51 |
| 6 | of a person or entity who reimbursed, in whole or in | |
| 7 | part, for generic prescription drugs from Walgreens? | |
| 8 | A   Examples other than consumers and TPPs | |
| 9 | that we just discussed? | |
| 10 | Q   I don't think you talked about consumers. | 17:22:56 |
| 11 | I think you talked about, in your answer, the TPP | |
| 12 | paying the PBM. | |
| 13 | Did I misunderstand? | |
| 14 | A   Well, I think you -- unless I | |
| 15 | misunderstood what you said -- did you change the | 17:23:00 |
| 16 | question to who paid or reimbursed? | |
| 17 | Q   No.  I'm just asking reimbursed. | |
| 18 | Situations in which a person or entity reimbursed, | |
| 19 | in whole or in part, for generic prescription drugs | |
| 20 | from Walgreens. | 17:23:05 |
| 21 | A   Okay. | |
| 22 | Q   You gave me one example you could think of | |
| 23 | of that type of a situation.  I'm asking you if you | |
| 24 | have any other examples that you can think of where | |
| 25 | that would happen. | 17:23:09 |

```
                                                    Page 77
 1        A   I see.  No.                        17:23:10

 2        Q   And did you consider the term "or

 3   reimbursed" in your methodology in any way?

 4        A   No, I don't think so.

 5        Q   And then it says -- after it talks about  17:23:14

 6   the time period, January 1st through the present,

 7   and the states that we've already referred to, it

 8   says, "where the usual and customary price was a

 9   basis for the amount paid or reimbursed in

10   connection with the purchase of such drug."      17:23:19

11           Do you see that?

12        A   Yes.

13        Q   So if the U&C price was not the basis of

14   the amount paid or reimbursed, would that

15   transaction be excluded from your analysis of who's  17:23:23

16   in the class?

17           MR. ALEXANDER:  Objection to form.

18           THE WITNESS:  Yeah.  Can you repeat that

19   question?  Because I'm not sure --

20   BY MR. LEIB:                                  17:23:27

21        Q   Sure.  I'm going to break it up a little

22   bit.

23        A   Yeah.  Okay.

24        Q   To determine if a person or an entity for

25   whom prescription drug benefits were provided    17:23:30
```

Page 78

1    through those eight PBMs who we're defining as the        17:23:30

2    relevant PBMs -- is that correct?  Does "relevant

3    PBM" make sense to you?

4         A    Yes.

5         Q    Okay.  If -- to determine who the persons        17:23:34

6    or entities for whom prescription drug insurance

7    benefits were provided through those relevant PBMs,

8    and who paid or reimbursed, in whole or in part, for

9    generic prescription drugs from Walgreens, where the

10   usual and customary price was a basis for the amount      17:23:38

11   paid or reimbursed in connection with the purchase

12   of such drug, you need to look at -- you need to

13   determine if there were any transactions where the

14   person or entity had that situation, correct?

15        A    I think that's correct.                          17:23:44

16        Q    And in looking at those transactions to

17   decide if somebody is in the class, if the U&C price

18   was not a basis for the amount a person or entity

19   paid or reimbursed, then would you exclude that

20   transaction from your analysis?                            17:23:49

21             MR. ALEXANDER:  Objection to form.

22             MR. LEIB:  I'm going to change it very

23   slightly.

24        Q    In looking at those transactions to decide

25   if somebody is in the class, either a person or an        17:23:52

Page 79

```
 1    entity, if the U&C price was not a basis for the        17:23:54

 2    amount a person or entity paid or reimbursed, then

 3    do you, in your methodology, exclude that

 4    transaction from your analysis?

 5         A   I'm having a hard time answering the           17:23:58

 6    question as asked.

 7             Would you like me to ask a point of

 8    clarification or do you want to --

 9         Q   I would.

10         A   Okay.  Are you asking whether that entity      17:24:01

11    paid the U&C price or whether it was one of the

12    factors determined -- or looked at when they were

13    determining the price?

14         Q   I'm actually asking whether it was paid or

15    reimbursed.  If the U&C price -- not whether it was     17:24:06

16    considered in determining was one of the factors, as

17    you say -- but whether it was paid according to U&C.

18         A   Okay.  I'm sorry.  Can you ask the

19    question again now that I have that understanding?

20         Q   In looking at those transactions to decide     17:24:13

21    if somebody is in the class, either a person or an

22    entity, if the U&C price was not a basis for the

23    amount a person or entity paid or reimbursed, then

24    do you, in your methodology, exclude that

25    transaction from your analysis?                         17:24:19
```

Page 80

```
 1            MR. ALEXANDER:  Objection to form.        17:24:19

 2            THE WITNESS:  No.

 3   BY MR. LEIB:

 4       Q    Tell me why not.

 5       A    So it's my understanding that I should be  17:24:21

 6   including any transaction where U&C was considered.

 7       Q    As a possible basis for payment?

 8       A    That's right.

 9       Q    Okay.  This definition doesn't say that,

10   though, does it?  Would you agree with me on that?  17:24:25

11            MR. ALEXANDER:  Objection to form.

12            THE WITNESS:  I'm not sure I agree with

13   you on that.

14   BY MR. LEIB:

15       Q    Well, would you agree that it says, "where 17:24:27

16   the usual and customary price was a basis for the

17   amount paid or reimbursed"?

18       A    Yes, I see that.

19       Q    Would you agree with me that it doesn't

20   say, "where the usual and customary price was a     17:24:31

21   consideration for the amount the person paid or

22   reimbursed"?

23       A    It doesn't say the word "consideration."

24   I agree with you.

25       Q    It doesn't say anything like            17:24:35
```

Page 271

1    And if the co-insurance was 25 percent, the TPP          18:27:09

2    would pay the PBM $75, and the consumer would pay

3    Walgreens $25; is that correct?

4         A    That's my understanding, yes.

5         Q    Is there a field that you look at to          18:27:13

6    determine whether an individual consumer had

7    co-payment versus co-insurance?

8         A    I used the -- I calculated it myself.

9              So I looked at the consumer portion

10   divided by the total amount paid by the consumer and    18:27:16

11   the TPP for a given PBM in a given month.

12             And if 90 percent of those transactions

13   were the same percentage, then I assumed that it was

14   a co-insurance situation.  Otherwise, it was a

15   co-payment situation.                                    18:27:23

16        Q    So that's the number you used, 90 percent.

17   If 90 percent of the time it was the same

18   percentage, then you decided it was co-insurance?

19        A    Yes.  It's my understanding that there are

20   some variables in Walgreens' data that potentially      18:27:28

21   have information on that, and also that the PBMs

22   would have information on that.

23             But this is the way that I did it with

24   what -- the data that I have currently.

25        Q    What data were you looking at to determine     18:27:32

Page 272

1    that?                                              18:27:33

2         A    To determine what?  Sorry.

3         Q    Whether 90 percent had a certain

4    percentage.

5         A    So I was looking at -- for the PBM data   18:27:36

6    merged onto the Walgreens data.

7              If the consumer payment from the Walgreens

8    data, the TPP payment from the PBM data, the sum of

9    those becomes the denominator, the consumer payment

10   is the numerator, and if that percentage is greater   18:27:41

11   than -- if I see that percentage in greater than

12   90 percent of the transactions for a given month for

13   a given PBM, then I assume that it's a co-pay --

14   excuse me -- co-insurance situation.

15        Q    And if it was 89 percent of the time, you   18:27:48

16   would figure it was co-pay?

17        A    Yes.  That's the current methodology.

18        Q    What are you looking at -- what are we

19   getting as the sum total that we're trying to find a

20   denominator for?  How do we determine that           18:27:52

21   denominator?  What are we looking at?  Is it for an

22   individual?

23             So Bob Smith, we're looking at all Bob

24   Smith's transactions in a month?

25        A    No.  This is a transaction-by-transaction   18:27:57

Page 273

```
 1   analysis.                                           18:27:58

 2        Q    Well, I thought you said to determine if

 3   it's a co-insurance, you looked at a whole month.

 4        A    So for a given transaction, I would

 5   calculate the consumer portion as a percentage of   18:28:01

 6   the total amount paid, which is given by the TPP

 7   payment plus the consumer payment.  So that's on a

 8   transaction-by-transaction -- I first do that.

 9        Q    Okay.

10        A    Then for a given month, I look at all of   18:28:06

11   those transactions and determine whether most of the

12   transactions have that same 25 percent, for example.

13        Q    What do you mean by "those transactions"?

14        A    So first I start with the PBM

15   transactions, and I look at each transaction,        18:28:11

16   calculate the percentage that the consumer paid for

17   each transaction.

18             So do you have that in your mind?

19        Q    That one I've got.  The individual I've

20   got.                                                 18:28:15

21        A    Okay.  Okay.  So then, for every month,

22   let's say for month one, there are ten transactions.

23        Q    Ten transactions for -- ten transactions

24   for --

25             MR. ALEXANDER:  Please --                  18:28:19
```

Page 274

```
 1              MR. LEIB:  I understand.                      18:28:20

 2        Q    Ten transactions for Bob Smith?  Is that

 3   what you're saying?

 4              MR. ALEXANDER:  Counsel, I would just ask,

 5   please let the witness complete her answer in full      18:28:22

 6   before asking the next question, even if it's to

 7   clarify what she is testifying to.

 8   BY MR. LEIB:

 9        Q    No, it's not just for Bob Smith.

10              So what are all the transactions that       18:28:25

11   you're looking at to decide if Bob Smith has a

12   co-pay or co-insurance?

13        A    So I'm looking at -- again, this is the

14   PBM-produced data for the fund plaintiffs.

15              So I'm looking at, for a given PBM, for a    18:28:30

16   given month, all of the transactions in that month.

17   So these were the fund plaintiffs, right, for a

18   given PBM.

19        Q    Well, you first said, "For a given PBM for

20   a given month."  And then you said, "So these were     18:28:35

21   the fund plaintiffs," right?

22              So, look.  Steamfitters -- which did have

23   co-insurance -- Steamfitters had a specific plan.

24   That plan provided that they had co-insurance.

25              Are you only looking at Steamfitters         18:28:40
```

Page 275

```
 1    beneficiaries in that month, or are you looking at        18:28:41

 2    all CastiaRx transactions in that month?

 3                MR. ALEXANDER:  Objection to form.

 4                THE WITNESS:  So I'm doing it by PBM.  So

 5    to answer your question, if I looked at -- I would         18:28:45

 6    look at Castia transactions for month one for all

 7    of -- all of the transactions in that month, and

 8    determine if the majority, or more than the -- you

 9    know, 90 percent, were the same percentage,

10    25 percent, 35 percent, whatever it is, then I would      18:28:50

11    identify that as a co-insurance situation.

12                That works with the data that I have here.

13    If I'm given more PBM data, my assumption is that

14    the PBM -- we would ask the PBM to turn over that

15    information that would allow me to identify whether       18:28:56

16    there was a co-insurance or co-pay situation.

17    BY MR. LEIB:

18         Q   Before we get to if the PBM turns over

19    more data, you understand that CastiaRx administers

20    thousands of plans, right?                                18:29:00

21         A   I don't know that.  It wouldn't surprise

22    me.

23         Q   It would surprise you or wouldn't?

24         A   Would not.

25         Q   What about Express Scripts?  You know         18:29:04
```

Page 347

1          I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby

3  certify:

4          That the foregoing proceedings were taken

5  before me at the time and place herein set forth;

6  that any witnesses in the foregoing proceedings,

7  prior to testifying, were administered an oath; that

8  a record of the proceedings was made by me using

9  machine shorthand which was thereafter transcribed

10  under my direction; that the foregoing transcript is

11  a true record of the testimony given.

12          Further, that if the foregoing pertains to

13  the original transcript of a deposition in a Federal

14  Case, before completion of the proceedings, review

15  of the transcript [ ] was [x] was not requested.

16          I further certify I am neither financially

17  interested in the action nor a relative or employee

18  of any attorney or any party to this action.

19          IN WITNESS WHEREOF, I have this date

20  subscribed my name.

21

22  Dated: January 23, 2023

23
                    *Carla Soares*

24

25                    CARLA SOARES

                      CSR No. 5908

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830