**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, <br><br>        Plaintiffs, <br><br> v. <br><br>WALGREEN CO., <br><br>        Defendant. | Civil No. 17-cv-2246 <br><br> Judge Edmond E. Chang <br> Magistrate Judge Sheila Finnegan <br><br> **ORAL ARGUMENT REQUESTED** |

**WALGREEN CO.'S MOTION TO STRIKE OR EXCLUDE THE OPINIONS AND TESTIMONY OF SUSAN A. HAYES PURSUANT TO FEDERAL RULES OF EVIDENCE 702 AND 403 AND FEDERAL RULE OF CIVIL PROCEDURE 26**

Walgreen Co. ("Walgreens") moves this Court pursuant to Federal Rules of Evidence 702 ("Rule 702") and 403 ("Rule 403") and Federal Rule of Civil Procedure 26(a)(2)(D)(ii) to strike or exclude the rebuttal report of Susan A. Hayes, Dkt. 609-3 (Rebuttal Report of Dr. Susan A. Hayes) ("Hayes Report"), and to preclude Plaintiffs from relying on Hayes's testimony.

**I.    INTRODUCTION**

Plaintiffs moved to certify a multi-state class of consumers and third-party payers ("TPPs") for which eight Pharmacy Benefit Managers administered prescription benefits to the Plaintiffs in certain states.[1] Dkt. 554 (Pls.' Mot. for Class Cert.), at 3. To support Plaintiffs' argument that their damages can be calculated on a classwide, formulaic basis—an essential requirement for class certification—Plaintiffs relied on the opinions of Lynette Hilton, Ph.D., an economist who purportedly developed a formulaic methodology to achieve that goal. Walgreens filed a motion to exclude Hilton's opinions. Dkt. 583 (Pls.' Mot. to Excl. Lynette Hilton's Expert Report). In that motion, Walgreens demonstrated that not only do Hilton's opinions not satisfy Rule 702's requirements for the admissibility of expert testimony, but also her formulaic methodology is unworkable. Apparently realizing the fatal flaws in Hilton's methodology, with their reply in support of their motion for class certification, Plaintiffs filed a "rebuttal" report from a new expert, Susan Hayes, Ph.D. But some of Hayes's opinion are not rebuttal at all—they are a belated (and improper) attempt to overcome the deficiencies in Hilton's opinions and vouch for her methodology. Additionally, all of Hayes's opinions should be excluded because, as set forth below, her opinions do not satisfy the admissibility requirements of Rule 702.

---

[1]  Plaintiffs seek certification of a 12-state class, as well as an eight-state unfairness subclass and a five-state unjust enrichment subclass.

## II. WALGREENS' MOTION MUST BE ADDRESSED BEFORE THE COURT ADDRESSES CLASS CERTIFICATION

For the reasons set forth in Section II of Walgreens' Motion to Exclude Opinions 3, 6, and 7 of Schafermeyer's Expert Report (Dkt. 580) ("Schafermeyer Motion I"), the Court must address and resolve the admissibility of Hayes's rebuttal opinions before resolving class certification.

## III. FACTS AND LEGAL STANDARD

Walgreens refers to and incorporates the facts set forth in Section I of the Schafermeyer I Motion, which includes background on the adjudication of pharmacy claims, Walgreens' Prescription Savings Club ("PSC"), Walgreens' reporting of the usual and customary price ("U&C") to pharmacy benefit managers ("PBMs"), and specifically the PBMs relevant to this case (the "Relevant PBMs"), and how pharmacy claims are paid by PBMs, consumers, and health insurers and health plans (also known as third-party payers or "TPPs"). The applicable standard for a Rule 702 Motion is stated in Walgreens' Opposition to Plaintiffs' Motion to Exclude Michael S. Jacobs's Expert Report and Testimony Under Federal Rule of Evidence 702 (Dkt. 623 at 1-2), and the applicable standard for a Rule 403 Motion is stated in Section II of Walgreens' Motion to Strike or Exclude Portions of Schafermeyer's Rebuttal Report (Dkt. 627).

## IV. ARGUMENT

### A. Hayes's Opinions That PBMs Maintain Data To Distinguish Between A Copayment And Coinsurance And To Identify Whether U&C Price Was Used To Determine Amounts Paid By Consumers And TPPs Is Improper Rebuttal And Should Be Stricken

In support of their position that they can prove classwide damages, Plaintiffs submitted the expert report of Hilton, who opined on how she would identify *from data* whether (1) individual consumers pay a copayment (i.e., a flat amount) or coinsurance (i.e., a percentage of the amount the TPP must pay the PBM under their contract) and (2) a TPP reimbursed a PBM based on lesser-

2

of logic that includes U&C pricing. Dkt. 553-44 (Hilton Report) ¶ 63; **Ex. A:**[2] **(**Jan. 17, 2023 Deposition of Lynette Hilton) ("Hilton Dep.") 270:2-296:6, 128:17-129:18, 134:13-141:4; *see also* (Amended Am. Report of James Hughes) (Ex. A to Walgreens' Opp'n to Mot. to Excl. Hughes's Report, also filed today) ("Hughes Report") ¶ 44 (explaining coinsurance). On both of these points, Hilton assumed that the Relevant PBMs would be able to produce sufficient data for her to make these determinations after certification of a class. Dkt. 553-44 (Hilton Report) ¶¶ 35, 66; **Ex. A:** (Hilton Dep.) 164:20-165:20 (as to whether U&C was a pricing basis: "It's a variable that the PBMs would have in their possession"), 284:17-285:3 (as to copayment versus coinsurance: "my methodology actually is – the PBMs will turn over data that has that information"). The PBM data produced to date in this case, however, does not contain this information. (Hughes Report) ¶¶ 116, 150; Dkt. 627-1 (Amended Expert Report of Jed Smith) ("Smith Report") ¶¶ 18-19, 41, 79. Hilton concedes this fact. **Ex. A:** (Hilton Dep.) 164:20-165:12, 277:3-279:16.

After Walgreens moved to exclude Hilton's report and testimony, Plaintiffs served Hayes's "rebuttal" report, purportedly to rebut the opinions of Jed Smith and Dr. James Hughes. Hayes testifies, among other things:

> The [National Council for Prescription Drug Programs ("NCPDP")] has maintained a standard of data in the PBM industry for over 30 years. PBMs, including the Relevant PBMs, maintain data in the standard NCPDP data layouts because they are the data elements collected during the claims adjudication process and the Relevant PBMs are required to maintain such data for extended periods of time. One of the data elements maintained is whether the claim required cost sharing by the patient in the form of a copay or coinsurance. . . . Additional data variables maintained by the Relevant PBMs relate to whether the U&C price was used to determine the amounts paid by consumers and TPPs.

Dkt. 609-3 (Hayes Report) ¶ 20. Hayes goes on to cite to various NCPDP fields in an attempt to

---

[2] All cites to exhibits in this brief refer to the exhibits to the Declaration of Michael S. Leib, attached as Exhibit 1.

3

prove this point.[3] *Id.* ¶¶ 40-63. This part of Hayes's report is improper rebuttal and should be stricken.

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii), parties are permitted "to contradict or rebut evidence on the same subject matter identified by" another expert. *See Lowe v. CVS Pharm., Inc.*, No. 14 C 3687, 2017 U.S. Dist. LEXIS 74908, at *4 (N.D. Ill. May 17, 2017) ("The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party.") (citation omitted). On the other hand, a "rebuttal expert report 'cannot be used to advance new arguments or new evidence to support [a] plaintiff's expert's initial opinions.'" *Id.* at *4-5 (citation omitted). Here, Hayes's opinion that the PBMs would have data to identify whether U&C was a pricing factor and whether the consumer paid copay or coinsurance is a thinly veiled attempt to bolster Hilton's initial opinions on the same issues.

It is Plaintiffs' burden to prove the elements for class certification. *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F. 4th 839, 843 (7th Cir. 2022). Plaintiffs subpoenaed the Relevant PBMs for data, which the Relevant PBMs produced prior to their depositions. Dkt. 553-44 (Hilton Report) ¶ 65 (identifying data sets produced by PBMs). And Plaintiffs deposed each of the Relevant PBMs. Plaintiffs had every opportunity to ask the PBMs to produce the fields necessary for Hilton to establish that she can perform a classwide damages assessment to the extent they existor to ask the PBMs during their depositions whether such information exists and whether the PBMs can produce the data. Plaintiffs failed to develop the evidence to establish these facts, leaving Hilton in a position of being able to only "assume" that the PBMs would have this data. **Ex. A:** (Hilton Dep.) 114:15-118:7, 275:12-16, 277:17-278:2, 279:13-16; **Ex. B:** (Aug. 11, 2023 Deposition of Lynette Hilton) ("Hilton Reb. Dep.") 66:10-13; Dkt. 553-44 (Hilton Report) ¶¶ 35,

---

[3] One of those fields is 522-FM, a field that Hilton referenced in her report. Compare *id.* ¶ 55-57, 60 *with* Dkt. 553-44 (Hilton Report) ¶ 63.

62-63, 66; (Amended Rebuttal Expert Report of Lynette Hilton) (Ex. A to Walgreens' Mot. to Strike or Excl. Hilton's Rebuttal Report, also filed today) ("Hilton Reb. Report") ¶¶ 10, 12, 24. It is improper to proffer another expert—an expert **_who Plaintiffs could have offered along with their class certification motion_**—to attempt to clean up this problem by providing new evidence supporting Plaintiffs' case-in-chief. *See Stanfield v. Dart*, No. 10 C 6569, 2013 U.S. Dist. LEXIS 20175, at *9 (N.D. Ill. Feb. 14, 2013) ("A party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief."); *see also Campanhia Energetica Poriguar v. Caterpillar Inc.*, No. 14-CV-24277-Martinez/Goodman, 2016 U.S. Dist. LEXIS 72102, at *19-20, 27 (S.D. Fla. June 2, 2016) (striking additional expert filing after a *Daubert* motion was filed, in part because his "additional opinions and explanations for his opinions" offered to respond to the *Daubert* motion "should have been disclosed in his original reports") (citations omitted). Smith and Hughes pointed out an obvious deficiency in Hilton's methodology. That Hayes refers to that criticism does not make Hayes's opinions rebuttal. It is the same thing as if a Plaintiff in a breach of contract action failed to put on any evidence that there was offer and acceptance for the contract, and when the defendant pointed this out through their own witnesses, the plaintiff put on a new witness in "rebuttal" to offer up that element of its case-in-chief. The Court should not allow Plaintiffs to admit new evidence through Hayes to support their case-in-chief. Instead, the Court should strike Paragraphs 20 and 40-63 of the Hayes Report as improper rebuttal.

> **B.** **Hayes Is Not Qualified To Offer The Opinion That It Is Not Necessary To Readjudicate Consumers' Claims, And Her Opinion Is Irrelevant, *Ipse Dixit*, Improper Rebuttal, And Improper Vouching**

In her opening report, Hilton proposed a transaction-by-transaction damages methodology under which Hilton assigned damages if the consumer and TPP combined paid more than the PSC price on a single transaction. Dkt. 553-44 (Hilton Report) ¶¶ 22-26. Walgreens' experts, Hughes

5

and Smith, criticized this methodology and opined that, to determine how much the consumer would have paid if Walgreens had taken its PSC prices into account when reporting its U&C prices, it is necessary to readjudicate all of the transactions for a consumer in a given plan year. (Hughes Report) ¶¶ 66-71; Dkt. 627-1 (Smith Report) ¶¶ 29-31, 72-73. Hughes and Smith explained, for example, that a consumer may have had an out-of-pocket maximum and paid the same amount in the plan year even if Walgreens took PSC prices into account in its reporting practices. (Hughes Report) ¶¶ 98-104; Dkt. 627-1 (Smith Report) ¶¶ 93-96. Similarly, TPPs may have paid a certain amount for prescription drugs for its beneficiaries in a plan year, but then been reimbursed by PBMs as a result of Generic Effective Rate ("GER") guarantees or ceased paying for some or all prescriptions at some point during the plan year as a result of stop-loss insurance. Thus, one cannot look solely at the amounts paid in individual transactions. (Hughes Report) ¶¶ 152-167; Dkt. 627-1 (Smith Report) ¶¶ 28-31, 107-109.

Hayes purports to rebut Smith and Hughes with an opinion that "it is not necessary when auditing claims *or determining damages* to readjudicate every single claim." Dkt. 609-3 (Hayes Report) ¶¶ 18, 22-30 (emphasis added). Hayes, however, is not qualified to render an opinion on what is necessary when calculating damages in litigation. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citation omitted). "The question we must ask is not whether an expert witness is qualified in general, but whether [her] 'qualifications provide a foundation for [her] to answer a specific question.'" *Id.* at 617 (citation omitted).

Hayes holds bachelor's and master's degrees in *criminal justice* and a Ph.D. in *criminology*. *See* Dkt. 609-3, Ex. B (Hayes CV). Her professional experience includes auditing PBMs on behalf

of TPPs, procuring PBM services for TPPs, and conducting fraud, waste, and abuse services for certain government insurance plans. *See id.*; *see also* **Ex. C:** (Mar. 8, 2018 Deposition of Susan Hayes, *Castellano v. HEB Grocery Co.*, No. C-1166-16H, at 8:15 (testifying that she is an expert in the PBM industry). Hayes's experience does not include calculating damages in litigation, and she has no education or experience in any relevant financial field. *See* Dkt. 609-3, Ex. B (Hayes CV) (lacking any education, training, or experience in economics or accounting). Hayes's experience in auditing and investigating fraud do not provide an adequate foundation for Hayes to opine on an appropriate damages model. *See Gayton*, 593 F.3d at 617.

Throughout her report, Hayes makes repeated reference to common practice when *auditing* a PBM. *See, e.g.*, Dkt. 609-3 (Hayes Report) ¶¶ 18, 20, 25 n.6, 27, 28, 28 n.7. She also opines on what is "routinely done in the industry," which, based on other references to the "industry," is a reference to the audit industry. *See, e.g.*, *id.* ¶¶ 23, 25 n.6. Whether readjudication of every claim is necessary or commonly done in the context of an audit, however, is entirely distinct from, and irrelevant to, whether readjudication is required to accurately calculate alleged damages here.

The differences between an audit and a damages calculation are exemplified by Hayes's explanation of stop-loss insurance and how such insurance is treated in an audit. Stop-loss insurance pays TPPs when a certain deductible is met to protect TPPs from the financial burden of high insurance costs. Dkt. 609-3 (Hayes Report) ¶ 26. Once the TPP has paid the deductible amount, the stop-loss carrier pays for prescriptions for the remainder of the year. *Id.* According to Hayes, "it is not practice in the industry" for a TPP to reimburse a stop-loss carrier if the TPP receives a GER payment from a PBM as a result of the PBM underperforming on its performance guarantees, even though the carrier paid some of the claims. *Id.* ¶¶ 27-28. Whether the TPP is required to reimburse the carrier as a result of a GER payment, however, is a product of the parties'

7

contract and has nothing to do with assessing damages. The purpose of calculating damages is to determine whether one or more parties have been injured and, if so, the extent of those damages. To make this determination for a TPP, it would be necessary to know whether a TPP received reimbursements from a PBM and/or stopped paying for some or all prescriptions during a plan year as a result of stop-loss insurance because those factors would offset the amount of damages assessed to a TPP (i.e., the TPP would not be damaged for amounts ***it did not actually expend*** to cover the cost of those prescriptions). Dkt. 627-1 (Smith Report) ¶¶ 101-107; (Hughes Report) ¶¶ 152-163.

Additionally, much of Hayes's discussion of stop-loss insurance and GER payments is irrelevant to Hughes's and Smith's testimony. In Paragraphs 29-30 of the Hayes Report, Hayes discusses Walgreens not meeting its GER and states that "PBMs do not readjudicate claims to reimburse consumers or TPPs when they claw back overpayments paid to pharmacies." While pharmacy-TPP contracts typically do have GERs, the GER provisions between Walgreens and the Relevant PBMs require only the Relevant PBMs to pay in the event of underpayments to the pharmacy and do not require Walgreens to pay the Relevant PBM in the event of an overpayment to the pharmacy.[4] Thus, Hayes's opinion in Paragraphs 29-30 of her Report is not proper rebuttal and, in any case, is irrelevant. *See Lowe*, 2017 U.S. Dist. LEXIS 74908, at *4.

Finally, Hayes's opinion that "the methodology proposed by Dr. Hilton to evaluate damages on the level of the transaction is an acceptable and well-used methodology," and readjudication is not necessary constitutes improper vouching. Dkt. 609-3 (Hayes Report) ¶¶ 22-23; *see McCann v. Cullinan*, No. 11 CV 50125, 2016 U.S. Dist. LEXIS 118659, at *7 (N.D. Ill.

---

[4] *See, e.g.*, Dkt. 586-38 at Attach. A ¶ 3; Dkt. 586-39 at Ex. B ¶ 3; Dkt. 586-40 at Attach. A; Dkt. 586-41 at 12, Sec. 4.4; Dkt. 586-42 at Attach. A, Art. III, Sec. 3.1; Dkt. 586-43 at Attach. 2, Sec. 2.3.3.

Sept. 2, 2016) (stating that rebuttal expert testimony cannot be used to "simply bolster a previous expert opinion").[5]

For these reasons, the Court should strike and/or exclude Paragraphs 18, 22-30, and the first five lines of Paragraph 31 of the Hayes Report.

> **C.  Hayes's Opinion That, If The Relevant PBMs Still Have The Applicable Plan Design, They Can Readjudicate Plaintiffs' And The Class Members' Claims Is Irrelevant, Unreliable, And Highly Prejudicial**

Hayes opines that, in the event the Court rules that readjudication is required, the Relevant PBMs can perform that readjudication. Dkt. 609-3 (Hayes Report) ¶¶ 18, 31-35. This opinion should be excluded for several reasons.

*First*, Hayes offers no explanation for how the Relevant PBMs could be required to readjudicate claims for Plaintiffs and class members—she merely assumes they can. The Relevant PBMs are not parties to this litigation and cannot be legally required to undertake the monumental task of readjudicating all claims for Plaintiffs and class members. *See United States v. Kirschenbaum,* 156 F.3d 784, 794 (7th Cir. 1998) ("A district court may not enjoin non-parties who are neither acting in concert with the enjoined party nor are in the capacity of agents, employees, officers, etc. of the enjoined party.").

*Second*, while Hayes states that, in her experience PBMs "regularly maintain the data necessary to readjudicate," (Dkt. 609-3 (Hayes Report) ¶ 35), she does not say for how long the Relevant PBMs maintain this information and if it is even accessible today. Moreover, Hayes

---

[5] In footnote 7, Hayes states that she does not believe it would be "'a major undertaking' to collect and review all stop-loss insurance policies and the documents necessary to assess their implications on TPP payments. This is classic *ipse dixit* testimony, as Hayes does not explain the basis for her belief or how her experience leads to this belief. *See In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 U.S. Dist. LEXIS 48792, at *19 (N.D. Ill. Mar. 31, 2017). ("In an *ipse dixit* opinion, the expert asserts a 'bottom line' conclusion, but lacks any articulable facts to substantiate that conclusion or completely fails to explain the reasoning or methods employed to reach that conclusion.").

undermines her own opinion by stating that, "*[t]o the extent* the Relevant PBMs still have the applicable plan design, they have the ability to readjudicate pharmacy claims." Dkt. 609-3 (Hayes Report) ¶ 31 (emphasis added). In other words, Hayes has no idea if the Relevant PBMs have the necessary data and is merely speculating. *Bogathy v. Union Pac. R.R.*, No. 17-cv-4290, 2020 U.S. Dist. LEXIS 14812, at *13 (N.D. Ill. Jan. 24, 2020) ("[T]he Seventh Circuit has said that district courts are to 'reject any subjective belief or speculation' in proffered expert conclusions.") (citation omitted). Hayes's qualification is consistent with Hughes's testimony that the Relevant PBMs may not retain the necessary information going back to 2007 because PBMs do not retain all data and, even if they do, the data is not always accessible, including because of data acquired through mergers. *See* Dkt. 609-9 (Hughes Dep.) 84:4-23. Given the above, Hayes's opinion is irrelevant, unreliable, and without probative value.

Because Hayes's opinion is merely speculative and is not supported by sufficient facts or data or the product of reliable principles and methods, it should be excluded under Rule 702. Additionally, an opinion that the Relevant PBMs would have the data, coupled with a qualification that they might not, lacks probative value, while creating the risk of unfair prejudice and confusion, warranting exclusion under Rule 403. The Court should exclude Paragraphs 18 and 31-35 of Hayes's Report.

> **D.      Hayes's Opinions That Matching Data And Dropping Claims That Cannot Be Matched Is Standard Industry Practice Are Irrelevant, Unreliable, Improper Rebuttal, And Improper Vouching**

As part of Hilton's methodology, Hilton attempts to match transactions in Walgreens' claims data with the same transactions in PBM claims data. Dkt. 553-44 (Hilton Report) ¶ 33. Smith criticizes Hilton's method for matching transactions. Dkt. 627-1 (Smith Report) ¶¶ 43-59. In purported rebuttal, Hayes opines that it is common to match claims data and drop claims for

10

which data cannot be matched. Dkt. 609-3 (Hayes Report) ¶¶ 19, 36-39. These opinions should be excluded for reasons similar to those discussed above.

*First*, the opinion that "[m]atching data from different data sets using common variables is standard industry practice" (Dkt. 609-3 (Hayes Report) ¶ 19) is irrelevant. "To be relevant for the purposes of Rule 702, the proposed expert testimony must assist the trier of fact in understanding the evidence or determining a fact in issue." *In re NorthShore Univ. HealthSystem Antitrust Litig.*, 2023 U.S. Dist. LEXIS 27977, at *19 (N.D. Ill. Feb. 20, 2023). To satisfy this standard, "the expert opinion must fit the issue to which the expert is testifying and be tied to the facts of the case." *Id.* (internal quotations omitted) (citation omitted). Hayes's opinion does not satisfy this standard because, for the reasons stated in Section IV.B, above, what is common in the auditing industry has no bearing on what is appropriate when calculating damages. *See Demouchette v. Dart*, No. 07 CV 04446, 2012 U.S. Dist. LEXIS 177324, at *28-29 (N.D. Ill. Dec. 14, 2012) ("Expert testimony which does not relate to any issue in this case is not relevant and, ergo, non-helpful."). And this opinion is not proper rebuttal because Smith never opined that it is uncommon for auditors to attempt to match different data sets; he offered no opinion about auditing.

*Second*, the opinion that, where data cannot be matched, "it is common to eliminate these claims (Hayes Report ¶ 19), is also irrelevant because, again, what is common in the auditing industry has nothing to do with creating a damages methodology in litigation. Indeed, while dropping claims in an audit may be common practice, dropping claims when attempting to readjudicate a consumer's claims over a plan year would distort the calculation, resulting in an inaccurate readjudication. (Smith Surreb. Report) ¶ 10(h)-(i) (attached as Ex. B to Walgreens' Mot. for Leave to file a surreply and surrebuttal report, also filed today).

*Third*, for the reasons stated in Section IV.B, above, Hayes's opinion in Paragraph 39 of

her Report that Hilton's methodology "accords with industry best practices" is improper vouching.

For the above reasons, the Court should strike and/or exclude Paragraphs 19 and 36-39 of Hayes's Report.

### E. Hayes's Opinion That The Relevant PBMs Maintain Data In NCPDP Format Is Irrelevant And Unreliable

Hayes opines that the NCPDP has certain fields that would show (i) whether a consumer payment was a copayment or coinsurance, (ii) whether a payment was determined by reference to the U&C price, (iii) whether a payment is a deductible, (iv) whether an out-of-pocket maximum applied to a given claim, and (v) the Medicare Part D coverage band for a given transaction. Dkt. 609-3 (Hayes Report) ¶¶ 40-71. In addition to part of this opinion being improper rebuttal for the reasons stated in Section IV.A, above, this opinion fails for additional reasons.

To begin, the opinion is not relevant. Hayes's opinion regarding these fields is intended to imply that, even though the fields have not been produced by the Relevant PBMs, the Relevant PBMs have the data necessary for Hilton to calculate damages under her proposed methodology or an alternative methodology in the event the Court rules that readjudication is required. As noted in Section IV.C, above, however, Hayes qualifies her opinion by conceding that the Relevant PBMs *may not* actually have the applicable information. Dkt. 609-3 (Hayes Report) ¶ 31. Hayes makes additional qualifications, noting that, "[i]n many cases, PBMs are required to retain claims data for a certain period of time to comply with various legal and regulatory requirements," without stating which data is required to be kept or for how long. *Id.* ¶ 44. Notably, Hayes mentions HIPAA's six-year data retention requirement. Even then, however, that would only provide data back to 2017, not 2007. Hayes further states that "many TPPs require the PBM to retain" certain copay/coinsurance data, but does not say if any of the Relevant PBMs have this obligation and, if they do, for how long. *Id.* ¶ 48. With regard to the data necessary to determine if U&C pricing was

12

used as a basis for a claim, Hayes acknowledges that "specific data elements captured and retained by PBMs can vary," and, although she says they typically maintain such information, she, once again, fails to state for how long. *Id.* ¶ 63. In short, throughout this entire section of Hayes's Report, she repeatedly opines that "PBMs regularly maintain data," without specifying for how long or whether it is maintained in an accessible format (i.e., the relevant inquiries). *Id.* ¶¶ 46, 53, 64, 66.

Further, as noted above, Hughes never opined that the PBMs do not maintain information regarding copay/coinsurance, deductibles, out-of-pocket maximums, and the like. His opinion is that the Relevant PBMs may not retain the necessary information going back to 2007 because PBMs do not retain all data and, even if they do, the data is not always accessible. *See* Dkt. 603-4 (Hughes Dep.) 84:4-23. Plaintiffs subpoenaed claims data from the Relevant PBMs and could have requested these fields to the extent they exist. They also could have asked the Relevant PBMs in their depositions if they maintain data for these fields. Plaintiffs did neither. They cannot now avoid the consequences of their failure by submitting speculative testimony from Hayes.

Without establishing the length of time for which the Relevant PBMs maintain the relevant data and whether the data is accessible, Hayes's opinion is unhelpful. Hayes has no idea what data fields the Relevant PBMs could produce in addition to the ones they already produced, or for how many years. Her opinion is therefore speculative, unreliable, and, ultimately, irrelevant. The Court should exclude Paragraphs 40-71 of the Hayes Report.[6]

### F. The Court Should Also Exclude Hayes's Final Three Opinions

In Plaintiffs' proposed class definition, "entities that have or had a parent or subsidiary

---

[6] Additionally, Hayes's opinion in Paragraph 68 of her Report that Hilton's methodology is "acceptable" is improper vouching and should be excluded. *See McCann*, 2016 U.S. Dist. LEXIS 118659, at *7. And her opinion in Paragraph 69 that the PBMs "could re-adjudicate all subsequent pharmacy claims" fails for the same reasons discussed in Section IV.B-C, above.

relationship with any pharmacy benefit manager at any time since January 1, 2007" are excluded. Dkt. 609-3 (Hayes Report) ¶ 15. Hayes's opinion that PBMs have sufficient information to identify parent and subsidiary relationships (which relates to one of Plaintiffs' proposed class definition exclusions) within their system is irrelevant. *Id.* ¶¶ 72-74. That PBMs have information about their own parent and subsidiary relationships is not in dispute. Rather, the issue is that PBMs do not have information on whether a TPP with whom they contract ever had a relationship with ***any*** PBM since January 1, 2007. This is why Smith opined that "there is no field in the data produced in this matter that can be used to determine whether a TPP entity is excluded for being affiliated with a PBM." Dkt. 627-1 (Smith Report) ¶ 22. Accordingly, this opinion is improper rebuttal and irrelevant. If Hayes is trying to say anything more than this, it is not clear, and in any case it would be *ipse dixit*.[7] The Court should strike and/or exclude Paragraphs 72-74 of Hayes's Report.

Hayes opines that, in her "understanding and experience . . . PBMs can ***typically*** identify TPPs that are government entities" (Dkt. 609-3 (Hayes Report) ¶¶ 75-77 (emphasis added)), but provides no support for this opinion other than speculation. Thus, the opinion is unreliable and *ipse dixit*. Moreover, as stated in Section IV.C, above, the Court cannot order PBMs to undertake investigation to determine who is in or out of the proposed class. The Court should exclude Paragraphs 75-78 of the Hayes Report.[8]

Finally, Hayes offers the opinion that Hilton's methodology "does not depend on the distinction between fully insured and self-insured plans." Dkt. 609-3 (Hayes Report) ¶¶ 79-82.

---

[7] Even if a PBM could identify the parents and subsidiaries of TPPs, that would require individualized discovery as to each TPP and, thus, would not support certification.

[8] Even if a PBM could identify TPPs that are government entities from information they receive from the TPPs, including "databases of government programs, contractual agreements, or specific identifiers associated with government entities" (Dkt. 609-3 (Hayes Report) ¶ 75-78), this would require individualized discovery as to each TPP and, therefore, would not support certification.

This information is necessary, however, to identify potential class members. Under a fully insured plan, "the health plan pays a health insurer a certain amount per beneficiary and the insurer is then responsible for any payments to the PBM related to the beneficiaries' prescription costs." (Hughes Report) ¶¶ 59, 142-144; Dkt. 609-3 (Hayes Report) ¶ 82. It is therefore the insurer that would be the potential class member. In a self-insured plan, the health plan is responsible for payments for its beneficiaries' purchases, and it is, therefore, the health plan that is the potential class member. (Hughes Report) ¶¶ 58, 142-144; Dkt. 609-3 (Hayes Report) ¶ 8. Hayes further opines that "[b]oth the PBM adjudicating a given claim and the TPP will maintain data reflecting the entity or entities responsible for paying a given pharmacy claim." Dkt. 609-3 (Hayes Report) ¶ 82. Hayes provides no support for her assumption that the PBM would know anything more than what is in the transactional claims data. And the claims data does not always reflect who the ultimate end payer is. *See, e.g.*, (Smith Surreb. Report) ¶¶ 14(a) ███████████████

███████████████

███████████████

███████████████

███████████████. Hayes also fails to explain how her auditing experience qualifies her to render this opinion.[9]

Because Hayes's opinion is unsupported and unreliable, and Hayes is not qualified to offer it, the Court should exclude Paragraphs 79 to 82 of the Hayes Report.

## V. CONCLUSION

For these reasons, Walgreens respectfully requests that the Court strike and/or exclude the Hayes Report, and Plaintiffs should be precluded from relying on her testimony.

---

[9] To the extent Plaintiffs must obtain this information from the PBMs and TPPs, it would require individualized discovery and, therefore, would not support certification.

15

DATED: September 14, 2023

        */s/ Michael S. Leib*
        Michael S. Leib
        Anthony Robert Todd
        **REED SMITH LLP**
        10 S Wacker Dr # 4000
        Chicago, IL 60606
        Telephone: 312-207-1000
        *mleib@reedsmith.com*
        *atodd@reedsmith.com*

        Frederick Robinson (*pro hac vice*)
        Selina Coleman (*pro hac vice*)
        Megan Engel (*pro hac vice*)
        Jessica Christensen (*pro hac vice*)
        **REED SMITH LLP**
        1301 K Street, N.W.
        Suite 1100 East Tower
        Washington, DC 20005
        Telephone: 202-414-9200
        *frobinson@reedsmith.com*
        *scoleman@reedsmith.com*
        *mengel@reedsmith.com*
        *jchristensen@reedsmith.com*

        **Attorneys for Defendant Walgreen Co.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of September, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

                              */s/ Michael S. Leib*
                              Michael S. Leib