**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>                        Plaintiffs,<br><br>   v.<br><br>WALGREEN CO.,<br><br>                        Defendant. | Civil No. 17-cv-2246<br><br>Judge Edmond E. Chang<br>Magistrate Judge Sheila Finnegan<br><br>**ORAL ARGUMENT REQUESTED** |

**WALGREEN CO.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
THE EXPERT REPORT AND TESTIMONY OF JED SMITH PURSUANT TO
FEDERAL RULE OF EVIDENCE 702 TO THE EXTENT HE
PURPORTS TO HAVE DETERMINED PSC PRICES**

Walgreen Co. ("Walgreens") submits this memorandum in opposition to Plaintiffs' Motion to Exclude the Expert Report and Testimony of Jed Smith Pursuant to Federal Rule of Evidence 702 to the Extent Mr. Smith Purports to Have Determined PSC Prices ("Motion").

## I. INTRODUCTION

Plaintiffs move to exclude the expert report and testimony of Walgreens' expert Jed Smith, but only to the extent he purports to have determined Walgreens' Prescription Savings Club ("PSC") prices. While Plaintiffs do not identify the paragraphs of Smith's Amended Report, (Dkt. 627-1 (the "Smith Report")), to which their Motion applies, Walgreens presumes they are moving to exclude Paragraphs 60-69, as this is the section of the Smith Report in which Smith criticizes the flawed methodology Plaintiffs' expert, Dr. Lynette Hilton, uses for determining PSC prices in her report. *See* Dkt. 553-44 (Expert Report of Lynette Hilton, Ph.D.) ("Hilton Report"). Importantly, Plaintiffs do not attempt to exclude any other portion of the Smith Report.

Plaintiffs make their Motion on two grounds, both of which fail for the reasons set forth below. *First*, Plaintiffs argue that Smith's analysis does not meet the requirements of Federal Rule of Evidence 702 ("Rule 702") because Smith did not proffer his own methodology for determining PSC prices. *See* Dkt. 606 (Mot.), at 2-3; *see also* Dkt. 621-1 (Redline of Mot.) ("Redline"). This argument, however, is without merit. As explained in detail below, it is Plaintiffs who have the burden to show that a class is appropriate, including that Plaintiffs have a methodology for establishing classwide damages. That Smith criticized Hilton's approach without offering his own methodology for determining PSC prices is not a basis for exclusion. Instead, Smith's showing that Hilton's approach is flawed is all that Smith, and Walgreens, is required to do at this stage of the case. In the event a class is certified, Smith may be asked to present his own methodology for determining PSC prices as part of a comprehensive damages methodology. But he need not do so at this stage of the case.

*Second*, Plaintiffs argue that Smith's criticism of Hilton's methodology is flawed because he did not reliably replicate Hilton's methodology for determining PSC prices. A recent filing by Plaintiffs, however, shows that this argument too has no merit. As Plaintiffs have now admitted, Hilton did not provide her entire methodology until ***after*** Smith filed the Smith Report. *See* Dkt. 621 (Notice of Partial Withdrawal of Pls' Mot. to Exclude the Expert Report and Test. of Smith) ("Notice"), at 1. Dkt. 621. Not only did this violate the requirement of Federal Rule of Civil Procedure 26(a)(2) that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them," but it also shows that, because Hilton did not produce her entire methodology until recently, Smith could not have fully replicated Hilton's methodology when he filed the Smith Report.[1] Moreover, in the absence of Hilton providing a complete roadmap for recreating her methodology, Smith used reasonable assumptions that followed the Declaration of Christopher Dymon (the "Dymon Declaration"), which is the declaration that provides Walgreens' testimony relating to its data. Dkt. 556-1.

For these reasons and those set forth below, Plaintiffs' Motion should be denied.

## II. APPLICABLE STANDARD

The applicable standard for a Rule 702 Motion is stated in Walgreens' Opposition to Plaintiffs' Motion to Exclude Michael S. Jacobs's Expert Report and Testimony Under Federal Rule of Evidence 702. Dkt. 623 at 1-2.

---

[1] A timeline showing the history of Hilton's production of information is Attachment A to the Proposed Smith Surrebuttal Report, which is attached as Exhibit B to Walgreens' Mot. for Leave to file a surreply and surrebuttal report, also filed today.

### III.     ARGUMENT

Smith's opinions related to PSC prices in the Smith Report meet the requirements for admissibility under Rule 702 because (1) they are "based on sufficient facts or data," (2) they are "the product of reliable principles and methods," and (3) Smith has "reliably applied the principles and methods to the facts of the case." *See Sgouros v. Trans Union LLC*, No. 14 C 1850, 2022 U.S. Dist. LEXIS 49585, at *3 (N.D. Ill. Mar. 21, 2022).

#### A.     Smith Was Not Required To Provide An Independent Methodology To Determine PSC Prices For His Opinions To Be Reliable

Plaintiffs' case theory is that insured members and third-party payers ("TPPs") should never pay more than the PSC price. To determine if an insured member and/or TPP paid more than the PSC price, however, the parties agree that one needs to determine the PSC price for the same drug and quantity on the same day as the insured's transaction. *See, e.g.,* **Ex. A:**[2] (Hilton Dep. 244:19-25). Walgreens' PSC transaction data does not always show a PSC price for the same drug and quantity on the day of an insured's transaction, and sometimes the data can show more than one price charged in a transaction coded as a PSC transaction. Thus, Hilton created a methodology that she claimed determined PSC prices. But in the Smith Report, Smith opines that, while some of the data Hilton used can be used to determine PSC price, "Hilton's method for doing so contains several errors and inconsistencies that result in her selecting incorrect PSC prices or selecting different PSC prices for the same class member transaction in different exhibits and data files she has provided along with her report." Dkt. 627-1 (Smith Report) ¶ 60. Smith then goes on to offer several criticisms of Hilton's approach. *Id*. ¶ 62. What Smith does not do is present his own methodology for determining the PSC prices. As Smith testified, for this part of the matter—

---

[2] All cites to exhibits in this brief refer to the exhibits to the Declaration of Michael S. Leib, attached as Exhibit 1.

3

namely, the class certification stage—he "was not asked to calculate a specific PSC price for any given transaction." **Ex. B:** (April 28, 2023 Deposition of Jed R. Smith) ("Smith Dep.") 183:18-184:16. He testified that, if the case proceeds past the class certification phase, he may be asked to perform damages calculations that would require him to determine a PSC price, but he has not been asked to do so now. *Id*. Plaintiffs criticize Smith for this, arguing that "Mr. Smith's failure to proffer his own methodology for determining PSC prices means that any testimony Mr. Smith purports to provide regarding what PSC prices were or were not is unreliable." Dkt. 606 (Mot.), at 3. Plaintiffs' argument fails.

To begin, Plaintiffs do not explain why Smith's criticism of Hilton's methodology is unreliable merely because Smith himself did not create his own methodology. And, on its face, the proposition makes no sense. One does not need to come up with one's own methodology to criticize the methodology of another. Moreover, it is Plaintiffs' burden, not Walgreens' burden, to demonstrate that the case is appropriate for class treatment. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). In other words, at the class certification stage, Walgreens does not need to put forth a damages methodology. Indeed, it would be strange for Walgreens to do so, given that it is Walgreens' position that "damages are not susceptible to classwide measurement." Dkt. 587 (Opp'n to Class Cert. Mot.), at 30. Plaintiffs proffered Hilton to set forth a methodology to demonstrate that damages can be determined on a classwide basis. *See* Dkt. 553-44 (Hilton Report) ¶¶ 7-9. If Hilton has failed at that task, Plaintiffs have failed to establish that class treatment is appropriate. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014) ("In determining whether to certify a consumer fraud class, the court should begin with a 'rigorous analysis' into whether the plaintiffs' "damages are susceptible of measurement across the entire class.") (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)); *Wacker Drive Exec. Suites.*

4

*LLC v. Jones Lang Lasalle Americas (Ill.), LP*, No. 18-cv-5492, 2022 U.S. Dist. LEXIS 64684, at *73 (N.D. Ill. Apr. 7, 2022) (stating that to show predominance, the plaintiff "must offer sufficient evidence that there is a workable way to prove a classwide measure of damages through generalized proof"). At this stage, Smith does not need to proffer his own methodology of how PSC prices (and ultimately, alleged damages) should be calculated, as Plaintiffs assert. All he must do is offer appropriate criticisms of Hilton's methodology based on sufficient facts or data and reliable principles and methods, and reliably apply the principles and methods to the facts. *Sgouros*, 2022 U.S. Dist. LEXIS 49585, at *3. Smith has done just that. Indeed, with the exception of Plaintiffs' criticisms in Section II of the Motion, addressed below, Plaintiffs do not argue that he has not done so, only that he has not put forth his own methodology.

Plaintiffs' cases are inapposite and do not aid their argument. In *Varlen Corp. v. Liberty Mutual Insurance Co.*, 924 F.3d 456, 460 (7th Cir. 2019), the court excluded the expert's opinions because the expert failed "to provide an explanation of how the evidence led to his conclusions . . . beyond a simple say-so[,]" and "failed to demonstrate that his conclusions were anything more than guesses." *Varlen*, 924 F.3d at 460. Similarly, in *Affinity Mutual Insurance v. Thacker Air Conditioning-Refrigeration-Heating, Inc.*, No. 3:16-CV-279 JD, 2019 U.S. Dist. LEXIS 84713, at *12-13 (N.D. Ind. May 20, 2019), the court, relying on *Varlen*, excluded an expert offered there because the expert failed to explain the significance of the factors upon which he based his opinion or why his inferences based on those factors were justified. *See Affinity*, 2019 U.S. Dist. LEXIS 84713, at *12-13. In other words, those cases had nothing to do with an expert criticizing another expert's methodology without putting forth their own methodology and, therefore, do not support Plaintiffs' position. The barebones expert opinions in Plaintiffs' cited cases are far afield from the detailed methodology Smith provided as to how he drew the conclusions for all his opinions,

5

including his opinions regarding PSC prices.

Although he did not create an independent methodology to identify a PSC price for every potential class member transaction, Smith criticized Hilton's purported methodology and provided ample explanation in the Smith Report and supporting workpapers, including his SQL scripts, as to that methodology and how he drew each conclusion, including his conclusions and opinions regarding how Hilton selected PSC Prices. *See* Dkt. 627-1 (Smith Report) ¶¶ 60-69; **Ex. C:** (Walg_Forth_Smith00001); **Ex. D:** (Walg_Forth_Smith00278); **Ex. E:** (Walg_Forth_Smith00296); **Ex. F:** (Walg_Forth_Smith00300); **Ex. G:** (Walg_Forth_Smith00303); **Ex. H:** (Walg_Forth_Smith00308); **Ex. I:** (Walg_Forth_Smith00316); **Ex. J:** (Walg_Forth_Smith00323); **Ex. K:** (Production Letters for Smith document productions). Smith evaluated the specific PSC prices that Hilton selected by comparing them to the data produced by Walgreens that included PSC prices. Dkt. 627-1 (Smith Report) ¶¶ 60-71. He provided extensive information on the data used in his analysis. *See* Dkt. 627-1 (Smith Report), App'x A. Smith also provided narrative descriptions and several examples of how he evaluated Hilton's PSC price selections. *Id.* ¶¶ 64-69. Additionally, he produced the supporting SQL code scripts used to execute his analysis. **Ex. C:** (Walg_Forth_Smith00001); **Ex. D:** (Walg_Forth_Smith00278); **Ex. E:** (Walg_Forth_Smith00296); **Ex. F:** (Walg_Forth_Smith00300); **Ex. G:** (Walg_Forth_Smith00303); **Ex. H:** (Walg_Forth_Smith00308); **Ex. I:** (Walg_Forth_Smith00316); **Ex. J:** (Walg_Forth_Smith00323); **Ex. K:** (Production Letters for Smith document productions).

Finally, based on Dr. Kelly Nordby's opinion that the PSC membership fee must be allocated when determining PSC prices, Smith provided a detailed analysis of his methodology for conducting just such an allocation. Dkt. 627-1 (Smith Report) ¶¶ 32-39, 62a. Because Smith's

report and workpapers contain the methodology that explains how he drew his conclusions related to the PSC prices Hilton selected, his opinions satisfy the requirements of Rule 702 and should not be excluded.

> **B.** **Plaintiffs' Criticism That Smith Did Not Reliably Replicate Hilton's Methodology Fails, As Plaintiffs Have Now Conceded That Hilton Did Not Provide Her Entire Methodology Until *After* Smith Issued His Report**

Plaintiffs further criticize Smith for failing to exactly replicate Hilton's methodology for determining PSC prices. Dkt. 606 (Mot.), at 4-8. This criticism, however, fails for two reasons. *First*, Plaintiffs have recently admitted that they did not provide Hilton's full methodology until *after* Smith issued the Smith Report. *Second*, Smith reliably used the information he did have to evaluate and critique Hilton's methodology.

> **1.** **Plaintiffs concede that Hilton did not provide her entire methodology prior to Smith filing his report**

In his deposition, Smith testified that, to determine the PSC prices for the purpose of checking Hilton's work, he attempted to replicate Hilton's methodology. Dkt. 606 (Mot.), at 4 (citing Smith Dep.). Smith, however, was unable to replicate 72 of the PSC prices Hilton determined. Dkt. 627-1 (Smith Report) ¶ 64. In her Amended Rebuttal Report, Hilton admitted that she made "minor coding errors" in implementing her methodology and, thus, she agreed that Smith was correct about 32 of the transactions. (Hilton's Amended Rebuttal Expert Report) ("Hilton Reb. Report") (attached as Ex. A to Walgreens Mot. to Excl. Hilton's Rebuttal Report, also filed today) ¶ 43. That still left 40 transactions where the experts disagreed as to the correct PSC price.

In Section II of their Motion, Plaintiffs criticize Smith for not fully applying Hilton's methodology in determining PSC prices. Dkt. 606 (Mot.), at 4-8. There is a fundamental flaw with this argument, however, which is fatal to Plaintiffs' Motion. As Plaintiffs have now admitted in

7

their recently filed Notice, Hilton did not produce her entire methodology, including critical documents showing the scripts she ran as part of her full methodology, until *after* Smith filed the Smith Report. *See* Dkt. 621 (Notice), at 1; (Smith Surreb. Report), at App'x A. In other words, Plaintiffs now admit that they are moving to exclude Smith for failing to follow a methodology that Hilton *did not provide in full*. In fact, on the very first page of the redline attached to their Notice showing the deletions Plaintiffs made to their Motion through the Notice, they delete the following language: "But even though Mr. Smith was provided with the exact code that constitutes Dr. Hilton's methodology, he failed to use that code." Dkt. 621-1 (Redline), at 1. Plaintiffs also delete language on page 7 of their Motion stating that Hilton "produced the exact queries that constitute her methodology[.]" *Id.* at 7.

Importantly, Hilton's failure to provide her full methodology and scripts violated the requirement of Federal Rule of Civil Procedure 26(a)(2) that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." But it also shows that Smith could not have replicated Hilton's methodology fully when he filed his report given that Hilton did not produce her entire methodology until recently. Dkt. 621 (Notice), at 1. Plaintiffs cannot now argue that it is "inexplicable" that Smith did not replicate a methodology that Hilton did not provide until after Smith issued the Smith Report. Dkt. 621 (Notice), at 1; Dkt. 606 (Mot.), at 7. Indeed, the language Plaintiffs removed from the Motion proves that Plaintiffs' Motion has no merit.

### 2. Smith's Report reliably evaluates Hilton's methodology for selecting PSC prices

Despite Hilton's failure to provide her methodology in its entirety, Smith used what information he did receive regarding her methodology to evaluate and critique what he assessed Hilton's methodology to be, and his opinions comply with Rule 702's requirements.

8

### a. Smith's selection of the universe of PSC transactions was reasonable given the limited information Hilton provided

In Section II.A. of their Motion, Plaintiffs argue that Smith (i) used a different universe of PSC transactions than Hilton did, and (ii) failed to adhere to Walgreens' testimony as set forth in Paragraph 32 of the Dymon Declaration, which is the declaration that provides Walgreens' testimony relating to its data, because Smith did not limit the Plan Group Number field to only those transactions where either (a) Third Party Plan ID is equal to "WCARD" and the Plan Group Number equals "4934WCARD," or (b) if Third Party Plan ID is equal to "WCARD" and the Plan Group Number does *not* equal "4934WCARD," then the Plan Name field is equal to "Walgreens Prescription Savings Club." *See* Dkt. 606 (Mot.), at 4-5. Smith, however, used reasonable assumptions that followed the Dymon Declaration and, therefore, neither of these criticisms have merit.

As described above, Hilton failed to provide her complete methodology prior to Smith filing the Smith Report, which is one reason that Walgreens is moving contemporaneously with this brief for leave to allow Smith to serve and file a surrebuttal report so that he can address the recently produced information. Indeed, Hilton specifically failed to provide the scripts that illustrate how she compiled the universe of PSC transactions she used.[3] *See* Dkt. 621 (Notice); **Ex. L:** (Hilton PSC compilation scripts and production letter) (HILTON_000134-179); (Smith Surreb. Report), at App'x A. Accordingly, Smith could not have known that Hilton limited the transactions she used to only those where Plan Group Number equals "4934WCARD" or Plan Name equals "Walgreens Prescription Savings Club." Further, a reading of the Dymon Declaration does not compel this limitation. *See* Dkt. 556-1 (Dymon Decl.) ¶ 32; **Ex. B:** (Smith Dep.), 296:15-

---

[3] *See* (Timeline of Hilton's production of data queries) App'x A to the Smith Surrebuttal Report, which is attached as Exhibit B to Walgreens' Motion For Leave to file a surreply and surrebuttal report, also filed today.

9

299:7. In their Motion, Plaintiffs cite to only part of the Dymon Declaration that relates to how Walgreens identifies PSC transactions, leaving out crucial language. *See* Dkt. 606 (Mot.), at 5. In fact, in addition to the language cited in the Motion, the Dymon Declaration states that:

> Walgreens has no reason to doubt that any transaction it produced where the third_party_plan_id is "WCARD," but the plan_group_nbr is not "4934WCARD" is a PSC transaction except for those situations where the transaction is a price that is inconsistent with other PSC transactions with the correct group number.

Dkt. 556-1 (Dymon Decl.) ¶ 32. By failing to include transactions with other plan_group_nbr values that Walgreens does not doubt are PSC transactions, Hilton excludes available PSC prices and incorrectly limits the population of PSC prices she uses. Smith correctly includes those prices. Moreover, this criticism is irrelevant, as none of the PSC prices Hilton selected that Smith disputes relate to differences in how Smith and Hilton filtered the PSC transaction data. (Smith Surreb. Report) ¶ 17(a)

Instead, the dispute relate to filters Smith applies that Hilton does not that are required to arrive at accurate PSC prices, including accounting for partial fills, other discount codes (like employee discounts), instances where PSC prices are greater than retail prices resulting in the transaction adjudicating at the retail price, and when inclusion of taxes in the PSC price causes the store to lower the amount in the price field so the PSC price plus tax would equal the advertised PSC price. (Smith Surreb. Report) ¶ 17(b).

Accordingly, because Smith uses the most common PSC price for a given drug, quantity, and day when multiple PSC prices exist in the data, his analysis follows the parameters in the Dymon Declaration for including PSC transactions where the plan_group_nbr field contains a value other than "4934WCARD" and, therefore, is reliable.

        **b.**      **Smith's use of Connecticut reconciliation data was reasonable given the limited information Hilton provided and does not impact his conclusions regarding Hilton's analysis**

Plaintiffs also criticize the fact that Smith did not use the same Connecticut Medicaid Data Files as Hilton. Dkt. 606 (Mot.), at 6-8. Specifically, they criticize the fact that Smith primarily considered Connecticut files with the filename "CTMED vs. PSC" instead of the "vpgrate" and "pscrate" files Hilton used. *Id*. This argument, however, fails for the same reason as the others—Hilton did not provide her specific methodology as to which files she used or how she prioritized the files, making it impossible for Smith to know which files she used. *See* Dkt. 621 (Notice), at 1; **Ex. L:** (Hilton PSC compilation scripts and production letter) (HILTON_000134-179); (Smith Surreb. Report), at App'x A.

In the Notice and attached redline, Plaintiffs delete the language stating that Hilton "produced the exact queries that constitute her methodology," but retain the language stating that Hilton "identified the exact Bates-numbered data files that she considered." Dkt. 621 (Notice), at 1; Dkt. 621-1 (Redline), at 7. This, however, is misleading. While Hilton does identify in her "List of Materials Considered" a broad range of Bates Numbers associated with various Connecticut Medicaid Reconciliation data files, she does not list the specific files she used or identify how she prioritized them in selecting PSC prices. Dkt. 553-44 (Hilton Report), at Ex. 2; (Smith Surreb. Report) ¶ 17(c). In fact, not only are the "vpgrate" and "pscrate" files identified by Bates range in her List of Materials Considered, but the "CTMED vs. PSC" files also are identified that way. *See* Dkt. 553-44 (Hilton Report), at Ex. 2; (Smith Surreb. Report) ¶ 17(c). And at no point in her opening report, supporting workpapers, or deposition testimony did Hilton specifically identify that she relies only on the "vpgrate" and "pscrate" files. (Smith Surreb. Report) ¶ 17(c) & App'x. A; *see generally* (Hilton Reb. Report); **Ex. A:** (Jan. 17, 2023 Deposition of L. Hilton) ("Hilton Dep.") 217:9-219:18, 249:16-251:13, 256:24-258:25. In fact, Hilton did not identify this

11

information until she provided it in her Rebuttal Report and the data queries produced on July 13, 2023. (Hilton Reb. Report) ¶ 38 (stating that she used the "pscrate" files to select PSC prices); **Ex. L:** (Hilton PSC compilation scripts and production letter) (HILTON_000134-179 at HILTON_0000136-150); (Smith Surreb. Report) ¶ 17(c) & App'x A. Left to guess which specific files Hilton used, Smith chose the "CTMED vs. PSC" files, which are the only files that were consistently provided for all months between June 2010–December 2019, the time period during which Hilton claims she used Connecticut Reconciliation Data in her analysis. **Ex. B:** (Smith Dep.) 211:12-16, 217:12-218-9. This was an entirely reasonable assumption.

Moreover, when quoting from Smith's deposition testimony on page 7 of the Motion, Plaintiffs use misleading quotations. Although Plaintiffs do cite to Smith's testimony in which he stated that he "could not determine what [Hilton] used for the Connecticut Reconciliation data" (Dkt. 606 (Mot.) at 7 (quoting Smith Dep. at 217:9-11)), Plaintiffs fail to cite the remaining portion of this testimony where Smith testifies that, when he could not replicate her PSC prices from the Connecticut data, "we looked at as much information as we could from the source Connecticut Medicaid Reconciliation files to determine other possibilities of how she determined [a PSC] price." **Ex. B:** (Smith Dep.) 217:12-218-9. He testified that, only after doing that, if he "could not reconcile it under a different alternative methodology, then that is how it remained" among the list of PSC prices he could not replicate. *Id*. This puts to bed the fallacy that Smith "failed to account for the most obvious alternate explanation" as to why he and Hilton got different results. Moreover, Plaintiffs improperly attempts to shift the blame to Smith for Hilton not providing her entire methodology in violation of the Federal Rules of Civil Procedure.[4]

Plaintiffs also fail to cite Smith's testimony where he notes that, in the examples he and his

---

[4] Plaintiffs' case, *Victory Recs., Inc. v. Virgin Recs. Am., Inc.*, No. 08 C 3977, 2011 U.S. Dist. LEXIS 10337, at *16-17 (N.D. Ill. Feb. 3, 2011), is inapposite. For starters, it has nothing to do with what one expert

team reviewed, the "vpgrate" and "pscrate" files contained the same information as the "CTMED vs PSC" files. **Ex. B:** (Smith Dep.) 211:4-213:5. Indeed, Smith found that, if he updated his analysis to include the "pscrate" and "vpgrate" files from the Connecticut Reconciliation data as sources for PSC prices, Smith still disputes 72 of the PSC prices Hilton selected in the most recent file of transactions with alleged damages she produced in connection with her rebuttal expert report (at Bates number HILTON_0000310)[5]. *See* (Smith Surreb. Report) ¶ 17(c) & Attach. 4; Dkt. 627-1 (Smith Report), Attach. 4. This number increased from the 40 PSC prices in dispute, in part, because Hilton added and changed PSC price selections on other transactions when she corrected her so-called "minor coding errors." (Hilton Reb. Report) ¶ 43.

As noted above, Hilton, after reviewing the Smith Report, admitted that she had made coding errors and had identified 32 incorrect PSC prices. (Hilton Reb. Report) ¶ 43. If Hilton could not correctly apply her own methodology when she had access to the scripts that implemented it, Smith can hardly be faulted for not exactly replicating steps that Hilton never provided to him. To accept Plaintiffs' argument here would create perverse incentives for an expert to not provide their entire methodology and then seek to exclude a critiquing expert for not knowing what the critiquing expert did not and could not know because the first expert withheld it. Walgreens is unaware of any law that allows for this approach, and Plaintiffs have not cited to any.

## IV.    CONCLUSION

For the reasons set forth above, Walgreens' respectfully requests that the Court deny Plaintiffs' Motion.

---

should assume when the other side's expert does not provide their entire methodology in violation of the Federal Rules of Civil Procedure. Moreover, the case had to do with an expert's failure to consider another obvious alternative explanation for causation, an issue not present in this case. *Id*.

[5] Not attached as an exhibit to this Opposition.

DATED: September 14, 2023

                                                      */s/ Michael S. Leib*
                                                      Michael Scott Leib
Anthony Robert Todd
**REED SMITH LLP**
10 S Wacker Dr # 4000
Chicago, IL 60606
Telephone: 312/207-1000
*mleib@reedsmith.com*
*atodd@reedsmith.com*

Frederick Robinson (*pro hac vice*)
Selina Coleman (*pro hac vice*)
Megan Engel (*pro hac vice*)
Jessica Christensen (*pro hac vice*)
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 East Tower
Washington, DC 20005
Telephone: 202-414-9200
*frobinson@reedsmith.com*
*scoleman@reedsmith.com*
*mengel@reedsmith.com*
*jchristensen@reedsmith.com*

**Attorneys for Defendant Walgreen Co.**

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 14th day of September, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

                                                */s/ Michael S. Leib*
                                                Michael S. Leib