**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, | Civil No. 17-cv-2246<br><br>Judge Edmond E. Chang<br>Magistrate Judge Sheila Finnegan |
| Plaintiffs, | |
| v. | |
| WALGREEN CO., | |
| Defendant. | |

**REPLY TO MOTION TO STRIKE OR EXCLUDE PORTIONS OF
SCHAFERMEYER'S REBUTTAL REPORT AND ANY TESTIMONY REGARDING
THE SAME PURSUANT TO FEDERAL RULES OF EVIDENCE 702 AND 403 AND
FEDERAL RULE OF CIVIL PROCEDURE 26**

Walgreen Co. ("Walgreens") submits this reply to its Motion to Strike or Exclude Portions of Schafermeyer's Rebuttal Report and Any Testimony Regarding the Same Pursuant to Federal Rules of Evidence 702 and 403 and Federal Rule of Civil Procedure 26 ("Motion").

## I. ARGUMENT

### A. Schafermeyer's Citations To Expert Testimony From Other Cases (Opinion II.B(1)) Is Inappropriate And Highly Prejudicial

#### 1. Schafermeyer cannot rely on expert opinions *from another case* that merely state the same thing to bolster his opinion

Schafermeyer improperly cites to and relies upon Dale Chamberlain's declaration and Robert Navarro's testimony in *Corcoran v. CVS Pharmacy, Inc.*[1] as evidence that "*others associated with PBMs [pharmacy benefit managers]*" disagree with Walgreens' expert, Michael Jacobs, on the meaning of the term "cash customer." Dkt. 603-1 (Rebuttal Report of Dr. Kenneth Schafermeyer) ("Schafermeyer Reb. Report") ¶ 15 (emphasis added). At the time of their testimony, however, Chamberlain and Navarro were not "associated with PBMs"; they were *experts* retained and paid for by the *Corcoran* plaintiffs. *See id*. ¶ 15 n.13 (citing "Expert Declaration of Dale Chamberlain"); *Corcoran v. CVS Pharmacy, Inc.,* 4:15-cv-03504-YGR, Dkt. 274-12 (attaching expert declaration of Chamberlain); Dkt. 186 (motion to strike Navarro's expert declaration and testimony) (Ex. A to Mot.). Plaintiffs have not contested the fact that the *Corcoran* plaintiffs retained and paid for Chamberlain and Navarro to serve as expert witnesses and that they were not "associated with PBMs" at the time of their testimony. Instead, Plaintiffs claim that Schafermeyer "cited these reports not to support his own opinions, but rather to show that Jacobs chose to selectively cite only those declarations from *Corcoran* that align with Jacobs' view." Dkt. 649 (Pls. Opp'n to Walgreens' Mot. to Strike or Exclude Portions of Schafermeyer's Reb. Report

---

[1] Later styled as *Washington et al. v. CVS Pharmacy, Inc.*, 4:15-cv-03504-YGR (N.D. Cal. June 24, 2021), although referred to here as *Corcoran*.

and Any Testimony Regarding the Same Pursuant to Federal Rules of Evidence 702 and 403 and Federal Rule of Civil Procedure 26) ("Opp'n"), at 2 (citing Schafermeyer Reb. Report, ¶¶ 14-15.). But that is not true.

To begin, Jacobs does not cite *any Corcoran* declarations in the body of his Report. Rather, he cites to the testimony of PBM representatives who testified at deposition *in this case*. Dkt. 586-2 (March 16, 2023 Expert Report of Michael S. Jacobs) ("Jacobs Report") ¶ 47. And while Jacobs does list six *Corcoran* declarations as materials he considered, (**Ex. A:** Jacobs Report, Ex. A), *a fact witness* provided each of those declarations. *Corcoran v. CVS Pharmacy, Inc.*, 4:15-cv-03504-YGR (N.D. Cal. June 24, 2021), Dkts. 273-25; 280-24; 280-25; 280-26; 280-30; 280-32. In other words, Plaintiffs are wrong to claim that Schafermeyer's citation to Chamberlain's declaration and Navarro's testimony is "classic rebuttal evidence." Dkt. 649 (Opp'n), at 2. The fact that Jacobs disclosed that he considered (without citing in his report) declarations from fact witnesses in *Corcoran* is not the same as Schafermeyer's Rebuttal Report affirmatively citing to paid testimony in *Corcoran* from experts who were not associated at the time with any PBMs. Neither Chamberlain's declaration nor Navarro's testimony rebuts anything in Jacobs's Report, as neither shows that Jacobs "chose to selectively cite only those declarations from *Corcoran* that align with Jacobs' view." Dkt. 649 (Opp'n), at 2.

Because Schafermeyer's citation to Chamberlain's declaration and Navarro's testimony is not, as Plaintiffs' claim, "classic rebuttal evidence," it serves only to parrot the opinion of other experts in an attempt to bolster Schafermeyer's own opinion, which the Seventh Circuit does not permit. Dkt. 627 (Mot.), at 3-4 (citing cases). The Court should exclude Opinion II.B(1) for impermissibly relying on expert opinions from another case that purport to state the same thing as Schafermeyer's opinion.

### 2. Schafermeyer's testimony is improper rebuttal

Walgreens has pointed out that Schafermeyer offered improper rebuttal by citing to Chamberlain and Navarro for the proposition that "patients using a club membership discount program to purchase medication are 'cash customers,'" a topic already covered in Schafermeyer's opening report. Dkt. 627 (Mot.), at 4-5 (citations omitted). In response, Plaintiffs argue that Schafermeyer's citations to the Chamberlain declaration and Navarro testimony are proper rebuttal for the same reasons discussed above. Again, these citations do not rebut anything to which Jacobs testifies in his Report. Thus, it is improper rebuttal that the Court should exclude.[2]

### 3. Schafermeyer's testimony is highly and misleadingly prejudicial

Walgreens has argued that Opinion II.B(1) is highly prejudicial because (i) Chamberlain and Navarro were not "PBM representatives" or "associated with PBMs" at the time of their *Corcoran* testimony, which could mislead the jury; (ii) Walgreens has had no opportunity to cross-examine them and their *Corcoran* cross-examination has not even been provided (not that that alone would solve the confrontation clause problem); and (iii) CVS's countervailing PBM expert testimony from *Corcoran* is not being admitted and, in fact, the only way to avoid significant

---

[2] In a footnote, Plaintiffs argue that "Walgreens does not seek to strike Dr. Schafermeyer's citation to the declaration of Bretta Grinsteinner, another expert whose declaration was submitted in *Corcoran*." Dkt. 649 (Opp'n), at 2 n.2. This is not correct. *First*, Walgreens has no indication that Grinsteinner was a designated as an expert in *Corcoran*, and Plaintiffs have not shown that this is the case. Indeed, Schafermeyer cites not to Grinsteinner's declarations themselves, but to an arbitrator's reference to three of her declarations, none of which are from *Corcoran*. Dkt. 603-1 (Schafermeyer Reb. Report), ¶ 15 and n.20. Although a Grinsteinner declaration was on the Trial Exhibit list in *Corcoran*, it was not identified as an "expert" declaration, it was objected to, and there is no indication on the docket it was admitted at trial. *Corcoran et al. v. CVS Pharmacy, Inc.*, No. 4:15-cv-03504 YGR, Dkt. 629, at 61 (N.D. Cal. June 24, 2021). Moreover, in its Motion, Walgreens stated in a footnote that Schafermeyer's reference to Grinsteinner's declarations is improper because (i) Grinsteinner flip-flopped on the issue and there is no ability for the Court or a jury to judge whether her original testimony or her most recent testimony is more credible; (ii) Schafermeyer cites only to an arbitration decision discussing Grinsteinner's declarations, so he is relying on hearsay within hearsay; and (iii) his citation to her declarations are improper rebuttal for the same reasons as discussed with regard to Chamberlain's declaration and Navarro's testimony. Dkt. 627 (Mot.), at 5 n.2. In other words, Walgreens does seek to strike Schafermeyer's references to Grinsteinner's testimony.

prejudice would be to admit large swaths of *Corcoran* testimony. In response, Plaintiffs make two arguments, neither of which have any merit.

*First*, Plaintiffs claim that a jury would not be confused because Schafermeyer identifies Chamberlain and Navarro as ***former*** vice presidents of Express Scripts and, in a footnote, notes that Chamberlain's declaration was an expert declaration. But the text of Schafermeyer's opinion identifies these two individuals as being "associated with PBMs." Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 15. In fact, the whole point of this Section in Schafermeyer's Rebuttal Report is to claim that Jacobs considered the statements of "certain PBM representatives[]" while omitting others (*id.*), which is false for the reasons set forth above. Thus, to the extent references to Chamberlain and Navarro have any probative value, which Walgreens does not concede, that probative value is outweighed by the prejudice of Schafermeyer being permitted to testify that Jacobs omitted declarations from *Corcoran* of other PBM representatives that have differing opinions from the declarations Jacobs considered.

*Second*, Plaintiffs argue that "Walgreens fails to credibly describe the unfair prejudice it will suffer if Opinion II.B(1) is introduced." Dkt. 649 (Opp'n), at 5. But this ignores Walgreens' point that it would be unfair to allow Schafermeyer to smuggle in the testimony of two additional experts that have not been, and will not be, subject to cross-examination, thus essentially allowing Plaintiffs three PBM experts to Walgreens' one. And again, the only potentially adequate way to address this unfair prejudice would be to allow in large swaths of *Corcoran* testimony, including the testimony of CVS's PBM expert. Notably, Plaintiffs do not attempt to distinguish or argue against the *Ratliff* case Walgreens cited, which stands for the proposition that a Court should consider in its Rule 403 analysis whether allowing in evidence would open the door to the "potential for a complex 'trial within a trial'" that will be distracting and of limited probative value.

*See Ratliff v. City of Chi.,* No. 10 C 739, 2012 U.S. Dist. LEXIS 164500, at *7 (N.D. Ill. Nov. 19, 2012).  Nor do Plaintiffs attempt to distinguish, or make any argument, regarding the *Dahlin* case Walgreens cited, in which the court required a plaintiff to choose between cumulative expert witnesses.  *See Dahlin v. Evangelical Child & Family Agency,* No. 01 C 1182, 2002 U.S. Dist. LEXIS 24558, at *15-16 (N.D. Ill. Dec. 18, 2002).  To say that Walgreens has not credibly described the unfair prejudice is false.

For all these reasons, as well as those stated in Walgreens' Motion, the Court should exclude Opinion II.B(1).

### B.  The Court Should Exclude Opinion IV.A, Because Schafermeyer Cannot, On Rebuttal, Point To Further Pre-Existing Record Evidence To Seek To Bolster His Opinion

Walgreens pointed out in its Motion that Schafermeyer's Rebuttal Report attempts to include "additional evidence" to bolster Schafermeyer's opinion that a "cash customer" is one who does not use insurance and that PSC customers are, in fact, cash customers.  Dkt. 627 (Mot.), at 7.  In his opening report, Schafermeyer pointed to internal Walgreens documents in which he claims "Walgreens employees described the PSC as offering discounts to cash customers."  *Id.* (citing Dkt. 553-45 (Expert Report of Kenneth W. Schafermeyer, Ph.D.) ("Schafermeyer Report") ¶ 142 n. 138 (citing Amiet Dep. Ex. 73 at 3486)); Dkt. 553-45 (Schafermeyer Report) ¶¶ 144, 146 (citing Erlund Dep. Ex. 69 at 2435, 2439).  In his Rebuttal Report, Schafermeyer cites to additional internal Walgreens documents for the same proposition.  Dkt. 627 (Mot.), at 7 (citations omitted).  Walgreens argued that this is improper rebuttal because Schafermeyer is citing to further pre-existing record evidence to support his initial opinion, which he could have offered before.  *Id.*, at 7-8.

In response, Plaintiffs argue that this additional evidence rebuts Jacobs's opinion on the subject.  But Jacobs did not cite to internal Walgreens documents in his report for the purpose of

opining on the meaning of "cash customer." Thus, the additional evidence to which Schafermeyer cites is merely being used to bolster his original opinion and, therefore, is improper rebuttal. The Court should exclude Opinion IV.A, as well as Paragraph 50, which introduces Opinion IV.A.

**C.    The Court Should Exclude Schafermeyer's Opinion In Rebuttal To Walgreens' Expert John W. Hanifin (Opinion XIV), Because Schafermeyer Has No Expertise In Customer Loyalty Programs**

Schafermeyer also attempts to rebut the expert report of John W. Hanifin, who opines on the field of customer loyalty programs and the obstacles consumers face in joining PSC. Walgreens challenged Schafermeyer's credentials to offer rebuttal opinions on customer loyalty.

Plaintiffs' Opposition first points out that Schafermeyer offered certain opinions in Section V.G.2 of his initial report, which Walgreens did not seek to strike. The implication is that Walgreens should not now be able to challenge Schafermeyer's rebuttal of Hanifin's report. But the opinions Schafermeyer offered in Section V.G.2 of his initial report are different than those he offered in Section XIV of his Rebuttal Report.

In Section V.G.2 of his initial report, Schafermeyer focused on the PSC membership fee and Walgreens' savings guarantee, which was in place for part of the proposed class period (from March 2012 through November 2017). **Ex. B:** Amiet 30(b)(6) Dep. at 81:18-22. Schafermeyer's conclusion was that the savings guarantee and other claimed reductions in the fee at certain times negates any claim that the fee was a "barrier to entry." Dkt. 553-45 (Schafermeyer Report) ¶ 161. Schafermeyer's opinions in Section XIV of his Rebuttal Report, however, are of an entirely different nature. In addition to addressing the membership fee, Schafermeyer criticizes Hanifin's opinion that PSC is a subscription loyalty program in which "the time and effort required to sign up" and "the provision of personal information" are additional barriers to entry. Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 142. Schafermeyer attempts to distinguish pharmacy membership programs from other subscription loyalty programs and attempts to challenge Hanifin's opinion

that the time and effort to sign up or the required provision of personal information would be a barrier to entry. *Id.* ¶¶ 142-148. But Schafermeyer has no expertise to opine on these topics.

Plaintiffs argue that Schafermeyer is qualified given his experience in the managed care industry and his years teaching microeconomics and pharmacy management. Dkt. 649 (Opp'n), at 6. Yet as Walgreens points out, Schafermeyer has not identified any training or course that he took related to customer loyalty programs, has never published on the subject, and has identified no practical or specialized experience with customer loyalty programs. Dkt. 627 (Mot.), at 9. The fact that he has pharmacy experience and that Walgreens' subscription loyalty program is within the pharmacy context does not make him an expert on customer behavior in signing up for loyalty programs, any more than having pharmacy experience would make him qualified to testify on labor-management relations in the pharmacy world or the proper way to construct pharmacy stores. The Court should strike Schafermeyer's opinions on this subject.

### D. Schafermeyer's Opinion XV Relies On Improper Say-So Opinions, Cherry-Picked Information, And Citations That Do Not Support His Opinion

Walgreens argued in its Motion that the Court should strike Opinion XV of Schafermeyer's Rebuttal Report. That opinion addresses the testimony of Walgreens' expert, Dr. Kelly Lear Nordby, an economist who opines that, "[a]s a matter of economics, the PSC membership fee is part of the PSC price." Dkt. 586-48 (Expert Report of Kelly Lear Nordby, Ph.D.) ("Nordby Report") ¶ 10. Plaintiffs' responses to Walgreens' arguments have no merit.

*First*, Walgreens showed that, in Paragraph 160 of Opinion XV, Schafermeyer provides an opinion that "the [Prescription Savings Club] membership fee is better understood as a profit center," with no explanation of the basis for this opinion. Dkt. 627 (Mot.), at 11 (citing Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 160). Plaintiffs do not respond to this point, referencing only Paragraphs 161-174 of Schafermeyer's Rebuttal Report, not Paragraph 160, which is where

Schafermeyer gives this opinion. Dkt. 649 (Opp'n), at 7. In other words, Plaintiffs have no response, and tacitly admit that Schafermeyer's opinion in Paragraph 160 is not supported by any facts, data, or reliable methods.

*Second*, Plaintiffs argue that Schafermeyer properly challenges Nordby's statement "that PSC prices are only available to club members" by "demonstrating that Walgreens made PSC prices available to members of the general public." Dkt. 649 (Opp'n), at 8 (citing Dkt. 603-1 (Schafermeyer Reb. Report) ¶¶ 162-65). Nordby, however, does not opine as to whether PSC was "available to the general public" and, therefore, Schafermeyer's opinions in Paragraphs 163-165 are irrelevant and do not rebut anything Nordby says in her report. Dkt. 586-48 (Nordby Report) ¶ 15 n.11.[3] What Nordby does say is that "***the right to PSC formulary prices*** is only available to club members who are eligible, enroll, agree to the terms and conditions, and pay the membership fee." Dkt. 586-48 (Nordby Report) ¶ 49 (emphasis added). That is unquestionably true. In other words, Nordby's opinion is not about who is eligible to join PSC, but rather who can receive PSC prices, which she states (correctly) is "conditioned upon paying the membership fee." Dkt. 586-48 (Nordby Report) ¶ 29. Thus, whether or not PSC members pay the enrollment fee is what is relevant to Nordby's opinion; whether or not members of the "general public" could join PSC is not relevant to her opinion.[4]

---

[3] Schafermeyer's Rebuttal Report refers to statements by Walgreens and a Walgreens 30(b)(6) designee that pertain to who is eligible to enroll in PSC, not to who has the right to access PSC *prices*, and thus is irrelevant to Nordby's opinion. Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 163.

[4] Further, in footnote 4 of its Motion, Walgreens showed how Schafermeyer's claims in Paragraph 164 of his Rebuttal Report regarding the Federal Employees Program and state Medicaid enrollees are "demonstrably false." Dkt. 627 (Mot.), at 14 n.4. Plaintiffs provide no response to Walgreens' argument relating to footnote 4. Also, in Paragraph 163 of his Rebuttal Report, Schafermeyer claims that Nordby "did not consider" certain evidence that is, in fact, identified on her list of materials considered. Dkt. 586-48 (Nordby Report), Ex. 2.

*Third*, Walgreens argued that Opinion XV also "fails to set forth a reliable methodology because it provides a cherry-picked, one-sided misstatement of the record to bolster Schafermeyer's ends-driven rebuttal." Dkt. 627 (Mot.), at 13. Specifically, Walgreens referred to Paragraph 165 of Schafermeyer's Rebuttal Report, where he cites to Walgreens' damages expert's finding that it is possible that 24,000 persons received PSC prices without there being a record of those persons paying the membership fee. Dkt. 627 (Mot.), at 13 (citations omitted). Yet Schafermeyer fails to acknowledge that this accounts for only 0.02% of PSC members. *Id.* Plaintiffs do not take issue with Walgreens' criticism, but merely argue that this goes "to the weight of Dr. Schafermeyer's testimony, not its reliability." Dkt. 649 (Opp'n), at 9 (citations omitted). This is incorrect. As the Advisory Committee on Evidentiary Rules has explained in relation to the Amendments to Rule 702 taking effect in December of this year, which are merely clarifying amendments, whether an expert's opinion relies on sufficient facts or data and reliably applies a reliable methodology goes to ***admissibility***, not to weight, and courts that have said otherwise are incorrect. *See* Report of the Advisory Committee on Evidence Rules, at 6 (May 15, 2022), https://www.uscourts.gov/rules-policies/archives/committee-reports/advisory-committee-evidence-rules-may-2022 ("Advisory Committee Report"). Here, Schafermeyer has not used sufficient facts or a reliable methodology for Opinion XV.

*Fourth*, Walgreens pointed out that Nordby criticizes Schafermeyer for overlooking that the two-part pricing structure of PSC "enables Walgreens to separate high-demand, price-sensitive cash customers from low-demand, less price-sensitive cash customers," (Dkt. 627 (Mot.), at 11 (citations omitted)), and that Schafermeyer's disagreement with this is based on nothing more than a say-so opinion. *Id.* Specifically, Walgreens pointed out that Schafermeyer merely claims that Nordby's report is not specific to "pharmacy operations and managed care environment," without

providing any explanation for why that matters. *Id.* (citation omitted). Plaintiffs do not address this point. Dkt. 649 (Opp'n) at 8-10.[5]

Plaintiffs claim that "Schafermeyer's references to *Garbe* directly rebut Dr. Nordby's opinion that Walgreens' PSC membership fee was a barrier to enrollment." Dkt. 649 (Opp'n), at 8-9. As Walgreens mentions in its Motion, Nordby points out that the *Garbe* discussion on the membership fee and whether it is a barrier to entry was specific to the facts of that case and, more specifically, the Kmart program, which had a $10 membership fee, which is 50% less than the PSC's $20 membership fee for individuals.[6] Dkt. 627 (Mot.), at 12 (citation omitted). In fact, Nordby discusses how, in this case, when Walgreens offered a one-time reduction of this fee to $5 for a short period of time in 2012, PSC enrollments increased significantly, showing that the amount of a membership fee matters as to how much of a barrier to entry exists. Dkt. 586-48 (Nordby Report) ¶¶ 56-57. Plaintiffs also claim that Schafermeyer's failure to include part of Nordby's deposition testimony, which relates to this exact issue, goes to the weight of the evidence, (Dkt. 649 (Opp'n), at 9), but as noted above, the question is whether Schafermeyer's opinion is based on a sound methodology as applied to the facts of ***this case***, which, for the reasons stated herein and in Walgreens' Motion, it is not.

The Court should strike Opinion XV and preclude Schafermeyer from offering expert testimony regarding Nordby's opinions.

---

[5] Notably, Schafermeyer says only that he "understands the concepts of prices discrimination and market segmentation that Dr. Nordby discusses," (Dkt. 603-1 (Schafermeyer Reb. Report) ¶ 169), not that he considered it, which is Nordby's criticism. Moreover, even assuming Schafermeyer does understand these economic concepts, it does not mean he is an expert in them or qualified to opine on those concepts.

[6] In the same discussion, Nordby pointed out that the *Garbe* court held that, "if the fee was $10 and the program drug price was $15, the customer paid $25 for her first prescription" and "[f]or people who fill more than one prescription, the [annual membership] fee would need to be allocated in some sensible way." Dkt. 586-48 (Nordby Report) ¶ 61. This holding in *Garbe* supports Nordby's opinion that the PSC membership fee must be allocated to determine the true PSC price.

### E. Schafermeyer's Claim That Walgreens And PBMs Engaged In A Scheme Should Be Stricken As Prejudicial

Walgreens argued that if the Court does not exclude Schafermeyer's rebuttal to Nordby's opinion, the part of his footnote 151 to Paragraph 160 asserting that Walgreens and PBMs engaged in a "scheme" should be stricken as prejudicial, given that Schafermeyer has presented no evidence PBMs were involved in a scheme with Walgreens, nor have Plaintiffs made this allegation. Dkt. 627 (Mot.), at 14 (citation omitted). In response, Plaintiffs argue that Walgreens waived this argument because it did not object to Schafermeyer's testimony in his opening report that "PBMs have incentives to allow Walgreens to manipulate U&C prices." Dkt. 649 (Opp'n), at 10 (citation omitted). Plaintiffs also argue that there is evidence that "Walgreens retained Optum and [Express Scripts] to administer its PSC program" and paid them for this service. *Id.* (citation omitted).

To begin, although Section V.E of Schafermeyer's opening report does discuss his opinion that there are incentives for PBMs to allow Walgreens to report higher U&C prices, that is different from the assertion that the PBMs engaged with Walgreens in a "scheme," let alone that Walgreens "pa[id] the PBM partners for their participation in the scheme." Nowhere in Section V.E does Schafermeyer claim that the PBMs joined with Walgreens in a "scheme," and even if the Court finds that it was inferred, Schafermeyer certainly did not claim that Walgreens paid the "PBM partners" for turning a blind eye as to what Schafermeyer claims (incorrectly) is Walgreens' "manipulation" of U&C prices. Had Schafermeyer made that claim, which Plaintiffs have never advanced, Walgreens would have moved to strike that allegation.

Further, as to the argument regarding Optum and Express Scripts, footnote 15 is not limited to these two PBMs. And, while Schafermeyer did testify that Optum and Express Scripts, which

- 11 -

administered PSC at different points in time,[7] "were incentivized to allow Walgreens to manipulate U&C pricing" because they received certain administrative fees for administering PSC, (Dkt. 553-45 (Schafermeyer Report) ¶ 124), this is not the same as claiming that Walgreens and these two PBMs participated in a "scheme" together, which implies some coordination between the two for an improper purpose.

Finally, according to Plaintiffs' own argument, there is no consequence to the Court striking this prejudicial phrase because Schafermeyer already opined as to the PBM incentives, which Walgreens did not move to strike. In other words, these thirteen words have no probative value, and even if they do, any "probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

For these reasons, and the reasons stated in the Motion, Walgreens asks the Court to exclude the words "as well as paying the PBM partners for their participation in the scheme" and prohibit Schafermeyer from testifying that there was such a scheme or payments, except for being allowed to testify that Walgreens paid certain administrative fees to Optum and Express Scripts to administer PSC.

## II.    CONCLUSION

For the reasons set forth above, and those in Walgreens' Motion, the Court should exclude or strike Opinions II.B(1), IV.A, XIV, XV, and part of footnote 151 of Schafermeyer's Rebuttal Report, and preclude Plaintiffs from offering or relying on any testimony from Schafermeyer about those opinions.

---

[7] That is, Walgreens contracted with a PBM to perform tasks to administer the PSC, such as to confirm the eligibility of a customer as having an active, paid PSC membership. For example, the PBM is contracted to confirm that the customer had satisfied the requirements needed to receive access to PSC prices, similar to how PBMs administer insurance claims. **Ex. B:** Amiet Dep. 89:11-24.

DATED: November 13, 2023

/s/ Michael Scott Leib
Michael Scott Leib
Anthony Robert Todd
**REED SMITH LLP**
10 S Wacker Dr # 4000
Chicago, IL 60606
Telephone: 312/207-1000
*mleib@reedsmith.com*
*atodd@reedsmith.com*

Frederick Robinson (*pro hac vice*)
Selina Coleman (*pro hac vice*)
Megan Engel (*pro hac vice*)
Jessica Christensen (*pro hac vice*)
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 East Tower
Washington, DC 20005
Telephone: 202-414-9200
*frobinson@reedsmith.com*
*scoleman@reedsmith.com*
*mengel@reedsmith.com*
*jchristensen@reedsmith.com*

***Attorneys for Defendant Walgreen Co.***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 13th day of November, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

<u>*/s/ Michael Scott Leib*</u>
Michael Scott Leib