**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>                      Plaintiffs,<br><br>  v.<br><br>WALGREEN CO.,<br><br>                      Defendant. | Civil No. 1:17-cv-02246<br><br>Judge Edmond E. Chang<br><br>Magistrate Judge Sheila Finnegan |

**PLAINTIFFS' OPPOSITION TO DEFENDANT WALGREEN CO.'S MOTION TO STRIKE OR EXCLUDE SUSAN HAYES'S REBUTTAL REPORT AND ANY TESTIMONY REGARDING THE SAME PURSUANT TO FEDERAL RULES OF EVIDENCE 702 AND 403 AND FEDERAL RULE OF CIVIL PROCEDURE 26**

**INTRODUCTION**

Plaintiffs Cynthia Russo, Lisa Bullard, Ricardo Gonzales, International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund, International Union of Operating Engineers Local 295-295 Welfare Fund ("IUOE 295"), and Steamfitters Fund Local 439 (collectively, "Plaintiffs") respectfully submit this opposition to Defendant Walgreen Co.'s ("Walgreens") Motion to Strike or Exclude Susan Hayes's Rebuttal Report and any Testimony Regarding the Same Pursuant to Federal Rules of Evidence 702 and 403 and Federal Rule of Civil Procedure 26 (ECF No. 638) ("Motion").

In opposing Plaintiffs' motion for class certification, Walgreens' experts did more than just criticize the methodology proffered by Plaintiffs' economics expert, Dr. Lynette Hilton. Instead, Dr. James Hughes and Mr. Jed Smith affirmatively opined that to calculate damages in this action, claims needed to be re-adjudicated and additional data needed to be considered that Walgreens' experts believed was not in the record and did not exist. To rebut and criticize Walgreens' experts' new affirmative opinions, Plaintiffs proffered the rebuttal expert report of Dr. Susan A. Hayes. Dr. Hayes has been repeatedly recognized as an expert regarding the standards and practices within the PBM industry relating to pharmacy claims data. Dr. Hayes's rebuttal opinions are grounded in her extensive real-world experience and directly rebut the opinions proffered by Walgreens' experts. For the reasons set forth below, the Court should deny Walgreens' Motion to exclude Dr. Hayes's testimony.

**ARGUMENT**

**I. DR. HAYES'S OPINIONS CONSTITUTE PROPER REBUTTAL TESTIMONY**

Dr. Hayes's testimony properly contradicts and rebuts the opinions proffered by Walgreens' experts.

1

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party. . . " *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001) (acknowledging that a party may have "no way to know" during its case-in-chief whether an opposing parties' expert would "testify at all, much less what he would say"). That "opinions offered in a rebuttal report touch upon the same subjects covered in an initial expert report does not require that the rebuttal report be stricken." *Green v. Kubota Tractor Corp.*, No. 09 CV 7290, 2012 WL 1416465, at 5 (N.D. Ill. Apr. 24, 2012). A rebuttal report is proper where it is "specifically targeted at the expert evidence" proffered by the opposing expert. *Id.* So long as a rebuttal report is "offered to contradict or rebut the other party's report, an expert may introduce new methods of analysis in a rebuttal report." *Ernst v. City of Chicago*, No. 08 C 4370, 2013 WL 4804837, at 2 (N.D. Ill. Sept. 9, 2013).

As discussed below, Dr. Hayes's opinions constitute proper rebuttal testimony.

### A. Dr. Hayes Properly Rebuts the Claim that PBMs Do Not Have Data Relevant to the Calculation of Damages

Walgreens proffers the opinion of Mr. Smith that the "Walgreens Transaction Data and PBM Transaction Data produced in this matter do not contain complete information on plan design, such as deductible amounts, out-of-pocket maximum amounts, whether copayments, coinsurance, or a mix of the two are used in the plan, or GER terms and payments." Declaration of Michael S. Leib in Support of Defendant Walgreen Co.'s Opposition to Plaintiffs' Motion for Class Certification, ECF No. 588, Ex. 1 (filed under seal as ECF No. 586, Ex. 1) ("Smith Rep.") ¶41; *id.*, ¶18 ("The Data Does Not Show Whether U&C Was A Basis For The Amount Paid Or Reimbursed"). The inference of Mr. Smith's opinion is that the data that has yet to be "produced in this matter" does not exist.

Rebutting Walgreens' experts, Dr. Hayes testifies that the Relevant PBMs maintain the data necessary to calculate damages in this action, including data regarding plan design. ECF No. 609, Supplemental Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification, Ex. 63 ("Hayes Rebuttal Report") §V.d-j.

Walgreens now concedes that Dr. Hayes is correct and claims that its experts "never opined that the PBMs do not maintain information regarding copay/coinsurance, deductibles, out-of-pocket maximums and the like." Motion at 13. Instead, Walgreens argues that Dr. Hayes's testimony should be excluded because she does not affirmatively testify regarding the periods of time for which the Relevant PBMs maintain data. Motion at 12-13. This argument is inapposite because it distorts the applicable standard. The proper inquiry is not whether perfect data exists for all time periods, but whether "sufficient data" exists to establish a methodology's reliability. Sufficient data refers to "the 'kinds of facts or data on which experts in the field would reasonably rely.'" *In re NorthShore Univ. HealthSystem Antitrust Litig.*, No. 07 CV 04446, 2023 WL 2138971, at 6 (N.D. Ill. Feb. 20, 2023) (Chang, J.). Walgreens fails to explain why its claim that PBMs may not have retained claims data from time immemorial somehow makes Dr. Hayes's opinions unreliable. By the same token, Walgreens has not identified what claims data it believes to be missing or unavailable that would make Dr. Hayes's opinions unreliable. Indeed, Dr. Hayes's opinions expressly take into account that PBMs are required to retain data for certain periods of time. Hayes Rebuttal Report, ¶¶ 44, 45, 48, 63. As the Court explained in *NorthShore*, "reliability is primarily a question of the validity of the ***methodology*** employed by the expert, not the quality of the data used in applying the methodology or the conclusions produced." *Id.* (quoting *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) (emphasis in *NorthShore*)).[1]

---

[1] Unless otherwise noted, all emphasis is added and citations are omitted.

3

### B. Dr. Hayes Properly Rebuts the Claim the Relevant PBMs Cannot Re-Adjudicate Claims

Walgreens' experts affirmatively opine that damages in this action can only be calculated over a plan year.[2] Supplemental Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification, ECF No. 609, Ex. 82 ("Hughes Rep."), §IV.B.1.a; Smith Rep. ¶¶29-31; Motion at 7-8. Dr. Hayes specifically rebuts and contradicts these opinions by opining as an expert in the standards and practices in the industry that overcharges are regularly identified and assessed on the level of an individual transaction, as opposed to on the level of a plan. Hayes Rebuttal Report §V.a.

In their rebuttal reports, Dr. Hughes and Mr. Smith further opine that to calculate damages, it is necessary to re-adjudicate claims. *See* Motion at 6-7. Dr. Hayes specifically responds to these opinions by opining that the Relevant PBMs could re-adjudicate claims if necessary.[3] Hayes Rebuttal Report §V.b. Walgreens has no real response to this proposal except to suggest that Dr. Hayes was required to explain the legal basis by which the Relevant PBMs could be asked to re-adjudicate claims. Motion at 9. It would be improper, however, for an expert to opine as to the contents of the law. *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994)

---

[2] For the reasons stated in Plaintiffs' Opposition to Motion to Exclude [Dr.] Hilton's Expert Report and Testimony Under Federal Rule of Evidence 702, ECF No. 613 (filed under seal as ECF No. 607), which Plaintiffs incorporate by reference, this argument misstates the requirements of the applicable substantive law.

[3] Walgreens also appears to acknowledge, Motion at 9 n.5, that Dr. Hayes directly contradicts and rebuts Dr. Hughes's assessment that it would be "a major undertaking" to review stop-loss policies. Hayes Rebuttal Report ¶28 n.7. Walgreens claims this is Dr. Hayes's *ipse dixit*, Motion at 9 n.5, however Dr. Hayes clearly sets forth the facts underlying her belief, namely, that "TPPs and stop loss carriers both maintain records of any payment associated with stop loss insurance." Hayes Rebuttal Report ¶28 n.7 (noting, "I do not believe this is even necessary as GER payments (derived through auditing) and stop loss payments are never off-set due to the timing of these payments.").

4

(abrogated on other grounds). Regardless, Walgreens' statement that the Relevant PBMs "cannot be legally required" to re-adjudicate claims misses the mark.

As a party, Walgreens itself can be ordered to *submit* claims for re-adjudication. Fed. R. Civ. P. 65(d)(2)(A). As for the Relevant PBMs, "the district court has broad authority under Rule 65 to enjoin third parties who receive appropriate notice of the court's injunctive order." *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012).

Pursuant to Federal Rule of Civil Procedure 65, the Court's power to order injunctive relief extends beyond Walgreens to reach both its "agents" and "other persons who are in active concert or participation" with Walgreens. Fed. R. Civ. P. 65(d)(2)(B) & (C); *GCM Partners, LLC v. Hipaaline Ltd.*, No. 20 C 6401, 2021 WL 1526669, at 8 (N.D. Ill. Apr. 19, 2021) ("Rule 65(d)(2)(C) binds nonparties that (1) act in concert with a bound party or aid or abet an enjoined party in violating an injunction, or (2) are in privity with an enjoined party."). There is no doubt that the Relevant PBMs are in privity with Walgreens and as set forth in Section V.E of Dr. Schafermeyer's Expert Report, Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Class Certification (ECF No. 556), Ex. 56 (filed under seal as ECF No. 553, Ex. 45), the Relevant PBMs have direct financial incentives to aid and abet Walgreens' manipulation of usual and customary prices.

Thus, for the reasons set forth in Dr. Hayes's Rebuttal Report, the Relevant PBMs could re-adjudicate claims if necessary.

## II. COURTS HAVE REPEATEDLY RECOGNIZED THAT DR. HAYES IS AN EXPERT REGARDING THE PBM INDUSTRY AND HER TESTIMONY REGARDING INDUSTRY STANDARDS AND PRACTICES IS RELEVANT

Walgreens attempts to diminish Dr. Hayes's opinions by claiming that she is only an expert in the "auditing" industry. Motion at 6-7, 11, & 15. Had Walgreens chosen to depose Dr. Hayes, it would have learned, as multiple Courts have recognized, that Dr. Hayes is an expert regarding

5

the standards and practices in the PBM industry. Dr. Hayes's curriculum vitae establishes that she is well-qualified to opine as to both the types of data that PBMs maintain and as to how that data can be used to assess damages in this action. Dr. Hayes is thus well-qualified to rebut the opinions of Walgreens' experts.

As set forth in her Rebuttal Report, Dr. Hayes has worked "in the Pharmacy Benefit Manager ("PBM") industry since 1985," including through service at Walgreens. Hayes Rebuttal Report ¶1. Dr. Hayes is the principal, owner, and founder of Pharmacy Investigators and Consultants, which, as part of its work on behalf of plan sponsors, procures services from PBMs, and analyzes over one million transactional data claims per week. Hayes Rebuttal Report ¶¶1 & 4. Dr. Hayes has direct, real-world experience with the types of data maintained by PBMs, having "reviewed pharmacy claims data from almost every PBM in the industry, including the 'Big Three' (CVS/Caremark, OptumRx, and Express Scripts, Inc.) and many of the mid-size and smaller PBMs, such as MedImpact, Prime Therapeutics, CapitalRx, Southern Scripts, Benecard, and Elixir (formerly Envision)." *Id.* ¶8.

Courts receiving Dr. Hayes's expert testimony have acknowledged that Dr. Hayes is more than qualified to "speak on PBM industry standards and practices generally." *New York City Transit Auth. V. Express Scripts, Inc.*, 588 F. Supp. 3d 424, 444 (S.D.N.Y. 2022) ("Hayes's twenty-five years of professional experience in the PBM industry – including experience directly relevant to the industry standards for processing claims and managing pharmacy networks, combined with her accreditation as a Health Care Fraud Investigator (the highest industry accreditation by the National Health Care Anti-Fraud association), and her recent completion of a doctoral program related to fraud in the pharmaceutical industry – are more than enough to qualify her as an expert in practices in the PBM industry related detecting and preventing fraud."); *Argus Health Sys., Inc.*

6

*v. Benecard Servs., Inc.*, No. 10-00187-CV-W-JTM, 2011 WL 5822408, at 1 (W.D. Mo. Nov. 16, 2011) (finding Dr. Hayes has expertise in "the pharmacy claims industry").

Dr. Hayes is thus well-qualified to rebut the claims of Walgreens' experts by opining that within the industry, a transaction-level analysis is an accepted and well-used methodology to identify overcharges and that transactional claims data produced by TPPs, PBMs, and pharmacies can be and are regularly matched. Because Dr. Hayes's expertise encompasses the real-world analysis of these interlocking data sets,[4] her testimony is both relevant and helpful and should not be excluded.

### III. DR. HAYES'S INDEPENDENT OPINIONS FORMED ON THE BASIS OF HER EXPERTISE IN THE PBM INDUSTRY FORECLOSE ANY POTENTIAL "VOUCHING"

Walgreens characterizes several of Dr. Hayes's opinions – including that it is common practice within the industry to analyze claims on a transaction-by-transaction basis and that it is common practice within the industry to drop claims that cannot be matched – as impermissible vouching. Motion at 5, 8, 10-13 & n.6. Walgreens fundamentally misconstrues what "vouching" prohibits.

---

[4] Walgreens claims that Dr. Hayes provides no support for her claim that PBMs can identify TPPs that are government entities. Motion at 14. Dr. Hayes's sets forth the specific aspects of her experience that underlie her opinions that PBMs can identify government entities, including that PBMs "have access to information about the entities with which they work, including the type of TPP involved in the prescription drug benefit process," Hayes Rebuttal Report ¶75, that information associated with a claim can include the "the name, type, or identifier of the TPP," and that because "PBMs have direct relationships with TPPs that pharmacies typically do not have, in my experience, PBMs have more robust and reliable information about TPPs than pharmacies." *Id.* ¶76. Dr. Hayes also explains that PBMs can leverage "databases of government programs, contractual agreements, or specific identifiers associated with government entities," to determine "whether a TPP is a state or federal government entity," and explains that doing so is "important for various reasons, such as complying with specific regulations, determining reimbursement rates, or applying government-specific pricing and reimbursement methodologies." *Id.* ¶77-78.

7

Vouching is a form of hearsay. "[W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule. Thus, an expert is not permitted to be the mouthpiece of an expert in a different specialty, or to vouch for the truth of what another expert told him." *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-CV-5836, 2017 WL 2178504, at 4 (N.D. Ill. May 16, 2017). Vouching does not occur, however, when an expert is "testifying to the expert opinions [s]he *is* qualified to make." *Wilbern v. Culver Franchising Sys., Inc.*, No. 13 C 3269, 2015 WL 5722825, at 15 (N.D. Ill. Sept. 29, 2015) (emphasis in original); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 758–59 (N.D. Ill. 2009) ("The court finds Morton's opinions on the mixing that occurs during wallboard manufacture constitute more than mere parroting or vouching for statements outside of his expertise . . . Morton is qualified, based on the totality of his training and experience, to opine independently....").

Dr. Hilton is not the source of Dr. Hayes's opinions. Rather, Dr. Hayes formed her own opinions on the basis of her own independent expertise and experience. Because Dr. Hayes's opinions relate to matters within her expertise and experience, Dr. Hayes's opinions do not constitute "vouching."

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Walgreens' Motion.

Dated: November 15, 2023  **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (IL Bar #2759819)
Carey Alexander (IL Bar #5188461)
Amanda M. Rolon (*admitted pro hac vice*)

8

The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-4478
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com
arolon@scott-scott.com

Erin Green Comite (IL Bar #420630)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 531-2632
Facsimile: (860) 537-4432
ecomite@scott-scott.com

David W. Mitchell (IL Bar #199706)
Arthur L. Shingler III (IL Bar # 181719)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
davidm@rgrdlaw.com
ashingler@rgrdlaw.com

Mark J. Dearman (IL Bar #0982407)
Stuart A. Davidson (IL Bar #084824)
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com

*Interim Co-Lead Counsel*

9

        Katrina Carroll (IL Bar #6291405)
        **LYNCH CARPENTER LLP**
        111 W. Washington Street, Suite 1240
        Chicago, IL 60602
        Telephone: (312) 750-1265
        katrina@lcllp.com

*Local Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2023, the foregoing document was filed electronically through the Court's Electronic Case Filing System, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo

1