UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Civil No. 17-cv-2246 <br><br> Judge Edmond E. Chang <br> Magistrate Judge Sheila Finnegan <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY TO WALGREEN CO.'S MOTION TO STRIKE OR EXCLUDE
THE OPINIONS AND TESTIMONY OF SUSAN A. HAYES
PURSUANT TO FEDERAL RULES OF EVIDENCE 702 AND 403
AND FEDERAL RULE OF CIVIL PROCEDURE 26**

Walgreen Co. ("Walgreens") submits this reply in support of its motion to strike or exclude the rebuttal report of Susan A. Hayes, (Dkt. 609-3 (Rebuttal Report of Dr. Susan A. Hayes) ("Hayes Report")), and to preclude Plaintiffs from relying on Hayes's testimony.

## I. ARGUMENT

### A. Hayes's Opinions That PBMs Maintain Certain Data Should Be Stricken

In its motion to strike the opinions and testimony of Hayes, (Dkt. 634-4 (the "Motion")), Walgreens argued that Hayes's opinions that pharmacy benefit managers ("PBMs") maintain data to distinguish between a copayment and coinsurance and to identify whether the usual and customary ("U&C") price was used to determine the amounts paid by consumers and third-party payers ("TPPs") were improper rebuttal. Dkt. 634-4 (Mot.), at 2-5. Walgreens pointed out that Plaintiffs' expert, Dr. Lynette Hilton, had opined on how she would identify this information *from data* by assuming that the Relevant PBMs would be able to produce data containing this information, even though "[t]he PBM data produced to date in this case . . . does not contain this information." *Id*. at 2-3. Walgreens argued that "[i]t is Plaintiffs' burden to prove the elements for class certification" and that Plaintiffs had failed to develop evidence during discovery that the Relevant PBMs could produce this information. *Id*. at 4-5. Hayes's Report, in which she claims that the PBMs would have this data, attempts to clean up "an obvious deficiency in Hilton's methodology"—something Plaintiffs should have done through their opening expert reports. *Id*.

In response, Plaintiffs argue that Hayes rebuts the testimony of Walgreens' expert, Jed Smith. Dkt. 657 (Pls. Opp'n to Mot.) ("Opp'n"), at 2. Specifically, Plaintiffs argue that "[t]he inference of Mr. Smith's opinion is that the data that has yet to be 'produced in this matter' *does not exist*." *Id*. (quoting Dkt. 627-1[1] (Amended Expert Report of Jed Smith) ("Smith Report")

---

[1] Plaintiffs cite to Dkt. 588-1, which was filed under seal as Dkt. 586-1. Mr. Smith's Amended Expert Report was filed at Dkt. 627-1.

1

¶¶ 18, 41) (emphasis added). Smith's opinion, however, is not about whether data exists or not; it is about the lack of certain information in the data produced in this case. As Plaintiffs note, Mr. Smith merely testified that the PBM data "***produced in this matter***" does not distinguish between copayments and coinsurance or identify whether U&C was a basis for adjudication, which Hayes does not rebut. *Id*. (quoting Dkt. 627-1 (Smith Report)). In other words, Smith's opinion helps demonstrate that Hilton, and thus Plaintiffs, fell short of their burden of proving that data points she concedes she needs for her methodology can be obtained. Thus, Hayes's opinion that the Relevant PBMs maintain this data is not true rebuttal.

Plaintiffs' case law does not aid their argument. Plaintiffs cite general case law on what is proper rebuttal. For example, Plaintiffs cite *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001) and *Green v. Kubota Tractor Corp.*, No. 09-CV-7290, 2012 U.S. Dist. LEXIS 56770, at *14 (N.D. Ill. Apr. 24, 2012) for the proposition that a rebuttal report can "touch upon the same subjects covered in an initial expert report" because a party may not be able to anticipate what an opposing party's expert may testify about. Dkt. 657 (Opp'n), at 2. But that sidesteps the issue Walgreens raised. Walgreens argued that "[i]t is Plaintiffs' burden to prove the elements for class certification" and, having failed to meet that burden, Plaintiffs are improperly attempting to do so through a rebuttal report. Dkt. 634-4 (Mot.), at 4-5. In fact, another case Plaintiffs cite, *Ernst v. City of Chicago*, No. 08-C-4370, 2013 U.S. Dist. LEXIS 127993 (N.D. Ill. Sept. 9, 2013), proves this point. According to *Ernst*, "[t]he reply or surrebuttal is not an opportunity for the correction of any oversights in the party's initial report." *Id*. at *4-5 (citation omitted). Yet that is exactly what Plaintiffs attempt to do through the Hayes Report. It is Plaintiffs' burden to show that they can obtain data from the Relevant PBMs that will allow Hilton to enact her methodology. Having failed to do that, they attempt to clean up this failure through the Hayes Report. In other words,

2

the Hayes Report is not rebuttal; it is an opinion Plaintiffs should have, and could have, offered along with their class certification motion. Accordingly, Paragraphs 20 and 40-63 of the Hayes Report should be stricken.

Paragraphs 40-71 of the Hayes Report should also be stricken as speculative, unreliable, and irrelevant. Plaintiffs claim that Walgreens concedes that Hayes's opinion regarding the PBMs having the data is correct. Dkt. 657 (Opp'n), at 3. But Plaintiffs' claim is not true. Hayes opined that the National Council for Prescription Drug Programs (the "NCPDP") has certain fields in the standards it promulgates that would show, among other things, whether a payment was a copayment or coinsurance and whether a payment was determined by reference to the U&C price. Dkt. 609-3 (Hayes Report) ¶¶ 40-71. Walgreens noted that its expert, Dr. James W. Hughes, "never opined that the PBMs do not maintain" this type of information. Dkt. 634-4 (Mot.), at 13. Instead, Hughes opined that the Relevant PBMs may not have this information going back to 2007 and, even if they do, it may not be accessible, particularly because, as noted above, the relevant fields are not in the data produced to date. *Id.* (citing Dkt. 603-4 (Hughes Dep.) at 84:4-23). Walgreens also noted certain qualifications Hayes makes in her Report showing that she does not know if the PBMs have the relevant data and, if so, for how many years they maintain it. Dkt. 634-4 (Mot.), at 12-13. As Walgreens explained, without establishing how far back the information is available and whether the data is accessible, the opinion is speculative, unreliable, and irrelevant. *Id*. at 13.

Plaintiffs also argue that the data that exists is "sufficient" to establish that Hilton's methodology is reliable. Dkt. 657 (Opp'n), at 3. But there is no evidence that the Relevant PBMs can produce data with these fields or, if they can, how far back each maintains the data. Thus, neither Hilton nor Hayes has established that any data, let alone "sufficient data," can be produced. Hayes's reference to vague legal and regulatory requirements that "[i]n many cases" require PBMs

3

to retain claims data for certain periods of time does not establish which data is required to be kept, or for how long. Dkt. 634-4 (Mot.), at 12. And without proof that each Relevant PBM can produce data distinguishing between copayment and coinsurance and establishing whether U&C was a basis for the TPP payment to the PBM, Hilton has not shown that her methodology can be enacted in a reliable way. Hayes's opinions do not fix this problem.[2]

### B. Hayes's Opinion That The Relevant PBMs Can Readjudicate Claims Is Irrelevant, Unreliable, And Highly Prejudicial

Walgreens' experts opine that, even if Hilton identified a proper damages methodology, damages can only be determined by readjudicating each individual's transactions over an entire plan year. Dkt. 641-2 (Amended Expert Report of James Hughes) ("Hughes Report") § IV.B.1.a; Dkt. 627-1 (Smith Report) ¶¶ 29-31. Hayes responded by opining that the Relevant PBMs can perform that readjudication. Dkt. 609-3 (Hayes Report) ¶¶ 18, 31-35. But as Walgreens pointed out: (i) the Relevant PBMs cannot be required to readjudicate claims; and (ii) Hayes has not established that the Relevant PBMs have the information to conduct the readjudication. Dkt. 634-4 (Mot.), at 9-10. The latter issue is addressed above. As to the former, Plaintiffs make two arguments, both of which fail for the reasons set forth below.

*First*, Plaintiffs cite *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898 (7th Cir. 1994) for the proposition that an expert cannot opine as to the law. Dkt. 657 (Opp'n), at 4. But it is indisputable that **the Court** can opine as to the law. *Id*. at 901 (holding that the Court should resolve legal questions rather than leaving it to a jury). Here, if the Court agrees with Walgreens that the

---

[2] Plaintiffs cite *In re NorthShore Univ. HealthSystem Antitrust Litig.*, No. 07-CV-04446, 2023 U.S. Dist. LEXIS 27977, at *15 (N.D. Ill. Feb. 20, 2023) for the proposition that the reliability analysis looks at the validity of the methodology, "not the quality of the data." But, here, the issue is not about the quality of the data, but rather the existence of the data.

4

PBMs cannot be forced to conduct the readjudication for tens, if not hundreds, of millions of class members, then it should strike Paragraphs 18 and 31-35 of the Hayes Report.

*Second*, Plaintiffs argue that the Court can enjoin Walgreens by ordering it to submit claims to PBMs for readjudication and that the Court can enjoin the Relevant PBMs as well. Dkt. 657 (Opp'n), at 5. This argument goes too far.

For one, Plaintiffs have not asked for an injunction of this kind in their Fourth Amended Complaint. To the extent they are asking for a preliminary injunction, the purpose of a preliminary injunction "is to prevent irreparable injury and thereby preserve the relative positions of a party so that the court can render a meaningful decision once a trial on the merits is held." *Daniels v. Bursey*, No. 13-c-1550, 2004 U.S. Dist. LEXIS 10822, at *5 (N.D. Ill. June 14, 2004); *see also U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (the purpose of an injunction is to prevent future harms). There is no basis for asking for a preliminary injunction to commandeer indirectly a non-party to readjudicate billions of claims for the purpose of determining who is in the class and proving damages. *See, e.g.,* Dkt. 477 (Fourth Amd. Compl.) ¶ 7 (stating that Walgreens filled over 900 million prescriptions in fiscal year 2016 alone). This is especially true here, where a mandatory injunction of this type would be extremely burdensome on the Relevant PBMs. *See Graham v. Medical Mut.*, 130 F.3d 293, 295 (7th Cir. 1997) (in deciding whether to grant an injunction, courts must "consider the effect of the injunction on nonparties") (citations omitted); *see also Motor Werks Ptnrs., L.P. v. BMW of N. Am., Inc.*, No. 01-C-7178, 2001 U.S. Dist. LEXIS 20999, at *21-25 (N.D. Ill. Dec. 17, 2001) (denying motion for preliminary injunction, in part, because of the impact the injunction would have on nonparties).

In addition, even if the Court enjoined Walgreens to submit billions of claims to the Relevant PBMs for readjudication, Plaintiffs have failed to demonstrate that the PBMs would have

5

any obligation to readjudicate those claims. Plaintiffs, for example, have not shown that Walgreens' contracts with the Relevant PBMs would require the Relevant PBMs to readjudicate billions of claims, not as part of normal business operations, but to identify potential class members and their alleged damages for litigation in which the Relevant PBMs are not parties.

Moreover, Rule 65(d)(2) does not permit the Court to name the Relevant PBMs in any injunction, as an injunction may only be issued against "the parties [to the action]; . . . the parties' officers, agents, servants, employees, and attorneys; . . . and other persons who are in active concert or participation with [them]." Fed. R. Civ. P. 65(d)(2). The Seventh Circuit has held that an injunction can only be directed at a defendant, and "*whether* a particular person or firm is among the 'parties' officers, agents, servants, employees, and attorneys; [or] other persons in active concert or participation with' them . . . is a decision that may be made only after the person in question is given notice and an opportunity to be heard." *Lake Shore Asset Mgmt. v. CFTC*, 511 F.3d 762, 766-67 (7th Cir. 2007) (emphasis in original) (quoting Fed. R. Civ. P. 65(d)(2)). And while an injunction may bind those third parties listed in Rule 65(d)(2), the third parties may not be named in the injunction. *Id*. ("The injunction may direct Lake Shore to do things within its power—such as turning over *its* books and records—but may not impose obligations directly on other members of the corporate group.") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110-11 (1969)); *see also Black & Decker, Inc. v. Robert Bosch Tool*, No. 4-C-7955, 2006 U.S. Dist. LEXIS 94554, at *8-9 (N.D. Ill. Dec. 27, 2006) (noting that inunctions may not be entered against a non-party, and that non-parties may only be "subject to contempt sanctions if they act with an enjoined party to bring about a result forbidden by the injunction" and know about the injunction and that their acts violate it) (internal quotation marks and citation omitted). Even the case Plaintiffs cite, *H-D Michigan, LLC v. Hellenic Duty Free Shops, S.A.*, 694 F.3d 827, 842

6

(7th Cir. 2012), in which a court enjoined a party and its "distributors, dealers, and all persons in active concert or participation with any of them," merely stands for the proposition that a court can sanction a third party who, "with actual notice of the court's order . . . actively aid[s] and abet[s] a party in violating that order," not that a third party may be named in an injunction.

Further, while Rule 65(d) does authorize the Court to enjoin nonparties who are in active concert or participation with Walgreens, the Relevant PBMs do not fall within that scope. Under Seventh Circuit law, a person is in "active concert or participation" with an enjoined party if that person "aids or abets an enjoined party in violating the injunction," or "is in privity with an enjoined party." *Blockowicz v. Williams,* 630 F.3d 563, 567 (7th Cir. 2010) (internal quotation marks and citations omitted). The standard of proof for aiding and abetting has two prongs—association and participation. *United States v. Beck*, 615 F.2d 441, 448-49 (7th Cir. 1980) (citation omitted). That is, one must show intent to assist in thwarting an injunction plus some overt act designated to aid in the success of the venture. *Id*. Plaintiffs' argument that the PBMs are financially incentivized to aid and abet Walgreens in violating an injunction misses the mark. The question is not whether a nonparty could benefit (financially or otherwise) from aiding or abetting the enjoined party; it is whether the nonparty takes an affirmative action that aids the enjoined party in violating the injunction. But there is no overt act the PBMs could take to prevent Walgreens from resubmitting claims, which is the injunction Plaintiffs propose the Court could order. *See Blockowicz*, 630 F.3d at 568 (holding that a non-party's mere inactivity is inadequate to render them aiders and abettors in violating an injunction); *Regal Knitwear Co*. *v. NLRB*, 324 U.S. 9, 13 (1945) ("The courts, nevertheless, may not grant an . . . injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law."); *E. A. Renfroe & Co., v. Moran*, 338 Fed. Appx. 836, 840 (11th Cir. 2009)

7

("The law is clear that a court may not enforce an injunction against a nonparty 'who acts independently' of the enjoined party.") (quoting *Regal Knitwear Co*., 324 U.S. at 13).[3]

Additionally, for the PBMs to aid and abet Walgreens, Walgreens would have to violate the injunction. *See, e.g., Fidlar v. Techs v. LPS Real Estate Data Solutions, Inc*., No. 4:13-cv-4021-SLD-JAG, 2013 U.S. Dist. LEXIS 159929, 40-41 (C.D. Ill. Nov. 8, 2013) (holding that a nonparty must aid and abet the enjoined party to fall under Rule 65(d)(2)(C)); *Empire Indus. v. Winslyn Indus., LLC*, No. 18 C 698, 2019 U.S. Dist. LEXIS 109080, at *14 (N.D. Ill. June 30, 2019) (holding that because the enjoined party did not violate the injunction, the nonparties cannot be said to have acted in concert with the joined party); *see also* 1 Am. Law of Torts § 3:5.30 ("There can be no aiding or abetting liability absent the commission of an underlying tort."). As long as Walgreens complies with the injunction by resubmitting the claims, there would be no underlying violation for the PBMs to aid in, even if the PBMs decided not readjudicate the claims.

With respect to privity, Plaintiffs argue that there is "no doubt" that the PBMs are in privity with Walgreens because, according to Plaintiffs, the PBMs "have direct financial incentives to aid and abet Walgreens' manipulation of usual and customary prices." Dkt. 657 (Opp'n), at 5. But whatever financial incentives the PBMs may have has no bearing on the question of privity. There are generally only two categories of nonparties in privity with an enjoined party: (1) nonparty successors in interest to an enjoined party; and (2) nonparties that are otherwise legally identified with the enjoined party. *Nat'l Spiritual Assembly of the Baha'is of the U.S. Under the Hereditary Guardianship, Inc., v. Nat'l Spiritual Assembly of the Baha'is of the U.S., Inc.*, 628 F.3d 837, 849-

---

[3] Contrary to Plaintiffs' claim, the Relevant PBMs are not Walgreens' "agents," and Plaintiffs have cited no facts showing that they are. The parties have an arms-length contractual relationship, nothing more. *See, e.g.*, *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 37 n.5 (1st Cir. 2009) (noting that PBMs contract with TPPs and pharmacies, and act on their own behalf).

8

50 (7th Cir. 2010); *see also Baltz v. Fair*, 178 F. Supp. 691, 693 (N.D. Ill. 1959) ("Privity is not established merely because persons are interested in the same question or in proving the same set of facts or because the question litigated is one which might affect the other person's liability as a judicial precedent in a subsequent action."). Legally identified typically means successors and assigns, and also may include "a limited class of other nonparties as well—*provided* the evidence establishes a very close identity of interests and such significant control over the organization *and* the underlying litigation that it is fair to say that the nonparty had his day in court when the injunction was issued." *Baha'is*, 628 F.3d at 853. The Relevant PBMs are neither successors in interest to or legally identified with Walgreens.

In short, there is no basis for the Court to order, directly or indirectly, the Relevant PBMs to readjudicate claims.[4]

### C. Hayes Is Not A Damages Expert And Should Not Be Permitted To Testify As One

For two of its arguments, Walgreens pointed out that, while Hayes may be an expert in the field of auditing, she has no expertise in calculating damages. Dkt. 634-4 (Mot.), at 6-8, 10-11. Specifically, Walgreens argues that Hayes is not qualified to render the following opinions:

---

[4] Walgreens pointed out that Hayes's statement that she does not believe it would be "'a major undertaking' to collect and review all stop-loss insurance policies and the documents necessary to assess their implications on TPP payments," (Dkt. 634-4 (Mot.), at 9 n.5 (citing Dkt. 609-3 (Hayes Report) ¶ 28 n.7)), is *ipse dixit* because "Hayes does not explain the basis for her belief or how her experience leads her to this belief. Dkt. 634-4 (Mot.), at 9 n.5. Plaintiffs argues that Hayes does set forth the facts underlying this belief because she opines that "TPPs and stop loss carrier both maintain records of any payment associated with stop loss insurance." Dkt. 657 (Opp'n), at 4 n.3 (citing Dkt. 609-3 (Hayes Report) ¶ 28 n,7). But even if TPPs and stop loss carriers maintain such records, that does not explain why it would not be a major undertaking to collect and review all of the documents. Hughes explained that (i) "the number of TPPs and health plans in the U.S. is enormous," (ii) the documents would "need to be collected from either the PBMs or the TPP class members," (iii) as Walgreens' expert, Michael Jacobs, opines, "these contracts are often confidential," and (iv) he understands from counsel "that some or all of the PBMs would likely demand that the contracts be redacted before production." Dkt. 641-2 (Hughes Report) ¶ 147. Hayes addresses none of these factors, stating only that she does not believe it would be "a major undertaking." That is classic *ipse dixit* and does not satisfy Rule 702.

9

- "[I]t is not necessary when auditing claims or determining damages to readjudicate every single claim."

- "Matching data from different data sets using common variables is standard industry practice," and, where data cannot be matched "it is common to eliminate these claims."

*Id*. (citing to Dkt. 609-3 (Hayes Report)).[5] In response, Plaintiffs argue that Hayes "is an expert regarding the standards and practices in the PBM industry," and that "she is well-qualified to opine as to both the types of data that PBMs maintain and as to how that data can be used to assess damages in this action." Dkt. 657 (Opp'n), at 5-6. But, in these two opinions, she opines on matters beyond this alleged expertise.

Whether it is necessary to readjudicate every claim to properly assess damages has nothing to do with PBM standards and practices or what data PBMs maintain that could be of assistance to a damages methodology. Instead, Hayes opines that readjudication is "not routinely done in the industry," (Dkt. 609-3 (Hayes Report) ¶ 23), which Walgreens showed to mean the auditing industry. Dkt. 634-4 (Mot.), at 6-7. Walgreens does not argue that Hayes is not familiar with PBM data or that she has no expertise in conducting fraud, waste, and abuse investigations. A damages expert, however, would have forensic accounting, valuation, CPA, and/or economic damages expertise, not auditing expertise. Plaintiffs do not claim that Hayes has ever created a damages model, let alone presented one to a court. The Court should not allow Hayes to opine beyond her actual expertise into damage modeling, which is what Plaintiffs have hired another expert, Hilton, to do.

---

[5] As to Hayes's opinion that Hilton's methodology "does not depend on the distinction between fully insured and self insured plans," (Dkt. 634-4 (Mot.), at 14-15 (citing to Dkt. 609-3 (Hayes Report)), Walgreens stated that "Hayes also fails to explain how her auditing experience qualifies her to render this opinion." *Id*. at 15. This was not a primary basis for Walgreens' argument why Paragraphs 79 to 82 of the Hayes Rebuttal Report should be stricken. To simplify the argument, Walgreens withdraws that sentence of its Motion.

10

Similarly, Hayes's opinion regarding "industry practice" in matching data and discarding claims that cannot be matched relates to auditing practices, not damages modeling. Therefore, for the same reason, Hayes is not qualified to render this opinion.

It is telling that Plaintiffs address Hayes's qualifications in generalities, rather than showing how her qualifications render her qualified to offer these two opinions. Plaintiffs presumably could not match up her qualifications with these opinions.

Plaintiffs do cite to two cases in which Hayes was certified as an expert, but neither address damages models. In *New York City Transit Auth. v. Express Scripts, Inc.*, 588 F. Supp. 3d 424 (S.D.N.Y 2022), Hayes testified as to "(1) 'the degree of care and reasonable diligence that should be applied by a PBM' in processing claims; (2) the conduct required to monitor and investigate pharmacy networks in a 'prudent and expert manner' in the PBM industry; and (3) the financial incentives created by the 'spread pricing model' in the Contract." *Id*. at 442-43. In *Argus Health Sys., Inc. v. Benecard Servs., Inc.,* No. 10-00187-CV-W-JTM, 2011 U.S. Dist. LEXIS 132022 (W.D. Mo. Nov. 16, 2011), Hayes testified that certain "audits are industry standard procedure." *Id*. at *11 n.6. Again, these topics go primarily to her experience with conducting fraud, waste, and abuse investigations and auditing. They certainly have nothing to do with formulating damages models.

Put simply, Hayes is not a damages expert and should not be permitted to offer opinions in an area for which she is not an expert.

### D. Hayes May Not Vouch For Hilton's Opinions

Walgreens challenged opinions in the Hayes Report where she improperly vouches for Hilton's opinions.

- "[T]he methodology proposed by Dr. Hilton to evaluate damages on the level of the transaction is an acceptable and well-used methodology," and readjudication is not necessary.

11

- Hilton's methodology "accords with industry best practices."

- Hilton's methodology is "acceptable."

Dkt. 634-4 (Mot.), at 8, 11-12, 13 n.6 (citing Dkt. 609-3 (Hayes Report)). Plaintiffs argue that these statements are acceptable because "[v]ouching does not occur . . . when an expert is 'testifying to the expert opinions [s]he is qualified to make." Dkt. 657 (Opp'n), at 8 (quoting *Wilbern v. Culver Franchising Sys., Inc.*, No. 13-C-3269, 2015 U.S. Dist. LEXIS 130888, at *50 (N.D. Ill. Sept. 29, 2015)). Plaintiffs, however, misread the caselaw. Plaintiffs' case stands for the proposition that it is acceptable, in certain circumstances, for "an expert to rely on the opinions of other experts in a related field[]" when forming the expert's own opinion. *Id.* at *48. In other words, a testifying expert can build off another expert's opinion to form the testifying expert's opinion in the testifying expert's field. *Id.* at *49 (citing *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) and *In re James Wilson Assocs.*, 965 F.2d 160, 172-73 (7th Cir. 1992)). But that is not the case here.

Hayes is not building off Hilton's opinion to form her own opinion. Instead, she blesses Hilton's opinions, and that is not proper. An expert "can testify about [her] review of and reliance on other experts' opinions, but [s]he may not independently vouch for those opinions by saying that [s]he, based on [her] own expertise, agrees with them." *Heath v. C.R. Bard*, No. 3:19-cv-0803, 2021 U.S. Dist. LEXIS 127320, at *12-13 (M.D. Tenn. July 8, 2021) (permitting an expert to testify about his review and reliance on other experts' opinions, but precluding the expert from independently vouching for those opinions by stating that he agrees with them or that they are correct); *see also Rivers v. B Braun Interventional Sys. Inc.*, No. 19-cv-988, 2023 U.S. Dist. LEXIS 194847, at *13 (E.D. Wis. Oct. 31, 2023) (noting that an expert can accept another expert's conclusion insofar as it is a necessary component of an opinion within his expertise, but cannot

12

vouch for the expert's methods or endorse her conclusion); *Hartle v. Firstenergy Generation Corp.*, 7 F. Supp. 3d 510, 525-26 (W.D. Penn. 2014) (holding that an expert's opinion that another expert's analysis was "reasonable," logical," and "sophisticated" constituted improper vouching and precluding such opinions); *In re Whirlpool Corp. Front-Loading Washing Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 747 (N.D. Ohio 2014) (excluding opinion of one expert that merely evaluated and vouched for the work of another expert).

The Court should strike these improper opinions in Paragraphs 19 and 36-39 of the Hayes Report.[6]

## II.    CONCLUSION

For these reasons, Walgreens respectfully requests that the Court strike and/or exclude the opinions and testimony of Hayes.

---

[6] Walgreens pointed out that Hayes's opinion that, in her "understanding and experience . . . PBMs can typically identify TPPs that are government entities," is speculative, unreliable, and *ipse dixit*. Dkt. 634-4 (Mot.), at 14 (citing Dkt. 609-3 (Hayes Report)). While Plaintiffs point to statements Hayes makes that PBMs "often" can access information about the TPPs and "may receive" information about the TPPs, and that "PBMs have more robust and reliable information about TPPs than pharmacies," (Dkt. 657 (Opp'n), at 7 n.4 (citing Dkt. 609-3 (Hayes Report) ¶¶ 75-77), it does not change that the opinion is speculative as to whether PBMs can, in fact, identify TPPs that are government entities. Moreover, even if TPPs could "leverage 'databases of government programs, contractual agreements, or specific identifiers associated with government entities' to determine 'whether a TPP is a state or federal government entity," (Dkt. 657 (Opp'n), at 7 n.4 (quoting Dkt. 609-3 (Hayes Report) ¶¶ 77-78), Plaintiffs fail to respond to Walgreens' point that "the Court cannot order PBMs to undertake investigation to determine who is in or out of the proposed class." Dkt. 634-4 (Mot.), at 14. Thus, the Court should exclude Paragraphs 75-78 of the Hayes Report. Plaintiffs also do not address Walgreens' arguments regarding Hayes's opinions that: (1) PBMs have sufficient information to identify parent and subsidiary relationships (Dkt. 634-4 (Mot.), at 13-14); and (2) that Hilton's methodology "does not depend on the distinction between fully insured and self-insured plans." Dkt. 634-4 (Mot.), at 14-15. The Court should, therefore, strike and/or exclude Paragraphs 72-74 and 79-82 of the Hayes Report.

DATED: December 12, 2023

/s/*Michael S. Leib*
Michael S. Leib
Anthony Robert Todd
**REED SMITH LLP**
10 S Wacker Dr # 4000
Chicago, IL 60606
Telephone: 312-207-1000
*mleib@reedsmith.com*
*atodd@reedsmith.com*

Frederick Robinson (*pro hac vice*)
Selina Coleman (*pro hac vice*)
Megan Engel (*pro hac vice*)
Jessica Christensen (*pro hac vice*)
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 East Tower
Washington, DC 20005
Telephone: 202-414-9200
*frobinson@reedsmith.com*
*scoleman@reedsmith.com*
*mengel@reedsmith.com*
*jchristensen@reedsmith.com*

**Attorneys for Defendant Walgreen Co.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of December, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Michael S. Leib*
Michael S. Leib