**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br> v.<br><br>WALGREEN CO.,<br><br>        Defendant. | Civil No. 17-cv-2246<br><br>Judge Edmond E. Chang<br>Magistrate Judge Sheila Finnegan<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY TO MOTION TO STRIKE OR EXCLUDE HILTON'S
REBUTTAL REPORT AND ANY TESTIMONY REGARDING THE SAME
PURSUANT TO FEDERAL RULES OF EVIDENCE 702 AND 403
AND FEDERAL RULE OF CIVIL PROCEDURE 26**

Walgreen Co. ("Walgreens") submits this reply in support of its motion to strike or exclude the Amended Rebuttal Report of Plaintiffs' expert, Lynette Hilton, Ph.D., (Dkt. 634-2 (Amended Reb. Report of Dr. Lynette Hilton) ("Hilton Reb. Report")), and to preclude Plaintiffs from relying on her testimony.

I.  **ARGUMENT**

   A.  **Hilton Provides No Facts To Support Her Claim That PBMs Could Identify The TPP That Pays For Any Given Transaction**

In its Motion, Walgreens noted that "Plaintiffs' proposed class definition requires determining which TPP paid in whole or in part for a transaction." Dkt. 634-1 (Mot.), at 2. Plaintiffs do not deny the accuracy of this statement. Walgreens also pointed to evidence showing that the PBM data produced in the case does not always show the TPP that paid for, in whole or in part, a transaction. Walgreens, therefore, challenged Hilton's statements that the TPP listed in the PBM data is the class member and that she "understands" that PBMs would have the information as to the actual TPP that paid for a transaction. *Id*. at 3 (citing to Dkt. 634-2 (Hilton Reb. Report)). Because Hilton's statements are not "based on sufficient facts or data" and are not the "product of reliable principles and methods," Walgreens moved to exclude Paragraphs 9-11 of Hilton's Rebuttal Report. Plaintiffs' Opposition fails to show that these statements meet the requirements of Rule 702 of the Federal Rules of Evidence.

Plaintiffs argue that the Relevant PBMs produced data that those PBMs identified as associated with the Fund Plaintiffs (the three named Plaintiffs that are union funds) and, therefore, "the Relevant PBMs can identify class members." Dkt. 653 (Pls.' Opp'n to Mot. ("Opp'n")), at 2. But this ignores key facts in the case. For example, Walgreens pointed to the fact that some transactions in the data produced by ████████████████████████████████████████ ██████████████████ not named Plaintiff IUOE 295, as the TPP. Plaintiffs respond by noting

1

that, when it produced this transactional claims data, Express Scripts identified the transactions as being IUOE 295 beneficiary transactions. Dkt. 609-28 (Ex. 85 to Suppl. Decl. of Joseph P. Guglielmo in Support of Pls.' Mot. for Class Certification). Plaintiffs claim this "provide[s] ample support for Dr. Hilton's claim that the Relevant PBMs can identify transactions associated with a given TPP." Dkt. 653 (Opp'n), at 3. In addition to the data, however, Express Scripts provided Plaintiffs with a declaration that stated that Express Scripts pulled these transactions from its centralized data warehouse "***based upon the claim-identifying information provided to [Express Scripts] by IUOE's counsel*** (e.g., carrier name or DIV ID)." **Ex. A:** (May 26, 2021 V. Cornacchia Decl.), ¶ 8 (emphasis added). In other words, IUOE had to provide Express Scripts with identifying information for Express Scripts to pull the data for IUOE 295 beneficiaries. Of course, because Hilton's formula for damages is Total Overpayment-Consumer Overpayment=TPP Overpayment, (Dkt. 556-55 (Expert Report of Lynette Hilton) ("Hilton Report") ¶ 26), without knowing which consumer goes with which TPP, she is unable to determine TPP damages for any particular transaction. And while the Relevant PBMs were presumably able to eventually identify the TPPs that went with consumer transactions for the three Fund Plaintiffs, it is not practical for Plaintiffs to provide information to the Relevant PBMs gathered from hundreds of thousands of TPPs, and for the Relevant PBMs to then check the information (which Walgreens would also have a right to do), pull the data, and provide a declaration or testimony as to each set of data for each of the hundreds of thousands of TPPs. Dkt. 634-19 (Surreb. Expert Report of Jed Smith ("Smith Surreb. Report")) ¶ 15 (showing that there are 149,725 unique plans in the 2015 sample data alone).

Plaintiffs further argue that the testimony of Christopher Dymon, a Walgreens corporate representative, shows that the Relevant PBMs could identify TPP class members. Dkt. 653 (Opp'n), at 3. But Plaintiffs' reading of the Dymon Declaration is incorrect. Dymon merely

testifies that ███████████████████████████████████████████████████

███████████████████████████████████████ Dkt. 553-38 (Dymon Decl.) ¶ 6(c)(i). But according to Walgreens' expert, Dr. James Hughes, the entity with which the PBM contracts is not always the entity responsible for paying in whole or in part for the transaction. For example, "[h]ealth insurers can act as an intermediary between the" TPP and the PBM. Dkt. 641-2 (Amended Report of James Hughes) ("Hughes Report") ¶ 33. The health plan TPP "can contract directly with a PBM or can contract with a health insurer that has contracted with a PBM." *Id*. ¶ 34. Thus, all Dymon says is that the PBM would know with whom it contracted, not necessarily the ultimate TPP responsible for paying part or all of a drug transaction. Moreover, Dymon says nothing about the ability of the Relevant PBMs to determine the ultimate TPPs on a classwide basis, which would actually require individualized discovery as to each TPP and, therefore, would be impractical.

As Walgreens has explained, "Hilton attempts to minimize this issue by asserting that Smith overstated the number of unique health plans in the 2015 sample data, citing to the fact that, based on the field combinations Smith used, there are over 10,000 group numbers for PSC alone." Dkt. 634-1 (Mot.), at 4 (citing Dkt. 634-2 (Hilton Reb. Report)). Walgreens noted that, despite Hilton having the necessary information, she does not include any examples of other health plans in the 2015 data that have multiple unique group numbers, either because she did not run any tests or did not find support for her theory. *Id*. Plaintiffs argue in response that Walgreens is aware "that there are myriad group numbers in its data associated with the Fund Plaintiffs alone." Dkt. 653 (Opp'n), at 4 (citing Dkt. 553-38 (Dymon Decl.) ¶ 13(c)). This argument does not help Plaintiffs. For example, IBEW has both a fully insured health plan and a self-insured health plan, (**Ex. B:** (30(b)(6) Dep. of Edward Fox (IBEW)) at 78:17-82:19, 143:23-145:11; Dkt. 477 (Fourth Amd.

3

Compl) ¶ 27), and, therefore, while there may be different group numbers associated with IBEW, the ultimate payer will be different on each of these plans. *See* Dkt. 634-1 (Mot.), at 2 n.4. Moreover, as Smith explained in his Surrebuttal Report, even reviewing only the unique combinations of Plan Type, Plan Name, PBM Name, Employer or Sponsor Name, BIN, and PCN, without looking at group number, "there would still be over 7,000 health plans to investigate in the Walgreens 2015 Sample Data alone, which is only one of the 16 plus years at issue." Dkt. 634-19 (Smith Surreb. Report) ¶ 15.a.iv. And Smith provided evidence for why there are likely well over 7,000 plans in the 2015 sample data and that additional information beyond the data would need to be collected to determine the actual number of unique health plans. *Id*. Plaintiffs do not rebut this evidence. In other words, no matter how you look at it, there will be tens of thousands, if not hundreds of thousands, of unique health plans at issue.

The Court should exclude Paragraphs 9-11 of Hilton's Rebuttal Report.

**B.    Hilton's Opinion That Relevant PBMs Will Have Data To Show Their Own Parents And Subsidiaries Is Irrelevant And Improper Rebuttal**

One of the exclusions from the proposed class is all PBMs "and entities that have or had a parent or subsidiary relationship with any pharmacy benefit manager at any time since January 1, 2007." Walgreens' expert, Jed Smith, opined that "the data does not show whether any potential Class members have relationships with PBMs." Dkt. 627-1 (Smith Report) ¶¶ 22-24. Hilton claims that the Relevant PBMs have information about their own parent and subsidiary relationships. Dkt. 634-2 (Hilton Reb. Report) ¶ 12. But the PBMs' parent and subsidiary relationships are not the issue. The issue is whether potential ***TPP class members*** have or had a parent or subsidiary relationship, and Plaintiffs concede that the data does not show this. Dkt. 653 (Opp'n), at 5. Instead, Plaintiffs now argue that the TPPs can identify their parents and subsidiaries. Dkt. 653 (Opp'n), at 4. But this is not an opinion advanced by Hilton. Moreover, Plaintiffs do not explain how this

4

could be done on a classwide basis without individualized discovery. Indeed, in its class certification opposition, Walgreens noted that Plaintiffs have not supplied the Court with a trial plan. Dkt. 587 (Walgreens' Opp'n to Pls. Mot. for Class Certification) ("Opp'n to Class Cert"), at 11. And this is one of the consequences of that failure—Plaintiffs state that the TPPs can do something without showing how it would work. Nevertheless, Walgreens' Motion showed why Paragraph 12 of Hilton's Rebuttal Report is improper rebuttal as it does not address Smith's opinion and is irrelevant. Dkt. 634-1 (Mot.), at 5. Plaintiffs' response shows that Walgreens is correct. The Court should strike or exclude Paragraph 12 of Hilton's Rebuttal Report.

      **C.**    **Hilton's Methodology Fails To Identify Which Government Entities Are Included In Plaintiffs' Proposed Class And Which Are Excluded**

In its Motion, Walgreens showed how Hilton's methodology fails to identify which government entities are included in Plaintiffs' proposed class and which are excluded and, therefore, why Paragraphs 13-19 of her Rebuttal Report should be excluded. Plaintiffs' response fails to rebut Walgreens' argument.

*First*, Walgreens showed that Hilton's methodology relies on the "fed_gov_funded_payr_ind" field in Walgreens' data, a field as to which Walgreens testified, both through its corporate representative and through a stipulation, "is not reliable." Dkt. 634-1 (Mot.), at 6-7 (citing Dkt. 553-38 (Dymon Decl.) and Dkt. 636-3 (Data Sample Stipulation)). In fact, during the parties' negotiations on the Stipulation, which was executed on December 2, 2020, over two-and-a-half years before Hilton submitted her Rebuttal Report, Walgreens informed Plaintiffs that the field was unreliable, and for that reason, in the final Stipulation, Walgreens "reserve[d] the right to object to and/or criticize any of Plaintiffs' and/or their experts' analysis that is based, in whole or in part, on data" from that field on the basis that the data in that field "is not reliable." Dkt. 636-3 (Data Sample Stipulation) ¶ 2(a). And Dymon testified that ▮▮▮▮▮▮▮▮▮▮▮▮

5

███████████████████████████████████████████ Dkt. 553-38 (Dymon Decl.)

¶ 18(h) n.11. Nevertheless, Hilton uses the field in her methodology. Although Plaintiffs attempt to show that, despite Walgreens' testimony, the field is reliable, their arguments fail.

Plaintiffs, for example, argue that, because Walgreens' employees use the data, including this field, it must be reliable. Dkt. 653 (Opp'n), at 6-7. But using internal, unverified records for business purposes is far different than using it for a damages methodology, which under Rule 702 must be reliable. Moreover, while Walgreens did say in correspondence dated March 4, 2020, that Walgreens uses the field "for its own business purposes," Walgreens also stated that "[t]he only way to know with certainty which plans are federally funded is to ascertain that information from the relevant PBMs or health plans." Dkt. 659-2 (Ex. B to Decl. of Carey Alexander), at 4. Tellingly, Plaintiffs fail to address the evidence Smith provides in his Surrebuttal Report establishing that this field is unreliable. Dkt. 634-1 (Mot.), at 7 (citing Dkt. 634-19 (Smith Surreb. Report) ¶ 15). This evidence shows that Smith reviewed 200 plans with the largest number of transactions in the 2015 sample data and "identified at least 54 plans (27%) that Hilton includes in the class, but require additional research and analysis to determine if they should be excluded as a 'federal government entity' or a 'state government entity' or included as a 'state political subdivision.'" Dkt. 634-19 (Smith Surreb. Report) ¶ 15.b.i. Smith provides examples, as well as the details of his review of the 200 plans. *Id*. ¶ 15.b.i, Table 8; Attachment 3. Smith concludes that "Hilton's opinion that the" fed_gov_funded_ind field "can be relied upon to accurately identify class member exclusions without additional research is incorrect." *Id*. ¶ 15.b.i. By failing to address Smith's analysis, Plaintiffs have shown that they cannot challenge the analysis either because it is correct or because Hilton did not test it.

6

Apparently recognizing the weakness of their arguments, Plaintiffs state that they would obtain the information through "data produced by the Relevant PBMs." Dkt. 653 (Opp'n), at 8. Although it is possible that the PBMs may know whether a plan is federally or state funded, there is no evidence in the record, and Plaintiffs do not point to any, that shows that PBM *data* identifies whether a plan is federally or state funded. Thus, at best, the record shows that individualized discovery would be required of the Relevant PBMs to discover if each of the over 149,000 plans (and likely many more, as that is just the number from the 2015 sample data) are federally funded. Individualized discovery, however, makes class treatment inappropriate. Dkt. 587 (Opp'n to Class Cert.), at 34-35.

*Second*, Walgreens pointed out that, even if the Relevant PBMs know whether a given plan is federally funded for current plans they are administering, "Hilton provides no reason to believe they know that information for historical plans and for how long PBMs retain that information." Dkt. 634-1 (Mot.), at 8. Plaintiffs respond that, "[w]hether complete data exists is not a basis to exclude Dr. Hilton's opinions." Dkt. 653 (Opp'n), at 8. Hilton, however, needs to show that her methodology can be accurately applied over the entire relevant time period. If, for example, Caremark has this information available for two years, Express Scripts for three, MedImpact for one, LDI/CastiaRx for four, and Optum for six months—even assuming Walgreens' other objections can be overcome—this would create a patchwork of different time periods for different potential class members that would be difficult to administer and that would create differences between potential class members that would defeat commonality. Importantly, Plaintiffs took discovery from the PBMs, yet they failed to discover the relevant information. Moreover, Walgreens pointed out that, whether a TPP is "federally funded" is no longer part of the proposed class definition, with the amended definition now referring instead to whether a TPP is a "federal

government entity." Dkt. 634-1 (Mot.), at 9. "Hilton has no methodology to determine whether a TPP is actually a 'federal government entity.'" *Id*. Plaintiffs tellingly fail to address this argument.

*Third*, Plaintiffs also fail to address Walgreens' other arguments. Specifically, Walgreens argued that Hilton's Rebuttal Report does not provide a reliable methodology for identifying "state political subdivisions," which is part of Plaintiffs' amended class definition, and Hilton cannot testify as to whether Ricardo Gonzales should be included within Plaintiffs' proposed class. Dkt. 634-1 (Mot.), at 7-9. By failing to address these points, Plaintiffs essentially concede them.

The Court should exclude Paragraphs 13-19 of Hilton's Rebuttal Report.

> **D.     In Opining That The Data Will Show Whether A Consumer Paid A Copayment Or Coinsurance, Hilton Relies On Speculative And Irrelevant Testimony, Declarations That Do Not Support Her Position, And An Unreliable Methodology**

Walgreens argued in its Motion that Hilton has failed to show that the Relevant PBMs retain accessible data from 2007 to the present showing whether a consumer payment represents a copayment, coinsurance, or a deductible. Plaintiffs' response fails to show otherwise.

*First*, Plaintiffs state that Hilton's methodology is that the Relevant PBMs will provide this data, and they point to her testimony that she has "reviewed PBM data produced in other cases that provide information regarding whether a copay or coinsurance was paid." Dkt. 653 (Opp'n), at 9. But Walgreens pointed out that this testimony addresses only unknown PBMs whose data Hilton reviewed, not the Relevant PBMs' data and, therefore, the testimony is speculative and irrelevant. Dkt. 634-1 (Mot.), at 10. Hilton's testimony also fails to address whether data will show if portions of the consumer payment consist of deductible payments. *See generally*, Dkt. 634-2 (Hilton Reb. Report).

*Second*, Hilton referred to declarations submitted by Optum, Express Scripts, and Caremark in the *In Re: Niaspan Antitrust Litigation*. In its Motion, Walgreens pointed to the

8

Surrebuttal Report of Smith, which establishes that these declarations do not show that the PBMs can produce additional fields other than the ones produced to date. Dkt. 634-1 (Mot.), at 10 (quoting Dkt. 634-19 (Smith Surreb. Report) ¶ 14(b)). Plaintiffs ignore Smith's point about the Optum and Express Scripts declarations, tacitly conceding that these two PBMs declarations do not show that Optum and Express Scripts data can be broken out into copay, coinsurance, and deductible. As for Caremark (only one of the eight Relevant PBMs), Plaintiffs point to language in that PBM's *Niaspan* declaration referring to sorting Caremark data to exclude members with a flat copay structure. Dkt. 653 (Opp'n), at 9 (quoting Dkt. 609-28 (Ex. 79 to Suppl. Guglielmo Decl. ¶ 9)). But as Smith pointed out in his Surrebuttal Report, in its declaration, Caremark identifies data fields it can produce and the only additional field not contained in the data produced in this case is "Plan co-pay structure," with no information provided as to what is contained in this field and how far back it would be populated. Dkt. 634-1 (Mot.), at 10 (quoting Dkt. 634-19 (Smith Surreb. Report) ¶ 14(b)). Moreover, even if this declaration correctly suggests that Caremark can identify plan design by member, it does not state that Caremark can identify **by transaction** whether a payment was a copayment, coinsurance, or deductible. It also does not indicate for how long Caremark maintains any such data. Thus, the declaration alone does not establish that Caremark can provide data distinguishing between copay, coinsurance, and deductible.

As for Plaintiffs' case law, it is inapposite. In *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352 (D.R.I. 2019), the court found that an expert demonstrated that the plaintiffs "are capable of securing . . . the requisite data." *Id.* at 386. Here, Hilton has not shown that the data can be secured. And in *Childress v. JPMorgan Chase & Co.*, No. 5:16-CV-298-BO, 2019 U.S. Dist. LEXIS 110396 (E.D.N.C. July 2, 2019), the court found that, while the plaintiffs' expert had not identified the specific data upon which he would rely, he did note that he would rely on "data

9

available to Chase" and he was able to show the type of data he used in other cases involving Chase and other large banks and that he would be able to use this same type of data in that case. *Id.*, at *9-11. Here, however, the data would be sought from third parties, and Hilton has not shown that the data is available from those third parties.

Finally, as for Hilton's "90%" methodology, Walgreens explained that Hilton does not address all of Smith's criticisms in Paragraphs 74-75 of his Report or those of Hughes in Paragraphs 116-121 and 123 of his Report. Plaintiffs' opposition does not address this failure.

The Court should exclude Paragraphs 23-24 and 49 of Hilton's Rebuttal Report.

### E. Hilton's Opinion Regarding Identification Of Whether The U&C Price Was The Basis For The Adjudication Of All Claims By A PBM Is Unreliable

In its Motion, Walgreens criticized Hilton's opinion regarding her ability to identify whether the U&C price was the basis for the adjudication of all claims by a PBM. Dkt. 634-1 (Mot.), at 12-13. In response, Plaintiffs merely state that Walgreens' position "defies common sense and experience." Dkt. 653 (Opp'n), at 11. That is, Plaintiffs do not respond directly to Walgreens' argument. Plaintiffs also incorporate Section II.C of Plaintiffs' Opposition to Walgreens' Motion to Exclude Lynette Hilton's Expert Report and Testimony Under Federal Rule of Evidence 702 (Dkt. 607). To address those points, Walgreens incorporates by reference Section II.D of its Reply in Support of its Motion to Exclude Lynette Hilton's Expert Report and Testimony Pursuant to Federal Rule of Evidence 702 (Dkt. 634-3). The Court should exclude Paragraph 8 of Hilton's Rebuttal Report.

### F. Hilton's Criticism of Smith's Allocation Of The Membership Fee Is Based On Improper Rebuttal, A Misstatement Of Facts That Would Lead To Unfair Prejudice, And Unreliable Principles

In her Rebuttal Report, Hilton criticizes Smith's allocation of the PSC membership fee when determining the actual PSC prices. Dkt. 634-2 (Hilton Reb. Report) ¶¶ 54-60. In its Motion, Walgreens explained why her criticism should be excluded. Plaintiffs' response does not aid them.

*First*, Walgreens explained that, while Hilton pointed out that Smith identified 24,069 "Unique Account Holders" who did not pay the PSC membership fee and purchased a PSC drug," "she provides no reason for referring to this, and, thus, it is not proper rebuttal." Dkt. 634-1 (Mot.), at 13 (citing Dkt. 634-2 (Hilton Reb. Report) and Dkt. 627-1 (Amended Expert Report of Jed Smith "Smith Report")). Plaintiffs now argue that Hilton did provide a reason—namely that she is rebutting the claim that "any damages calculation must factor in PSC membership fees in determining PSC prices." Dkt. 653 (Opp'n), at 11 (quoting Dkt. 634-2 (Hilton Reb. Report) ¶ 54). But Hilton does not say *why* the fact that 24,069 "Unique Account Holders" did not pay the PSC membership fee and purchased a PSC drug rebuts this claim. Plaintiffs argue that the fact that some people who received PSC prices may not have paid the membership fee "supports the contention that Walgreens made PSC prices available to members of the general public without charging a membership fee." Dkt. 653 (Opp'n), at 11-12. But Plaintiffs fail to address that (1) the 24,069 "Unique Account Holders" account for only 0.02% of PSC members, and (2) Hilton fails to explain how such a small percentage supports her critique. Dkt. 634-1 (Mot.), at 14 (citing Dkt. 627-1 (Smith Report) ¶ 37, Attach. 3). Paragraph 45 fails to support Hilton's opinion and should be stricken or excluded.

*Second*, as for Hilton's reference to Walgreens' settlement with the State of Connecticut, that Walgreens did not allocate the membership fee based on an agreed reconciliation methodology entered into with Connecticut Medicaid over a decade ago to resolve litigation related to a

11

Connecticut law that expressly sought club prices is not relevant to this case. Dkt. 634-1 (Mot.), at 14 (citing Schafermeyer report ¶¶ 71-75). As for Hilton's reference to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 653 (Opp'n), at 12), as Walgreens stated in its Motion, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 634-1 (Mot.), at 14. Indeed, while Hilton opines in Paragraph 56 of her Rebuttal Report that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ footnote 89[1] of her Rebuttal Report shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. 553-45 (Expert Report of Dr. Kenneth Schafermeyer) ¶¶ 76-80; Dkt. 587 (Opp'n to Class Cert.), at 26 n.23. And contrary to Plaintiffs' argument, this is not an issue of the court choosing between two different versions of the facts. Dkt. 653 (Opp'n), at 12. As shown in the Motion and here, the facts are clear and undisputed; it is Hilton's characterization of the facts that are wrong. For this reason, Paragraphs 56 and 57 of her Rebuttal Report have no probative value and are unfairly prejudicial, and the Court should strike or exclude them.

*Third*, Walgreens challenged Paragraph 58 of Hilton's Rebuttal Report for claiming that Smith's methodology involves charging insured members the membership fee through an allocation. Dkt. 634-1 (Mot.), at 14. Walgreens explained that Smith opines in his Surrebuttal Report that his "analysis calculates the true price Walgreens received *from PSC members* on the PSC transactions for the drug by allocating an average portion of the membership fee to each PSC transaction." Dkt. 634-1 (Mot.), at 14 (quoting Dkt. 634-19 (Smith Surreb. Report) ¶ 17(e)) (emphasis added). In response, Plaintiffs state that they do not understand Walgreens' explanation.

---

[1] Erroneously identified in the Motion as footnote 80.

12

But Smith's explanation is clear. Smith cites to Walgreens' expert, Dr. Kelly Nordby, who opines that, "as a matter of economics, the PSC membership fee is part of the PSC price" and "the PSC price includes a portion of the annual membership fee." Dkt. 634-19 (Smith Surreb. Report) ¶ 17(e) (quoting Dkt. 586-48 (Expert Report of Kelly Nordby) ¶ 10.). In other words, when someone pays for a drug with their PSC membership, they pay a price that is lower because the person paid the membership fee, and the only way to know the true PSC price for a drug is to allocate a portion of the membership fee. That Plaintiffs, and presumably Hilton, do not understand the point is all the more reason why the Court should exclude Paragraph 48 of Hilton's Rebuttal Report, as her criticism is not reliable.

### G. Hilton Fails To Explain How Individual Proceedings Would Work In Allocating Unjust Enrichment Damages Between Consumers And TPPs

Plaintiffs admit that Hilton does not provide a methodology for dividing unjust enrichment damages between consumers and TPPs. Dkt. 653 (Opp'n), at 13. They argue, however, that Hilton does not need to opine on an allocation, as arguments on allocation are premature. Walgreens agrees that the case law does not require Hilton to provide an allocation methodology at the class certification stage and, therefore, does not seek to exclude Paragraphs 63-64 of her Rebuttal Report on that basis.[2] *See, e.g., Kleen Prods. LLC v. Int'l Paper Co.,* 831 F.3d 919, 929 (7th Cir. 2016). Walgreens noted in its Motion, however, that any allocation would occur in individual proceedings for consumers and TPPs, and Hilton "fails to explain how those individual proceedings would work without consumers and TPPs needing to be represented in each other's damages proceedings." Dkt. 634-1 (Mot.), at 15. Plaintiffs do not address this point, which is further evidence as to why the proposed class is unworkable and inappropriate for certification.

---

[2] Walgreens continues to seek the exclusion of Hilton's entire Rebuttal Report for the independent reasons stated in Section III.A of the Motion. Dkt. 634-1 (Mot.) at 2.

13

The Court should exclude Paragraphs 63-64 of Hilton's Rebuttal Report.

## II. CONCLUSION

For the reasons set forth above and in Walgreens' Motion, the Court should exclude and/or strike Hilton's Rebuttal Report, and Plaintiffs should be precluded from offering or relying on her testimony.

DATED: December 12, 2023

>*/s/ Michael S. Leib*
>Michael S. Leib
>Anthony Robert Todd
>**REED SMITH LLP**
>10 S Wacker Dr # 4000
>Chicago, IL 60606
>Telephone: 312/207-1000
>*mleib@reedsmith.com*
>*atodd@reedsmith.com*
>
>Frederick Robinson (*pro hac vice*)
>Selina Coleman (*pro hac vice*)
>Megan Engel (*pro hac vice*)
>Jessica Christensen (*pro hac vice*)
>**REED SMITH LLP**
>1301 K Street, N.W.
>Suite 1100 East Tower
>Washington, DC 20005
>Telephone: 202-414-9200
>*frobinson@reedsmith.com*
>*scoleman@reedsmith.com*
>*mengel@reedsmith.com*
>*jchristensen@reedsmith.com*
>
>**Attorneys for Defendant Walgreen Co.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of December, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Michael S. Leib*
Michael S. Leib