# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, | Civil No. 1:17-cv-02246 |
| | Judge Edmond E. Chang |
| Plaintiffs, | |
| v. | |
| WALGREEN CO., | |
| Defendant. | |

**STIPULATION OF CLASS ACTION SETTLEMENT**

This Stipulation of Class Action Settlement, including all Exhibits attached hereto (collectively, the "Settlement Agreement") is entered into as of October 31, 2024 by and among Plaintiffs Cynthia Russo, Lisa Bullard, Ricardo Gonzales, International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund, International Union of Operating Engineers Local 295-295c Welfare Fund ("IUOE"), and Steamfitters Fund Local 439 ("Plaintiffs") and all others similarly situated, and Scott+Scott Attorneys at Law LLP and Robbins Geller Rudman & Dowd LLP as Class Counsel, on the one hand; and Defendant Walgreen Co., on the other hand. Defendant and Plaintiffs are referred to herein individually as "Party" and collectively as the "Parties." Together Plaintiffs, the Settlement Class,[1] and Defendant are referred to for purposes of this Settlement Agreement as the "Settling Parties."

## I.     THE LITIGATION

Certain Plaintiffs filed their initial class action complaint on March 23, 2017.  ECF No. 1. Plaintiffs' central allegation is that Defendant inflated its usual and customary ("U&C") prices by not considering the prices it charged under its Prescription Savings Club ("PSC") in determining the U&C price resulting in insured customers and third-party payors ("TPPs") paying more for prescription drugs.   Defendant denies Plaintiffs' allegations and maintains that it acted appropriately in reporting its retail prices as its U&C prices.  Certain Plaintiffs filed an amended complaint on June 22, 2017 ("Amended Complaint").  ECF No. 46.  On October 17, 2017, IUOE filed its own complaint.  Case No. 17:-cv-07515 (N.D. Ill.), ECF No. 1.  On March 9, 2018, the Court denied Walgreens' Motion to Dismiss the Amended Complaint.  ECF No. 91.  On April 26, 2018, the Court appointed Scott+Scott Attorneys at Law LLP and Robbins Geller Rudman &

---

[1]     Capitalized terms not defined in the introductory paragraph are defined in §IV.1, *infra*.

Dowd LLP as Plaintiffs' Interim Co-Lead Class Counsel. *See* ECF No. 95 (consolidating actions); Apr. 26, 2018 Status Hearing Tr. at 7:1-4.

On May 1, 2018, Plaintiffs filed a Second Amended Complaint, ECF No. 96, with Walgreens filing an Answer on June 13, 2018. ECF No. 111. Plaintiffs filed a Third Amended Complaint on June 3, 2020. ECF No. 269. Plaintiffs filed a Fourth Amended Complaint on June 16, 2021, ECF No. 477, with Walgreens filing an Answer on July 15, 2021. ECF No. 485.

Over the course of over seven years of hard-fought litigation, the Parties engaged in extensive fact and expert discovery. Plaintiffs issued and Walgreens responded to 46 requests for production, 24 interrogatories, and 99 requests for admission. Walgreens issued and Plaintiffs responded to 54 requests for production, 18 interrogatories, and 90 requests for admission. Plaintiffs issued more than a dozen non-party subpoenas and obtained documents and deposition testimony. Plaintiffs reviewed more than 75,000 Party and non-party documents and took or defended 36 Party and non-party depositions pursuant to Federal Rules of Civil Procedure 30(b)(1), 30(b)(6) and 45, including depositions of the Parties' seven experts, who issued opening, responsive, and reply reports relating to Plaintiffs' motion for class certification. Each Plaintiff also sat for a deposition and Plaintiffs produced thousands of documents, including information reflecting purchases of prescriptions from Walgreens.

Plaintiffs filed their motion for class certification and expert reports on November 17, 2022, ECF Nos. 552-556; 553-44, 553-45; 556-55, 556-56, with Defendant filing its opposition and expert reports on March 17, 2023. ECF No. 586-589; 586-1, 586-2, 586-17, 586-48; 588-1. 588-2, 588-24, 588-61.[2] Class certification briefing concluded following the filing of Plaintiffs' reply

---

[2]     Walgreens also served on Plaintiffs at that time, but did not file on the docket until later, one additional expert report. ECF No. 624-1. Walgreens also served three amended expert reports on Plaintiffs

papers and Defendant's additional sur-reply. ECF Nos. 602-603, 608-609, 645-646. The Parties completed all briefing related to their respective Rule 702 motions on December 12, 2023. ECF Nos. 580-81, 583-84, 599-600, 604-607, 610-613, 621, 623-25, 627-628, 634, 636-638, 640-641, 648-650, 652-659, 661, 663.

## II.    DEFENDANT'S DENIAL OF WRONGDOING AND LIABILITY

Defendant contends that the claims and allegations of wrongdoing or liability by Plaintiffs and the Settlement Class in the Action are without merit. Defendant expressly denies all allegations of wrongdoing or liability. Further, the Settling Parties' agreement as to certification of the Settlement Class is only for purposes of effectuating a Settlement and for no other purpose. Defendant retains all of its objections, arguments, and/or defenses with respect to the merits and with respect to class certification if the Settlement Agreement does not receive approval or if it is terminated. The Settling Parties acknowledge that there has been no stipulation to a class or certification of a class for any purposes other than effectuating the Settlement, and that if the Settlement Agreement is terminated pursuant to the terms hereof, or fails to become effective for any reason, then, in addition to the provisions of ¶7.4, this Settlement Agreement becomes null and void *ab initio* and no Party may cite this Settlement Agreement, the negotiations that led to the Settlement Agreement, or any related documents filed in connection with the Settlement Agreement for any purpose related to the Action, including arguing the merits of class certification and/or any Party's claims or defenses.

It is expressly agreed that neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, is, may be construed as, or

---

on April 25, 2023, April, 27, 2023, and May 18, 2023, only one of which was filed on the docket. ECF No. 627-1.

may be used as an admission by Defendant of any fault, wrongdoing, or liability whatsoever with respect to the subject matter of the Action.

## III.    THE BENEFITS OF SETTLEMENT

The Parties to this Action engaged in extensive arm's-length settlement negotiations. The Parties retained Eric D. Green and Fouad Kurdi of Resolutions LLC as mediators. The Parties exchanged mediation submissions and participated in numerous pre-mediation video and telephonic conferences. The Parties attended an in-person mediation on June 6, 2024, and engaged in additional negotiations thereafter, and ultimately agreed in principle (subject to certain terms set forth below) to settle the Action in exchange for total cash payments of $100,000,000.00 for the benefit of the Settlement Class and other terms as further described below.

The Settling Parties know that further prosecution and defense of the Action would be protracted and expensive and, having taken into account the uncertainty and risks inherent in any such litigation, have determined that it is desirable to compromise and settle all claims in the Action with respect to the Settlement Class described in this Settlement Agreement and to proceed to seek approval, implementation, and administration of this Settlement in the Northern District of Illinois.

Plaintiffs, on behalf of themselves and as representatives of the Settlement Class, and Defendant have worked to resolve their differences, and have elected to settle those differences under the terms of this Settlement Agreement rather than continue litigating their respective positions to conclusion.

The Settling Parties intend by this Settlement Agreement to resolve all claims of the Settlement Class against Defendant, and vice versa, and to resolve all other Plaintiffs' Released Claims and Defendant's Released Claims (as defined below) in accordance with the terms of this Settlement Agreement.

**IV.     TERMS OF AGREEMENT**

NOW, THEREFORE, Plaintiffs, on behalf of themselves and as representatives of the Settlement Class, the Settlement Class, and Defendant, in consideration of the execution of this Settlement Agreement, the mutual promises contained herein, the benefits to be received hereunder, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all Settling Parties, hereby agree as follows:

**1.     Definitions**

The following terms and phrases shall have the following meanings under the provisions of this Settlement Agreement, whether used in the singular or plural, and whether in the possessive or non-possessive:

1.1     "Action" means *Russo v. Walgreen Co.*, No. 1:17-cv-02246 (N.D. Ill.).

1.2     "Attorneys' Fees and Expenses" means attorneys' fees and out-of-pocket litigation expenses and charges (including expert and consulting fees) submitted by Class Counsel in an amount to be determined by the Court.  Attorneys' Fees and Expenses shall be paid from the Settlement Fund.

1.3     "Claim Form" means the claim forms attached as Exhibit E as approved by the Court.

1.4     "Class Counsel" means Scott+Scott Attorneys at Law LLP and Robbins Geller Rudman & Dowd LLP.

1.5     "Contact Information" means any potential Settlement Class Member email addresses that are in Defendant's possession and reasonably accessible as of the date of this Settlement Agreement.

1.6    "Defendant" or "Walgreens" means Walgreen Co., including all pharmacies owned and operated by Walgreen Co., or any of its affiliates, but only to the extent and for the time period they accepted Walgreens' PSC during the Settlement Class Period.

1.7    "Defendant's Counsel" means Reed Smith LLP.

1.8    "Defendant's Released Claims" means all claims, demands, damages, harm, injuries, actions, causes of action, suits, proceedings, matters, disputes, obligations, costs, and losses of any kind whatsoever, whether known or Unknown Claims, suspected or unsuspected, accrued or unaccrued, and contingent or non-contingent, which now exist or have existed upon any theory of law or equity (whether contractual, common law, statutory, federal, state, local, or otherwise), against Plaintiffs' Released Persons arising out of or related to the institution, prosecution, or Settlement of the claims asserted in the Action, except for claims relating to the enforcement of the Settlement Agreement, its Exhibits, and the side agreement referenced in ¶7.3

1.9    "Defendant's Released Persons" means Walgreens and its respective legal representatives, predecessors, successors and assigns, present and former parents and subsidiaries and affiliated entities, present and former employees, partners, agents, representatives, independent contractors, officers, directors, shareholders, attorneys, accountants, managers, and all other legally associated individuals or entities.

1.10    "Distribution" means an electronic disbursement payable to the order of a Settlement Class Member as the distribution of the Settlement Class Member's share of the Net Settlement Fund pursuant to the approved Plan of Allocation and Distribution.  The Settlement Administrator shall arrange for the disbursement of the Net Settlement Fund to the Settlement Class Members as identified on the Summary Final Distribution Report in the amounts shown thereon.

1.11    "Distribution Date" means the date of the initial disbursement of the Net Settlement Fund to Settlement Class Members.  No Distribution shall be made to Settlement Class Members until the Effective Date.

1.12    "Effective Date" means the date on which the Judgment becomes Final and Non-Appealable.

1.13    "Escrow Account" means the interest-bearing account controlled by the Escrow Agent into which the sum of $100,000,000.00, paid to the Escrow Agent by Defendant, in the manner and amounts as set forth in ¶2.1, shall be deposited.

1.14    "Escrow Agent" means Huntington Bank.

1.15    "Escrow Fees" means any fees, costs, and expenses incurred by the Escrow Agent other than Taxes and Tax Expenses.

1.16    "Fairness Hearing" means the proceedings to be held before the Court to determine whether the Settlement should be approved as fair, reasonable and adequate pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure; whether the Judgment should be entered; and whether the motion for award of Attorneys' Fees and Expenses should be granted.

1.17    "Final and Non-Appealable" means, with respect to the Judgment approving this Settlement Agreement and the proposed class settlement contemplated under this Settlement Agreement, when the Judgment has been entered and the time has expired to file: (a) a notice of appeal; or (b) any motion which would legally extend the time to appeal the Judgment, or which challenges or seeks reconsideration, modification or vacation of the Judgment.  If a notice of appeal is filed, the Judgment becomes Final and Non-Appealable when the appellate court enters an order or judgment dismissing or overruling the relief requested and that order or judgment itself becomes final and no longer subject to further review in any court.  For the avoidance of doubt, any appeal

or proceeding seeking subsequent judicial review pertaining solely to an order issued solely with respect to: (i) the Plan of Allocation and Distribution (as submitted or subsequently modified); or (ii) Attorneys' Fees and Expenses, shall not in any way delay or preclude the judgment from becoming Final and Non-Appealable.

1.18    "Judgment" means the order of the District Court approving this Settlement in accordance with the terms of this Settlement Agreement, substantially in the form of Exhibit F attached hereto.

1.19    "Plaintiffs" means collectively: Cynthia Russo, Lisa Bullard, Ricardo Gonzales ("Individual Plaintiffs"), International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund, IUOE, and Steamfitters Fund Local 439 ("Fund Plaintiffs").

1.20    "Net Settlement Fund" means the Settlement Fund less: (a) Attorneys' Fees and Expenses, including Service Awards, as awarded by the Court; (b) Notice and Administration Expenses; (c) Taxes, Tax Expenses, and Escrow Fees; and (d) other Court-approved deductions.

1.21    "Notice" means the Notice of Settlement of Class Action substantially in the forms of Exhibits C and D attached hereto.

1.22    "Notice and Administration Expenses" means the reasonable expenses of the Settlement Administrator incurred or charged in connection with the following, as approved by the Court:

(a)     Efforts to obtain current and accurate information regarding the identities and addresses of Settlement Class Members;

(b)     The reasonable costs associated with print and digital communications (via mail and email) and publication of the Notice (including the cost of such print and digital

communication and publication, as well as making certain efforts to locate Settlement Class Members);

        (c)     Maintenance of a dedicated Settlement website to facilitate communications with Settlement Class Members and to provide access to Settlement-related documents and information;

        (d)     Responding to inquiries regarding the Settlement by Settlement Class Members;

        (e)     Implementation of the Plan of Allocation and Distribution (including the processing of claims, calculating the allocations and distributions, and providing disbursements);

        (f)     Costs of preparing and dispersing Distributions and tax documentation to members of the Settlement Class; and

        (g)     Any other reasonable fees and expenses of the Settlement Administrator.

1.23    "Opt-Out Deadline" means the date by which members of the Settlement Class must elect to opt-out of the Settlement Class as set forth in the Preliminary Approval Order.

1.24    "Plaintiffs' Related Parties" means Plaintiffs' respective legal representatives, including Class Counsel, heirs, executors, administrators, beneficiaries, trustees, predecessors, successors in interest, transferees and assignees, in their capacities as such.

1.25    "Plaintiffs' Released Claims" means all claims, demands, damages, harm, injuries, actions, causes of action, suits, proceedings, matters, disputes, obligations, costs, and losses of any kind whatsoever, whether known or Unknown Claims, suspected or unsuspected, accrued or unaccrued, and contingent or non-contingent, which now exist or have existed upon any theory of law or equity (whether contractual, common law, statutory, federal, state, local, or otherwise), including any claims for compensatory or punitive damages, or for attorneys' fees, costs, or

disbursements of any kind, against Defendant's Released Persons arising out of or related to the conduct challenged in the Action, including any and all claims relating to the reporting of U&C prices for pharmaceuticals, regardless of whether "usual and customary" or "U&C" appears as a defined contractual term in any relevant contract, except for claims relating to the enforcement of the Settlement Agreement, its Exhibits, and the side agreement referenced in ¶7.3.

1.26    "Plaintiffs' Released Persons" means Plaintiffs, Settlement Class Members, and Plaintiffs' Related Parties.

1.27    "Plan of Allocation and Distribution" means the methodology for allocating and distributing the Net Settlement Fund to Settlement Class Members, attached as Exhibit A hereto.

1.28    "Preliminary Approval Order" means the order (or orders) of the Court: (a) preliminarily approving this Settlement Agreement; (b) provisionally certifying the Settlement Class; (c) preliminarily appointing Class Counsel; (d) appointing the Settlement Administrator and Escrow Agent; (e) approving the form and manner of disseminating the Notice to Settlement Class Members; (f) preliminarily approving the Plan of Allocation and Distribution; and (g) scheduling a Fairness Hearing. The Preliminary Approval Order shall also provide that, if this Settlement Agreement is not approved, is voided, terminated, or fails to become effective for any reason, the Settling Parties shall be returned to the *status quo* that existed immediately prior to January 12, 2024, when the Court first stayed the case so that the Parties could engage in settlement discussions. *See* ECF No. 667. The Preliminary Approval Order shall be substantially in the form of the order attached hereto as Exhibit B.

1.29    "Released Persons" means Defendant's Released Persons and Plaintiffs' Released Persons.

1.30 "Released Claims" means Defendant's Released Claims and Plaintiffs' Released Claims.

1.31 "Service Awards" means payments, to be approved by the Court, to Plaintiffs in their capacity as representatives of the Settlement Class to compensate them for their work on behalf of the Settlement Class, including participating in the litigation, performing work in support of the litigation, and undertaking the risks of litigation.

1.32 "Settlement" means the settlement between the Settling Parties in the Action on the terms and conditions set forth in this Settlement Agreement.

1.33 "Settlement Administrator" means A.B. Data, Ltd. This entity will administer this Settlement Agreement and the Plan of Allocation and Distribution.

1.34 "Settlement Amount" means $100,000,000.00 in cash to be paid by Defendant into the Escrow Account for the benefit of the Settlement Class. The Settlement Amount will be paid in the manner and amounts as set forth in ¶2.1.

1.35 "Settlement Class Member" means a person or entity who is a member of the Settlement Class who does not opt-out.

1.36 "Settlement Class Period" means from January 1, 2007 through the date of preliminary approval of the Settlement or December 31, 2024, whichever comes first.

1.37 "Settlement Class" means the following:

All individuals or entities in the United States and its territories who paid, in whole or in part, at any point in time during the Settlement Class Period, for one or more prescription drugs from Walgreens, where prescription insurance benefits were used in filling the prescription(s).

The following individuals or entities are excluded from the Settlement Class: (1) Walgreens and its management and affiliates, and employees of Walgreens and its affiliates; (2) the Court, members of their immediate families, and judicial staff (but not members of the

immediate families of judicial staff); (3) all pharmacy benefit managers (*e.g.*, A&A Services, LLC d/b/a Sav-Rx Prescription Services; Caremark, LLC; Castia Rx (f/k/a Leehar Distributors Missouri, LLC); Express Scripts, Inc.; Medco Health Solutions, Inc.; MedImpact Healthcare Systems, Inc.; MedTrak Services, LLC; and/or OptumRx, Inc.); (4) individuals who paid for all of their prescription drugs from Walgreens during the Settlement Class Period without using insurance benefits; (5) federal and state government entities other than government-funded employee benefit plans; and (6) all individuals and entities, except for the Plaintiffs, that have sued, filed an arbitration demand, or participated in a settlement in a suit against Walgreens relating to its determination of usual and customary prices in connection with the Prescription Savings Club (this exception to the exclusion from the Settlement Class does not apply to individuals or entities that have voluntarily dismissed their claims without prejudice in any suit or arbitration).

1.38    "Settlement Fund" means the Settlement Amount, plus all interest and accretions thereto.

1.39    "Summary Final Distribution Report" means the summary chart prepared by the Settlement Administrator to show the Distribution of the Net Settlement Fund to each member of the Settlement Class for whom an address and amount of Distribution can be determined.  Class Counsel will not be responsible for or involved with the calculation of, or Distribution from, the Summary Final Distribution Report.

1.40    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.41    "Tax Expenses" means expenses and costs incurred in connection with the implementation and administration of the "qualified settlement fund" described in ¶¶2.8-2.10

(including expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶¶2.8-2.10).

1.42    "Unclaimed Settlement Amount" means that portion of the Net Settlement Fund that remains after all Distributions pursuant to the Plan of Allocation and Distribution are completed.

1.43    "Unknown Claims" means: (a) any Plaintiffs' Released Claims that Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of Defendant's Released Persons which, if known by him, her or it, might have affected such Plaintiff's or Settlement Class Member's settlement or decisions with respect to the Settlement, including the release of Defendant's Released Persons or the decision not to object to or opt-out of this Settlement; and (b) any Defendant's Released Claims that Defendant does not know or suspect to exist in its favor at the time of the release of Plaintiffs' Released Persons, which if known by it, might have affected its settlement or decision with respect to the Settlement, including the release of Plaintiffs' Released Persons.  With respect to: (i) any and all Plaintiffs' Released Claims against Defendant's Released Persons and (ii) any and all Defendant's Released Claims against Plaintiffs' Released Persons, the Settling Parties stipulate and agree that, upon the Effective Date, they shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by the law of any state or territory or other jurisdiction or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE

MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settling Parties and the Settlement Class Members may hereafter discover facts in addition to or different from those that he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Settling Parties shall expressly fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

1.44    The term "including" means including but not limited to.

**2.    The Settlement**

  **a.    The Settlement Amount**

2.1    Payment by Defendant. Defendant agrees to pay $100,000,000.00 into a non-reversionary common fund for the benefit of members of the Settlement Class. Within 45 days after an order from the Court granting preliminary approval of the Settlement, Defendant will pay 50% of the Settlement Amount into the Escrow Account, which the Escrow Agent will control. Unless it withdraws from and terminates the Settlement Agreement pursuant to ¶7.3, no later than 30 days after an order granting final approval of the Settlement, Defendant will pay the remaining

50% of the Settlement Amount into the Escrow Account, provided, however, that notwithstanding the 30-day deadline, the second payment will not be required to be paid in the same financial quarter as the first payment. No disbursements shall be made to Settlement Class Members until the Effective Date. If this Settlement Agreement is not approved, is voided, terminated pursuant to ¶7.3, or fails to become effective for any reason: (a) the balance in the Settlement Fund, including interest accrued thereon and the amounts returned to the Settlement Fund pursuant to ¶6.3, but less Taxes, Tax Expenses, Escrow Fees, and any Notice and Administration Expenses actually paid or incurred, shall be promptly returned to Defendant not later than 30 days after the Settlement Agreement is not approved, is voided, terminated, or fails to become effective for any reason; and (b) the Settling Parties shall be returned to the *status quo* that existed in the Action immediately prior to January 12, 2024, when the Court first stayed the case so that the Parties could engage in settlement discussions.

2.2     The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of all the Released Claims. The Settlement Amount paid by Defendant is its sole monetary responsibility under this Settlement Agreement, and Settlement Class Members who do not timely seek to exclude themselves from the Class shall not look to any of Defendant's Released Persons for satisfaction of any Plaintiffs' Released Claims. Defendant is not responsible for payment of Attorneys' Fees and Expenses, Notice and Administration Expenses, Escrow Fees, or any out-of-pocket expenses, other than indirectly through its payment of the Settlement Amount, as provided for in this Settlement Agreement.

### b.     Injunctive Relief

2.3     Defendant agrees to end its operation of the PSC by no later than December 31, 2024.

### c.    The Escrow Agent

2.4    The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Settlement Agreement or by an order of the Court.

2.6    Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Settlement Agreement.  Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (a) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (b) the investment of any Settlement Fund assets; or (c) any act, omission, or determination of the Escrow Agent.

2.7    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

### d. Taxes and Tax Expenses

2.8     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this section, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary Parties, and thereafter to cause the appropriate filing to occur.

2.9     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  Class Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in ¶2.8 hereof) shall be consistent with this section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.10 hereof.  Defendant's Released Persons shall have no responsibility or liability for the Settlement Fund's tax returns or other filings.

2.10    All: (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (b) Tax Expenses, shall be paid out of the Settlement Fund; in all events Defendant's Released Persons, the Settling Parties,

and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from Distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither Defendant's Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this section.

2.11    Defendant's Released Persons and Defendant's Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses, including with respect to acts or omissions of the Claims Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Defendant's Released Persons and Defendant's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

2.12    Plaintiffs' Released Persons shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiffs' Released Persons harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

### e. Refund of Settlement Payment Upon Termination of Settlement

2.13    In the event that the Settlement Agreement is not approved, is voided, terminated pursuant to ¶7.3, or fails to become effective for any reason, the balance in the Settlement Fund, including interest accrued thereon and the amounts returned to the Settlement Fund pursuant to ¶6.3, but less Taxes, Tax Expenses, Escrow Fees, and any Notice and Administration Expenses actually paid or incurred, shall be promptly returned to Defendant pursuant to written instructions from Defendant's Counsel, not later than 30 days after the Settlement Agreement is not approved, is voided, terminated, or fails to become effective for any reason.

### 3.    Preliminary Approval Order, CAFA Notice, and Fairness Hearing

3.1    Promptly after execution of the Settlement Agreement, Class Counsel shall submit the Settlement Agreement together with its Exhibits to the Court and shall apply for entry of the Preliminary Approval Order, requesting, among other things, the preliminary approval of the Settlement set forth in the Settlement Agreement, approval of the Notice, appointment of Plaintiffs as class representatives for the Settlement Class, and appointment of Scott+Scott Attorneys at Law LLP and Robins Geller Rudman & Dowd LLP as Class Counsel, substantially in the form of Exhibit B attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Settlement Agreement, a description of the proposed Plan of Allocation and Distribution, the general terms of the application for a Fee and Expense Award (as defined in ¶6.1), and the date of the Fairness Hearing.  Defendant agrees not to oppose appointment of Plaintiffs as class representatives for the Settlement Class and appointment of Scott+Scott Attorneys at Law LLP and Robins Geller Rudman & Dowd LLP as Class Counsel for the Settlement Class.

3.2    Class Counsel shall request that after notice is given, the Court hold the Fairness Hearing and approve the Settlement of the Action as set forth herein.  At or after the Fairness

Hearing, Class Counsel also will request that the Court approve the proposed Plan of Allocation and Distribution and the application for an award of Attorneys' Fee and Expense, including Plaintiffs' request for Service Awards in connection with their representation of the Class.

3.3     Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715, *et seq.* ("CAFA"), no later than 10 calendar days after this Settlement Agreement is filed with the Court, Defendant shall serve or cause to be served proper notice of the proposed Settlement upon those who are entitled to notice pursuant to CAFA. Defendant is solely responsible for the costs of the CAFA notice and administering the CAFA notice.

### 4.     Releases and Dismissal

4.1     Upon the Effective Date, Plaintiffs' Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Plaintiffs' Released Claims against Defendant's Released Persons with prejudice, whether or not any such Plaintiffs' Released Person shares in the Settlement Fund. Claims to enforce the terms of this Settlement Agreement and the side agreement referenced in ¶7.3 are not released.

4.2     Upon the Effective Date, Plaintiffs' Released Persons and anyone claiming through or on behalf of any of them will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any of the Plaintiffs' Released Claims against any of Defendant's Released Persons.

4.3     Upon the Effective Date, Defendant's Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Defendant's Released Claims against Plaintiffs' Released Persons with prejudice.

Claims to enforce the terms of this Settlement Agreement and the side agreement referenced in ¶7.3 are not released.

4.4    Upon the Effective Date, and in consideration of the promises set forth in this Settlement Agreement, including payment of the Settlement Fund, the Plaintiffs, through their counsel and on behalf of themselves and the Settlement Class, shall dismiss the Action with prejudice.

### 5.    Administration and Distribution of the Settlement Fund

5.1    The Settlement Administrator shall (a) administer the issuance of Notice to the Settlement Class in accordance with the terms of the Preliminary Approval Order and any other orders of the Court; (b) determine the validity of submitted claims; (c) calculate the Recognized Claim amounts (defined in the Plan of Allocation and Distribution) of Authorized Claimants (defined in the Plan of Allocation and Distribution) that shall be allowed; (d) administer the Distribution of the Net Settlement Fund to Authorized Claimants; and (e) otherwise provide such claims administration services as are customary in settlements of this type, subject to such supervision of Class Counsel and (as appropriate or as circumstances may require) the Court.

5.2    Notice and Administration Expenses shall be paid from the Settlement Fund. Notwithstanding that the Effective Date has not yet occurred, the actual costs of Notice and Administrative Expenses up to $150,000 to effectuate Notice may be paid from the Escrow Account without further order of the Court.  In no event shall Plaintiffs or Class Counsel be responsible to pay any amount for Notice and Administration Expenses.

5.3    Each Settlement Class Member wishing to participate in the Settlement, and who has not timely and properly elected to opt-out of this Settlement, shall be required to submit to the Settlement Administrator a Claim Form.  Each Claim Form must be submitted under penalty of perjury and must be supported by such documents as specified in the Plan of Allocation and

Distribution and instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

5.4     All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Clam Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Settlement Agreement or from the Net Settlement Fund (unless Class Counsel in its discretion deems such late submission to be a formal or technical defect and waives the lateness of the submission in the interest of achieving substantial justice, or unless by order the Court approves that Settlement Class Member's untimely submitted Claim Form), but will in all other respects be subject to the provisions of this Settlement Agreement.

5.5     Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Class Counsel, in accordance with this Settlement Agreement and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶¶5.7-5.8 below.

5.6     Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim Form for other than lack of timeliness, the Settlement Administrator shall communicate with the claimant to give the claimant the opportunity to remedy any curable deficiencies in the Claim Form submitted.  The Settlement Administrator, under the supervision of Class Counsel, shall notify in a timely fashion and in writing, all claimants whose Claim Forms they propose to reject in whole or in part, setting forth the reasons thereof, and shall indicate in such deficiency notice that the claimant whose claims are to be rejected has the right to review by the Court if the claimant so desires and complies with the requirement of ¶5.7 below.

5.7     If any claimant whose Claim Form has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required by ¶5.6 above, serve upon the Settlement Administrator a written statement of reasons indicating the claimant's ground(s) for contesting the rejection along with copies of any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning whether a claim should be accepted or rejected cannot be otherwise resolved, Class Counsel shall thereafter present the request for review to the Court.

5.8     The administrative determination of the Settlement Administrator accepting and rejecting claims shall be presented by Plaintiffs to the Court in a motion for approval of the settlement distribution order.

5.9     Without regard to whether a Claim Form is submitted or allowed, each claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such claimant's claim, and such claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with the processing of Claim Forms.

5.10    Payment pursuant to this Settlement Agreement shall be deemed final and conclusive against all Settlement Class Members.  All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall otherwise be bound by all of the terms of the Judgment to be entered in the Action and the releases provided for in this Settlement Agreement, and will be barred from

bringing any action against the Defendant's Released Persons arising out of or relating to Plaintiffs' Released Claims.

5.11    All proceedings with respect to the administration, processing, and determination of claims described in this Settlement Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court.  All Plaintiffs' Released Persons expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein.  The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs' Released Persons, and there shall be no appeal to any court, including the United States Court of Appeals for the Seventh Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiffs' Released Persons.

5.12    After the Settlement Administrator calculates the Recognized Claim amount of each Authorized Claimant, Class Counsel shall file a motion for distribution of the Net Settlement Fund with the Court, requesting the Court to: (a) authorize the payment from the Settlement Fund any as yet unpaid Notice and Administration Expenses, Escrow Fees, and Taxes and Tax Expenses; (b) resolve (if it has not previously done so or been asked to do so) any objections with respect to any rejected or disallowed claims; and (c) approve the Distribution of the Net Settlement Fund to the Authorized Claimants upon final resolution of any rejected or disallowed claims.  Such motion shall not be filed until after all of the following conditions have been met: (a) the Effective Date has occurred; (b) all Claim Forms have been processed, and all claimants whose Claim Forms have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard by the Claims Administrator concerning such rejection or disallowance;

and (c) all matters with respect to any application for Attorneys' Fees and Expenses and Service Awards filed by Class Counsel have been resolved by the Court, and any appeals therefrom have been resolved or the time therefor has expired.

5.13    Subject to the terms of the Settlement Agreement and an order of the Court, the Settlement Fund shall be applied as follows:

(a)    to pay all Notice and Administration Expenses;

(b)    to pay the Taxes and Tax Expenses described in ¶¶2.8-2.10 hereof;

(c)    to pay Escrow Fees;

(d)    to pay Attorneys' Fees and Expenses to Class Counsel to the extent allowed by the Court;

(e)    after the Effective Date, to pay Service Awards to Plaintiffs to the extent allowed by the Court; and

(f)    after the Effective Date, to distribute the Net Settlement Fund to Settlement Class Members as allowed by the Settlement Agreement and the Plan of Allocation and Distribution, as approved by the Court.

5.14    Any distribution of monies or funds to Settlement Class Members shall be in accordance with the Settlement Agreement and the Plan of Allocation and Distribution approved by the Court. Defendant's Released Persons shall not be responsible or liable for any aspect of the allocation methodology set forth in the Plan of Allocation and Distribution or the implementation of that methodology.

5.15    Defendant and Plaintiffs agree that the Net Settlement Fund shall be only for the benefit of the Settlement Class, which by definition does not include those who timely and properly

opt-out of the Settlement Class after receiving the Notice as contemplated under this Settlement Agreement.

5.16    Defendant, Plaintiffs, and Class Counsel shall provide reasonable cooperation to the Settlement Administrator in connection with the information reasonably needed by them to perform the activities contemplated under this Settlement Agreement, including the dissemination of the Notice and the implementation of the Plan of Allocation and Distribution.  Specifically, Defendant agrees to provide the Settlement Administrator with data that identifies Contact Information.

5.17    This Settlement is not reversionary, and, if all conditions of the Settlement Agreement are satisfied and the Settlement becomes Final and Non-Appealable, no portion of the Settlement Fund will be returned to Defendant.  Defendant shall have no responsibility for, interest in, or liability whatsoever with respect to the Distribution of the Net Settlement Fund, the Plan of Allocation and Distribution, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

5.18    Defendant and Defendant's Released Persons shall have no responsibility for allocation or Distribution of the Settlement Amount, whether to the Settlement Class Members or to Class Counsel.

5.19    No person or entity shall have any claim against any Released Persons, the Settlement Administrator or other entity designated by Class Counsel based on Distributions made in accordance with the Settlement Agreement and the Settlement contained herein, the Plan of Allocation and Distribution, or further order(s) of the Court.  This does not include any claim by any Party for breach of this Settlement Agreement or to enforce the terms of this Settlement Agreement, its Exhibits, and the side agreement referenced in ¶7.3.

6. **Class Counsel's Attorneys' Fees and Expenses and Plaintiff Service Awards**

6.1     Class Counsel may submit an application or applications for: (a) an award of attorneys' fees not to exceed 30% of the Settlement Fund; plus (b) out-of-pocket costs and expenses in connection with prosecuting the Action; plus (c) any interest on such Attorneys' Fees and Expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Defendant reserves the right to oppose Class Counsel's application for costs, expenses, and attorneys' fees.  If awarded, any Fee and Expense Award will be paid from the Settlement Fund to Class Counsel immediately upon award, notwithstanding the existence of timely filed objections, or potential appeal therefrom.  Class Counsel, in their sole discretion, shall allocate and distribute the Fee and Expense Award among Plaintiffs' counsel of record.

6.2     Plaintiffs may request Service Awards in connection with their representation of the Settlement Class in the amount of $15,000 to each Fund Plaintiff and $5,000 to each Individual Plaintiff.  Defendant reserves the right to oppose Plaintiffs' motion for Service Awards.  If awarded, any Service Award will be paid from the Settlement Fund.

6.3     In the event that the Effective Date does not occur, or the Judgment or the order granting the Fee and Expense Award is reversed or modified, or the Settlement Agreement is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and Non-Appealable, and in the event that the Fee and Expense Award has been paid to any extent, then Class Counsel who received any payment of the Fee and Expense Award shall be obligated, within 21 days from receiving notice from Defendant's Counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned

on the Settlement Fund, in an amount consistent with such reversal or modification.  Each such Class Counsel's law firm receiving fees and expenses, as a condition of receiving the Fee and Expense Award, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are each joint and severally liable and responsible for any required repayment.

6.4     Any Fee and Expense Award and/or Service Awards awarded by the Court shall be paid solely from the Settlement Fund.  Defendant's Released Persons have no responsibility for any payment of Service Awards to Plaintiffs and/or Attorneys' Fees and Expenses to Class Counsel.

**7.      Failure to Obtain Approval of Settlement or Termination of Settlement**

7.1     If the Court enters an order denying approval of the Settlement with an opportunity to resubmit, the Parties will meet and confer in good faith to try to resolve any issues raised by the Court through an amended settlement agreement, although neither Party shall have any obligation to agree to any material modifications to this Settlement Agreement.

7.2     This Settlement Agreement will automatically terminate if the Court enters an order denying approval of the Settlement without an opportunity to resubmit or if an appellate court denies approval of the Settlement and such order becomes Final and Non-Appealable.

7.3     Defendant has the right and option, in its sole discretion, to withdraw from and terminate the Settlement in the event that members of the Settlement Class who opt-out from the Settlement on or before the Opt-Out Deadline satisfy a certain set of criteria that the Parties have agreed upon, the terms of which are set forth in a separate, confidential side agreement ("Triggering Criteria"), which can be provided *in camera* to the Court upon request.  Within five

business days of receiving an opt-out request, Plaintiffs must notify Defendant of the opt-out request.  As soon as practicable but not later than 45 days from the Opt-Out Deadline, Defendant must decide whether it preliminarily intends to terminate the Settlement pursuant to this Paragraph.  If Defendant makes such preliminary determination to terminate the Settlement, it will notify Class Counsel by email thereof, and Class Counsel will have 90 days from the Opt-Out Deadline to communicate with any opt-outs to attempt to have such Settlement Class Members withdraw their opt-outs and remain in the Settlement Class.  Defendant agrees to cooperate in good faith to encourage opt-outs to revoke their opt-out request and remain in the Settlement Class.  If any Settlement Class Member withdraws its opt-out request, any Claim Form submitted by such Settlement Class Member will be deemed to be timely filed.  If the Triggering Criteria continue to be met after 90 days from the Opt-Out Deadline, Defendant shall notify Plaintiffs no later than 120 days from the Opt-Out Deadline whether or not Defendant decides to make its preliminary termination decision a final decision to terminate the Settlement.  In the event that Defendant terminates the Settlement pursuant to this Paragraph, (a) Class Counsel shall direct the Escrow Agent to return to Defendant, not later than 30 days after such termination, the balance in the Settlement Fund, including interest accrued thereon and the amounts returned to the Settlement Fund pursuant to ¶6.3, but less, Taxes, Tax Expenses, and Escrow Fees, and any Notice and Administration Expenses actually paid or incurred, and (b) the Settling Parties shall be returned to the *status quo* that existed in the Action immediately prior to January 12, 2024, when the Court first stayed the case so that the Parties could engage in settlement discussions.

   7.4  If this Settlement Agreement is terminated pursuant to the terms hereof, or fails to become effective for any reason, then: (a) all orders of the Court preliminarily or otherwise approving the Settlement and/or preliminarily or otherwise certifying a settlement class shall be

vacated; (b) the Settling Parties shall be returned to the *status quo* that existed in the Action immediately prior to January 12, 2024, when the Court first stayed the case so that the Parties could engage in settlement discussions; and (c) the Settling Parties shall retain all of their respective rights and defenses as of immediately prior to January 12, 2024, including Defendant's right to contest certification of any class and/or subclass on any grounds.  The Settling Parties shall then proceed in all respects as if this Settlement Agreement and any related orders had not been executed and/or entered.

### 8.    Objections to the Settlement

8.1    The Notice shall require that any objection to (i) the Settlement, or any part of this Settlement Agreement, including Class Counsel's request for Attorneys' Fees and Expenses and/or Plaintiffs' request for Service Awards, and/or (ii) to the Plan of Allocation and Distribution, be in writing and comply with all the requirements set forth herein and by the Court in the Preliminary Approval Order and Notice.

8.2    The Notice shall require that any member of the Settlement Class who elects to object to this Settlement Agreement (any part thereof) or to the motion for Attorneys' Fees and Expenses or Service Awards shall do so in writing, signed by the member of the Settlement Class who is objecting, and sent via first-class U.S. mail to, or filed with, the Court a prescribed number of days before the Fairness Hearing as provided for in the Preliminary Approval Order with a copy also sent to Class Counsel.

8.3    The written objection shall provide the following information:  (a) the objector's name, address, and any attorney representing the objector; (b) the legal or factual basis for the objection; (c) documentation sufficient to prove the objector's membership in the Settlement Class (such as evidence of relevant prescription purchases or payments); (d) a list of any witnesses, exhibits, or legal authority that the objector intends to offer; (e) whether the objector intend to

appear, either in person or through counsel, at the Fairness Hearing; (f) whether the objection applies only to the objector, to a subset of the Class, or to the Class as a whole; and (g) a list of all class action settlements to which the objector and/or their counsel have previously objected. Any potential Settlement Class Member who fails to timely file and serve such written statement and provide the required information will not be permitted to present any objections at the Fairness Hearing and such failure will render any such attempted objection untimely and of no effect, unless otherwise ordered by the Court. All presentations of objections will be further limited by the information listed. A potential Settlement Class Member's mere compliance with the foregoing requirements does not in any way guarantee a potential Settlement Class Member the ability to present evidence or testimony at the Fairness Hearing. The decision whether to allow any testimony, argument, or evidence, as well as the scope and duration of any and all presentations of objections at the Fairness Hearing, will be in the sole discretion of the Court.

**9.      Selection and Appointment of Settlement Administrator**

9.1      The Parties have agreed upon a third-party Settlement Administrator. Plaintiffs will seek approval from the Court for the appointment of the Settlement Administrator, who will develop and effectuate a notice plan and administer the settlement.

9.2      The Parties will work in good faith to assist the Settlement Administrator on developing a notice plan. Further, the Parties will work in good faith to agree on the information Defendant will provide to the Settlement Administrator as part of the notice plan. In the event the Parties and Settlement Administrator cannot agree on a notice plan, the Parties will bring the issue before the Court for a ruling. Plaintiffs will present the proposed notice plan to the Court for approval. The Court-approved notice plan will be referred to as the "Notice Plan."

9.3      The Court shall appoint the Settlement Administrator pursuant to the Preliminary Approval Order. The duties undertaken by the Settlement Administrator shall be as described in

the Plan of Allocation and Distribution and orders of the Court. All reasonable fees and expenses, including the compensation of the Settlement Administrator, for the Notice and Administration Expenses shall be paid from the Settlement Fund.

**10.    Miscellaneous**

10.1    While denying liability, Defendant agrees that the Action is being settled voluntarily by Defendant after consultation with competent legal counsel.

10.2    The Settling Parties agree to settle the Released Claims and to execute this Settlement Agreement solely to compromise and settle protracted, complicated, and expensive litigation.  The Settling Parties agree that nothing in this Settlement Agreement, its Exhibits, the side agreement referenced in ¶7.3, or the negotiations thereof and the actions taken in compliance thereof, including payment of the Settlement Amount, (i) shall be construed as, deemed to be evidence of, or constitute an admission or concession by any of the Settling Parties as to the merits, or lack of merits, of any allegation or defense asserted in this Action, and (ii) shall not be offered or received in evidence in any action or proceeding by or against any Settling Party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, other than to enforce the provisions of the Settlement and this Settlement Agreement, its Exhibits, the side agreement referenced in ¶7.3, or the provisions of any related order, judgment or release.

10.3    Except as otherwise stated in this Settlement Agreement, Plaintiffs and Defendant shall use their best efforts to cause this Settlement Agreement to be approved and consummated. Except as otherwise stated in this Settlement Agreement, Plaintiffs, Defendant, and Class Counsel shall also promptly take such actions as may be reasonably required to obtain final approval by the Court of this Settlement Agreement and to carry out the terms of this Settlement Agreement.

10.4    The Court shall retain jurisdiction and its traditional equitable powers over the Action as those powers pertain to this Settlement Agreement to resolve any disputes or

controversies regarding the enforcement of the Settlement Agreement until the monies and funds in the Escrow Account are fully and finally distributed.

10.5    The Parties agree to mediate any dispute or claim arising out of or relating to the enforcement of the Settlement Agreement with Eric D. Green and/or Fouad Kurdi of Resolutions LLC. In the event the Parties are unable to resolve any such dispute or claim through mediation, any Party may seek relief from the Court.

10.6    This Settlement Agreement, including its Exhibits and the side agreement referenced in ¶7.3, constitutes the entire agreement among the Settling Parties hereto related to the Settlement and supersedes all prior agreements, understandings, discussions, negotiations, communications, representations, warranties, or inducements concerning this Settlement Agreement, its Exhibits, and the side agreement referenced in ¶7.3, and no Settling Party has relied on any agreements, understandings, discussions, negotiations, communications, representations, warranties, or inducements concerning this Settlement Agreement, its Exhibits, or the side agreement referenced in ¶7.3 other than those contained and memorialized in this Settlement Agreement, its Exhibits, and the side agreement referenced in ¶7.3. The Exhibits to this Settlement Agreement are:

Exhibit A        [Proposed] Plan of Allocation and Distribution;

Exhibit B        [Proposed] Class Settlement Preliminary Approval Order;

Exhibits C1 and C2    [Proposed] Forms of Summary Notice of Settlement;

Exhibit D        [Proposed] Form of Long-Form Notice of Settlement;

Exhibits E1 and E2    [Proposed] Claim Forms; and

Exhibit F        [Proposed] Form of Judgment.

10.7    To the extent there is a conflict between the provisions of this Settlement Agreement, the Preliminary Approval Order, the Judgment, and/or the Plan of Allocation and

Distribution, each such document shall have controlling effect in the following rank order: (i) the Judgment; (ii) the Preliminary Approval Order; (iii) this Settlement Agreement; and (iv) the Plan of Allocation and Distribution.

10.8    This Settlement Agreement may be executed in one or more counterparts, and may be exchanged by mail, facsimile, or electronic mail, which shall be as effective as original signatures.  All executed counterparts taken together shall be deemed to be one and the same instrument.  If executed in counterparts, the Settlement Agreement shall not be binding until all Parties have signed and delivered a counterpart of this Settlement Agreement by mail, facsimile, or electronic mail.  Counsel for the Settling Parties shall exchange among themselves signed counterparts, and a complete, assembled Settlement Agreement with all executed counterparts shall be filed with the Court.

10.9    The Parties and their respective counsel have mutually contributed to the preparation of this Settlement Agreement.  Accordingly, no provision of this Settlement Agreement shall be construed against any Party on the grounds that one of the Parties or its counsel drafted the provision.  Except as otherwise provided herein, each Party shall bear its own attorneys' fees and other litigation expenses and costs.

10.10   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

10.11   Each of the undersigned represents that he or she is fully authorized to execute this Settlement Agreement on behalf of the Party for which he or she signs.  Class Counsel has reviewed this Settlement Agreement and the side agreement referenced in ¶7.3 with Plaintiffs and is authorized to sign this Settlement Agreement and the side agreement referenced in ¶7.3 on behalf of Plaintiffs and putative Settlement Class Members.

10.12   This Settlement Agreement and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the Parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to that State's choice-of-law principles.

10.13   If the provisions of this Settlement Agreement (or any portion thereof) are held unenforceable in any jurisdiction, then such provisions shall be severable, and the Settling Parties agree that the enforceability of the remaining provisions of this Settlement Agreement shall not in any way be affected or impaired thereby and shall continue in full force and effect.

10.14   The exclusive forum for any dispute arising under or related to this Settlement Agreement, or to enforce the terms of this Settlement Agreement, shall be the United States District Court for the Northern District of Illinois.

10.15   No delay or omission by any Settling Party in exercising any rights under this Settlement Agreement will operate as a waiver of that or any other right.  A waiver or consent given by a Settling Party on any one occasion is effective only in that instance and will not be construed as a bar or waiver of any right on any other occasion, unless otherwise agreed in writing.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.**

**CYNTHIA RUSSO**

DATED: 10/31/ , 2024

**LISA BULLARD**

DATED: October 30, 2024

**RICARDO GONZALES**

Ricardo Gonzales

DATED: _10/30/2024_____, 2024

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL 38 HEALTH AND WELFARE FUND

By: _____

Its: _____TRUSTEE_____

DATED: _October 30_, 2024

**INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL 295-295C WELFARE FUND**

By: _____

Its: Trustee
_____

DATED: 10/31
_____, 2024

**STEAMFITTERS FUND LOCAL 439**

By: _Charlie Daley_

Its: _Business Manager / Financial Secretary treasurer_

DATED: _October 29th_, 2024

DATED: _Oct. 30_ , 2024

_Joseph P. Guglielmo (IL Bar #2759819)_

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-4478
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

Erin Green Comite (IL Bar #420630)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 S. Main Street, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
ecomite@scott-scott.com

David W. Mitchell (IL Bar #199706)
Arthur L. Shingler III (IL Bar #181719)
**ROBBINS GELLER RUDMAN**
    **& DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
davidm@rgrdlaw.com
ashingler@rgrdlaw.com

Paul J. Geller
Mark J. Dearman
Stuart A. Davidson
**ROBBINS GELLER RUDMAN**
    **& DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com

_Counsel for Plaintiffs and Proposed Class_
_Counsel_

- 42 -

**WALGREEN CO.**

By: _Peter R. Wilson_____

Its: __VP, Litigation & Regulatory Law__

DATED: __October 29__, 2024