IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICHARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, and STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO.,<br><br>Defendant. | Civil Action No. 1:17-cv-02246<br><br>CLASS ACTION<br><br>The Honorable Edmond E. Chang |

NON-PARTY BLUE CROSS AND BLUE SHIELD HEALTH PLANS AND
HEALTH CARE SERVICE CORPORATION'S
MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION[1]

The Court's August 7, 2025 Order (Dkt. No. 768) ("Order") granting Plaintiffs' motion to invalidate the exclusion requests of approximately 24,000 class members retroactively rendered the class notice in this case constitutionally invalid. The Order therefore constitutes a mistake of law that warrants reconsideration. Specifically, the Administrative Services Only ("ASO") Clients of Non-Party Blue Cross and Blue Shield Health Plans (the "Blues") and Health Care Service

---

[1] As this Motion is directed to Plaintiffs' motion to deny exclusion requests, Movants emailed Plaintiffs' counsel to determine whether they objected. Conferral did not occur as Movants emailed close to the time of filing, but Movants assume that Plaintiffs oppose because this Motion seeks reconsideration of the grant of Plaintiffs' earlier motion.

1

Corporation ("HCSC") (together, "the Plans") would have understood that standard industry practices regarding opt outs would be followed in this case. They would have relied on that understanding when allowing the Plans to submit opt outs on their behalf.

The Order, however, deviated from that standard industry practice and held that the procedures permitted by numerous courts were insufficient here, and an impossibly onerous procedure would apply instead. Even if that procedure were legally permissible—which the Plans dispute—the class notice needed to explicitly alert the class member ASO Clients that standard industry practices would not apply, *i.e.*, that Plans would not be permitted to opt out on behalf of their ASO Clients. Anything short of that would—and did—fail to provide the ASO Clients with the information necessary to preserve their rights to recovery. As a result of that deficient notice, the ASO Clients were denied due process and suffered substantial prejudice, as millions of dollars of claims have been released against their will.

To correct that mistake of law and ensure that the ASO Clients' rights are protected, the Court should reconsider the Order, deny Plaintiffs' Motion, and enforce the opt-outs that the Plans submitted in accordance with industry standards.

I. **LEGAL STANDARD**

Parties may move the Court to reconsider prior orders when "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *River Vill. W. LLC v. Peoples Gas Light & Coke Co.*, 618 F. Supp. 2d 847, 850 (N.D. Ill. 2008) (citing *Bank of Waunakee v. Rochester Cheese Sales Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). A motion to reconsider "may be used to correct 'a manifest error

2

of law or fact,' and it 'essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *G.P. v. Chicago Bd. of Educ.*, Case No. 17-cv-1891, 2021 WL 681120, at *2 (N.D. Ill. Feb. 22, 2021) (quoting *Rusell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749–50 (7th Cir. 1995)).

It is well established that "[a] motion to reconsider an interlocutory order may be entertained and granted as justice requires." *Green v. U.S.*, Case No. 14-CV-119-NJR-DGW, 2016 WL 6248281, at *2 (S.D. Ill. Oct. 26, 2016); *see also* Fed. R. Civ. P. 60(b) advisory committee note to 1946 amendment ("[I]nterlocutory judgments [and orders] are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."). Thus, where a party seeks reconsideration of an interlocutory order, such as an order denying exclusion requests, the Court may reconsider its prior order as justice so requires and such determination is left largely to the Court's discretion. *See Green*, 2016 WL 6248281 at *2 ("Disposition of a motion for reconsideration is entrusted to the district court's discretion.") (internal quotation marks and citation omitted).

## II. ARGUMENT

The Order constitutes a manifest error of law and effectively changed the law governing the case retroactively, by transforming constitutionally permissible class notice—which the ASO Clients interpreted through the lens of standard industry practice—into unconstitutionally vague class notice that failed to adequately inform the ASO Clients how to preserve their rights, much to their detriment. It therefore warrants reconsideration.

   a. **The Order Constitutes a Manifest Error of Law by Rendering the Class Notice Constitutionally Invalid.**

For class notice to be adequate, it must be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also In re System Software Associates, Inc.*, Case No. 97 C 177, 2000 WL 283099, at *10 (N.D. Ill. Mar. 8, 2000) ("[D]ue process requires that absent plaintiffs receive notice as well as . . . . be provided with the opportunity to opt out of the proposed class."). Here, the notice failed to do that because it did not provide the best, most practicable indication to the class members of how to opt out.

It is industry standard that administrators may, and do, opt their ASO clients out of class actions on their behalf. Third party administrators ("TPAs") like the Plans provide various important services to the end client ASOs, including "(1) determin[ing] eligibility and control[ling] enrollment for participants, (2) perform[ing] claims processing and adjudication, and (3) directly pay[ing] the health care costs incurred." *Electrical Welfare Trust Fund v. U.S.*, 166 Fed. Cl. 709, 711 (2023); *see also In re Niaspan Antitrust Litig.*, 67 F.4th 118, 123 (3d Cir. 2023) ("A TPA helps the sponsor manage their group plan benefits and assists with the claims adjudication and reimbursement process. . . . When an insurer provides TPA services to another entity but does not provide a fully insured health plan, it is said to be providing an administrative-services-only plan and is called an 'ASO' in that relationship."). Many ASO clients are small businesses that do not have the resources or expertise to efficiently administer their respective plans, much less any litigation related to their claims, and contract with TPAs such as the Plans to perform administrative tasks. One such task the Plans will pursue in their ASO clients' interests is opting out of class actions when it is beneficial to the ASO clients. *See* Dkt. No. 756 ¶ 7. And the ASO Clients at issue here authorized the Plans to do so. *Id.* The ASO Clients would therefore naturally

4

expect that the Court would honor the exclusion requests that the Plans submitted on their behalf. *Cf. In re HIV Antitrust Litg.*, Case No. 3:19-cv-02573-EMC, Dkt. No. 998 at 13 (N.D. Cal. Apr. 11, 2022) (Final Approval Motion noting that "[e]ight health insurance companies, on behalf of themselves, their subsidiaries, and administrative services clients (amounting to 2,481 TPP Class Members) also opted out, along with seven other TPPs").

This Court's Order Preliminarily Approving Class Action Settlement ("Approval Order") states the means of opting out of the proposed class but does not expressly state that industry standards would not be followed. *See* Dkt. No. 689 at ¶¶ 14–15. Although the Approval Order stated that group exclusions are impermissible and that each settlement class member must file an exclusion request, the Approval Order never mentioned TPAs in particular. *Id.* at ¶ 14.[2] It was wholly practicable for the Court to state: "Regardless of any existing contractual rights to manage an entity's claims and/or recoveries, Third Party Administrators may not submit exclusion requests on behalf of their clients" or "Third Party Administrators may only submit exclusion requests on behalf of their clients if also submitting the specific contracts of each and every client on whose behalf the exclusion request is submitted." But it did not do so. Instead, the parties opting out naturally interpreted the class notice in the context of industry norms allowing opts outs in exactly the manner that occurred here. *Cf. Citgo Petrol. Corp. v. United Steelworkers Union, Local Union No. 7-517*, 613 F. Supp. 3d 1059, 1079 (N.D. Ill. 2020) ("Arbitrators can invoke industry norms when interpreting an agreement."); *Sebastian v. Zuromski*, Case No. No. 91 C 4529, 1992 WL 80971, at *2 (N.D. Ill. Apr. 24, 1992) ("[T]he court may rely upon common practice and understanding of the business world to interpret contract terms.").

---

[2] These same infirmities exist in the actual notices provided to class members. *See* Dkt. Nos. 683-4, 683-5, and 683-6.

The notice, as construed in light of the Order, therefore did not provide the best notice practicable under the circumstance.

### b. The Method of Disseminating Notice Exacerbates the Due Process Issues Created by the Court's Order.

Not only did the notices fail to adequately inform the ASO Clients how to opt out, but these notices likely did not even reach each of the approximately 24,000 ASO Clients. The Approval Order directed the settlement administrator to effectuate notice by (1) direct email notice; (2) supplemental paid-media notice via social media and digital advertising; (3) postcard and email notice to third-party payor entities; and (4) press releases. Dkt. No. 684 at 4–9, *adopted at* Dkt. No. 689 ¶ 4.

But a webpage requires individuals to affirmatively seek out the settlement page. And publication and social media notice are always "disfavored" because they contain "an implicit admission that many members of the class will never know 'that their rights are before the courts.'" *See Kaufman v. Am. Express Travel Related Servs., Inc.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012). Indeed, the fact that so few ASO Clients responded to the notice in this Court proves either that they never received that notice or that they understood the notice to permit the Plans to opt out on their behalf. Indeed, avoiding the administrative burden of tracking class notifications and opting out when appropriate is part of the reason that ASO clients rely on TPAs. Yet the Court has unsettled that expectation, impaired the ASO Clients' contractual arrangements with TPAs, and improperly encroached on those ASO Clients' rights by rejecting their exclusion requests. Due process does not permit such a result. *See Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 144 (N.D. Ill. 2010) ("As the Seventh Circuit has explained, in recognition of the potential divergence of interests within the class, each class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of

6

the class action[.]") (quotation omitted); *see also Perrigo Inst. Inv. Grp. v. Papa*, --- F.4th ---, 2025 Wl 2315977, at *9 (3d Cir. Aug. 12, 2025) ("Our cases have recognized the importance of accurate and clear class action notices as a function of due process."); *Brecher v. Republic of Argentina*, Case No. 06 Civ. 15297, 2010 WL 3584001, at *2 (S.D.N.Y. Sept. 14, 2010) ("Numerous other courts have emphasized the importance of class notice before the merits of the case are adjudicated.").

### c. The ASO Clients Will Suffer Substantial Prejudice if the Court Does Not Undo the Harm of the Order.

The procedural facts surrounding the ASO exclusion reveal an extraordinary distortion of the purposes and justifications for the class action mechanism. The Plans are pursuing claims belonging to the ASO Clients in separate litigation against Walgreens. *See* Dkt. No. 756 ¶ 4. The ASO Clients stand to recover a significant amount through that litigation, far more than they would in the instant case. *Id.* ¶ 5. Yet here, the named Plaintiffs are trying to use procedural hurdles to force absent class members to surrender actual, real recoveries in a suit in which they have a direct interest, and instead accept pennies on the dollar so that Plaintiffs can preserve a settlement in a suit they litigated in the ASO Clients' absence. What's more, Walgreens is supporting Plaintiffs' effort to do so, effectively turning a case they are supposed to be defending (this case) into a sword to wield in another case, thereby gaming their way to come out ahead by virtue of being a serial defendant. All to the detriment of the ASO Clients, who did not consent to having their recovery reduced. This is the definition of a due process violation. *Cf. In re Big O Movers & Storage, Inc.*, 326 B.R. 434, 435 (N.D. Ill. Bankr. 2005) ("[D]ue process required under U.S. Const. 5th Amendment prevents § 1141 from being read to extinguish a creditor's claim when, as here, the creditor received no notice of the bankruptcy proceeding.").

7

"Where notice to a class has been inadequate, it may be appropriate to reject the settlement in its entirety." *Kaufman*, 283 F.R.D. at 408. But neither the Plans nor the ASO clients seek that much here. Instead, they merely ask that the Court honor their exclusion requests. This Court's Order created a mistake of law in that it rendered the prior notice inadequate and constitutionally unsound. The Court's own Order cannot violate constitutional rights. As such, reconsideration is warranted.

### III. CONCLUSION

For the foregoing reasons, the Plans respectfully request that this Court reconsider its Order granting Plaintiffs' motion to deny the Plans' exclusion requests.

Dated: September 8, 2025

Respectfully submitted,
By: */s/ Jed Wulfekotte*
Jason P. Stiehl
Neil G. Nandi
**CROWELL & MORING LLP**
455 N. Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611
Telephone: 312.840.3108
JStiehl@crowell.com
NNandi@crowell.com

Kent A. Gardiner*
Stephen J. McBrady*
Kelly H. Hibbert*
Jed Wulfekotte*
**CROWELL & MORING LLP**
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116
KGardiner@crowell.com
SMcBrady@crowell.com
KHibbert@crowell.com
JWulfekotte@crowell.com

*admitted pro hac vice

*Counsel for Non-Party Blue Plans and HCSC*