# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| **CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, and STEAMFITTERS FUND LOCAL 439**, *On Behalf of Themselves and All Others Similarly Situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**WALGREEN CO.**,<br><br>*Defendant*. | Case No. 1:17-cv-02246<br><br>Honorable Edmond E. Chang |

# WALGREENS' OPPOSITION TO THE BLUE CROSS INSURERS' MOTION FOR RECONSIDERATION

In their Motion, the Insurers ask the Court to reconsider the Order denying their ASO clients' exclusion requests and to cast doubt on the settlement's nearly year-old notice plan and opt-out process.[1] But the Insurers provide no new facts, evidence, or law to support their remarkable demand. Rather, the Insurers rehash arguments that the Court already properly rejected, and they ignore record evidence—including nearly two dozen settlement claims that ASO clients filed on their own behalf—that puts the lie to their irrelevant generalizations about supposed "industry standards." The Court already correctly held that the Insurers disregarded the Preliminary Approval Order's opt-out process, and the Court properly rejected the Insurers' due process arguments. The Insurers' latest procedural gambit, which serves only to delay the settlement's final approval, does nothing to cast doubt on these earlier holdings. Walgreens respectfully requests that the Court summarily deny the Insurers' Motion.

I.  BACKGROUND

Following years of litigation, the Court entered the Preliminary Approval Order on November 18, 2024, granting initial approval to the Settlement. *See* ECF No. 689. That Order explicitly prohibited "group or class-wide exclusions," and it clearly explained that a Class Member's "purported authorized agent or representative" could opt the Class Member out of the settlement class only by "includ[ing] proof of the representative's legal authority and authorization to act." *Id.*, ¶ 14.

---

[1] "Motion" or "Mot." refers to Non-Party Blue Cross and Blue Shield Health Plans and Health Care Service Corporation's Memorandum in Support of Their Motion for Reconsideration, ECF No. 774. "Opposition" or "Opp." refers to Non-Party Blue Cross and Blue Shield Health Plans and Health Care Service Corporation's Opposition to Plaintiffs' Motion to Deny Exclusion Requests & Overrule Objections to the Opt-Out Procedure, ECF No. 755. "Order" refers to the Memorandum Opinion & Order entered on August 7, 2025, ECF No. 768. "Preliminary Approval Order" refers to the Order Preliminarily Approving Class Action Settlement entered on November 18, 2024, ECF No. 689. Capitalized terms undefined in this brief have the meanings ascribed in Walgreens' Response to Plaintiffs' Motion to Deny Exclusion Requests & Overrule Objections to the Opt-Out Procedure, ECF No. 728.

In March 2025, the Insurers submitted requests for group or class-wide exclusions of their ASO clients. *See, e.g.*, Miller Decl., ECF No. 726, Exh. 1. Those requests cited purportedly "standard ASO contract language," but they did not attach any ASO contracts or include other competent "proof of the [Insurers'] legal authority and authorization to act" on the ASO clients' behalf. *Id.* at 1. Rather, the requests asserted that the Preliminary Approval Order "impose[d] an undue burden on ASO-client members who have contractually authorized [the Insurers] to . . . opt out of class settlements on their behalf." *Id.* at 2.

Plaintiffs moved to deny the Insurers' exclusion requests, *see* ECF No. 723, and Walgreens agreed with Plaintiffs' motion, *see* ECF No. 728. The Insurers opposed. *See* ECF No. 755. In their Opposition, the Insurers argued that the Preliminary Approval Order violated their ASO clients' rights to due process by upsetting their contractual expectations and imposing undue burdens while prejudicing them with respect to the related Insurer Actions. *See id.* at 7-14.

The Court denied the Insurers' exclusion requests on August 7, 2025. *See* ECF No. 768. In its Order, the Court held that the requests did "not comply with the preliminary-approval order," *id.* at 8, and that "a rejection of the Insurers' *en masse* exclusion requests does not run afoul of due process," *id.* at 13. More than a month later, and two days before the final fairness hearing, the Insurers filed the Motion, asking the Court to reconsider the Order. *See* ECF No. 772; *see also* Minute Entry, ECF No. 778 (describing the "timing of the motion's filing" as "less than ideal").

II.   **ARGUMENT**

  A.   **The Insurers' Motion Merely Relitigates Arguments that the Court Already Rejected; It Can Be Denied for that Reason Alone.**

The Court can and should summarily deny the Motion based on a simple, longstanding principle: Reconsideration motions should not merely relitigate prior arguments or raise new ones that could have been made in the original briefing. *See, e.g.*, *In re NorthShore Univ. Healthsystem*

2

*Antitrust Litig.*, 2016 WL 11430715, at *1 (N.D. Ill. Sept. 19, 2016) (Chang, J.). The Motion does exactly that, and nothing more. Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (cleaned up). Given this narrow purpose, courts entertain these motions only when a party "can establish that the law or facts have changed significantly since the issue was presented, or the court has 'patently misunderstood a party,' has 'made a decision outside the adversarial issues presented,' or has 'made an error not of reasoning, but of apprehension.'" *Finnsugar Bioprods., Inc. v. Amalgamated Sugar Co., LLC*, 244 F. Supp. 2d 890, 891 (N.D. Ill. 2002), *quoting Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Such errors are rare, and a "motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191 (cleaned up). "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

Thus, the Insurers bear "a heavy burden" to show reconsideration is warranted. *BCBSM, Inc. v. Walgreen Co.*, 2024 WL 4867031, at *2 (N.D. Ill. Nov. 22, 2024) (cleaned up). They may neither rehash old arguments nor raise new ones they could have made in the original proceedings. *See Caisse Nationale*, 90 F.3d at 1270. Simply put, a reconsideration motion is not a vehicle for the Insurers to say, "Judge, we think you're wrong. Give it another look." *Ellenby Techs., Inc. v. Fireking Sec. Grp.*, 533 F. Supp. 3d 656, 660 (N.D. Ill. 2021) (cleaned up). Courts (including this one) routinely deny reconsideration motions that make that request. *See, e.g.*, *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (motion properly denied when it "merely took umbrage

3

with the court's ruling and rehashed old arguments");[2] *Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012) (denying motion when party did "not raise any arguments that it did not raise or could not have raised in its briefing on its original motion"); *Rogers v. Sheriff of Cook Cnty.*, 2025 WL 885849, at *2 (N.D. Ill. Mar. 21, 2025) (Chang, J.) (fact that party's motion to reconsider was "not procedurally proper because it is not based on newly discovered evidence or a change in the law" was "fatal to the motion"); *BCBSM*, 2024 WL 4867031, at *4 ("Walgreen[s] correctly points out that motions for reconsideration are not appropriate vehicles for generally arguing issues or presenting evidence that were or could have been raised during the pendency of the motion presently under reconsideration.") (cleaned up) (Kendall, C.J.).

The Insurers disregard this fundamental principle. They argue that the class notice violated the ASO clients' due process rights by unsettling the ASO clients' supposed expectations, *see* Mot. at 4-6; by imposing "an impossibly onerous [opt-out] procedure" and "administrative burden" on the ASO clients, *id.* at 2, 6-7; and by transforming this class action "into a sword to wield in another case," *id.* at 7. But the Insurers have already made those arguments. In their Opposition, the Insurers argued that the ASO clients supposedly "understood that the [Insurers] would be making [opt-out] determinations and filing on the ASO clients' behalf, consistent with the [Insurers'] contractual arrangements," Opp. at 13; that the opt-out procedure imposed "administratively near-impossible" burdens on the Insurers and their ASO clients, *id.* at 10; and that Walgreens sought to "wield the protections of due process as both a sword and a shield," *id.* at 11. The Court considered—and rejected—the arguments the Insurers press now. *See* Order at 9 (requiring Insurers to introduce proof, not just supposedly "standard contract language" by which the ASO

---

[2] *Oto* considered a reconsideration motion under Rule 59(e), but the standards for motions to reconsider under Rules 54(b) and 59(e) are essentially the same. *See Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018).

clients allegedly authorized the Insurers to make opt-out decisions); *id.* at 10 (rejecting Insurers' argument that the opt out procedures "are too onerous"); *id.* at 12-13 (rejecting Insurers' argument that the Order would unduly preclude the ASO clients from "pursu[ing] their own legal claims" in separate proceedings). The Insurers cannot use a reconsideration motion to ask the Court for a do-over. *See, e.g.*, *BCBSM*, 2024 WL 4867031, at *4.

      The Insurers fail in their attempts to avoid their Motion's "fatal" flaw. *Rogers*, 2025 WL 885849, at *2. First, the Insurers introduce a purportedly new concept—"standard industry practices regarding opt outs"—to argue that the Order endorsed a violation of the ASO clients' due process rights. Mot. at 2. But the Insurers' "industry standards" argument merely relabels their previously unsuccessful objection that the opt-out scheme upset the ASO clients' contractual expectations. *Compare* Opp. at 9 ("Plaintiffs would have this Court ignore that the Plans already delegated contractual authority to opt-out ASOs"), *and id.* at 11 ("when commercial entities delegate recovery rights to a third-party insurer via contract, courts honor those delegations and permit mass opt-outs"), *with* Mot. at 4-5 (because ASOs "contract with [the Insurers] to perform administrative tasks," they "naturally interpreted the class notice in the context of industry norms allowing opt[] outs in exactly the manner that occurred here"). The Court should not entertain that repackaged argument now merely because the Insurers use different words to make it. *See, e.g.*, *NorthShore*, 2016 WL 11430715, at *1 ("Reconsideration is not for rehashing previously rejected arguments.") (cleaned up). Nor was the Insurers' "industry standards" argument unavailable to them when they filed their Opposition. The Insurers do not and cannot suggest that the supposed industry standards emerged only after July 15, 2025 (when they filed their Opposition), or that the ASO clients suddenly discovered an industry standard of which they were previously unaware. In fact, the only authorities that the Insurers cite in their Motion to support the existence of the supposed industry standard—two judicial decisions briefly describing ASO clients and one

5

approval motion discussing insurers opting out on ASO clients' behalf—long predate their Opposition. *See* Mot. at 4-5. The Insurers thus could have, but did not, invoke the supposed industry standards in their Opposition. They should not be allowed to do so for the first time now. *See, e.g.*, *Rogers*, 2025 WL 885849, at *3.

The Insurers also cryptically suggest that the "law governing the case" "effectively changed" "retroactively." Mot. at 3; *see also id.* at 1. But the Insurers do not point to any new precedent or controlling authority governing class notices, opt-out procedures, or due process. Rather, the Insurers appear to argue that the Court *itself* somehow changed the law by enforcing the opt-out procedures the Court approved and clearly described in November 2024. *See* Mot. at 1, 3, 5. By holding class members to those procedures, the Insurers claim, the Court "transform[ed] constitutionally permissible class notice . . . into unconstitutionally vague class notice that failed to adequately inform the ASO Clients how to preserve their rights." Mot. at 3. But the Insurers already argued that requiring the ASO Clients to comply with the procedures detailed in the Preliminary Approval Order would infringe upon the ASO Clients' due process rights. *See* Opp. at 7-12. All that has changed is that the Court has already rejected the Insurers' argument once. *See* Order at 10-13. That is not a "change in law" meriting reconsideration. *See Bank of Waunakee*, 906 F.2d at 1191.

The purpose of a reconsideration motion is to correct manifest errors of law or fact, and the Insurers can point to none. Instead, they dispute only how the Court weighed their arguments. While the Insurers may wish that they had developed their arguments differently or that the Court had found those arguments more persuasive, that regret does not warrant reconsidering the Court's Order. The Insurers have simply offered no reason to reopen that ruling, other than their disagreement with it. For that reason, the Court should summarily deny the Motion.

B.  **The Insurers' Motion Also Fails on the Merits Because the Class Notice and Opt-Out Procedure Were Consistent with Due Process.**

Even if the Court reaches the merits of the Insurers' Motion, the Motion should be denied for the independently sufficient reason that the Insurers still cannot demonstrate that the Order or the Preliminary Approval Order somehow violated the ASO clients' rights. In the Motion, the Insurers base their argument on purported industry standards. *See* Mot. at 3-6. Those industry standards, the Insurers say, establish that "administrators may, and do, opt their ASO clients out of class actions on their behalf." *Id.* at 4. By departing from that asserted industry standard, the Insurers continue, the opt-out procedures established in the Preliminary Approval Order and enforced in the Order deprived the ASO Clients of due process. *See id.* at 5-6.

The Insurers tell only half the story, however. To the extent any industry standards exist, they allow third-party administrators like the Insurers to opt out on their ASO clients' behalf, but only when the administrators demonstrate their authority to do so ***on a client-by-client basis***. The Insurers' own cited authority indicates as much. In their Opposition (at 11), the Insurers urged the Court to follow the opt-out procedures adopted by the court in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, 16-MD-2724 (ECF No. 3354) (E.D. Pa. May 1, 2025). According to the Insurers, that case, which also addressed insurers' rights to opt out their ASO clients, presented "nearly identical" circumstances. Opp. at 11. Consistent with the Insurers' argument here, *In re Generic Pharmaceuticals Pricing* did allow the insurers to opt out on their ASO clients' behalf—but with an important caveat that the Insurers ignore. The court permitted the "ASO administrator [to] submit a declaration, as to each ASO customer, that it has the authority to opt-out of the classes on behalf of that ASO customer—***provided that the declaration sets forth the specific contract language and identifies the ASO customer that signed the contracts with***

7

*that language.*" MDL No. 2724, 16-MD-2724 (ECF No. 3354 at 4) (E.D. Pa. May 1, 2025) (emphasis added). The Insurers failed to provide such individualized declarations here.

The Insurers' "industry standards" argument thus fails on its own terms. The Court's Order complied with the industry standards that the Insurers urge the Court to embrace. On the other hand, by failing to prove that even a single individual ASO client had authorized the Insurers to unilaterally control its opt-out rights, the Insurers disregarded their own supposedly industry standard obligations. That is especially so because nearly two dozen of the Insurers' ASO clients submitted settlement claims **on the clients' own behalf**, *see* Miller Decl., ECF No. 726, ¶ 6—putting the lie to the Insurers' claim that, pursuant to industry standards, the ASO clients expected to wholly defer to the Insurers.

Although the Insurers passionately claim to be vindicating the procedural rights of their ASO clients—who purportedly are having their due process rights trampled by this Court—the Insurers have failed to come forward with a single ASO client (among tens of thousands) to support or even generally agree with the Insurers' position. Surely, between their Opposition and their weeks-later Motion, the Insurers could have submitted a declaration from a single aligned ASO client to confirm either the Insurers' proposed "industry standard" or the ASO clients' alleged expectation that the Insurers are in charge of the ASO clients' claims. It is too late now. Not only did the Insurers not come up with a single aggrieved ASO client to bolster their theory, the Insurers provide no competent proof whatsoever to prop up their rebranded "industry standards" argument or their original "established expectations" argument. The record goes completely the other way. For example, almost two dozen of the Insurers' ASO clients—apparently oblivious to so-called "industry standards" and unaware or disinterested that the Insurers would act on their behalf—affirmatively filed settlement claims. Miller Decl., ECF No. 726, ¶ 6. Nor is it at all clear, contrary to the Insurers' argument, that any ASO customer could expect a better, more certain, or more

8

immediate recovery by casting their lot with the Insurers. The Insurers' own cases against Walgreens are far from a final resolution, the Insurers' claims have been limited to knowing and intentional fraud, and the Insurers are facing significant potential sanctions in the federal case in the wake of a court-ordered remediation process overseen by a special master to correct the Insurers' serious discovery lapses. Most critically, the Insurers utterly failed to plead *any* predicate facts necessary to make out the ASO clients' claims in those other cases, and as Judge Kendall already recognized when the Insurers tried to amend their complaints to add new fraud scienter theories, those cases are far too advanced for the Insurers to now inject thousands of new plaintiffs and a whole new theory of recovery. *See* ECF No. 728 at 8-9, *citing* ECF No. 729-4 (denying motion to amend because plaintiffs "waited unnecessarily and unjustifiably long" to try to add new scienter theories to the complaints).[3]

In a last grasp attempt to demonstrate some due process violation, the Insurers assert that, if the Court intended to require the Insurers to submit individualized proof of their ASO clients' authorization, the Court needed to provide clearer notice and disseminate that notice more broadly. *See* Mot. at 5-7. But the notice process endorsed by the Preliminary Approval Order was constitutionally sufficient, as the Motion only confirms. To start, the Insurers purport to line edit the notice forms the Court already approved. *See* Mot. at 5. But the Insurers' first proposed edit— that "[r]egardless of any existing contractual rights . . . Third Party Administrators may not submit exclusion requests on behalf of their clients," *id.*—is flatly inaccurate; consistent with supposed

---

[3] The only obvious beneficiaries of the Insurers' opt-out attempts are the Insurers' attorneys. Those attorneys have brought the Insurer Actions on a contingent-fee basis. *See*, *e.g.*, 20-CV-1853 Dkt., ECF No. 742 at 4. While the Insurers presumably would have to remit any ASO client–based recovery to their ASO clients, the contingent fee arrangement between the Insurers and their counsel seemingly would permit the Insurers' counsel to retain a significant portion of any additional recovery related to the ASO clients' transactions. Preserving claims so that private lawyers may one day profit from an inflated recovery has nothing to do with the ASO clients' due process rights, nor is it a relevant consideration in deciding whether to approve the Settlement and deny the Insurers' Motion.

9

industry standards, the Court *permitted* Third Party Administrators to submit exclusion requests on their clients' behalf, so long as they complied with certain procedural requirements, *see* Preliminary Approval Order, ¶ 14. The Insurers' opt-out notices were ineffective, not because the Preliminary Approval Order categorically barred the Insurers from opting out their ASO clients, but because the Insurers failed to comply with constitutionally mandated procedural protections for those absent Class Members. And the Insurers' second proposed edit—that "Third Party Administrators may only submit exclusion requests on behalf of their clients if also submitting the specific contracts of each and every client on whose behalf the exclusion request is submitted," Mot. at 5—is a clumsier and more confusing way of repeating information that the notice already provides, *see* Preliminary Approval Order, ¶ 14.

The Insurers also contend that the Order endorsed a deficient notice scheme, and that the "notices likely did not even reach each of the approximately 24,000 ASO Clients." Mot. at 6. But the Insurers cite no evidence to support their assertion. And the only evidence that *is* in the record—settlement claims filed by 22 ASO clients on their own behalf, *see* Miller Decl., ECF No. 726, ¶ 6—directly contradicts the Insurers' sweeping assertion. In any event, the Insurers do not dispute that *they* received notice of the settlement and could have notified their ASO clients or complied with the opt-out procedures on their clients' behalf, as the Court already correctly ruled, *see* Order at 11 n.5.

In short, nothing in the Motion casts doubt on the Court's previous holdings. As members of the class, the ASO clients were represented throughout these proceedings by highly competent counsel, *contra* Mot. at 7, and the Insurers failed to follow the Court's constitutionally permissible procedure to submit exclusion notices on the ASO clients' behalf. If, as the Insurers now claim, the ASO clients risk losing "actual, real recoveries" in the Insurer Actions, Mot. at 7—an assertion contradicted by those cases' pleadings and by the Insurers' own sworn statements in the settlement

10

claims they submitted on behalf of their ASO clients, *see* Miller Decl., ECF No. 726, Exh. 13—that is the fault of the Insurers, not the result of any due process violation.

### III. CONCLUSION

For the above reasons, Walgreens respectfully requests that the Court deny the Insurers' Motion.

Dated: September 19, 2025

Respectfully submitted,

By: */s/ Jeffrey J. Bushofsky*

Jeffrey J. Bushofsky
Timothy R. Farrell
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Timothy.Farrell@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendant Walgreen Co.*

## CERTIFICATE OF SERVICE

I, Charles D. Zagnoli, hereby certify that the foregoing document was electronically filed on September 19, 2025, and will be served electronically via the Court's ECF Notice system upon all registered counsel of record.

*/s/ Charles D. Zagnoli*
Charles D. Zagnoli
ROPES & GRAY LLP
191 North Wacker Dr.
32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5522
Charles.Zagnoli@ropesgray.com

*Attorney for Defendant Walgreen Co.*