**UNITED STATES COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, and STEAMFITTERS FUND LOCAL 439, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:17-cv-02246 <br><br> <u>CLASS ACTION</u> <br><br> Judge Edmond E. Chang |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| WALGREEN CO., | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO BLUE CROSS BLUE SHIELD HEALTH PLANS' AND HEALTH CARE SERVICES CORPORATION'S MOTION TO INTERVENE**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

III.    LEGAL STANDARD ........................................................................................... 5

IV.     ARGUMENT ........................................................................................................ 6

    A.      Several Jurisdictional Deficiencies Require That the Motion Be Denied ............. 6

    B.      The Motion Is Untimely and Should Be Denied ................................................... 7

        1.      The Blues Should Have Known This Case Might Affect Their
                Interests as Early as 2020 ........................................................................... 8

        2.      The Parties Will Be Prejudiced by the Delay Intervention Will
                Cause .......................................................................................................... 10

        3.      The Blues Will Suffer No Prejudice ......................................................... 11

    C.      The Blues Fail to Satisfy the Remaining Intervention as of Right Criteria .......... 11

        1.      The Blues Do Not Have Any Interest in the Subject Matter of
                This Action That Will Potentially Be Impaired ....................................... 11

        2.      The Blues Fail to Demonstrate that the Interests at Issue Are Not
                Adequately Represented ........................................................................... 14

    D.      The Blues Also Are Not Entitled to Permissive Intervention ............................... 14

V.      CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Walgreen Co.*,
  47 F.4th 1115 (9th Cir. 2022) ....................................................................10

*Am. Nat'l Bank & Trust Co. of Chicago v. City of Chicago*,
  865 F.2d 144 (7th Cir. 1989) .......................................................................6

*BCBSM, Inc. v. Walgreen Co.*,
  No. 20-cv-1853 (N.D. Ill.) ...........................................................................2

*CE Design Ltd. v. King Supply Co.*,
  791 F.3d 722 (7th Cir. 2015) .......................................................................9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)...............................................................12, 13

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
  445 U.S. 326 (1980)......................................................................................7

*Diamond v. Charles*,
  476 U.S. 54 (1986).....................................................................................11

*Flying J, Inc. v. Van Hollen*,
  578 F.3d 569 (7th Cir. 2009) .......................................................................6

*Gould v. Alleco, Inc.*,
  883 F.2d 281 (4th Cir. 1989) ..................................................................7, 10

*Hankins v. Alpha Kappa Alpha Sorority, Inc.*,
  447 F. Supp. 3d 672 (N.D. Ill. 2020) (Chang, J.) .............................6, 7, 14

*HCSC v. Walgreen Co.*,
  No. 2021L000621 (Ill. Cir. Ct., Cook Cnty.)................................................2

*Heartwood, Inc. v. U.S. Forest Serv., Inc.*,
  316 F.3d 694 (7th Cir. 2003) .......................................................................8

*In re Blue Cross Blue Shield Antitrust Litig.*,
  No. 2:13-cv-20000, ECF No. 2641 (N.D. Ala. Nov. 30, 2020)...................3

*In re Old Bank One S'holders Sec. Litig.*,
  2007 WL 4592076 (N.D. Ill. Dec. 28, 2007), *aff'd sub nom. Larson v. JPMorgan Chase & Co.*, 530 F.3d 578 (7th Cir. 2008)..........................11

*Keith v. Daley*,
    764 F.2d 1265 (7th Cir. 1985) ............................................................6

*Ligas ex rel. Foster v. Maram*,
    478 F.3d 771 (7th Cir. 2007) ............................................................14

*Meridian Homes Corp. v. Nicholas W. Prassas & Co.*,
    683 F.2d 201 (7th Cir. 1982) ......................................................11, 12

*Nat'l Ass'n for Advancement of Colored People v. New York*,
    413 U.S. 345 (1973) ..........................................................................8

*People Who Care v. Rockford Bd. of Educ.*,
    68 F.3d 172 (7th Cir. 1995) ..............................................................9

*Planned Parenthood of Wis., Inc. v. Kaul*,
    942 F.3d 793 (7th Cir. 2019) ............................................................6

*Ragsdale v. Turnock*,
    941 F.2d 501 (7th Cir. 1991) ......................................................8, 10

*Reid L. v. Ill. State Bd. of Educ.*,
    289 F.3d 1009 (7th Cir. 2002) ..........................................................5

*Security Insurance. Co. of Hartford v. Schipporeit, Inc.*,
    69 F.3d 1377 (7th Cir. 1995) ..........................................................12

*Senegal on behalf of a class v. JPMorgan Chase Bank, N.A.*,
    939 F.3d 878 (7th Cir. 2019) ............................................................7

*Sokaogon Chippewa Cmty v. Babbitt*,
    214 F.3d 941 (7th Cir. 2000) ............................................................7

*State v. City of Chicago*,
    912 F.3d 979 (7th Cir. 2019) ........................................................8, 9

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ..........................................................................6

*Vollmer v. Publishers Clearing House*,
    248 F.3d 698 (7th Cir. 2001) ..........................................................14

**Statutes, Rules & Regulations**

United States Code
    28 U.S.C. §1291 ................................................................................7

Federal Rules of Civil Procedure

24(a) ........................................................................................................................2, 7

24(a)(2) ...............................................................................................................1, 5, 6

24(b) ..........................................................................................................................14

24(b)(1) .......................................................................................................................7

24(b)(1)(B) ............................................................................................................7, 14

24(b)(3) .....................................................................................................................14

24(c) ............................................................................................................................6

Plaintiffs respectfully submit this opposition to the motion to intervene ("Motion") filed by the Blue Cross Blue Shield Health Plans and Health Care Services Corporation (collectively, the "Blues"). ECF No. 780.

## I. INTRODUCTION

Undeterred by the facts and controlling case law, the Blues seek to intervene in this Action, arguing that they have a purported interest in the Settlement, even though the Court has held that the Blues, in fact, have no such interest.[1] *See* ECF No. 768. Having brought their own litigation against Walgreens, the Blues are excluded from the Settlement Class and, therefore, lack standing to object or opt out of the Settlement. Nevertheless, the Blues baselessly assert that, in their role as third-party administrators ("TPAs"), they represent the interests of their 24,000+ Administrative Services Only ("ASO") clients, who are Settlement Class Members, and thus, are entitled to intervene in this Action. Yet, as with their failed attempt to opt out their ASO clients *en masse* from this Settlement, the Blues again provide no proof that they have the authority to act on behalf of each ASO entity, and thus, this Motion must be denied.

Intervention pursuant to Rule 24(a)(2) requires the movant to satisfy each of the four required criteria: (1) a timely motion; (2) an interest in the property or transaction that is the subject of the action; (3) potential impact to the movant's interest by the disposition of the lawsuit; and (4) lack of adequate representation by the existing parties. *See* Fed. R. Civ. P. 24(a)(2). The Blues fail to satisfy any of these four elements. As set forth below, the Blues have been aware of this Action and that the putative class includes the Blues' ASO clients since the Blues brought their own litigation against Walgreens in 2020, asserting the same claims and borrowing many of the facts and legal theories alleged in this Action. Thus, it is much too late to seek to intervene only

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Class Action Settlement. *See* ECF No. 683-1.

now at the very last moment. The Blues have no interest in the Settlement, as they are not Settlement Class Members. Unable to demonstrate any impact on their own litigation, the Blues claim that this Settlement impacts the rights of their ASO clients. Again, this argument fails for the same reasons it failed when the Blues attempted to opt out *en masse* the 24,000+ ASO entities in violation of the plain language of the Court's preliminary approval order and the opt-out requirements established therein. Lastly, the Blues did not, and cannot, show a lack of adequate representation by Class Counsel. In fact, unlike the Blues and their counsel, Class Counsel have secured $100 million Settlement to pay eligible Settlement Class Members, including the Blues' ASO clients. Having failed to establish any of the four elements required to intervene pursuant to Rule 24(a), the Blues' Motion must be denied.

## II.    FACTUAL BACKGROUND

Following more than seven years of hard-fought litigation and months of settlement negotiations (*see* ECF No. 683 ¶¶3-8), the Court granted preliminary approval to the Settlement on November 18, 2024. *See* ECF No. 689 ¶1. The Court preliminarily certified the Settlement Class, which includes individuals and entities, such as third-party payers ("TPPs"), and excluded from the Settlement Class those, such as the Blues, that are separately prosecuting lawsuits "against Walgreens relating to its determination of usual and customary prices in connection with the Prescription Savings Club . . . ." *Id.* ¶3; *see also* ECF No. 726-12 (listing the Blues as entities that have filed suit against Walgreens in connection with its usual and customary pricing).[2] Consistent with class-action standard practices and due process, the Preliminary Approval Order also explicitly prohibited "group or class-wide exclusions," and it clearly explained that a

---

[2]    The lawsuits involving the Blues, *BCBSM, Inc. v. Walgreen Co.*, No. 20-cv-1853 (N.D. Ill.) (hereinafter, "*BCBSM*") and *HCSC v. Walgreen Co.*, No. 2021L000621 (Ill. Cir. Ct., Cook Cnty.) (collectively, the "Blues' Actions"), were filed in 2020 and 2021, respectively.

Settlement Class Member's "purported authorized agent or representative" could opt out the Settlement Class Member only by "includ[ing] proof of the representative's legal authority and authorization to act . . . ." ECF No. 689 ¶14.[3]  As ordered by the Court, Settlement Class Members were notified of these requirements through a robust and comprehensive notice plan, commenced in December 2024.  *See* ECF No. 765 ¶¶5-19, 26-27.

In March 2025, the Blues, as TPAs, submitted requests for group exclusion of more than 24,000 of their ASO clients, who are Settlement Class Members.  *See* ECF No. 726 & Exs. 1-11 (filed under seal at ECF No. 721) (copies of *en masse* exclusion requests).  Those requests cited purportedly "standard ASO contract language" but did not attach any ASO contracts or include other competent proof of the Blues' legal authority and authorization to act on the ASO clients' behalf.  *See* ECF No. 724 at 3-4, 11-13.  Therefore, Plaintiffs moved to deny the Blues' exclusion requests, *see* ECF Nos. 723-724, and Walgreens agreed with Plaintiffs' motion, *see* ECF No. 728.  The Blues opposed, arguing that the Preliminary Approval Order violated their ASO clients' rights to due process by interfering with their contractual expectations and imposing undue burdens while prejudicing them with respect to the related Blues' Actions.  *See* ECF No. 755 at 7-14.

The Court denied the Blues' exclusion requests on August 7, 2025.  *See* ECF No. 768.  In its order, the Court held that the requests did "not comply with the preliminary-approval order," *id*. at 8, and that "a rejection of the [Blues'] *en masse* exclusion requests does not run afoul of due process," *id*. at 13.  The Court unequivocally ruled that the Blues are not Settlement Class Members and thus "lack standing to object to the settlement."  *Id*. at 13-16.  The Court held that "because

---

[3]     Notably, the Blues, as defendants in a different class lawsuit, required—and the Northern District of Alabama approved—the same opt-out requirements as those they object to here.  *See In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000, ECF No. 2641, at 63 ¶18(c) (N.D. Ala. Nov. 30, 2020) (order preliminarily approving settlement requiring individual signatures from each class member desiring to opt out and prohibiting "submissions signed solely by an individual's or business's lawyer," thereby similarly rejecting *en masse* opt outs).

[the Blues] are not members of the Settlement Class due to their pending litigation against Walgreens, there can be no finding that this settlement will impede their ability to assert their own claims against Walgreens." *Id*. at 15. The Court explained that, for an exclusion request submitted by a purportedly authorized agent on behalf of a Settlement Class Member to be valid, the Preliminary Approval Order "required *proof* of legal authority," and stated, "in this case, that proof could have either come in the form of the actual signed contracts themselves or declarations from the ASO clients affirming their consent—but [the Blues] did not [include such proof]." *Id*. at 9 (emphasis in original). The Court remarked that the Blues' contention that they have contractual authority to pursue claims on behalf of their ASO clients "is called further into doubt by the fact that some of the ASO clients included in the mass opt-out requests have separately self-filed claims for recovery in this Settlement." *Id*. at 10. The Court also commented that "the fact that the [Blues] have had to contact the settlement administrator several times to note that they 'inadvertently included' certain ASO clients in their opt-out requests that 'should not be opted out' of the Settlement further underscores the risk that the Court's acceptance of the *en masse* opt-out requests would result in class members being erroneously stripped of their right to recover in this case." *Id*. at 13. The Court stressed that "[t]he operative question is not whether the [the *Blues*] desire to opt out on behalf of their ASO clients; it is whether the *ASO clients*—the Settlement Class Members—desire it. Again, there is no record evidence of that desire for any of the ASO clients in the requests . . . ." *Id*. at 10-11 (emphasis in original). The Court then held that "[a]ny argument that [the Blues] had a cognizable legal interest in opting out on behalf of their ASO clients also falls short: the opt-out procedures do not forbid opts outs on behalf of others – it forbids deficient, *en masse* opt outs on behalf of others in the absence of proof of authorization to do so." *Id*. at 15.

More than a month later, and two days before the final fairness hearing, the Blues filed a motion to reconsider the order denying the Blues' exclusion requests. *See* ECF No. 772. The Court described the "timing of the motion's filing" as "less than ideal." ECF No. 778. While their motion to reconsider is still pending, the Blues moved to intervene on September 19, 2025. *See* ECF No. 780. The Court remarked that "it is not clear why the motion comes so late in the proceedings." ECF No. 785. Indeed, the Motion is filed at the last moment in this case: (i) one and a half months after the Court denied the Blues' exclusion requests (ECF No. 768); (ii) ten and a half months after Plaintiffs moved for preliminary approval of the Settlement on behalf of the Settlement Class, which includes TPPs, like the Blues' ASO clients (ECF No. 681), and then were notified of the required opt-out procedure through a robust notice program that the Blues *chose* to ignore; (iii) nearly three years after Plaintiffs moved for class certification of classes that include TPPs, like the Blues' ASO clients (ECF No. 554); and (iv) more than five years after the Blues filed *BCBSM*, admitting that this Action was brought on behalf of a putative class of TPPs and insured consumers.[4]

## III.   LEGAL STANDARD

To intervene as a matter of right under Rule 24(a)(2), a proposed intervenor must satisfy four elements: "(1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties." *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002). "The burden is on the party seeking to intervene of right to show that all four criteria are met." *Id.* Importantly, a proposed intervenor "without standing cannot

---

[4]     *See BCBSM*, ECF No. 1 ¶33 (acknowledging that this Action was brought on behalf of a "putative nationwide class of third-party payors and insured consumers" and that this Action and *BCBSM* "share a similar factual and legal nexus").

intervene as of right . . . ." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 798 (7th Cir. 2019). The failure to prove even one of these criteria requires denial of an intervention motion. *Am. Nat'l Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 148 (7th Cir. 1989); *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985); *see also Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 447 F. Supp. 3d 672, 691 (N.D. Ill. 2020) (Chang, J.). As discussed below, as non-members of the Settlement Class, the Blues lack standing to pursue the relief they seek and fail to establish any of the four criteria under Rule 24(a)(2). Thus, the Court must deny the Motion.

## IV. ARGUMENT

### A. Several Jurisdictional Deficiencies Require That the Motion Be Denied

At the outset, there are several jurisdictional deficiencies that require the Court to deny the Motion. Notably, the Blues have failed to satisfy Rule 24(c)'s requirement that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which the intervention is sought." Fed. R. Civ. P. 24(c). As this Court has recognized, without a complaint in intervention, it is difficult to ascertain the nature of the purportedly protectable interest the Blues contend they have or even whether the Blues have satisfied the Article III injury or complete diversity requirements for the Court's subject matter jurisdiction.[5] *See Hankins*, 447 F. Supp. 3d at 692. Specifically, "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing. That includes cases in which both the plaintiff and the intervenor seek separate money judgments in their own names." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017); *cf. Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571, 573 (7th Cir. 2009) (discussing that standing is required for both intervention

---

[5] Indeed, movant Health Care Services Corporation and Walgreens are both citizens of Illinois. *See* ECF No. 725-2 ¶¶11-12.

types).[6]  In addition, "only a party aggrieved by a judgment or order of a district court may exercise

the statutory right to appeal therefrom [pursuant to 28 U.S.C. §1291]."  *Deposit Guar. Nat. Bank,*

*Jackson, Miss. v. Roper*, 445 U.S. 326, 333 (1980).

Here, the Blues undoubtedly seek a separate money judgment in their own name, given

their parallel copycat lawsuits, and their interests diverge from Plaintiffs because they seek "to

appeal to overturn [the] settlement . . . ."  *See* ECF No. 782 ("Mem.") at 6.   The Court already

held that the Blues do not have standing to object to or opt out of the Settlement.  *See* ECF No.

768 at 13-16.   The Court specifically held that "because [the Blues] are not members of the

Settlement Class due to their pending litigation against Walgreens, there can be no finding that

this settlement will impede their ability to assert their own claims against Walgreens" and that the

Blues had no "cognizable legal interest in opting out on behalf of their ASO clients" and lacked

standing to object on their behalf given the absence of proof that the Blues had authority to do so.

*Id*. at 15.[7]  Accordingly, since they are not aggrieved by this Settlement, the Blues have no standing

to intervene or pursue the appellate relief they seek.  *Cf. Senegal on behalf of a class v. JPMorgan*

*Chase Bank, N.A.*, 939 F.3d 878, 882 (7th Cir. 2019) (class members who opted out of class action

were not aggrieved by, and thus could not appeal, district court's final approval decision).   For

these jurisdictional shortcomings, the Motion may be denied.  *Hankins*, 447 F. Supp. 3d at 692.

### B.     The Motion Is Untimely and Should Be Denied

A motion to intervene, whether under Rule 24(a) or Rule 24(b)(1)(B), must be made "[o]n

timely motion."  Fed. R. Civ. P. 24(a); Fed. R. Civ. P. 24(b)(1); *see also Sokaogon Chippewa Cmty*

---

[6]     "The plain language of  Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."  *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).

[7]     "Cases involving non-class members' attempts to intervene and/or object to settlements are few, and the courts usually reject the outsiders' attempts to enter the litigation during the settlement phase."  *Gould*, 883 F.2d at 285.

*v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). "Timeliness is to be determined from all the circumstances." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973). Such a determination is committed to the sound discretion of the district judge. *Id*. In assessing the totality of the circumstances, a district court should consider four factors: "(1) the length of time the intervenor knew or should have known of his or her interest in this case, (2) the prejudice to the original party caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances." *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991). Timeliness is measured "from when the applicant has reason to know its interests might be adversely affected, not from when it knows for certain that they will be." *State v. City of Chicago*, 912 F.3d 979, 985 (7th Cir. 2019); *see also Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) ("The relevant inquiry in determining timeliness, however, is not on the time between the settlement and the motion to intervene, but instead is on the time between the [movant's] knowledge that the suit could impact their interests and the motion to intervene."). The Blues failed to demonstrate that the Motion is timely, and thus, the Court should deny the Motion.[8]

### 1. The Blues Should Have Known This Case Might Affect Their Interests as Early as 2020

The Blues argue that their Motion is timely because their "interest in this case first emerged on June 26, 2025, when Plaintiffs moved to invalidate their exclusion requests" and "[t]the earliest the Plans' need to intervene became apparent [on September 10, 2025], when the Court's partial denial of their request for remote participation at the final approval hearing highlighted the Plans' limited rights in this case." Mem. at 5. This argument fails. First, the test is not when the movant

---

[8] The Blues do not claim that any unusual circumstances exist (*see* Mem. at 5), and so, Plaintiffs will address only the first three factors related to the timeliness inquiry.

"knows for certain" that its interests "will be" affected, but when it "has reason to know its interests *might* be adversely affected . . . ." *State*, 912 F.3d at 985 (emphasis in original). Second, the Blues overlook the fact that they have been aware that this Action seeks to represent a nationwide class of TPPs, such as the Blues' ASO clients, since at least 2020, when the Blues filed *BCBSM*. *See BCBSM*, ECF No. 1 ¶33 (acknowledging that this Action was brought on behalf of a "putative nationwide class of third-party payors and insured consumers"). Thus, it is readily apparent that the Blues should have known that their ASO clients' interests might be adversely affected when they took action to protect their own interests and filed a copycat lawsuit in 2020. The Blues could have filed the Blues' Actions on behalf of their ASO clients, but they did not. *See* ECF No. 783 at 9; *see also* ECF No. 784 at 10-11. Minimally, the Blues had reason to know that their ASO clients' interests were potentially affected when Plaintiffs filed their motion for class certification, confirming that the class definition included "[a]ll persons, or entities, for whom prescription drug insurance benefits were provided through the Relevant PBMs . . . and who paid or reimbursed, in whole or in part, for generic prescription drugs from Walgreen Co. . . . " in 2022. ECF No. 554 at 1-2. In short, the Blues should have been aware that their ASO clients' claims are a part of this lawsuit, and they should have sought to intervene when they filed their own complaints. *See CE Design Ltd. v. King Supply Co.*, 791 F.3d 722, 726 (7th Cir. 2015) (affirming that the intervention motion was untimely because movants had reason to believe from the time the action was filed that the class action could adversely affect their interests); *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175-76 (7th Cir. 1995) (affirming motion to intervene was untimely where movant waited three years from the time he was aware of his interest to file motion). Instead, the Blues waited until the last possible moment to seek intervention, nearly a year after this Settlement was first publicly disclosed—and more than five years after the Blues filed *BCBSM*, which admits

knowledge of this Action and the TPP class members on whose behalf it was brought. As such, this Motion is untimely and must be denied. *See Ragsdale*, 941 F.2d at 504 (motion to intervene after a settlement has been entered not considered timely); *Gould*, 883 F.2d at 286 (affirming intervention motion was untimely where case was extensively litigated for two years and the intervention motion was filed "at the last possible moment," three and a half months after the settlement proposal was presented to the court).

## 2. The Parties Will Be Prejudiced by the Delay Intervention Will Cause

The Blues argue that the Parties "are completely unaffected by the timing of the" Motion because the Motion will not delay the appeal it intends to bring since the Court has not entered the final approval order and judgment. Mem. at 5. This argument misses its mark. The Settlement provides that "[n]o disbursements shall be made to Settlement Class Members until the Effective Date," which does not occur until the Judgment is Final and Non-Appealable. ECF No. 683-1 ¶¶1.12, 1.17, 2.1. The Parties and the Settlement Class, *of course*, will be prejudiced given that the filing of any appeal—especially a meritless one that the Blues have no standing to bring—will significantly delay the distribution of proceeds from this Settlement to members of the Settlement Class.[9] *See Ragsdale*, 941 F.2d at 504 ("Once parties have invested time and effort into settling a case it would be prejudicial to allow intervention."). Moreover, if the Blues are successful in their intervention and appeal of the final approval of the Settlement and order denying their exclusions requests, they could cause the Settlement to terminate, resulting in no payments to Settlement Class Members, including their own purported ASO clients.

---

[9] The Blues' cited case, *Aguilar v. Walgreen Co*., 47 F.4th 1115, 1121 (9th Cir. 2022), discussed whether it was proper to appeal an order invalidating opt outs after the entry of final judgment, not whether any party is prejudiced by an appeal of such an order.

### 3. The Blues Will Suffer No Prejudice

The Blues argue that, if this Motion is denied, "they will be prejudiced by being unable to appeal the invalidation of their exclusion requests—which would cause tens of millions of dollars of harm to the Plans and their ASO customers." Mem. at 5. Again, the Blues conflate the requirement to show prejudice to themselves with the purported prejudice to the ASO entities who can participate in the Settlement.[10] The Court already held that the Blues have no standing because *they* are not absent members of the Settlement Class, and they failed to provide sufficient evidence to establish their authority to act on behalf of their ASO clients, who are absent Settlement Class Members. *See* ECF No. 768 at 13-16. As such, the Blues cannot suffer any prejudice if this Motion is denied since the interest they purportedly seek to protect doesn't exist. *See In re Old Bank One S'holders Sec. Litig.*, 2007 WL 4592076, at *3 (N.D. Ill. Dec. 28, 2007), *aff'd sub nom. Larson v. JPMorgan Chase & Co.*, 530 F.3d 578 (7th Cir. 2008) (finding delayed intervention motion would not prejudice the movant because "it has no standing to appeal in the first instance").

### C. The Blues Fail to Satisfy the Remaining Intervention as of Right Criteria

#### 1. The Blues Do Not Have Any Interest in the Subject Matter of This Action That Will Potentially Be Impaired

The Blues do not have an interest in the subject matter of this action that will be potentially impaired. The "interest" asserted must be "direct and concrete" and "accorded some degree of legal protection." *Diamond v. Charles*, 476 U.S. 54, 75 (1986). The Seventh Circuit advises that the interest must be direct and substantial. *See Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982). Similarly, "'impairment' depends on whether the decision

---

[10] Although the Blues claim that the Settlement causes harm to the ASO entities, it is the Blues' and their counsel's actions that will cause harm. The Blues' ASO entities stand to obtain a certain monetary recovery by participating in the Settlement, whereas the Blues' Actions will provide nothing to these ASO entities and could potentially preclude them from ever obtaining any monetary relief.

of a legal question involved in the action would . . . foreclose rights of the proposed intervenors in a subsequent proceeding." *Id*. Whether an interest sufficient to warrant intervention as a matter of right exists is a highly fact-specific determination, making comparison to other cases of limited value. *Security Insurance. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995).

At this stage, the subject matter of this action is the $100 million Settlement. The Blues claim an "interest" in their ASO clients' recoveries because they are purportedly "contractually authorized" to pursue their ASO clients' claims against Walgreens. *See* Mem. at 5-6. As the Court already held, the Blues have no such interests. *See* ECF No. 768 at 13-16. In denying the Blues' exclusion requests, the Court held the Blues have no "cognizable legal interest in opting out on behalf of their ASO clients" and lack standing to object to the Settlement on their behalf, given the absence of proof that the Blues had authority to do so. *Id*. at 15-16. The Blues provide no new proof with this Motion. Moreover, as Walgreens recently explained, "the [Blues] utterly failed to plead *any* predicate facts necessary to make out the ASO clients' claims in [the Blues' Actions], and . . . those cases are far too advanced for the [Blues] to now inject thousands of new plaintiffs and a whole new theory of recovery." ECF No. 783 at 9; *see also* ECF No. 784 at 10-11.

The Second Circuit rejected this same argument that the Blues raise here as a basis for intervention as of right. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) (hereinafter, "*Central States*"). There, non-party CareFirst Blue Cross Blue Shield ("CareFirst"), a TPA (like the Blues here) that provides insurance and administrative services to insured and self-funded health plans, "filed a motion to intervene in order to argue that the opt-out provisions of the Class Notice should include the right of a health benefit payor to opt out of the settlement class, and to challenge certification of the [settlement] class in the event that its opt-out were deemed ineffective." *Id*. at 238. Essentially,

CareFirst sought to exclusion from the settlement both as the insurer and the TPA of the health plans it administered.

CareFirst argued, like the Blues do here, that it was entitled to intervene because the settlement prevented it from acting under contract to "'pursue overpayment of benefits'" on behalf of the plans it administered because "'[i]nsurers and TPAs were specifically carved from the class, yet the plans they insured and administered were included [in the class].'" *Id.* (alteration in original). CareFirst asserted that its claims against the defendant in separate litigation "could be improperly released by the Settlement Agreement if CareFirst were denied an opportunity to opt out the claims of its insured and self-funded Plans." *Id.* Denying CareFirst's motion to intervene, the district court concluded "that the right to accept or reject the proposed settlement belonged to the [health plan] fiduciaries and not to TPAs, such as CareFirst." *Id.* The district court found that "'[b]ecause Care[F]irst is not a member of the [c]lass, and its rights will not be affected by the approval of the Settlement, Care[F]irst lacks standing to object on its own behalf and has failed to demonstrate that it has authority to act for a [P]lan in opting out.'" *Id.* (alterations in original). The Second Circuit affirmed, explaining "CareFirst lacks the authority to opt out the claims of the Plans that it administers or object to the settlement on their behalf." *Id.* at 243.

*Central States* is on all fours with this case. The Settlement does not release the Blues' direct claims against Walgreens, and because the right to participate (or not) in the proposed Settlement belongs to the ASO entities, *not* the Blues as TPAs, the Blues lack standing to object or opt out the ASO entities from the Settlement unless they presented evidence of their authority to do so, which the Court held that the Blues have failed to provide. Thus, the Blues have failed to establish that they have a legitimate interest in this Settlement that would be potentially impaired if the action were resolved without their intervention.

### 2. The Blues Fail to Demonstrate that the Interests at Issue Are Not Adequately Represented

The Blues do not even attempt to show that the *ASO entities*' interests were not adequately represented. Instead, the Blues claim that *their own* interests are not adequately represented because the Parties "are not going to appeal to overturn a settlement into which they voluntarily entered." Mem. at 6. This is not a basis for intervention and does not demonstrate inadequate representation by Class Counsel. The Blues cannot argue that their interests are not adequately protected, as they are not members of the Settlement Class, are not represented by Class Counsel, and have filed lawsuits against Walgreens seeking damages for their own claims. Moreover, the Blues present no facts or evidence that Class Counsel, in obtaining this $100 million Settlement, have acted contrary to the Settlement Class's interests. *See Hankins*, 447 F. Supp. 3d at 692 (movant failed to demonstrate plaintiff would not adequately represent interests).

### D. The Blues Also Are Not Entitled to Permissive Intervention

In a footnote, the Blues claim that they should be granted permissive intervention under Rule 24(b). "Permissive intervention is within the discretion of the district court where the applicant's claim and the main action share common issues of law or fact and where there is independent jurisdiction." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 775 (7th Cir. 2007). Further, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also Vollmer v. Publishers Clearing House*, 248 F.3d 698, 706-07 (7th Cir. 2001). Here, the Blues' Motion is untimely and would cause prejudice and undue delay.

The Blues wrongly claim that they are entitled to permissive intervention because "they have a 'claim or defense that shares with the main action a common question of law or fact.'" Mem. at 4 n.5 (quoting Fed. R. Civ. P. 24(b)(1)(B)). The Blues contend that they "have asserted

claims in the [Blues' Actions] that include the claims that would be released by the settlement in this case." *Id*. (citing ECF No. 756 ¶¶3–5). This statement is false and misleading. The Blues know they are excluded from the Settlement Class and that their claims are entirely unaffected by this Settlement. Moreover, to the extent that the Blues claim to have brought claims on behalf of their ASO clients in their parallel lawsuits, they have failed to provide evidence to support this claim. *See* ECF No. 783 at 9; *see also* ECF No. 784 at 10-11. Furthermore, to allow the Blues to permissively intervene for the sole purpose of lodging an appeal to disrupt this Settlement, where the Blues are not even members of the Settlement Class and have failed to support that they represent Settlement Class Members, unquestionably would unduly delay and prejudice the Parties' rights. The Blues have failed to demonstrate that they are aggrieved by any aspect of this Settlement. The Parties, meanwhile, engaged in more than seven years of hard-fought litigation and months of negotiations to achieve a $100 million Settlement that the Parties believe is in the best interests of the Settlement Class. The Blues have been aware of this Action since the time they filed their own case in 2020. Any delay in the distribution of settlement funds for an unfounded appeal is undue and prejudicial to the Parties and Settlement Class. Thus, the Court must deny the Blues' cursory and unsubstantiated request for permissive intervention.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion.

DATED: October 1, 2025             Respectfully submitted,

                                                   *s/*  Joseph P. Guglielmo
                                                   Joseph P. Guglielmo (IL Bar #2759819)
                                                   **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                                   The Helmsley Building
                                                   230 Park Avenue, 24th Floor
                                                   New York, NY 10169
                                                   Telephone: 212-223-4478
                                                   Facsimile: 212-233-6334
                                                   jguglielmo@scott-scott.com

Erin Green Comite (IL Bar #420630)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-531-2632
Facsimile: 860-537-4432
ecomite@scott-scott.com

David W. Mitchell (IL Bar # 199706)
Arthur L. Shingler III (IL Bar # 181719)
**ROBBINS GELLER RUDMAN   & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
Facsimile: 619-231-7423
davidm@rgrdlaw.com
ashingler@rgrdlaw.com

Paul J. Geller
Mark J. Dearman (*pro hac vice*)
Stuart A. Davidson (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: 561-750-3000
Facsimile:   561-750-3364
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com

***Class Counsel***