**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **CYNTHIA RUSSO, LISA BULLARD, RICARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, and STEAMFITTERS FUND LOCAL 439**, *On Behalf of Themselves and All Others Similarly Situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**WALGREEN CO.**,<br><br>*Defendant*. | Case No. 1:17-cv-02246<br><br><u>CLASS ACTION</u><br><br>Honorable Edmond E. Chang |

**WALGREENS' OPPOSITION TO THE BLUE CROSS INSURERS'
<u>MOTION TO INTERVENE</u>**

Having watched this case from the sidelines for the better part of a decade, here at the very end, the Insurers suddenly ask the Court to allow them to intervene as parties.[1] They do so:

- More than eight years after this case was filed, ECF No. 1;
- Nearly three years after the class definition was amended to exclude the Insurers, ECF No. 555 at 3 n.1;
- Almost eleven months after the parties submitted a proposed settlement order prohibiting "group or class-wide exclusions" and requiring "any request for exclusion by a purported authorized agent or representative of a Class member" to "include proof of the representative's legal authority and authorization to act," ECF No. 683-3, ¶ 14;
- Ten months after the Court adopted that proposed opt-out procedure, ECF No. 689, ¶ 14;
- Six months after the Insurers complained in their requests to exclude their purported ASO clients from the settlement class that the "opt-out procedures . . . interfere[d] with [their] contractual right[s] to pursue recovery of overpayment on behalf of [those] ASO clients," *e.g.*, ECF No. 726, Exh. 1 at 1;
- Two months after the Insurers opposed Plaintiffs' motion to deny the exclusion requests, ECF No. 755;
- A month after the Court granted Plaintiffs' motion, *see* ECF No. 768;
- Nearly two weeks after the Insurers filed a perfunctory motion to reconsider the Court's Order, ECF No. 772; and
- More than a week after the Court held the final fairness hearing, ECF No. 779.

The Insurers blithely portray their Motion as a "purely formalistic request," Mot. at 3, but it is anything but that. Granting the Motion at this stage would fundamentally disrupt this years-long litigation. Indeed, considering this case's history, the Court already correctly observed that "***it is not clear why the motion comes so late in the proceedings.***" ECF No. 785 (emphasis added). But the Insurers' Motion is not only untimely. They also failed to attach the separate pleading that the Federal Rules require; identified no interest in this case that satisfies Federal Rule of Civil

---

[1] "Motion" or "Mot." refers to the Insurers' Memorandum in Support of Their Motion to Intervene, ECF No. 782. "Order" refers to the Memorandum Opinion & Order entered on August 7, 2025, ECF No. 768. Capitalized terms undefined in this brief have the meanings ascribed in Walgreens' Response to Plaintiffs' Motion to Deny Exclusion Requests & Overrule Objections to the Opt-Out Procedure, ECF No. 728.

1

Procedure 24; and added a throwaway request for permissive intervention—in a footnote—that is wholly undeveloped and thus fails. For all of these reasons, the Court should deny the Motion.

**I.      BACKGROUND**

The Insurers first became involved in this case in March 2017. *Contra* Mot. at 2. On March 23, 2017, Plaintiffs filed a Class Action Complaint. ECF No. 1. That Complaint alleged that the proposed class included all "entities . . . who . . . purchased and/or paid for some or all of the purchase price for generic prescription drugs that Walgreens included in its Prescription Savings Club . . . for consumption by . . . their . . . insureds," *id.* ¶ 83—a definition that plainly included the Insurers. Indeed, beginning in March 2020, the Insurers—represented by the same counsel that represent them here—invoked their membership in the proposed class to try to toll the statute of limitations in the Insurer Actions. *E.g.*, ECF No. 729, Exh. 1, ¶¶ 33, 97; ECF No. 725-2, ¶¶ 21, 81.

On November 17, 2022, Plaintiffs moved to certify a class. *See* ECF No. 555. In that public filing, Plaintiffs excluded the Insurers from the proposed class. *Id.* at 3 n.1 (carving out from the class "all individuals and entities . . . that have sued . . . Walgreen Co. relating to its determination of usual and customary prices in connection with the Prescription Savings Club"). Two years later, on November 1, 2024, Plaintiffs and Walgreens filed a motion to preliminarily approve a settlement. *See* ECF No. 681. The proposed order that the parties filed with that motion established the opt-out procedures the Court ultimately adopted: "group or class-wide exclusions" were "not permitted," and "any request for exclusion by a purported authorized agent or representative of a Class Member" was required to "include proof of the representative's legal authority and authorization to act." ECF No. 683-3, ¶ 14 (proposed order); ECF No. 689, ¶ 14 (Preliminary Approval Order).

In March 2025, the Insurers objected to that opt-out procedure in letters to the Settlement Administrator. *See, e.g.*, ECF No. 726, Exh. 1. But the Insurers filed no objections in this Court,

nor did they intervene to protect their supposed contract rights. In June 2025, Plaintiffs moved to deny the Insurers' exclusion requests. *See* ECF No. 722. The Court set a briefing schedule on Plaintiffs' invalidation motion, but it did not limit or otherwise comment on any other rights the Insurers had under the Federal Rules. ECF No. 727. On July 15, 2025, having filed appearances, motions to appear *pro hac vice*, and Notifications of Affiliates pursuant to Local Rule 3.2, *see, e.g.*, ECF Nos. 730-47, the Insurers responded to the Plaintiffs' motion, arguing that, if the Court enforced the opt-out procedures as written, it would deprive the Insurers of their due process rights. *See* ECF No. 755. The Insurers did not move to intervene or seek to be added as parties to the case.

On August 7, 2025, the Court confirmed that the opt-out procedures it established in November 2024 meant what they said. *See* ECF No. 768. In its Order denying the Insurers' exclusion requests, the Court held that the Insurers had failed to comply with the opt-out procedures and that requiring the Insurers to comply with those procedures did not violate their due process rights. *See id.* The Insurers moved to reconsider the Court's Order on September 8, 2025, *see* ECF No. 772, and asked to participate remotely in the long-scheduled in-person final fairness hearing, *see* ECF No. 777, but they did not move to intervene or ask to be added as parties. The Court held the final fairness hearing on September 10, 2025, and took the parties' motion for final approval of the proposed settlement under advisement. *See* ECF No. 779. Nine days later, the Insurers finally moved to intervene. *See* ECF No. 780.

## II. ARGUMENT

### A. The Insurers Failed to Comply with Rule 24(c); the Court Can Deny the Motion for that Reason Alone.

Under Federal Rule of Civil Procedure 24(c), every motion to intervene "must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The Insurers failed to comply with that "unambiguous . . . procedure."

3

*Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987). The Insurers filed a Memorandum in Support of their Motion, *see* Dkt. 782, but a memorandum is not a pleading, *see* Fed. R. Civ. P. 7(a). Although "[s]ome leniency is available under the Rule, [ ] **total dereliction of the Rule warrants dismissal of the motion**." *F.T.C. v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 606 (N.D. Ill. 2001) (emphasis added). The Insurers' disregard for the Federal Rules thus dooms their Motion. *See Perez v. J.A.S. Granite & Tile, LLC*, 2013 WL 1632055, at *2 (N.D. Ill. Apr. 16, 2013) ("The failure to file a pleading is fatal to a motion to intervene."); *Shevlin*, 809 F.2d at 450 (affirming dismissal over intervenor's objection because intervenor failed to comply with Rule 24(c); "[l]awsuits cannot be tried merely on memoranda").

That is especially true because the Insurers waited far too long to intervene, then filed only a barebones brief that fails to clearly articulate what supposed interest the Insurers seek to protect. Indeed, on a single page of their Motion, the Insurers vacillate between purporting to protect their **own** contractual rights to opt out the ASO clients and purporting to protect their interest in the **ASO clients'** fanciful rights to "tens of millions of dollars" in the Insurer Actions. *See* Mot. at 5. And with no pleading to clarify which claims or defenses the Insurers intend to assert, Walgreens, Plaintiffs, and the Court are forced to guess what relief the Insurers seek—or whether they even have Article III standing to request it. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017) ("an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing"). "Accepting [the Insurers'] motion without the required pleading could [thus] cause unfair prejudice because its stated reasons for intervention are unreliable and largely inapplicable." *In re Testosterone Replacement Therapy Products Liability Litig.*, 2018 WL 5884519, at *6 (N.D. Ill. Nov. 8, 2018). And although the Insurers aver that the "only action [they] intend to take based on their intervention is appealing" the Court's Order, Mot. at 5, they have filed no pleading that clearly sets out and, most critically,

4

*locks in* the reasons for which they want to intervene. Thus, the Insurers could try to switch the grounds for their intervention or challenges to the settlement procedures later on, further prejudicing the parties and disrupting the proceedings. *See Testosterone Litig.*, 2018 WL 5884519, at \*6 (refusing to grant intervention without the required Rule 24(c) pleading because the intervenors "could move the goalpost again"). Because the Insurers have "had more than enough time to prepare a complaint," it would thus be inappropriate to "waive [Rule 24(c)'s] pleading requirement in the circumstances presented here." *Id.*

### B. The Insurers' Motion Comes Far Too Late.

The Insurers' Motion also fails under Rule 24's substantive provisions. As the Court already recognized, "it is not clear why the motion [to intervene] comes so late in the proceedings." ECF No. 785. The Insurers have had actual knowledge about this case for nearly a decade, *see, e.g.*, ECF No. 729, Exh. 1, ¶ 33, and they should have known that their interests could diverge from Plaintiffs' interests since at least November 2022, when Plaintiffs moved to certify a class excluding the Insurers, *see* ECF No. 555 at 3 n.1. At the very latest, the Insurers should have known that they would be unable to opt out their ASO clients on a class-wide basis without individualized proof of their legal authority and authorization in November 2024, when the parties proposed the settlement setting those requirements and the Court enacted them. *See* ECF No. 683-3, ¶ 14 (motion); ECF No. 689, ¶ 14 (Preliminary Approval Order). "A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests *might* be adversely affected by the outcome of the litigation." *State v. City of Chicago*, 912 F.3d 979, 985 (7th Cir. 2019) (cleaned up, emphasis in original). By waiting nearly eleven months after the parties proposed the individualized opt-out process to move to intervene, the Insurers missed their chance. *See, e.g.*, *id.* (nine-month delay "rendered[ed] the motion [to intervene] untimely"); *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2002) ("[e]ven if we were to consider [ ] ten

months to be the only relevant delay, we could find no error in the district court's determination" that motion to intervene was untimely); *Testosterone Litig.*, 2018 WL 5884519, at *4 (motion to intervene untimely when movant "delayed its motion to intervene for a minimum of three months, and arguably for more than four years"); *Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 730 (N.D. Ill. 2017) (delay of "only a few months" to intervene "unwarranted").[2]

Remarkably, in an attempt to explain away their extreme delay, the Insurers blame the Court. The Insurers say they had no reason to intervene until September 9, 2025, because that is when the Court "limited the Plans to mere observer status at the final approval hearing," which for the first time "highlighted the Plans' limited rights in this case." Mot. at 3, 5 (citing ECF No. 777). But this argument misses the mark. To start, the Insurers plainly misunderstand the Court's Minute Order. The Court denied a single lawyer's request to participate *remotely* in an in-person September 2025 hearing that had been scheduled since November 2024. *See* ECF Nos. 688, 777. The Court did not prohibit anyone from participating *in person*. The Insurers' decision to remotely observe the hearing also did not limit their right to be heard on the settlement. The Court took the motion for final approval under advisement while the Insurers' opt out–related motions remain pending. *See* ECF No. 779. And even though the Insurers waited until just two days before the final fairness hearing to file their Motion for Reconsideration, the Court set a briefing schedule, giving them *a second* opportunity to be heard even though "the timing of the motion's filing [was], to say the least, less than ideal." ECF No. 778. The Court even set another status for October 9,

---

[2] The only two cases the Insurers cite to support their Motion's supposed timeliness are easily distinguishable. *See* Mot. at 4. In *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, 2015 WL 3962007, at *2 (N.D. Ill. June 25, 2015), the intervenor "filed its Motion [to intervene] roughly one month" after the complaint. The complaint in this case was filed in March 2017. *See* ECF No. 1. And in *Lopez-Aguilar v. Marion County Sheriff's Department*, 924 F.3d 375 (7th Cir. 2019), the intervenor filed its motion less than a month after it had actual notice of its potential interest. *See id.* at 389. Here, the Insurers had actual knowledge of their potential interests *at the absolute latest* in March 2025, when they articulated their objections to the opt-out procedure in their exclusion requests. *See, e.g.*, ECF No. 726, Exh. 1, at 1-2.

6

2025, at which the Insurers can appear. *See* ECF No. 779. Nor, prior to September 9, had the Court "ordered the Plans to participate in these proceedings without intervention," as the Insurers assert. Mot. at 5. The Rules always permitted the Insurers to timely move to intervene, and nothing in the Court's order calling for a response to the Plaintiffs' invalidation motion limited those rights.

Their misunderstanding of the Court's orders aside, the Insurers knew or should have known of their purported interest in this case long before September 9, 2025. Indeed, by March 2025, the Insurers sent exclusion requests to the claims administrator complaining about the exact same opt-out procedures and raising the exact same supposed due process concerns the Insurers now apparently intend to invoke in their potential appeal. *See, e.g.*, ECF No. 726, Exh. 1, at 1-2. But rather than intervene to protect those purported rights in March 2025, when they requested exclusion, or in June 2025, when the Court ordered them to respond to the Plaintiffs' motion to deny those requests, the Insurers consciously and knowingly chose to take their chances. In fact, the Insurers concede that, until September 9, "they had been able to participate in this dispute to the full extent they sought." Mot. at 3. Having intentionally watched from the sidelines for months, the Insurers cannot reset the clock on intervention now merely because their gamble failed to pay off. *See, e.g.*, *Chicago*, 912 F.3d at 985 (time to intervene started to run when proposed intervenor made public statements opposing tentative settlement); *Kostovetsky*, 242 F. Supp. 3d at 730 ("The decision to let discovery play out before seeking [to] interven[e] reflected a gamble by the lawyers . . . and such strategic judgments are indicative of undue delay.").

The other factors courts consider to evaluate timeliness, *see* Mot. at 4, also cut against the Insurers. Although the Insurers describe their Motion as "purely formalistic," Mot. at 3, allowing the Insurers to intervene now would significantly prejudice the parties and the proposed class by injecting new uncertainty into the settlement ***after*** the final fairness hearing occurred. "Once parties have invested time and effort into settling a case it would be prejudicial to allow

7

intervention," *Chicago*, 912 F.3d at 986-87 (cleaned up), and to "upset the progress made toward resolving this dispute," *Testosterone Litig.*, 2018 WL 5884519, at *3. And although the Insurers argue that, if they are unable to appeal, they will suffer "tens of millions of dollars of harm to the Plans and their ASO customers," Mot. at 5, the Insurers' asserted prejudice depends on the fundamentally uncertain outcome of the Insurer Actions generally and the ASO clients' purported but abandoned claims in those cases specifically. *See* ECF No. 728 at 2-5 (explaining that the Insurers did not assert any claims in the Insurer Actions on behalf of the ASO clients). In any event, if the Insurers "wanted a particular outcome in the litigation or settlement negotiations," they "should have moved to intervene when the lawsuit was filed, or at least once [they] learned" that their ASO clients' purported rights could be at risk. *Turney v. City of Mellen*, 344 F.R.D. 461, 467 (W.D. Wis. 2023). Because the Insurers chose to take their chances, their asserted prejudice is significantly diminished now. *See id.* Nor have the Insurers even suggested any "unusual circumstances" that would justify excusing their delay and prejudicing the parties and class members. *See id.* at 465. In short, the Motion is untimely, and the Court should deny it.

      **C.    The Insurers Have No Interest in the Case that Is Inadequately Protected or at Risk of Being Impaired.**

In their Motion, the Insurers fail to explain exactly what interest cognizable under Rule 24 they believe they have in this case. At times, the Insurers assert only their ***own*** purported contractual interests in controlling the ASO clients' opt out rights. *See* Mot. at 3, 5. Indeed, the "adverse decision" the Insurers have intervened to appeal, *id.* at 3, concerned only the Insurers' interests; it did not adjudicate any individual ASO client's properly submitted opt-out request. *See* Order at 10-13. At other times, however, the Insurers assert only their interest in ***the ASO clients'*** supposed rights to the hypothetical recovery in the Insurer Actions, *see* Mot. at 5—a hypothetical recovery in which the ASO clients will never share, *see* ECF No. 728 at 2-5 (explaining that ASO

8

clients have no claims in the Insurer Actions). The Insurers' lack of precision—made worse by their failure to comply with Rule 24(c), *see* Part II.A—is no accident; it allows the Insurers to opportunistically pick and choose how to frame their interest depending on which prong of Rule 24(a)(2) they are attempting to satisfy. But regardless of how the Insurers' purported interest is framed, the Insurers can articulate no interest related to this litigation that is inadequately protected by the existing parties or at risk of being impaired. *See* Fed. R. Civ. P. 24(a)(2).

To start with, the Insurers' supposed interest in their ASO clients' claims is insufficient. As they did in their Opposition to Plaintiffs' Motion to Deny the Exclusion Requests, ECF No. 755, and again in their Motion to Reconsider, ECF No. 774, the Insurers rely on bare legal conclusions unsupported by the record. Because "the Plans are contractually authorized to pursue [the ASO clients' claims against Walgreens] on their [ASO] clients' behalf" (the Insurers say), the Insurers have an interest in the ASO clients' potential recovery against Walgreens in the Insurer Actions. *See* Mot. at 5-6. To support the premise, however, the Insurers cite (Mot. at 5) only the same supposedly standard contract language that the Court already held failed to supply "proof of [the Insurers'] legal authority" over their ASO clients. Order at 9 (cleaned up). In other words, the Insurers ***still*** have not proved that they have any interest at all in any ASO's potential recovery. *Cf. Central States Se. & Sw. Areas Health & Welfare Fund v. Merk-Medco Managed Care, L.L.C.*, 504 F.3d 229, 243-44 (2d Cir. 2007) (affirming denial of Blue Cross insurer's motion to intervene in class action on ASO clients' behalf because the insurer "lack[ed] the authority to opt out the claims of the Plans that it administers or object to the settlement on their behalf").

And even if the Insurers had proved the purported interest in their ASO clients' recoveries, that interest would derive only ***from the ASO clients***, which are members of the class. As the Seventh Circuit recently reiterated, that sort of derivative interest cannot support a motion to intervene. *See Haymarket DuPage, LLC v. Village of Itasca*, 2025 WL 975668, at *2-3 (N.D. Ill.

9

Mar. 31, 2025) ("Intervention as of right is not a way to carry water on behalf of someone else. A shared interest with a party counts, but a derivative interest does not."). The Insurers' interest would also be entirely "contingent on uncertain events," *CE Design Ltd. v. King Supply Co.*, 791 F.3d 722, 726 (7th Cir. 2015)—that the ASO clients' speculative (and long-ago waived) recoveries in the Insurer Actions will somehow exceed their existing share of the settlement proceeds here. *See* ECF No. 728 at 2-5 (citing evidence demonstrating that Insurers have not pleaded claims on the ASO clients' behalf in the Insurer Actions). That kind of "mere betting interest in the outcome of a case" is likewise insufficient under Rule 24. *PMC Cas. Corp. v. Va. Surety Co., Inc.*, 2025 WL 1713555, at *8 (N.D. Ill. June 19, 2025) (cleaned up). Nor have the Insurers shown that the ASO clients' claims are inadequately represented. Plaintiffs' counsel in this case secured the ASO clients a guaranteed recovery, which the Insurers apparently intend to sacrifice for a wholly uncertain outcome in the Insurer Actions—a strategy Walgreens previously explained is primarily designed to benefit only the Insurers and their attorneys. *See, e.g.*, ECF No. 783 at 9 n.3.

The Insurers' purported interest in protecting their supposed contractual rights to opt out their ASO clients fares no better. *See* Mot. at 5-6. An interest can be "impair[ed]" in the context of Rule 24(a)(2) only if "the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Am. Nat. Bank & Trust Co. v. Chicago*, 865 F.2d 144, 147-48 (7th Cir. 1989). But nothing about the Court's Order denying the Insurers' *en masse* opt-out requests affects the Insurers' purported contractual rights to opt out their ASO clients in future class action litigations. Indeed, the Order made no ruling on the Insurers' supposed contract rights toward their ASO clients precisely because "none of the Insurers provided the actual governing contract for a single ASO client." Order at 8. Thus, if the Insurers comply with the opt out procedures set by the court in any future class action litigation,

10

nothing about the Order in this case will preclude the Insurers from exercising whatever contractual opt out rights they can validly assert in that future case.[3]

In a last-gasp attempt to show an interest under Rule 24, the Insurers argue that, before receiving reimbursement from their ASO clients, the Insurers initially paid for the transactions "at the core of this action." Mot. at 6. But that is just a repackaged version of the Insurers' argument that they have an interest in the ASO clients' hypothetical recoveries, and it fails for the same reasons. In any event, the Insurers' purported interest in this case based on an intermediary role in drug reimbursement transactions is a "mere economic interest" that is insufficient under Rule 24. *See Simon Bernstein Irrevocable Ins. Trust v. Heritage Union Life Ins. Co.*, 2014 WL 13111261, at *2 (N.D. Ill. Jan. 14, 2014) (quoting *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009)); *cf. BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 848-49 (N.D. Ill. 2021) (pharmacy benefit managers have no "interest" in drug transactions under Rule 19 despite intermediary role).

### D. The Insurers' Throwaway Request for Permissive Intervention Is Entirely Undeveloped and Doomed to Fail.

In a single footnote, the Insurers assert that, if the Court denies their motion to intervene as of right under Rule 24(a)(2), it should nonetheless allow permissive intervention under Rule

---

[3] To be sure, the Insurers also cannot assert any claims on behalf of the ASO clients in the Insurer Actions. But that is because of the Insurers' own previous litigation tactics, not because the Court's ruling in this case somehow impaired those rights' operation. As Walgreens explained, *see* ECF No. 728 at 2-5, 8-9, the Insurers never pleaded the ASO clients' claims in the Insurer Actions; breathed not a whisper of the ASO clients in the *BCBSM* Action and mentioned them only passingly in a footnote in Cook County; and for years have strenuously refused to provide discovery in the *BCBSM* Action about the relationship between the Insurers and the ASO clients, objecting to Walgreens' discovery requests and asserting that the ASO contracts are both irrelevant and unduly burdensome to find and produce. It is far too late for the Insurers to amend their pleadings in those cases now. Critically, the Insurers also certified in filings in this case that the ASO clients had not, in any other litigation, "sued . . . Walgreens relating to its determination of usual and customary prices in connection with the Prescription Savings Club." For those reasons, this Court held that the ASO clients are members of the Settlement Class, meaning that, by definition, the ASO clients have not brought claims against Walgreens in other forums related to usual and customary prices and the Prescription Savings Club. *See, e.g.*, Order at 15. That determination precludes the Insurers from arguing that they asserted any ASO clients' claims in the Insurer Actions—but it does not impair whatever contractual rights the Insurers' may or may not have to represent ASO clients in future litigation.

11

24(b)(1)(B). Mot. at 4 n.5. "In the Seventh Circuit, arguments raised only 'by a passing reference in a footnote' are deemed waived." *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 642 (N.D. Ill. 2022) (quoting *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989)). The Court can deny the Insurers' request for permissive intervention on that basis alone.

But the Insurers' throwaway request would also fail for at least two other independently sufficient reasons. First, "the timeliness of [a] motion to intervene" is a "common thread" for both intervention as of right and permissive intervention. *Cook Cnty., Ill. v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022). Because the Insurers' Motion comes far too late to intervene as of right under Rule 24(a)(2), it is also untimely under Rule 24(b)(1)(B). *See Turney*, 344 F.R.D. at 468 (denying both intervention as of right and permissive intervention based on same timeliness analysis). Second, permissive intervention requires an independent basis for exercising subject matter jurisdiction over the proposed intervenor's claim or defense. *E.g.*, *PMC Cas.*, 2025 WL 1713555, at *10-11; *U.S. E.E.O.C. v. Ill. Dept. of Emp't Sec.*, 6 F. Supp. 2d 784, 789-90 (N.D. Ill. 1998). The "relevant question" is whether the Court has "independent jurisdiction over the [Insurers'] challenge," not whether the Court has "jurisdiction over the underlying litigation." *Philips Med. Sys., Inc. v. Buan*, 2022 WL 16635551, at *3 (N.D. Ill. Nov. 2, 2022). Of course, because the Insurers entirely failed to comply with Rule 24(c)'s pleading requirement, they have not even attempted to articulate an independent basis for subject-matter jurisdiction—let alone what claims or defenses they propose to assert. *See* Part II.A. Nor could the Insurers conceivably identify any independent jurisdictional basis. This case raises no federal question,[4] *see* 28 U.S.C. § 1331, and HCSC, like Walgreens, is an Illinois citizen, *see* Dkt. 725-2 ¶ 11; Mot. at 2 n.3, depriving this Court of diversity jurisdiction.

---

[4] The Court already correctly held that, because the Insurers are not class members and have failed to prove any rights to object on the ASO clients' behalf, the ASO clients, not the Insurers, must raise any due process claims. *See* Order at 10-11, 15-16.

## III. CONCLUSION

For the above reasons, Walgreens respectfully requests that the Court deny the Motion.

Dated: October 1, 2025

Respectfully submitted,

By: */s/ Jeffrey J. Bushofsky*

Jeffrey J. Bushofsky
Timothy R. Farrell
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Timothy.Farrell@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendant Walgreen Co.*

## **CERTIFICATE OF SERVICE**

I, Charles D. Zagnoli, hereby certify that the foregoing document was electronically filed on October 1, 2025, and will be served electronically via the Court's ECF Notice system upon all registered counsel of record.

*/s/ Charles D. Zagnoli*
Charles D. Zagnoli
ROPES & GRAY LLP
191 North Wacker Dr.
32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5522
Charles.Zagnoli@ropesgray.com

*Attorney for Defendant Walgreen Co.*