# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CYNTHIA RUSSO, LISA BULLARD, RICHARDO GONZALES, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, and STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated, | Civil Action No. 1:17-cv-02246<br><br>CLASS ACTION<br><br>The Honorable Edmond E. Chang |
| Plaintiffs, | |
| v. | |
| WALGREEN CO., | |
| Defendant. | |

## BLUE CROSS AND BLUE SHIELD HEALTH PLANS AND HEALTH CARE SERVICE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE

Over the course of the 27 pages of briefing the Parties filed in opposition to the Plans[1] Motion to Intervene ("Motion," Dkt. No. 782), the Parties assert an interpretation of the federal rules that courts in this District routinely reject, conflicting theories of timeliness that no court has ever adopted, and a position on the Plans' interest that plainly assumes the Parties' own conclusion. Ultimately, the Parties' perspective is clear: they want this case over and done with, intervention opens the door to appellate review, and the Parties want to finalize the settlement without waiting

---

[1] This term has the same definition set forth in the Plans' motion. *See* Dkt. No. 780 at 2.

1

for that review. But the Parties' desire to avoid appellate accountability is not a basis to deny a motion to intervene.

Plaintiffs brought the Plans into this suit in June 2025 by moving to invalidate opt-out requests and objections the Plans had submitted. The Court then ordered the Plans to participate in that briefing, for practical purposes turning the Plans into intervenors as to that issue and obviating any need for the Plans to formally intervene at the time. Subsequently, the Court granted Plaintiffs' motion, the Plans moved for reconsideration, and the Plans were denied the opportunity to fully participate remotely in the final approval hearing. This is why the Plans bring this Motion now: to formalize their status solely to be able to appeal the resolution of Plaintiffs' motion to invalidate, if the Court's current order granting that motion remains in place. Despite the volume of the Parties' briefing in opposition, this remains a simple question of whether the Plans should be able to appeal an adverse ruling entered against them on a motion they were required by court order to address. The law says that the answer is yes, and the Plans' Motion should therefore be granted.

## I.      The Plans Complied with Rule 24(c) as It Is Interpreted in these Circumstances.

Federal Rule of Civil Procedure 24 calls for a "pleading that sets out the claim or defense for which intervention is sought." But here, the Plans do not seek to intervene for the purposes of asserting any claim or defense. Indeed, they seek the exact opposite: to have their ASO clients removed from this case altogether and to not have any claims for relief asserted at all. *See* Motion at 3, 5. There is therefore no complaint or answer that the Plans could include with their motion, because they do not seek to assert claims for relief against any party or to defend against a claim asserted. *See* Fed. R. Civ. 7 (defining pleadings as either complaints, answers, or replies to answers).

2

The Parties try to create a Catch-22 out of this, arguing that the lack of a pleading attached to and independent of the Plans' Motion itself requires dismissing the Motion to which no pleading could sensibly be attached. *See* Walgreens Opposition at 4, Dkt. No. 789 ("Wag. Opp."); Plaintiffs' Opposition at 6, Dkt. No. 787. The law, however, is not so paradoxical. Situations like the present—where a non-party seeks to intervene without pursuing a claim or defense—are common, and in those instances courts routinely apply a pragmatic and not-overly-technical interpretation of Rule 24(c). *See, e.g., Lippert v. Ghosh*, No. 10-cv-4603, 2023 WL 3267977, at *3 (N.D. Ill. May 4, 2023) (granting intervention and rejecting argument that intervenor's motion should be denied for failing to attach a pleading when intervenor sought not to assert claims, but only to modify a protective order to allow for discovery in a separate litigation); *Wildcat Enters., LLC v. Weber*, No. 11 C 4922, 2016 WL 8711474, at *6 (N.D. Ill. Mar. 4, 2016) ("[C]ourts have routinely declined to dismiss motions to intervene based on mere technical violations of Rule 24(c)[.]"); *U.S. v. Munster Med. Rsch. Found., Inc.*, No. 2:08-CV-350, 2016 WL 4607869, at *2 (N.D. Ind. Sept. 6, 2016) (finding "that strict interpretation of Rule 24 is not necessary" and construing a third-party motion to unseal as a motion to intervene and a pleading because the "motion identifies what the movants seek and presents their argument for it"); *CFTC v. Lofgren*, No. 02 C 6222, 2003 WL 21639118, at *1 (N.D. Ill. July 9, 2003) ("The Seventh Circuit does not advocate a strict interpretation of Rule 24(c), particularly if no prejudice would result by the putative intervener's omission."); *People Who Care v. Rockford Bd. of Educ.*, No. 89 C 20168, 1989 WL 197568, at *3 (N.D. Ill. Dec. 22, 1989) (granting intervention where the "pleading which accompanies . . . motion to intervene . . .

is the motion to vacate" when "the sole and limited purpose . . . to intervene is to bring the instant motion to vacate").[2]

Under this long line of authorities, the Plans Motion satisfies Rule 24(c). The Plans clearly and repeatedly stated why they were intervening: "to appeal the invalidation of their exclusion requests." Motion at 5 ("The only action the Plans intend to take based on their intervention is appealing the Court's granting of Plaintiffs' motion to deny their exclusion requests and overrule their objections[.]"); *see also id.* at 2, 3. The Plans have already filed briefing on these issues. *See* Dkt. Nos. 755–56, 772–74, 786. And complaints in *BCBSM, Inc. v. Walgreen Co.*, No. 20-cv-01853 (N.D. Ill.) and *HCSC v. Walgreen Co.*, No. 2021L000621 (Ill. Cir. Ct., Cook Cnty.)—suits the Plans are pursuing on behalf of their ASO clients which led to the exclusion requests at issue here—have been referenced numerous times by all parties and set forth the claims and defenses that the Plans are alleging against Walgreens in the separate litigations. *See, e.g.,* Motion at 3; Pls. Opp. at 2; Wag. Opp. at 11. For good measure, the Plans now attach to this reply those previously filed and referenced documents.[3] *See Wildcat Enters., LLC*, 2016 WL 8711474, at *6 ("The movants have attached to their reply brief a Joint Motion to Terminate Citation Proceedings . . . . [b]y so doing, they have sufficiently complied with Rule 24(c).").

---

[2] The reality that courts do not strictly apply Rule 24(c) when it would be impossible to do so also defeats Walgreens' argument regarding permissive intervention. *See* Wag. Opp. at 11–12.

[3] *See* Ex. 1—Complaint in *Health Care Service Corp. v. Walgreen Co.*, Civil No. 2021L000621 (Cook Cntl, Ill. Jan. 19, 2021); Ex. 2—Second Amended Complaint in *BCBSM, Inc. v. Walgreen Co.*, Case No. 1:20-cv-01853 (N.D. Ill. June 28, 2021); Ex. 3—Plans' Opposition to Plaintiffs' Motion to Deny Exclusion Requests and Overrule Objections, Case No. 1:17-cv-02246, Dkt. No. 755 (N.D. Ill. July 15, 2025); Ex. 4—Plans' Motion for Reconsideration, Case No. 1:17-cv-02246, Dkt. No. 772 (N.D. Ill. Sep. 8, 2025); Ex. 5—Plans' Memorandum in Support of Motion for Reconsideration, Case No. 1:17-cv-02246, Dkt. No. 774 (N.D. Ill. Sep. 8, 2025).

Walgreens contends that the Plans' Motion cannot satisfy Rule 24(c) because a "memorandum is not a pleading." Wag. Opp. at 4. The law rejects that position. *See Wildcat Enters., LLC*, 2016 WL 8711474, at *6 n.4 ("Courts addressing the issue have held that submission of a motion instead of a complaint or other pleading is indeed sufficient."). Further, the cases on which the Parties rely do not support their conclusion that a separate pleading was required here. For example, in *F.T.C. v. Med Resorts International, Inc.*, the would-be intervenors were actually trying to use the suit at issue to pursue a claim directly against the defendant. 199 F.R.D. 601, 605 (N.D. Ill. 2001) ("[Intervenors] cannot sue the Receiver for a refund because of the stay. Thus, the instant motions were filed."). There was no separate suit which they referenced (like the Plans' separate suits against Walgreens), separate motion practice which they invoked (like the Plans' briefing on Plaintiffs' motion to invalidate their exclusion requests), or clear assertion of a purpose for intervention beyond pursuing direct claims against the defendant (like the Plans' statement that they were intervening for settlement purposes). *In re Testosterone Replacement Therapy Products Liability Litigation* (Wag. Opp. at 4–5) is the same. No. 14 C 1748, 2018 WL 5884519, at *1 (N.D. Ill. Nov. 8, 2018) ("Gemini has moved to intervene in this MDL so that it can participate in the allocation process for claims involving the Endo defendants."). *Perez v. J.A.S. Granite & Tile, LLC* (Wag. Opp. at 4) is no more helpful because there the court explained that "Courts have the discretion to overlook such a procedural deficiency under Rule 24(c)" but declined to do so because the intervening parties were ultimately joined to the action as a result of counterplaintiffs' joinder motion and an analysis of the motion to intervene would thus be "superfluous." *Perez v. J.A.S. Granite & Tile, LLC*, No. 10 C 4150, 2013 WL 1632055, at *2 (N.D. Ill. Apr. 16, 2013) (finding that the parties "all agree that the two non-parties should be joined to this action by one means or another" and that "[i]n light of the joinder analysis . . . addressing the merits of the motion

5

to intervene would be superfluous."). Neither Walgreens nor Plaintiffs here appear to agree that the Plans "should be joined to this action by one means or another," as evidenced by their opposing the Plans' attempt to intervene. *Id.*

Simply put, the Parties have pointed to no court requiring a proposed intervenor to file a separate complaint when that proposed intervenor is seeking to join the action for a reason other than pursuing a claim or defense in that action.[4] And the Parties can come up with no rationale for doing so, other than strict technical compliance for its own sake (regardless of what reason and case law say). The closest the Parties come to asserting a rationale is Walgreens claiming that the Plans "have filed no pleading that clearly sets out and, most critically, ***locks in*** the reasons for which they want to intervene." Wag. Opp. at 4–5 (emphasis in original). That rationale is merely a complaint in search of a problem—the Plans stated their reasons in the Motion, which they signed subject to the same Rule 11 that governs pleadings, and the Court's order on intervention can state: "The Plans may intervene for purposes of appealing." Regardless, if a further pleading is required—despite none of the permissible forms of pleading being an apt fit here—the appropriate course is for the Court to require the Plans to file one. *See, e.g., Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987) ("There is no reason in the present case, however, not to require the intervenor to submit within a reasonable time a well-pleaded claim or defense."); *Wildcat Enters., LLC*, 2016

---

[4] Indeed, the most similar case either party cites to this situation—where a non-party seeks to intervene without asserting a claim or defense, or trying to obtain any recovery in the intervened case—is *Kostovetsky v. Ambit Energy Holdings*, LLC, 242 F. Supp. 3d 708, 714–15 (N.D. Ill. 2017). *See* Wag. Opp. at 6–7. That was a putative class action against an energy company in which a customer of the energy company, Argentieri, sought to intervene. Plaintiffs in a separate class action against the same energy company "moved to intervene for the limited purpose of opposing Argentieri's intervention motion" because Argentieri was a putative class member in the separate action. *Id.* at 714. The plaintiffs from that other suit did not attach a pleading to their motion to intervene. *See* Mot. to Intervene for Limited Purpose of Opposing Plaintiff, *Kostovetsky v. Ambit Energy Holdings*, 1:15-cv-02553 (N.D. Ill. Aug. 22, 2016), Dkt. 152. The court denied Argentieri's motion to intervene and thus denied as moot the limited motion to intervene to oppose that motion, and the court made no mention of second would-be intervenors not having attached a separate pleading to their limited motion to intervene. *Id.* Dkt. No. 180.

WL 8711474, at *6 ("[C]ourts have routinely declined to dismiss motions to intervene based on mere technical violations of Rule 24(c), particularly where the prospective intervenors cure the defect by submitting a pleading in reasonably short order.").

## II. The Parties Ask This Court to Announce a New Rule on Timeliness That Would Guarantee Unnecessary Motion Practice.

Plaintiffs and Walgreens toss out a host of dates in the history of this case in an effort to claim that the Plans should have intervened at an earlier time. *See* Wag Opp. at 1, Pls. Opp. at 8–9. But the majority of those dates are irrelevant because they have no bearing on the Plans' interests here. The Plans submitted exclusion requests for their ASO clients in March 2025, and until June 2025, the Plans expected those requests would be honored. Only when Plaintiffs filed a motion to exclude those requests in June 2025 (*see* Dkt. No. 723) was there any reason for the Plans to be involved in this suit. And the Court solved the problem of moving to intervene by ordering the Plans to respond. *See* Order, Dkt. No. 727. Indeed, the Court's order would have rendered intervention superfluous because the Court *required* the Plans to respond to Plaintiffs' motion, even in the absence of any effort to intervene.[5] Despite that, Walgreens claims that the Plans should have intervened in November 2022 and, "[a]t the very latest," in November 2024. Wag. Opp. at 5. Plaintiffs demand that intervention occur even earlier—all the way back in 2020. Pls' Opp. at 8.

The fact that Plaintiffs and Walgreens disagree by years on when intervention should have occurred is telling as to how arbitrary their position is. In any event, Plaintiffs' and Walgreens' position would require entities who have an interest in class actions to intervene in those actions

---

[5] The Court's Order gave the Plans the option of responding to Plaintiffs' motion regarding the sealing of non-party documents, but required a response to Plaintiffs' motion to invalidate. *Compare* Order, Dkt. No. 727 ("On the motion to determine whether to maintain under seal . . . any response of the Blues and HCSC . . . shall be filed by 07/08/2025), *with id.* ("On the Plaintiffs' motion to invalidate exclusion requests submitted by the Blues and HCSC 723, the response of the Blues and HCSC is due by 07/15/2025.") (emphasis added).

long before the deadline to object, opt out, or before even receiving notice of the class action.[6] Notably, neither cites any case requiring an entity with an interest in a class action to do that, nor could they because cases expressly hold the opposite. *See, e.g., Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 881 (7th Cir. 2000) ("As a rule the time for unnamed members of the class to intervene can not commence until notice under Rule 23[.]"). Here, the Plans did not consider their ASO clients to even be class members until the Court invalidated the exclusion requests on August 7, 2025. Dkt. No. 768. Thus, the Plans could not have known of their need to intervene prior to August 7, especially because the Court had previously ordered their participation without intervention.

Walgreens' and Plaintiffs' cited authorities fail to show that moving to intervene just over a month after the Court invalidated the Plans' exclusion requests and while their motion for reconsideration remains pending is untimely. In *State v. City of Chicago* (Wag. Opp. at 5; Pls. Opp. at 8), the would-be intervenor waited nine months after it was clear the lawsuit would affect their interests before intervening, making intervention untimely. 912 F.3d 979, 985 (7th Cir. 2019) ("Lodge waited nine months from the time it became clear that the lawsuit might affect its interest . . . [the] delay renders the motion untimely."). And in *People Who Care v. Rockford Board of Education* (Pls. Opp. at 9), the would-be intervenor was aware of the issue at stake in the litigation for at least three years and had separately been challenging it in other fora during that time. 68 F.3d 172, 175–76 (7th Cir. 1995) ("His concerns about preclusion were equally significant (or insignificant) three or four years ago when O'Brien decided to proceed in state court rather than

---

[6] It is no exaggeration to say that ruling for the Plaintiffs and Walgreens on this issue would have a widespread effect on non-party practice in class actions, leading to a substantial increase in motions to intervene that are unnecessary, thereby undermining the efficiency justifications for the class action mechanism.

8

moving to intervene in this case."). Likewise, in *CE Design Ltd. v. King Supply Co.* (Wag. Opp. at 10; Pls. Opp. at 9), the "district court thought the insurers should have moved to intervene in 2009" but they waited until 2012. 791 F.3d 722, 724 (7th Cir. 2015). Indeed, courts instead hold that intervention remains timely even when waiting multiple times longer than the Plans did here. *See, e.g., City of Chicago v. Sessions*, No. 17 C 5720, 2017 WL 5499167, at *6 (N.D. Ill. Nov. 16, 2017) ("[T]he approximately three-month interim is reasonably timely under the circumstances, especially in view of the untimely intervention cases cited by the Attorney General involving intervention attempts many years after the action was filed.").

## III.    The Parties' and the Courts' Actions Prove the Existence of a Plan Interest Here.

The proposed settlement in this case would release the Plans' ASO clients' claims against Walgreens—which the Plans are contractually authorized to pursue on their clients' behalf, Dkt. No. 756 ¶ 7—despite the Plans currently separately litigating those claims. The Plans clearly had an interest in opting their ASO clients out and the Plaintiffs recognized that interest as adverse to theirs, which is why Plaintiffs filed their motion (which Walgreens then supported) to invalidate the exclusion requests. Absent Plaintiffs' motion, there would be no reason for the Plans to intervene. Similarly, the Court recognized that the Plans had an interest in protecting those exclusion requests and that such interest was not adequately represented because it ordered the Plans to respond directly to Plaintiffs' motion.

In response, the Parties assert two main arguments. First, they contend that the Court already ruled that the Plans lack a sufficient interest to participate in this dispute. Pls. Opp. at 12 ("As the Court already held, the Blues have no such interests."); Wag. Opp. at 9–10. This, however, assumes the conclusion: that holding is part of what the Plans intend to appeal if the Court does not grant reconsideration. It is circular logic to say that the Plans cannot appeal the Court holding that the plans have no interest because the Court held that the Plans have no interest. Second, the

Parties dispute whether the Plans seek to intervene on behalf of their own interests or their ASO clients' interests. Wag. Opp. at 8–9; Pls. Opp. at 12. This is a myopic view of the facts of the case. The Plans were ordered to participate in motion practice and the Court ruled against the Plans' position. To argue that the Plans should have no access to appellate review[7] of an issue so important that the Court required a non-party to appear solely to brief it would undermine the very purpose of appellate review. That was not the situation in *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007)—on which Plaintiffs heavily rely (Pls. Opp. at 12–13)—making that case inapposite. Walgreens' effort to dismiss the Plans' interest as merely "intermediary" fares no better. Notably, for this point, Walgreens cites a case where the court rejected Walgreens' effort to use Rule 19 to dismiss a complaint. Wag. Opp. at 11 (citing *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 848–49 (N.D. Ill. 2021)). But the standard for "indispensable party" under Rule 19 has no bearing on an "interest" under Rule 24, which was key to the court's decision. 512 F. Supp. 3d at 849 ("Nor is it clear why the PBMs would have an interest in the matter since they have not intervened despite public statements in the related litigation Walgreens cites.").

Plaintiffs, the alleged representatives of the ASO's claims, do not even attempt to hide that their opposition to the Plans' intervention is solely to avoid accountability. Plaintiffs argue that "if the Blues are successful in their intervention and appeal of the final approval of the Settlement and order denying their exclusions requests, they could cause the Settlement to terminate, resulting in no payments to Settlement Class Members, including their own purported ASO clients." Pls. Opp.

---

[7] As the Plans made clear in their Motion, that appellate review is only available if the Plans intervene. *See Douglas v. The W. Union Co.*, 955 F.3d 662, 664 (7th Cir. 2020) ("A nonparty who is dissatisfied with a ruling in the district court must seek to intervene for purposes of appeal (and a denial of a request to intervene is itself appealable).").

at 10. Because the Plans' success in protecting their interests would be directly harmful to the settlement that the Parties have negotiated, Plaintiffs cannot claim to be adequately representing the Plans' or the ASO's interests.

## CONCLUSION

For the reasons stated above, the Plans respectfully request that the Court grant their Motion to Intervene for the limited purpose of preserving their right to appeal should the Court remain consistent with its prior decision and deny the motion for reconsideration.

Dated: October 7, 2025

Respectfully submitted,

By: */s/ Jed Wulfekotte*
Jason P. Stiehl
Neil G. Nandi
**CROWELL & MORING LLP**
455 N. Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611
Telephone: 312.840.3108
JStiehl@crowell.com
NNandi@crowell.com

Kent A. Gardiner*
Stephen J. McBrady*
Kelly H. Hibbert*
Jed Wulfekotte*
**CROWELL & MORING LLP**
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116
KGardiner@crowell.com
SMcBrady@crowell.com
KHibbert@crowell.com
JWulfekotte@crowell.com

*admitted pro hac vice*

*Counsel for Blues Plans
and HCSC*

11